SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PHILIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALFPAP,

Plaintiff(s),

-against-

GRUPO MEXICO S. A. de C.V., a Mexican
Corporation, SOUTHERN PERU HOLDING
CORPORATION, a Delaware Corporation,
SOUTHERN PERU HOLDING CORPORATION
II, a Delaware Corporation, GRUPO MINERO
MEXICO INTERNACIONAL, S. A. DE C.V., a
Mexican Corporation, COMPANIA MEXICANA
de COBRE, a Mexican Corporation, JP
MORGAN CHASE & COMPANY f/k/a CHASE
MANHATTAN BANK & TRUST COMPANY,
a Delaware Corporation AMERICAS MINING
CORPORATION, a Delaware Corporation,
ERNST & YOUNG LLP, ERNST & YOUNG
CORPORATE FINANCE, LLC, GERMAN
LARREA MOTA-VAELASCO, Officer and
Director of ASARCO, Inc., OSCAR GONZALES
ROCHA Officer and Director of ASARCO, Inc.,
DANIEL TELLECHEA SALIDO Officer and
Director of ASARCO, Inc., CREDIT SUISSE
FIRST BOSTON, INC., CREDIT SUISSE FIRST
BOSTON, LLC and CREDIT SUISSE FIRST
BOSTON (USA), INC.

Defendant(s)

Index No.: 04/114728

**SUPPLEMENTAL SUMMONS**



To the above named Defendants

**You are hereby summoned** to answer the Complaint in this action and to serve a copy of

your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance,

on the Plaintiffs' Attorney(s) within 20 days after the service of this summons, exclusive of the day

of service (or within 30 days after the service is complete if this summons is not personally delivered

to you within the State of New York); and in case of your failure to appear or answer, judgment will

be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
      February 7, 2005

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
180 Maiden Lane
New York, NY 10038
(212)558-5500
FAX (212)344-5461

By:

    Gary Klein, Esq.

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
Alan B. Rich, Esq.
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

264794

FEB. 27. 2007

THAT I HAVE COMPARED THIS
COPY WITH THE ORIGINAL
FILED IN MY OFFICE ON

2/7/05

**SEE RIDER ATTACHED**

FILED
2/7/05
COUNTY CLERK
NEW YORK COUNTY

## RIDER

**Defendants' Addresses:**

GRUPO MEXICO S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

SOUTHERN PERU HOLDING CORPORATION
2575 East Camelback Road
Phoenix, Arizona

SOUTHERN PERU HOLDING CORPORATION II
2575 East Camelback Road
Phoenix, Arizona

GRUPO MEXICO MINERO
MEXICO INTERNACIONAL, S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

COMPANIA MEXICANA de COBRE
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

AMERICAS MINING CORPORATION
2575 East Camelback Road
Phoenix, Arizona

JP MORGAN CHASE f/k/a CHASE
MANHATTAN BANK
New York, New York

ERNST & YOUNG, LLP
ERNST & YOUNG CORPORATE
FINANCE, LLC
New York, New York

GERMAN LARREA MOTA-VAELASCO
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760
OSCAR GONZALES ROCHA
2575 East Camelback Road
Phoenix, Arizona

DANIELTELLECHEA SALIDO
2575 East Camelback Road
Phoenix, Arizona

CREDIT SUISSE FIRST BOSTON, INC.
11 Madison Avenue
New York, New York 10010

CREDIT SUISSE FIRST BOSTON, LLC
11 Madison Avenue
New York, New York 10010

CREDIT SUISSE FIRST BOSTON (USA), INC.
11 Madison Avenue
New York, New York 10010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALFPAP,

                    Plaintiff(s),

          -against-                                          Index No.: 04/114728

GRUPO MEXICO S. A. de C.V., a Mexican              **FIRST AMENDED**
Corporation, SOUTHERN PERU HOLDINGS              **VERIFIED COMPLAINT**
CORPORATION, a Delaware Corporation, SPHC
II, Incorporated, a Delaware Corporation, GRUPO
MINERO MEXICO INTERNACIONAL, S. A.
DE C.V., a Mexican Corporation, MEXICANA
de COBRE, S.A. de C.V. a Mexican Corporation,
CONTROLADORA MINERA MEXICO, S.A. de
C.V., a Mexican Corporation, JP MORGAN
CHASE & COMPANY f/k/a CHASE
MANHATTAN BANK & TRUST COMPANY,
a Delaware Corporation, AMERICAS MINING
CORPORATION, a Delaware Corporation,
ERNST & YOUNG LLP, ERNST & YOUNG
CORPORATE FINANCE, LLC, GERMAN
LARREA MOTA-VELASCO, Officer and
Director of ASARCO, Inc., OSCAR GONZALEZ
ROCHA Officer and Director of ASARCO, Inc.,
CREDIT SUISSE FIRST BOSTON, INC.,
CREDIT SUISSE FIRST BOSTON, LLC and
CREDIT SUISSE FIRST BOSTON (USA), INC.

                    Defendant(s)

Plaintiffs, by their attorneys, WEITZ & LUXENBERG, P.C. and BARON & BUDD, P.C. for

their suit against Defendants respectfully allege as follows:

### PRELIMINARY STATEMENT

1.      This case concerns the acquisition and systematic liquidation of a multi-billion

dollar, one hundred year old, U.S. Corporation for the benefit of foreign investors and to the detriment of resident creditors. The companies and assets which made up Asarco Incorporated ("ASARCO") were raided, sold for profit and transferred beyond the direct reach of individuals ASARCO injured and owes compensation.

2.    This action arises under the New York Fraudulent Conveyance Act, DEBT. & CRED. § 270 *et. seq.* and the common law of New York concerning fraud. Plaintiffs all have claims against ASARCO for personal injuries related to asbestos exposure, and are all creditors of ASARCO.

