

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALFPAP,

Plaintiff(s),

-against-

GRUPO MEXICO S. A. de C.V., a Mexican
Corporation, SOUTHERN PERU HOLDING
CORPORATION, a Delaware Corporation,
SOUTHERN PERU HOLDING
CORPORATION II, a Delaware Corporation,
GRUPO MINERO MEXICO
INTERNACIONAL, S. A. DE C.V., a Mexican
Corporation, COMPANIA MEXICANA de
COBRE, a Mexican Corporation, JP MORGAN
CHASE & COMPANY f/k/a CHASE
MANHATTAN BANK & TRUST COMPANY,
a Delaware Corporation AMERICAS MINING
CORPORATION, a Delaware Corporation,
ERNST & YOUNG LLP, ERNST & YOUNG
CORPORATE FINANCE, LLC, GERMAN
LARREA MOTA-VAELASCO, Officer and
Director of ASARCO, Inc., OSCAR GONZALES
ROCHA Officer and Director of ASARCO, Inc.,
DANIEL TELLECHEA SALIDO Officer and
Director of ASARCO, Inc.

Defendant(s)

---

Index No.:

**SUMMONS**

04114728

**FILED**

OCT 15 2004

NEW YORK
COUNTY CLERKS OFFICE

To the above named Defendants

   **You are hereby summoned** to answer the Complaint in this action and to serve a copy of

your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance,

on the Plaintiffs' Attorney(s) within 20 days after the service of this summons, exclusive of the day

of service (or within 30 days after the service is complete if this summons is not personally delivered

to you within the State of New York); and in case of your failure to appear or answer, judgment will

be taken against you by default for the relief demanded in the Complaint.

Dated:

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
180 Maiden Lane
New York, NY 10038
(212)558-5500
FAX (212)344-5461

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

264789

FEB. 27. 2007

THAT I HAVE COMPARED THIS
COPY WITH THE ORIGINAL
FILED IN MY OFFICE ON

10/15/04

FILED
10/15/04
COUNTY CLERK
NEW YORK COUNTY



**Defendants' Addresses:**

GRUPO MEXICO S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

SOUTHERN PERU HOLDING CORPORATION
2575 East Camelback Road
Phoenix, Arizona

SOUTHERN PERU HOLDING CORPORATION II
2575 East Camelback Road
Phoenix, Arizona

GRUPO MEXICO MINERO
MEXICO INTERNACIONAL, S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

COMPANIA MEXICANA de COBRE
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

AMERICAS MINING CORPORATION
2575 East Camelback Road
Phoenix, Arizona

JP MORGAN CHASE f/k/a CHASE
MANHATTAN BANK
c/o CT Corporation System
111 Eighth Avenue
New York, New York 10011

ERNST & YOUNG, LLP
787 Seventh Avenue
New York, NY 10019



ERNST & YOUNG CORPORATE
FINANCE, LLC
787 Seventh Avenue
New York, New York   10019

GERMAN LARREA MOTA-VAELASCO
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760
OSCAR GONZALES ROCHA
2575 East Camelback Road
Phoenix, Arizona

DANIELTELLECHEA SALIDO
2575 East Camelback Road
Phoenix, Arizona

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALFPAP,

             Plaintiff(s),

        -against-                Index No.:

GRUPO MEXICO S. A. de C.V., a Mexican     **VERIFIED COMPLAINT**
Corporation, SOUTHERN PERU HOLDING
CORPORATION, a Delaware Corporation,
S O U T H E R N     P E R U     H O L D I N G
CORPORATION II, a Delaware Corporation,
G R U P O     M I N E R O     M E X I C O
INTERNACIONAL, S. A. DE C.V., a Mexican
Corporation, COMPANIA MEXICANA de
COBRE, a Mexican Corporation, JP MORGAN
CHASE & COMPANY f/k/a CHASE
MANHATTAN BANK & TRUST COMPANY,
a Delaware Corporation AMERICAS MINING
CORPORATION, a Delaware Corporation,
ERNST & YOUNG LLP, ERNST & YOUNG
CORPORATE FINANCE, LLC, GERMAN
LARREA MOTA-VAELASCO, Officer and
Director of ASARCO, Inc., OSCAR GONZALES
ROCHA Officer and Director of ASARCO, Inc.,
DANIEL TELLECHEA SALIDO Officer and
Director of ASARCO, Inc.

             Defendant(s)

---

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.

180 MAIDEN LANE
NEW YORK, N.Y. 10038

Plaintiffs, by their attorneys, WEITZ & LUXENBERG, P.C. and BARON & BUDD, P.C.

for their suit against Defendants respectfully allege as follows:

## PRELIMINARY STATEMENT

1.      This case concerns the acquisition and systematic liquidation of a multi-

billion dollar, one hundred year old, U.S. Corporation for the benefit of foreign investors and to the detriment of resident creditors  The companies and assets which made up ASARCO were raided, sold for profit and transferred beyond the direct reach of individuals ASARCO injured and owes compensation.

2.      This action arises under the New York Fraudulent Conveyance Act, DEBT. & CRED. § 270 *et. seq.* and the common law of New York concerning fraud.  Plaintiffs all have claims against ASARCO for personal injuries related to asbestos exposure, and are all creditors of ASARCO.

## JURISDICTION, VENUE & CHOICE OF LAW

3.      Jurisdiction and venue are proper in the State of New York and New York County pursuant to N.Y. C.P. L. R. art. 5 § 503.   New York State Law governs the resolution of plaintiffs' claims for relief.

