of ASARCO through the LBO were undertaken through an integrated plan and design orchestrated by defendant GRUPO MEXICO and executed with the complicity of others, including AMC, Chase and CSFB.

      78.    The redemption/share repurchase of ASARCO' stock and liquidation of ASARCO's assets occurred when:

      a.    ASARCO was insolvent and/or with the knowledge that the transfers, (individually and/or collectively) would result in ASARCO's insolvency;

      b.    GRUPO MEXICO, AMC and Chase were aware of pending litigation against ASARCO for environmental claims and personal injury claims related to asbestos exposure which had rendered or would render the company insolvent;

      c.    ASARCO lacked adequate financial means to meet its debts as they matured;

      d.    The assets transferred were the principal assets of the corporation and made up the majority of the company's assets in value;

      e.    The transfers were made for less than fair consideration;

      f.    The transfer(s) benefitted insiders including ASARCO's Directors and other former shareholders, GRUPO MEXICO and AMC at the expense of unsecured creditors including plaintiffs.

      79.    The redemption/share repurchase of stock and liquidation of ASARCO's assets was designed to strip the company of assets before unsecured creditor claims matured; the redemption/share repurchase of ASARCO' stock and the sale and liquidation of ASARCO's business equipment and principal assets was undertaken with the intent to hinder, delay or defraud creditors.

      80.    Plaintiffs are entitled to judgment against GRUPO MEXICO, AMC, Chase and CSFB declaring the sale of ASARCO to GRUPO MEXICO and AMC, the redemption/share repurchase of ASARCO's stock and the encumbrance and conveyance of ASARCO's business equipment and principal assets to be fraudulent pursuant to N.Y. DEBT. & CRED. § 276.

Plaintiffs are entitled to appropriate equitable and legal relief thereto.

81.    Because these transfers were fraudulent conveyances, committed with the actual intent to defraud creditors, punitive damages should be recovered from the defendants, jointly and severally, in an amount not less than three-times actual damages.

**PLAINTIFFS' FIFTH CLAIM FOR RELIEF**
*(Fraudulent Conveyance: Liability of Transferee Chase & CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-81 and for their Fifth Claim for Relief state as follows:

82.    Defendant Chase is the transferee who provided the senior layer of debt necessary to carry out the LBO.

83.    Defendant CSFB provided financial advice to ASARCO's Board of Directors at the time of the merger and participated with other banks in financing the LBO.

84.    Chase and CSFB knew the LBO was to be a "bust up" acquisition with the assets of ASARCO to be conveyed away from ASARCO for less than fair consideration since the proceeds of these transfers would not benefit ASARCO or its creditors but would instead accrue to third parties, ASARCO's former shareholders, GRUPO MEXICO and AMC.

85.    Chase and CSFB knew ASARCO was insolvent just prior to the LBO or would be rendered insolvent as a result of the conveyances attendant to the LBO and/or the debt service imposed for the acquisition and operating loans to ASARCO.

86.    Chase and CSFB knew ASARCO was to be liquidated and would be left with unreasonably small capital resources to continue its traditional business operations.

87.    Chase and CSFB knew ASARCO was to be liquidated at a time when ASARCO, GRUPO MEXICO and AMC believed ASARCO would incur debts beyond its ability to pay as

19

they matured.

88.    Chase and CSFB knew the plan of liquidation was undertaken with the intent to hinder, delay and/or defraud creditors.

89.    The encumbrance of ASARCO's principal assets in favor of Chase is a "conveyance" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

90.    Loan payments relating to the LBO received by Chase, CSFB and other participating banks under priority liens, including but not limited to proceeds from the sale of ASARCO's principal assets and other loan payments made by ASARCO or by GRUPO MEXICO (or its affiliates) on behalf of ASARCO (collectively "loan payments") are "conveyances" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

91.    The loan payments received by Chase and CSFB are not protected from recapture under N. Y. DEBT & CRED. 272(b) because Chase and CSFB did not act in good faith herein and/or the property received by ASARCO from Chase and CSFB was disproportionately small as compared with the value of the obligation to Chase and CSFB.

92.    In derogation of creditor's rights, including plaintiffs, Chase and CSFB failed to conduct an adequate financial investigation of ASARCO's solvency before loaning and/or making  more than one billion (1,000,000,000) dollars to ASARCO and accepting mortgages encumbering ASARCO's principal assets and/or ignored ASARCO's insolvency.

