043

Demandados Directores") cuando se estaban liquidando los activos principales de

ASARCO.

121. La venta de los activos principales de ASARCO por menos de recompensa justa y adecuada y la apropiación indebida de los beneficios de la venta para el beneficio de los Demandados y al perjuicio de los acreedores no garantizados de ASARCO se emprendieron en un momento cuando ASARCO no pudo pagar sus deudas al vencerse, sus obligaciones o pasivos fueron superiores a sus activos y/o ASARCO fue insolvente.

122. La venta de los activos principales de ASARCO por menos de recompensa adecuada dejó a ASARCO con irrazonablemente poco capital para continuar sus operaciones comerciales históricos y resultó en insolvencia, la probabilidad de insolvencia y/o el riesgo irrazonable de insolvencia.

123. Los oficiales y directores de una corporación insolventa, o a punto de insolvencia, deben un deber fiduciario a la corporación, a los empleados de la corporación y a los acreedores no garantizados de la corporación. Al vender los activos principales de ASARCO por menos de recompensa adecuada, estos Demandados Directores incumplieron sus deberes fiduciarios de cuidado y deberes de lealtad a ASARCO, los empleados de ASARCO y los acreedores no garantizados de ASARCO, incluyendo a los Demandantes.

124. La liquidación de los activos principales de ASARCO no se emprendió en buena fe, se emprendió sin obediencia total a los procedimientos estatutarios diseñados a proteger los derechos de los acreedores, involucró comportamiento ilícito intencional y/o resultó en beneficio personal impropio.

125. Las acciones de estos Demandados Directores fueron gravemente negligentes y/o emprendidas con descuido imprudente por los derechos de los demandantes.

044

126.  Conforme a *N.Y. Bus. Corp. Law § 720 (McKinney 2004)*, los Demandados tienen que justificar y responder en daños por la cantidad por la cual menos del valor del se realizó por ASARCO al liquidar sus activos principales.

127.  Los demandantes tienen derecho a una sentencia a su favor contra los Demandados Directores por las pérdidas sufridas por los acreedores mediante la desvalorización de los activos principales de ASARCO.

## DÉCIMO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Instigando o Ayudando a Cometer Incumplimiento del Deber Fiduciario: Ernst & Young y CSFB)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-127 y para su Décimo Derecho de Acción declaran como sigue:

128.  El demandado CSFB sirvió como el asesor financiero a la Junta Directiva de ASARCO en el momento cuando la compra apalancada fue endosada por la Junta.  CSFB valuó y aconsejó a la Junta Directiva de ASARCO en cuanto a la venta de la compañía, recomendando la compra apalancada propuesta por GRUPO MÉXICO y rechazando la fusión de iguales propuesta por Phelps Dodge Corporation.  Luego CSFB benefició personalmente de la transacción por hacerse un acreedor garantizado de ASARCO.  La compra apalancada directamente causó la insolvencia de ASARCO.

129.  El demandado Ernst & Young sirvió como el asesor financiero de ASARCO desde el 15 de agosto de 2002 hasta el 27 de marzo de 2003.  Como asesor financiero, Ernst & Young recomendó la monetización de las pólizas de seguros de responsabilidad general de ASARCO y el uso de estos beneficios de los seguros para gastos comerciales normales, en perjuicio de las partes que se supone estos seguros iban a compensar.  El demandado Ernst & Young valuó por debajo del valor real el interés de ASARCO en SPCC y luego

31

045

aprobó, apoyó y defendió la venta del interés de ASARCO en SPCC por menos de recompensa adecuada.

130. La Junta Directiva de ASARCO debió un deber fiduciario a la corporación, los empleados de la corporación y los acreedores no garantizados de ASARCO incluyendo a los Demandantes.

131. Por y mediante la compra apalancada, el uso de la influencia de los activos principales de ASARCO y la venta de los activos principales de ASARCO por menos de recompensa adecuada, la Junta Directiva de ASARCO incumplió su deber fiduciario a estas partes incluyendo a los Demandantes.

132. Los demandados Ernst & Young y CSFB a sabiendas participaron, instigaron y fomentaron el incumplimiento del deber fiduciario por los Directores de ASARCO.

133. Los demandantes tienen derecho a una sentencia a su favor contra los Demandados Ernst & Young y CSFB por instigar o ayudar a cometer incumplimiento del deber fiduciario.

