093

...iones de los Demandados:

...O MÉXICO S.A. de C.V.
...da Baja California 200
...ia Roma Sur
...d de México, México 06760

...THERN PERU HOLDING CORPORATION
...East Camelback Road
...ix, Arizona

...THERN PERU HOLDING CORPORATION II
...East Camelback Road
...ix, Arizona

...O MÉXICO MINERO
...ICO INTERNACIONAL, S.A. de C.V.
...da Baja California 200
...ia Roma Sur
...d de México, México 06760

...PAÑIA MEXICANA de COBRE
...da Baja California 200
...ia Roma Sur
...d de México, México 06760

...RICAS MINING CORPORATION
...East Camelback Road
...ix, Arizona

...ORGAN CHASE antes conocido como
...SE MANHATTAN BANK
...tención de CT Corporation System
...Eighth Avenue
...a York, Nueva York 10011

...ST & YOUNG, LLP
...Seventh Avenue
...a York, NY 10019

...ST & YOUNG CORPORATE
...NCE LLC
...Seventh Avenue
...a York, Nueva York 10019

094

IAN LARREA MOTA-VAELASCO
a Baja California 200
ia Roma Sur
d de México, México 06760

AR GONZALES ROCHA
East Camelback Road
ix Arizona

ELTELLECHEA SALIDO
East Camelback Road
ix Arizona

095

...NAL SUPREMO DEL ESTADO DE NUE**VA YORK**
...DO DE NUEVA YORK

... NELSON BURNS, MIRJANA
...OVICH, Administradora del Caudal
...no de Rade Pavkovich, Difunto, y
...EN ELMER HALFPAP,

   Demandante(s),

No. de Índice: *114728/04*

**DEMANDA VERIFICADA**

  -contra-

... MÉXICO S. A. de C.V., una
... mexicana, SOUTHERN PERU
...NG CORPORATION, una corporación
... SOUTHERN PERU HOLDING
...RATION II, una corporación de
... GRUPO MINERO MÉXICO
...NACIONAL, S. A. DE C.V., una
... mexicana, COMPAÑÍA
...ANA de COBRE, una corporación
...P MORGAN CHASE &
...ANY, antes conocido como CHASE
...ATTAN BANK & TRUST COMPANY,
...poración de Delaware, AMERICAS
...NG CORPORATION, una corporación de
...re, ERNST & YOUNG LLP, ERNST &
...NG CORPORATE FINANCE, LLC,
...MAN LARREA MOTA-VAELASCO,
... y Director de ASARCO, Inc., OSCAR
...ZALES ROCHA Oficial y Director de
...CO, Inc., DANIEL TELLECHEA
...DO Oficial y Director de ASARCO, Inc.

   Demandado(s)

...emandantes, por medio de sus abogados, **WEITZ & LUXENBERG, P.C. y BARON &**

... P.C. para su acción contra los Demandados respetuosamente alegan como sigue:

## DECLARACIÓN **PRELIMINAR**

1. Este caso tiene que ver con la adquisición y **liquidación sistemática de una**

1

096

...estadounidense con valor de múltiple millares de millones de dólares y cien años de

...el beneficio de inversionistas extranjeros y al perjuicio de acreedores residentes. Se

...ron las compañías y activos que formaron ASARCO mediante la adquisición de una

...de sus acciones, se vendieron por ganancia y se transfirieron fuera del alcance directo de

...dos perjudicados por ASARCO y a quienes se debe indemnización.

...Esta acción surge bajo el Acto de Cesión Fraudulenta de Nueva York, *DEBT. &*

*...y/o seq.* y el derecho común de Nueva York en relación con el fraude. Todos los

...tienen reclamos en contra de ASARCO por lesiones personales relacionadas con

...el asbesto, y todos son acreedores de ASARCO.

## JURISDICCIÓN, COMPETENCIA Y SELECCIÓN DE LA LEY APLICABLE

...La jurisdicción y competencia son correctas en el Estado de Nueva York y el

...de Nueva York conforme a *N.Y. C.P. L.R. art. 5 § 503.* La Ley Estatal de Nueva

...gobierna la resolución de los reclamos por remedio de los demandantes.

...Las partes y las transferencias principales demandadas aquí en esto tienen

...ciones significantes con esta jurisdicción. En el momento de la compra apalancada, la sede

...rativa de ASARCO se ubicó en la Ciudad de Nueva York. La sede corporativa del

...dado JP Morgan Chase & Company antes conocido como Chase Manhattan Bank & Trust

..."Chase") se ubica en la Ciudad de Nueva York.

...Todos los demandados están autorizados llevar a cabo negocios en el estado y/o

...n contratado proveer bienes y servicios dentro del estado. Todos las corporaciones y

...ades comerciales demandadas han cometido actos dañosos dentro del estado de Nueva

2

EXHIBIT 097

ASARCO, el demandado GRUPO MEXICO, el demandado Americas Mining ("AMC") y el demandado CHASE han renunciado contractualmente cualquier que ellos pudieran tener impugnar la jurisdicción de este Tribunal concerniente a las disputadas aquí mencionadas. Además, estos demandados han designado en esos contratos que la Ley Estatal de Nueva York gobierna transacciones principales abarcadas compra apalancada.

