out of the proceeds of the sale of ASARCO's speciality chemical division

150

and ASARCO's aggregates division (American Limestone) and the proceeds of the ASARCO's SPCC stock.

Defendant Chase knew it was providing the senior debt necessary to acquire and ASARCO's principal assets, and knew or should have known that ASARCO was insolvent because of environmental and asbestos liabilities and/or would be rendered or without sufficient capital to continue normal business operations as a result of these

Chase knew that ASARCO's outstanding unsecured environmental and personal creditors would not be satisfied under the planned liquidation.

The recitals within the loan agreement state that the principal purpose of the loan was to repurchase ASARCO's stock from its shareholders. Chase knew the of the loan would not accrue to the benefit of ASARCO or its creditors and thus unreasonably small return of capital for the encumbrance. Chase knew that the loan were to be used for the benefit of third parties, GRUPO MEXICO, AMC and the shareholders of ASARCO, who were "insiders" to the transaction.

**STEP 2: THE LIQUIDATION OF ASARCO'S PRINCIPAL ASSETS**

After the acquisition, GRUPO MEXICO moved ASARCO's corporate from New York to Phoenix, Arizona, where ASARCO shared office space with SPHC. GRUPO MEXICO replaced ASARCO's Officers and Directors with from its own Board. ASARCO became a wholly owed subsidiary of AMC. After ASARCO lost its separate identity and is totally controlled by GRUPO MEXICO affiliates.

11

**151**

GRUPO MEXICO forced ASARCO to sell its assets to pay GRUPO MEXICO'S costs. At GRUPO MEXICO's direction, approximately $17 million of ASARCO's equipment was sold at auction.

At GRUPO MEXICO's direction and as had been agreed by Chase, ASARCO profitable speciality chemical division (Enthone) for five hundred three million dollars (000,000). Enthone is now part of Cookson Electronics PWB Materials and Chemistry, a of Cookson Group plc, a British company.

At GRUPO MEXICO's direction and as had been agreed by Chase, ASARCO profitable aggregates division (American Limestone) to Rinker Materials Corporation America, Inc. for two hundred eleven million dollars ($211,000,000).

The proceeds of these sales did not accrue to the benefit of ASARCO or its since these monies were applied to acquisition debt and only benefitted Chase, GRUPO and ASARCO's former shareholders to the exclusion of existing and future mental and asbestos claimants. These conveyances for less than fair consideration, were without good faith, created or added to ASARCO's insolvency and insufficiency of capital in derogation of creditors' rights including the rights of the plaintiffs.

At GRUPO MEXICO's direction, assets of ASARCO were redirected to the of ASARCO's creditors. Settlement proceeds relating to litigation with ASARCO's liability insurers were not segregated and held to pay the known liability claims to which coverage related. As clear evidence of the integrated plan to liquidate ASARCO to ment of unsecured creditors, the future proceeds of the insurance settlement were sold at discount, and the cash was transferred to ASARCO's operating account and spent.

In 2003, at GRUPO MEXICO's direction as had been agreed by Chase,

12

152.

100% interest in SPCC was transferred to AMC, another wholly owned subsidiary of GRUPO MEXICO. In consideration for this conveyance, GRUPO MEXICO paid Chase and the syndicate of banks, on behalf of ASARCO, four hundred fifty million dollars ($450,000,000) in repayment of loans arising out of the acquisition, "forgave" some inter-company debt to AMC and its subsidiaries including Mexicana de Cobre, S.A. de C.V. and agreed to pay two hundred forty three million dollars ($243,000,000) at some future date. Part of this last payment would inure to the benefit ASARCO's unsecured creditors (principally as part of a settlement agreement with the United States on some environmental claims) but it represents an amount far below fair equivalent for the asset.

## ASARCO SUED FOR FRAUDULENT CONVEYANCE BY THE UNITED STATES GOVERNMENT

52. After the transfer of ASARCO's most valuable remaining asset (the SPCC stock to SPHC) was proposed, the United States (an unsecured creditor with environmental based claims) brought suit against ASARCO for fraudulent conveyance. (*United States of America v. ASARCO Inc. and Southern Peru Holdings Corporation, CO2-5401 FDB* (W. D.Wash.) (later transferred to the United States District Court for the District of Arizona and renumbered as No. CV 02-2079-PHX-RCB).

54. During the course of the Government litigation, ASARCO admitted it was no longer able to pay its debts as they matured.

