"tools to help." No additional information was provided to Mr. Patton or Mr. Frei.

60.    Meanwhile, Grupo Mexico and AMC continued to be fixated on the statute of limitations for challenging a fraudulent transfer. They knew that they needed to keep ASARCO alive for a period of time to avoid an "unwinding" of the SPCC sale. In early March 2003, Armando Ortega, Grupo Mexico's General Counsel, advised German Larrea that Grupo Mexico and AMC needed to keep ASARCO alive for six months to avoid an attack on the SPCC sale as one designed solely to take from ASARCO its most valuable asset with the intent to defraud ASARCO's creditors. He warned that if ASARCO was forced into chapter 11 bankruptcy, creditors could pursue recourse against Grupo Mexico.

61.    On March 25, 2003, Douglas McAllister and Brian Boylan, two members of ASARCO's senior management, met with Genaro Larrea to voice their objection to payment of the Yankee Bonds. Despite his numerous votes at the restructuring committee meetings to the contrary, Genaro Larrea had announced at that week's management committee meeting that the Yankee Bonds would be paid. (The restructuring committee had not approved such a payment.) Mr. McAllister, ASARCO's General Counsel, noted that Genaro Larrea had previously acknowledged that there may be a conflict between AMC and ASARCO relating to the bond payment. Genaro Larrea recognized the concern and said that he would likely ask the independent directors to resign given their opposition to the bond payment. When Mr. McAllister raised concerns about ASARCO's future, Genaro Larrea articulated no long-term plan for the company to sustain itself. Genaro Larrea indicated that he understood that ASARCO management did not think the bond payment was in ASARCO's best interest, but may be in Grupo Mexico's best interest.

62.    Before Genaro Larrea could ask for the independent directors' resignation,

Mr. Patton and Mr. Frei resigned. Their March 26, 2003 resignation letter stated their opposition to payment of the Yankee Bonds and withdrew their approval of the SPCC sale.

63.     EYCF resigned the next day, citing concerns over payment of the Yankee Bonds and the impact on ASARCO's ability to operate its business.

64.     Undeterred, on or about March 31, 2003, ASARCO, at the instruction of Grupo Mexico and AMC, and by and through the remaining ASARCO directors, all of whom were affiliated with Grupo Mexico and AMC, closed the related-party transaction by transferring the SPCC shares that ASARCO owned to AMC. AMC transferred the SPCC shares to a newly-formed subsidiary, SPHC II, which has since merged into AMC. AMC currently owns the SPCC shares.

65.     After the sale of ASARCO's 54.2% ownership interest in SPCC to AMC, Grupo Mexico and AMC's focus on the statute of limitations applicable to fraudulent transfer claims turned to concern. ASARCO, acting for the benefit of its owners, Grupo Mexico and AMC, tried to outrun the statute of limitations. Grupo Mexico and AMC's goal was to put as much time as possible between the SPCC transfer and an inevitable fraudulent transfer challenge. When ASARCO personnel reported that the company was in financial trouble, Grupo Mexico, AMC, and ASARCO responded that ASARCO had to survive for a period before filing for bankruptcy protection because SPCC had been taken from ASARCO only recently. ASARCO, at Grupo Mexico and AMC's insistence, cannibalized itself—selling its assets, monetizing insurance, abusing its mines—with the intent of preventing its creditors from unwinding the SPCC transaction.

66.     SPCC has paid dividends on ASARCO's former interest since the transfer. Without this revenue, and with Grupo Mexico and AMC intent on outrunning the statute of

22

limitations, ASARCO's precious little cash was not devoted to preserving ASARCO's assets. For example:

- a. ASARCO continued to high-grade its mines for short-term production;

- b. ASARCO did not meet its capital calls from Montana Resources, Inc. By failing to meet $4.9 million of capital calls, ASARCO's 49% interest was diluted to nothing. On information and belief, ASARCO's 49% interest would have generated hundreds of millions of dollars of revenue for ASARCO in 2006 alone;

- c. ASARCO sold valuable development properties with confirmed ore bodies for raw land prices. Rosemont is one example. That property was sold for approximately $4 million. The buyer sold it back to a mining company for $20 million;

- d. ASARCO continued to monetize insurance policies covering environmental and toxic tort liability into the future. It settled its remaining asbestos policies with Prudential, AIG, and Lexington in 2003;

