meaning of the Act. N. Y. DEBT. & CRED. § 270.

64. The sale of Enthone, American Limestone and ASARCO's ownership interest in SPCC ("ASARCO's principal assets") separately and in connection with an integrated plan of liquidation is/are "conveyance(s)" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

65. The redemption/share repurchase of ASARCO's stock from ASARCO's Directors and other shareholders is a "conveyance" as that term is defined under the Act. N. Y. DEBT. & CRED. § 270.

66. Plaintiffs have claims against ASARCO for damages resulting from personal injuries occasioned by exposure to asbestos. Plaintiffs are "creditors" of ASARCO under the Act. N. Y. DEBT. & CRED. § 270.

67. ASARCO was purchased by GRUPO MEXICO, its stock was redeemed, certain of its business equipment was liquidated at auction and its principal assets encumbered and sold at a time when ASARCO was either insolvent or would become insolvent as a result of the liquidation of its assets.

68. ASARCO received less than fair consideration for the redemption/share repurchase of its stock and transfer of controlling interest in the company to GRUPO MEXICO and AMC since the proceeds of the conveyance accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO and Chase) and not to the benefit of ASARCO or its creditors.

69. ASARCO received less than fair consideration for the encumbrance of its principal assets since the proceeds of the conveyances accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO, Chase and CSFB and others)

15

and not to the benefit of ASARCO or its creditors.

70. ASARCO received less than fair consideration for the sale of certain of its business equipment at auction and the sale of its principal assets since the proceeds of these conveyances accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO, Chase and CSFB) and not to the benefit of ASARCO or its creditors.

71. Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring the conveyance of ASARCO to GRUPO MEXICO and AMC, the encumbrance and sale of ASARCO's business equipment and principal assets and the redemption/share repurchase of its stock to be individually and collectively fraudulent as to the debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. §273. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' SECOND CLAIM FOR RELIEF
*(Constructive Fraud- Conveyance Resulting in Insufficiency of Capital)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-71 and for their Second Claim for Relief state as follows:

72. At the direction of GRUPO MEXICO and AMC, ASARCO redeemed its stock and conveyed away certain of its business equipment and its principal assets without fair consideration, when ASARCO was engaging or about to engage in a business or transaction for which the property remaining in ASARCO's hands after the conveyance represented unreasonably small capital.

73. Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring the encumbrance and conveyance of ASARCO's business equipment and principal assets and redemption/share repurchase of ASARCO's stock individually and collectively, fraudulent as to the Debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. § 274. Plaintiffs are entitled to

16

appropriate equitable and legal relief thereto.

### PLAINTIFFS' THIRD CLAIM FOR RELIEF
*(Actual Fraud: Conveyance in Anticipation of Debts)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-73 and for their Third Claim for Relief state as follows:

74. In a series of transactions undertaken at the direction of GRUPO MEXICO and AMC, ASARCO was sold to GRUPO MEXICO and transferred to AMC, ASARCO's stock was redeemed and ASARCO's business equipment and principal assets were encumbered and/or sold for less than fair consideration, with the intent or belief that ASARCO would incur debts beyond its ability to pay as they mature.

75. GRUPO MEXICO and AMC were aware of plaintiffs' (and other, environmental) claims against ASARCO prior to the conveyances referenced herein, and these defendants knew these claims would remain unsatisfied under the integrated plan of liquidation.

76. Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring the sale of ASARCO to GRUPO MEXICO, the transfer of ASARCO to AMC, the redemption/share repurchase of ASARCO's stock and the encumbrance and conveyance of ASARCO's business equipment and/or principal assets to be fraudulent to the debts owed to plaintiffs pursuant to N.Y. DEBT. & CRED. § 275. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' FOURTH CLAIM FOR RELIEF
*(Actual Fraud: Conveyance with Intent to Frustrate Creditor Claims/Conspiracy)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-76 and for their Fourth Claim for Relief state as follows:

77. The redemption/share repurchase of ASARCO's stock and the sale and liquidation

17

of ASARCO through the LBO were undertaken through an integrated plan and design orchestrated by defendant GRUPO MEXICO and executed with the complicity of others, including AMC, Chase and CSFB.

