## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALPAP,

                Plaintiffs,

-against-

GRUPO MEXICO, S.A. de C.V., a Mexican
Corporation,

                Defendant.

Case No. 1:07-CV-3496 (WHP)

---

### ASARCO LLC AND SOUTHERN PERU HOLDINGS, LLC'S
### CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF THEIR
### MOTIONS TO SUBSTITUTE PLAINTIFFS AND TO TRANSFER VENUE

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ............................................................................................1

FACTUAL BACKGROUND ............................................................................................2

PROCEDURAL BACKGROUND ....................................................................................4

ARGUMENT ....................................................................................................................7

I.    THE COURT SHOULD SUBSTITUTE ASARCO AND SOUTHERN PERU
      HOLDINGS FOR PLAINTIFFS. ..........................................................................7

      A.    Plaintiffs' Interest in this Case Has Transferred by Law to ASARCO and
            Southern Peru Holdings. .............................................................................8

      B.    Substituting ASARCO and Southern Peru Holdings for Plaintiffs Will
            Best Facilitate the Conduct of this Case. ................................................12

II.   THE COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN
      DISTRICT OF TEXAS. ......................................................................................13

      A.    Rule 7087 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 1412
            Govern Transfer of this Case. ...................................................................13

      B.    Transferring this Case to the Southern District of Texas Is in the Interest of
            Justice and Would Further the Convenience of the Parties. .....................15

      C.    The Court May Transfer this Case to the Southern District of Texas
            Without First Deciding Grupo Mexico's Motion to Dismiss for Lack of
            Personal Jurisdiction. ...............................................................................20

      D.    The Court May Transfer this Case to the Southern District of Texas
            Without First Deciding Grupo Mexico's Motion to Dismiss for
            Improper Service. ......................................................................................24

CONCLUSION ................................................................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*AT&T Corp. v. Walker,*
  No. C04-5709 FDB, 2006 WL 828392 (W.D. Wash. March 23, 2006)............................12

*Aetna Cas. & Surety Co. v. Dauria (In re Pine Assocs.),*
  40 B.R. 683 (Bankr. D. Conn. 1984) ................................................................10

*Air Enters., Inc. v. Ohio Farmers Ins. Co. (In re Hughes-Bechtol, Inc.),*
  107 B.R. 552 (Bankr. S.D. Ohio 1989)..............................................................10

*Aztec Indus., Inc. v. Standard Oil Co. (In re Aztec Indus., Inc.),*
  84 B.R. 464 (Bankr. N.D. Ohio 1987) ...............................................................17

*Barber v. Westbay (In re Integrated Agri, Inc.),*
  313 B.R. 419 (Bankr. C.D. Ill. 2004)..............................................................9, 13

*Blum v. Saloman,*
  No. 06 CV 3149 (WHP), 2006 WL 3851157 (S.D.N.Y. Dec. 28, 2006) ........................21

*Calder v. Jones,*
  465 U.S. 783 (1984)..............................................................................24

*Carroll v. Rafael Galleries, Inc. (In re Altman),*
  254 B.R. 509 (D. Conn. 2000) .....................................................................12

*Certain Underwriters at Lloyd's London v. ABB Lummus Global, Inc.,*
  No. 03 Civ. 7248 (JGK), 2004 WL 224505 (S.D.N.Y. Feb. 5, 2004) ..............................17

*Christensen v. St. Paul Bank for Coops. (In re Fulda Indep. Co-op),*
  130 B.R. 967 (Bankr. D. Minn. 1991) ..............................................................9

*Cincinnati Milacron Marketing Co. v. Ramirez (In re Wesco Products Co.),*
  19 B.R. 908 (Bankr. N.D. Ill. 1992) ...............................................................10

*Corke v. Sameiet M.S. Song,*
    572 F.2d 77 (2d Cir. 1978)......................................................................................21

*Dunlap v. Friedman's, Inc.,*
    331 B.R. 674 (S.D. W. Va. 2005) ............................................................................22

*Enron Corp. v. Arora (In re Enron Corp.),*
    317 B.R. 629 (Bankr. S.D.N.Y. 2004) ...............................................15-20, 23-24

*FDIC v. Hirsch (In re Colonial Realty Co.),*
    980 F.2d 125 (2d Cir. 1992).......................................................................................8

*FDIC v. Tisch,*
    89 F.R.D. 446 (E.D.N.Y. 1981) ..........................................................................7, 13

*FDIC v. Wrapwell Corp.,*
    922 F. Supp. 913 (S.D.N.Y. 1996) .........................................................................12

*Falcon v. Scottsdale Ins. Co.,*
    No. CV-06-122-FVS, 2006 WL 2434227 (E.D. Wash. Aug. 21, 2006) ..........................11

*Fleet Credit Corp. v. TML Bus Sales, Inc.,*
    65 F.3d 119 (9th Cir. 1995) ....................................................................................12

*Frankford Trust Co. v. Allanoff (In re Dublin Properties),*
    20 B.R. 616 (Bankr. D. Pa. 1982) ..........................................................................10

*Frazier v. Lawyers Title Ins. Corp. (In re Butcher),*
    46 B.R. 109 (N.D. Ga. 1985) ..................................................................................18

*Girard v. Michener (In re Michener),*
    217 B.R. 263 (Bankr. D. Minn. 1998) .....................................................................9

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest
Prods. Corp.),* 896 F.2d 1384 (2d Cir. 1990) .........................................15, 16, 19

*In re Altman,*
    230 B.R. 6 (Bankr. D. Conn. 1999) ................................................................12

*In re Emerson Radio Corp.,*
    52 F.3d 50 (3d Cir. 1995)................................................................22

*In re Emerson Radio Corp.,*
    173 B.R. 490 (D.N.J. 1994) ................................................................16

*In re Sinking of the Motor Vessel Ukola,*
    462 F. Supp. 385 (J.P.M.L. 1978)................................................................24

*In re Vitamins Antitrust Litig.,*
    No. MISC 99-197 (TFH), 2001 WL 34088810 (D.D.C. March 9, 2001)........................25

*Insight Data Corp. v. First Bank Sys., Inc.,*
    No. 97 CIV 4896 (MBM), 1998 WL 146689 (S.D.N.Y. March 25, 1998) ......................23

*Kendall v. Turner (In re Turner),*
    335 B.R. 140 (Bankr. N.D. Cal. 2005) ................................................................12

*Kenwin Shops, Inc. v. Bank of Louisiana D&A Funding Corp.,*
    No. 97 Civ. 907 (LMM), 1999 WL 294800 (S.D.N.Y. May 11, 1999)......................19, 22

*Leroy v. Great Western United Corp.,*
    443 U.S. 173 (1979)................................................................22, 23

*Lindquist v. JNG Corp. (In re Lindell),*
    334 B.R. 249 (Bankr. D. Minn. 2005) ................................................................12

*MBNA Am. Bank, N.A. v. Hill,*
    436 F.3d 104 (2d Cir. 2006)................................................................14

*Matra Et Manurhin v. Int'l Armament Co.,*
    628 F. Supp. 1532 (S.D.N.Y. 1986)................................................................21

*Minhlong Enters., Inc. v. New York Int'l Hostel, Inc. (In re New York Int'l Hostel, Inc.),*
    142 B.R. 90 (Bankr. S.D.N.Y. 1992) ..........................................................................15

*Moratzka v. Wencl (In re Wencl),*
    71 B.R. 879 (D. Minn. 1987) ....................................................................................14

*Nat'l Super Spuds, Inc. v. New York Mercantile Exch.,*
    425 F. Supp. 665 (S.D.N.Y. 1977) ...........................................................................19

*Ni Fuel Co., Inc. v. Jackson,*
    257 B.R. 600 (N.D. Okla. 2000) ..............................................................................22

*Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,*
    51 F.3d 1383 (8th Cir. 1995) ....................................................................................25

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman,*
    306 B.R. 746 (S.D.N.Y. 2004) ...........................................................................16, 19

*Pacamor Bearings, Inc. v. Minebea Co., Ltd.,*
    892 F. Supp. 347 (D.N.H. 1995) ............................................................................7, 12

*Parenteau v. Bellucci (In re Bellucci),*
    9 B.R. 887 (Bankr. D. Mass. 1981) .........................................................................10

*Pereira v. Sonia Holdings, Ltd. (In re Artha Mgmt., Inc.),*
    91 F.3d 326 (2d Cir. 1996) .......................................................................................15

*Posven v. Liberty Mutual Ins. Co.,*
    303 F. Supp. 2d 391 (S.D.N.Y. 2004) ......................................................................21

*Rahl v. Bande,*
    316 B.R. 127 (S.D.N.Y. 2004) ...............................................................................9, 15

*Sheet Metal Workers' Nat'l Pension Fund v. Gallagher,*
    669 F. Supp. 88 (S.D.N.Y. 1987) .............................................................................21

*Smith v. Richels (In re Richels)*,
 163 B.R. 760 (Bankr. E.D. Va. 1994) .............................................................11

*State Bank of India v. Chalasani (In re Chalasani)*,
 92 F.3d 1300 (2d Cir. 1996) ...............................................................................7

*Tabas v. Gigi Adverse P'ship (In re Kaufman & Roberts, Inc)* ,
 188 B.R. 309 (Bankr. S.D. Fla. 1995) ..........................................................7, 10

*Torres v. Torres*,
 603 F. Supp. 440 (E.D.N.Y. 1985) ...................................................................24

*Tultex Corp. v. Freeze Kids, L.L.C.*,
 252 B.R. 32 (S.D.N.Y. 2000) ...........................................................................13

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
 216 F. Supp. 2d 198 (S.D.N.Y. 2002) ................................................................9

*Volk Corp v. Art-Pak Clip Art Serv.*,
 432 F. Supp. 1179 (S.D.N.Y. 1977) .................................................................21

*Wedtech Corp. v. London, M.D. (In re Wedtech Corp.)*,
 81 B.R. 237 (S.D.N.Y. 1987) ...........................................................................14

*Weiburg v. GTE Southwest Inc.*,
 272 F.3d 302 (5th Cir. 2001) ............................................................................13

**RULES**

Fed. R. Bankr. P. 7004 ...........................................................................................23

Fed. R. Bankr. P. 7025 .......................................................................................7, 14

Fed. R. Bankr. P. 7078 ....................................................................................13-15

Fed. R. Civ. P. 25 .....................................................................................................7

## STATUTES

11 U.S.C. § 362 ...........................................................................................................8

11 U.S.C. § 544 .....................................................................................................14, 15

11 U.S.C. § 1412 ......................................................................................13, 14-16, 21-22

28 U.S.C. § 157 ..........................................................................................................14

28 U.S.C. § 1404 ...................................................................................................21, 22

28 U.S.C. § 1409 .........................................................................................................24

## MISCELLANEOUS

David B. Young, *Preferences and Fraudulent Transfers*,
    895 PLI/Comm 713 (2007) ................................................................................12

Lawrence P. King, 10 *Collier on Bankruptcy* (15th ed. rev.) .................................17, 22

# SUMMARY OF ARGUMENT

The Court should grant the Motion to Substitute Plaintiffs filed by ASARCO LLC ("ASARCO") and its wholly owned subsidiary, Southern Peru Holdings, LLC ("Southern Peru Holdings"), because Plaintiffs' interest in this case has transferred by law to ASARCO and Southern Peru Holdings and substitution would best facilitate the conduct of this case. In October 2004, Plaintiffs asserted fraudulent transfer claims against Defendant Grupo Mexico, S.A. de C.V. ("Grupo Mexico"). Plaintiffs alleged that the transfer of ASARCO's 54.2% ownership interest in Southern Peru Copper Corporation ("SPCC") to ASARCO's parent, Americas Mining Corporation ("AMC"), the wholly owned subsidiary of Grupo Mexico, was fraudulent under New York state law. Those fraudulent transfer claims were automatically stayed when ASARCO filed for bankruptcy, and ASARCO, as debtor in possession, now has the exclusive right to pursue those claims. Southern Peru Holdings also should be substituted for Plaintiffs because Southern Peru Holdings was the conduit for the SPCC transaction and the validity of its separate corporate existence will be determined at the trial on the merits. In fact, ASARCO was the true owner of the SPCC stock that was fraudulently transferred through Southern Peru Holdings, as ASARCO's mere instrumentality, agent, and alter ego.

The Court should also grant ASARCO and Southern Peru Holdings' Motion to Transfer Venue because, in the interest of justice and for the convenience of the parties, this case should be managed and tried in the Southern District of Texas. ASARCO and Southern Peru Holdings' bankruptcy cases are being jointly administered in the Southern District of Texas, and a related lawsuit is pending there brought by ASARCO and Southern Peru Holdings against AMC. That adversary proceeding and this case involve the same fraudulent transaction, the same lawyers on both sides, the same governing law, and related parties. The adversary proceeding is well under

1

way and is set for trial in May 2008. The Court should transfer this case to the Southern District of Texas so it can be consolidated with that sister case and tried alongside the case against Grupo Mexico's wholly owned subsidiary, AMC.

## FACTUAL BACKGROUND

The facts that gave rise to this case are described in detail in ASARCO and Southern Peru Holdings' First Amended Complaint against AMC filed in the Southern District of Texas, attached as Exhibit 1 to the Affidavit in Support of ASARCO and Southern Peru Holdings' Motion to Transfer Venue (the "Affidavit").

ASARCO fraudulently transferred its 54.2% ownership interest in SPCC to its parent, AMC, on or about March 31, 2003. Exhibit 1 ¶ 64. The transfer of ASARCO's crown jewel occurred when ASARCO was insolvent, unable to pay its debts when they became due, and subject to the complete control of its parents, Grupo Mexico and AMC. *Id.* ¶ 7. Grupo Mexico and AMC forced ASARCO to sell its interest in SPCC to AMC for less than reasonably equivalent value and with the actual intent to hinder, delay, and defraud ASARCO's creditors. *Id.* As the parent of AMC, Grupo Mexico devised, effected, and benefited from the fraudulent transfer. *Id.* ¶ 3.

In anticipation of their need to later defend this insider transaction, prior to the SPCC transfer, Grupo Mexico and AMC directed ASARCO to retain Ernst & Young Corporate Finance ("EYCF"), as well as restructuring and bankruptcy counsel, Squire Sanders & Dempsey L.L.P. ("Squire Sanders"). *Id.* ¶ 36. EYCF and Squire Sanders suggested that ASARCO expose the SPCC shares to the marketplace and attract all-cash bids, but ASARCO, controlled by Grupo Mexico and AMC, made no effort to market the SPCC shares. *Id.* ¶ 38. No investment banker

2

was hired, and no inquiries were made to potential third-party purchasers who would have paid more to ASARCO (and entirely in cash) for the SPCC shares. *Id.* ¶ 7.

Both EYCF and Squire Sanders provided stern warnings to ASARCO about the consequences of proceeding with the transfer. For example, EYCF advised ASARCO's restructuring committee that that there was no apparent way to bridge cash flow and negative working capital deficits if ASARCO spent $100 million of the proceeds from the SPCC transaction to redeem bonds, as was contemplated by the package of consideration offered by Grupo Mexico and AMC. *Id.* ¶ 46. A later EYCF warning suggested that ASARCO might be unable to continue operations and would face a severe liquidity deficit if the SPCC transaction took place and the bonds were redeemed. *Id.* ¶ 52. Squire Sanders warned the ASARCO restructuring committee about several implications of the proposed stock transfer, including that ASARCO was at the very least within the zone of insolvency, if not actually insolvent, and that paying the bonds could give ASARCO's creditors a credible basis to challenge the SPCC transaction as a transfer made with actual intent to hinder, delay, and defraud ASARCO's creditors. *Id.* ¶ 53-54.

