UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and Warren
Elmer Halpap,

                    Plaintiffs,

            -against-

GRUPO MÉXICO, S.A. de C.V., a Mexican
Corporation,

               Defendant.

---

Case No. 1:07-CV-3496(WHP)

**DEFENDANT GRUPO MÉXICO, S.A. DE C.V.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REMAND OR, IN THE ALTERNATIVE, TO DISMISS THE AMENDED COMPLAINT FOR IMPROPER SERVICE AND LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................... i

PRELIMINARY STATEMENT ............................................................................. 1

PROCEDURAL HISTORY ..................................................................................... 2

STATEMENT OF FACTS ....................................................................................... 5

ARGUMENT ............................................................................................................ 7

I.      GRUPO MÉXICO WAS NOT PROPERLY SERVED IN THE BURNS
        LITIGATION ................................................................................................ 7

II.     BECAUSE ASARCO'S PURPORTED REMOVAL WAS IMPROPER, THE
        ACTION SHOULD BE REMANDED. ....................................................... 8

        A.      A Non-Party Has No Authority to Remove in a Bankruptcy Proceeding ............ 8

        B.      ASARCO's Removal Is Blatantly Deficient ................................................ 9

III.    GRUPO MÉXICO IS NOT SUBJECT TO PERSONAL JURISDICTION IN
        NEW YORK ................................................................................................. 11

        A.      Grupo México Has Not Consented to Jurisdiction ................................ 12

        B.      Grupo México is Not Subject to General Jurisdiction in New York ................. 13

        C.      Grupo México Has Not Engaged in Any Purposeful Activity in New York
                Sufficient to Subject it to Specific or "Long-Arm" Jurisdiction .................. 15

                1.      ASARCO's Claims Do Not Arise Out of Grupo México's
                        Transaction of Business in New York ........................................ 15

                2.      Grupo México Has Not "Transacted Business" in New York Under
                        N.Y.C.P.L.R. § 302(a)(1) .......................................................... 17

                3.      Grupo México Has Not Committed A Tortious Act Within the
                        State Under N.Y.C.P.L.R. 302(a)(2) ......................................... 18

                4.      Grupo México Has Not Committed a Tortious Act Causing Injury
                        to Person or Property Within New York .................................... 19

        D.      Jurisdiction Over Grupo México's Subsidiaries Cannot Be Imputed to
                Grupo México ............................................................................................ 20

IV.    GRUPO MÉXICO IS NOT SUBJECT TO PERSONAL JURISDICTION IN TEXAS.................................................................................................................. 21

CONCLUSION............................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alpine View Co. v. Atlas Copco A.B.*,
  205 F.3d 208 (5th Cir. 2000) ................................................................................ 24

*Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*,
  70 F. Supp. 2d 296 (S.D.N.Y. 1999) ...................................................................... 9

*Ball v. Metallurgie Hoboken-Overpelt*, S.A.,
  902 F.2d 194 (2d Cir.) *cert. denied*, 498 U.S. 854 (1990) .................................... 21

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  171 F.3d 779 (2d Cir. 1999), *vacated*, 305 F.3d 120 (2d Cir. 2002) ............... 12, 20

*Bensusan Rest. Corp. v. King*,
  126 F.3d 25 (2d Cir. 1997) .................................................................................... 20

*Buechner v. Avery*, No. 05 Civ. 2074 (PKC),
  2005 WL 3789110 (S.D. N.Y. 2005) ....................................................................... 9

*Burns v. Grupo México S.A. de C.V.*,
  No. 0114728/04 (Sup. Ct. New York County Oct. 15, 2004) ............................. 1, 4

*ComJet Aviation Mgmt. LLC v. Aviation Investors Holdings Ltd.*,
  303 A.D.2d 272 (N.Y. App. Div. 2003) ................................................................ 14

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
  422 F. Supp. 2d 357 (S.D.N.Y. 2006) ..................................................................... 9

*First Nat'l Bank & Trust Co. v. Wilson*,
  567 N.Y.S.2d 468 (App. Div. 1991) ...................................................................... 14

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
  485 N.E.2d 208 (N.Y. 1985) .................................................................................. 14

*Frummer v. Hilton Hotels Int'l, Inc.*,
  227 N.E.2d 851 (N.Y.), *cert. denied*, 389 U.S. 923 (1967) .................................. 22

*Geiger v. Artco Enter., Inc.*,
  910 F. Supp. 130 (S.D.N.Y. 1996) ........................................................................... 8

*Hesseman v. Arthur Andersen (In re Global Crossing, Ltd. Sec. Litig.)*,
  Nos. 02 Civ. 910 GEL, 02 Civ. 10199 GEL, 2003 WL 21659360 (S.D.N.Y.
  July 15, 2003) .......................................................................................................... 8

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  No. 1:00-1898, MDL 1358 (SAS), 14 21-88, 2006 WL 1004725 (S.D.N.Y.
  Apr. 17, 2006) ........................................................................................................ 12

*In re Ski Train Fire in Kaprun, Austria*,
  230 F. Supp. 2d 403 (S.D.N.Y. 2002) .............................................................. 15, 19

*Int'l Telecom, Inc. v. Generadora Electrica del Oriente, S.A.,*
   No. 00 Civ. 8695(WHP), 2002 WL 465291 (S.D.N.Y. Mar. 27, 2002) ............................ 16

*Jazini v. Nissan Motor Co.,*
   148 F.3d 181 (2d Cir. 1998) ................................................................................... 22, 23

*Light v. Taylor,*
   No. 05 Civ 5003 (WHP), 2007 WL 274798 (S.D.N.Y. Jan. 29, 2007) ........................ 19, 21

*Maranga v. Vira,*
   386 F. Supp. 2d 299 (S.D.N.Y. 2005) ................................................................................ 20

*Marathon Oil Co. v. A.G. Ruhrgas,*
   182 F.3d 291 (5th Cir. 1999) ............................................................................................. 25

*Martinez v. Servicios de Transportacion, M.G., S.A. de C.V.,*
   No. L-05-60, 2007 WL 543411 (S.D. Tex. Feb. 15, 2007) ................................................ 25

*McKee Elec. Co. v. Rauland-Borg Corp.,*
   229 N.E.2d 604 (N.Y. Ct. App. 1967) ............................................................................... 19

*McShan v. Omega Louis Brandt et Frere, S.A.,*
   536 F.2d 516 (2d Cir. 1976) .............................................................................................. 14

*Newman & Cahn, LLP v. Sharp,*
   388 F. Supp. 2d 115 (E.D.N.Y. 2005) ................................................................................. 8