## JURISDICTION, VENUE & CHOICE OF LAW

3.    Jurisdiction and venue are proper in the State of New York and New York County pursuant to N.Y. C.P. L. R. art. 5 § 503.   New York State Law governs plaintiffs' claims for relief.

4.    The parties and the principal transfers complained of herein all have a significant connection with this jurisdiction. At the time of the Leveraged Buyout ("LBO"), ASARCO's corporate headquarters was located in New York City. The corporate headquarters of defendant JP Morgan Chase & Company f/k/a Chase Manhattan Bank & Trust Co. ("Chase") is located in New York City.

5.    All defendants are authorized to transact business in the state and/or have contracted to supply goods and services within the state. All defendant corporations and business entities have committed tortious acts within the state of New York.

6.    ASARCO, defendant Grupo Mexico S.A. de C.V. ("GRUPO MEXICO"), defendant Americas Mining Corporation ("AMC") and defendant CHASE have all contractually

2

waived any right they might have had to contest the jurisdiction of this Court relating to the conveyances contested herein. Further, these defendants have designated within those same contracts that New York State Law governs principal transactions involved in the LBO.

7.    Defendant Ernst & Young, LLP and Ernst & Young Corporate Finance LLC regularly conduct business in this state and county.

8.    Defendants Credit Suisse First Boston, Inc., Credit Suisse First Boston, LLC and Credit Suisse First Boston (USA) Inc.'s (collectively "CSFB") principal offices are located in New York City, New York.

9    The State of New York has the most significant interest in the outcome of this litigation.

### Plaintiffs

10    Plaintiffs are present unsecured creditors of ASARCO whose claims have not been satisfied. Plaintiffs are persons who were injured by ASARCO and whose tort claims were both filed and unfiled against ASARCO at the time of the fraudulent conveyance(s) at issue. Plaintiffs all have "claims" against ASARCO and are therefore "creditors" as that term is defined under the New York Fraudulent Conveyance Act ("the Act"), N. Y. DEBT & CRED. § 270.

11.    The Plaintiffs are by name and citizenship: PHILLIP NELSON BURNS, a citizen of the State of Arizona; MIRJANA PAVKOVICH, Administrator of the Estate of Rade Pavkovich, Deceased, a citizen of the State of Arizona; and WARREN ELMER HALFPAP, a citizen of the State of New York.

### Defendants

12.    Defendant GRUPO MEXICO S. A. de C.V. ("GRUPO MEXICO") is a Mexican Corporation. GRUPO MEXICO may be served with process pursuant to the Convention on the

3

Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon GRUPO MEXICO S.A. DE C.V., at its headquarters at Avenue Baja California 200, Colonia Roma Sur, 06760, Mexico City, Mexico. References herein to "GRUPO MEXICO" include GRUPO MEXICO S.A. de C.V. and its subsidiaries and affiliates, defendants Americas Mining Corporation ("AMC"), Controladora Minera Mexico, S.A. de C.V. ("CMM"), Grupo Mexico Minera Mexico Internacional, S.A. de C.V. ("GMMI") and Mexicana de Cobre S.A. de C.V.

13.     Defendants SOUTHERN PERU HOLDINGS CORPORATION ("SPHC") and SPHC II Incorporated are incorporated in the State of Delaware and maintain their corporate headquarters at 2575 East Camelback Road, Phoenix Arizona, 85016. The registered service agent for both SPHC and SPHC II is the Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801. SPHC is a holding company and was formed as a wholly owned subsidiary of ASARCO to facilitate the transfer of ASARCO's interest in Southern Peru Copper Corporation ("SPCC") to defendant GRUPO MEXICO and/or its affiliates.

14.     Defendant GRUPO MEXICO MINERO MEXICO INTERNACIONAL, S.A. DE C.V. ("GMMI") is a Mexican corporation. GMMI may be served with process pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon GRUPO MEXICO MINERO MEXICO INTERNACIONAL, S.A. DE C.V., at its headquarters at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

15.     Defendant MEXICANA de COBRE S.A. de C.V. is a Mexican corporation.

4

MEXICANA de COBRE S.A. de C.V. may be served with process pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon MEXICANA de COBRE S.A. de C.V., at Kilometro 21 Carretera Nacozari Agua Prieta, 84346, Nacozari de Garcia, Sonora, Mexico.

16.    Defendant CONTROLADORA MINERA MEXICO, S.A. de C.V. ("CMM") a Mexican Corporation may be served with process pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon CONTROLADORA MINERA MEXICO, S.A. de C.V., at its headquarters at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

17.    Defendant AMERICAS MINING CORPORATION ("AMC") is incorporated in the State of Delaware and maintains its principal place of business at 2575 East Camelback Road, Phoenix, Arizona, 85016.    AMC is a wholly owned subsidiary of defendant GRUPO MEXICO.

18.    Defendant JP MORGAN CHASE & COMPANY f/k/a CHASE MANHATTAN BANK ("Chase") is a Delaware Corporations whose corporate headquarters are located in New York City, New York.    Chase Manhattan Bank is a "legacy" company of JP Morgan Chase & Co.

19.    Defendant ERNST & YOUNG, LLP and Defendant ERNST & YOUNG CORPORATE FINANCE, LLC (collectively "Ernst & Young") are limited liability companies

5

and accounting firms with worldwide offices including offices in New York City, New York.

20.     Defendants CREDIT SUISSE FIRST BOSTON, INC., a Delaware Corporation, CREDIT SUISSE FIRST BOSTON, LLC a Delaware Limited Liability Company and CREDIT SUISSE FIRST BOSTON (USA), INC. a Delaware Corporation (collectively "CSFB") served as financial advisor to ASARCO's Board of Directors at the time of the LBO and a commercial lender who financially backed the LBO and profited from the transaction. CSFB does business worldwide but regularly conducts business in New York City and the State of New York.  The principal corporate office of each CSFB entity is Eleven Madison Avenue, New York N.Y. 10010-3629.