4.      The parties and the principal transfers complained of herein all have a significant connection with this jurisdiction.  At the time of the LBO, ASARCO's corporate headquarters was located in New York City.  The corporate headquarters of defendant JP Morgan Chase & Company f/k/a Chase Manhattan Bank & Trust Co. ("Chase") is located in New York City.

5.      All defendants are authorized to transact business in the state and/or have contracted to supply goods and services within the state.  All defendant corporations and business entities have committed tortious acts within the state of New York.

6.      ASARCO, defendant GRUPO MEXICO, defendant Americas Mining Corporation ("AMC") and defendant CHASE have all contractually waived any right they

might have to contest the jurisdiction of this Court relating to the conveyances contested

herein.   Further, these defendants have designated within those same contracts that New

York State Law governs principal transactions involved in the LBO.

7.     Defendant Ernst & Young, LLP and Ernst & Young Corporate Finance

LLC regularly conduct business in this state and county.

8.     The State of New York has the most significant interest in the outcome of

this litigation.

**Plaintiffs**

9.     Plaintiffs are present unsecured creditors of ASARCO whose claims have

not been satisfied.   Plaintiffs are persons who were injured by ASARCO and whose tort

claims were both filed and unfiled against ASARCO at the time of the fraudulent

conveyance(s) at issue.   Plaintiffs all have "claims" against ASARCO and are therefore

"creditors" as that term is defined under the New York Fraudulent Conveyance Act ("the

Act"), DEBT & CRED. § 270.

10.     The Plaintiffs are by name and citizenship: PHILLIP NELSON BURNS, a

citizen of the State of Arizona; MIRJANA PAVKOVICH, Administrator of the Estate of

Rade Pavkovich, Deceased, a citizen of the State of Arizona; and WARREN ELMER

HALFPAP, a citizen of the State of New York.

**Defendants**

11.     Defendant GRUPO MEXICO S. A. de C.V. ("GRUPO MEXICO") is a

Mexican Corporation.   GRUPO MEXICO may be served with process pursuant to the

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

3

Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon GRUPO MEXICO MEXICO, S.A. DE C.V., at its headquarters at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

12.     Defendants SOUTHERN PERU HOLDING CORPORATION (SPHC) and SOUTHERN PERU HOLDING CORPORATION II (collectively "SPHC") are incorporated in the State of Delaware and maintain their corporate headquarters at 2575 East Camelback Road, Phoenix Arizona.  SPHC is a holding company and was formed as a wholly owned subsidiary of ASARCO to facilitate the transfer of ASARCO's interest in Southern Peru Copper Corporation ("SPCC") to defendant GRUPO MEXICO S.A. de C.V. and/or its affiliates.

13.     Defendant GRUPO MEXICO MINERO MEXICO INTERNACIONAL, S.A. DE C.V. ("GMMI") is a Mexican corporation. GMMI may be served with process pursuant to the Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon GRUPO MEXICO MINERO MEXICO INTERNACIONAL, S.A. DE C.V., at its headquarters at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

14.     Defendant COMPANIA MEXICANA de COBRE is a Mexican corporation which may be served with process pursuant to the Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters

4

(the Hague Convention) by providing the Summons and Complaint in proper form to the

Mexican Central Authority, which will provide formal service upon CONTROLADORA

MINERA MEXICO, S.A. DE C.V., at its headquarters at Avenue Baja California 200,

Colonia Roma Sur 06760 Mexico City, Mexico.

15.    Defendant AMERICAS MINING CORPORATION ("AMC") is

incorporated in the State of Delaware and maintains its principal place of business at 2575

East Camelback Road, Phoenix, Arizona.   AMC is a wholly owned subsidiary of GRUPO

MEXICO MEXICO S.A. de C.V.

16.    Defendant JPMORGAN CHASE & COMPANY f/k/a CHASE

MANHATTAN BANK ("Chase") is a Delaware Corporations whose corporate

headquarters are located in New York City, New York.  Chase Manhattan Bank is a

"legacy" company of JP Morgan Chase & Co.

17.    Defendant ERNST & YOUNG, LLP and Defendant ERNST & YOUNG

CORPORATE FINANCE, LLC (collectively "Ernst & Young") are limited liability

companies and accounting firms with worldwide offices including offices in New York

City, New York.

18.    Defendant GERMAN LARREA MOTA-VAELASCO was the Chairman

and Chief Executive Officer of ASARCO from November 1999 and at the date of the

transfer of SPCC to AMC.  He was also Chairman of the Board of SPCC and Chief

Executive Officer and Chairman of the Board of Grupo Mexico, and he owes a fiduciary

duty to ASARCO's creditors, including plaintiffs. Mr. Mota-Vaelasco may be served with

process pursuant to the Convention On The Service Abroad Of Judicial And Extrajudicial

Documents In Civil Or Commercial Matters (the Hague Convention) by providing the

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon Mr. Mota-Vaelasco at his place of business at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

19.    Defendant OSCAR GONZALES ROCHA was a Director of ASARCO at the date of the transfer of SPCC to AMC. At that time he was also President, General Director and Chief Operating Officer of SPCC, and he owes a fiduciary duty to ASARCO's creditors, including plaintiffs. Mr. Rocha may be served with process at his place of business at its principal place of business at 2575 East Camelback Road, Phoenix, Arizona.