93.    Chase and CSFB knew or should have known that as a result of the planned liquidation of ASARCO's principal assets:

        a.    The fair salable value of ASARCO's remaining assets would be less than

ASARCO's liabilities;

b.    These transfers would leave ASARCO with an unreasonably small amount of capital for the business in which it was engaged or proposed to engage in the future;

c.    ASARCO could not reasonably be expected to meet its obligations as the matured.

94.    Chase and CSFB knew or should have known that the debtor was insolvent or would be rendered insolvent by the transfers or would be rendered insolvent as a result of the integrated plan of liquidation, that the debt service imposed by Chase and CSFB would further diminish ASARCO's ability to pay creditors and ASARCO has no reasonable prospects for survival.

95.    Chase and CSFB transferred funds to ASARCO in exchange for a lien against ASARCO's principal assets and accepted loan payments for less than fair consideration with actual or constructive knowledge that the transaction would increase or lead to ASARCO's insolvency and fraud on ASARCO's creditors including plaintiffs.

96.    Plaintiffs are entitled to judgment against defendant Chase and CSFB for the value of the property conveyed and/or judgment declaring the loan payments attendant to the LBO made by or on behalf of ASARCO to Chase and CSFB to be fraudulent as to the Debts owed plaintiffs pursuant to DEBT. & CRED. §§ 273, 274, 275 & 276. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' SIXTH CLAIM FOR RELIEF
(*Fraudulent Conveyance: Insurance Proceeds*)

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-96 and for their Sixth Claim for Relief state as follows:

97.    Plaintiffs all have "claims" against ASARCO and are therefore "creditors" of ASARCO under the Act. N. Y. DEBT. & CRED. § 270 ASARCO is liable to plaintiffs and therefore is a "debtor" pursuant to the Act. N. Y. DEBT. & CRED. § 270.

98.    The heavy discounting of future insurance proceeds and the transfer of said insurance proceeds at the direction of GRUPO MEXICO or its affiliates to ASARCO's general operating fund and the subsequent disbursement of those monies are "conveyances" of ASARCO's (the debtor's) property pursuant to the Act.

99.    At the time the insurance proceeds were conveyed, ASARCO was insolvent or would be rendered insolvent as a result of the transfer and/or the integrated plan of liquidation.

100.    As a result of the conveyance of the insurance proceeds and/or the integrated plan of liquidation, ASARCO lacked sufficient capital to continue its traditional business operations.

101.    The transfer of the insurance proceeds occurred at a time when ASARCO, GRUPO MEXICO and GRUPO MEXICO's affiliates knew or believed ASARCO would incur debts which it would be unable to pay as they matured.

102.    The transfer of the insurance proceeds was undertaken with the intent to hinder, delay or defraud ASARCO's creditors.

103.    Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and its affiliates declaring the conveyance of the insurance proceeds to be fraudulent as to the Debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. §§ 273, 274, 275 & 276.  Plaintiffs are entitled to equitable and legal relief thereto.

**PLAINTIFFS' SEVENTH CLAIM FOR RELIEF**
*(Fraudulent Conveyance: Transfer to Insiders)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-103 and for their

Seventh Claim for Relief state as follows:

104.    GRUPO MEXICO, AMC, GMMI, Mexicana de Cobre, S.A. de C.V., Controladora Minera Mexico, S.A. de C.V. and ASARCO are all interrelated companies, affiliates and "insiders" owned or controlled by GRUPO MEXICO.

105.    As part of the alleged consideration for the transfer of ASARCO's interest in SPCC to GRUPO MEXICO and its affiliates, ASARCO allegedly received debt forgiveness of an antecedent inter-company debt from affiliates of GRUPO MEXICO including AMC and/or Mexicana de Cobre S.A. de C.V.

106.    The forgiveness of inter-company debt is a "conveyance" within the meaning of the Act. N. Y. Debt. & Cred. §270.

107.    At the time of the debt forgiveness, ASARCO was either insolvent or rendered insolvent as a result of redemption/share repurchase of its stock and the conveyance of its principal assets and/or the execution of the integrated plan of liquidation.

108.    The conveyance by an insolvent to an affiliate or insider in satisfaction of an antecedent debt lacks good faith and is constructively fraudulent.