## REQUISITOS PREVIOS DEL LITIGIO ENTABLADO EN REPRESENTACIÓN DEL GRUPO DE DEMANDANTES

134. Los demandantes repiten y alegan de nuevo los alegatos contenidos en los párrafos 1-133 supra.

135. Los demandantes promueven esta acción judicial a favor de ellos mismos y como representantes de un grupo conforme a la Ley de Nueva York. Específicamente, el Tribunal debería registrar una orden certificando el siguiente Grupo de Demandantes:

El Grupo de Demandantes se define como: Todas las personas expuestas a, o quienes inhalaban, ingerían, o de otra manera absorbían asbesto o productos conteniendo

32

041

asbesto durante el curso de su empleo, durante proyectos laborales no ocupacionales incluyendo pero sin limitarse a, arreglos o reparaciones de automóvil y casa, mantenimiento y remodelación) y/o en otras maneras, que eran fabricados, vendidos, distribuidos o instalados directamente o indirectamente por ASARCO, Inc. y sufren de o sufrirán de enfermedades relacionadas con el asbesto. Todos los miembros del Grupo de Demandantes son acreedores no garantizados de ASARCO, con derecho a una sentencia contra los Demandados y el Grupo de Demandados quienes mediante actos intencionales o negligentes, fraudulentamente cedieron y/o facilitaron la cesión de los activos principales de ASARCO que legítimamente debieran estar disponibles para compensar al Grupo de Demandantes por lesiones y daños resultando de la conducta dañosa de ASARCO.

86. El Grupo de Demandantes satisface los siguientes requisitos previos para el mantenimiento de un litigio entablado en representación de un grupo:

(a)    Numerosidad.

Los miembros del Grupo de Demandantes son tan numerosos que la unión de todos los miembros es impráctica. Aunque los Demandantes no pueden declarar el número exacto de miembros del Grupo de Demandantes sin descubrimiento (procedimientos para obtener información para el juicio), los Demandantes calculan aproximadamente el número de miembros del Grupo de Demandantes ser decenas de miles.

(b)    El Común

33

047

Hay cuestiones de derecho y/o de hecho comunes al Grupo de Demandantes:

(1)   Si ASARCO fue insolvente o hecho insolvente como el resultado de la compra apalancada de ASARCO por GRUPO MÉXICO.

(2)   Si ASARCO recibió menos de recompensa justa y adecuada por la venta de sus activos principales.

(3)   Si la transferencia de los activos de ASARCO en un momento cuando ASARCO fue insolvente constituye fraude intencional y/o implícito.

(c)   Características Típicas

Los reclamos de los Demandantes son típicos de los reclamos que los Demandantes representan.  Todos los Demandantes tienen reclamos y todos se han dañado como el resultado directo de las acciones intencionales y negligentes de ASARCO.  Como acreedores no garantizados de ASARCO, todos los Demandantes tienen reclamos contra el Demandado y miembros del Grupo de Demandados por cesión fraudulenta y/o negligencia.  Los reclamos de los Demandantes tienen las mismas características esenciales como los reclamos del Grupo de Demandantes  en conjunto, surgen de las mismas prácticas del Demandado y el Grupo de Demandados, y se basan en teorías legales idénticas. Todos los miembros del Grupo de Demandantes han

34

sufrido el mismo daño y tienen los mismos intereses como sus Representantes del Grupo de Demandantes.

(d)    Adecuación

Los Demandantes, como partes representantes, son capaces proteger y justamente y adecuadamente protegerán los intereses del Grupo de Demandantes, y no tienen conflictos de intereses con los miembros del Grupo de Demandantes.  Los abogados representando a los Representantes del Grupo de Demandantes son abogados capacitados, versados y competentes para representar al grupo.

El propuesto Grupo de Demandantes es sostenible por las siguientes razones:

(a)    Predominio y Superioridad.

El Grupo de Demandantes es sostenible porque cuestiones comunes de derecho y de hecho predominan sobre cuestiones afectando solamente miembros individuales, haciendo un litigio entablado en representación de un grupo superior a todos los otros métodos disponibles para la adjudicación justa y eficiente de esta controversia.

(b)    Adjudicaciones Incompatibles y Variables.

El Grupo de Demandantes es sostenible porque el enjuiciamiento de acciones judiciales separadas por los miembros del Grupo de Demandantes crearía el riesgo de adjudicaciones incompatibles o variables con respecto a los miembros individuales del Grupo de Demandantes, y esto establecería normas incompatibles de conducta para las partes contrarias oponiendo al Grupo de Demandantes.

049

## SOLICITUD PARA REMEDIO

**POR LO CUAL**, los demandantes respetuosamente solicitan que este Tribunal:

(1)     Adjudique daños y perjuicios monetarios efectivos, honorarios de abogado y costas contra los demandados.

(2)     Adjudique daños punitivos contra estos demandados quienes han participado en fraude real en cuanto a las Deudas debidas a los demandantes en una cantidad no menos de tres veces los daños y perjuicios efectivos.

(3)     Revoque o anule las cesiones descritas aquí en esto como fraudulentas en la medida necesaria satisfacer los reclamos de los demandantes, autorice embargo ejecutivo o gravamen de la propiedad ilegalmente cedida, coloque los activos ilegalmente cedidos de ASARCO en fideicomiso y/o designar un administrador judicial mantener y administrar esos activos de ASARCO para el pago de reclamos de acreedores.

(4)     Y/o haga cualquier orden requerida por las circunstancias del caso.