El demandado Ernst & Young, LLP  y  Ernst & Young Corporate Finance LLC cabo negocios con regularidad en este estado y condado.

El Estado de Nueva York tiene el interés más significativo en el resultado de este

### Demandantes

Los demandantes actualmente son acreedores no garantizados de ASARCO cuyos nos no se han satisfecho.  Los demandantes son personas dañadas por ASARCO y cuyos nos de daño legal fueron presentados o no fueron presentados contra ASARCO en el nto de la cesión(es) fraudulenta(s) en cuestión.  Todos los demandantes tienen "reclamos" ASARCO y por tanto son "acreedores" según se define ese término bajo el Acto de a Fraudulenta de Nueva York, ("el Acto"), *DEBT. & CRED. § 270*.

10.   Los demandantes son por nombre y ciudadanía: PHILLIP NELSON BURNS, un dano del Estado de Arizona; MIRJANA PAVKOVICH, Administradora del Caudal ilario de Rade Pavkovich, Difunto, una ciudadana del Estado de Arizona; y WARREN ER HALFPAP, un ciudadano del Estado de Nueva York.

### Demandados

3

098

El demandado GRUPO MÉXICO S. A. de C.V. ("GRUPO MÉXICO") es una
[...] mexicana. Se puede notificar a GRUPO MÉXICO de actos procésales conforme al
[...] Relativo a la Notificación o Traslado en el Extranjero de Documentos Judiciales y
[...] les en Materia Civil o Comercial (el Convenio de La Haya) proporcionando la
[...] Demanda en forma debida a la Autoridad Central Mexicana, que efectuará la
[...] formal de GRUPO MÉXICO MÉXICO, S.A. DE C.V., en su sede en Avenida Baja
[...] Colonia Roma Sur 06760 Ciudad de México, México.

[...] Los demandados SOUTHERN PERU HOLDING CORPORATION (SPHC) y
[...] HERN PERU HOLDING CORPORATION II (colectivamente "SPHC") están
[...] res en el Estado de Delaware y mantienen su sede corporativa en 2575 East Camelback
[...] Arizona. SPHC es una compañía tenedora de valores de otras empresas y se
[...] una sociedad subsidiaria y totalmente la propiedad de ASARCO para facilitar la
[...] cia del interés de ASARCO en la empresa Southern Peru Copper Corporation
[...] el demandado GRUPO MÉXICO S.A. de C.V. y/o sus afiliados.

[...] El demandado GRUPO MÉXICO MINERO MÉXICO INTERNACIONAL, S.A.
[...] ("GMMI") es una corporación mexicana. Se puede notificar a GMMI de actos
[...] les conforme al Convenio Relativo a la Notificación o Traslado en el Extranjero de
[...] mentos Judiciales y Extrajudiciales en Materia Civil o Comercial (el Convenio de La Haya)
[...] cionando la Citación y Demanda en forma debida a la Autoridad Central Mexicana, que
[...] nará la notificación formal de GRUPO MÉXICO MINERO MÉXICO INTERNACIONAL,
[...] DE C.V., en su sede en Avenida Baja California 200, Colonia Roma Sur 06760 Ciudad de
[...] co, México.

099

14.    El demandado COMPAÑÍA MEXICANA de COBRE es una corporación

que se puede notificar de actos procésales conforme al Convenio Relativo a la

[Notifica]ción o Traslado en el Extranjero de Documentos Judiciales y Extrajudiciales en Materia

[Civil] o Comercial (el Convenio de La Haya) proporcionando la Citación y Demanda en forma

[a la] Autoridad Central Mexicana, que efectuará la notificación formal de

[CON]TROLADORA MINERA MÉXICO, S.A. DE C.V., en su sede en Avenida Baja California

Colonia Roma Sur 06760 Ciudad de México, México.

15.    El demandado AMERICAS MINING CORPORATION ("AMC") está

[incorporada en el] Estado de Delaware y mantiene su sede en 2575 East Camelback Road,

[Phoenix, Ari]zona. AMC es una sociedad subsidiaria totalmente la propiedad de GRUPO

[MEXI]CO MÉXICO S.A. de C.V.

16.    El demandado JPMORGAN CHASE & COMPANY antes conocido como

[CHA]SE MANHATTAN BANK ("Chase") es una corporación de Delaware con su sede

[opera]tiva ubicada en la Ciudad de Nueva York, Nueva York.  Chase Manhattan Bank es una

[entidad] "sucesoria" de JP Morgan Chase & Co.

17.    El demandado ERNST & YOUNG, LLP y el demandado ERNST & YOUNG

[COR]PORATE FINANCE, LLC (colectivamente "Ernst & Young") son compañías de

[respon]sabilidad limitada y empresas de contabilidad con oficinas mundiales incluyendo oficinas

[en la] Ciudad de Nueva York, Nueva York.