55. The United States eventually settled its claims against ASARCO and SPHC for one hundred million dollars ($100,000,000), an amount far less than the liability owed on just the environmental claims, and withdrew its objection to the transfer. This settlement provided no benefits or protections whatsoever for ASARCO's other unsecured creditors

13

plaintiffs.

153

Upon information and belief, the United States settled its claim cheaply because

stock was already encumbered by the acquisition loan from defendant Chase,

assets had already been depleted by the sale of Enthone and American Limestone,

was too thinly capitalized to continue many of its business operations and because of

misrepresentations of ASARCO, GRUPO MEXICO and defendant Ernst & Young as to

of ASARCO's interest in SPCC.

The transfer of ASARCO's interest in SPCC was facilitated by defendant Ernst &

recklessly and knowingly provided an opinion undervaluing this asset. As a direct

the misrepresentations of Ernst & Young, plaintiffs' rights were undermined.

## ASARCO AFTER THE LBO AND RELATED ASSET SALES

After the conveyances described herein, ASARCO was left an insolvent shell.

salable value of ASARCO's assets is less than the amount required to pay the

probable liabilities, including the personal injury claims of plaintiffs. ASARCO

resources to timely pay its creditors, including plaintiffs. ASARCO is too thinly

to continue the business operations it maintained prior to the sale of SPCC. Stripped

valuable assets, ASARCO is on the verge of filing for Bankruptcy protection.

A just outcome for plaintiffs, whose claims against ASARCO remain unsatisfied,

the foregoing transactions be viewed as part of an integrated plan, executed in a

less than five years, resulting in conveyances which are fraudulent to plaintiffs.

### PLAINTIFFS' FIRST CLAIM FOR RELIEF
*(Constructive Fraud -Conveyance Resulting in Insolvency)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-59 and

14

154

Claim for Relief state as follows:

ASARCO owes a "debt" to plaintiffs as that term is defined under the New York Conveyance Act ("the Act"). N. Y. DEBT. & CRED. § 270.

The sale of ASARCO to GRUPO MEXICO in November 1999 by and through a layout is a "conveyance" as that term is defined under the Act. N. Y. DEBT. & CRED.

The encumbrance of ASARCO's interests in Enthone, American Limestone and furtherance of the GRUPO MEXICO LBO of ASARCO, is a "conveyance" of (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

The sale at auction certain of ASARCO's business equipment is a "conveyance" (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. §

The transfer of GRUPO MEXICO's ownership interest in ASARCO (as merged to AMC is a "conveyance" of ASARCO's (the debtor's) property within the of the Act. N. Y. DEBT. & CRED. § 270.

The sale of Enthone, American Limestone and ASARCO's ownership interest in ASARCO's principal assets") separately and in connection with an integrated plan of is/are "conveyance(s)" of ASARCO's (the debtor's) property within the meaning of N. Y. DEBT. & CRED. § 270.

The redemption/share repurchase of ASARCO's stock from ASARCO's Directors shareholders is a "conveyance" as that term is defined under the Act. N. Y. DEBT. & § 270.

Plaintiffs have claims against ASARCO for damages resulting from personal

15

...sioned by exposure to asbestos. Plaintiffs are "creditors" of ASARCO under the

...DEBT & CRED. § 270.

...ASARCO was purchased by GRUPO MEXICO, its stock was redeemed, certain

...equipment was liquidated at auction and its principal assets encumbered and sold

...ASARCO was either insolvent or would become insolvent as a result of the

...or its assets.

...ASARCO received less than fair consideration for the redemption/share

...of its stock and transfer of controlling interest in the company to GRUPO MEXICO

...since the proceeds of the conveyance accrued to the benefit of third parties (GRUPO

...AMC, the former shareholders of ASARCO and Chase) and not to the benefit of

...or its creditors.

...ASARCO received less than fair consideration for the encumbrance of its

...assets since the proceeds of the conveyances accrued to the benefit of third parties

...MEXICO, AMC, the former shareholders of ASARCO, Chase and CSFB and others)

...the benefit of ASARCO or its creditors.

...ASARCO received less than fair consideration for the sale of certain of its

...equipment at auction and the sale of its principal assets since the proceeds of these

...accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former

...ers of ASARCO, Chase and CSFB) and not to the benefit of ASARCO or its creditors.

...Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring

...yance of ASARCO to GRUPO MEXICO and AMC, the encumbrance and sale of

...CO's business equipment and principal assets and the redemption/share repurchase of its

...be individually and collectively fraudulent as to the debts owed plaintiffs pursuant to N.