- e. ASARCO enforced a salary freeze and gave no raises to salaried personnel at the instance of Grupo Mexico. As a result, ASARCO's compensation was not competitive and ASARCO lost key personnel whose experience was necessary to preserve the value of the company's assets;

- f. At a time when it was desperate for operating funds, ASARCO paid asbestos plaintiffs' firm Baron & Budd $6.5 million in December 2003 to resolve its clients' claims against the company. Baron & Budd had unsuccessfully attempted to intervene in the DOJ lawsuit to block the SPCC sale. Baron & Budd was appealing the denial of its attempted intervention and had challenged the SPCC transfer when ASARCO settled and funded the settlement of all of Baron & Budd's clients' claims. With the settlement of its clients' claims, Baron & Budd gave up the fraudulent transfer challenge; and

- g. ASARCO continued to sell mining equipment that would be difficult if not impossible to replace at the time. Rather than purchase spare parts and perform maintenance, ASARCO cannibalized its fleet of trucks, and eventually sold many of the trucks, a loader, and a large shovel. ASARCO also sold a valuable mill shortly before filing for bankruptcy.

67. After ASARCO's SPCC stock had been transferred to AMC, German Larrea resigned from ASARCO's board of directors, as did every ASARCO director who approved the SPCC transfer. Daniel Tellechea, Grupo Mexico's and AMC's CFO and Director, resigned

from ASARCO's board of directors, only to rejoin it later in 2003 when he became ASARCO's CEO and President.

68.     At the direction of its owners, Grupo Mexico and AMC, ASARCO transferred the SPCC shares with the actual intent to hinder, delay, and/or defraud its creditors. ASARCO did not receive fair consideration or reasonably equivalent value for the SPCC shares. ASARCO's interest in SPCC was worth significantly more than what AMC paid. In addition to receiving less than fair consideration or reasonably equivalent value for the SPCC shares, the transfer also deprived ASARCO of assets that have appreciated in value since the date of the transfer as a result of the increase in the price of copper. If the sale to AMC is set aside, ASARCO may then use its interest in SPCC to successfully plan and complete its reorganization.

69.     ASARCO was hopelessly insolvent at the time of the sale of the SPCC shares to AMC. ASARCO was in default on many of its debt obligations. Moreover, at the time of the transfer, ASARCO's financial condition was such that ASARCO was engaged or was about to engage in business and transactions for which the property and assets remaining with ASARCO after the SPCC transfer represented an unreasonably small capital and were unreasonably small in relation to that business and those transactions. Finally, through the SPCC transfer, ASARCO intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they matured and became due.

70.     Grupo Mexico and AMC are liable for the damages ASARCO and its creditors suffered as a result of the transfer of ASARCO's 54.2% ownership interest in SPCC to AMC. Although Grupo Mexico is not currently a defendant in this lawsuit, ASARCO is taking steps to bring Grupo Mexico before this Court. As described in further detail below, ASARCO is seeking to transfer to this Court a related lawsuit against Grupo Mexico that is currently pending

in the United States District Court for the Southern District of New York (the "Southern District of New York"). Grupo Mexico has already been served with process in that lawsuit.

71.    On or about October 15, 2004, certain creditors of ASARCO (the "Creditors") filed an action in the Supreme Court of the State of New York, County of New York, against various defendants, including Grupo Mexico. The Creditors asserted myriad claims against the defendants, alleging that they had systematically liquidated ASARCO to the detriment of ASARCO's creditors. The action was captioned *Phillip Nelson Burns,* et al. *vs. Grupo Mexico S.A. de C.V.* et al., Index No. 0114728/2004, and was assigned to the Honorable Bernard J. Fried (the "State Court Action").

72.    On or about February 7, 2005, the Creditors filed their First Amended Verified Complaint in the State Court Action (the "State Court Amended Complaint"). Count VII of the State Court Amended Complaint alleges that the transfer of ASARCO's interest in SPCC to AMC in 2003 was fraudulent under the New York Debtor and Creditor Law, and that the Creditors are entitled to judgment against Grupo Mexico.

73.    Upon ASARCO's bankruptcy filing, the claims asserted in the State Court Action, including the claim asserted against Grupo Mexico in Count VII of the State Court Amended Complaint, became property of the ASARCO bankruptcy estate pursuant to section 541 of the Bankruptcy Code, and the State Court Action's continued prosecution was automatically stayed pursuant to section 362(a) of the Bankruptcy Code.