78. The redemption/share repurchase of ASARCO' stock and liquidation of ASARCO's assets occurred when:

   a. ASARCO was insolvent and/or with the knowledge that the transfers, (individually and/or collectively) would result in ASARCO's insolvency;

   b. GRUPO MEXICO, AMC and Chase were aware of pending litigation against ASARCO for environmental claims and personal injury claims related to asbestos exposure which had rendered or would render the company insolvent;

   c. ASARCO lacked adequate financial means to meet its debts as they matured;

   d. The assets transferred were the principal assets of the corporation and made up the majority of the company's assets in value;

   e. The transfers were made for less than fair consideration;

   f. The transfer(s) benefitted insiders including ASARCO's Directors and other former shareholders, GRUPO MEXICO and AMC at the expense of unsecured creditors including plaintiffs.

79. The redemption/share repurchase of stock and liquidation of ASARCO's assets was designed to strip the company of assets before unsecured creditor claims matured; the redemption/share repurchase of ASARCO' stock and the sale and liquidation of ASARCO's business equipment and principal assets was undertaken with the intent to hinder, delay or defraud creditors.

80. Plaintiffs are entitled to judgment against GRUPO MEXICO, AMC, Chase and CSFB declaring the sale of ASARCO to GRUPO MEXICO and AMC, the redemption/share repurchase of ASARCO's stock and the encumbrance and conveyance of ASARCO's business equipment and principal assets to be fraudulent pursuant to N.Y. DEBT. & CRED. § 276.

Plaintiffs are entitled to appropriate equitable and legal relief thereto.

81.  Because these transfers were fraudulent conveyances, committed with the actual intent to defraud creditors, punitive damages should be recovered from the defendants, jointly and severally, in an amount not less than three-times actual damages.

### PLAINTIFFS' FIFTH CLAIM FOR RELIEF
*(Fraudulent Conveyance: Liability of Transferee Chase & CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-81 and for their Fifth Claim for Relief state as follows:

82.  Defendant Chase is the transferee who provided the senior layer of debt necessary to carry out the LBO.

83.  Defendant CSFB provided financial advice to ASARCO's Board of Directors at the time of the merger and participated with other banks in financing the LBO.

84.  Chase and CSFB knew the LBO was to be a "bust up" acquisition with the assets of ASARCO to be conveyed away from ASARCO for less than fair consideration since the proceeds of these transfers would not benefit ASARCO or its creditors but would instead accrue to third parties, ASARCO's former shareholders, GRUPO MEXICO and AMC.

85.  Chase and CSFB knew ASARCO was insolvent just prior to the LBO or would be rendered insolvent as a result of the conveyances attendant to the LBO and/or the debt service imposed for the acquisition and operating loans to ASARCO.

86.  Chase and CSFB knew ASARCO was to be liquidated and would be left with unreasonably small capital resources to continue its traditional business operations.

87.  Chase and CSFB knew ASARCO was to be liquidated at a time when ASARCO, GRUPO MEXICO and AMC believed ASARCO would incur debts beyond its ability to pay as

they matured.

88.     Chase and CSFB knew the plan of liquidation was undertaken with the intent to hinder, delay and/or defraud creditors.

89.     The encumbrance of ASARCO's principal assets in favor of Chase is a "conveyance" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

90.     Loan payments relating to the LBO received by Chase, CSFB and other participating banks under priority liens, including but not limited to proceeds from the sale of ASARCO's principal assets and other loan payments made by ASARCO or by GRUPO MEXICO (or its affiliates) on behalf of ASARCO (collectively "loan payments") are "conveyances" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

91.     The loan payments received by Chase and CSFB are not protected from recapture under N. Y. DEBT & CRED. 272(b) because Chase and CSFB did not act in good faith herein and/or the property received by ASARCO from Chase and CSFB was disproportionately small as compared with the value of the obligation to Chase and CSFB.

92.     In derogation of creditor's rights, including plaintiffs, Chase and CSFB failed to conduct an adequate financial investigation of ASARCO's solvency before loaning and/or making more than one billion (1,000,000,000) dollars to ASARCO and accepting mortgages encumbering ASARCO's principal assets and/or ignored ASARCO's insolvency.