Undeterred, Grupo Mexico and AMC forced ASARCO to transfer its 54.2% ownership interest in SPCC to AMC over the objections of two independent directors, who resigned shortly before the transfer. *Id.* ¶¶ 62-64. EYCF also resigned shortly before the transfer. *Id.* ¶ 63. Although Grupo Mexico and AMC sought opinions about the value of ASARCO's interest in SPCC from numerous firms, not one confirmed at the time of the transfer the fairness of the consideration paid by AMC to ASARCO for the SPCC stock. Moreover, even though the consideration was said by Grupo Mexico and AMC to have a value of $765 million, after the proceeds from the transaction were applied at Grupo Mexico and AMC's direction, ASARCO

did not receive a nickel of immediately available funds to continue operations at a time when it was starved for cash. Instead, $450 million was used to retire Grupo Mexico's acquisition debt from its 1999 leveraged buyout of ASARCO; $100 million was paid into an environmental trust as part of an agreement with the federal government to which Grupo Mexico was a party; ASARCO received a $123 million note from AMC payable over seven years; $42 million was used to pay an intercompany debt; and $50 million was earmarked to retire bonds. *Id.* ¶ 43.

At the time of the fraudulent transfer, ASARCO held its shares in SPCC through Southern Peru Holdings, one of its wholly owned subsidiaries. As part of its scheme to obtain ASARCO's interest in SPCC, Grupo Mexico directed the formation of Southern Peru Holdings. Southern Peru Holdings had no business other than owning the SPCC shares in anticipation of the transfer to AMC. It was and is, for all purposes, a mere instrumentality, agent, and alter ego of ASARCO. All actions relating to the SPCC transfer were taken by ASARCO, and the substance of the transaction was a transfer from ASARCO to AMC. *Id.* ¶ 6.

## PROCEDURAL BACKGROUND

On October 15, 2004, Plaintiffs Phillip Nelson Burns, Mirjana Pavkovich, and Warren Elmer Halpap filed an action in New York state court against various defendants, including Grupo Mexico and AMC (the "State Court Action"). Plaintiffs asserted several claims against the defendants, alleging that they had systematically liquidated ASARCO through a number of fraudulent transactions, including the SPCC transfer, to the detriment of ASARCO's creditors.

On February 7, 2005, Plaintiffs filed their First Amended Verified Complaint in the State Court Action (the "State Court Amended Complaint"), attached to the Affidavit as Exhibit 2. Plaintiffs' First, Second, Third, Fourth, and Seventh Claims for Relief in the State Court Amended Complaint allege, among other things, that the transfer of ASARCO's interest in

SPCC to AMC was fraudulent under New York state law, and that Plaintiffs are entitled to judgment against Grupo Mexico.  Exhibit 2 ¶¶ 59, 64, 66-67, 70-81, 104-09.

On July 1, 2005, Grupo Mexico was served with the State Court Amended Complaint and a summons.  A copy of the Certificate of Service showing that Grupo Mexico was properly served with process in the State Court Action on July 1, 2005 is attached to the Affidavit as Exhibit 3.

On August 9, 2005, ASARCO filed a voluntary Chapter 11 petition for relief in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").  A copy of ASARCO's petition for relief is attached to the Affidavit as Exhibit 4.

On October 27, 2005, ASARCO filed a Notice of Bankruptcy in the State Court Action. As explained in the Notice of Bankruptcy, which is attached to the Affidavit as Exhibit 5, the State Court Action's prosecution was automatically stayed when ASARCO filed for bankruptcy, and ASARCO, as debtor in possession, gained the exclusive right to continue to pursue Plaintiffs' fraudulent transfer claims against Grupo Mexico.  Exhibit 5 ¶¶ 2-4.

On December 12, 2006, Southern Peru Holdings filed a voluntary Chapter 11 petition for relief in the Bankruptcy Court.  A copy of Southern Peru Holdings' petition for relief is attached to the Affidavit as Exhibit 6.  Southern Peru Holdings' bankruptcy case is being jointly administered with ASARCO's bankruptcy case.

On February 2, 2007, ASARCO initiated in the Bankruptcy Court an adversary proceeding against AMC seeking to avoid and recover the fraudulent transfer of its 54.2% ownership interest in SPCC to AMC (the "AMC Adversary Proceeding").  ASARCO and Southern Peru Holdings' First Amended Complaint, which added Southern Peru Holdings as a party to the AMC Adversary Proceeding, asserts six causes of action against AMC: (1) actual

fraudulent transfer; (2) constructively fraudulent transfer; (3) civil conspiracy; (4) breach of fiduciary duty; (5) aiding and abetting a breach of fiduciary duty; and (6) punitive damages. Exhibit 1 ¶¶ 77-117. It requests that the court (1) order AMC to deliver to ASARCO 54.2% of the outstanding shares of SPCC, or the value thereof, at the time of the final judgment; (2) award money damages to ASARCO for the dividends it would have received on the SPCC stock but for the fraudulent transfer; and (3) award ASARCO punitive damages, attorneys' fees, prejudgment and postjudgment interest, and costs. *Id.* at 33-34. The First Amended Complaint also alleges that Southern Peru Holdings was and is a mere instrumentality, agent, and alter ego of ASARCO that was formed at the direction of Grupo Mexico for the purpose of owning ASARCO's interest in SPCC and as part of Grupo Mexico and AMC's plan to perpetrate a fraud on ASARCO's creditors. *Id.* ¶ 6. Finally, it describes ASARCO and Southern Peru Holdings' plan to add Grupo Mexico as a party to the AMC Adversary Proceeding through the actions currently being taken in this Court. *Id.* ¶ 70-76.

On March 2, 2007, the reference to the Bankruptcy Court of the AMC Adversary Proceeding was withdrawn and the proceeding was transferred to the Honorable Andrew S. Hanen, United States District Judge for the Southern District of Texas. *See* the order transferring the AMC Adversary Proceeding, attached to the Affidavit as Exhibit 7.

The AMC Adversary Proceeding is well under way. Judge Hanen has denied a motion by AMC to stay all proceedings, *see* Exhibit 8 to the Affidavit; enjoined AMC and those in active concert or participation with it from transferring the SPCC stock, *see* Exhibits 8-9 to the Affidavit; established an expeditious discovery schedule, *see* Exhibit 10 to the Affidavit; granted in part a motion to compel discovery filed by ASARCO, *see* Exhibit 11 to the Affidavit; and allowed limited intervention by two creditors committees and a future claims representative. *See*

Exhibit 12 to the Affidavit. Trial in the AMC Adversary Proceeding is set for May 2008. *See*

Exhibit 10 to the Affidavit.

On June 20, 2007, ASARCO and Southern Peru Holdings filed an amended notice of

removal in this Court. Through the notice, ASARCO and Southern Peru Holdings removed from

the New York state court to this Court the claims relating to the fraudulent transfer of

ASARCO's interest in SPCC that were asserted against Grupo Mexico in Plaintiffs' First,

Second, Third, Fourth, and Seventh Claims for Relief in the State Court Amended Complaint.

## ARGUMENT

### I. THE COURT SHOULD SUBSTITUTE ASARCO AND SOUTHERN PERU HOLDINGS FOR PLAINTIFFS.

The Court should grant ASARCO and Southern Peru Holdings' Motion to Substitute

Plaintiffs because Plaintiffs' interest in this case has transferred to ASARCO and Southern Peru

Holdings and substitution would best facilitate the conduct of this case. Plaintiffs agree. Only

Grupo Mexico opposes substitution.