*Norben Imp. Corp. v. Metro. Plant & Flower Corp.,*
   No. 03 Civ. 8660 (WHP), 2004 WL 2378295 (S.D.N.Y. Oct. 25, 2004) ................ 12, 13, 17

*Norkin v. DLA Piper Rudnick Gray Cary, LLP,*
   No. 05 Civ. 9137 (DLC), 2006 WL 839079 (S.D.N.Y. 2006) .............................................. 9

*NSM Music, Inc. v. Alvarez,*
   No. 2 C 6482, 2003 WL 685338 (ND Ill. Feb. 25, 2003) ..................................................... 7

*Official Comm. of Unsecured Creditors v. Transpacific Corp. (In re Commodore Int'l, Ltd.),*
   242 B.R. 243 (Bankr. S.D.N.Y. 1999) ......................................................................... 15, 18

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
   253 F.3d 865 (5th Cir. 2001) ............................................................................................. 24

*R & B Falcon Drilling (Int'l & Deepwater), Inc. v. Noble Denton Group,*
   91 Fed. App'x 317 (5th Cir. 2004) .................................................................................... 23

*Revell v. Lidov,*
   317 F.3d 467 (5th Cir. 2002) ............................................................................................. 24

*Things Remembered, Inc. v. Petrarca,*
   516 U.S. 124 (1995) ............................................................................................................ 8

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,*
   751 F.2d 117 (2d Cir. 1984) .............................................................................................. 23

*Waldorf Assocs, Inc. v. Neville*,
   533 N.Y.S.2d 182 (Sup. Ct. 1988) *aff'd*, 547 N.Y.S.2d 556 (App. Div. 1989)................... 14

## **STATUTES**

28 U.S.C. § 1441 ................................................................................................................ 9

28 U.S.C. § 1452(a) ..................................................................................................... 8, 10

28 U.S.C. §1446(a) ............................................................................................................ 8

N.Y.C.P.L.R. § 301 ............................................................................................... 12, 14, 15

N.Y.C.P.L.R. § 302 ................................................................................................... 12, 15

N.Y.C.P.L.R. § 302(a) .............................................................................................. 15, 16

N.Y.C.P.L.R. § 3025(a) .................................................................................................... 4

## **OTHER AUTHORITIES**

1 Norton Bankr. L. & Prac. 2d § 7:1 (2007) ..................................................................... 8

Hague Convention on the Service Abroad of Judicial and Extra-Judicial
   Documents in Civil or Commercial Matters, 20 U.S.T. 1361 ........................................ 7, 8

Tex. Civ. Prac. & Rem. Code § 17.042 (West 2000) ...................................................... 22

## **RULES**

Fed. R. Civ. P. 12(b)(2)................................................................................................ 2, 22

Fed. R. Civ. P. 12(b)(5)................................................................................................... 7

## PRELIMINARY STATEMENT

This lawsuit originally was filed in the Supreme Court of the State of New York, County of New York on or about October 15, 2004, against Grupo México, S.A. de C.V., *et al*. ("Grupo México"), several of its subsidiaries, a number of its banks and advisors, and several of its directors. *See Burns v. Grupo México S.A. de C.V.*, No. 0114728/04 (Sup. Ct. New York County Oct. 15, 2004) (the "Burns Litigation" or "Burns").  The Burns Litigation was initiated by potential unsecured creditors of subsidiaries of ASARCO LLC ("ASARCO") on their own behalf who sought to recover from Grupo México, and others, funds they believed were due and owing to them in connection with certain specified transactions, including the November 1999 leveraged buyout of ASARCO by Grupo México.  ASARCO was not and is not a party to the Burns Litigation.  Nonetheless, ASARCO has attempted to remove five causes of action asserted in the Burns Litigation to this Court.

The Burns Litigation should be dismissed on a number of grounds.[1]  First, Grupo México, a Mexican corporation, has not properly been served in this litigation.  Second, because ASARCO is not a party to the Burns Litigation, ASARCO lacks standing to remove any claims to this Court.  Moreover, even if ASARCO could remove claims to this Court, Grupo México is not subject to personal jurisdiction in New York.  Accordingly, this Court must either dismiss the claims against Grupo México in their entirety for improper service and lack of personal

---

[1]    This motion is made pursuant to the Scheduling Conference held before this Court on June 15, 2007 and the accompanying Scheduling Order No. 1.  Accordingly, by making this motion Grupo México does not intend to waive any other defenses available to it, including failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or remand this case to New York state court.[2]

## PROCEDURAL HISTORY

Plaintiffs[3] filed the Complaint in the Burns Litigation seeking to set aside several allegedly fraudulent transfers of ASARCO's assets. Of all the transactions challenged in the Burns Litigation, Grupo México was directly involved in only one – the leveraged buyout of ASARCO in November 1999 (the "LBO"). Included among the alleged fraudulent transfers was the March 31, 2003 sale of a 54.2% ownership interest in the entity then known as Southern Peru Copper Corporation ("SPCC") (the "SCC Shares") to its parent, Americas Mining Corporation ("AMC"). AMC is a wholly-owned subsidiary of Grupo México.[4]

The SCC Shares were transferred on March 31, 2003, when SP Holdings, with the approval of its then parent, ASARCO Incorporated, now known as ASARCO, SPHC II Incorporated, and AMC entered into a stock purchase agreement (the "Stock Purchase Agreement") for the transfer of the SCC Shares from SP Holdings to AMC. (the "Transfer"). ***$765 million of consideration was given in exchange for the SCC Shares.***

The Transfer occurred after lengthy and protracted negotiations and after the completion of a public legal proceeding (the "Federal Proceeding") in the United States District

---

[2]    Nor is Grupo México subject to personal jurisdiction in New York state court, as both courts apply New York's standards for personal jurisdiction.

[3]    The Complaint alleges that plaintiffs Phillip Nelson Burns and Mirjana Pavkovich, administrator of the estate of Rade Pavkovich, are Arizona citizens, and Warren Elmer Halfpap is a citizen of New York. (collectively the "Asbestos Plaintiffs" or "Plaintiffs".) The Plaintiffs are potential unsecured creditors of subsidiaries of ASARCO allegedly injured by ASARCO's torts. Without further elaboration, the Asbestos Plaintiffs state that at the time of the alleged fraudulent conveyances, their claims against ASARCO "were both filed and unfiled." (Am. Compl. ¶ 10.)

[4]    ASARCO erroneously alleges in its removal papers that ASARCO transferred the SCC Shares to AMC. In reality, the SCC Shares were owned and transferred by Southern Peru Holdings Corporation ("SP Holdings"), a wholly-owned subsidiary of ASARCO.