21.     Defendant GERMAN LARREA MOTA-VELASCO was the Chairman and Chief Executive Officer of ASARCO from November 1999 and at the date of the transfer of SPCC to AMC.  He was also Chairman of the Board of SPCC and Chief Executive Officer and Chairman of the Board of GRUPO MEXICO, and he owes a fiduciary duty to ASARCO's creditors, including plaintiffs. Mr. Mota-Velasco may be served with process pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon Mr. Mota-Velasco at his place of business at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

22.     Defendant OSCAR GONZALEZ ROCHA was a Director of ASARCO at the date of the transfer of SPCC to AMC.  At that time he was also President, General Director and Chief Operating Officer of SPCC, and he owes a fiduciary duty to ASARCO's creditors, including plaintiffs.  Mr. Rocha may be served with process at his place of business at its

6

principal place of business at 2575 East Camelback Road, Phoenix, Arizona.

## BACKGROUND ALLEGATIONS

1. **ASARCO BEFORE THE LEVERAGED BUYOUT**

23.     Prior to the leveraged buyout of ASARCO by GRUPO MEXICO, ASARCO's

publically filed financial statements portrayed ASARCO as a solvent, international, publicly

traded corporation, listed on the New York Stock Exchange with more than four billion dollars in

assets and a low debt to asset ratio.

24.     However, the Defendants, including the Officers and Directors of ASARCO, were

aware of multiple claims against the company for environmental cleanup relating to ASARCO's

mining and smelting operations in the United States and thousands of asbestos related personal

injury claims stemming from the operation of ASARCO's own facilities and those of two of

ASARCO's subsidiaries Capco Pipe Company (asbestos product manufacturer and distributor)

and Lac d' Amiante du Quebec (LAQ) (asbestos mining operation).

25.     Taking these present and anticipated creditor claims into account, ASARCO was

insolvent or facing insolvency prior to the LBO.

26.     ASARCO's Directors decided to sell the company.  The Directors, all insiders and

shareholders of ASARCO, entertained and accepted tender offers from Phelps Dodge

Corporation and defendant GRUPO MEXICO.

27.     The sale of ASARCO and the liquidation of the company's principal assets prior

to the settlement of its environmental claims, including asbestos claims, and its other anticipated

unsecured creditor claims, unlawfully favored shareholders at the expense of creditors including

Plaintiffs.

**B.     OVERVIEW OF GRUPO MEXICO'S TENDER
OFFER AND INTEGRATED PLAN OF LIQUIDATION**

28.     GRUPO MEXICO offered to purchase ASARCO's stock for cash through a leveraged buyout.  GRUPO MEXICO's tender offer consisted of $29.75 per share, a guarantee of a loan from Chase and other lenders including CSFB to ASARCO to repurchase its own stock and assumption of $1.2 billion dollars in "pre-existing corporate debt."  GRUPO MEXICO's proposal did not, however, involve actually paying-off all of ASARCO's "pre-existing corporate debt."

29.     GRUPO MEXICO would then force ASARCO to become responsible for the loan to Chase and the other lenders, requiring ASARCO (rather than GRUPO MEXICO) to pay for its own buyout by GRUPO MEXICO.  ASARCO was thus forced to repay the loans made to GRUPO MEXICO by cannibalizing itself through the sale of its own assets.

30.     As for the "pre-existing corporate debt" most of the debt was not owed or guaranteed by ASARCO.  This debt was SPCC's, and it arose out of an expansion project of SPCC's copper mining operations.  Nevertheless, upon information and belief, GRUPO MEXICO also required that assets of ASARCO be liquidated to pay down SPCC's debt.  Eventually, having used its own assets to pay down SPCC's debt, ASARCO transferred its SPCC stock to GRUPO MEXICO for unreasonably small consideration.

**C.     STEP 1: GRUPO MEXICO'S PURCHASE AND PRIVATIZATION OF ASARCO**

31.     In November 1999, GRUPO MEXICO purchased ASARCO in a "bust up" acquisition wherein the non-mining assets of ASARCO were sold to finance the purchase.

32.     The acquisition of ASARCO by GRUPO MEXICO was accomplished through the redemption/share repurchase of ASARCO's stock.  Prior to its tender offer, GRUPO MEXICO,

8

through a subsidiary, acquired slightly more than 9% of the outstanding ASARCO common shares and was the company's largest, single shareholder. As ASARCO repurchased its own shares, GRUPO MEXICO's ownership interest in ASARCO increased.

33.     In connection with the acquisition, GRUPO MEXICO caused ASARCO to merge with a GRUPO MEXICO merger subsidiary with "ASARCO" being the survivor. GRUPO MEXICO's ASARCO stock was then transferred to another holding company, defendant Americas Mining Corporation (AMC).

34.     After redemption/share repurchase of the other ASARCO shareholders, GRUPO MEXICO privatized ASARCO in anticipation of liquidating its non-mining assets. ASARCO was de-listed from the New York Stock Exchange, and ASARCO was no longer required to publish its financial reports.

35.     In a series of related, integrated and designed transactions, GRUPO MEXICO acquired ASARCO by means of a leveraged buyout for less than fair consideration, without good faith and in derogation of creditors' rights, including plaintiffs'.

36.     GRUPO MEXICO's acquisition costs for the purchase of ASARCO were paid with money borrowed by ASARCO. In November 1999, GRUPO MEXICO negotiated with Chase for financing to redeem ASARCO's stock.

37.     To pay initial acquisition costs, GRUPO MEXICO caused ASARCO (through the GRUPO MEXICO merger subsidiary) to borrow eight hundred seventeen million dollars ($817,000,000) ("acquisition loan") from defendant Chase.

38.     Chase also set up and syndicated a four hundred fifty million dollar ($450,000,000) revolving line of credit for ASARCO which added to the company's debt load and debt service.