20.    Defendant DANIEL TELLECHEA SALIDO was a Director, Executive Vice President and Chief Financial Officer of ASARCO at the date of the transfer of SPCC to AMC. At that time he was also, Director and Vice President of Finance for SPCC and Managing Director for Administration and Finance of Grupo Mexico, and he owes a fiduciary duty to ASARCO's creditors, including plaintiffs. Mr. Salido may be served with process at his place of business at its principal place of business at 2575 East Camelback Road, Phoenix, Arizona.

## BACKGROUND ALLEGATIONS

A.    **ASARCO BEFORE THE LEVERAGED BUYOUT**

21.    Prior to the leveraged buyout (LBO) of ASARCO by GRUPO MEXICO, ASARCO's publically filed financial statements portrayed ASARCO as a solvent, international, publicly traded corporation, listed on the New York Stock Exchange with more than four billion dollars in assets and a low debt to asset ratio.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

6

22.     However, the Defendants, including the Officers and Directors of ASARCO, were aware of multiple claims against the company for environmental cleanup relating to ASARCO's mining and smelting operations in the United States and thousands of asbestos related personal injury claims stemming from the operation of ASARCO's own facilities and those of two of ASARCO's subsidiaries Capco Pipe Company (asbestos product manufacturer and distributor) and LAQ (asbestos mining operation).

23.     Taking these present and anticipated creditor claims into account, ASARCO was  insolvent or facing insolvency prior to the LBO.

24.     ASARCO's Directors decided to sell the company.  The Directors, all insiders and shareholders of ASARCO, entertained and accepted tender offers from Phelps Dodge Corporation and defendant GRUPO MEXICO.

25.     The sale of ASARCO and the liquidation of the company's principal assets prior to the settlement of its environmental claims, including asbestos claims, and its other anticipated unsecured creditor claims, unlawfully favored shareholders at the expense of creditors including Plaintiffs.

**B.     OVERVIEW OF GRUPO MEXICO'S TENDER
        OFFER AND INTEGRATED PLAN OF LIQUIDATION**

26.     GRUPO MEXICO offered to purchase ASARCO's stock for cash through a leveraged buyout.  GRUPO MEXICO's tender offer consisted of $29.75 per share, a guarantee of a loan from Chase to ASARCO to repurchase its own stock and assumption of  $1.2 billion dollars in "pre-existing corporate debt."  GRUPO MEXICO's proposal did not, however, involve actually paying-off all of ASARCO's "pre-existing corporate debt."

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

7

27.    GRUPO MEXICO would then force ASARCO to become responsible for the Chase loan, requiring ASARCO (rather than GRUPO MEXICO) to pay for its own buyout by GRUPO MEXICO.  ASARCO was thus forced to repay the Chase loan made to GRUPO MEXICO by cannibalizing itself through the sale of its own assets.

28.    As for the "pre-existing corporate debt" most of the debt was not owed or guaranteed by ASARCO.  This debt was SPCC's, and it arose out of an expansion project of SPCC's copper mining operations.  Nevertheless, upon information and belief, GRUPO MEXICO also required that assets of ASARCO be liquidated to pay down SPCC's debt. Eventually, having used its own assets to pay down SPCC's debt, ASARCO transferred its SPCC stock to GRUPO MEXICO for unreasonably small consideration.

## C.    STEP 1: GRUPO MEXICO's PURCHASE AND PRIVATIZATION OF ASARCO

29.    In November 1999, GRUPO MEXICO purchased ASARCO in a "bust up" acquisition wherein the non-mining assets of ASARCO were sold to finance the purchase.

30.    The acquisition of ASARCO by GRUPO MEXICO was accomplished through the redemption of ASARCO's stock.  Prior to its tender offer, GRUPO MEXICO acquired slightly more than 9% of the outstanding ASARCO common shares and was the company's largest single shareholder.  As ASARCO repurchased its own shares, GRUPO MEXICO's ownership interest in ASARCO increased.

31.    In connection with the acquisition, GRUPO MEXICO caused ASARCO to merge with a GRUPO MEXICO merger subsidiary with "ASARCO" being the survivor.  GRUPO MEXICO's ASARCO stock was then transferred to another holding company, defendant Americas Mining Corporation (AMC).

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

8

32.     After redemption of the other ASARCO shareholders, GRUPO MEXICO privatized ASARCO in anticipation of liquidating its non-mining assets. ASARCO was de-listed from the New York Stock Exchange, and ASARCO was no longer required to publish its financial reports.

33.     In a series of related, integrated and designed transactions, GRUPO MEXICO acquired ASARCO by means of a leveraged buyout for less than fair consideration, without good faith and in derogation of creditors' rights, including plaintiffs'.

34.     GRUPO MEXICO's acquisition costs for the purchase of ASARCO were paid with money borrowed by ASARCO   In November 1999, GRUPO MEXICO negotiated with Chase for financing to redeem ASARCO's stock.

35.     To pay initial acquisition costs, GRUPO MEXICO caused ASARCO (through the GRUPO MEXICO merger subsidiary) to borrow eight hundred seventeen million dollars ($817,000,000) ("acquisition loan") from defendant Chase.

36.     Chase also set up and syndicated a four hundred fifty million dollar ($450,000,000) revolving line of credit for ASARCO which added to the company's debt load and debt service.

37.     As collateral, ASARCO pledged its ownership interest in SPCC, Enthone OMI and related companies (collectively "Enthone") and American Limestone Company, Inc. and related companies (collectively "American Limestone") (collectively "ASARCO's principal assets"). As a part of GRUPO MEXICO's acquisition and in anticipation of transfer to GRUPO MEXICO, ASARCO placed its SPCC stock in a wholly owned subsidiary and holding company, Southern Peru Holding Corporation II ("SPHC"). At

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

9

the time of acquisition, ASARCO owned approximately 54% of the voting stock of

SPCC.