109.    Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and MEXICO de COBRE S.A. C.V. declaring the conveyance of the SPCC stock in exchange for debt forgiveness to be fraudulent as to debts owed plaintiffs pursuant to N. Y. DEBT & CRED. § 273. Plaintiffs are entitled to legal and equitable relief thereto.

### PLAINTIFFS' EIGHTH CLAIM FOR RELIEF
*(Professional Negligence and Misrepresentation: As to Defendant Ernst & Young)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-109 and for their Eighth Claim for Relief state as follows:

23

110.    Defendants ERNST & YOUNG LLP and ERNST & YOUNG CORPORATE

FINANCE LLC (collectively "Ernst & Young") were engaged to provide an opinion as to the

value of 43,348,949 shares of Class A Common Stock of Southern Peru Copper Company

representing 54.18% of the voting shares of that publically traded corporation which were held

by SPHC, a wholly owned subsidiary of ASARCO.  ("stock interest").

111.    Ernst & Young expressed a professional valuation with full knowledge that its

opinion would be relied upon by a limited class of third parties to which Ernst & Young owed a

duty of care, including the United States Justice Department, The Federal Courts of the United

States and plaintiffs.

112.    The valuation opinion of Ernst & Young provided the principal basis for the

United States District Court for the District of Arizona to approve the sale of the stock interest to

Grupo and/or its wholly owned subsidiary AMC to the detriment of plaintiffs.

113.    Ernest & Young recklessly and knowingly and without the professional

competence required of a Certified Public Accounting firm sold an opinion letter, which falsely

represented that the fair value of ASARCO's controlling interest in SPCC was worth less than

the book value of ASARCO's share of the underlying assets of the company.

114.    Ernst & Young had a duty to plaintiffs to issue an opinion based on impartial and

independent knowledge of the copper industry.  Despite knowing that the purchaser of the stock

interest was an insider with full information regarding the company, the company's prospects and

the copper market, Ernst & Young breached its duty to plaintiffs by undervaluing the stock

interest based on information provided by the purchaser, Grupo and/or entities controlled by

Grupo.

115.    Ernst & Young had a duty to plaintiffs to be competent to issue an opinion as to

24

the value of SPCC as a going concern. Without taking into consideration SPCC's on-going

expansion of its mining operations and the increasing value of its copper reserves in a rising

copper market, Ernst & Young's valuation negligently only reflects historic and public financial

information.

116.    Ernst and Young breached its duty to plaintiffs by failing to exercise due care and

the professional competence required of a Certified Public Accounting firm and by issuing an

opinion which it knew or should have known grossly understated the value of the stock interest,

thereby allowing the stock interest to be sold to Grupo for less than fair and adequate

consideration, placing ASARCO's most valuable asset outside the direct reach of creditors.

117.    Plaintiffs are entitled to judgment against Ernst & Young for damages resulting

from its professional negligence and misrepresentation as to the value of the stock interest.

### PLAINTIFFS' NINTH CLAIM FOR RELIEF
*(Breach of Fiduciary Duty: ASARCO's Officer's & Directors)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -117 and for

their Ninth Claim for Relief state as follows:

118.    Defendants GERMAN LARREA MOTA-VELASCO and OSCAR GONZALES

ROCHA were Officers and Directors of ASARCO (collectively "Director Defendants") when

the principal assets of ASARCO were being liquidated.

119.    The sale of ASARCO's principal assets for less than fair and adequate

consideration and the misappropriation of the proceeds of the sale for the benefit of Defendants

and to the detriment of ASARCO's unsecured creditors was undertaken at a time when

ASARCO was unable to pay its debts as they became due, its liabilities exceeded its assets and/or

25

ASARCO was insolvent.

120.    The sale of ASARCO's principal assets for less than adequate consideration, left ASARCO with unreasonably small capital to continue historic business operations and resulted in insolvency, the likelihood of insolvency and/or the unreasonable risk of insolvency.

121.    The officers and directors of a corporation which is insolvent, or on the brink of insolvency, owe a fiduciary duty to the corporation, to the employees of the corporation and the corporation's unsecured creditors.  By selling the principal assets of ASARCO for less than adequate consideration, these Director Defendants breached their fiduciary duties of care and duties of loyalty to the ASARCO, ASARCO'S employees and ASARCO's unsecured creditors including Plaintiffs.

122.    The liquidation of ASARCO's principal assets was not undertaken in good faith, was undertaken without full compliance with statutory procedures designed to protect the rights of creditors, involved intentional misconduct and/or resulted in improper personal benefit.