Respetuosamente presentado,

**WEITZ & LUXENBERG, P.C.**
*Una Corporación Profesional de Nueva York*
120 Wall Street – Piso 15
Nueva York, NY 10038
(212) 558-5900
Telefacsímil (212) 363-6848

Por: *[Firma ilegible]*
     Gary Klein

36



050

**BARON & BUDD**
**UNA CORPORACIÓN PROFESIONAL**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Tejas 75219
(214) 521-3605
Telefacsímil: (214) 520-1181

PRESENTADO
17 / FEB / 05
SECRETARIO DEL CONDADO
CONDADO DE NUEVA YORK

No. 193105
ESTADO DE NUEVA YORK,
CONDADO DE NUEVA YORK, SS:
YO, NORMAN GOODMAN,
SECRETARIO DEL CONDADO Y
SECRETARIO DEL TRIBUNAL SUPREMO,
CONDADO DE NUEVA YORK,
CON LA PRESENTE CERTIFICO EL
29 MARZO 2005
QUE HE COMPARADO ESTA
COPIA CON EL ORIGINAL
ARCHIVADO EN MI OFICINA EL
17/FEB/05
Y QUE LA MISMA ES UNA
TRANSCRIPCIÓN CORRECTA
DE ESO Y DE LA
TOTALIDAD DE TAL ORIGINAL.
EN TESTIMONIO DE LO CUAL,
A LA PRESENTE HE PUESTO
MI FIRMA Y SELLO OFICIAL.
*Norman Goodman*
SECRETARIO DEL CONDADO Y SECRETARIO DEL
TRIBUNAL SUPREMO, CONDADO DE NUEVA YORK
FIRMA FACSIMILAR EMPLEADA
CONFORME A LA SECCIÓN 903,
LEY DEL CONDADO.
HONORARIO PAGADO

37

051

## VERIFICACIÓN DEL ABOGADO

GARY KLEIN, con la presente afirma que lo siguiente es la verdad, so pena de perjurio:

Soy un abogado asociado del bufete de WEITZ & LUXENBERG, P.C., abogados de los demandante(s) en la acción judicial adjunta; he leído la Citación y Demanda verificada antecedentes y conozco el contenido de esas; lo cual es la verdad según mi propio leal saber, menos los asuntos declarados allí ser alegados basados en información entendimiento, y en cuanto a esos asuntos, los creo ser la verdad. La razón esta verificación se hace por su declarante y no por el demandante es porque el demandante aquí en esto vive en un condado fuera del condado donde WEITZ & LUXENBERG, P.C. mantiene sus oficinas.

Los motivos para mi entendimiento en cuanto a todos los asuntos no declarados según mi propio leal saber son los contenidos del archivo en nuestra oficina.

Con fecha: Nueva York, Nueva York
17 de febrero de 2005

_____[Firma ilegible]_____
Gary Klein, Abogado

38

052

*Año 20*

[...]índice
[...]UNAL SUPREMO DEL ESTADO DE NUEVA YORK
[...]DADO DE NUEVA YORK
[...]LIP NELSON BURNS, MIRJANA PAVKOVICH,
[...]inistradora del Caudal Hereditario de Rade Pavkovich, Difunto,
[...]RREN ELMER HALFPAP,

        Demandantes,

[...]contra.

[...]PO MÉXICO S.A. de C.V., una corporación mexicana, y otros

[...]ACIÓN SUPLEMENTARIA y SEGUNDA DEMANDA MODIFICADA VERIFICADA

**WEITZ & LUXENBERG, P.C.**

*Abogados para* Demandantes

180 Maiden Lane
Nueva York, NY 10038
(212) 558-5500

[...]que a 22 NYCRR 130-1.1, el infrascrito, un abogado autorizado a ejercer en los tribunales
[...]tado de Nueva York, certifica que, basado en información y entendimiento e investigación
[...]able las contenciones contenidas en los documentos adjuntos no son sin fundamento.
[...]cha _____    Firma _____

[...]Escriba en letra de molde el nombre del firmante _____

[...]ación de una copia de
[...]cha                                              *se admite con la presente.*
_____
*Abogado(s) de*

[...]R DE NOTAR  *(Marque la casilla aplicable)*

[...]  que lo adjunto es una copia fiel (certificada) de un
    registrado en la oficina del secretario del mencionado Tribunal el              20

[...]  que una Orden, copia fiel de la cual se adjunta, se presentará para transacción al
    Honorable                              uno de los jueces del mencionado Tribunal,
    en
    el                    de 20  , a las                    M.

[...]cha:
                                    WEITZ & LUXENBERG, P.C.
        *Abogados para*            180 Maiden Lane
                                    Nueva York, NY 10038

BUNAL SUPREMO DEL ESTADO DE NUEVA YORK
DADO DE NUEVA YORK

053

LP NELSON BURNS, MIRJANA
OVICH, Administradora del Caudal
lliario de Rade Pavkovich, Difunto, y
RREN ELMER HALFPAP,