18.    El demandado GERMAN LARREA MOTA-VAELASCO era el Presidente y

[Primer] Mandatario de ASARCO desde noviembre de 1999 y en la fecha de la transferencia de

[SPCC] a AMC.  Igualmente era Presidente de la Junta Directiva de SPCC y Primer Mandatario y

[Presi]dente de la Junta Directiva de Grupo México, y él debe un deber fiduciario a los acreedores

5

100

SARCO, incluyendo a los demandantes. Se puede notificar al Sr. Mota-Vaelasco de actos

...ales conforme al Convenio Relativo a la Notificación o Traslado en el Extranjero de

...mentos Judiciales y Extrajudiciales en Materia Civil o Comercial (el Convenio de La Haya)

...cionando la Citación y Demanda en forma debida a la Autoridad Central Mexicana, que

...urá la notificación formal del Sr. Mota-Vaelasco en su domicilio comercial en Avenida

California 200, Colonia Roma Sur 06760 Ciudad de México, México.

19.    El demandado OSCAR GONZALES ROCHA fue un Director de ASARCO en la

...de la transferencia de SPCC a AMC.  En aquel entonces también era Presidente, Director

...y Primer Oficial Operativo de SPCC, y él debe un deber fiduciario a los acreedores de

...RCO, incluyendo a los demandantes. Se puede notificar al Sr. Rocha de actos procésales en

...domicilio comercial en su sede en 2575 East Camelback Road, Phoenix, Arizona.

20.    El demandado DANIEL TELLECHEA SALIDO fue un Director, Vicepresidente

...tivo y Primer Oficial Financiero de ASARCO en la fecha de la transferencia de SPCC a

...  En aquel entonces también era Director y Vicepresidente de Finanzas para SPCC y

...tor Administrativo para la Administración y Finanzas de Grupo México, y él debe un deber

...ciario a los acreedores de ASARCO, incluyendo a los demandantes.   Se puede notificar al

...alido de actos procésales en su domicilio comercial en su sede en 2575 East Camelback

...,  Phoenix, Arizona.

## ANTECEDENTES DE LOS ALEGATOS

### ASARCO ANTES DE LA COMPRA APALANCADA

21.    Antes de la compra apalancada (*LBO*) de ASARCO por GRUPO MÉXICO, las

...raciones financieras de ASARCO, registradas públicamente, representaron a ASARCO

6

101

como una corporación solvente, internacional, con acciones cambiadas públicamente, se cotiza en la Bolsa de Valores de Nueva York con más de cuatro millares de millones de dólares en activos y una relación baja de deuda a activo.

22.    Sin embargo, los Demandados, incluyendo a los Oficiales y Directores de ASARCO, estaban conscientes de reclamos múltiples contra la compañía por limpieza de contaminación del medio ambiente referente a las operaciones mineras y de fundición de ASARCO en los Estados Unidos y miles de reclamos por lesión personal relacionados con asbesto siendo el resultado de la operación de las propias facilidades de ASARCO y de dos sociedades subsidiarias de ASARCO, Capco Pipe Company (distribuidor y vendiente de productos de asbesto) y LAQ (operación minera de asbesto).

23.    Tomando en cuenta estos reclamos actuales y anticipados de los acreedores, ASARCO era insolvente o enfrentando la insolvencia antes de la compra apalancada.

24.    Los Directores de ASARCO decidieron vender la compañía. Los Directores, todos accionistas de ASARCO y personas claves de la compañía con acceso a información que no es de conocimiento público, recibieron y aceptaron ofertas públicas para la adquisición de acciones de Phelps Dodge Corporation y del demandado GRUPO MÉXICO.

25.    La venta de ASARCO y la liquidación de los activos principales de la compañía antes del cierre de sus reclamos ambientales, incluyendo los reclamos de asbesto, y sus otros reclamos anticipados de acreedores no garantizados, ilegalmente favorecía a los accionistas a costa de los acreedores, incluyendo a los Demandantes.

## VISIÓN GENERAL DE LA OFERTA PÚBLICA PARA LA ADQUISICIÓN DE ACCIONES DE GRUPO MÉXICO Y PLAN INTEGRADO DE LIQUIDACIÓN

102

26.    GRUPO MÉXICO ofreció comprar las acciones de ASARCO en dinero en efectivo mediante una compra apalancada.  La oferta pública para la adquisición de acciones de GRUPO MÉXICO constó de $29.75 por acción, la garantía de un préstamo de Chase a ASARCO para volver a comprar sus propias acciones y la asunción de "deuda corporativa pre-existente" de $1.2 millares de millones de dólares.  Sin embargo, la oferta de GRUPO MÉXICO en realidad no concernió el pago de toda la "deuda corporativa pre-existente" de ASARCO.

27.    Entonces GRUPO MÉXICO forzaría a ASARCO hacerse responsable por el préstamo de Chase, obligando a ASARCO (en vez de GRUPO MÉXICO) pagar por su propia compra por GRUPO MÉXICO.  Así que ASARCO se forzó repagar el préstamo de Chase hecho a GRUPO MÉXICO por desmontarse mediante la venta de sus propios activos.

28.    En cuanto a la "deuda corporativa pre-existente", la mayoría de la deuda no era debida ni garantizada por ASARCO.  Esta deuda era de SPCC y originó de un proyecto de expansión de las operaciones mineras de cobre de SPCC.  No obstante, basado en información y entendimiento, GRUPO MÉXICO además requirió que los activos de ASARCO sean liquidados para pagar la deuda de SPCC.  Finalmente, habiendo usado sus propios activos para pagar la deuda de SPCC, ASARCO transfirió sus acciones de SPCC a GRUPO MÉXICO por irrazonablemente poca recompensa.