16

& CRED. §273.  Plaintiffs are entitled to appropriate equitable and legal relief thereto.

156

### PLAINTIFFS' SECOND CLAIM FOR RELIEF
*(Constructive Fraud- Conveyance Resulting in Insufficiency of Capital)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-73 and for their

Claim for Relief state as follows:

74.    At the direction of GRUPO MEXICO and AMC, ASARCO redeemed its stock

conveyed away certain of its business equipment and its principal assets without fair

consideration when ASARCO was engaging or about to engage in a business or transaction for

which the property remaining in ASARCO's hands after the conveyance represented

unreasonably small capital.

75.    Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring

the encumbrance and conveyance of ASARCO's business equipment and principal assets and

ASARCO's share repurchase of ASARCO's stock individually and collectively, fraudulent as to

the aggrieved plaintiffs pursuant to N. Y. DEBT. & CRED. § 274.  Plaintiffs are entitled to

appropriate equitable and legal relief thereto.

### PLAINTIFFS' THIRD CLAIM FOR RELIEF
*(Actual Fraud: Conveyance in Anticipation of Debts)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-75 and for their

Claim for Relief state as follows:

76.    In a series of transactions undertaken at the direction of GRUPO MEXICO and

AMC, ASARCO was sold to GRUPO MEXICO and transferred to AMC, ASARCO's stock was

redeemed and ASARCO's business equipment and principal assets were encumbered and/or sold

for less than fair consideration, with the intent or belief that ASARCO would incur debts beyond

its ability to pay as they mature.

GRUPO MEXICO and AMC were aware of plaintiffs' (and other, environmental) [claims against] ASARCO prior to the conveyances referenced herein, and these defendants knew [would] remain unsatisfied under the integrated plan of liquidation.

.157

Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring [the transfer] of ASARCO to GRUPO MEXICO, the transfer of ASARCO to AMC, the [redemption/share] repurchase of ASARCO's stock and the encumbrance and conveyance of [ASARCO's] business equipment and/or principal assets to be fraudulent to the debts owed to [plaintiffs pursuant to N.Y. DEBT. & CRED. § 275. Plaintiffs are entitled to appropriate equitable [relief] thereto.

<u>PLAINTIFFS' FOURTH CLAIM FOR RELIEF</u>
*(Actual Fraud: Conveyance with Intent to Frustrate Creditor Claims/Conspiracy)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-78 and for their [Fourth] Claim for Relief state as follows:

79.   The redemption/share repurchase of ASARCO's stock and the sale and liquidation [of ASARCO] through the LBO were undertaken through an integrated plan and design [controlled] by defendant GRUPO MEXICO and executed with the complicity of others, [including] AMC, Chase and CSFB.

80.   The redemption/share repurchase of ASARCO' stock and liquidation of [ASARCO's] assets occurred when:

a.   ASARCO was insolvent and/or with the knowledge that the transfers, (individually and/or collectively) would result in ASARCO's insolvency;

b.   GRUPO MEXICO, AMC and Chase were aware of pending litigation against ASARCO for environmental claims and personal injury claims related to asbestos exposure which had rendered or would render the company insolvent;

c.   ASARCO lacked adequate financial means to meet its debts as they matured;

18

158

The assets transferred were the principal assets of the corporation and made up the majority of the company's assets in value;

The transfers were made for less than fair consideration;

The transfer(s) benefitted insiders including ASARCO's Directors and other former shareholders, GRUPO MEXICO and AMC at the expense of unsecured creditors including plaintiffs.

The redemption/share repurchase of stock and liquidation of ASARCO's assets [designed] to strip the company of assets before unsecured creditor claims matured; the [redemption]/share repurchase of ASARCO' stock and the sale and liquidation of ASARCO's [business] equipment and principal assets was undertaken with the intent to hinder, delay or [defraud] creditors.

[82.] Plaintiffs are entitled to judgment against GRUPO MEXICO, AMC, Chase and [CSFB declaring] the sale of ASARCO to GRUPO MEXICO and AMC, the redemption/share [repurchase] of ASARCO's stock and the encumbrance and conveyance of ASARCO's business [equipment] and principal assets to be fraudulent pursuant to N.Y. DEBT. & CRED. § 276. [Plaintiffs are] entitled to appropriate equitable and legal relief thereto.