74.    ASARCO has filed a Notice of Removal in the Southern District of New York removing the claim asserted against Grupo Mexico in Count VII of the State Court Amended Complaint from the Supreme Court of the State of New York, County of New York, to the Southern District of New York (the "Notice of Removal"). ASARCO has filed a copy of the

Notice of Removal with the Supreme Court of the State of New York, County of New York, and served the Creditors and Grupo Mexico with notice of the removal. As a result of its removal, the claim asserted against Grupo Mexico in Count VII of the State Court Amended Complaint is now pending in the Southern District of New York as a separate proceeding (the "Removed Proceeding"). All other claims in the State Court Action remain before the Supreme Court of the State of New York, County of New York, and continue to be subject to the automatic stay.

75.    ASARCO will file promptly a Motion to Substitute Plaintiffs and a Motion to Transfer Venue in the Southern District of New York requesting that the Southern District of New York substitute ASARCO for the Creditors in the Removed Proceeding and transfer the Removed Proceeding to this Court. If the Southern District of New York grants ASARCO's Motion to Substitute Plaintiffs and Motion to Transfer Venue, ASARCO will ask this Court to consolidate the Removed Proceeding with this action and for leave to file an amended complaint against Grupo Mexico.

76.    If this Court consolidates the Removed Proceeding with this action and grants ASARCO leave to file an amended complaint, ASARCO will allege, at a minimum, the following causes of action against Grupo Mexico:

a.    Actual and Constructive Fraud—Grupo Mexico is liable for the SPCC transfer under 11 U.S.C. §§ 544 and 550 because it is an entity for whose benefit the transfer was made.

b.    Aiding and Abetting Fraudulent Transfer—Grupo Mexico aided and abetted AMC and/or one or more of ASARCO's directors, including without limitation German Larrea, Genaro Larrea, Xavier Garcia, Oscar Gonzalez, and Alfredo Casar, in affecting the SPCC transfer.

c.    Fraudulent Use of Corporate Form—The corporate form between AMC and Grupo Mexico should be disregarded because the form was used as a sham to perpetrate a fraud; AMC was organized and operated as a mere instrumentality, agent, and alter ego of Grupo Mexico; AMC and Grupo Mexico were operated as a single-business enterprise; Grupo Mexico caused AMC to be used for the purpose of perpetrating an actual fraud;

26

and Grupo Mexico perpetrated an actual fraud on ASARCO's creditors primarily for Grupo Mexico's direct benefit.

d.  Civil Conspiracy—Grupo Mexico conspired with AMC and/or one or more of ASARCO's directors, including without limitation German Larrea, Genaro Larrea, Xavier Garcia, Oscar Gonzalez, and Alfredo Casar, to perpetrate, facilitate, and aid and abet the SPCC transfer, the breaches of fiduciary duties, and the other wrongs alleged herein.

e.  Breach of Fiduciary Duty—At the time of the SPCC transfer, Grupo Mexico owed fiduciary duties to both ASARCO and ASARCO's creditors, including the duty of good faith, the duty of loyalty to always act in ASARCO's and ASARCO's creditors' best interest, and the duty to avoid self-dealing and self-enrichment at ASARCO's and ASARCO's creditors' expense. Grupo Mexico breached those fiduciary duties when it orchestrated, authorized, and/or carried out the SPCC transfer.

f.  Aiding and Abetting Breach of Fiduciary Duty—At the time of the SPCC transfer, AMC and/or one or more of ASARCO's directors, including without limitation German Larrea, Genaro Larrea, Xavier Garcia, Oscar Gonzalez, and Alfredo Casar, owed fiduciary duties to both ASARCO and ASARCO's creditors. Grupo Mexico and/or one or more of ASARCO's directors breached their fiduciary duties to ASARCO and ASARCO's creditors by, among other things, orchestrating, authorizing, and/or carrying out the SPCC transfer. Grupo Mexico knowingly and intentionally provided substantial assistance to Grupo Mexico's and/or one or more of ASARCO's directors' breaches of fiduciary duties by, among other things, orchestrating, authorizing, and/or carrying out the SPCC transfer.

g.  Punitive Damages—Grupo Mexico's acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of the interests of ASARCO and its creditors, which foreseeably might have been harmed by those acts or omissions.