93.     Chase and CSFB knew or should have known that as a result of the planned liquidation of ASARCO's principal assets:

   a.     The fair salable value of ASARCO's remaining assets would be less than

20

ASARCO's liabilities;

b. These transfers would leave ASARCO with an unreasonably small amount of capital for the business in which it was engaged or proposed to engage in the future;

c. ASARCO could not reasonably be expected to meet its obligations as the matured.

94. Chase and CSFB knew or should have known that the debtor was insolvent or would be rendered insolvent by the transfers or would be rendered insolvent as a result of the integrated plan of liquidation, that the debt service imposed by Chase and CSFB would further diminish ASARCO's ability to pay creditors and ASARCO has no reasonable prospects for survival.

95. Chase and CSFB transferred funds to ASARCO in exchange for a lien against ASARCO's principal assets and accepted loan payments for less than fair consideration with actual or constructive knowledge that the transaction would increase or lead to ASARCO's insolvency and fraud on ASARCO's creditors including plaintiffs.

96. Plaintiffs are entitled to judgment against defendant Chase and CSFB for the value of the property conveyed and/or judgment declaring the loan payments attendant to the LBO made by or on behalf of ASARCO to Chase and CSFB to be fraudulent as to the Debts owed plaintiffs pursuant to DEBT. & CRED. §§ 273, 274, 275 & 276. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' SIXTH CLAIM FOR RELIEF
(*Fraudulent Conveyance: Insurance Proceeds*)

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-96 and for their Sixth Claim for Relief state as follows:

97. Plaintiffs all have "claims" against ASARCO and are therefore "creditors" of ASARCO under the Act. N. Y. DEBT. & CRED. § 270 ASARCO is liable to plaintiffs and therefore is a "debtor" pursuant to the Act. N. Y. DEBT. & CRED. § 270.

98. The heavy discounting of future insurance proceeds and the transfer of said insurance proceeds at the direction of GRUPO MEXICO or its affiliates to ASARCO's general operating fund and the subsequent disbursement of those monies are "conveyances" of ASARCO's (the debtor's) property pursuant to the Act.

99. At the time the insurance proceeds were conveyed, ASARCO was insolvent or would be rendered insolvent as a result of the transfer and/or the integrated plan of liquidation.

100. As a result of the conveyance of the insurance proceeds and/or the integrated plan of liquidation, ASARCO lacked sufficient capital to continue its traditional business operations.

101. The transfer of the insurance proceeds occurred at a time when ASARCO, GRUPO MEXICO and GRUPO MEXICO's affiliates knew or believed ASARCO would incur debts which it would be unable to pay as they matured.

102. The transfer of the insurance proceeds was undertaken with the intent to hinder, delay or defraud ASARCO's creditors.

103. Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and its affiliates declaring the conveyance of the insurance proceeds to be fraudulent as to the Debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. §§ 273, 274, 275 & 276. Plaintiffs are entitled to equitable and legal relief thereto.

### PLAINTIFFS' SEVENTH CLAIM FOR RELIEF
*(Fraudulent Conveyance: Transfer to Insiders)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-103 and for their

Seventh Claim for Relief state as follows:

104. GRUPO MEXICO, AMC, GMMI, Mexicana de Cobre, S.A. de C.V., Controladora Minera Mexico, S.A. de C.V. and ASARCO are all interrelated companies, affiliates and "insiders" owned or controlled by GRUPO MEXICO.

105. As part of the alleged consideration for the transfer of ASARCO's interest in SPCC to GRUPO MEXICO and its affiliates, ASARCO allegedly received debt forgiveness of an antecedent inter-company debt from affiliates of GRUPO MEXICO including AMC and/or Mexicana de Cobre S.A. de C.V.

106. The forgiveness of inter-company debt is a "conveyance" within the meaning of the Act. N. Y. Debt. & Cred. §270.

107. At the time of the debt forgiveness, ASARCO was either insolvent or rendered insolvent as a result of redemption/share repurchase of its stock and the conveyance of its principal assets and/or the execution of the integrated plan of liquidation.