Rule 25 of the Federal Rules of Civil Procedure, which is made applicable to this case by

Rule 7025 of the Federal Rules of Bankruptcy Procedure, provides that where an interest in

litigation has been transferred, the Court may direct the person to whom the interest is transferred

to be substituted in the action or joined with the original party. Fed. R. Civ. P. 25(c); Fed. R.

Bankr. P. 7025(c). The Court has discretion to continue the action in its original posture, order

the substitution of the party to which the interest has been transferred, or join the transferee as a

party. *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1312 (2d Cir. 1996).

This decision should be made by considering which choice will best facilitate the conduct of the

lawsuit. *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 892 F. Supp. 347, 361 (D.N.H. 1995);

*FDIC v. Tisch*, 89 F.R.D. 446, 448 (E.D.N.Y. 1981).

**A.    Plaintiffs' Interest in this Case Has Transferred by Law to ASARCO and Southern Peru Holdings.**

ASARCO and Southern Peru Holdings—not Plaintiffs—are the real parties in interest in this case. When ASARCO filed for bankruptcy, Plaintiffs' fraudulent transfer claims against Grupo Mexico were automatically stayed, and ASARCO, as debtor in possession, gained the exclusive right to pursue those claims. Southern Peru Holdings also should be substituted for Plaintiffs because it was the conduit for the SPCC transaction and the validity of its separate corporate existence will be determined at the trial on the merits.

Upon ASARCO's bankruptcy filing, Plaintiffs' fraudulent transfer claims against Grupo Mexico were automatically stayed pursuant to 11 U.S.C. § 362(a)(1). Section 362(a)(1) provides that a voluntary bankruptcy petition "operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding . . . to recover a claim against the debtor that arose before the commencement of the [bankruptcy case]." 11 U.S.C. § 362(a)(1). The Second Circuit has held that regardless of whether the debtor is a defendant in the action, "a third-party action to recover fraudulently transferred property," such as the State Court Action, "is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362(a)(1)." *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 130-32 (2d Cir. 1992). The Second Circuit explained: "While a fraudulent transfer action may be an action against a third party, it is also an action to recover a claim against the debtor. Absent a claim against the debtor, there is no independent basis for the action against the transferee." *Id.* at 132.

At the time Plaintiffs' fraudulent transfer claims against Grupo Mexico were automatically stayed, ASARCO, as debtor in possession, gained the exclusive right to pursue those claims. The Southern District of New York has held: "It is clear that under U.S.

bankruptcy law, fraudulent conveyance claims based upon pre-bankruptcy petition transfers by a

debtor involve either property of the estate or claims against the debtor, and that in either case

the trustee has exclusive authority to maintain such actions." *United Feature Syndicate, Inc. v.*

*Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 222 (S.D.N.Y. 2002).

Through enactment of 11 U.S.C. § 544(b), Congress empowered debtors in possession,

such as ASARCO, to prosecute state law fraudulent transfer claims. The Southern District of

New York has held that § 544(b) "allows a bankruptcy trustee or a debtor in possession to assert

for the benefit of all creditors the rights that any individual creditor has under applicable state

law to avoid fraudulent transfers made prior to the filing of the bankruptcy petition." *Rahl v.*

*Bande*, 316 B.R. 127, 131 (S.D.N.Y. 2004).

Had ASARCO filed for bankruptcy before the State Court Action was filed, ASARCO,

as debtor in possession, would have had the exclusive authority to assert the fraudulent transfer

claims against Grupo Mexico in the State Court Amended Complaint because those claims seek

to avoid a transfer of ASARCO's property under state law.[1] That the State Court action was

filed before ASARCO filed for bankruptcy, and that ASARCO was not a named party in the

State Court Action, do not affect ASARCO's ability to prosecute the fraudulent transfer claims

against Grupo Mexico. As debtor in possession, ASARCO was entitled to do one of three

things: (1) intervene in the state court action; (2) remove the fraudulent transfer claims against

---

[1] *See Barber v. Westbay (In re Integrated Agri, Inc.)*, 313 B.R. 419, 427 (Bankr. C.D. Ill. 2004) ("[T]he commencement of bankruptcy gives the trustee the right to pursue recovery of fraudulently conveyed assets to the exclusion of all creditors."); *Girard v. Michener (In re Michener)*, 217 B.R. 263, 270 (Bankr. D. Minn. 1998) ("After bankruptcy filing, only the trustee has standing to exercise the avoidance power granted [in section 544(b) of the Bankruptcy Code]."); *Christensen v. St. Paul Bank for Coops. (In re Fulda Indep. Co-op)*, 130 B.R. 967, 977 (Bankr. D. Minn. 1991) ("[O]nly the trustee of [a debtor's] bankruptcy estate has standing to challenge pre-petition transfers of assets which otherwise would have passed into the bankruptcy estate . . . .").

Grupo Mexico; or (3) institute a separate adversary proceeding against Grupo Mexico in the Bankruptcy Court. *See Tabas v. Gigi Adver. P'ship (In re Kaufman & Roberts, Inc.)*, 188 B.R. 309, 314 (Bankr. S.D. Fla. 1995) (holding that trustee could intervene in state court fraudulent transfer action, remove the fraudulent transfer claims, or pursue those claims in a separate adversary proceeding).

Case law supports the removal of a state-court action by a debtor in possession that is not a named party in the action because the debtor in possession is the real party in interest. *See, e.g., Air Enters., Inc. v. Ohio Farmers Ins. Co. (In re Hughes-Bechtol, Inc.)*, 107 B.R. 552, 558 (Bankr. S.D. Ohio 1989) (noting that "the fact that Hughes-Bechtol is not presently a party in two of these State Court actions does not prevent removal of these actions"); *Aetna Cas. & Surety Co. v. Dauria (In re Pine Assocs.)*, 40 B.R. 683, 686 (Bankr. D. Conn. 1984) (allowing debtor, a non-party to a state-court indemnity proceeding, to remove a state-court action because "debtor could have intervened and been made a party in the state-court proceeding"); *Frankford Trust Co. v. Allanoff (In re Dublin Properties)*, 20 B.R. 616, 621 (Bankr. D. Pa. 1982) ("To hold that the debtor could not remove those proceedings to this court because it was not technically a party to those proceedings would be to exalt form over substance."), *rev'd in part on other grounds*, 29 B.R. 401 (E.D. Pa. 1983); *Cincinnati Milacron Marketing Co. v. Ramirez (In re Wesco Products Co.)*, 19 B.R. 908, 910 (Bankr. N.D. Ill. 1992) ("Though the Circuit Court action was originally removed by a non-party, Wesco, that mere technical defect does not mandate remand when the removing entity, though not a party, is a real party in interest in the removed action."); *Parenteau v. Bellucci (In re Bellucci)*, 9 B.R. 887, 889 (Bankr. D. Mass. 1981) ("It matters not that the trustee was not a party in interest in the state court suit, since it is clear that as that suit might affect the property of the estate, he is a party in interest.").

ASARCO, as debtor in possession and the real party in interest, chose to remove the fraudulent transfer claims against Grupo Mexico that seek to avoid and recover the transfer of ASARCO's interest in SPCC to AMC. The Court should substitute ASARCO for Plaintiffs so it can pursue those claims.