Court for the District of Arizona concerning the transaction. The transaction was open and

known to the public. The United States Department of Justice, Environmental Protection

Agency (the "DOJ"), one of ASARCO's major creditors (then and now), scrutinized the

transaction and consented to the Transfer in a pleading (the "Consent Decree") filed with and

approved by the United States District Court for the District of Arizona.[5] The Transfer was not

concealed from any creditor of ASARCO or the transferor. Rather, SP Holdings, ASARCO and

AMC negotiated the terms of the Transfer for several months within the context of the Federal

Proceeding. ASARCO's major creditors were, or should have been, aware of the proposed

transaction and the ongoing Federal Proceeding. SPHC, ASARCO, AMC, the DOJ, and the

United States District Court all signed the Consent Decree. The public nature of this transaction,

conducted under the watchful eye of the DOJ, the United States District Court and creditors, and

the provision of reasonably equivalent value and fair consideration in exchange for the Shares

contravene any claim of this transaction being a fraudulent conveyance.

        Over one year after the Transfer, the Asbestos Plaintiffs commenced the Burns

Litigation on October 15, 2004, by filing the Burns Complaint in the Supreme Court of the State

of New York, New York County.[6] Four months after the Burns Complaint was filed, on

---

[5]        Attached as an exhibit to the Consent Decree is a signed opinion letter, dated January 24, 2003, from the independent firm of Ernst & Young Corporate Finance LLC ("E&Y") to the Board of Directors of ASARCO wherein E&Y approved of the consideration paid for the SCC Shares:

> . . . it is our opinion, as of the date of this letter that, assuming the Transaction is consummated as proposed, the value of the consideration received by the Company for the [Shares] in connection with the Transaction is greater than the fair market value of the Stock Interest as of December 31, 2002, and therefore, constitutes reasonably equivalent value and fair consideration.

Letter Opinion of E&Y, dated Jan. 24, 2003, at 4.

[6]        This litigation was assigned to the Honorable Bernard J. Fried.

February 7, 2005, the Asbestos Plaintiffs filed their First Amended Verified Complaint.[7]  *See*

First Amended Verified Complaint, *Burns*, No. 0114728/04 ("Amended Complaint" or "Am.

Compl.").  The Amended Complaint is the complaint ASARCO purports to remove.  On August

9, 2005, ASARCO filed a Voluntary Chapter 11 Petition in the United States Bankruptcy Court

for the Southern District of Texas, Corpus Christi Division. *See* Voluntary Petition of ASARCO

LLC, *In re ASARCO LLC*, No. 05-21207, docket # 1 (Bankr. S.D. Tex. Aug. 8, 2005).  As a

result, the Burns Litigation was automatically stayed.  This stay was formalized by Justice

Fried's October 7, 2005 order.  *See* Order Staying Litigation, *Burns*, No. 114728/04.

On May 2, 2007, despite the fact that it is not a party to the Burns Litigation,

ASARCO filed a notice of removal with this Court, purporting to remove the Seventh Claim for

Relief in the Amended Complaint (alleging a fraudulent conveyance to "insiders" of the SCC

Shares).  *See* ASARCO LLC's Notice of Removal to Federal Court, *Burns v. Grupo México S.A.

de C.V.*, No. 07-CV-3496 (S.D.N.Y. May 2, 2007).  On June 20, 2007, ASARCO filed an

Amended Notice of Removal with this Court which superseded the original Notice of Removal

and sought to remove the First, Second, Third, Fourth and Seventh Claims for Relief in the

Amended Complaint (alleging constructive fraud resulting in insolvency, constructive fraud

resulting in insufficiency of capital, actual fraud in anticipation of debts, actual fraud –

conveyance with intent to frustrate creditors, and fraudulent transfer – conveyance to insiders,

respectively).  *See* ASARCO LLC and Southern Peru Holdings, LLC's Amended Notice of

---

[7]      On February 17, 2005 plaintiffs improperly filed their Second Amended Verified Complaint
which added class-action allegations.  Because plaintiffs had already amended their complaint once as of
right, and failed to seek permission from the court to amend their complaint a second time, the Second
Amended Verified Complaint should be disregarded. *See* Second Amended Verified Complaint, *Burns*,
No. 0114728/04, *see also* N.Y.C.P.L.R. § 3025(a) (McKinney 2006).

Removal ("Notice of Removal").  At no time prior to filing the Notice of Removal did ASARCO

seek to substitute itself as a party in the Burns Litigation.[8]

## STATEMENT OF FACTS

In the Notice of Removal, ASARCO fails to articulate any basis upon which it has

standing to remove any of the Asbestos Plaintiffs' Amended Complaint.  ASARCO baldly

asserts that it is the "real party in interest" with respect to certain claims asserted in the Burns

Litigation and seeks to remove additional claims that purportedly relate to the "fraudulent

transfer of ASARCO's 54.2% ownership interest in the Southern Peru Copper Corporation"

(defined above as the "SCC Shares").[9]  The claims ASARCO seeks to remove relate to the

following transactions:  the LBO (Am. Compl. ¶¶ 28-39); ASARCO's sale of Enthone-OMI, Inc.

(Am. Compl. ¶ 46, 48); ASARCO's sale of American Limestone Company (Am. Compl. ¶ 47-

48); ASARCO's sale of "ASARCO's business equipment." (Am. Compl. ¶ 45); and the sale of

the SCC Shares from Southern Peru Holdings to AMC (Am. Compl. ¶ 50, 55).  The Amended

Complaint, as filed by the Asbestos Plaintiffs, purports to challenge several of these transactions

as alleged fraudulent transfers.  In its Notice of Removal, however, ASARCO attempts to clarify

that, with regard to Grupo México, it is *only* challenging the transfer of the SCC Shares.  (Notice

of Removal pp. 1, 5.)  Notably, Grupo México was only directly involved in one of the

transactions identified in the Amended Complaint - the LBO of ASARCO.  Grupo México, was

---

[8]    By its Notice of Removal, ASARCO attempts assert claims against Grupo México that ASARCO
itself failed to make years ago.

[9]    Without support or explanation, ASARCO claims that the allegations in the Amended Complaint
"germane" to the removed claims are ¶¶ 1, 10-12, 23-30, 44-53, and 56-57.  (Notice of Removal¶ 9.)
Notably absent from Plaintiffs' Notice of Removal are any allegations or references to the basis for
jurisdiction, venue, and choice of law.

neither a transferor nor a transferee in the transaction involving the SCC Shares, but simply guaranteed a note issued by its subsidiary, AMC.