9

39.    As collateral, ASARCO pledged its ownership interest in SPCC, Enthone-OMI, Inc. and related companies (collectively "Enthone") and American Limestone Company and related companies (collectively "American Limestone"). (SPCC, Enthone and American Limestone are collectively referred to herein as "ASARCO's principal assets"). As a part of GRUPO MEXICO's acquisition and in anticipation of transfer to GRUPO MEXICO, ASARCO placed its SPCC stock in a wholly owned subsidiary and holding company, Southern Peru Holding Corporation ("SPHC"). At the time of acquisition, ASARCO owned approximately 54.2 % of the voting stock of SPCC.

40.    Chase and the other participating banks expected to be paid, and were paid, as priority lenders, out of the proceeds of the sale of ASARCO's speciality chemical division (Enthone) and ASARCO's aggregates division (American Limestone) and the proceeds of the sale of ASARCO's SPCC stock.

41.    Defendant Chase knew it was providing the senior debt necessary to acquire and liquidate ASARCO's principal assets, and knew or should have known that ASARCO was already insolvent because of environmental and asbestos liabilities and/or would be rendered insolvent or without sufficient capital to continue normal business operations as a result of these conveyances.

42.    Chase knew that ASARCO's outstanding unsecured environmental and personal injury creditors would not be satisfied under the planned liquidation.

43.    The recitals within the loan agreement state that the principal purpose of the acquisition loan was to repurchase ASARCO's stock from its shareholders. Chase knew the proceeds of the loan would not accrue to the benefit of ASARCO or its creditors and thus represented unreasonably small return of capital for the encumbrance. Chase knew that the loan

10

proceeds were to be used for the benefit of third parties, GRUPO MEXICO, AMC and the former shareholders of ASARCO, who were "insiders" to the transaction.

**D.    STEP 2: THE LIQUIDATION OF ASARCO'S PRINCIPAL ASSETS**

44.    After the acquisition, GRUPO MEXICO moved ASARCO's corporate headquarters from New York to Phoenix, Arizona, where ASARCO shared office space with AMC and SPHC.  GRUPO MEXICO replaced  ASARCO's Officers and Directors with designees from its own Board.  ASARCO became a wholly owed subsidiary of AMC.  After acquisition, ASARCO lost its separate identity and is totally controlled by GRUPO MEXICO and/or its affiliates.

45.    GRUPO MEXICO forced ASARCO to sell its assets to pay GRUPO MEXICO'S acquisition costs.  At GRUPO MEXICO's direction, approximately $17 million of ASARCO's business equipment was sold at auction.

46.    At GRUPO MEXICO's direction and as had been agreed by Chase, ASARCO sold its profitable speciality chemical division (Enthone) for five hundred three million dollars ($503,000,000).  Enthone is now part of Cookson Electronics PWB Materials and Chemistry, a division of Cookson Group plc, a British company.

47.    At GRUPO MEXICO's direction and as had been agreed by Chase, ASARCO sold its profitable aggregates division (American Limestone) to Rinker Materials Corporation f/k/a CSR America, Inc. for two hundred eleven million dollars ($211,000,000).

48.    The proceeds of these sales did not accrue to the benefit of ASARCO or its creditors since these monies were applied to acquisition debt and only benefitted Chase, GRUPO MEXICO and ASARCO's former shareholders to the exclusion of existing and future environmental and asbestos claimants.  These conveyances for less than fair consideration, were

11

made without good faith, created or added to ASARCO's insolvency and insufficiency of capital and were in derogation of creditors' rights including the rights of the plaintiffs.

49.   At GRUPO MEXICO's direction, assets of ASARCO were redirected to the detriment of ASARCO's creditors.  Settlement proceeds relating to litigation with ASARCO's excess liability insurers were not segregated and held to pay the known liability claims to which the insurance coverage related.  As clear evidence of the integrated plan to liquidate ASARCO to the detriment of unsecured creditors, the future proceeds of the insurance settlement were sold at heavy discount, and the cash was transferred to ASARCO's operating account and spent.

50.   In 2003, at GRUPO MEXICO's direction as had been agreed by Chase, ASARCO's interest in SPCC was transferred to AMC, another wholly owned subsidiary of GRUPO MEXICO.  In consideration for this conveyance, GRUPO MEXICO paid Chase and the syndicate of banks, on behalf of ASARCO, four hundred fifty million dollars ($450,000,000) in repayment of loans arising out of the acquisition, "forgave" some inter-company debt to AMC and/or its subsidiaries including  Mexicana de Cobre, S.A. de C.V. and agreed to pay two hundred forty three million dollars ($243,000,000)  at some future date.  Part of this last payment may accrue to the benefit ASARCO's unsecured creditors (principally as part of a settlement agreement with the United States on some environmental claims) but it represents an amount far less than a fair equivalent for the asset.

E.   **ASARCO SUED FOR FRAUDULENT CONVEYANCE BY THE UNITED STATES GOVERNMENT**

51.   After the transfer of ASARCO's most valuable remaining asset (the SPCC stock held by SPHC) was proposed, the United States (an unsecured creditor with environmental based claims) brought suit against ASARCO for fraudulent conveyance.  (*United States of America v.*

12

*Asarco Inc. and Southern Peru Holdings Corporation, CO2-5401 FDB* (W. D.Wash.) (later transferred to the United States District Court for the District of Arizona and renumbered as Case No. CV 02-2079-PHX-RCB).

52.    During the course of the Government litigation, ASARCO admitted it was no longer able to pay its debts as they matured.

53.    The United States eventually settled its claims against ASARCO and SPHC for one hundred million dollars ($100,000,000), an amount far less than the liability owed on just matured environmental claims, and withdrew its objection to the transfer.  This settlement provided no benefits or protections whatsoever for ASARCO's other unsecured creditors including plaintiffs.