38.    Chase and the other participating banks expected to be paid, and were paid,

as priority lenders, out of the proceeds of the sale of ASARCO's speciality chemical

division (Enthone) and ASARCO's aggregates division (American Limestone) and the

proceeds of the sale of ASARCO's SPCC stock.

39.    Defendant Chase knew it was providing the senior debt necessary to

acquire and liquidate ASARCO's principal assets, and knew or should have known that

ASARCO was already insolvent because of environmental and asbestos liabilities or would

be rendered insolvent or without sufficient capital to continue normal business operations

as a result of these conveyances.

40.    Chase knew that ASARCO's outstanding unsecured environmental and

personal injury creditors would not be satisfied under the planned liquidation.

41.    The recitals within the loan agreement state that the principal purpose of

the  acquisition loan was to repurchase ASARCO's stock from its shareholders.   Chase

knew  the proceeds of the loan would not accrue to the benefit of ASARCO or its

creditors and thus represented unreasonably small capital return for the encumbrance.

Chase knew that the loan proceeds were to be used for the benefit of third parties,

GRUPO MEXICO, AMC and the former shareholders of ASARCO, who were "insiders"

to the transaction.

**D.    STEP 2:  THE LIQUIDATION OF ASARCO'S PRINCIPAL ASSETS**

42.    After the acquisition, GRUPO MEXICO moved ASARCO's corporate

headquarters from New York to Phoenix, Arizona, where ASARCO shared office space

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

with AMC and SPHC. GRUPO MEXICO replaced ASARCO's Officers and Directors

with designees from its own Board. ASARCO became a wholly owed subsidiary of

AMC. After acquisition, ASARCO lost its separate identity and is totally controlled by

GRUPO MEXICO and its affiliates.

43.      GRUPO MEXICO forced ASARCO to sell its assets to pay GRUPO

MEXICO'S acquisition costs. At GRUPO MEXICO's direction, approximately $17

million of ASARCO's business equipment was sold at auction.

44.      At GRUPO MEXICO's direction and as had been agreed by Chase,

ASARCO sold its profitable speciality chemical division (Enthone) to Cookson LLP of

England for five hundred three million dollars ($503,000,000).

45.      At GRUPO MEXICO's direction and as had been agreed by Chase,

ASARCO sold its profitable aggregates division (American Limestone) to Rinker Group

LLP of Australia for two hundred eleven million dollars ($211,000,000).

46.      The proceeds of these sales did not accrue to the benefit of ASARCO or its

creditors since these monies were applied to acquisition debt and only benefitted Chase,

GRUPO MEXICO and ASARCO's former shareholders to the exclusion of existing and

future environmental and asbestos claimants. These conveyances for less than fair

consideration, were made without good faith, created or added to ASARCO's insolvency

and insufficiency of capital and were in derogation of creditors' rights including the rights

of the plaintiffs.

47.      At GRUPO MEXICO's direction, assets of ASARCO were redirected to

the detriment of ASARCO's creditors. Settlement proceeds relating to litigation with

ASARCO's excess liability insurers were not segregated and held to pay the known

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

liability claims to which the insurance coverage related. As clear evidence of the integrated plan to liquidate ASARCO to the detriment of unsecured creditors, the future proceeds of the insurance settlement were sold at heavy discount, and the cash was transferred to ASARCO's operating account and spent.

48.    In 2003, at GRUPO MEXICO's direction as had been agreed by Chase, ASARCO's interest in SPCC was transferred to AMC, another wholly owned subsidiary of GRUPO MEXICO. In consideration for this conveyance, GRUPO MEXICO paid Chase and the syndicate of banks, on behalf of ASARCO, four hundred fifty million dollars ($450,000,000) in repayment of loans arising out of the acquisition, "forgave" some inter-company debt to Compania Mexicana de Cobre also related to acquisition costs and agreed to pay two hundred forty three million dollars ($243,000,000) at some future date. Part of this last payment may accrue to the benefit ASARCO's unsecured creditors (principally as part of a settlement agreement with the United States on some environmental claims) but it represents an amount far less than a fair equivalent for the asset.

**E.    ASARCO SUED FOR FRAUDULENT CONVEYANCE
BY THE UNITED STATES GOVERNMENT**

49.    After the transfer of ASARCO's most valuable remaining asset (the SPCC stock held by SPHC) was proposed, the United States (an unsecured creditor with environmental based claims) brought suit against ASARCO for fraudulent conveyance. (*United States of America v. Asarco Incorporated and Southern Peru Holding Corporation* (W. D.Wash.), (later transferred to D. Ariz.).

50.    During the course of the Government litigation, ASARCO admitted it was

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

no longer able to pay its debts as they matured.

51.     The United States eventually settled its claims against ASARCO and SPHC for one hundred million dollars ($100,000,000), an amount far less than the liability owed on just matured environmental claims, and withdrew its objection to the transfer. This settlement provided no benefits or protections whatsoever for ASARCO's other unsecured creditors including plaintiffs.

52.     Upon information and belief, the United States settled its claim cheaply because the SPCC stock was already encumbered by the acquisition loan from defendant Chase, ASARCO's assets had already been depleted by the sale of Enthone and American Limestone, ASARCO was too thinly capitalized to continue many of its business operations and because of financial misrepresentations of ASARCO, GRUPO MEXICO and defendant Ernst & Young as to the value of ASARCO's interest in SPCC.