123.    The actions of these Defendant Directors were grossly negligent and/or undertaken with reckless disregard for the rights of plaintiffs.

124.    Pursuant to N. Y. Bus. Corp. Law § 720 (McKinney 2004), Defendant Directors must account and respond in damages for the amount by which less than full value was realized by ASARCO upon the liquidation of its principal assets.

125.    Plaintiffs are entitled to judgment against Defendant Directors for the losses sustained by creditors through the depletion of ASARCO's principal assets.

### PLAINTIFFS' TENTH CLAIM FOR RELIEF
*(Aiding and Abetting Breach of Fiduciary Duty: Ernst & Young and CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -125 and for

their Tenth Claim for Relief state as follows:

126.    Defendant CSFB served as financial advisor to ASARCO's Board of Directors at the time the LBO was endorsed by the Board.  CSFB evaluated and advised ASARCO's Board of Directors regarding the sale of the company, recommending the LBO proposed by GRUPO MEXICO and rejecting the merger of equals proposed by Phelps Dodge Corporation.  CSFB then personally benefitted from the transaction by becoming a secured creditor of ASARCO.  The LBO directly caused ASARCO's insolvency.

127.    Defendant Ernst & Young served as ASARCO's financial advisor from August 15, 2002 until March 27, 2003.  As financial advisor, Ernst & Young recommended the monetization of ASARCO's general liability insurance policies and the use of these insurance proceeds for regular business expenses, to the detriment of parties this insurance was intended to compensate.  Defendant Ernst & Young undervalued ASARCO's interest in SPCC and then approved, supported and championed the sale of ASARCO's interest in SPCC for less than adequate consideration

128.    ASARCO'S Board of Directors owed a fiduciary duty to the corporation, the corporation's employees and ASARCO's unsecured creditors including Plaintiffs.

129.    By and through the LBO, the leveraging of ASARCO's principal assets and the sale of ASARCO's principal assets for less than adequate consideration, ASARCO's Board of Directors breached its fiduciary duty to these parties, including Plaintiffs.

130.    Defendants Ernst & Young and CSFB knowingly participated, orchestrated and encouraged the breach of fiduciary duty by ASARCO's Directors.

131.    Plaintiffs are entitled to judgment against Defendants Ernst & Young and CSFB for aiding and abetting breach of fiduciary duty.

27

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs respectfully request this Court:

(1)    Award actual monetary damages, attorney's fees and costs against defendants.

(2)    Award punitive damages against these defendants who have engaged in actual

fraud as to the Debts owed plaintiffs in an amount not less than three times actual

damages.

(3)    Set aside or annul the conveyances described herein as fraudulent to the extent

necessary to satisfy plaintiffs' claims, authorize attachment or levy of execution

upon the property wrongfully conveyed,  place ASARCO's wrongly conveyed

assets in trust and/or appoint a receiver to hold and manage those assets of

ASARCO for payment of creditor claims.

(4)    And/or make any order which the circumstances of the case may require.

Respectfully submitted,    **264795**

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
120 Wall Street-15th Floor
New York, NY 10038
(212) 558-5900
FAX (212) 363-6848

By: _____
          Gary Klein, Esq.

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

FILED
2/7/05
COUNTY CLERK
NEW YORK COUNTY

FEB. 27, 2007

28

## ATTORNEY VERIFICATION

**GARY KLEIN**, hereby affirms that the following is true, under penalties of perjury:

I am an associate of the firm of **WEITZ & LUXENBERG, P.C.**, attorneys for the plaintiff(s) in the within action; I have read the foregoing Summons and Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true. The reason this verification is made by your affiant and not by the plaintiff is that the plaintiff herein resides in a County other than the one in which WEITZ & LUXENBERG, P.C. maintains its offices.

The grounds of my belief as to all matters not stated upon my own knowledge are the contents of our office file.