        Demandante(s),

No. de Índice:    04/114728

CITACIÓN SUPLEMENTARIA

-contra-

PO MÉXICO S. A. de C.V., una
ación mexicana, SOUTHERN PERU
DING CORPORATION, una corporación
lware, SOUTHERN PERU HOLDING
ORATION II, una corporación de
GRUPO MINERO MÉXICO
RNACIONAL, S. A. DE C.V., una
ación mexicana, COMPAÑÍA
CANA de COBRE, una corporación
J.P. MORGAN CHASE &
PANY, antes conocido como CHASE
ATTAN BANK & TRUST COMPANY,
poración de Delaware, AMERICAS
G CORPORATION, una corporación de
ce, ERNST & YOUNG LLP, ERNST &
G CORPORATE FINANCE, LLC,
AN LARREA MOTA-VAELASCO,
y Director de ASARCO, Inc., OSCAR
ALES ROCHA Oficial y Director de
CO, Inc., DANIEL TELLECHEA
O Oficial y Director de ASARCO, Inc.,
T SUISSE FIRST BOSTON, INC.,
T SUISSE FIRST BOSTON, LLC y
T SUISSE FIRST BOSTON (USA),

        Demandado(s)

itedichos Demandados

**PRESENTADO**
**-7 FEB 2005**
**NUEVA YORK**
**OFICINA DEL SECRETARIO**
**DE CONDADO**

054

por la presente está **citado** contestar la Demanda en esta acción judicial y entregar una

copia su Respuesta, o, si la Demanda no se entrega con esta Citación, entregar un Aviso de

Comparecencia, al Abogado(s) de los Demandantes, dentro de 20 días a partir de la fecha de la

entrega de esta citación, sin contar el día de la notificación (o dentro de 30 días después de

completar la notificación si esta citación no se entrega personalmente a usted dentro del Estado

de Nueva York), y en el caso de su falta de comparecer o contestar, se rendirá una sentencia en

rebeldía contra usted para el desagravio exigido en la Demanda.

Con fecha Nueva York, Nueva York
     7 de febrero de 2005

**WEITZ & LUXENBERG, P.C.**
*Una Corporación Profesional de Nueva York*
180 Maiden Lane
Nueva York, NY 10038
(212)558-5500
Telefacsímil (212)344-5461

Por: _____
      *[Firma ilegible]*
      Gary Klein, Abogado

**BARON & BUDD**
**UNA CORPORACIÓN PROFESIONAL**
Alan B. Rich, Abogado
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Tejas 75219
(214) 521-3605
Telefacsímil (214) 520-1181

VEA EL ANEXO ADJUNTO

PRESENTADO
11 FEB / 05
SECRETARIO DEL CONDADO
CONDADO DE NUEVA YORK

055

No. 193017
ESTADO DE NUEVA YORK,
CONDADO DE NUEVA YORK, SS:
YO, NORMAN GOODMAN,
SECRETARIO DEL CONDADO Y
SECRETARIO DEL TRIBUNAL SUPREMO,
CONDADO DE NUEVA YORK
CON LA PRESENTE CERTIFICO EL
28 MARZO 2005
QUE HE COMPARADO ESTA
COPIA CON EL ORIGINAL
ARCHIVADO EN MI OFICINA EL
7/FEB/05
Y QUE LA MISMA ES UNA
TRANSCRIPCION CORRECTA
DE ESO Y DE LA
TOTALIDAD DE TAL ORIGINAL.
EN TESTIMONIO DE LO CUAL,
A LA PRESENTE HE PUESTO
MI FIRMA Y SELLO OFICIAL.
*Norman Goodman*
SECRETARIO DEL CONDADO Y SECRETARIO DEL
TRIBUNAL SUPREMO, CONDADO DE NUEVA YORK
FIRMA FACSIMILAR EMPLEADA
CONFORME A LA SECCION 903, LEY DEL
CONDADO
HONORARIO PAGADO

UNAL SUPREMO DEL ESTADO DE NUEVA YORK
DADO DE NUEVA YORK

056

LIP NELSON BURNS, MIRJANA
KOVICH, Administradora del Caudal
ditario de Rade Pavkovich, Difunto, y
RRENE ELMER HALFPAP,

              Demandante(s),

No. de Índice: 04/114728

**PRIMERA DEMANDA
MODIFICADA VERIFICADA**

        -contra-

PO MEXICO S. A. de C.V., una
ación mexicana, SOUTHERN PERU
DINGS CORPORATION, una corporación
Delaware, SPHC II, Incorporated, una
ración de Delaware, GRUPO MINERO
ICO INTERNACIONAL, S. A. DE C.V.,
corporación mexicana, MEXICANA de
R, S.A. de C.V., una corporación
na, CONTROLADORA MINERA
CO, S.A. de C.V., una corporación
na, J.P. MORGAN CHASE &
PANY, antes conocido como CHASE
HATTAN BANK & TRUST COMPANY,
corporación de Delaware, AMERICAS
NG CORPORATION, una corporación de
are, ERNST & YOUNG LLP, ERNST &
NG CORPORATE FINANCE, LLC,
IAN LARREA MOTA-VELASCO,
y Director de ASARCO, Inc., OSCAR
ALES ROCHA Oficial y Director de
CO, Inc., CREDIT SUISSE FIRST
ON, INC., CREDIT SUISSE FIRST
ON, LLC y CREDIT SUISSE FIRST
ON (USA), INC.