## PASO 1: LA COMPRA Y PRIVATIZACIÓN DE ASARCO POR GRUPO MÉXICO

103

29.   En noviembre de 1999, GRUPO MÉXICO compró a ASARCO en una adquisición de "ruptura" en donde los activos no mineros de ASARCO se vendieron para financiar la compra.

30.   La adquisición de ASARCO por GRUPO MÉXICO se llevó a cabo mediante la redención de las acciones de ASARCO.  Antes de su oferta pública para la adquisición de acciones, GRUPO MÉXICO adquirió un poco más de 9% de las acciones comunes en circulación de ASARCO y era el accionista mayor de la compañía. Como ASARCO volvió a comprar sus propias acciones, el interés de titularidad de GRUPO MÉXICO en ASARCO aumentó.

31.   En unión con la adquisición, GRUPO MÉXICO causó a ASARCO fusionar con una sociedad subsidiaria de fusión de GRUPO MÉXICO, con "ASARCO" siendo el sobreviviente. Luego las acciones de ASARCO de GRUPO MÉXICO se transfirieron a una compañía tenedora de valores de otras empresas, el demandado Americas Mining Corporation (AMC).

32.   Después de la redención de los otros accionistas de ASARCO, GRUPO MÉXICO privatizó a ASARCO en anticipación de liquidar sus activos no mineros. ASARCO ya no era una compañía cotizada en la Bolsa de Valores de Nueva York, y ASARCO ya no tenía que publicar sus informes financieros.

33.   En una serie de transacciones relacionadas, integradas y diseñadas, GRUPO MÉXICO adquirió a ASARCO por medio de una compra apalancada por menos de recompensa justa, sin buena fe y en derogación de los derechos de los acreedores, incluyendo a los demandantes.

104

Los costos de adquisición de GRUPO MÉXICO para la compra de ASARCO se pagaron con dinero pedido prestado por ASARCO. En noviembre de 1999, GRUPO MÉXICO negoció con Chase para financiamiento para redimir las acciones de ASARCO.

35. Para pagar los costos iniciales de adquisición, GRUPO MÉXICO causó a ASARCO (mediante la sociedad subsidiaria de fusión de GRUPO MÉXICO) pedir prestado ochocientos diecisiete millones de dólares ($817,000,000) ("préstamo de adquisición") del demandado Chase.

36. Chase también estableció y sindicó un crédito renovable de cuatrocientos cincuenta millones de dólares ($450,000,000) para ASARCO lo cual aumentó los deberes y servicio de la deuda de la compañía.

37. Como colateral, ASARCO prendó su interés de titularidad en SPCC, Enthone OMI y compañías relacionadas (colectivamente "Enthone") y American Limestone Company, Inc. y compañías relacionadas (colectivamente "American Limestone") (colectivamente "activos principales de ASARCO"). Como parte de la adquisición de GRUPO MÉXICO y en anticipación de la transferencia a GRUPO MÉXICO, ASARCO colocó sus acciones de SPCC en una sociedad subsidiaria totalmente en propiedad y compañía tenedora de valores de otras empresas, Southern Peru Holding Corporation II ("SPHC"). En el momento de la adquisición, ASARCO estuvo en poder de aproximadamente 54% de las acciones con derecho de voto de SPCC.

38. Chase y los otros bancos participantes esperaron recibir pago, y fueron pagados, como prestadores de prioridad, de los beneficios de la venta de la división de Especialidad química (Enthone) de ASARCO y la división de conglomerados (American

105

(...siones) de ASARCO y los beneficios de la venta de las acciones de SPCC de

ASARCO.

39.    El demandado Chase sabía que estaba proporcionando la deuda de rango

(su)perior necesaria para adquirir y liquidar los activos principales de ASARCO, y sabía o

(de)biera haber sabido que ASARCO ya era insolvente por las responsabilidades ambientales

(y) de asbesto o se volvería insolvente o sin capital suficiente continuar operaciones

(co)merciales normales como el resultado de estas cesiones.

40.    Chase sabía que los pendientes acreedores ambientales y de lesión personal

(no) garantizados de ASARCO no estarían satisfechos bajo la liquidación prevista.

41.    Las recitaciones dentro del acuerdo del préstamo declaran que el propósito

(prin)cipal del préstamo de adquisición era volver a comprar las acciones de ASARCO de

(su)s accionistas.  Chase sabía que los beneficios del préstamo no se acumularían al beneficio

(de) ASARCO o sus acreedores y así representaba una ganancia capital irrazonablemente

(pe)queña por el gravamen.  Chase sabía que los beneficios del préstamo iban a ser usados

(pa)ra el beneficio de terceros, GRUPO MÉXICO, AMC y los accionistas anteriores de

ASARCO, quienes eran "personas claves de la compañía con acceso a información que no

(er)a de conocimiento público" en la transacción.

### PASO 2: LA LIQUIDACIÓN DE LOS ACTIVOS PRINCIPALES DE ASARCO

42.    Después de la adquisición, GRUPO MÉXICO mudó la sede corporativa de

(A)SARCO desde Nueva York a Phoenix, Arizona, donde ASARCO compartió oficinas con

(A)MC y SPHC.  GRUPO MÉXICO reemplazó a los Oficiales y Directores de ASARCO

(con de)signados de su propia Junta.  ASARCO se hizo una sociedad subsidiaria totalmente

11

propiedad de AMC. Después de la adquisición, ASARCO perdió su identidad distinta y controla totalmente por GRUPO MÉXICO y sus afiliados.