[83.] Because these transfers were fraudulent conveyances, committed with the actual [intent to defraud] creditors, punitive damages should be recovered from the defendants, jointly [and severally,] in an amount not less than three-times actual damages.

**PLAINTIFFS' FIFTH CLAIM FOR RELIEF**
*(Fraudulent Conveyance: Liability of Transferee Chase & CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-83 and for their Fifth [Claim for Relief] state as follows:

[84.] Defendant Chase is the transferee who provided the senior layer of debt necessary [to carry out the] LBO.

Defendant CSFB provided financial advice to ASARCO's Board of Directors at the merger and participated with other banks in financing the LBO.

Chase and CSFB knew the LBO was to be a "bust up" acquisition with the assets of ASARCO to be conveyed away from ASARCO for less than fair consideration since the benefit of these transfers would not benefit ASARCO or its creditors but would instead accrue to parties, ASARCO's former shareholders, GRUPO MEXICO and AMC.

Chase and CSFB knew ASARCO was insolvent just prior to the LBO or would be insolvent as a result of the conveyances attendant to the LBO and/or the debt service of the acquisition and operating loans to ASARCO.

Chase and CSFB knew ASARCO was to be liquidated and would be left with only small capital resources to continue its traditional business operations.

Chase and CSFB knew ASARCO was to be liquidated at a time when ASARCO, GRUPO MEXICO and AMC believed ASARCO would incur debts beyond its ability to pay as incurred.

Chase and CSFB knew the plan of liquidation was undertaken with the intent to delay and/or defraud creditors.

The encumbrance of ASARCO's principal assets in favor of Chase is a conveyance of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. § 270.

Loan payments relating to the LBO received by Chase, CSFB and other lending banks under priority liens, including but not limited to proceeds from the sale of ASARCO's principal assets and other loan payments made by ASARCO or by GRUPO MEXICO (or its affiliates) on behalf of ASARCO (collectively "loan payments")  are

20

...of ASARCO's (the debtor's) property within the meaning of the Act. N. Y.

...CRED. § 270.                                                        160

...The loan payments received by Chase and CSFB are not protected from recapture

N.Y. DEBT & CRED. 272(b)  because Chase and CSFB did not act in good faith herein

...property received by ASARCO from Chase and CSFB was disproportionately small as

...with the value of the obligation to Chase and CSFB.

...In derogation of creditor's rights, including plaintiffs, Chase and CSFB failed to

...adequate financial investigation of ASARCO's solvency before loaning and/or

...more than one billion (1,000,000,000) dollars to ASARCO and accepting mortgages

...ASARCO's principal assets and/or ignored ASARCO's insolvency.

...Chase and CSFB knew or should have known that as a result of the planned

...of ASARCO's principal assets:

     a.    The fair salable value of ASARCO's remaining assets would be less than
          ASARCO's liabilities;

     b.    These transfers would leave ASARCO with an unreasonably small amount
          of capital for the business in which it was engaged or proposed to engage
          in the future;

     c.    ASARCO could not reasonably be expected to meet its obligations as the
          matured.

96.  Chase and CSFB knew or should have known that the debtor was insolvent or

...be rendered insolvent by the transfers or would be rendered insolvent as a result of the

...plan of liquidation, that the debt service imposed by Chase and CSFB would further

...ASARCO's ability to pay creditors and ASARCO has no reasonable prospects for

...

97.  Chase and CSFB transferred funds to ASARCO in exchange for a lien against

161

ASARCO's principal assets and accepted loan payments for less than fair consideration with actual or constructive knowledge that the transaction would increase or lead to ASARCO's insolvency and fraud on ASARCO's creditors including plaintiffs.

98.    Plaintiffs are entitled to judgment against defendant Chase and CSFB for the value of the property conveyed and/or judgment declaring the loan payments attendant to the sale made by or on behalf of ASARCO to Chase and CSFB to be fraudulent as to the Debts of plaintiffs pursuant to DEBT. & CRED. §§ 273, 274, 275 & 276.  Plaintiffs are entitled to such equitable and legal relief thereto.

### PLAINTIFFS' SIXTH CLAIM FOR RELIEF
#### (*Fraudulent Conveyance: Insurance Proceeds*)

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-98 and for their Sixth Claim for Relief state as follows:

99.    Plaintiffs all have "claims" against ASARCO and are therefore "creditors" of ASARCO under the Act.  N. Y. DEBT. & CRED. § 270 ASARCO is liable to plaintiffs and ASARCO is a "debtor" pursuant to the Act. N. Y. DEBT. & CRED. § 270.