## COUNT I – FRAUDULENT TRANSFER (ACTUAL INTENT)

77.  ASARCO re-adopts and re-alleges the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

78.  Prior to the Petition Date, ASARCO transferred its 54.2% ownership in SPCC to or for the benefit of AMC.

79.  Said transfer was of an interest of ASARCO in property.

27

80.    Said transfer was made with the actual intent to hinder, delay, and/or defraud ASARCO's creditors.

81.    As a result of said transfer, ASARCO and its creditors have been harmed.

82.    Pursuant to 11 U.S.C. §§ 544(b) and 550(a), ASARCO is entitled to avoid said transfer and recover from AMC 54.2% of the outstanding shares of SPCC at the time of the final judgment in this action.  In the alternative, ASARCO is entitled to recover the percentage of the outstanding shares of SPCC that the Court finds correctly represents ASARCO's ownership interest in SPCC and the value of any diminution of ASARCO's ownership rights in SPCC.  As a final alternative, ASARCO is entitled to recover the value at the time of the final judgment in this action of whatever the Court finds is ASARCO's correct ownership interest in SPCC.

83.    ASARCO is further entitled to recover the dividends paid by SPCC that ASARCO would have received but for said transfer.

84.    Finally, ASARCO is entitled to an award of its attorneys' fees, prejudgment and postjudgment interest, and costs to the fullest extent permitted by law.

### COUNT II – FRAUDULENT TRANSFER (CONSTRUCTIVE)

85.    ASARCO re-adopts and re-alleges the allegations set forth in paragraphs 1 through 84 as though fully set forth herein.

86.    Prior to the Petition Date, ASARCO transferred its 54.2% ownership in SPCC to or for the benefit of AMC.

87.    Said transfer was of an interest of ASARCO in property.

88.    Said transfer was made at a time when ASARCO was insolvent or ASARCO became insolvent as a result of the transfer.

89.    Said transfer was made at a time when ASARCO was engaged or was about to

28

engage in a business or a transaction for which any property or assets remaining with ASARCO after the transfer represented an unreasonably small capital or were unreasonably small in relation to the business or transaction.

90.    Through said transfer, ASARCO intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they matured and became due.

91.    ASARCO received less than fair consideration or reasonably equivalent value in exchange for making said transfer.  ASARCO did not receive fair consideration or reasonably equivalent value for the SPCC shares.

92.    As a result of said transfer, ASARCO and its creditors have been harmed.

93.    Pursuant to 11 U.S.C. §§ 544(b) and 550(a), ASARCO is entitled to avoid the transfer and recover from AMC 54.2% of the outstanding shares of SPCC at the time of the final judgment in this action.  In the alternative, ASARCO is entitled to recover the percentage of the outstanding shares of SPCC that the Court finds correctly represents ASARCO's ownership interest in SPCC and the value of any diminution of ASARCO's ownership rights in SPCC.  As a final alternative, ASARCO is entitled to recover the value at the time of the final judgment in this action of whatever the Court finds is ASARCO's correct ownership interest in SPCC.

94.    ASARCO is further entitled to recover the dividends paid by SPCC that ASARCO would have received but for said transfer.

95.    Finally, ASARCO is entitled to an award of its attorneys' fees, prejudgment and postjudgment interest, and costs to the fullest extent permitted by law.

### COUNT III – CIVIL CONSPIRACY

96.    ASARCO re-adopts and re-alleges the allegations set forth in paragraphs 1

29

through 95 as though fully set forth herein.

97.    AMC joined and conspired with Grupo Mexico and/or one or more of ASARCO's directors, including without limitation German Larrea, Genaro Larrea, Xavier Garcia, Oscar Gonzalez, and Alfredo Casar, to perpetrate, facilitate, and aid and abet the transfer of ASARCO's 54.2% ownership in SPCC to AMC, the breaches of fiduciary duties, and the other wrongful acts alleged herein.

98.    AMC had a meeting of the minds with Grupo Mexico and/or one or more of ASARCO's directors regarding this course of action.

99.    As described herein, AMC, Grupo Mexico, and/or one or more of ASARCO's directors undertook substantial wrongful, overt acts in furtherance of this course of action.

100.    As a result of these wrongful acts, ASARCO and its creditors suffered damages in an amount to be proven at trial.

## COUNT IV – BREACH OF FIDUCIARY DUTY

101.    ASARCO re-adopts and re-alleges the allegations set forth in paragraphs 1 through 100 as though fully set forth herein.