108. The conveyance by an insolvent to an affiliate or insider in satisfaction of an antecedent debt lacks good faith and is constructively fraudulent.

109. Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and MEXICO de COBRE S.A. C.V. declaring the conveyance of the SPCC stock in exchange for debt forgiveness to be fraudulent as to debts owed plaintiffs pursuant to N. Y. DEBT & CRED. § 273. Plaintiffs are entitled to legal and equitable relief thereto.

### PLAINTIFFS' EIGHTH CLAIM FOR RELIEF
*(Professional Negligence and Misrepresentation: As to Defendant Ernst & Young)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-109 and for their Eighth Claim for Relief state as follows:

23

110. Defendants ERNST & YOUNG LLP and ERNST & YOUNG CORPORATE FINANCE LLC (collectively "Ernst & Young") were engaged to provide an opinion as to the value of 43,348,949 shares of Class A Common Stock of Southern Peru Copper Company representing 54.18% of the voting shares of that publically traded corporation which were held by SPHC, a wholly owned subsidiary of ASARCO. ("stock interest").

111. Ernst & Young expressed a professional valuation with full knowledge that its opinion would be relied upon by a limited class of third parties to which Ernst & Young owed a duty of care, including the United States Justice Department, The Federal Courts of the United States and plaintiffs.

112. The valuation opinion of Ernst & Young provided the principal basis for the United States District Court for the District of Arizona to approve the sale of the stock interest to Grupo and/or its wholly owned subsidiary AMC to the detriment of plaintiffs.

113. Ernest & Young recklessly and knowingly and without the professional competence required of a Certified Public Accounting firm sold an opinion letter, which falsely represented that the fair value of ASARCO's controlling interest in SPCC was worth less than the book value of ASARCO's share of the underlying assets of the company.

114. Ernst & Young had a duty to plaintiffs to issue an opinion based on impartial and independent knowledge of the copper industry. Despite knowing that the purchaser of the stock interest was an insider with full information regarding the company, the company's prospects and the copper market, Ernst & Young breached its duty to plaintiffs by undervaluing the stock interest based on information provided by the purchaser, Grupo and/or entities controlled by Grupo.

115. Ernst & Young had a duty to plaintiffs to be competent to issue an opinion as to

24

the value of SPCC as a going concern. Without taking into consideration SPCC's on-going expansion of its mining operations and the increasing value of its copper reserves in a rising copper market, Ernst & Young's valuation negligently only reflects historic and public financial information.

116. Ernst and Young breached its duty to plaintiffs by failing to exercise due care and the professional competence required of a Certified Public Accounting firm and by issuing an opinion which it knew or should have known grossly understated the value of the stock interest, thereby allowing the stock interest to be sold to Grupo for less than fair and adequate consideration, placing ASARCO's most valuable asset outside the direct reach of creditors.

117. Plaintiffs are entitled to judgment against Ernst & Young for damages resulting from its professional negligence and misrepresentation as to the value of the stock interest.

### PLAINTIFFS' NINTH CLAIM FOR RELIEF
*(Breach of Fiduciary Duty: ASARCO's Officer's & Directors)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-117 and for their Ninth Claim for Relief state as follows:

118. Defendants GERMAN LARREA MOTA-VELASCO and OSCAR GONZALES ROCHA were Officers and Directors of ASARCO (collectively "Director Defendants") when the principal assets of ASARCO were being liquidated.

119. The sale of ASARCO's principal assets for less than fair and adequate consideration and the misappropriation of the proceeds of the sale for the benefit of Defendants and to the detriment of ASARCO's unsecured creditors was undertaken at a time when ASARCO was unable to pay its debts as they became due, its liabilities exceeded its assets and/or

25

ASARCO was insolvent.

120. The sale of ASARCO's principal assets for less than adequate consideration, left ASARCO with unreasonably small capital to continue historic business operations and resulted in insolvency, the likelihood of insolvency and/or the unreasonable risk of insolvency.

121. The officers and directors of a corporation which is insolvent, or on the brink of insolvency, owe a fiduciary duty to the corporation, to the employees of the corporation and the corporation's unsecured creditors. By selling the principal assets of ASARCO for less than adequate consideration, these Director Defendants breached their fiduciary duties of care and duties of loyalty to the ASARCO, ASARCO'S employees and ASARCO's unsecured creditors including Plaintiffs.