Southern Peru Holdings also should be substituted for Plaintiffs because Southern Peru Holdings was the conduit for the SPCC transaction. As part of its plan to perpetrate a fraud on ASARCO's creditors, Grupo Mexico directed ASARCO to form Southern Peru Holdings to hold and fraudulently transfer ASARCO's stock in SPCC. Southern Peru Holdings' central role in the accomplishment of the fraudulent transfer justifies substituting it for Plaintiffs. *See Falcon v. Scottsdale Ins. Co.*, No. CV-06-122-FVS, 2006 WL 2434227, at *3 (E.D. Wash. Aug. 21, 2006) ("Courts have approved discretionary joinder where there is a high degree of involvement by the [party] in the occurrence that gave rise to the plaintiff's cause of action.").

In addition, Southern Peru Holdings should be substituted for Plaintiffs because the validity of its separate corporate existence will be determined at the trial on the merits. ASARCO will prove at trial that Southern Peru Holdings was and is nothing more than its instrumentality, agent, and alter ego, and that as the equitable owner of the fraudulently transferred SPCC stock, ASARCO is entitled to recover the stock for the benefit of its creditors. *See Smith v. Richels (In re Richels)*, 163 B.R. 760, 762-64 (Bankr. E.D. Va. 1994) (holding that court could invoke the doctrine of piercing the corporate veil and disregard an alter ego's separate corporate existence, which would give the trustee access to the alter ego's assets and the requisite standing for the purpose of avoiding an allegedly fraudulent transfer).[2]

---

[2] *See also Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 120 (9th Cir. 1995) (noting that for debtor's creditors to avoid fraudulent transfer made by debtor's wholly owned corporation, "they had to penetrate two layers of fraud, the alter ego corporation, and the

**B.**    **Substituting ASARCO and Southern Peru Holdings for Plaintiffs Will Best Facilitate the Conduct of this Case.**

Substitution—not joinder or continuance of this action in its original posture—will best facilitate the conduct of this case.  Where, as here, the transferee (ASARCO) has exclusive authority to prosecute the claim and the transferors (Plaintiffs) retain no interest in the litigation, substitution is warranted.  *See FDIC v. Wrapwell Corp.*, 922 F. Supp. 913, 917 (S.D.N.Y. 1996) (ordering that transferee be substituted as plaintiff where all interest in the litigation was transferred); *AT&T Corp. v. Walker*, No. C04-5709 FDB, 2006 WL 828392, at *1 (W.D. Wash. March 23, 2006) (unpublished opinion) (granting trustee's motion to substitute plaintiffs as the real party in interest to prosecute fraudulent transfer action).  Substituting ASARCO and Southern Peru Holdings for Plaintiffs will allow ASARCO to prosecute this case for the benefit of all of its creditors, not just Plaintiffs.  Plaintiffs recognize this and do not oppose substitution.

Joinder is inappropriate.  Courts have opted for joinder over substitution where both the transferor and the transferee remained real parties in interest.  *See, e.g., Pacamor*, 892 F. Supp. at 359-61; *Tisch*, 89 F.R.D. 448.  That is not the case here.  The fact that ASARCO, as debtor in possession, is acting for the benefit of its creditors by prosecuting this case in no way defeats

---

fraudulent conveyance"); *Kendall v. Turner (In re Turner)*, 335 B.R. 140, 147 (Bankr. N.D. Cal. 2005) (holding that company created by debtor with no business purpose, but simply to shield assets from creditors, was debtor's alter ego, and, therefore, trustee could avoid fraudulent transfer made by company), *modified on reconsideration on other grounds*, 345 B.R. 674 (N.D. Cal. 2006); *Lindquist v. JNG Corp. (In re Lindell)*, 334 B.R. 249, 253 (Bankr. D. Minn. 2005) (holding that corporate veil could be pierced for purpose of avoiding sale of note by debtors' wholly owned corporation); *In re Altman*, 230 B.R. 6, 11–16 (Bankr. D. Conn. 1999) (piercing corporate veil of debtor's alter egos to set aside fraudulent transfers), *vacated in part on other grounds by Carroll v. Rafael Galleries, Inc. (In re Altman)*, 254 B.R. 509 (D. Conn. 2000); David B. Young, *Preferences and Fraudulent Transfers*, 895 PLI/Comm 713, 747-49 (2007) ("A debtor may not create a business entity that is merely an extension of the debtor and that has no purpose except to shield the debtor's assets and then cause that entity to make fraudulent or preferential transfers.  In such a case, courts will pierce the veil and regard the property transferred as the debtor's own assets.  The property or its value may then be recovered for the benefit of the debtor's estate.").

ASARCO and Southern Peru Holdings' status as the only real parties in interest. The real party in interest is the person holding the substantive right to be enforced, not the person who will ultimately benefit from the recovery. *Weiburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001); *Integrated Agri*, 313 B.R. at 427.

Finally, continuing this case in its original posture will not facilitate the conduct of this litigation. Plaintiffs have no right to continue to prosecute the fraudulent transfer claims asserted against Grupo Mexico in the State Court Amended Complaint. *See supra* Part I(A). Denying ASARCO and Southern Peru Holdings' Motion to Substitute Plaintiffs would halt, not facilitate, the conduct of this case, injuring ASARCO, its estate, and its creditors.

## II.    THE COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF TEXAS.

In the interest of justice and for the convenience of the parties, the Court should grant ASARCO and Southern Peru Holdings' Motion to Transfer Venue to the Southern District of Texas. Transfer would allow this case to be consolidated with the AMC Adversary Proceeding and Grupo Mexico to be tried alongside its wholly owned subsidiary, AMC. Transfer would also permit ASARCO and Southern Peru Holdings to prosecute the fraudulent transfer claims against Grupo Mexico in the district where their bankruptcy cases are being jointly administered.

### A.    Rule 7087 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 1412 Govern Transfer of this Case.

Rule 7087 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 1412 govern transfer of this case because it is a core proceeding that arises under the Bankruptcy Code.

Rule 7087 and § 1412 govern transfer of core proceedings that arise under the Bankruptcy Code. *See Tultex Corp. v. Freeze Kids, L.L.C.*, 252 B.R. 32, 35 (S.D.N.Y. 2000) ("[A]s the plain language of the statute suggests, § 1412 applies only to 'core' bankruptcy proceedings."). Rule 7087 provides, in pertinent part: "[T]he court may transfer an adversary

proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412." Fed. R. Bankr.

P. 7087. Section 1412, in turn, provides: "A district court may transfer a case or proceeding

under title 11 to a district court for another district, in the interest of justice or for the

convenience of the parties." 28 U.S.C. § 1412 (emphasis added).

This case is a core proceeding. A matter is core if it invokes a substantive right provided

by the Bankruptcy Code or is a proceeding that by its nature could only arise in the context of a

bankruptcy case. *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 109-10 (2d Cir. 2006). Section

157(b)(2)(F) of the Judicial Code provides that core proceedings include "proceedings to

determine, avoid, or recover fraudulent conveyances," such as this one, because those

proceedings invoke a substantive right provided by the Bankruptcy Code: the right to determine,

avoid, and recover fraudulent conveyances under the avoidance provisions in the Bankruptcy

Code, including 11 U.S.C. § 544. 28 U.S.C. § 157(b)(2)(F); *see Wedtech Corp. v. London, M.D.*

*(In re Wedtech Corp.)*, 81 B.R. 237, 239 (S.D.N.Y. 1987) ("[A]n action for fraudulent

conveyance is a core proceeding in bankruptcy court . . . ."). That the fraudulent transfer claims

against Grupo Mexico are founded on state substantive law is irrelevant. A fraudulent transfer

action, whether based on state or federal substantive law, is a core proceeding. *Wedtech*, 81 B.R.

at 239; *Moratzka v. Wencl (In re Wencl)*, 71 B.R. 879, 881-82 (D. Minn. 1987).