Grupo México is a corporation organized under the laws of Mexico and headquartered in Mexico City, Mexico. (*See* Declaration of Alberto De La Parra Zavala in Support of Grupo México, S.A. de C.V.'s Motion to Remand and, in the Alternative, to Dismiss the Complaint for Improper Service and Lack of Personal Jurisdiction ("de la Parra Decl.") ¶ 4.) Although the Amended Complaint makes several conclusory allegations in its attempt to establish that this Court has personal jurisdiction over Grupo México, it is clear that personal jurisdiction is lacking.[10] First, Plaintiffs allege that Grupo México is "authorized to transact business in the state and/or ha[s] contracted to supply goods and services within the state." (Am. Compl. ¶ 5.) Plaintiffs also allege that Grupo México has "committed tortious acts within the state of New York." (*Id*.) Further, Plaintiffs allege that Grupo México "ha[s] [] contractually waived any right they might have had to contest the jurisdiction of this Court relating to the conveyances contested herein." (*Id*. ¶ 6.) Finally, Plaintiffs allege that Grupo México has "designated within those same contracts that New York State Law governs principal transactions in the LBO." (*Id*.) In contrast to the Asbestos Plaintiffs' conclusory allegations, Grupo México has had no significant contact with New York and does not have a presence in New York.

Grupo México is not a resident of New York, is not registered to conduct business in New York, and does not conduct business in New York. (de la Parra Decl. ¶ 6.) Grupo México does not maintain a registered agent for service of process in New York. (*Id*. ¶ 7.) Grupo México does not maintain an office or warehouse or any other facilities in New York, nor does it have a mailing address or any telephone numbers in New York. (*Id*. ¶ 8.) Further, Grupo

---

[10]    Many of the allegations refer to "all defendants" in conclusory fashion. (Am. Compl. ¶ 5.)

México owns no real estate in New York and does not pay taxes in New York.  (*Id*. ¶ 9.)  Grupo

México has no agents, employees, sales representatives, or any employees in New York nor does

it conduct any direct advertising with any media based in New York.  (*Id*. ¶¶ 10-11.)

### ARGUMENT

## I.    GRUPO MÉXICO WAS NOT PROPERLY SERVED IN THE BURNS LITIGATION

Grupo México was not properly served with the Amended Complaint, thus they

are not as of yet properly joined as a defendant in this action and the Amended Complaint should

be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(5).  Grupo México was served by a

third party process server in Mexico City.  Although the Hague Convention on the Service

Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, 20 U.S.T.

1361 (the "Hague Convention"), to which Mexico is a signatory, a permits service through a

third party in certain limited circumstances, each participating nation has the option to object to

effective service by a third party, requiring instead that service be effected through court officers.

Mexico did object to such third party service and requires a specific court order allowing for

proper service on a Mexican corporation by a third party, otherwise rendering third party service

ineffective.  *See NSM Music, Inc. v. Alvarez,* No. 2 C 6482, 2003 WL 685338 (ND Ill. Feb. 25,

2003) (personal service is not effective via a privately-retained process server).  As the only

evidence plaintiffs provided as to service of the Amended Complaint upon Grupo México

indicates that service was attempted by an unauthorized third party, such service is improper and

wholly ineffective and warrants dismissal of this action.  *Id.*  (the Hague Convention

contemplates personal service via the authorities of the country of destination, or through the

originating country's consular officials in the country of destination. *See* Hague Conv. Arts. 3-9.).[11]

## II.    BECAUSE ASARCO'S PURPORTED REMOVAL WAS IMPROPER, THE ACTION SHOULD BE REMANDED.

### A.    A Non-Party Has No Authority to Remove in a Bankruptcy Proceeding

Under the federal removal statutes, a non-party, including an individual claiming to be a real party in interest, has no authority to seek removal.[12] *Newman & Cahn, LLP v. Sharp*, 388 F. Supp. 2d 115, 116 (E.D.N.Y. 2005). Specifically, the right to remove is vested *exclusively* in the *defendants* in an action. *Geiger v. Artco Enter., Inc.*, 910 F. Supp. 130, 131 (S.D.N.Y. 1996); *Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*, 70 F. Supp. 2d 296, 298 (S.D.N.Y. 1999); *see also* 28 U.S.C. §§ 1441, 1446(a).

Similarly, Section 1452(a) of the Bankruptcy Code, Removal of Claims Related to Bankruptcy, grants removal authority only to *parties* in the action. 28 U.S.C. § 1452(a) ("[a] *party* may remove any claim or cause of action" in a bankruptcy proceeding) (emphasis added). *See also Norkin v. DLA Piper Rudnick Gray Cary, LLP*, No. 05 Civ. 9137 (DLC), 2006 WL 839079, at *3 (S.D.N.Y. 2006) (§ 1452 "allows a *party* to remove an action from state court to federal district court if the district court has jurisdiction . . . .") (emphasis added); *see also Fed.*

---

[11]    In addition, the documents served on Grupo México were not translated by an authorized translator under the Mexican federal courts and thus do not meet the requirements of Article 5(a) of the Hague Convention.

[12]    In the bankruptcy context, the Supreme Court has held that the general removal statutes continue to apply, coexisting with the § 1452 of the Bankruptcy Code, finding that "[t]here is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995); *see also* 1 Norton Bankr. L. & Prac. 2d § 7:1 (2007); *see also Hesseman v. Arthur Andersen (In re Global Crossing, Ltd. Sec. Litig.)*, Nos. 02 Civ. 910 GEL, 02 Civ. 10199 GEL, 2003 WL 21659360, at *2 (S.D.N.Y. July 15, 2003) ("§ 1452 must be understood in the context of the general federal removal statute, 28 U.S.C. § 1441").

*Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 373 (S.D.N.Y. 2006) (holding that "Title 28 grants removal power in bankruptcy cases to any 'party'"); *accord Buechner v. Avery*, No. 05 Civ. 2074 (PKC), 2005 WL 3789110, at *4 (S.D. N.Y. 2005).

ASARCO is not and never has been a party to this lawsuit. ASARCO did not substitute itself as a plaintiff in this action and therefore lacks standing to remove the action to this Court. Tellingly, ASARCO has been very vocal in the Bankruptcy Court proceedings and has repeatedly requested additional time to participate in various actions where it is a party. Never once has ASARCO requested additional time to substitute itself as a party in this action. Although ASARCO's Notice of Removal makes reference to extensions of time to remove granted by the Bankruptcy Court, such extensions are irrelevant to ASARCO because the Bankruptcy Court could *only* extend to ASARCO additional time for removal of actions to which it was a party.

### B.    ASARCO's Removal Is Blatantly Deficient

ASARCO's Notice of Removal purports to remove five causes of action without any explanation of the basis for doing so. The Notice of Removal contains conclusory allegations regarding ASARCO's and SP Holdings' interest in this litigation, and offers no support for why these entities have a stake in this action.