54.    Upon information and belief, the United States settled its claim cheaply because the SPCC stock was already encumbered by the acquisition loan from defendant Chase, ASARCO's assets had already been depleted by the sale of Enthone and American Limestone, ASARCO was too thinly capitalized to continue many of its business operations and because of financial misrepresentations of ASARCO, GRUPO MEXICO and defendant Ernst & Young as to the value of ASARCO's interest in SPCC.

55.    The transfer of ASARCO's interest in SPCC was facilitated by defendant Ernst & Young who recklessly and knowingly provided an opinion undervaluing this asset.  As a direct result of the misrepresentations of Ernst & Young, plaintiffs' rights were undermined.

**F.    ASARCO AFTER THE LBO AND RELATED ASSET SALES**

56.    After the conveyances described herein, ASARCO was left an insolvent shell. The present salable value of ASARCO's assets is less than the amount required to pay the corporation's probable liabilities, including the personal injury claims of plaintiffs.  ASARCO

lacks sufficient resources to timely pay its creditors, including plaintiffs. ASARCO is too thinly

capitalized to continue the business operations it maintained prior to the sale of SPCC. Stripped

of its most valuable assets, ASARCO is on the verge of filing for Bankruptcy protection.

57.    A just outcome for plaintiffs, whose claims against ASARCO remain unsatisfied,

requires that the foregoing transactions be viewed as part of an integrated plan, executed in a

period of less than five years, resulting in conveyances which are fraudulent to plaintiffs.

### PLAINTIFFS' FIRST CLAIM FOR RELIEF
*(Constructive Fraud -Conveyance Resulting in Insolvency)*

58.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-57 and

for their First Claim for Relief state as follows:

59.    ASARCO owes a "debt" to plaintiffs as that term is defined under the New York

Fraudulent Conveyance Act ("the Act"). N. Y. DEBT. & CRED. § 270.

60.    The sale of ASARCO to GRUPO MEXICO in November 1999 by and through a

leveraged buyout is a "conveyance" as that term is defined under the Act. N. Y. DEBT. & CRED.

§ 270.

61.    The encumbrance of ASARCO's interests in Enthone, American Limestone and

SPCC in furtherance of the GRUPO MEXICO LBO of ASARCO, is a "conveyance" of

ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

62.    The sale at auction certain of ASARCO's business equipment is a "conveyance"

of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. §

270.

63.    The transfer of GRUPO MEXICO's ownership interest in ASARCO (as merged

with ASMEX) to AMC is a "conveyance" of ASARCO's (the debtor's) property within the

14

meaning of the Act. N. Y. DEBT. & CRED. § 270.

64.    The sale of Enthone, American Limestone and ASARCO's ownership interest in SPCC ("ASARCO's principal assets") separately and in connection with an integrated plan of liquidation is/are "conveyance(s)" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

65.    The redemption/share repurchase of ASARCO's stock from ASARCO's Directors and other shareholders is a "conveyance" as that term is defined under the Act. N. Y. DEBT. & CRED. § 270.

66.    Plaintiffs have claims against ASARCO for damages resulting from personal injuries occasioned by exposure to asbestos. Plaintiffs are "creditors" of ASARCO under the Act. N. Y. DEBT. & CRED. § 270.

67.    ASARCO was purchased by GRUPO MEXICO, its stock was redeemed, certain of its business equipment was liquidated at auction and its principal assets encumbered and sold at a time when ASARCO was either insolvent or would become insolvent as a result of the liquidation of its assets.

68.    ASARCO received less than fair consideration for the redemption/share repurchase of its stock and transfer of controlling interest in the company to GRUPO MEXICO and AMC since the proceeds of the conveyance accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO and Chase) and not to the benefit of ASARCO or its creditors.

69.    ASARCO received less than fair consideration for the encumbrance of its principal assets since the proceeds of the conveyances accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO, Chase and CSFB and others)

15

and not to the benefit of ASARCO or its creditors.

70.    ASARCO received less than fair consideration for the sale of certain of its business equipment at auction and the sale of its principal assets since the proceeds of these conveyances accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO, Chase and CSFB) and not to the benefit of ASARCO or its creditors.

71.    Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring the conveyance of ASARCO to GRUPO MEXICO and AMC, the encumbrance and sale of ASARCO's business equipment and principal assets and the redemption/share repurchase of its stock to be individually and collectively fraudulent as to the debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. §273.  Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' SECOND CLAIM FOR RELIEF
*(Constructive Fraud- Conveyance Resulting in Insufficiency of Capital)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-71 and for their Second Claim for Relief state as follows:

72.    At the direction of GRUPO MEXICO and AMC, ASARCO redeemed its stock and conveyed away certain of its business equipment and its principal assets without fair consideration, when ASARCO was engaging or about to engage in a business or transaction for which the property remaining in ASARCO's hands after the conveyance represented unreasonably small capital.

73.    Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring the encumbrance and conveyance of ASARCO's business equipment and principal assets and redemption/share repurchase of ASARCO's stock individually and collectively, fraudulent as to the Debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. § 274.  Plaintiffs are entitled to

16

appropriate equitable and legal relief thereto.

**PLAINTIFFS' THIRD CLAIM FOR RELIEF**
*(Actual Fraud: Conveyance in Anticipation of Debts)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-73 and for their

Third Claim for Relief state as follows:

74.    In a series of transactions undertaken at the direction of GRUPO MEXICO and

AMC, ASARCO was sold to GRUPO MEXICO and transferred to AMC, ASARCO's stock was

redeemed and ASARCO's business equipment and principal assets were encumbered and/or sold

for less than fair consideration, with the intent or belief that ASARCO would incur debts beyond

its ability to pay as they mature.

75.    GRUPO MEXICO and AMC were aware of plaintiffs' (and other, environmental)

claims against ASARCO prior to the conveyances referenced herein, and these defendants knew

these claims would remain unsatisfied under the integrated plan of liquidation.