53.     The transfer of ASARCO's interest in SPCC was facilitated by defendant Ernst & Young who recklessly and knowingly provided an opinion undervaluing this asset. As a direct result of the misrepresentations of Ernst & Young, plaintiffs' rights were undermined.

F.     **ASARCO AFTER THE LBO AND RELATED ASSET SALES**

54.     After the conveyances described herein, ASARCO was left an insolvent shell. The present salable value of ASARCO's assets is less than the amount required to pay the corporation's probable liabilities, including the personal injury claims of plaintiffs. ASARCO lacks sufficient resources to timely pay its creditors, including plaintiffs. ASARCO is too thinly capitalized to continue the business operations it maintained prior to the sale of SPCC. Stripped of its most valuable assets, ASARCO is on the verge of

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

13

filing for Bankruptcy protection.

55.    A just outcome for plaintiffs, whose claims against ASARCO remain unsatisfied, requires that the foregoing transactions be viewed as part of an integrated plan, executed in a period of less than five years,  resulting in conveyances which are fraudulent to plaintiffs.

### PLAINTIFFS' FIRST CLAIM FOR RELIEF
*(Constructive Fraud -Conveyance Resulting in Insolvency)*

56.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-55 and for their First Claim for Relief state as follows:

57.    ASARCO owes a  "debt" to plaintiffs as that term is defined under the New York Fraudulent Conveyance Act ("the Act").   N. Y. DEBT. & CRED. § 270.

58.    The sale of ASARCO to GRUPO MEXICO in November 1999 by and through a leveraged buyout is a "conveyance" as that term is defined under the Act.  N. Y. DEBT. & CRED. § 270.

59.    The encumbrance of ASARCO's interests in Enthone, American Limestone and SPCC in furtherance of the GRUPO MEXICO LBO of ASARCO, is a "conveyance" of ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. § 270.

60.    The sale at auction certain of ASARCO's business equipment is a "conveyance" of ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. § 270.

61.    The transfer of GRUPO MEXICO's ownership interest in ASARCO (as merged with ASMEX) to AMC is a "conveyance" of  ASARCO's (the debtor's) property

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

62.     The sale of Enthone, American Limestone and ASARCO's ownership interest in SPCC ("ASARCO's principal assets") separately and in connection with an integrated plan of liquidation is/are "conveyance(s)" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

63.     The redemption of ASARCO's stock from ASARCO's Directors and other shareholders is a "conveyance" as that term is defined under the Act. N. Y. DEBT. & CRED. § 270.

64.     Plaintiffs have claims against ASARCO for damages resulting from personal injuries occasioned by exposure to asbestos. Plaintiffs are "creditors" of ASARCO under the Act. N. Y. DEBT. & CRED. § 270.

65.     ASARCO was purchased by GRUPO MEXICO, its stock was redeemed, certain of its business equipment was liquidated at auction and its principal assets encumbered and sold at a time when ASARCO was either insolvent or would become insolvent as a result of the liquidation of its assets.

66.     ASARCO received less than fair consideration for the redemption of its stock and transfer of controlling interest in the company to GRUPO MEXICO and AMC since the proceeds of the conveyance accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO and Chase) and not to the benefit of ASARCO or its creditors.

67.     ASARCO received less than fair consideration for the encumbrance of its principal assets since the proceeds of the conveyances accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO and Chase) and

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

15

not to the benefit of ASARCO or its creditors.

68.    ASARCO received less than fair consideration for the sale of certain of its

business equipment at auction and the sale of its principal assets since the proceeds of

these conveyances accrued to the benefit of third parties (GRUPO MEXICO, AMC, the

former shareholders of ASARCO and Chase) and not to the benefit of ASARCO or its

creditors.

69.    Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC

declaring the conveyance of ASARCO to GRUPO MEXICO and AMC, the encumbrance

and sale of ASARCO's business equipment and principal assets and the redemption of its

stock to be individually and collectively fraudulent as to the debts owed plaintiffs pursuant

to N. Y. DEBT. & CRED. §273.  Plaintiffs are entitled to appropriate equitable and legal

relief thereto.

### PLAINTIFFS' SECOND CLAIM FOR RELIEF
*(Constructive Fraud- Conveyance Resulting in  Insufficiency of  Capital)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-69 and

for their Second Claim for Relief state as follows:

70.    At the direction of GRUPO MEXICO and AMC, ASARCO redeemed its

stock and conveyed away certain of its business equipment and its principal assets without

fair consideration, when ASARCO was engaging or about to engage in a business or

transaction for which the property remaining in ASARCO's hands after the conveyance

represented unreasonably small capital.

71.    Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC

declaring the encumbrance and conveyance of ASARCO's business equipment and

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

16

principal assets and redemption of ASARCO's stock individually and collectively, fraudulent as to the Debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. § 274. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' THIRD CLAIM FOR RELIEF
*(Actual Fraud: Conveyance in Anticipation of Debts)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-71 and for their Third Claim for Relief state as follows:

72.    In a series of transactions undertaken at the direction of GRUPO MEXICO and AMC, ASARCO was sold to GRUPO MEXICO and transferred to AMC, ASARCO's stock was redeemed and ASARCO's business equipment and principal assets were encumbered and/or sold for less than fair consideration, with the intent or belief that ASARCO would incur debts beyond its ability to pay as they mature.