Dated:   New York, New York
         February 7, 2005

                                        Gary Klein, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALFPAP,

                Plaintiff(s),

          -against-

GRUPO MEXICO S. A. de C.V., a Mexican
Corporation, SOUTHERN PERU HOLDINGS
CORPORATION, a Delaware Corporation, SPHC
II, Incorporated, a Delaware Corporation, GRUPO
MINERO MEXICO INTERNACIONAL, S. A.
de C.V., a Mexican Corporation, MEXICANA
de COBRE, S.A. de C.V. a Mexican Corporation,
CONTROLADORA MINERA MEXICO, S.A. de
C.V., a Mexican Corporation, JP MORGAN
CHASE & COMPANY f/k/a CHASE
MANHATTAN BANK & TRUST COMPANY,
a Delaware Corporation, AMERICAS MINING
CORPORATION, a Delaware Corporation,
ERNST & YOUNG LLP, ERNST & YOUNG
CORPORATE FINANCE, LLC, GERMAN
LARREA MOTA-VELASCO, Officer and
Director of ASARCO, Inc., OSCAR GONZALEZ
ROCHA Officer and Director of ASARCO, Inc.,
CREDIT SUISSE FIRST BOSTON, INC.,
CREDIT SUISSE FIRST BOSTON, LLC and
CREDIT SUISSE FIRST BOSTON (USA),
INC.

              Defendant(s)

Index No.: 114728/04

---

## EX PARTE APPLICATION TO EXTEND TIME FOR SERVICE OF PROCESS ON UNAUTHORIZED FOREIGN CORPORATIONS PURSUANT TO THE HAGUE CONVENTION

Plaintiffs, pursuant to CPLR § 311(b), hereby apply *ex parte* for an extension of time of 180

days from the date of the Order, without prejudice to seeking further extension should service be impracticable, or to whichever date the Court may direct, to effect service pursuant to the Hague Convention on certain unauthorized foreign defendants, and certain of their officers and directors, located in Mexico.

## BACKGROUND

1.    This action was commenced by filing a Verified Complaint and Summons in this Court on October 15, 2004.

. 2.    Service of process has been effected on all defendants whose principal places of business are in the United States.[1]

3.    On December 20, 2004, this Court granted Plaintiffs' Unopposed Motion To Appoint Special Process Server to Effect Service of Process on an Unauthorized Foreign Corporation Pursuant to the Hague Convention.

4.    Plaintiffs have retained an international process server, APS International, to effect service of process pursuant to the Hague Convention on the unauthorized, foreign defendants located in Mexico.

5.    Plaintiffs are filing, contemporaneous with the filing of this motion, their First Amended Complaint.

6.    By Stipulation, the plaintiffs have agreed with the served defendants who are located

---

[1]  Service of process has been effected upon the following defendants in the United States: Southern Peru Holdings Corporation, JP Morgan Chase & Company f/k/a Chase Manhattan Bank & Trust Company, Americas Mining Corporation, Ernst & Young LLP, and Ernst & Young Corporate Finance, LLC.  Service of process has not yet been completed regarding Southern Peru Holdings Corporation II.  A "Stipulation of Discontinuance Regarding Daniel Tellechia Salido Only" was filed on December 14, 2004.

within the United States that they shall not be required to answer the complaint until service upon

the defendants located in Mexico has been effected.

## ARGUMENT

7.    CPLR § 311(b) provides:

". . . [i]f service upon . . . a foreign corporation within the one hundred twenty days allowed by section three hundred six-b of this article is *impracticable* under paragraph one of subdivision (a) of this section or any other law, service upon the corporation may be made in such manner, and proof of service may take such form, as the court, *upon motion without notice*, directs."[2] (emphasis added)

Normally, therefore, service upon the unauthorized foreign defendants herein located in Mexico

would be required to be effected on or before February 12, 2005.

8.    Plaintiffs seek to serve process on the following defendants who are unauthorized

foreign corporations and several of their corporate officers all of whom are located in Mexico City,

Mexico:

> Grupo Mexico S. A. de C.V.,
> Grupo Minero Mexico Internacional, S.A. de C.V.,
> Mexicana de Cobre, S.A. de C.V.,
> Contoladora Minera Mexico, S.A. de C.V. ,
> German Larrea Mota-Velasco, and
> Oscar Gonzalez Rocha.

9.    Upon information and belief, effecting service of process on the unauthorized foreign

corporations and their corporate officers located in Mexico by February 12, 2005 is impracticable.

Further, plaintiffs submit that good cause is shown and the interests of justice would be served to

permit a reasonable extension of time to serve the defendants located in Mexico City.