              Demandado(s)

mandantes, por medio de sus abogados, WEITZ & LUXENBERG, P.C. y BARON &

P.C. para su acción contra los Demandados respetuosamente alegan como sigue:

1

057

### DECLARACIÓN PRELIMINAR

Este caso tiene que ver con la adquisición y liquidación sistemática de una
nación estadounidense con valor de múltiple millares de millones de dólares y cien años de
para el beneficio de inversionistas extranjeros y al perjuicio de acreedores residentes. Se
control de las compañías y activos que formaron Asarco Incorporated ("ASARCO")
de la adquisición de una mayoría de sus acciones, se vendieron por ganancia y se
fuera del alcance directo de los individuos perjudicados por ASARCO y a quienes
indemnización.

Esta acción surge bajo el Acto de Cesión Fraudulenta de Nueva York, *DEBT. &*
*270 et seq.* y el derecho común de Nueva York en relación con el fraude. Todos los
tienen reclamos en contra de ASARCO por lesiones personales relacionadas con
con asbesto, y todos son acreedores de ASARCO.


### JURISDICCIÓN, COMPETENCIA Y SELECCIÓN DE LA LEY APLICABLE

La jurisdicción y competencia son correctas en el Estado de Nueva York y el
de Nueva York conforme a *N.Y. C.P. L. R. art. 5 § 503.* La Ley Estatal de Nueva
gierna los reclamos por remedio de los demandantes.

Las partes y las transferencias principales demandadas aquí en esto tienen
es significantes con esta jurisdicción. En el momento de la Compra Apalancada
la sede corporativa de ASARCO se ubicó en la Ciudad de Nueva York. La sede
a del demandado JP Morgan Chase & Company antes conocido como Chase

058

...han Bank & Trust Co. ("Chase") se ubica en la Ciudad de Nueva York.

5.    Todos los demandados están autorizados llevar a cabo negocios en el estado y/o
...contratado proveer bienes y servicios dentro del estado.    Todas las corporaciones y
...dades comerciales demandadas han cometido actos dañosos dentro del estado de Nueva

6.    ASARCO, el demandado Grupo México S.A. de C.V. ("GRUPO MÉXICO"), el
...dado Americas Mining Corporation ("AMC") y el demandado CHASE han renunciado
...actualmente cualquier derecho que ellos pudieran haber tenido impugnar la jurisdicción de
...tribunal concerniente a las cesiones disputadas aquí mencionadas. Además, estos
...dados han designado en esos mismos contratos que la Ley Estatal de Nueva York gobierna
...ciones principales abarcadas en la compra apalancada.

7.    El demandado Ernst & Young, LLP  y  Ernst & Young Corporate Finance LLC
...a cabo negocios con regularidad en este estado y condado.

8.    La sede de los demandados Credit Suisse First Boston, Inc., Credit Suisse First
...LLC y Credit Suisse First Boston (USA) Inc. (colectivamente "CSFB") se ubica en la
...de Nueva York, Nueva York.

9.    El Estado de Nueva York tiene el interés más significativo en el resultado de este

**Demandantes**

10.    Los demandantes actualmente son acreedores no garantizados de ASARCO cuyos
...s no se han satisfecho.  Los demandantes son personas dañadas por ASARCO y cuyos
...s de daño legal fueron presentados o no fueron presentados contra ASARCO en el

3

059

...iento de la cesión(es) fraudulenta(s) en cuestión. Todos los demandantes tienen "reclamos"

...ra ASARCO y por tanto son "acreedores" según se define ese término bajo el Acto de

...n Fraudulenta de Nueva York, ("el Acto"), *N. Y. DEBT. & CRED. § 270.*

...11. Los demandantes son por nombre y ciudadanía: PHILLIP NELSON BURNS, un

...dano del Estado de Arizona; MIRJANA PAVKOVICH, Administradora del Caudal

...itario de Rade Pavkovich, Difunto, una ciudadana del Estado de Arizona; y WARREN

...ER HALFPAP, un ciudadano del Estado de Nueva York.

### Demandados

...12. El demandado GRUPO MÉXICO S. A. de C.V. ("GRUPO MÉXICO") es una

...ración mexicana. Se puede notificar a GRUPO MÉXICO de actos procésales conforme al

...nio Relativo a la Notificación o Traslado en el Extranjero de Documentos Judiciales y

...Judiciales en Materia Civil o Comercial (el Convenio de La Haya) proporcionando la

...ón y Demanda en forma debida a la Autoridad Central Mexicana, que efectuará la

...ación formal de GRUPO MÉXICO S.A. DE C.V., en su sede en Avenida Baja California

...olonia Roma Sur, 06760, Ciudad de México, México. Las menciones aquí en esto a

...PO MÉXICO" incluyen GRUPO MÉXICO S.A. de C.V. y sus sociedades subsidiarias y

...as, los demandados Americas Mining Corporation ("AMC"), Controladora Minera

...o S.A. de C.V. ("CMM"), Grupo México Minera México Internacional, S.A. de C.V.