43.    GRUPO MÉXICO forzó a ASARCO vender sus activos para pagar los costos de adquisición de GRUPO MÉXICO. A la indicación de GRUPO MÉXICO, aproximadamente $17 millones del equipo comercial de ASARCO se vendió en subasta.

44.    A la indicación de GRUPO MÉXICO y según el acuerdo con Chase, ASARCO vendió su lucrativa división de especialidad química (Enthone) a Cookson LLP Inglaterra por quinientos tres millones de dólares ($503,000,000).

45.    A la indicación de GRUPO MÉXICO y según el acuerdo con Chase, ASARCO vendió su lucrativa división de conglomerados (American Limestone) a Rinker Group LLP de Australia por doscientos once millones de dólares ($211,000,000).

46.    Los beneficios de estas ventas no se acumularon al beneficio de ASARCO y sus acreedores ya que este dinero se aplicó a la deuda de adquisición y solamente beneficio a Chase, GRUPO MÉXICO y los accionistas anteriores de ASARCO haciendo caso omiso de los reclamantes ambientales y de asbesto existentes y futuros. Estas cesiones por menos de recompensa justa, se hicieron sin buena fe, crearon o aumentaron la insolvencia e insuficiencia de capital de ASARCO y fueron en derogación de los derechos de los acreedores incluyendo los derechos de los demandantes.

47.    A la indicación de GRUPO MÉXICO, los activos de ASARCO fueron desviados al perjuicio de los acreedores de ASARCO. Los beneficios del acuerdo concerniente al litigio con los aseguradores de responsabilidad en exceso de ASARCO no fueron segregados ni mantenidos para pagar los reclamos conocidos de responsabilidad relacionados con la cobertura de seguros. Como prueba clara del plan integrado liquidar a

107

ASARCO al perjuicio de los acreedores no garantizados, los beneficios futuros del acuerdo de seguros se vendieron a descuento grande, y el dinero en efectivo se transfirió a la cuenta operativa de ASARCO y se gastó.

48.    En 2003, a la indicación de GRUPO MÉXICO y según el acuerdo con Chase, el interés de ASARCO en SPCC se transfirió a AMC, otra sociedad subsidiaria totalmente la propiedad de GRUPO MÉXICO.  Como contraprestación de esta cesión, GRUPO MÉXICO pagó a Chase y al sindicato de bancos, de parte de ASARCO, cuatrocientos cincuenta millones de dólares ($450,000,000) en reembolso de préstamos surgiendo de la adquisición, "perdonó" cierta deuda entre compañías de Compañía Mexicana de Cobre también relacionada con los costos de adquisición y acordó pagar doscientos cuarenta y tres millones de dólares ($243,000,000) en alguna fecha futura.  Parte de este último pago pueda acumular al beneficio de los acreedores no garantizados de ASARCO (principalmente como parte de un acuerdo con los Estados Unidos sobre algunos reclamos ambientales) pero representa una cantidad mucho menos que un equivalente justo por los activos.

**ASARCO ACCIONADO POR CESIÓN FRAUDULENTA POR EL GOBIERNO DE LOS ESTADOS UNIDOS**

49.    Después de que la transferencia de los activos restantes más valiosos de ASARCO (las acciones de SPCC mantenidas por SPHC) fuese propuesta, los Estados Unidos (un acreedor no garantizado con reclamos ambientales) inició una acción judicial contra ASARCO por cesión fraudulenta.  *(Los Estados Unidos de América contra Asarco Incorporated y Southern Peru Holding Corporation* (Distrito Occidental de Washington), (más tarde transferido al Distrito de Arizona).

13

108

50.    Durante el curso del litigio del Gobierno, ASARCO confesaba que ya no podía pagar sus deudas al vencerse.

51.    Los Estados Unidos finalmente resolvió sus reclamos contra ASARCO y PHC por cien millones de dólares ($100,000,000), una cantidad mucho menos de la responsabilidad debida en los reclamos ambientales recién vencidos, y retiró su objeción a transferencia. Este acuerdo no proporcionó beneficios ni protecciones en absoluto para otros acreedores no garantizados de ASARCO, incluyendo a los demandantes.

52.    Basado en información y entendimiento, los Estados Unidos resolvió barato reclamo porque las acciones de SPCC ya estaban gravadas por el préstamo de adquisición del demandado Chase, los activos de ASARCO ya estaban reducidos por la venta de Enthone y American Limestone, la capitalización de ASARCO era demasiada escasa para continuar muchas de sus operaciones comerciales y por las tergiversaciones financieras de ASARCO, GRUPO MÉXICO y el demandado Ernst & Young en cuanto al valor del interés de ASARCO en SPCC.

53.    La transferencia del interés de ASARCO en SPCC se facilitó por el demandado Ernst & Young quien imprudentemente y a sabiendas dio una opinión sobrevalorando este activo. Como el resultado directo de las tergiversaciones de Ernst & Young, los derechos de los demandantes fueron minados.