100.    The heavy discounting of future insurance proceeds and the transfer of said insurance proceeds at the direction of GRUPO MEXICO or its affiliates to ASARCO's general operating fund and the subsequent disbursement of those monies are  "conveyances" of ASARCO's (the debtor's) property pursuant to the Act.

101.    At the time the insurance proceeds were conveyed, ASARCO was insolvent or was rendered insolvent as a result of the transfer and/or the integrated plan of liquidation.

102.    As a result of the conveyance of the insurance proceeds and/or the integrated plan of liquidation, ASARCO lacked sufficient capital to continue its traditional business operations.

22

162

The transfer of the insurance proceeds occurred at a time when ASARCO, MEXICO and GRUPO MEXICO's affiliates knew or believed ASARCO would incur it would be unable to pay as they matured.

The transfer of the insurance proceeds was undertaken with the intent to hinder, ASARCO's creditors.

Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and its declaring the conveyance of the insurance proceeds to be fraudulent as to the Debts pursuant to N. Y. DEBT. & CRED. §§ 273, 274, 275 & 276. Plaintiffs are entitled and legal relief thereto.

### PLAINTIFFS' SEVENTH CLAIM FOR RELIEF
*(Fraudulent Conveyance: Transfer to Insiders)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-105 and for their Claim for Relief state as follows:

106. GRUPO MEXICO, AMC, GMMI, Mexicana de Cobre, S.A. de C.V., Minera Mexico, S.A. de C.V. and ASARCO are all interrelated companies, and "insiders" owned or controlled by GRUPO MEXICO.

107. As part of the alleged consideration for the transfer of ASARCO's interest in GRUPO MEXICO and its affiliates, ASARCO allegedly received debt forgiveness of inter-company debt from affiliates of GRUPO MEXICO including AMC and/or de Cobre S.A. de C.V.

108. The forgiveness of inter-company debt is a "conveyance" within the meaning of N. Y. Debt. & Cred. §270.

109. At the time of the debt forgiveness, ASARCO was either insolvent or rendered

23

as a result of redemption/share repurchase of its stock and the conveyance of its assets and/or the execution of the integrated plan of liquidation.

163

110.   The conveyance by an insolvent to an affiliate or insider in satisfaction of an asset debt lacks good faith and is constructively fraudulent.

111.   Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and 000 de COBRE S.A. C.V. declaring the conveyance of the SPCC stock in exchange for forgiveness to be fraudulent as to debts owed plaintiffs pursuant to N. Y. DEBT & CRED. § Plaintiffs are entitled to legal and equitable relief thereto.

PLAINTIFFS' EIGHTH CLAIM FOR RELIEF
(*Professional Negligence and Misrepresentation: As to Defendant Ernst & Young*)

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-111 and for their Eighth Claim Relief state as follows:

112.   Defendants ERNST & YOUNG LLP and ERNST & YOUNG CORPORATE FINANCE LLC (collectively "Ernst & Young") were engaged to provide an opinion as to the value of 43,348,949 shares of Class A Common Stock of Southern Peru Copper Company representing 54.18% of the voting shares of that publically traded corporation which were held by SPHC a wholly owned subsidiary of ASARCO. ("stock interest").

113.   Ernst & Young expressed a professional valuation with full knowledge that its opinion would be relied upon by a limited class of third parties to which Ernst & Young owed a duty of care, including the United States Justice Department, The Federal Courts of the United States and plaintiffs.

114.   The valuation opinion of Ernst & Young provided the principal basis for the United States District Court for the District of Arizona to approve the sale of the stock interest **to**

24

and/or its wholly owned subsidiary AMC to the detriment of plaintiffs.

115. Ernst & Young recklessly and knowingly and without the professional care required of a Certified Public Accounting firm sold an opinion letter, which falsely stated that the fair value of ASARCO's controlling interest in SPCC was worth less than book value of ASARCO's share of the underlying assets of the company.

116. Ernst & Young had a duty to plaintiffs to issue an opinion based on impartial and current knowledge of the copper industry. Despite knowing that the purchaser of the stock was an insider with full information regarding the company, the company's prospects and the market, Ernst & Young breached its duty to plaintiffs by undervaluing the stock based on information provided by the purchaser, Grupo and/or entities controlled by Grupo.