102.    On March 31, 2003, ASARCO was insolvent.  The present fair salable value of ASARCO's assets was less than the amount that would have been required to pay its probable liability on its existing debts as they became absolute and matured, and the sum of ASARCO's debts was greater than all of ASARCO's assets, at a fair valuation.

103.    As a result of ASARCO's insolvency, AMC had a fiduciary relationship with both ASARCO and ASARCO's creditors, and owed fiduciary duties to both ASARCO and ASARCO's creditors, including the duty of good faith, the duty of loyalty to always act in ASARCO's and ASARCO's creditors' best interest, and the duty to avoid self-dealing and self-

enrichment at ASARCO's and ASARCO's creditors' expense.

104.    As described herein, AMC breached its fiduciary duties to ASARCO and ASARCO's creditors by, among other things, orchestrating, authorizing, and carrying out the transfer of ASARCO's 54.2% ownership in SPCC to AMC.

105.    As a result of AMC's breach of fiduciary duties, ASARCO suffered damages in an amount to be proven at trial.

### COUNT V – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

106.    ASARCO re-adopts and re-alleges the allegations set forth in paragraphs 1 through 105 as though fully set forth herein.

107.    On March 31, 2003, ASARCO was insolvent.  The present fair salable value of ASARCO's assets was less than the amount that would have been required to pay its probable liability on its existing debts as they became absolute and matured, and the sum of ASARCO's debts was greater than all of ASARCO's assets, at a fair valuation.

108.    As a result of ASARCO's insolvency, Grupo Mexico and/or one or more of ASARCO's directors, including without limitation German Larrea, Genaro Larrea, Xavier Garcia, Oscar Gonzalez, and Alfredo Casar, had a fiduciary relationship with both ASARCO and ASARCO's creditors, and owed fiduciary duties to both ASARCO and ASARCO's creditors, including the duty of good faith, the duty of loyalty to always act in ASARCO's and ASARCO's creditors' best interest, and the duty to avoid self-dealing and self-enrichment at ASARCO's and ASARCO's creditors' expense.

109.    As described herein, Grupo Mexico and/or one or more of ASARCO's directors breached their fiduciary duties to ASARCO and ASARCO's creditors, by, among other things, orchestrating, authorizing, and carrying out the transfer of ASARCO's 54.2% ownership in

31

SPCC to AMC.

110.    AMC knowingly and intentionally provided substantial assistance to Grupo Mexico's and/or one or more of ASARCO's directors' breaches of fiduciary duties by, among other things, orchestrating, authorizing, and carrying out the transfer of ASARCO's 54.2% ownership in SPCC to AMC.

111.    AMC's assistance was a substantial factor in causing Grupo Mexico's and/or one or more of ASARCO's directors' breaches of fiduciary duties.

112.    These breaches of fiduciary duties proximately caused damages to ASARCO and ASARCO's creditors in an amount to be proven at trial.  Such damages were the reasonable and foreseeable consequence of AMC's conduct.  AMC is liable for all actual and consequential damages resulting from its conduct in aiding and abetting these breaches of fiduciary duties.

## COUNT VI – PUNITIVE DAMAGES

113.    ASARCO re-adopts and re-alleges the allegations set forth in paragraphs 1 through 112 as though fully set forth herein.

114.    The wrongful conduct committed by AMC was aggravated by the kind of willfulness, wantonness, and malice for which the law allows the imposition of punitive damages.

115.    The harm suffered by ASARCO and its creditors was the result of AMC's acts or omissions.

116.    Such acts or omissions by AMC were actuated by actual malice or accompanied by a wanton and willful disregard of the interests of ASARCO and its creditors, which foreseeably might have been harmed by those acts or omissions.

117.    To punish such acts or omissions and to deter others from similar wrongdoing,

32

AMC should be assessed punitive damages, pursuant to all available statutory and common law rights, in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, ASARCO and Southern Peru Holdings pray that the Court:

(i)     Enter judgment in their favor on all counts raised herein;

(ii)    Declare that the transfer of the SPCC stock is void;

(iii)   Set aside and cancel all documents evidencing the transfer of the SPCC stock from ASARCO to AMC;

(iv)    Either:

    (1)    Order AMC to deliver to ASARCO 54.2% of the outstanding shares of SPCC at the time of the final judgment in this action;

    (2)    Order AMC to deliver to ASARCO the percentage of the outstanding shares of SPCC that the Court finds correctly represents ASARCO's ownership interest in SPCC and award ASARCO money damages in the amount of the value of any diminution of ASARCO's ownership rights in SPCC; or