122. The liquidation of ASARCO's principal assets was not undertaken in good faith, was undertaken without full compliance with statutory procedures designed to protect the rights of creditors, involved intentional misconduct and/or resulted in improper personal benefit.

123. The actions of these Defendant Directors were grossly negligent and/or undertaken with reckless disregard for the rights of plaintiffs.

124. Pursuant to N.Y. Bus. Corp. Law § 720 (McKinney 2004), Defendant Directors must account and respond in damages for the amount by which less than full value was realized by ASARCO upon the liquidation of its principal assets.

125. Plaintiffs are entitled to judgment against Defendant Directors for the losses sustained by creditors through the depletion of ASARCO's principal assets.

**PLAINTIFFS' TENTH CLAIM FOR RELIEF**
*(Aiding and Abetting Breach of Fiduciary Duty: Ernst & Young and CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-125 and for

their Tenth Claim for Relief state as follows:

126. Defendant CSFB served as financial advisor to ASARCO's Board of Directors at the time the LBO was endorsed by the Board. CSFB evaluated and advised ASARCO's Board of Directors regarding the sale of the company, recommending the LBO proposed by GRUPO MEXICO and rejecting the merger of equals proposed by Phelps Dodge Corporation. CSFB then personally benefitted from the transaction by becoming a secured creditor of ASARCO. The LBO directly caused ASARCO's insolvency.

127. Defendant Ernst & Young served as ASARCO's financial advisor from August 15, 2002 until March 27, 2003. As financial advisor, Ernst & Young recommended the monetization of ASARCO's general liability insurance policies and the use of these insurance proceeds for regular business expenses, to the detriment of parties this insurance was intended to compensate. Defendant Ernst & Young undervalued ASARCO's interest in SPCC and then approved, supported and championed the sale of ASARCO's interest in SPCC for less than adequate consideration

128. ASARCO'S Board of Directors owed a fiduciary duty to the corporation, the corporation's employees and ASARCO's unsecured creditors including Plaintiffs.

129. By and through the LBO, the leveraging of ASARCO's principal assets and the sale of ASARCO's principal assets for less than adequate consideration, ASARCO's Board of Directors breached its fiduciary duty to these parties, including Plaintiffs.

130. Defendants Ernst & Young and CSFB knowingly participated, orchestrated and encouraged the breach of fiduciary duty by ASARCO's Directors.

131. Plaintiffs are entitled to judgment against Defendants Ernst & Young and CSFB for aiding and abetting breach of fiduciary duty.

27

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request this Court:

(1) Award actual monetary damages, attorney's fees and costs against defendants.

(2) Award punitive damages against these defendants who have engaged in actual fraud as to the Debts owed plaintiffs in an amount not less than three times actual damages.

(3) Set aside or annul the conveyances described herein as fraudulent to the extent necessary to satisfy plaintiffs' claims, authorize attachment or levy of execution upon the property wrongfully conveyed, place ASARCO's wrongly conveyed assets in trust and/or appoint a receiver to hold and manage those assets of ASARCO for payment of creditor claims.

(4) And/or make any order which the circumstances of the case may require.

Respectfully submitted, 264795

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
120 Wall Street-15th Floor
New York, NY 10038
(212) 558-5900
FAX (212) 363-6848

By: _____
Gary Klein, Esq.

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

FILED 2/7/05 COUNTY CLERK NEW YORK COUNTY

FEB. 27 2007

## ATTORNEY VERIFICATION

GARY KLEIN, hereby affirms that the following is true, under penalties of perjury:

I am an associate of the firm of WEITZ & LUXENBERG, P.C., attorneys for the plaintiff(s) in the within action; I have read the foregoing Summons and Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true. The reason this verification is made by your affiant and not by the plaintiff is that the plaintiff herein resides in a County other than the one in which WEITZ & LUXENBERG, P.C. maintains its offices.

The grounds of my belief as to all matters not stated upon my own knowledge are the contents of our office file.

Dated: New York, New York
February 7, 2005

_____
Gary Klein, ESQ.