This case also arises under the Bankruptcy Code. Section 544(b)(1) of the Bankruptcy

Code provides, in pertinent part: "The trustee may avoid any transfer of an interest of the debtor

in property or any obligation incurred by the debtor that is avoidable under applicable law by a

creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). This provision allows

ASARCO, as debtor in possession, to assert for the benefit of all of its creditors the rights that

any individual creditor has under applicable state law to avoid fraudulent transfers made prior to

the filing of ASARCO's bankruptcy petition. *Rahl*, 316 B.R. at 131. Absent this provision in the Bankruptcy Code, ASARCO would lack standing to continue to prosecute the fraudulent transfer claims against Grupo Mexico. Accordingly, this case arises under the Bankruptcy Code. *See Pereira v. Sonia Holdings, Ltd. (In re Artha Mgmt., Inc.)*, 91 F.3d 326, 328 (2d Cir. 1996) (holding that trustee's fraudulent conveyance and preference claims arose under title 11); *Rahl*, 316 B.R. at 132 (holding that litigation trust's fraudulent conveyance claim arose under title 11); *Minhlong Enters., Inc. v. New York Int'l Hostel, Inc. (In re New York Int'l Hostel, Inc.)*, 142 B.R. 90, 94 (Bankr. S.D.N.Y. 1992) ("Actions to recover fraudulent transfers [and] avoiding actions brought under section 544(b) of the Code . . . . arise under title 11 . . . ."), *rev'd in part on other grounds*, 157 B.R. 748 (S.D.N.Y. 1993).

Rule 7087 and § 1412 therefore govern transfer of this case. The decision of whether to grant or deny ASARCO and Southern Peru Holdings' Motion to Transfer Venue under Rule 7087 and § 1412 is within the Court's discretion. *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990); *Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 638 (Bankr. S.D.N.Y. 2004). This decision should be made by considering whether transfer of venue is in the "interest of justice" or would further the "convenience of the parties." 28 U.S.C. § 1412.

**B.      Transferring this Case to the Southern District of Texas Is in the Interest of Justice and Would Further the Convenience of the Parties.**

Transferring this case to the Southern District of Texas both is in the interest of justice and would further the convenience of the parties. Because § 1412 is phrased in the disjunctive, however, the Court need only find that transfer either is in the interest of justice or would further the convenience of the parties. *Enron*, 317 B.R. at 637. If the Court determines that transfer of venue is in the interest of justice, then the inquiry can end there. Likewise, if the Court finds that

transfer of venue is warranted for the convenience of the parties, then that finding alone would be sufficient. *Id.*

Transferring this case to the Southern District of Texas is in the interest of justice. The phrase "interest of justice" is not defined in § 1412. Courts have called it "an elusive term not easily amenable to definition." *In re Emerson Radio Corp.*, 173 B.R. 490, 495 (D.N.J. 1994) (quotations omitted). In analyzing the interest of justice component, however, the Second Circuit has stated that "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *Manville*, 896 F.2d at 1391. Courts in the Second Circuit also have recognized a "strong presumption in favor of the plaintiff's choice of forum." *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 750 (S.D.N.Y. 2004) (quotations omitted); *see also Enron*, 317 B.R. at 647 ("A debtor's choice of forum is entitled to great weight if venue is proper." (quotations omitted)).

Here, both presumptions favor granting ASARCO and Southern Peru Holdings' requested transfer to the Southern District of Texas. First, ASARCO and Southern Peru Holdings' bankruptcy cases are being jointly administered in the Southern District of Texas. Second, ASARCO and Southern Peru Holdings, as the real parties in interest in this case, have chosen the Southern District of Texas as the proper forum for adjudication of this case.

This is not a case of "forum shopping." ASARCO and Southern Peru Holdings' first and only choice of forum is the Southern District of Texas. Removing this case to this Court and immediately seeking to transfer it to the Southern District of Texas was merely the procedural route ASARCO and Southern Peru Holdings were required to follow in accordance with the applicable statutes and rules. *See Certain Underwriters at Lloyd's London v. ABB Lummus*

16

*Global, Inc.*, No. 03 Civ. 7248 (JGK), 2004 WL 224505, at *3 (S.D.N.Y. Feb. 5, 2004) (unpublished opinion) (noting that defendants filed notice of removal in the District Court of New York to facilitate transfer of claims to the District Court for the District of Delaware); *Aztec Indus., Inc. v. Standard Oil Co. (In re Aztec Indus., Inc.)*, 84 B.R. 464, 467 (Bankr. N.D. Ohio 1987) ("Plaintiffs removal of the state court action to this District, in order to transfer the case to the Bankruptcy Court for the Northern District of Oklahoma, appears to be the correct procedural approach."); Lawrence P. King, 10 *Collier on Bankruptcy* ¶ 9027.01 (15th ed. rev.) ("Under section 1452(a), the claim or cause of action will be removed to the district in which the civil action (not necessarily the title 11 case) is pending. . . . Any party may move to change venue, a motion most frequently made when the court to which the suit was removed is not the court in which the bankruptcy case is pending.").

In addition to considering the presumptions in favor of an adversary proceeding being heard in the district in which the underlying bankruptcy case is pending and the plaintiff's choice of forum, courts in the Second Circuit have considered the following factors in determining whether transfer of an adversary proceeding would be in the interest of justice:

1.  whether transfer would promote the economic and efficient administration of the bankruptcy estate;

2.  whether the interests of judicial economy would be served by the transfer;

3.  whether the parties would be able to receive a fair trial in each of the possible venues;

4.  whether either forum has an interest in having the controversy decided within its borders;

5.  whether the enforceability of any judgment would be affected by the transfer; and

6.  whether the plaintiff's original choice of forum should be disturbed.

*See, e.g., Enron*, 317 B.R. at 639.

The most important factor is "whether the transfer would promote the economic and efficient administration of the bankruptcy estate." *Id.* at 640, 642. This factor weighs heavily in favor of transferring this case to the Southern District of Texas. The AMC Adversary Proceeding, which involves the same fraudulent transfer, the same lawyers on both sides, the same governing law, and related parties, is pending and set for trial in the Southern District of Texas. In addition, another fraudulent transfer action brought by ASARCO is pending in the Bankruptcy Court and more may follow. If this case is not transferred, ASARCO and Southern Peru Holdings' company representatives and attorneys would be forced to litigate the same claims against related parties both in Texas and New York, increasing dramatically the burdens and costs ASARCO and Southern Peru Holdings are already shouldering. ASARCO and Southern Peru Holdings, as debtors in possession, are jointly administering complex bankruptcy cases in the Bankruptcy Court. Enabling them to litigate all disputes in the Southern District of Texas would expedite their bankruptcy proceedings for all parties in interest. It would be woefully inefficient to the administration of the bankruptcy estates, and ultimately harmful to creditors, to try this case in New York. *See Frazier v. Lawyers Title Ins. Corp. (In re Butcher)*, 46 B.R. 109, 113 (N.D. Ga. 1985) (transferring adversary proceeding to the district where the underlying bankruptcy case was pending because transfer would promote the economic and efficient administration of the bankruptcy estate).

Judicial efficiency would also best be served by transfer. The fraudulent transfer claims against Grupo Mexico in this case and those against AMC in the AMC Adversary Proceeding are all based on the transfer of ASARCO's 54.2% interest in SPCC to AMC. The Southern District of New York has stated: "Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery

18

and avoids duplicitous litigation and inconsistent results." *Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 425 F. Supp. 665, 667 (S.D.N.Y. 1977).  Grupo Mexico seeks to force ASARCO and Southern Peru Holdings to try the fraudulent transfer claims twice: once in the Southern District of Texas, and again in this Court.  There is no justification for causing ASARCO and Southern Peru Holdings to prove their case twice to two different judges in two different districts halfway across the country from one another.  Transfer for joint pretrial discovery and a consolidated trial is necessary in order to prevent duplicative discovery, eliminate the possibility of conflicting pretrial rulings, and conserve the time of the parties and the judiciary.