- **ASARCO and SP Holdings are not the real parties in interest.** ASARCO and SP Holdings state in the Notice of Removal that they are the real parties in interest in the action, but fail to offer any basis for this statement. (Notice of Removal p.1) These statements – lacking of any factual support – hardly explain how ASARCO and SP Holdings could be the real parties in interest to the Asbestos Plaintiffs' tort claims. ASARCO was not the transferor of the SCC Shares and thus has no real interest in the fraudulent transfer claims.

- **The "removed" claims do not relate to transfer of SCC Shares.** ASARCO and SP Holdings state in the Notice of Removal that they are removing to this Court "claims relating to the fraudulent transfer of

ASARCO's 54.2% ownership interest in Southern Peru Copper Corporation, now known as Southern Peru Corporation ("SPCC")". (Notice of Removal p.1)  It is only Count VII of the Amended Complaint that relates to the alleged fraudulent transfer of the SCC Shares and the remaining four claims which are the subject of the Notice of Removal relate to the leveraged buyout of ASARCO -- claims which ASARCO and SP Holdings make clear are not the subject of their attempted removal.[13]

• **The "removed" claims do not arise under Bankruptcy Code.**  The Notice of Removal erroneously states that "[r]emoval of the claims relating to the fraudulent transfer of ASARCO's 54.2% ownership interest in SPCC to AMC asserted against Grupo México in Plaintiffs' First, Second, Third, Fourth, and Seventh Claims for Relief in the State Court Amended Complaint is proper under 28 U.S.C. § 1452(a) because this Court has subject matter jurisdiction over those claims *pursuant to 28 U.S.C. § 1334(b)*" and "the claims relating to the fraudulent transfer . . . *'arise under'* the Bankruptcy Code." (Notice of Removal ¶¶ 1, 8) (emphasis added).  A cursory glance at the Amended Complaint confirms the falsity of this statement as each and every one of these five claims is brought pursuant to the New York Fraudulent Conveyance Act and not pursuant to the Bankruptcy Code.  Despite the misstatements in the Notice of Removal, there is no basis to remove these state law claims to this Court.

• **The "removed" claims are not part of the ASARCO bankruptcy estate.**  The Notice of Removal asserts that "[u]pon ASARCO's bankruptcy filing, the claims asserted in the State Court Action, including the claims relating to the fraudulent transfer of ASARCO's 54.2% ownership interest in SPCC to AMC . . . became property of the ASARCO bankruptcy estate pursuant to section 541 of the Bankruptcy Code". (Notice of Removal ¶ 6)  The Notice of Removal provides no support for this statement and the Asbestos Plaintiffs' claims related to the fraudulent transfer of the SCC Shares are not property of the ASARCO estate.  The fraudulent transfer claim is not property of the ASARCO estate because ASARCO was not the transferor of those shares and has no claim to or interest in their recovery.  SP Holdings was the transferor of the SCC Shares and is the only entity that could have a real interest in avoiding the fraudulent transfer.  These baseless allegations regarding the fraudulent transfer of the SCC Shares being property of the ASARCO estate have no impact on the First, Second, Third and Fourth Claims as those claims do not relate to the alleged fraudulent transfer of the SCC Shares.

---

[13]    Even if the claims related to the LBO were claims that ASARCO attempted to remove, there are no allegations in the complaint that would give rise to this Court's jurisdiction over Grupo México and ASARCO cannot amend the Asbestos Plaintiffs' complaint now through its own Notice of Removal.

- **"Removal" is not timely.** ASARCO and SP Holdings claim that the Notice of Removal is timely based on the orders of the Bankruptcy Court extending the time to remove actions. (Notice of Removal ¶ 10) Of course, such extensions of time to remove apply only to parties who have standing to remove in the first place and cannot be deemed to grant to non-parties an independent right to remove.

- **This action is not a core proceeding.** ASARCO and SP Holdings claim that this proceeding is core because it "invokes a substantive right provided by the Bankruptcy Code or is a proceeding that by its nature could only arise in the context of a bankruptcy case." (Notice of Removal ¶ 13) As discussed above, this matter is not brought under any provisions of the Bankruptcy Code but is rather brought pursuant to the New York Fraudulent Conveyance Act.

It is beyond question that ASARCO – a non-party – has no statutory authority to seek removal, therefore removal was improper and this action must be remanded. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 (SAS), 14 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) ("If the removing party cannot establish its right to removal by competent proof, the removal is improper, and the district court must remand the case to the court in which it was filed.").

## III. GRUPO MÉXICO IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK

Plaintiffs bear the burden of establishing that this Court has jurisdiction over Grupo México. *See Norben Imp. Corp. v. Metro. Plant & Flower Corp.*, No. 03 Civ. 8660 (WHP), 2004 WL 2378295 (S.D.N.Y. Oct. 25, 2004) (dismissing complaint where plaintiff did not demonstrate sufficient contacts to allow for personal jurisdiction) (*citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999), *vacated*, 305 F.3d 120 (2d Cir. 2002)). Because personal jurisdiction over a non-resident defendant is determined under the law of the forum state, this Court must determine whether it has personal jurisdiction over

Grupo México by applying New York's personal jurisdiction statues, N.Y.C.P.L.R. §§ 301, 302. *See Norben Imp. Corp*., 2004 WL 2378295, at \*2.[14]

### A.    Grupo México Has Not Consented to Jurisdiction

The Asbestos Plaintiffs in the Amended Complaint, erroneously contend that Grupo México is subject to jurisdiction in New York because it (i) is "authorized to do business in New York and/or [has] contracted to supply goods and services within the state" and (ii) "committed tortious acts within the state of New York."  (Am. Compl. ¶ 5.)[15]  Plaintiffs also assert that Grupo México "contractually waived any right they might have had to contest jurisdiction of this Court relating to the conveyances contested herein" and that Grupo México has "designated within those same contracts that New York State Law governs principal transaction involved in the LBO."  (Am. Compl. ¶ 6.)  Plaintiffs are wrong on both counts.

Grupo México has not consented to the jurisdiction of this Court or the New York state court.  Although the Amended Complaint alleges that Grupo México has "waived any right they might have had to contest the jurisdiction of this Court relating to the conveyances contested therein,"  (Am. Compl. ¶ 6.),  Plaintiffs fail to identify a single document, clause, agreement, or correspondence whereby Grupo México "waived" its right to contest jurisdiction in the this matter.  Further, the Amended Complaint makes only a conclusory allegation that "these defendants [including Grupo México] have designated within [the] contracts that New York State Law governs principal transactions involved in the LBO."  (*Id*.)  Even if Plaintiffs

---

[14]    ASARCO argues that the Texas court *could* resolve the question of personal jurisdiction. ASARCO has not, however, offered any explanation as to why a Texas court is the more appropriate forum for resolution of the issue.  Additionally, as discussed in Section IV, Grupo México is not subject to personal jurisdiction in Texas.