76.    Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring

the sale of ASARCO to GRUPO MEXICO, the transfer of ASARCO to AMC, the

redemption/share repurchase of ASARCO's stock and the encumbrance and conveyance of

ASARCO's business equipment and/or principal assets to be fraudulent to the debts owed to

plaintiffs pursuant to N.Y. DEBT. & CRED. § 275.  Plaintiffs are entitled to appropriate equitable

and legal relief thereto.

**PLAINTIFFS' FOURTH CLAIM FOR RELIEF**
*(Actual Fraud: Conveyance with Intent to Frustrate Creditor Claims/Conspiracy)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-76 and for their

Fourth Claim for Relief state as follows:

77.    The redemption/share repurchase of ASARCO's stock and the sale and liquidation

17

of ASARCO through the LBO were undertaken through an integrated plan and design

orchestrated by defendant GRUPO MEXICO and executed with the complicity of others,

including AMC, Chase and CSFB.

78.    The redemption/share repurchase of ASARCO' stock and liquidation of

ASARCO's assets occurred when:

a.    ASARCO was insolvent and/or with the knowledge that the transfers, (individually and/or collectively) would result in ASARCO's insolvency;

b.    GRUPO MEXICO, AMC and Chase were aware of pending litigation against ASARCO for environmental claims and personal injury claims related to asbestos exposure which rendered or would render the company insolvent;

c.    ASARCO lacked adequate financial means to meet its debts as they matured;

d.    The assets transferred were the principal assets of the corporation and made up the majority of the company's assets in value;

e.    The transfers were made for less than fair consideration;

f.    The transfer(s) benefitted insiders including ASARCO's Directors and other former shareholders, GRUPO MEXICO and AMC at the expense of unsecured creditors including plaintiffs.

79.    The redemption/share repurchase of stock and liquidation of ASARCO's assets

was designed to strip the company of assets before unsecured creditor claims matured; the

redemption/share repurchase of ASARCO' stock and the sale and liquidation of ASARCO's

business equipment and principal assets was undertaken with the intent to hinder, delay or

defraud creditors.

80.    Plaintiffs are entitled to judgment against GRUPO MEXICO, AMC, Chase and

CSFB declaring the sale of ASARCO to GRUPO MEXICO and AMC, the redemption/share

repurchase of ASARCO's stock and the encumbrance and conveyance of ASARCO's business

equipment and principal assets to be fraudulent pursuant to N.Y. DEBT. & CRED. § 276.

Plaintiffs are entitled to appropriate equitable and legal relief thereto.

81.     Because these transfers were fraudulent conveyances, committed with the actual intent to defraud creditors, punitive damages should be recovered from the defendants, jointly and severally, in an amount not less than three-times actual damages.

### PLAINTIFFS' FIFTH CLAIM FOR RELIEF
*(Fraudulent Conveyance: Liability of Transferee Chase & CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-81 and for their Fifth Claim for Relief state as follows:

82.     Defendant Chase is the transferee who provided the senior layer of debt necessary to carry out the LBO.

83.     Defendant CSFB provided financial advice to ASARCO's Board of Directors at the time of the merger and participated with other banks in financing the LBO.

84.     Chase and CSFB knew the LBO was to be a "bust up" acquisition with the assets of ASARCO to be conveyed away from ASARCO for less than fair consideration since the proceeds of these transfers would not benefit ASARCO or its creditors but would instead accrue to third parties, ASARCO's former shareholders, GRUPO MEXICO and AMC.

85.     Chase and CSFB knew ASARCO was insolvent just prior to the LBO or would be rendered insolvent as a result of the conveyances attendant to the LBO and/or the debt service imposed for the acquisition and operating loans to ASARCO.

86.     Chase and CSFB knew ASARCO was to be liquidated and would be left with unreasonably small capital resources to continue its traditional business operations.

87.     Chase and CSFB knew ASARCO was to be liquidated at a time when ASARCO, GRUPO MEXICO and AMC believed ASARCO would incur debts beyond its ability to pay as

they matured.

88.    Chase and CSFB knew the plan of liquidation was undertaken with the intent to hinder, delay and/or defraud creditors.

89.    The encumbrance of ASARCO's principal assets in favor of Chase is a "conveyance" of ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. § 270.

90.    Loan payments relating to the LBO received by Chase, CSFB and other participating banks under priority liens, including but not limited to proceeds from the sale of ASARCO's principal assets and other loan payments made by ASARCO or by GRUPO MEXICO (or its affiliates) on behalf of ASARCO (collectively "loan payments") are "conveyances" of ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. § 270.

91.    The loan payments received by Chase and CSFB are not protected from recapture under N. Y. DEBT & CRED. 272(b)  because Chase and CSFB did not act in good faith herein and/or the property received by ASARCO from Chase and CSFB was disproportionately small as compared with the value of the obligation to Chase and CSFB.

92.    In derogation of creditor's rights, including plaintiffs, Chase and CSFB failed to conduct an adequate financial investigation of ASARCO's solvency before loaning and/or making  more than one billion (1,000,000,000) dollars to ASARCO and accepting mortgages encumbering ASARCO's principal assets and/or ignored ASARCO's insolvency.

93.    Chase and CSFB knew or should have known that as a result of the planned liquidation of ASARCO's principal assets:

a.    The fair salable value of ASARCO's remaining assets would be less than

20

ASARCO's liabilities;

b.    These transfers would leave ASARCO with an unreasonably small amount of capital for the business in which it was engaged or proposed to engage in the future;

c.    ASARCO could not reasonably be expected to meet its obligations as the matured.

94.    Chase and CSFB knew or should have known that the debtor was insolvent or would be rendered insolvent by the transfers or would be rendered insolvent as a result of the integrated plan of liquidation, that the debt service imposed by Chase and CSFB would further diminish ASARCO's ability to pay creditors and ASARCO has no reasonable prospects for survival.