73.    GRUPO MEXICO and AMC were aware of plaintiffs' (and other, environmental) claims against ASARCO prior to the conveyances referenced herein, and these defendants knew these claims would remain unsatisfied under the integrated plan of liquidation.

74.    Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring the sale of ASARCO to GRUPO MEXICO, the transfer of ASARCO to AMC, the redemption of ASARCO's stock and the encumbrance and conveyance of ASARCO's business equipment and/or principal assets to be fraudulent to the debts owed to plaintiffs pursuant to N.Y. DEBT. & CRED. § 275. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' FOURTH CLAIM FOR RELIEF
*(Actual Fraud: Conveyance with Intent to Frustrate Creditor Claims/Conspiracy)*

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-74 and for their Fourth Claim for Relief state as follows:

75.    The redemption of ASARCO's stock and the sale and liquidation of ASARCO through the LBO were undertaken through an integrated plan and design orchestrated by defendant GRUPO MEXICO and executed with the complicity of others, including AMC and Chase.

76.    The redemption of ASARCO' stock and liquidation of ASARCO's assets occurred when:

a.    ASARCO was insolvent and/or with the knowledge that the transfers, (individually and/or collectively) would result in ASARCO's insolvency;

b.    GRUPO MEXICO, AMC and Chase were aware of pending litigation against ASARCO for environmental claims and personal injury claims related to asbestos exposure which had rendered or would render the company insolvent;

c.    ASARCO lacked adequate financial means to meet its debts as they matured;

d.    The assets transferred were the principal assets of the corporation and made up the majority of the company's assets in value;

e.    The transfers were made for less than fair consideration;

f.    The transfer(s) benefitted insiders including ASARCO's Directors and other former shareholders, GRUPO MEXICO and AMC at the expense of unsecured creditors including plaintiffs.

77.    The redemption of stock and liquidation of ASARCO's assets was designed to strip the company of assets before unsecured creditor claims matured; the redemption of ASARCO' stock and the sale and liquidation of ASARCO's business equipment and principal assets was undertaken with the intent to hinder, delay or defraud creditors.

18

78.    Plaintiffs are entitled to judgment against GRUPO MEXICO, AMC and Chase declaring the sale of ASARCO to GRUPO MEXICO and AMC, the redemption of ASARCO's stock and the encumbrance and conveyance of ASARCO's business equipment and principal assets to be fraudulent pursuant to N.Y. DEBT. & CRED. § 276. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

79.    Because these transfers were fraudulent conveyances, committed with the actual intent to defraud creditors, punitive damages should be recovered from the defendants, jointly and severally, in an amount not less than three-times actual damages.

### PLAINTIFFS' FIFTH CLAIM FOR RELIEF
*(Fraudulent Conveyance: Liability of Transferee Chase)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-79 and for their Fifth Claim for Relief state as follows:

80.    Defendant Chase is the transferee who provided the senior layer of debt necessary to carry out the LBO.

81.    Chase knew the LBO was to be a "bust up" acquisition with the assets of ASARCO to be conveyed away from ASARCO for less than fair consideration since the proceeds of these transfers would not benefit ASARCO or its creditors but would instead accrue to third parties, ASARCO's former shareholders, GRUPO MEXICO and AMC.

82.    Chase knew ASARCO was insolvent just prior to the LBO or would be rendered insolvent as a result of the conveyances attendant to the LBO and/or the debt service Chase imposed for the acquisition and operating loans to ASARCO.

83.    Chase knew ASARCO was to be liquidated and would be left with unreasonably small capital resources to continue its traditional business operations.

19

84.     Chase knew ASARCO was to be liquidated at a time when ASARCO, GRUPO MEXICO and AMC believed ASARCO would incur debts beyond its ability to pay as they matured.

85.     Chase knew the plan of liquidation was undertaken with the intent to hinder, delay and/or defraud creditors.

86.     The encumbrance of ASARCO's principal assets in favor of Chase is a "conveyance" of ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. § 270.

87.     Loan payments relating to the LBO received by Chase and participating banks under priority liens, including but not limited to proceeds from the sale of ASARCO's principal assets and other loan payments made by ASARCO or by GRUPO MEXICO (or its affiliates) on behalf of ASARCO (collectively "loan payments")  are "conveyances" of ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. § 270.

88.     The loan payments received by Chase are not protected from recapture under N. Y. DEBT & CRED. 272(b)  because Chase did not act in good faith herein and/or the property received by ASARCO from Chase was disproportionately small as compared with the value of the obligation to Chase.

89.     In derogation of creditor's rights, including plaintiffs, Chase failed to conduct an adequate financial investigation of ASARCO's solvency before loaning and/or making  more than one billion (1,000,000,000) dollars to ASARCO and accepting mortgages encumbering ASARCO's principal assets.

90.     Chase knew or should have known that as a result of the planned

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

liquidation of ASARCO's principal assets:

    a.    The fair salable value of ASARCO's remaining assets would be less than ASARCO's liabilities;

    b.    These transfers would leave ASARCO with an unreasonably small amount of capital for the business in which it was engaged or proposed to engage in the future;

    c.    ASARCO could not reasonably be expected to meet its obligations as the matured.

91.    Chase knew or should have known that the debtor was insolvent or would be rendered insolvent by the transfers or would be rendered insolvent as a result of the integrated plan of liquidation, that the debt service imposed by Chase would further diminish ASARCO's ability to pay creditors and ASARCO has no reasonable prospects for survival.