10.    Plaintiffs are advised by the international process server, APS International, that the

---

[2]  In accordance with CPLR § 306-b, service of process "shall be made within one hundred twenty days after the filing of the summons and complaint . . ."

processes required by the Hague Convention, as well as the requirements of the Central Authority of Mexico, are sufficiently extensive, complex, and time-consuming, that it is highly unlikely that service of process could be completed on or before February 12, 2005.[3]

11.    Attached hereto is plaintiffs' Affirmation in support of this application with attached correspondence from APS International stating that service of process upon a corporation located in Mexico pursuant to the Hague Convention "generally takes 4-6 months or longer from the time the request for service is submitted to the Mexican Central Authority (Ministry of Foreign Relations)."

WHEREFORE, plaintiffs herein respectfully request an extension of time of 180 days from the date of the Order, without prejudice to seeking further extensions should service be impracticable, or to whichever date the Court may direct, to effect service pursuant to the Hague Convention on the unauthorized foreign defendants listed hereinabove in paragraph 8.

Dated: New York, New York
       February 7, 2005

---

[3]  For example, the Complaint, and First Amended complaint, the Order Appointing APS as process server, and all Hague convention forms, must first be translated into Spanish before conveying them to the Central Authority located in Mexico City. The Central Authority must then create a file and convey the file to the appropriate local court located in the jurisdiction in Mexico in which the defendants reside or maintain their principal place of business. Under Mexican law and procedure the papers will then be served by a court official upon the defendants.

Respectfully submitted,

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
120 Wall Street-15th Floor
New York, NY 10038
(212) 558-5900
FAX (212) 363-6848

By: _____
        Gary Klein, Esq.


**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
Alan B. Rich, Esq.
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALFPAP,

                Plaintiff(s),

        -against-                               Index No.: 114728/04

GRUPO MEXICO S. A. de C.V., a Mexican
Corporation, SOUTHERN PERU HOLDING
CORPORATION, a Delaware Corporation,
SOUTHERN PERU HOLDING CORPORATION
II, a Delaware Corporation, GRUPO MINERO
MEXICO INTERNACIONAL, S. A. DE C.V., a
Mexican Corporation, COMPANIA MEXICANA
de COBRE, a Mexican Corporation, JP
MORGAN CHASE & COMPANY f/k/a CHASE
MANHATTAN BANK & TRUST COMPANY,
a Delaware Corporation AMERICAS MINING
CORPORATION, a Delaware Corporation,
ERNST & YOUNG LLP, ERNST & YOUNG
CORPORATE FINANCE, LLC, GERMAN
LARREA MOTA-VAELASCO, Officer and
Director of ASARCO, Inc., OSCAR GONZALES
ROCHA Officer and Director of ASARCO, Inc.,
DANIEL TELLECHEA SALIDO Officer and
Director of ASARCO, Inc., CREDIT SUISSE
FIRST BOSTON, INC., CREDIT SUISSE FIRST
BOSTON, LLC and CREDIT SUISSE FIRST
BOSTON (USA), INC.

                Defendant(s)

---

**AFFIRMATION IN SUPPORT OF EX PARTE APPLICATION TO EXTEND TIME
FOR SERVICE OF PROCESS ON UNAUTHORIZED FOREIGN CORPORATIONS**

1

## PURSUANT TO THE HAGUE CONVENTION

GARY KLEIN, an attorney duly admitted to practice law before the Courts of the State of New York, affirms the following to be true under penalty of perjury:

1.      I am an attorney with the firm of WEITZ & LUXENBERG, P.C. attorneys for the plaintiffs Phillip Nelson Burns, Mirjana Pavkovich, and Warren Elmer Halfpap, in this action.  I submit this affirmation in support of Plaintiffs' Ex Parte Application to Extend Time for Service of Process on Unauthorized Foreign Corporations Pursuant to the Hague Convention.

2.      On December 20, 2004, this Court granted Plaintiffs' Unopposed Motion To Appoint Special Process Server to Effect Service of Process on an Unauthorized Foreign Corporation Pursuant to the Hague Convention.

3.      Plaintiffs have retained an international process server, APS International, to effect service of process pursuant to the Hague Convention on the following defendants who are unauthorized foreign corporations and several of their corporate officers who are located in Mexico City, Mexico:

> Grupo Mexico S. A. de C.V.,
> Grupo Minero Mexico Internacional, S.A. de C.V.,
> Mexicana de Cobre, S.A. de C.V.,
> Contoladora Minera Mexico, S.A. de C.V. ,
> German Larrea Mota-Velasco, and
> Oscar Gonzalez Rocha.