...MI") y Mexicana de Cobre S.A. de C.V.

...13. Los demandados SOUTHERN PERU HOLDINGS CORPORATION ("SPHC") y

...Incorporated están incorporados en el Estado de Delaware y mantienen su sede

090

...tiva en 2575 East Camelback Road, Phoenix Arizona, 85016. El agente registrado para

...notificaciones para SPHC y SPHC II es el Corporation Trust Center, 1209 Orange Street,

...ington, Delaware 19801. SPHC es una compañía tenedora de valores de otras empresas y

...ció como una sociedad subsidiaria y totalmente la propiedad de ASARCO para facilitar la

...erencia del interés de ASARCO en la empresa Southern Peru Copper Corporation

...C") al demandado GRUPO MÉXICO y/o sus afiliados.

...14.    El demandado GRUPO MÉXICO MINERO MÉXICO INTERNACIONAL, S.A.

...V. ("GMMI") es una corporación mexicana. Se puede notificar a GMMI de actos

...les conforme al Convenio Relativo a la Notificación o Traslado en el Extranjero de

...mentos Judiciales y Extrajudiciales en Materia Civil o Comercial (el Convenio de La Haya)

...cionando la Citación y Demanda en forma debida a la Autoridad Central Mexicana, que

...ará la notificación formal de GRUPO MÉXICO MINERO MÉXICO INTERNACIONAL,

...de C.V., en su sede en Avenida Baja California 200, Colonia Roma Sur 06760 Ciudad de

...o, México.

...15.    El demandado MEXICANA de COBRE S.A. de C.V. es una corporación

...ina. Se puede notificar a MEXICANA de COBRE S.A. de C.V. de actos procésales

...me al Convenio Relativo a la Notificación o Traslado en el Extranjero de Documentos

...les y Extrajudiciales en Materia Civil o Comercial (el Convenio de La Haya)

...cionando la Citación y Demanda en forma debida a la Autoridad Central Mexicana, que

...rá la notificación formal de MEXICANA de COBRE S.A. de C.V., en Kilómetro 21

...a Nacozari Agua Prieta, 84346, Nacozari de García, Sonora, México.

...16.    El demandado CONTROLADORA MINERA MÉXICO, S.A. de C.V. ("CMM"),

...poración mexicana, se puede notificar de actos procésales conforme al Convenio Relativo

5

061

...ficación o Traslado en el Extranjero de Documentos Judiciales y Extrajudiciales en

...vil o Comercial (el Convenio de La Haya) proporcionando la Citación y Demanda en

...bida a la Autoridad Central Mexicana, que efectuará la notificación formal de

...TROLADORA MINERA MÉXICO, S.A. de C.V., en su sede en Avenida Baja California

...Colonia Roma Sur 06760 Ciudad de México, México.

El demandado AMERICAS MINING CORPORATION ("AMC") está

...rado en el Estado de Delaware y mantiene su sede en 2575 East Camelback Road,

...Arizona 85016.  AMC es una sociedad subsidiaria totalmente la propiedad del

...ado GRUPO MÉXICO.

...8.    El demandado JP MORGAN CHASE & COMPANY antes conocido como

...MANHATTAN BANK ("Chase") es una corporación de Delaware con su sede

...ya ubicada en la Ciudad de Nueva York, Nueva York.  Chase Manhattan Bank es una

...a sucesoria" de JP Morgan Chase & Co.

...9.    El demandado ERNST & YOUNG, LLP y el demandado ERNST & YOUNG

...RATE FINANCE, LLC (colectivamente "Ernst & Young") son compañías de

...abilidad limitada y empresas de contabilidad con oficinas mundiales incluyendo oficinas

...udad de Nueva York, Nueva York.

...0.    Los demandados CREDIT SUISSE FIRST BOSTON, INC., una Corporación de

...e, CREDIT SUISSE FIRST BOSTON, LLC, una Compañía de Responsabilidad

...a de Delaware y CREDIT SUISSE FIRST BOSTON (USA), INC., una Corporación de

...e (colectivamente "CSFB") sirvieron como asesor financiero a la Junta Directiva de

...O en el momento de la compra apalancada y un prestador comercial que endosó

...amente la compra apalancada y sacó provecho de la transacción.  CSFB hace negocios

062

pero lleva a cabo negocios con regularidad en la Ciudad de Nueva York y el [...] Nueva York. La sede corporativa de cada entidad CSFB es Eleven (Once) Madison [...] York N.Y. 10010-3629.

[...] El demandado GERMAN LARREA MOTA-VELASCO era el Presidente y [...] Mandatario de ASARCO desde noviembre de 1999 y en la fecha de la transferencia de [...] AMC. Igualmente era Presidente de la Junta Directiva de SPCC y Primer Mandatario y [...] de la Junta Directiva de GRUPO MÉXICO, y él debe un deber fiduciario a los [...] de ASARCO, incluyendo a los demandantes. Se puede notificar al Sr. Mota-Velasco [...] procésales conforme al Convenio Relativo a la Notificación o Traslado en el Extranjero [...] cumentos Judiciales y Extrajudiciales en Materia Civil o Comercial (el Convenio de La [...] roporcionando la Citación y Demanda en forma debida a la Autoridad Central Mexicana, [...] tuará la notificación formal del Sr. Mota-Velasco en su domicilio comercial en Avenida [...] California 200, Colonia Roma Sur 06760 Ciudad de México, México.