## ASARCO DESPUÉS DE LA COMPRA APALANCADA Y RELACIONADAS VENTAS DE ACTIVOS

54.    Después de las cesiones descritas aquí en esto, ASARCO quedó como aquello insolvente. El valor vendible actual de los activos de ASARCO es menos de la cantidad necesitada pagar las responsabilidades probables de la corporación, incluyendo los reclamos de lesión personal de los demandantes. ASARCO falta recursos suficientes pagar

14

109

formemente a sus acreedores, incluyendo a los demandantes. La capitalización de ASARCO es demasiada escasa para continuar las operaciones comerciales mantenidas antes de la venta de SPCC. Despojado de sus activos de más valor, ASARCO está al borde de presentar una solicitud para protección de insolvencia.

55.    Un resultado justo para los demandantes, cuyos reclamos contra ASARCO quedan insatisfechos, requiera que las transacciones precedentes sean vistas como parte de un plan integrado, completado en un plazo de menos de cinco años, resultando en cesiones que son fraudulentas a los demandantes.

## PRIMER DERECHO DE ACCIÓN DE LOS DEMANDANTES
### *(Fraude Implícito – Cesión Resultando en Insolvencia)*

56.    Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-55 y para su Primer Derecho de Acción declaran como sigue:

57.    ASARCO debe una "deuda" a los demandantes según ese término se define bajo el Acto de Cesión Fraudulenta de Nueva York ("el Acto"). *N.Y. DEBT. & CRED. § 270.*

58.    La venta de ASARCO a GRUPO MÉXICO en noviembre de 1999 por y por medio de una compra apalancada es una "cesión" según ese término se define bajo el Acto. *N.Y. DEBT. & CRED. § 270.*

59.    El gravamen de los intereses de ASARCO en Enthone, American Limestone y SPCC en fomento de la compra apalancada de GRUPO MÉXICO de ASARCO, es una "cesión" de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

60.    La venta en subasta de cierto equipo comercial de ASARCO, es una "cesión" de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

15

110

61. La transferencia del interés de titularidad de GRUPO MÉXICO en ASARCO (como fusionado con ASMEX) a AMC es una "cesión" de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

62. La venta de Enthone, American Limestone y el interés de titularidad de ASARCO en SPCC ("los activos principales de ASARCO") por separado y respecto a un plan integrado de liquidación es/son "cesión(es)" de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

63. La redención de las acciones de ASARCO de los Directores de ASARCO y sus accionistas es una "cesión" según ese término se define bajo el Acto. *N.Y. DEBT. & CRED. § 270.*

64. Los demandantes tienen reclamos contra ASARCO por daños y perjuicios causados de lesiones personales causadas por exposición a asbesto. Los demandantes son acreedores de ASARCO bajo el Acto. *N.Y. DEBT. & CRED. § 270.*

65. ASARCO fue comprado por GRUPO MÉXICO, sus acciones redimidas, otro grupo comercial suyo liquidado en subasta, y sus activos principales gravados y vendidos en un momento cuando ASARCO o era insolvente o se volvería insolvente como resultado de la liquidación de sus activos.

66. ASARCO recibió menos de recompensa justa por la redención de sus acciones y transferencia de interés controlador en la compañía a GRUPO MÉXICO y AMC porque los beneficios de la cesión se acumulaban al beneficio de terceros (GRUPO MÉXICO, AMC, los accionistas anteriores de ASARCO y Chase) y no al beneficio de ASARCO o sus acreedores.

67. ASARCO recibió menos de recompensa justa por el gravamen de sus activos principales ya que los beneficios de la cesión se acumulaban al beneficio de

16

**111**

(GRUPO MÉXICO, AMC, los accionistas anteriores de ASARCO y Chase) y no

beneficio de ASARCO o sus acreedores.

68.     ASARCO recibió menos de recompensa justa por la venta en subasta de

cierto equipo comercial suyo y la venta de sus activos principales ya que los beneficios de

sus cesiones se acumulaban al beneficio de terceros (GRUPO MÉXICO, AMC, los

accionistas anteriores de ASARCO y Chase) y no al beneficio de ASARCO o sus

acreedores.

69.     Los demandantes tienen derecho a una sentencia a su favor contra GRUPO

MÉXICO y AMC declarando la cesión de ASARCO a GRUPO MÉXICO y AMC, el

gravamen y venta del equipo comercial y activos principales de ASARCO y la redención

de sus acciones ser individualmente y colectivamente fraudulentos en cuanto las deudas

debidas a los demandantes conforme a *N.Y. DEBT. & CRED. § 273.* Los demandantes tienen

derecho a remedios legales y equitativos apropiados en eso.

### SEGUNDO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Fraude Implícito   Cesión Resultando en Insuficiencia de Capital)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en

los párrafos 1-69 y para su Segundo Derecho de Acción declaran como sigue:

70.     A la indicación de GRUPO MÉXICO y AMC, ASARCO redimió sus

acciones y cedió cierto equipo comercial suyo y sus activos principales sin recompensa

justa cuando ASARCO estuvo participando o al punto de participar en un negocio o

transacción por lo cual la propiedad quedando en el poder de ASARCO después de la

cesión representó irrazonablemente poca capital.