117. Ernst & Young had a duty to plaintiffs to be competent to issue an opinion as to value of SPCC as a going concern. Without taking into consideration SPCC's on-going expansion of its mining operations and the increasing value of its copper reserves in a rising copper market, Ernst & Young's valuation negligently only reflects historic and public financial information.

118. Ernst and Young breached its duty to plaintiffs by failing to exercise due care and professional competence required of a Certified Public Accounting firm and by issuing an opinion which it knew or should have known grossly understated the value of the stock interest, thereby allowing the stock interest to be sold to Grupo for less than fair and adequate consideration, placing ASARCO's most valuable asset outside the direct reach of creditors.

119. Plaintiffs are entitled to judgment against Ernst & Young for damages resulting from its professional negligence and misrepresentation as to the value of the stock interest.

25

165

### PLAINTIFFS' NINTH CLAIM FOR RELIEF
*(Breach of Fiduciary Duty: ASARCO's Officer's & Directors)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -119 and for their Claim for Relief state as follows:

120. Defendants GERMAN LARREA MOTA-VELASCO and OSCAR GONZALES were Officers and Directors of ASARCO (collectively "Director Defendants") when the assets of ASARCO were being liquidated.

121. The sale of ASARCO's principal assets for less than fair and adequate value and the misappropriation of the proceeds of the sale for the benefit of Defendants to the detriment of ASARCO's unsecured creditors was undertaken at a time when ASARCO was unable to pay its debts as they became due, its liabilities exceeded its assets and/or ASARCO was insolvent.

122. The sale of ASARCO's principal assets for less than adequate consideration, left ASARCO with unreasonably small capital to continue historic business operations and resulted in either the likelihood of insolvency and/or the unreasonable risk of insolvency.

123. The officers and directors of a corporation which is insolvent, or on the brink of insolvency, owe a fiduciary duty to the corporation, to the employees of the corporation and the corporation's unsecured creditors. By selling the principal assets of ASARCO for less than adequate consideration, these Director Defendants breached their fiduciary duties of care and of loyalty to the ASARCO, ASARCO'S employees and ASARCO's unsecured creditors including Plaintiffs.

124. The liquidation of ASARCO's principal assets was not undertaken in good faith,

26

...taken without full compliance with statutory procedures designed to protect the rights

...involved intentional misconduct and/or resulted in improper personal benefit.

...The actions of these Defendant Directors were grossly negligent and/or

...with reckless disregard for the rights of plaintiffs.

...Pursuant to N. Y. Bus. Corp. Law § 720 (McKinney 2004), Defendant Directors

...and respond in damages for the amount by which less than full value was realized

...RCO upon the liquidation of its principal assets.

...Plaintiffs are entitled to judgment against Defendant Directors for the losses

...by creditors through the depletion of ASARCO's principal assets.

### PLAINTIFFS' TENTH CLAIM FOR RELIEF
*(Aiding and Abetting Breach of Fiduciary Duty: Ernst & Young and CSFB)*

...re-adopt and re-allege the allegations contained in paragraphs 1 -127 and for

...Claim for Relief state as follows:

...Defendant CSFB served as financial advisor to ASARCO's Board of Directors at

...the LBO was endorsed by the Board. CSFB evaluated and advised ASARCO's Board of

...regarding the sale of the company, recommending the LBO proposed by GRUPO

...and rejecting the merger of equals proposed by Phelps Dodge Corporation. CSFB then

...benefitted from the transaction by becoming a secured creditor of ASARCO. The

...caused ASARCO's insolvency.

...Defendant Ernst & Young served as ASARCO's financial advisor from August

...until March 27, 2003. As financial advisor, Ernst & Young recommended the

...of ASARCO's general liability insurance policies and the use of these insurance

...for regular business expenses, to the detriment of parties this insurance was intended to

27

Defendant Ernst & Young undervalued ASARCO's interest in SPCC and then supported and championed the sale of ASARCO's interest in SPCC for less than consideration

ASARCO'S Board of Directors owed a fiduciary duty to the corporation, the employees and ASARCO's unsecured creditors including Plaintiffs.

By and through the LBO, the leveraging of ASARCO's principal assets and the ASARCO's principal assets for less than adequate consideration, ASARCO's Board of breached its fiduciary duty to these parties, including Plaintiffs.

Defendants Ernst & Young and CSFB knowingly participated, orchestrated and the breach of fiduciary duty by ASARCO's Directors.

Plaintiffs are entitled to judgment against Defendants Ernst & Young and CSFB aiding abetting breach of fiduciary duty.