    (3)    Award ASARCO money damages in the amount of the value at the time of the final judgment in this action of whatever the Court finds is ASARCO's correct ownership interest in SPCC;

(iv)    Award money damages to ASARCO for the dividends it would have received on the fraudulently transferred SPCC stock but for the transfer;

(v)     Award ASARCO punitive damages as to those counts for which such damages are available under applicable law and in such amounts as shall be proven at trial;

33

(v)     Award ASARCO its attorneys' fees, prejudgment and postjudgment interest, and costs to the fullest extent permitted by law; and

(vi)    Grant ASARCO and Southern Peru Holdings such other relief as is just and equitable under the circumstances.

34

Dated:  May 4, 2007                    Respectfully submitted,

| | |
|---|---|
| **BAKER BOTTS L.L.P.**<br><br>*/s/ G. Irvin Terrell* _____<br>G. Irvin Terrell<br>Attorney-in-Charge<br>State Bar No. 19794500<br>Southern District of Texas Bar No. 10004<br>Samuel Cooper<br>State Bar No. 00792427<br>Southern District of Texas Bar No. 19954<br>Michael Massengale<br>State Bar No. 24003704<br>Southern District of Texas Bar No. 23746<br>Rebeca Huddle<br>State Bar No. 24012197<br>Southern District of Texas Bar No. 25827<br>910 Louisiana Street<br>One Shell Plaza<br>Houston, Texas  77002-4995<br>Telephone:  713.229.1231<br>Facsimile:  713.229.2831<br>Email: *irv.terrell@bakerbotts.com*<br>   *samuel.cooper@bakerbotts.com*<br>   *michael.massengale@bakerbotts.com*<br>   *rebeca.huddle@bakerbotts.com*<br><br>and<br><br>**BAKER BOTTS L.L.P.**<br>Jack L. Kinzie<br>State Bar No. 11492130<br>Southern District of Texas Bar No. 14771<br>Fernando Rodriguez<br>State Bar No. 24005048<br>Southern District of Texas Bar No. 725760<br>Eric A. Söderlund<br>State Bar No. 24037525<br>Southern District of Texas Bar No. 577300<br>Thomas E. O'Brien<br>State Bar No. 24046543<br>Southern District of Texas Bar No. 725795<br>2001 Ross Avenue<br>Dallas, Texas 75201-2980<br>Telephone:  214.953.6500 | Facsimile:     214.661.6503<br>Email: *jack.kinzie@bakerbotts.com*<br>   *fernando.rodriguez@bakerbotts.com*<br>   *eric.soderlund@bakerbotts.com*<br>   *tom.obrien@bakerbotts.com*<br><br>**JORDAN,       HYDEN,      WOMBLE**<br>**CULBRETH & HOLZER,  P.C.**<br><br>Shelby A. Jordan<br>State Bar No. 11016700<br>Suite 900, Bank of America<br>500 North Shoreline<br>Corpus Christi, Texas 78471<br>Telephone:  361.884.5678<br>Facsimile:   361.888.5555<br>Email: *sjordan@jhwclaw.com*<br><br>and<br><br>**JORDAN,       HYDEN,      WOMBLE**<br>**CULBRETH & HOLZER,  P.C.**<br><br>Michael J. Urbis<br>State Bar No. 20414130<br>1534 E. 6th Street, Suite 104<br>Brownsville, Texas 78520<br>Telephone:  956.542.1161<br>Facsimile:   956.542.0051<br>Email: *murbis@jhwclaw.com*<br><br><br>**COUNSEL TO ASARCO LLC** |

## CERTIFICATE OF SERVICE

I certify that on May 4, 2007, the foregoing document was served electronically by email and via overnight Federal Express on the following counsel for Defendant Americas Mining Corporation:

Charles A. Beckham, Jr.
Trey A. Monsour
Elizabeth Brooks Hamilton
Haynes and Boone, LLP
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas 77010
*charles.beckham@haynesboone.com*
*trey.monsour@haynesboone.com*
*brooks.hamilton@haynesboone.com*

Luc A. Despins
Robert Winter
David R. Gelfand
Stacey J. Rappaport
Melanie Westover
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
*ldespins@milbank.com*
*rwinter@milbank.com*
*dgelfand@milbank.com*
*srappaport@milbank.com*
*mwestove@milbank.com*

*/s/ Thomas E. O'Brien*