Transfer would also serve judicial efficiency because Judge Hanen is familiar with the facts underlying the fraudulent transfer claims asserted against Grupo Mexico.  The Second Circuit has recognized that whether a particular court has developed a substantial "learning curve" is a factor in determining whether judicial efficiency would be promoted by transfer. *Manville*, 896 F.2d at 1391; *see also Kenwin Shops, Inc. v. Bank of Louisiana D&A Funding Corp.*, No. 97 Civ. 907 (LMM), 1999 WL 294800, at *4 (S.D.N.Y. May 11, 1999) (granting motion to transfer in part because the transferee judge was "more familiar with the litigation").

All of the remaining factors under the heading of interest of justice either favor or do not weigh against transfer.  First, all of the parties will be able to obtain a fair trial in the Southern District of Texas.  Second, this Court does not have an overriding interest in having this case decided within its jurisdiction.  Even if New York law were to apply to the fraudulent transfer claims against Grupo Mexico, "federal courts routinely apply the law of other jurisdictions." *Enron*, 317 B.R. at 645; *see also Heyman*, 306 B.R. at 750-51 (stating that the factor relating to the forum's familiarity with the applicable law favored neither party because the two federal

courts at issue were equally familiar with the legal principles necessary to resolve the case). Finally, the enforceability of any judgment would not be affected by the transfer.

Transfer of this case to the Southern District of Texas is therefore in the interest of justice. Even if that were not true, convenience of the parties alone would warrant transfer. In that regard, courts in the Second Circuit have considered:

1.  the location of the plaintiff and the defendant;

2.  the ease of access to the necessary proof;

3.  the convenience of the witnesses and the parties and their relative physical and financial condition;

4.  the availability of the subpoena power for unwilling witnesses; and

5.  the expense of obtaining unwilling witnesses.

*Enron*, 317 B.R. at 639.

While the last two factors neither favor nor weigh against transfer of this case to the Southern District of Texas, the first three factors support transfer. First, Texas is closer than New York to both Arizona, where ASARCO and Southern Peru Holdings' principal place of business is located, and Mexico, where Grupo Mexico's principal place of business is purportedly located. *See* Affidavit ¶ 19. Second, most of the documents will likely be produced from Arizona and Mexico. *Id.* ¶ 20. Finally, a majority of the witnesses likely reside or work in Arizona or Mexico. *Id.* ¶ 21.

**C.  The Court May Transfer this Case to the Southern District of Texas Without First Deciding Grupo Mexico's Motion to Dismiss for Lack of Personal Jurisdiction.**

The Court may transfer this case to the Southern District of Texas without first deciding whether personal jurisdiction is proper in the Southern District of New York. Your Honor recently held that "[a] district court is authorized to rule on a motion to transfer venue even if [it

has] no personal jurisdiction over the defendants." *Blum v. Saloman*, No. 06 CV 3149 (WHP), 2006 WL 3851157, at *1 n.1 (S.D.N.Y. Dec. 28, 2006) (Pauley, J., unpublished opinion). The decision in *Blum* is supported by a number of opinions from courts in the Second Circuit. *See Corke v. Sameiet M.S. Song*, 572 F.2d 77, 80 (2d Cir. 1978) (holding that the power to transfer is not dependent upon the jurisdiction of the transferor court).[3]

The Court may also transfer this case to the Southern District of Texas without first deciding whether personal jurisdiction or venue is proper in the Southern District of Texas. Section 1412 of the Judicial Code, which governs transfer of this case, is different than 28 U.S.C. § 1404, the general transfer statute. Section 1404(a) provides that a district court may transfer a case only to a district "where it might have been brought," *i.e.*, to a district where jurisdiction and venue are proper. *See Kenwin Shops*, 1999 WL 294800, at *2 ("It is true, in the Second Circuit at least, that a district court cannot transfer an action to another district pursuant to 28 U.S.C. § 1404(a) when the defendant in the case could not have been subjected to personal jurisdiction in the proposed transferee district, because in such a case it cannot be said that the action 'might have been brought' in the transferee district."). Section 1412, by contrast, provides that the Court may transfer an adversary proceeding or any part thereof to "another district"—

---

[3] *See also Posven v. Liberty Mutual Ins. Co.*, 303 F. Supp. 2d 391, 400 n.3 (S.D.N.Y. 2004) ("[T]he lack of personal jurisdiction over third-party defendant POSEC does not affect the Court's ability to transfer the case."); *Sheet Metal Workers' Nat'l Pension Fund v. Gallagher*, 669 F. Supp. 88, 91 (S.D.N.Y. 1987) ("Whether there is personal jurisdiction over the defendants, and whether venue is proper in this district, raise substantial questions. However, the court need not resolve them, since it is clear that the court has power to transfer the case even if there is no personal jurisdiction over the defendants and whether or not venue is proper in this district."); *Matra Et Manurhin v. Int'l Armament Co.*, 628 F. Supp. 1532, 1534 n.2 (S.D.N.Y. 1986) ("Although defendants have moved to dismiss for lack of personal jurisdiction and for improper venue, it is clear that the Court has power to transfer the case even if there is no personal jurisdiction over the defendants and whether or not venue is proper in this district."); *Volk Corp v. Art-Pak Clip Art Serv.*, 432 F. Supp. 1179, 1180-81 (S.D.N.Y. 1977) (holding that a court "has power to transfer [a] case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district").

any other district—"in the interest of justice or for the convenience of the parties." 28 U.S.C.

§ 1412; *see Ni Fuel Co., Inc. v. Jackson*, 257 B.R. 600, 623 (N.D. Okla. 2000) ("The main

difference between § 1404 and § 1412 is that § 1404 provides that the action may be transferred

'to any other district or division where it might have been brought.'"); Lawrence P. King, 10

*Collier on Bankruptcy* ¶ 4.04[5][a] (15th ed. rev.) ("It should be noted that there is no

requirement in section 1412 as there is in 28 U.S.C. § 1404(a), that transfer must be to a district

in which the proceeding could originally have been brought; transfer may be to 'the district court

for another district'—any other district—as the relevant statutory standards dictate.").

The Third Circuit has stated that § 1412's omission of the phrase "where it might have

been brought" is "significant" and "must have been intentional." *In re Emerson Radio Corp.*, 52

F.3d 50, 55 (3d Cir. 1995). That phrase can "thwart transfer" under § 1404(a). *Dunlap v.

Friedman's, Inc.*, 331 B.R. 674, 678 (S.D. W. Va. 2005). Congress purposefully omitted the

phrase in § 1412 to enable courts to freely transfer adversary proceedings to the districts where

their related bankruptcy cases are pending. *See id.* (suggesting that § 1404(a)'s jurisdictional and

venue prerequisites would "dilute the well-settled presumption that [an adversary proceeding]

should be litigated in the 'home court'").

It is true that the Supreme Court has stated that "[t]he question of personal jurisdiction,

which goes to the court's power to exercise control over the parties, is typically decided in

advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great

Western United Corp.*, 443 U.S. 173, 180 (1979) (emphasis added). The Supreme Court has

held, however, that because "neither personal jurisdiction nor venue is fundamentally

preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the

defendant, rather than absolute strictures on the court, and both may be waived by the parties,"

"when there is a sound prudential justification for doing so, . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Id.* The Supreme Court found that such a justification existed in *Leroy* because, while the question of personal jurisdiction was "difficult," it was clear that venue was improper. *Id.* at 180-81.