[15]    Although ASARCO purports to remove the Burns Litigation, the named Plaintiffs continue to be the Asbestos Plaintiffs.  Accordingly, references to "Plaintiffs" in this section continue to refer to the Asbestos Plaintiffs, as they made the allegations in the Amended Complaint currently before this Court.

identified an agreement that included a choice of law provision identifying New York as

controlling law, this alone would not be sufficient to confer jurisdiction over Grupo México.

The law is well settled "that a choice of law provision in a contract does not constitute a

voluntary submission to personal jurisdiction in New York." *McShan v. Omega Louis Brandt et

Frere, S.A*., 536 F.2d 516, 518 (2d Cir. 1976); *see also First Nat'l Bank & Trust Co. v. Wilson*,

567 N.Y.S.2d 468, 470 (App. Div. 1991) ("Nor does the parties' selection of New York as the

choice of law in their agreement constitute a voluntary submission to personal jurisdiction in

New York.") (citation omitted); *Waldorf Assocs, Inc. v. Neville*, 533 N.Y.S.2d 182, 184 (Sup. Ct.

1988) (choice of law provision "has nothing to do with choice of forum or consent to submit to

jurisdiction") (citation omitted), *aff'd*, 547 N.Y.S.2d 556 (App. Div. 1989).[16]  Accordingly,

Grupo México has not consented to jurisdiction in New York.

**B.    Grupo México is Not Subject to General Jurisdiction in New York**

Plaintiffs do not allege a basis for general jurisdiction under N.Y.C.P.L.R § 301.

Section 301 of New York's Civil Procedure Law and Rules states, in pertinent part, that "a court

may exercise such jurisdiction over persons, property, or status as might have been exercised

heretofore."  N.Y.C.P.L.R. § 301.  Pursuant to that section, this Court has general jurisdiction

over a foreign corporation, such as Grupo México, when it is "doing business" in New York "not

occasionally or casually, but with a fair measure of permanence and continuity." *Official Comm.

of Unsecured Creditors v. Transpacific Corp. (In re Commodore Int'l, Ltd.)*, 242 B.R. 243, 251

---

[16]    Even if Grupo México consented to jurisdiction in New York in a contract relating to the LBO, which it did not, the Asbestos Plaintiffs in the Amended Complaint cannot rely upon the contractual consent because they were not parties to the contract. *See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208 (N.Y. 1985); *ComJet Aviation Mgmt. LLC v. Aviation Investors Holdings Ltd*., 303 A.D.2d 272 (N.Y. App. Div. 2003) (dismissing complaint for lack of jurisdiction where plaintiff was not a party or beneficiary to any agreement where New York was the chosen forum).

(Bankr. S.D.N.Y. 1999) (quotations omitted) (dismissing fraudulent transfer claim where defendant was not subject to personal jurisdiction).  Casual or occasional activity does not constitute "doing business;" rather N.Y.C.P.L.R. § 301 requires a showing of "continuous, permanent, and substantial activity in New York."  *In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d 403, 407 (S.D.N.Y. 2002) (quotation omitted) (dismissing case where defendant lacked sufficient contacts with New York).  The traditional characteristics of "doing business" under the N.Y.C.P.L.R. include: (1) whether the company has an office in the state; (2) whether it has any bank accounts or other property in the state; (3) whether it has a phone listing in the state; (4) whether it does public relations work there; and (5) whether it has individuals permanently located in the state to promote its interests."  *Id.*

Plaintiffs make only the conclusory allegation that Grupo México, as one of the original defendants in the action, is "authorized to transact business in the state." (Am. Compl. ¶ 5.)  This contention is unsupported statement and, more importantly, false.  (de la Parra Decl. ¶ 6.)  Plaintiffs do not and cannot argue that Grupo México is "doing business" in New York for purposes of personal jurisdiction.  Grupo México has no contacts with New York that would satisfy the requirements of N.Y.C.P.L.R. § 301.  Grupo México is a Mexican corporation with its principal place of business in Mexico City, Mexico.  (*Id.*¶ 4.)  Grupo México is not a resident of New York and is not registered to conduct business in New York.  (*Id.* ¶ 6.)  Grupo México does not maintain an office or employees in New York, it does not have a New York telephone number or mailing address.  (*Id.* ¶ 8.)  For these reasons, Grupo México is not "doing business" in New York and this Court does not have general jurisdiction over Grupo México under N.Y.C.P.L.R. § 301.  *See Int'l Telecom, Inc. v. Generadora Electrica del Oriente, S.A.*, No. 00 Civ. 8695(WHP), 2002 WL 465291 at *4 (S.D.N.Y. Mar. 27, 2002) (a single financing

-14-

arrangement such as a credit facility is "insufficient to constitute the continuous and systematic activity required to warrant the exercise of general personal jurisdiction").

### C. Grupo México Has Not Engaged in Any Purposeful Activity in New York Sufficient to Subject it to Specific or "Long-Arm" Jurisdiction

New York's "long-arm" statute, N.Y.C.P.L.R. § 302, provides for personal jurisdiction of non-domiciliaries "[a]s to a cause of action arising from any of the acts enumerated in this section." N.Y.C.P.L.R. § 302(a). Under this section, Grupo México would be subject to personal jurisdiction if it transacts business within New York and the claims alleged in the Burns Complaint arose out of that business. *See Norben Imp. Corp.*, 2004 WL 2378295, at *2. The "acts enumerated" in Section 302(a) are: (1) the transaction of "any business within the state or contracts anywhere to supply goods or services in the state;" (2) committing "a tortious act within the state;" (3) committing a tortious act without the state causing injury to person or property within the state;" or (4) "own[ing], us[ing] or possess[ing] any real property situated within the state." N.Y.C.P.L.R. § 302(a).

As described below, none of Grupo México's activities meet the prerequisites for this Court to exercise long-arm jurisdiction under Section 302(a).

### 1. ASARCO's Claims Do Not Arise Out of Grupo México's Transaction of Business in New York

For New York's "long-arm" statute to apply to a given cause of action, that cause of action must have arisen out of Grupo México's contacts with New York. Of the many transactions challenged by the Asbestos Plaintiffs in the Amended Complaint, Grupo México was directly involved in only one – the LBO. The Amended Complaint fails to establish that Grupo México had sufficient contacts to confer personal jurisdiction over it in connection with the LBO. Further, the claims that ASARCO seeks to remove do not even arise out of the LBO.