95.    Chase and CSFB transferred funds to ASARCO in exchange for a lien against ASARCO's principal assets and accepted loan payments for less than fair consideration with actual or constructive knowledge that the transaction would increase or lead to ASARCO's insolvency and fraud on ASARCO's creditors including plaintiffs.

96.    Plaintiffs are entitled to judgment against defendant Chase and CSFB for the value of the property conveyed and/or judgment declaring the loan payments attendant to the LBO made by or on behalf of ASARCO to Chase and CSFB to be fraudulent as to the Debts owed plaintiffs pursuant to DEBT. & CRED. §§ 273, 274, 275 & 276. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' SIXTH CLAIM FOR RELIEF
#### (*Fraudulent Conveyance: Insurance Proceeds*)

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-96 and for their Sixth Claim for Relief state as follows:

21

97.    Plaintiffs all have "claims" against ASARCO and are therefore "creditors" of ASARCO under the Act. N. Y. DEBT. & CRED. § 270 ASARCO is liable to plaintiffs and therefore is a "debtor" pursuant to the Act. N. Y. DEBT. & CRED. § 270.

98.    The heavy discounting of future insurance proceeds and the transfer of said insurance proceeds at the direction of GRUPO MEXICO or its affiliates to ASARCO's general operating fund and the subsequent disbursement of those monies are "conveyances" of ASARCO's (the debtor's) property pursuant to the Act.

99.    At the time the insurance proceeds were conveyed, ASARCO was insolvent or would be rendered insolvent as a result of the transfer and/or the integrated plan of liquidation.

100.    As a result of the conveyance of the insurance proceeds and/or the integrated plan of liquidation, ASARCO lacked sufficient capital to continue its traditional business operations.

101.    The transfer of the insurance proceeds occurred at a time when ASARCO, GRUPO MEXICO and GRUPO MEXICO's affiliates knew or believed ASARCO would incur debts which it would be unable to pay as they matured.

102.    The transfer of the insurance proceeds was undertaken with the intent to hinder, delay or defraud ASARCO's creditors.

103.    Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and its affiliates declaring the conveyance of the insurance proceeds to be fraudulent as to the Debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. §§ 273, 274, 275 & 276.  Plaintiffs are entitled to equitable and legal relief thereto.

### PLAINTIFFS' SEVENTH CLAIM FOR RELIEF
*(Fraudulent Conveyance: Transfer to Insiders)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-103 and for their

Seventh Claim for Relief state as follows:

104.    GRUPO MEXICO, AMC, GMMI, Mexicana de Cobre, S.A. de C.V.,
Controladora Minera Mexico, S.A. de C.V. and ASARCO are all interrelated companies,
affiliates and "insiders" owned or controlled by GRUPO MEXICO.

105.    As part of the alleged consideration for the transfer of ASARCO's interest in
SPCC to GRUPO MEXICO and its affiliates, ASARCO allegedly received debt forgiveness of
an antecedent inter-company debt from affiliates of GRUPO MEXICO including AMC and/or
Mexicana de Cobre S.A. de C.V.

106.    The forgiveness of inter-company debt is a "conveyance" within the meaning of
the Act.  N. Y. Debt. & Cred. §270.

107.    At the time of the debt forgiveness, ASARCO was either insolvent or rendered
insolvent as a result of redemption/share repurchase of its stock and the conveyance of its
principal assets and/or the execution of the integrated plan of liquidation.

108.    The conveyance by an insolvent to an affiliate or insider in satisfaction of an
antecedent debt lacks good faith and is constructively fraudulent.

109.    Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and
MEXICO de COBRE S.A. C.V. declaring the conveyance of the SPCC stock in exchange for
debt forgiveness to be fraudulent as to debts owed plaintiffs pursuant to N. Y. DEBT & CRED. §
273.  Plaintiffs are entitled to legal and equitable relief thereto.

### PLAINTIFFS' EIGHTH CLAIM FOR RELIEF
*(Professional Negligence and Misrepresentation: As to Defendant Ernst & Young)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-109 and for their Eighth
Claim for Relief state as follows:

23

110.    Defendants ERNST & YOUNG LLP and ERNST & YOUNG CORPORATE FINANCE LLC (collectively "Ernst & Young") were engaged to provide an opinion as to the value of 43,348,949 shares of Class A Common Stock of Southern Peru Copper Company representing 54.18% of the voting shares of that publically traded corporation which were held by SPHC, a wholly owned subsidiary of ASARCO. ("stock interest").

111.    Ernst & Young expressed a professional valuation with full knowledge that its opinion would be relied upon by a limited class of third parties to which Ernst & Young owed a duty of care, including the United States Justice Department, The Federal Courts of the United States and plaintiffs.

112.    The valuation opinion of Ernst & Young provided the principal basis for the United States District Court for the District of Arizona to approve the sale of the stock interest to Grupo and/or its wholly owned subsidiary AMC to the detriment of plaintiffs.

113.    Ernest & Young recklessly and knowingly and without the professional competence required of a Certified Public Accounting firm sold an opinion letter, which falsely represented that the fair value of ASARCO's controlling interest in SPCC was worth less than the book value of ASARCO's share of the underlying assets of the company.

114.    Ernst & Young had a duty to plaintiffs to issue an opinion based on impartial and independent knowledge of the copper industry.  Despite knowing that the purchaser of the stock interest was an insider with full information regarding the company, the company's prospects and the copper market,  Ernst & Young breached its duty to plaintiffs by undervaluing the stock interest based on information provided by the purchaser, Grupo and/or entities controlled by Grupo.

115.    Ernst & Young had a duty to plaintiffs to be competent to issue an opinion as to

24

the value of SPCC as a going concern. Without taking into consideration SPCC's on-going

expansion of its mining operations and the increasing value of its copper reserves in a rising

copper market, Ernst & Young's valuation negligently only reflects historic and public financial

information.