92.    Chase transferred funds to ASARCO in exchange for a lien against ASARCO's principal assets and accepted loan payments for less than fair consideration with actual or constructive knowledge that the transaction would increase or lead to ASARCO's insolvency and fraud on ASARCO's creditors including plaintiffs.

93.    Plaintiffs are entitled to judgment against defendant Chase for the value of the property conveyed and/or judgment declaring the loan payments attendant to the LBO made by or on behalf of ASARCO to Chase to be fraudulent as to the Debts owed plaintiffs pursuant to DEBT. & CRED. §§ 273, 274, 275 & 276. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

### PLAINTIFFS' SIXTH CLAIM FOR RELIEF
*(Fraudulent Conveyance: Insurance Proceeds)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-93 and for their

Sixth Claim for Relief state as follows:

94.     Plaintiffs all have "claims" against ASARCO and are therefore "creditors" of ASARCO under the Act.  N. Y. DEBT. & CRED. § 270 ASARCO is liable to plaintiffs and therefore is a "debtor" pursuant to the Act. N. Y. DEBT. & CRED. § 270.

95.     The heavy discounting of future insurance proceeds and the transfer of said insurance proceeds at the direction of GRUPO MEXICO or its affiliates to ASARCO's general operating fund and the subsequent disbursement of those monies are "conveyances" of ASARCO's (the debtor's) property pursuant to the Act.

96.     At the time the insurance proceeds were conveyed, ASARCO was insolvent or would be rendered insolvent as a result of the transfer and/or the integrated plan of liquidation.

97.     As a result of the conveyance of the insurance proceeds and/or the integrated plan of liquidation, ASARCO lacked sufficient capital to continue its traditional business operations.

98.     The transfer of the insurance proceeds occurred at a time when ASARCO, GRUPO MEXICO and GRUPO MEXICO's affiliates knew or believed ASARCO would incur debts which it would be unable to pay as they matured.

99.     The transfer of the insurance proceeds was undertaken with the intent to hinder, delay or defraud ASARCO's creditors.

100.    Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and its affiliates declaring the conveyance of the insurance proceeds to be fraudulent as to the Debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. §§ 273, 274, 275 & 276. Plaintiffs are entitled to equitable and legal relief thereto.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

22

**PLAINTIFFS' SEVENTH CLAIM FOR RELIEF**
(*Fraudulent Conveyance: Transfer to Insiders*)

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-100 and for their

Seventh Claim for Relief state as follows:

101.    GRUPO MEXICO, AMC, GMM, Compania Mexico de Cobra and

ASARCO are all interrelated companies, affiliates and "insiders" owned or controlled by

GRUPO MEXICO.

102.    As part of the alleged consideration for the transfer of ASARCO's interest

in SPCC to GRUPO MEXICO and its affiliates, ASARCO allegedly received debt

forgiveness of an antecedent inter-company debt from Compania Mexico de Cobra, an

affiliate of GRUPO MEXICO.

103.    The forgiveness of inter-company debt is a "conveyance" within the

meaning of the Act.  N. Y. Debt. & Cred. §270.

104.    At the time of the debt forgiveness, ASARCO was either insolvent or

rendered insolvent as a result of redemption of its stock and the conveyance of its

principal assets and/or the execution of the integrated plan of liquidation.

105.    The conveyance by an insolvent to an affiliate or insider in satisfaction of

an antecedent debt lacks good faith and is constructively fraudulent.

106.    Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO

and COMPANIA MEXICO DE COBRA declaring the conveyance of the SPCC stock in

exchange for debt forgiveness to be fraudulent as to debts owed plaintiffs pursuant to N.

Y. DEBT & CRED. § 273.  Plaintiffs are entitled to legal and equitable relief thereto.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

23

### PLAINTIFFS' EIGHTH CLAIM FOR RELIEF
*(Professional Negligence and Misrepresentation: As to Defendant Ernst & Young)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-106 and for their Eighth Claim for Relief state as follows:

107.    Defendants ERNST & YOUNG LLP and ERNST & YOUNG CORPORATE FINANCE LLC (collectively "Ernst & Young") were engaged to provide an opinion as to the value of 43,348,949 shares of Class A Common Stock of Southern Peru Copper Company representing 54.18% of the voting shares of that publically traded corporation which were held by SPHC, a wholly owned subsidiary of ASARCO. ("stock interest").

108.    Ernst & Young expressed a professional valuation with full knowledge that its opinion would be relied upon by a limited class of third parties to which Ernst & Young owed a duty of care, including the United States Justice Department, The Federal Courts of the United States and plaintiffs.

109.    The valuation opinion of Ernst & Young provided the principal basis for the United States District Court for the District of Arizona to approve the sale of the stock interest to Grupo and/or its wholly owned subsidiary AMC to the detriment of plaintiffs.

110.    Ernest & Young recklessly and knowingly and without the professional competence required of a Certified Public Accounting firm sold an opinion letter, which falsely represented that the fair value of ASARCO's controlling interest in SPCC was worth less than the book value of ASARCO's share of the underlying assets of the company.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

24

111.    Ernst & Young had a duty to plaintiffs to issue an opinion based on impartial and independent knowledge of the copper industry.  Despite knowing that the purchaser of the stock interest was an insider with full information regarding the company, the company's prospects and the copper market,  Ernst & Young breached its duty to plaintiffs by undervaluing the stock interest based on information provided by the purchaser, Grupo and/or entities controlled by Grupo.