4.      Attached hereto is correspondence from APS International stating that service of process upon a corporation located in Mexico pursuant to the Hague Convention "generally takes 4-6 months or longer from the time the request for service is submitted to the Mexican Central Authority (Ministry of Foreign Relations)."

2

5.      Plaintiffs will serve both the original complaint filed October 15, 2004, and their First Amended Complaint, upon the Mexican defendants.

6.      Based on the information provided by APS International, Plaintiff respectfully requests that the Court extend the time to effect service and file proof thereof for a period in excess of 180 days, without prejudice to plaintiff seeking further extensions should service of process be impracticable within the time limit set forth.

Dated: New York, New York
        February 7, 2005

Respectfully submitted,

WEITZ & LUXENBERG, P.C.

By:
        Gary Klein, Esq.

180 Maiden Lane, 17th Floor
New York, New York 10038
Telephone: (212) 558-5500

BARON & BUDD
A PROFESSIONAL CORPORATION
Alan B. Rich, Esq.
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

Attorneys for Plaintiffs

3

1/18/2005 4:50 PM  FROM: CAG  800-538-5299 Civil Action Group  TO: +1 (856) 7551995    PAGE: 001 OF 001



APS International Plaza • 7800 Glenroy Road
Minneapolis, Minnesota 55439-3122
PHONE: (952) 831-7776
FAX: (952) 831-8150
TOLL FREE: (800) 328-7171

# APS International, Ltd.

January 18, 2005

**Website: www.CivilActionGroup.com**

Attn: Mr. John Broaddus
WEITZ & LUXENBERG
Fax: (856) 755-1995

**DMyers@CivilActionGroup.com**

RE:    Burns v Grupo Mexico
       Service in the country of Mexico
       APS File # 242766

Dear Mr. Broaddus:

Service in accordance with international treaty (formal service) is the proper method of service for the country of Mexico. The United States and Mexico are both party to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, TIAS #10072 (U.S. Treaties & other International Acts) and 20 UST 361 (U.S. Treaties & other International Agreements). Informal methods of service are not allowed.

For the country of Mexico, service and return of proof of service in accordance with the Hague Convention generally takes 4-6 months or longer from the time the request for service is submitted to the Mexican Central Authority (Ministry of Foreign Relations). Service is entirely in the hands of the Mexican government, Mexican courts and their officials. It is not possible for us to 'speed up' the process.

Documents must be translated prior to submittal. APS can complete translation of most documents in 8-10 business days.

In our experience, U.S. courts are generally very understanding in allowing the necessary time to complete the complex and proper service as required by international treaty.

Please feel free to contact me in the International Division with any additional questions.

Sincerely,

Diane Myers
Direct Extension: 339
APS International, Ltd.
International Division

*Index No.*                    *Year 20*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PHILLIP NELSON BURNS, MIRJANA PAVKOVICH, Administrator of the
Estate of Rade Pavkovich, Deceased, and WARREN ELMER HALFPAP,

                              Plaintiffs,

        -against-

GRUPO MEXICO S.A. de C.V., a Mexican Corporation, et al.

EX PARTE APPLICATION TO EXTEND TIME FOR SERVICE OF PROCESS ON UNAUTHORIZED
FOREIGN CORPOATIONS PURSUANT TO THE HAGUE CONVENTION and AFFIRMATION IN SUPPORT

## WEITZ & LUXENBERG, P.C.

        *Attorneys for* Plaintiffs

                    180 Maiden Lane
                    New York, NY 10038
                    (212) 558-5500

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York*
*State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the*
*annexed document are not frivolous.*

*Dated:*...................................        Signature.........................................................................

                                          Print Signer's Name.......................................................

*Service of a copy of the within*                                    *is hereby admitted.*

*Dated:*
                              ..................................................................
                                          *Attorney(s) for*

**PLEASE TAKE NOTICE**

☐    *that the within is a (certified) true copy of a*
NOTICE OF    *entered in the office of the clerk of the within named Court on*                  *20*
ENTRY

☐    *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF    *Hon.*                              *one of the judges of the within named Court,*
SETTLEMENT    *at*
          *on*              *20*          *, at*              *M.*

*Dated:*

                                          WEITZ & LUXENBERG, P.C.

                    *Attorneys for*

                                          180 Maiden Lane
*To:*                                      New York, NY 10038