[...] El demandado OSCAR GONZALES ROCHA fue un Director de ASARCO en la [...] de la transferencia de SPCC a AMC. En aquel entonces también era Presidente, Director [...] y Primer Oficial Operativo de SPCC, y él debe un deber fiduciario a los acreedores de [...] ASARCO, incluyendo a los demandantes. Se puede notificar al Sr. Rocha de actos procésales en [...] domicilio comercial en su sede en 2575 East Camelback Road, Phoenix, Arizona.

## ANTECEDENTES DE LOS ALEGATOS

### ASARCO ANTES DE LA COMPRA APALANCADA

23. Antes de la compra apalancada de ASARCO por GRUPO MÉXICO, las [...] claraciones financieras de ASARCO, registradas públicamente, representaron a ASARCO

7

06

como una corporación solvente, internacional, con acciones cambiadas públicamente, se cotiza en la Bolsa de Valores de Nueva York con más de cuatro millares de millones de dólares en activos y una relación baja de deuda a activo.

24.    Sin embargo, los Demandados, incluyendo a los Oficiales y Directores de ASARCO, estaban conscientes de reclamos múltiples contra la compañía por limpieza de contaminación del medio ambiente referente a las operaciones mineras y de fundición de ASARCO en los Estados Unidos y miles de reclamos por lesión personal relacionados con asbesto siendo el resultado de la operación de las propias facilidades de ASARCO y las de dos sociedades subsidiarias de ASARCO, Capco Pipe Company (distribuidor y fabricante de productos de asbesto) y Lac d'Amiante du Québec (LAQ) (operación minera de asbesto).

25.    Tomando en cuenta estos reclamos actuales y anticipados de los acreedores, ASARCO era insolvente o enfrentando la insolvencia antes de la compra apalancada.

26.    Los Directores de ASARCO decidieron vender la compañía. Los Directores, todos accionistas de ASARCO y personas claves de la compañía con acceso a información que no es de conocimiento público, recibieron y aceptaron ofertas públicas para la adquisición de acciones de Phelps Dodge Corporation y del demandado GRUPO MEXICO.

27.    La venta de ASARCO y la liquidación de los activos principales de la compañía antes del cierre de sus reclamos ambientales, incluyendo los reclamos de asbesto, y sus otros reclamos anticipados de acreedores no garantizados, ilegalmente favorecía a los accionistas a costa de los acreedores, incluyendo a los Demandantes.

8

064

**VISIÓN GENERAL DE LA OFERTA PÚBLICA PARA LA ADQUISICIÓN DE ACCIONES DE GRUPO MÉXICO Y PLAN INTEGRADO DE LIQUIDACIÓN**

28.    GRUPO MÉXICO ofreció comprar las acciones de ASARCO en dinero efectivo mediante una compra apalancada.  La oferta pública para la adquisición de acciones de GRUPO MÉXICO constó de $29.75 por acción, la garantía de un préstamo de Chase y otros prestadores incluyendo a CSFB a ASARCO para volver a comprar sus propias acciones y la asunción de "deuda corporativa pre-existente" de $1.2 millares de millones de dólares.  Sin embargo, la propuesta de GRUPO MÉXICO en realidad no concernió el pago de toda la "deuda corporativa pre-existente" de ASARCO.

29.    Entonces GRUPO MÉXICO forzaría a ASARCO hacerse responsable por el préstamo a Chase y los otros prestadores, obligando a ASARCO (en vez de GRUPO MÉXICO) pagar por su propia compra por GRUPO MÉXICO.  Así que ASARCO se forzó repagar los préstamos hechos a GRUPO MÉXICO por desmontarse mediante la venta de sus propios activos.

30.    En cuanto a la "deuda corporativa pre-existente", la mayoría de la deuda no era debida ni garantizada por ASARCO.  Esta deuda era de SPCC y originó de un proyecto de expansión de las operaciones mineras de cobre de SPCC.  No obstante, basado en información y entendimiento, GRUPO MÉXICO además requirió que los activos de ASARCO sean liquidados para pagar la deuda de SPCC.  Finalmente, habiendo usado sus propios activos para pagar la deuda de SPCC, ASARCO transfirió sus acciones de SPCC a GRUPO MÉXICO por irrazonablemente poca recompensa.

C.    **PASO 1: LA COMPRA Y PRIVATIZACIÓN DE ASARCO POR GRUPO MÉXICO**

9

065

En noviembre de 1999, GRUPO MÉXICO compró a ASARCO en una transacción de "ruptura" en donde los activos no mineros de ASARCO se vendieron para cubrir la compra.