71.     Los demandantes tienen derecho a una sentencia a su favor contra GRUPO

MÉXICO y AMC declarando el gravamen y la cesión del equipo comercial y activos

112

...ciones de ASARCO y la redención de las acciones de ASARCO, individualmente y

...vamente, fraudulentos en cuanto las Deudas debidas a los demandantes conforme a

...*DEBT. & CRED. § 274.* Los demandantes tienen derecho a remedios legales y

...uitativos apropiados en eso.

## TERCER DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Fraude Efectivo: Cesión en Anticipación de Deudas)*

...Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en

...párrafos 1-71 y para su Tercer Derecho de Acción declaran como sigue:

...72.    En una serie de transacciones tomadas a la indicación de GRUPO MÉXICO

...AMC, ASARCO fue vendido a GRUPO MÉXICO y transferido a AMC, las acciones de

...ASARCO redimidas y el equipo comercial y activos principales de ASARCO gravados y/o

...cedidos por menos de recompensa justa, con la intención o creencia que ASARCO

...contraería deudas fuera de su capacidad pagar al vencerse.

...73.    GRUPO MÉXICO y AMC estaban conscientes de los reclamos de los

...demandantes (y otros ambientales) contra ASARCO antes de las cesiones aquí

...mencionadas, y estos demandados sabían que estos reclamos quedarían insatisfechos bajo

...el plan integrado de liquidación.

...74.    Los demandantes tienen derecho a una sentencia a su favor contra GRUPO

...MÉXICO y AMC declarando la venta de ASARCO a GRUPO MÉXICO, la transferencia

...de ASARCO a AMC, la redención de las acciones de ASARCO y el gravamen y cesión del

...equipo comercial y/o activos principales de ASARCO ser fraudulentos a las deudas debidas

...a los demandantes conforme a *N.Y. DEBT. & CRED. § 275.* Los demandantes tienen

...derecho a remedios legales y equitativos apropiados en eso.

## CUARTO DERECHO DE ACCIÓN DE LOS DEMANDANTES

18

11

*Fraude Efectivo: Cesión con Intención de Frustrar Reclamos de Acreedores/Conspiración)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en párrafos 1-74 y para su Cuarto Derecho de Acción declaran como sigue:

75.    La redención de las acciones de ASARCO y la venta y liquidación de ASARCO por medio de la compra apalancada se tomaron mediante un plan integrado y bien orquestado por el demandado GRUPO MÉXICO y cumplido con la complicidad de otros incluyendo a AMC y Chase.

76.    La redención de las acciones de ASARCO y liquidación de los activos de ASARCO ocurrieron cuando:

a.    ASARCO era insolvente y/o con el conocimiento de que las transferencias, (individualmente y/o colectivamente) resultarían en la insolvencia de ASARCO;

b.    GRUPO MÉXICO, AMC y Chase estaban conscientes del litigio pendiente contra ASARCO por reclamos ambientales y reclamos de lesión personal relacionados con exposición a asbesto que habían hecho o harían la compañía insolvente;

c.    ASARCO faltaba medios financieros adecuados cumplir con sus deudas al vencerse;

d.    Los activos transferidos eran los activos principales de la corporación y constituían la mayoría de los activos de la compañía en valor;

e.    Las transferencias se hicieron por menos de recompensa justa;

f.    Las transferencia(s) beneficiaron a personas claves de la compañía con acceso a información que no es de conocimiento público incluyendo a los Directores de ASARCO y otros accionistas anteriores, GRUPO MÉXICO y AMC a costa de los acreedores no garantizados incluyendo a los demandantes.

77.    La redención de las acciones y liquidación de los activos de ASARCO se diseñó despojar la compañía de activos antes de que los reclamos de acreedores no garantizados se vencieran; la redención de las acciones de ASARCO y la venta y

19

**114**

...dación del equipo comercial y activos principales de ASARCO se tomaron con la ...ción de estorbar, retrasar o defraudar a los acreedores.

78. Los demandantes tienen derecho a una sentencia a su favor contra GRUPO MÉXICO, AMC y Chase declarando la venta de ASARCO a GRUPO MÉXICO y AMC, la ...ción de las acciones de ASARCO y el gravamen y cesión del equipo comercial y ...ivos principales de ASARCO ser fraudulentos conforme a *N.Y. DEBT. & CRED. § 276.* ...s demandantes tienen derecho a remedios legales y equitativos apropiados en eso.

79. Ya que estas transferencias eran cesiones fraudulentas, cometidas con la ...ción real de defraudar a los acreedores, se deben recuperar daños punitivos de los ...mandados, solidariamente, en una cantidad no menos de tres veces los daños y perjuicios ...ctivos.

### QUINTO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Cesión Fraudulenta: Responsabilidad del Cesionario Chase)*

...Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en ...s párrafos 1-79 y para su Quinto Derecho de Acción declaran como sigue:

80. El demandado Chase es el cesionario quien proporcionó la deuda de nivel ...perior necesaria para llevar a cabo la compra apalancada.

81. Chase sabía que la compra apalancada iba a ser una adquisición de "ruptura" ...n los activos de ASARCO a ser cedidos de ASARCO por menos de recompensa justa ya ...e los beneficios de estas transferencias no beneficiarían a ASARCO ni sus acreedores ...no en cambio acumularían a terceros, los accionistas anteriores de ASARCO, GRUPO ...ÉXICO y AMC.