## PLAINTIFF CLASS ACTIONS PREREQUISITES

Plaintiffs repeat and reallege the allegations contained in paragraphs 1-133 above.

Plaintiffs bring this suit on behalf of themselves and as representative of a class New York Law. Specifically, the Court should enter an order certifying the Plaintiff Class:

The Plaintiff Class is defined as: All persons who were exposed to, inhaled, ingested or absorbed asbestos or asbestos containing products in the course of their employment, occupational work projects (including but not limited to, home and automotive maintenance and remodeling) and/or in other ways, which were manufactured, sold, installed directly or indirectly by ASARCO, Inc. and have or will contract asbestos diseases. All members of the Plaintiff Class are unsecured creditors of ASARCO,

28

167

and judgment against the Defendants and Defendant Class who through negligent and fraudulent acts, fraudulently conveyed and/or facilitated the conveyance of ASARCO's final assets which should rightfully be available to compensate the Plaintiff Class for injuries arising from ASARCO's tortious conduct.

136.    The Plaintiff Class meets the following prerequisites for maintenance of a class

(a)    **Numerosity.**

The members of the Plaintiff Class are so numerous that joinder of all members is impractical.  While Plaintiffs are unable to state the exact number of members of the Plaintiff Class without discovery, Plaintiffs estimate the number of members in the Plaintiff Class to be in the tens of thousands.

(b)    **Commonality**

There are questions of law and/or fact common to the Plaintiff Class:

(1)    Whether ASARCO was insolvent or rendered insolvent as a result of the leveraged buyout of ASARCO by GRUPO MEXICO

(2)    Whether ASARCO received less than fair and adequate consideration for the sale of its principal assets.

(3)    Whether the transfer of ASARCO's assets at a time when ASARCO was insolvent constitutes intentional and/or constructive fraud

(c)    **Typicality**

The claims of Plaintiffs are typical of claims Plaintiffs represent.  Plaintiffs

29

all have claims have all been injured as a direct result of the intentional
and negligent actions of ASARCO. As unsecured creditors of ASARCO,
Plaintiffs all have claims against the Defendant and members of the
Defendant Class for fraudulent conveyance and/or negligence. Plaintiffs'
claims have the same essential characteristics as the claims of the Plaintiff
Class as a whole, arise out of the same practices of Defendant and the
Defendant Class, and are based upon identical legal theories. All members
of the Plaintiff Class have suffered the same injury and possess the same
interests as their Plaintiff Class Representatives.

**Adequacy**

Plaintiffs, as representative parties, are capable of and will fairly and
adequately protect the interests of the Plaintiff Class, and they have no
conflicts of interests with the members of the Plaintiff Class. The
attorneys representing the Plaintiff Class Representatives are qualified,
experienced and able class counsel.

The proposed Plaintiff Class is maintainable for the following reasons:

(a)    **Predominance and Superiority.**

The Plaintiff Class is maintainable because common questions of law
and/or fact predominate over any questions affecting only individual
members, making a class superior to all other methods available for the
fair and efficient adjudication of this controversy.

(b)    **Inconsistent and Varying Adjudications**

30

The Plaintiff Class is maintainable because prosecution of separate actions by Plaintiff Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Plaintiff Class, and this would establish incompatible standards of conduct for the parties opposing the Plaintiff Class.

170

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request this Court:

(1)   Award actual monetary damages, attorney's fees and costs against defendants.

(2)   Award punitive damages against these defendants who have engaged in actual fraud as to the Debts owed plaintiffs in an amount not less than three times actual damages.

(3)   Set aside or annul the conveyances described herein as fraudulent to the extent necessary to satisfy plaintiffs' claims, authorize attachment or levy of execution upon the property wrongfully conveyed, place ASARCO's wrongly conveyed assets in trust and/or appoint a receiver to hold and manage those assets of ASARCO for payment of creditor claims.

(4)   And/or make any order which the circumstances of the case may require.

31

Respectfully submitted,

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
120 Wall Street-15th Floor
New York, NY 10038
(212) 558-5900
FAX (212) 363-6848

171

By: _____
        Gary Klein

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

Nº 193105

STATE OF NEW YORK,
COUNTY OF NEW YORK, SS:
I, NORMAN GOODMAN,
COUNTY CLERK AND CLERK
OF THE SUPREME COURT,
NEW YORK COUNTY,
DO HEREBY CERTIFY

MAR 29 2005

THAT I HAVE COMPARED THIS
COPY WITH THE ORIGINAL
FILED IN MY OFFICE ON

2/17/05

AND THAT THE SAME IS A
CORRECT TRANSCRIPT
THEREFROM AND OF THE
WHOLE OF SUCH ORIGINAL.
IN WITNESS WHEREOF,
I HAVE HEREUNTO SET MY
HAND AND AFFIXED MY
OFFICIAL SEAL.