"Following *Leroy*, several courts in [the Southern District of New York] have decided the issue of venue before personal jurisdiction . . . ." *Insight Data Corp. v. First Bank Sys., Inc.*, No. 97 CIV 4896 (MBM), 1998 WL 146689, at *2 (S.D.N.Y. March 25, 1998) (collecting cases). The Court should do the same here. Whether personal jurisdiction here is complex or not, the question of whether this case should be transferred to the Southern District of Texas is straightforward. Grupo Mexico's challenge to personal jurisdiction can and should be decided by Judge Hanen after transfer.

Even if this Court were required to determine that the Southern District of Texas is a district where this case might have been brought, the requirements of personal jurisdiction and proper venue are met. The Southern District of Texas has general personal jurisdiction over Grupo Mexico pursuant to Rule 7004(f) of the Federal Rules of Bankruptcy Procedure because Grupo Mexico has been served with process in accordance with Rule 7004 and established minimum contacts with the United States as a whole. *See Enron Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 444 (Bankr. S.D.N.Y. 2004) ("[C]ourts have recognized in federal question cases that no inquiry into a defendant's 'minimum contacts' with the forum state is needed to exercise jurisdiction pursuant to Bankruptcy Rule 7004; rather, only a federal 'minimum contacts' test is required, whereby the Fifth Amendment's Due Process Clause limits a bankruptcy court's exercise of personal jurisdiction over a defendant."). The Southern District of Texas also has specific personal jurisdiction over Grupo Mexico because Grupo Mexico was a

primary participant in the SPCC transfer, which was expressly directed at the United States and caused injury in the United States. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (holding that a court may exercise personal jurisdiction over a defendant consistent with due process when the defendant is a primary participant in intentional wrongdoing—albeit extraterritorially—expressly directed at the forum).

Venue is also proper in the Southern District of Texas. Venue of proceedings arising under the Bankruptcy Code is determined by 28 U.S.C. § 1409, which provides, in pertinent part: "[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a). As demonstrated in Part II(A), *supra*, this case arises under the Bankruptcy Code. Accordingly, venue is proper in the Southern District of Texas, the district where ASARCO and Southern Peru Holdings' bankruptcy cases are pending.

### D.     The Court May Transfer this Case to the Southern District of Texas Without First Deciding Grupo Mexico's Motion to Dismiss for Improper Service.

The Court may also transfer this case to the Southern District of Texas without first deciding whether service of process on Grupo Mexico was proper. *See Torres v. Torres*, 603 F. Supp. 440, 441 & n.2 (E.D.N.Y. 1985) (stating that the court did not have to decide whether service was proper in view of its decision to transfer the case). The Judicial Panel on Multidistrict Litigation addressed this precise issue in *In re Sinking of the Motor Vessel Ukola*, 462 F. Supp. 385 (J.P.M.L. 1978). The opponents of transfer in that case contended that until pending motions to quash service of process and to dismiss for lack of personal jurisdiction were resolved, transfer would be premature. *Id.* at 387. The Panel rejected this argument, stating: "The pendency . . . of certain motions to quash service of process and to dismiss serves as no impediment to immediate transfer in this litigation. These motions can be presented to and

24

decided by the transferee judge following transfer." *Id.* The same is true here.

Even if this Court were required to determine the validity of service of process, the Certificate of Service attached to the Affidavit as <u>Exhibit 3</u> is prima facie evidence that Grupo Mexico was properly served on July 1, 2005 pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1389 (8th Cir. 1995) ("The Spanish Central Authority's return of a completed certificate of service is prima facie evidence that the Authority's service on [the defendant] was made in compliance with the Convention."); *In re Vitamins Antitrust Litig.*, No. MISC 99-197 (TFH), 2001 WL 34088810, at *1 (D.D.C. March 9, 2001) ("The fact that the Japanese Central Authority deemed the submission adequate and provided the . . . plaintiffs with a certificate of service constitutes prima facie evidence of compliance with the Hague Convention procedures.").

## CONCLUSION

For these reasons, ASARCO and Southern Peru Holdings respectfully request that the Court (1) enter an order directing that ASARCO and Southern Peru Holdings be substituted for Plaintiffs as plaintiffs in the above-captioned proceeding; (2) enter an order transferring this case to the United States District Court for the Southern District of Texas; and (3) grant such other relief as the Court may deem just and equitable.

Dated:  June 26, 2007                                  Respectfully submitted,

| | |
|---|---|
| **BAKER BOTTS L.L.P.**<br><br>*/s/ G. Irvin Terrell, Jr.*<br>G. Irvin Terrell, Jr. (GT-3459)<br>Attorney-in-Charge<br>Texas State Bar No. 19794500<br>Samuel Cooper<br>Texas State Bar No. 00792427<br>Michael Massengale<br>Texas State Bar No. 24003704<br>Rebeca Huddle<br>Texas State Bar No. 24012197<br>910 Louisiana Street<br>One Shell Plaza<br>Houston, Texas  77002-4995<br>Telephone:  713.229.1231<br>Facsimile:   713.229.2831<br>Email:  *irv.terrell@bakerbotts.com*<br>        *samuel.cooper@bakerbotts.com*<br>        *michael.massengale@bakerbotts.com*<br>        *rebeca.huddle@bakerbotts.com*<br><br>-and-<br><br>**BAKER BOTTS L.L.P.**<br>Jack L. Kinzie<br>Texas State Bar No. 11492130<br>Fernando Rodriguez<br>Texas State Bar No. 24005048<br>Eric A. Söderlund<br>Texas State Bar No. 24037525<br>Thomas E. O'Brien<br>Texas State Bar No. 24046543<br>2001 Ross Avenue<br>Dallas, Texas 75201-2980<br>Telephone:  214.953.6500<br>Facsimile:   214.661.6503<br>Email: *jack.kinzie@bakerbotts.com*<br>        *fernando.rodriguez@bakerbotts.com*<br>        *eric.soderlund@bakerbotts.com*<br>        *tom.obrien@bakerbotts.com* | **JORDAN, HYDEN, WOMBLE CULBRETH & HOLZER,  P.C.**<br><br>Shelby A. Jordan<br>Texas State Bar No. 11016700<br>Suite 900, Bank of America<br>500 North Shoreline<br>Corpus Christi, Texas 78471<br>Telephone:  361.884.5678<br>Facsimile:   361.888.5555<br>Email: *sjordan@jhwclaw.com*<br><br>-and-<br><br>**JORDAN, HYDEN, WOMBLE CULBRETH & HOLZER,  P.C.**<br><br>Michael J. Urbis<br>Texas State Bar No. 20414130<br>1534 E. 6th Street, Suite 104<br>Brownsville, Texas 78520<br>Telephone:  956.542.1161<br>Facsimile:   956.542.0051<br>Email: *murbis@jhwclaw.com*<br><br>**COUNSEL TO ASARCO LLC AND SOUTHERN PERU HOLDINGS, LLC** |

## CERTIFICATE OF SERVICE

I certify that on June 26, 2007, the foregoing document was served via overnight delivery service and email on the following counsel:

BARON & BUDD
Alan B. Rich, Esq.
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
(214) 520-1181 (facsimile)
*arich@baronbudd.com*

**ATTORNEYS FOR PLAINTIFFS**
**PHILLIP NELSON BURNS,**
**MIRJANA PAVKOVICH,**
**and WARREN ELMER HALPAP**

MILBANK, TWEED, HADLEY & McCLOY LLP
David R. Gelfand, Esq.
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
(212) 530-5219 (facsimile)
*dgelfand@milbank.com*

MILBANK, TWEED, HADLEY & McCLOY LLP
David S. Cohen
1850 K Street, NW
Suite 1100
Washington, D.C. 20006
(202) 835-7500
(202) 835-7586 (facsimile)
*dcohen2@milbank.com*

**ATTORNEYS FOR DEFENDANT**
**GRUPO MEXICO, S.A. de C.V.**

*/s/ G. Irvin Terrell, Jr.*
G. Irvin Terrell, Jr. (GT-3459)