The LBO was completed in November 1999.  The transfer of the SCC Shares that the Asbestos Plaintiffs challenge and that ASARCO purports to remove occurred in 2003 and is completely unrelated to the LBO.  Accordingly, the sole transaction identified in the Notice of Removal – the transfer of the SCC Shares – is not related or connected in any way to the one transaction to which Grupo México was a party.  Further, as discussed below, to the extent Grupo México played any role in any of these transactions, its connections to New York are not sufficient to establish personal jurisdiction.

       The remaining five transactions challenged by the Asbestos Plaintiffs were all performed and executed solely by ASARCO.  (Am. Compl. ¶¶ 45-50.)  Grupo México was not a party to the sale of Enthone.  Grupo México was not a party to the discounting of the insurance proceeds.  Grupo México was not a party to the sale of American Limestone to Rinker Materials Corporation and it was not a party to the alleged sale of "ASARCO's business equipment."  Grupo México was not the transferor or transferee of the SCC Shares by SP Holdings to AMC, but merely acted as a guarantor for one of the promissory notes executed by AMC and delivered to SP Holdings.  Plaintiffs repeatedly infer that many of these actions were "directed by" Grupo México, yet the Amended Complaint is utterly devoid of details as to what role Grupo México played in any of these transactions or how any alleged role would give rise to jurisdiction in this Court.  Plaintiffs fail to allege details sufficient to identify where any of the transactions took place, such as where they were negotiated, executed, financed, where the closings took place, or even who participated in them.  There are no allegations that Grupo México was ever physically present within New York in connection with any of the challenged transactions.

2.    **Grupo México Has Not "Transacted Business" in New York Under N.Y.C.P.L.R. § 302(a)(1)**

Under Section 302, "New York [has] personal jurisdiction over a nondomiciliary if two conditions are met:  first, the nondomiciliary must 'transact business' within the state; second, the claim against the nondomiciliary must arise out of that business activity*."  In re Commodore Int'l, Ltd.*, 242 B.R. at 253 (quotation omitted).  Whether a non-domiciliary transacts business[17] in New York is determined by considering a number of factors, including:

> (i) whether the defendant has an ongoing contractual relationship with a New York corporation, (ii) whether the contract was negotiated or executed in New York, (iii) whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, (iv) what the choice of law clause is in the contract, and (v) whether the contract requires payments and notices to be sent into New York.

*Id.* at 253-54.  New York courts hold that a foreign corporation has not "transacted business" under Section 302(a)(1) unless the corporation performed some act by which it "purposefully avail[ed] [itself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws."  *Light v. Taylor*, No. 05 Civ. 5003 (WHP), 2007 WL 274798, at *3 (S.D.N.Y. Jan. 29, 2007) (quotation omitted); *see also McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. Ct. App. 1967).

The transaction that forms the basis for ASARCO's removal is the transfer of the SCC Shares to AMC.  The Amended Complaint is devoid of any allegations establishing that Grupo México transacted business in New York in connection with the transfer of the SCC Shares.  Because Grupo México acted only as a guarantor for a promissory note executed by AMC and payable to SP Holdings, this Court has no personal jurisdiction over Grupo México.

---

[17]    "'Transacting' is a term of art that is only relevant for jurisdictional purposes when the plaintiff's suit is related to the transaction in question."  *In re Ski Train Fire*, 230 F. Supp. 2d at 408.

The claims that ASARCO seeks to assert do not arise out of Grupo México's involvement in that transaction and any potential contacts with New York.  Accordingly, Grupo México cannot be subject to personal jurisdiction in New York under Section 302(a)(1).

### 3.    Grupo México Has Not Committed A Tortious Act Within the State Under N.Y.C.P.L.R. 302(a)(2)

Section 302(a)(2) gives this court "personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state . . . ."  At minimum, to qualify for jurisdiction under Section 302(a)(2), "a defendant's act or omission [must have] occur[ed] within the State."  *Bank Brussels Lambert*, 171 F.3d at 789-90 (quotation omitted), *vacated*, 305 F.3d 120 (2d Cir. 2002); *see also Maranga v. Vira*, 386 F. Supp. 2d 299, 310 (S.D.N.Y. 2005) ("CPLR 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act.") (*quoting Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997)).

With the exception of the conclusory allegation that Grupo México "committed tortious acts within the state of New York," Plaintiffs fail to identify a single tort that occurred in New York, much less a tort committed by Grupo México.  While Plaintiffs repeatedly allege that "Grupo México forced" or "directed" (*see, i.e.* ¶¶ 45-47) certain transfers to occur, they plead no details to support these self-serving statements.  Further, the Amended Complaint does not identify what connection, if any, the transfer of the SCC Shares has to New York and how the transfer of those shares was a tort committed by Grupo México within New York.  Accordingly, Grupo México is not subject to personal jurisdiction in New York under Section 302(a)(2).

### 4. Grupo México Has Not Committed a Tortious Act Causing Injury to Person or Property Within New York

Under Section 302(a)(3), a non-domiciliary is subject to personal jurisdiction in New York if it commits a tortious act causing injury to person or property within New York and it either (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state" or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y.C.P.L.R. §§ 302(a)(3)(i)-(ii); *see also Ball v. Metallurgie Hoboken-Overpelt*, S.A., 902 F.2d 194, 199-200 (2d Cir.) (dismissing case where plaintiffs failed to demonstrate substantial revenue and that the associated goods were "used or consumed" in New York), *cert. denied*, 498 U.S. 854 (1990); *Light*, 2007 WL 274798 at *4-5 (dismissing complaint where plaintiff failed to show substantial revenue from interstate commerce).

The Amended Complaint includes no allegations supporting jurisdiction under Section 302(a)(3).  First and foremost, the Amended Complaint fails to identify a tort committed outside the state of New York that caused injury within the State.  Second, as discussed above in Section III.B, Grupo México does not regularly solicit or conduct business in New York or derive "substantial revenue from goods consumed or services rendered" in New York.  *See In re Commodore Int'l*, 242 B.R. at 255 (dismissing complaint "[w]ithout deciding where the location of the injury occurred, we have already determined that [defendant] does not do any business in New York.  There is also no evidence that [defendant] has ever solicited business here or derives any revenue here, let alone substantial revenue.").[18]

---

[18]    As discussed herein, Grupo México does not own or possess any real property in the state of New York.  (de la Parra Decl. ¶ 9.)