116.   Ernst and Young breached its duty to plaintiffs by failing to exercise due care and

the professional competence required of a Certified Public Accounting firm and by issuing an

opinion which it knew or should have known grossly understated the value of the stock interest,

thereby allowing the stock interest to be sold to Grupo for less than fair and adequate

consideration, placing ASARCO's most valuable asset outside the direct reach of creditors.

117.   Plaintiffs are entitled to judgment against Ernst & Young for damages resulting

from its professional negligence and misrepresentation as to the value of the stock interest.

### PLAINTIFFS' NINTH CLAIM FOR RELIEF
*(Breach of Fiduciary Duty:  ASARCO's Officer's & Directors)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -117 and for

their Ninth Claim for Relief state as follows:

118.   Defendants GERMAN LARREA MOTA-VELASCO and OSCAR GONZALES

ROCHA  were Officers and Directors of ASARCO (collectively "Director Defendants") when

the principal assets of ASARCO were being liquidated.

119.   The sale of ASARCO's principal assets for less than fair and adequate

consideration and the misappropriation of the proceeds of the sale for the benefit of Defendants

and to the detriment of ASARCO's unsecured creditors was undertaken at a time when

ASARCO was unable to pay its debts as they became due, its liabilities exceeded its assets and/or

ASARCO was insolvent.

120.   The sale of ASARCO's principal assets for less than adequate consideration, left ASARCO with unreasonably small capital to continue historic business operations and resulted in insolvency, the likelihood of insolvency and/or the unreasonable risk of insolvency.

121.   The officers and directors of a corporation which is insolvent, or on the brink of insolvency, owe a fiduciary duty to the corporation, to the employees of the corporation and the corporation's unsecured creditors. By selling the principal assets of ASARCO for less than adequate consideration, these Director Defendants breached their fiduciary duties of care and duties of loyalty to the ASARCO, ASARCO'S employees and ASARCO's unsecured creditors including Plaintiffs.

122.   The liquidation of ASARCO's principal assets was not undertaken in good faith, was undertaken without full compliance with statutory procedures designed to protect the rights of creditors, involved intentional misconduct and/or resulted in improper personal benefit.

123.   The actions of these Defendant Directors were grossly negligent and/or undertaken with reckless disregard for the rights of plaintiffs.

124.   Pursuant to N. Y. Bus. Corp. Law § 720 (McKinney 2004), Defendant Directors must account and respond in damages for the amount by which less than full value was realized by ASARCO upon the liquidation of its principal assets.

125.   Plaintiffs are entitled to judgment against Defendant Directors for the losses sustained by creditors through the depletion of ASARCO's principal assets.

### PLAINTIFFS' TENTH CLAIM FOR RELIEF
*(Aiding and Abetting Breach of Fiduciary Duty: Ernst & Young and CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -125 and for

their Tenth Claim for Relief state as follows:

126.    Defendant CSFB served as financial advisor to ASARCO's Board of Directors at the time the LBO was endorsed by the Board.  CSFB evaluated and advised ASARCO's Board of Directors regarding the sale of the company, recommending the LBO proposed by GRUPO MEXICO and rejecting the merger of equals proposed by Phelps Dodge Corporation.  CSFB then personally benefitted from the transaction by becoming a secured creditor of ASARCO.  The LBO directly caused ASARCO's insolvency.

127.    Defendant Ernst & Young served as ASARCO's financial advisor from August 15, 2002 until March 27, 2003.  As financial advisor, Ernst & Young recommended the monetization of ASARCO's general liability insurance policies and the use of these insurance proceeds for regular business expenses, to the detriment of parties this insurance was intended to compensate.  Defendant Ernst & Young undervalued ASARCO's interest in SPCC and then approved, supported and championed the sale of ASARCO's interest in SPCC for less than adequate consideration

128.    ASARCO'S Board of Directors owed a fiduciary duty to the corporation, the corporation's employees and ASARCO's unsecured creditors including Plaintiffs.

129.    By and through the LBO, the leveraging of ASARCO's principal assets and the sale of ASARCO's principal assets for less than adequate consideration, ASARCO's Board of Directors breached its fiduciary duty to these parties, including Plaintiffs.

130.    Defendants Ernst & Young and CSFB knowingly participated, orchestrated and encouraged the breach of fiduciary duty by ASARCO's Directors.

131.    Plaintiffs are entitled to judgment against Defendants Ernst & Young and CSFB for aiding and abetting breach of fiduciary duty.

27

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request this Court:

(1)    Award actual monetary damages, attorney's fees and costs against defendants.

(2)    Award punitive damages against these defendants who have engaged in actual fraud as to the Debts owed plaintiffs in an amount not less than three times actual damages.

(3)    Set aside or annul the conveyances described herein as fraudulent to the extent necessary to satisfy plaintiffs' claims, authorize attachment or levy of execution upon the property wrongfully conveyed, place ASARCO's wrongly conveyed assets in trust and/or appoint a receiver to hold and manage those assets of ASARCO for payment of creditor claims.

(4)    And/or make any order which the circumstances of the case may require.

Respectfully submitted, **264795**

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
120 Wall Street-15th Floor
New York, NY 10038
(212) 558-5900
FAX (212) 363-6848

By: _____
Gary Klein, Esq.

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

FILED
2/7/05
COUNTY CLERK
NEW YORK COUNTY

FEB. 27 2007

28

## ATTORNEY VERIFICATION

**GARY KLEIN**, hereby affirms that the following is true, under penalties of perjury:

I am an associate of the firm of **WEITZ & LUXENBERG, P.C.**, attorneys for the plaintiff(s) in the within action; I have read the foregoing Summons and Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true. The reason this verification is made by your affiant and not by the plaintiff is that the plaintiff herein resides in a County other than the one in which **WEITZ & LUXENBERG, P.C.** maintains its offices.

The grounds of my belief as to all matters not stated upon my own knowledge are the contents of our office file.

Dated:   New York, New York
         February 7, 2005

                                        _____
                                        Gary Klein, ESQ.