112.    Ernst & Young had a duty to plaintiffs to be competent to issue an opinion as to the value of SPCC as a going concern. Without taking into consideration SPCC's on-going expansion of its mining operations and the increasing value of its copper reserves in a rising copper market, Ernst & Young's valuation negligently only reflects historic and public financial information.

113.    Ernst and Young breached its duty to plaintiffs by failing to exercise due care and the professional competence required of a Certified Public Accounting firm and by issuing an opinion which it knew or should have known grossly understated the value of the stock interest, thereby allowing the stock interest to be sold to Grupo for less than fair and adequate consideration, placing ASARCO's most valuable asset outside the direct reach of creditors.

114.    Plaintiffs are entitled to judgment against Ernst & Young for damages resulting from its professional negligence and misrepresentation as to the value of the stock interest.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

### PLAINTIFFS' NINTH CLAIM FOR RELIEF
(*Breach of Fiduciary Duty:  ASARCO's Officer's & Directors*)

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -114 and

for their Ninth Claim for Relief state as follows:

115.    Defendants GERMAN LARREA MOTA-VAELASCO, OSCAR GONZALES ROCHA and DANIEL TELLCHA-SALIDO were all Officers and Directors of ASARCO (collectively "Director Defendants") when the principal assets of ASARCO were being liquidated.

116.    The sale of ASARCO's principal assets for less than fair and adequate consideration and the misappropriation of the proceeds of the sale for the benefit of Defendants and to the detriment of ASARCO's creditors was undertaken at a time when ASARCO was unable to pay its debts as they became due and was insolvent or would become insolvent as a direct result of the transfers. Therefore, the individual director and officer defendants owed a fiduciary duty to the creditors of ASARCO, and duty which they breached by going forward with the SPCC transaction.

117.    ASARCO's insolvency was a direct result of the liquidation of ASARCO's principal assets at the institution, approval and direction of the Defendant Directors.

118.    Directors of an insolvent corporation, such as ASARCO, have a fiduciary duty to act for the benefit of creditors of the company.

119.    Director Defendants breached their fiduciary duty to ASARCO's creditors, including plaintiffs, by liquidating assets for less than full and adequate consideration and without full compliance with statutory procedures designed to protect the rights of creditors.

120.    Pursuant to N. Y. Bus. Corp. Law § 720 (McKinney 2004), Defendant Directors must account and respond in damages for the amount by which less than full value was realized by ASARCO upon the liquidation of its principal assets.

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

121.    Plaintiffs are entitled to judgment against Defendant Directors for the losses sustained by creditors through the depletion of ASARCO's principal assets.

## CLAIM FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request this Court:

(1)     Award actual monetary damages, attorney's fees and costs against defendants.

(2)     Award punitive damages against these defendants who have engaged in actual fraud as to the Debts owed plaintiffs in an amount not less than three times actual damages.

(3)     Set aside or annul the conveyances described herein as fraudulent to the extent necessary to satisfy plaintiffs' claims, authorize attachment or levy of execution upon the property wrongfully conveyed, place ASARCO's wrongly conveyed assets in trust and/or appoint a receiver to hold and manage those assets of ASARCO for payment of creditor claims.

(4)     And/or make any order which the circumstances of the case may require.

Respectfully submitted,

FEB. 27 2007

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
180 Maiden Lane
New York, NY 10038
(212)558-5500
FAX (212)344-5461

By:

Arthur Luxenberg

FILED
10|15|04
COUNTY CLERK
NEW YORK COUNTY

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

27

BARON & BUDD
A PROFESSIONAL CORPORATION
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

By:

Alan B. Rich
Texas State Bar No. 16852350

## RIDER

**Defendants' Addresses:**

GRUPO MEXICO S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

SOUTHERN PERU HOLDING CORPORATION
2575 East Camelback Road
Phoenix, Arizona

SOUTHERN PERU HOLDING CORPORATION II
2575 East Camelback Road
Phoenix, Arizona

GRUPO MEXICO MINERO
MEXICO INTERNACIONAL, S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

COMPANIA MEXICANA de COBRE
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

AMERICAS MINING CORPORATION
2575 East Camelback Road
Phoenix, Arizona

JP MORGAN CHASE f/k/a CHASE
MANHATTAN BANK
c/o CT Corporation System
111 Eighth Avenue
New York, New York 10011

ERNST & YOUNG, LLP
787 Seventh Avenue
New York, NY 10019

ERNST & YOUNG CORPORATE
FINANCE, LLC

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

29

787 Seventh Avenue
New York, New York   10019

GERMAN LARREA MOTA-VAELASCO
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760
OSCAR GONZALES ROCHA
2575 East Camelback Road
Phoenix, Arizona

DANIELTELLECHEA SALIDO
2575 East Camelback Road
Phoenix, Arizona

LAW OFFICES
OF
WEITZ
&
LUXENBERG, P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038

30

## <u>VERIFICATION</u>

The undersigned. an attorney admitted to practice in the Courts of the State of New York, is the attorney of record for Phillip Nelson Burns, Mirjana Pavkovich, Administrator of the Estate of Rade Pavkovich, Deceased and Warren Elmer Halfpap, in the within action; deponent has read the foregoing Complaint and knows the contents thereof; the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief and that as to those matters deponent believes them to be true. This verification is made by deponent and not by plaintiff because plaintiffs reside outside the County wherein attorney maintains his office for the practice of law.

_____
Arthur Luxenberg

LAW OFFICES
OF
WEITZ
&
LUXENBERG. P.C.
180 MAIDEN LANE
NEW YORK, N.Y. 10038