La adquisición de ASARCO por GRUPO MÉXICO se llevó a cabo mediante la redención / recompra de las acciones de ASARCO. Antes de su oferta pública para la adquisición de acciones, GRUPO MÉXICO, mediante una sociedad subsidiaria, tuvo un poco más de 9% de las acciones comunes en circulación de ASARCO y era el accionista mayor de la compañía. Como ASARCO volvió a comprar sus propias acciones, el interés de titularidad de GRUPO MÉXICO en ASARCO aumentó.

33.    En unión con la adquisición, GRUPO MÉXICO causó a ASARCO fusionar con una sociedad subsidiaria de fusión de GRUPO MÉXICO, con "ASARCO" siendo el sobreviviente. Luego las acciones de ASARCO de GRUPO MÉXICO se transfirieron a una compañía tenedora de valores de otras empresas, el demandado Americas Mining Corporation (AMC).

34.    Después de la redención / recompra de acciones de los otros accionistas de ASARCO, GRUPO MÉXICO privatizó a ASARCO en anticipación de liquidar sus activos no mineros. ASARCO ya no era una compañía cotizada en la Bolsa de Valores de Nueva York y ASARCO ya no tenía que publicar sus informes financieros.

35.    En una serie de transacciones relacionadas, integradas y diseñadas, GRUPO MÉXICO adquirió a ASARCO por medio de una compra apalancada por menos de recompensa justa, sin buena fe y en derogación de los derechos de los acreedores, incluyendo a los demandantes.

10

066

36.    Los costos de adquisición de GRUPO MÉXICO para la compra de ASARCO se pagaron con dinero pedido prestado por ASARCO.  En noviembre de 1999, GRUPO MÉXICO negoció con Chase para financiamiento para redimir las acciones de ASARCO.

37.    Para pagar los costos iniciales de adquisición, GRUPO MÉXICO causó a ASARCO (mediante la sociedad subsidiaria de fusión de GRUPO MÉXICO) pedir prestado ochocientos diecisiete millones de dólares  ($817,000,000) ("préstamo de adquisición") del demandado Chase.

38.    Chase también estableció y sindicó un crédito renovable de cuatrocientos cincuenta millones de dólares ($450,000,000) para ASARCO lo cual aumentó los deberes y servicio de la deuda de la compañía.

39.    Como colateral, ASARCO prendó su interés de titularidad en SPCC, Enthone-OMI, Inc. y compañías relacionadas (colectivamente "Enthone") y American Limestone Company y compañías relacionadas (colectivamente "American Limestone"). (SPCC, Enthone y American Limestone se mencionan colectivamente aquí en esto como "activos principales de ASARCO").  Como parte de la adquisición de GRUPO MÉXICO y en anticipación de la transferencia a GRUPO MÉXICO, ASARCO colocó sus acciones de SPCC en una sociedad subsidiaria totalmente su propiedad y compañía tenedora de valores de otras empresas, Southern Peru Holding Corporation ("SPHC"). En el momento de la adquisición,  ASARCO estuvo en poder de aproximadamente 54.2 % de las acciones con derecho de voto de SPCC.

40.    Chase y los otros bancos participantes esperaron recibir pago, y fueron pagados, como prestadores de prioridad, de los beneficios de la venta de la división de

11

067

especialidad química (Enthone) de ASARCO y la división de conglomerados (American Limestone) de ASARCO y los beneficios de la venta de las acciones de SPCC de ASARCO.

41.     El demandado Chase sabía que estaba proporcionando la deuda de rango superior necesaria para adquirir y liquidar los activos principales de ASARCO, y sabía o debería haber sabido que ASARCO ya era insolvente por las responsabilidades ambientales de asbesto o se volvería insolvente o sin capital suficiente continuar operaciones principales normales como el resultado de estas cesiones.

42.     Chase sabía que los pendientes acreedores ambientales y de lesión personal no garantizados de ASARCO no estarían satisfechos bajo la liquidación prevista.

43.     Las recitaciones dentro del acuerdo del préstamo declaran que el propósito principal del préstamo de adquisición era volver a comprar las acciones de ASARCO de sus accionistas.  Chase sabía que los beneficios del préstamo no se acumularían al beneficio de ASARCO o sus acreedores y así representaba una ganancia de capital irrazonablemente pequeña por el gravamen.  Chase sabía que los beneficios del préstamo iban a ser usados para el beneficio de terceros, GRUPO MÉXICO, AMC y los accionistas anteriores de ASARCO, quienes eran "personas claves de la compañía con acceso a información que no es de conocimiento público" en la transacción.

D.     **PASO 2: LA LIQUIDACIÓN DE LOS ACTIVOS PRINCIPALES DE ASARCO**

44.     Después de la adquisición, GRUPO MÉXICO mudó la sede corporativa de ASARCO desde Nueva York a Phoenix, Arizona, donde ASARCO compartió oficinas con AMC y SPHC.  GRUPO MÉXICO reemplazó a los Oficiales y Directores de ASARCO con designados de su propia Junta.  ASARCO se hizo una sociedad subsidiaria totalmente

12