82. Chase sabía que ASARCO era insolvente un poco antes de la compra ...palancada o que se volvería insolvente como el resultado de las cesiones concomitantes a

20

...apalancada y/o el servicio de la deuda impuesto por Chase para la adquisición y ...s operativos a ASARCO.

...3. Chase sabía que ASARCO iba a ser liquidado y quedaría con ...robablemente pequeños recursos de capital para continuar sus operaciones comerciales ...orales.

...4. Chase sabía que ASARCO iba a ser liquidado en un momento cuando ...ARCO, GRUPO MÉXICO y AMC pensaban que ASARCO contraería deudas fuera de ...ad pagar al vencerse.

...5. Chase sabía que el plan de liquidación se tomó con la intención de estorbar, ...r y/o defraudar a los acreedores.

...6. El gravamen de los activos principales de ASARCO a favor de Chase es una ...ón de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y.* ...*T. & CRED. § 270.*

...7. Pagos del préstamo relacionados con la compra apalancada recibidos por ...se y bancos participantes bajo gravámenes de prioridad, incluyendo sin limitarse a los ...cios de la venta de los activos principales de ASARCO y otros pagos del préstamo ...dos por ASARCO o por GRUPO MÉXICO (o sus afiliados) de parte de ASARCO ...ectivamente "pagos del préstamo") son "cesiones" de la propiedad de ASARCO (el ...dor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

...88. Los pagos del préstamo recibidos por Chase no están protegidos de ...pensación bajo *N.Y. DEBT. & CRED. 272(b)* ya que Chase no actuaba en buena fe aquí en ...o y/o la propiedad recibida por ASARCO de Chase era desproporcionadamente pequeña ...ndo comparada con el valor de la obligación a Chase.

117

Los demandantes tienen derecho a una sentencia a su favor contra Chase por [...] de la propiedad cedida y/o una sentencia declarando los pagos del préstamo [...]tantes a la compra apalancada hechos por o de parte de ASARCO a Chase ser [...]entos en cuanto a las Deudas debidas a los demandantes conforme a *DEBT. &* [...] *273, 274, 275 & 276.* Los demandantes tienen derecho a remedios legales y [...]tivos apropiados en eso.

## SEXTO DERECHO DE ACCIÓN DE LOS DEMANDANTES
### *(Cesión Fraudulenta: Beneficios de Seguros)*

[...]s demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en [...]rafos 1-93 y para su Sexto Derecho de Acción declaran como sigue:

[...] Todos los demandantes tienen "reclamos" contra ASARCO y por tanto son [...]ores de ASARCO bajo el Acto. *N.Y. DEBT. & CRED. § 270.* ASARCO tiene [...]sabilidad a los demandantes y por tanto es un "deudor" conforme al Acto. *N.Y.* [...]*BT. & CRED. § 270.*

[...] El descuento grande de los beneficios futuros de los seguros y la [...]sferencia de dichos beneficios de seguros a la indicación de GRUPO MÉXICO o sus [...]liados al fondo operativo general de ASARCO y el desembolso posterior de ese dinero [...] "cesiones" de la propiedad de ASARCO (el deudor) conforme al Acto.

96. En el momento de la cesión de los beneficios de los seguros, ASARCO fue [...]lvente o se volvería insolvente como el resultado de la transferencia y/o plan integrado [...] liquidación.

97. Como el resultado de la cesión de los beneficios de los seguros y/o el plan [...]grado de liquidación, ASARCO faltaba capital suficiente continuar sus operaciones [...]erciales tradicionales.

**118**

La transferencia de los beneficios de los seguros ocurrió en un momento ASARCO, GRUPO MÉXICO y los afiliados de GRUPO MÉXICO supieron o que ASARCO contraería deudas que no podría pagar al vencerse.

99. La transferencia de los beneficios de los seguros se tomó con la intención de retrasar o defraudar a los acreedores de ASARCO.

100. Los demandantes tienen derecho a una sentencia a su favor contra GRUPO MÉXICO y sus afiliados declarando la cesión de los beneficios de los fraudulenta en cuanto a las Deudas debidas a los demandantes conforme a *N.Y. CRED. §§ 273, 274, 275 & 276.* Los demandantes tienen derecho a remedios legales en eso.

## SÉPTIMO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Cesión Fraudulenta: Transferencia a Entidades Claves con*
*Acceso a Información que no es de Conocimiento Público)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en párrafos 1-100 y para su Séptimo Derecho de Acción declaran como sigue:

101. GRUPO MÉXICO, AMC, GMM, Compañía México de Cobre y ASARCO compañías interrelacionadas, afiliadas y "entidades claves con acceso a información que no es de conocimiento público" controladas por o propiedad de GRUPO MÉXICO.

102. Como parte de la recompensa alegada por la transferencia del interés de ASARCO en SPCC a GRUPO MÉXICO y sus afiliados, ASARCO alegadamente recibió de deuda de una deuda antecedente entre compañías de Compañía México de Cobre, afiliado de GRUPO MÉXICO.

103. El perdón de la deuda entre compañías es una "cesión" dentro del significado del Acto. *N.Y. Debt. & Cred. § 270.*