COUNTY CLERK AND CLERK OF THE
SUPREME COURT, NEW YORK COUNTY
FACSIMILE SIGNATURE USED
PURSUANT TO SEC. 903,
COUNTY LAW.

FEE PAID

FILED
2/17/05
COUNTY CLERK
NEW YORK COUNTY

32

## ATTORNEY VERIFICATION

172

GARY KLEIN, hereby affirms that the following is true, under penalties of perjury:

I am an associate of the firm of WEITZ & LUXENBERG, P.C., attorneys for the plaintiff(s) in the within action; I have read the foregoing Summons and Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.  The reason this verification is made by your affiant and not by the plaintiff is that the plaintiff herein resides in a County other than the one in which WEITZ & LUXENBERG, P.C. maintains its offices.

The grounds of my belief as to all matters not stated upon my own knowledge are the contents of our office file.

Dated:  New York, New York
        February 17, 2005

                                    Gary Klein, ESQ.

FILED
COUNTY CLEK
YORK COU

Year 20

17

...COURT OF THE STATE OF NEW YORK
...OF NEW YORK

...NELSON BURNS, MIRJANA PAVKOVICH,
...trator of the Estate of Rade
...ich, Deceased, and WARREN
...ALYPAP,

       Plaintiffs,

...inst

...MEXICO S. A. de C.V., a Mexican
...ation, et al.

SUPPLEMENTAL SUMMONS and SECOND AMENDED VERIFIED COMPLAINT

WEITZ & LUXENBERG, P.C.

...Attorneys for Plaintiffs

180 Maiden Lane
New York, NY 10038
(212) 558-5500

...t 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York
...ifies that, upon information and belief and reasonable inquiry, the contentions contained in the
...document are not frivolous.

       Signature _____

       Print Signer's Name _____

...y copy of the within _____ is hereby admitted.

_____
       Attorney(s) for

...E TAKE NOTICE

...that the within is a (certified) true copy of a
...entered in the office of the clerk of the within named Court on        20

...that an Order of which the within is a true copy will be presented for settlement to the
       one of the judges of the within named Court,
...on

       20    , at        M.

WEITZ & LUXENBERG, P.C.

       Attorneys for

180 Maiden Lane
New York, NY 10038

174

...COURT OF THE STATE OF NEW **YORK**
...OF NEW YORK

...NELSON BURNS, MIRJANA
...OVICH, Administrator of the Estate of
...ntovich, Deceased, and WARREN
...HALFPAP,

         Plaintiff(s),

-against-

...O MEXICO S. A. de C.V., a Mexican
...tion, SOUTHERN PERU HOLDING
...RATION, a Delaware Corporation,
...N PERU HOLDING CORPORATION
...ware Corporation, GRUPO MINERO
...O INTERNACIONAL, S. A. DE C.V., a
...Corporation, COMPANIA MEXICANA
...BRE, a Mexican Corporation, JP
...N CHASE & COMPANY f/k/a CHASE
...TTAN BANK & TRUST COMPANY,
...re Corporation AMERICAS MINING
...RATION, a Delaware Corporation,
...T & YOUNG LLP, ERNST & YOUNG
...ORATE FINANCE, LLC, GERMAN
...EA MOTA-VAELASCO, Officer and
...or of ASARCO, Inc., OSCAR GONZALES
...A Officer and Director of ASARCO, Inc.,
...L TELLECHEA SALIDO Officer and
...or of ASARCO, Inc., CREDIT SUISSE
...T BOSTON, INC., CREDIT SUISSE FIRST
...TON LLC and CREDIT SUISSE FIRST
...TON (USA), INC.

         Defendant(s)

**Index No.: 04/114728**

**SUPPLEMENTAL SUMMONS**

FILED
FEB - 7 2005
NEW YORK
COUNTY CLERK'S OFFICE

...above named Defendants

...You are hereby summoned to answer the **Complaint in** this action and to serve a copy of

...Answer, or, if the Complaint is not served with **this Summons, to serve a** Notice of Appearance,