**D.**    **Jurisdiction Over Grupo México's Subsidiaries Cannot Be Imputed to Grupo México**

Even if New York had jurisdiction over one or more of Grupo Mexico's subsidiaries, such as ASARCO or AMC, the law is clear that the acts of a subsidiary cannot be used to impute personal jurisdiction to a foreign parent unless it is shown that the parent maintained day-to-day control over the subsidiary.  Under New York law, if "the claim is that a foreign corporation is present in New York state because of the activities there of its subsidiary, the presence of the subsidiary alone does not establish the parent's presence in the state."  *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998) (dismissing claims against foreign company for lack of personal jurisdiction).  For New York courts to have personal jurisdiction over a parent corporation based on its subsidiary's presence in New York, "the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent."  *Id.*

To establish that a subsidiary is a mere 'agent' of the parent, plaintiffs must show that the subsidiary "does all the business which [the parent corporation] could do were it here by its own officials."  *Id.* (*citing Frummer v. Hilton Hotels Int'l, Inc.*, 227 N.E.2d 851 (N.Y.), *cert. denied*, 389 U.S. 923 (1967).  In determining whether a subsidiary is a "mere department" of its parent, New York courts rely on four factors first articulated in *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  Courts must consider (1) "common ownership"; (2) "financial dependency of the subsidiary on the parent corporation;" (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities"; and (4) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."  *Jazini*, 148 F.3d at 184-85 (*quoting Beech Aircraft*, 751 F.2d at 120-22).  The Amended Complaint is devoid of any specific allegations that any of Grupo Mexico's

-20-

subsidiaries were agents or "mere departments" of Grupo México.  The lack of any factual

support in the complaint for the allegation that ASARCO or AMC is a mere agent or

instrumentality of Grupo México is grounds for dismissal pursuant to Fed. R. Civ. P. 12(b)(2).

*See Jazini*, 148 F.3d at 185 (dismissing complaint where allegations "lack the factual specificity

necessary to confer jurisdiction").

## IV.    GRUPO MÉXICO IS NOT SUBJECT TO PERSONAL
##         JURISDICTION IN TEXAS

ASARCO seeks a change of venue to the United States District Court for the

Southern District of Texas where the Fraudulent Transfer Litigation is currently pending against

Grupo México's subsidiary AMC.  Transferring this action would not cure the personal

jurisdiction flaws in connection with Grupo México, as Grupo México is not subject to personal

jurisdiction in Texas either.

The Texas long-arm statute's authorization of personal jurisdiction is coextensive

with the 14th Amendment's due process requirements. *See R & B Falcon Drilling (Int'l &*

*Deepwater), Inc. v. Noble Denton Group*, 91 Fed. App'x 317, 320 (5th Cir. 2004) (stating "[t]he

Texas long-arm statute authorizes the district court to exercise personal jurisdiction over a non

resident defendant to the fullest extent allowed by the United States Constitution," and citing

Tex. Civ. Prac. & Rem. Code § 17.042 (West 2000)).  The minimum contacts required to satisfy

due process "can be established either through contacts sufficient to assert specific jurisdiction,

or contacts sufficient to assert general jurisdiction." *Panda Brandywine Corp. v. Potomac Elec.*

*Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (affirming dismissal based on lack of personal

jurisdiction) (internal quotations omitted).  "Specific jurisdiction over a nonresident corporation

is appropriate when that corporation has purposefully directed its activities at the forum state and

the litigation results from alleged injuries that arise out of or relate to those activities." *Alpine*

*View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000) (affirming dismissal based on lack of personal jurisdiction over foreign corporation) (internal quotations omitted); *see also Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).

If a party's contacts with Texas are continuous and systematic, they will be subject to general personal jurisdiction, in which case the cause of action need not arise out of activities in Texas. *See Martinez v. Servicios de Transportacion, M.G., S.A. de C.V.*, No. L-05-60, 2007 WL 543411 at *4 (S.D. Tex. Feb. 15, 2007) (dismissing action and holding that court lacked general personal jurisdiction over Mexican company that "operated in Mexico and had no office in the United States," because its contacts with Texas were not continuous and systematic); *see also Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999).

Grupo México has no more contacts with Texas than it does with New York. (de la Parra Decl. ¶¶ 4-11.) Grupo México is not a resident of Texas, is not registered to conduct business in Texas, and does not conduct business in Texas. (*Id.* ¶ 6.) Grupo México does not have any office or warehouse in Texas, nor does it have a mailing address or any telephone numbers in Texas. (*Id.* ¶ 8.) Grupo México has no agents, sales representatives, or any employees in Texas. (*Id.* ¶ 10.) It does no advertising in Texas or with any Texas media. (*Id.* ¶ 11.) Accordingly, Grupo México would not be subject to personal jurisdiction in Texas.

## <u>CONCLUSION</u>

For the foregoing reasons, Grupo México respectfully requests that the Court dismiss the First Amended Complaint in its entirety or, in the alternative, remand this action to the Supreme Court of New York where it will be dismissed for lack of personal jurisdiction.

Dated:  June 26, 2007

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _____

Luc A. Despins (LD 5143)
Stacey J. Rappaport (SR 9973)
Alan J. Stone (AS 2045)
J. Ryan Miller (JM 3370)
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000
(212) 530 5219

David S. Cohen (DC 1268)
Donna F. Mulvihill (DM 6644)
International Square Building
1850 K Street, NW, Suite 1100
Washington D.C. 20006
(202) 835-7500
(202) 835-7586 (facsimile)

Attorneys for Defendant
GRUPO MÉXICO, S.A. de C.V., A MEXICAN
CORPORATION.

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2007, a copy of each of: Defendant Group

México S.A. de C.V.'s Memorandum of Law in Support of Its Motion to Remand and, In the

Alternative, to Dismiss the Amended Complaint for Improper Service and Lack of Personal

Jurisdiction and the Declaration of Alberto de la Parra Zavala, dated June 26, 2007 were served

electronically by e-mail as follows:

G. Irvin Terrell
Samuel W. Cooper
Michael Massengale
Rebeca Huddle
Baker Botts, LLC
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
irv.terrell@bakerbotts.com
samuel.cooper@bakerbotts.com
michael.massengale@bakerbotts.com
rebeca.huddle@bakerbotts.com

Jack Kinzie
Fernando Rodriguez
Eric Soderlund
Tom O'Brien
Baker Botts, LLC
2001 Ross Avenue
Dallas, Texas 75201
(214)661- 6500
jack.kinzie@bakerbotts.com
fernando.rodriguez@bakerbotts.com
eric.soderlund@bakerbotts.com
tom.obrien@bakerbotts.com

Attorneys for Non-party
ASARCO LLC

Gary Klein, Esq. (via facsimile only)
Weitz & Luxenberg, P.C.
*A New York Professional Corporation*
120 Wall Street – 15th Floor
New York, New York 10038
(212) 558-5900
(212) 363-6848

Attorneys for Plaintiffs
PHILLIP NELSON BURNS,
MIRJANA PAVKOVICH, Administrator
 of the Estate of Rade Pavkovich, Deceased,
and WARREN ELMER HALPAP,

 /s/      JRM   
J. Ryan Miller
