## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALPAP,

        Plaintiffs,

-against-

GRUPO MÉXICO, S.A. de C.V., a Mexican
Corporation,

        Defendant.

Case No. 1:07-CV-3496 (WHP)

---

## ASARCO AND SOUTHERN PERU HOLDINGS' RESPONSE IN OPPOSITION TO GRUPO MÉXICO'S MOTION TO REMAND OR DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

ARGUMENT AND AUTHORITIES ......................................................................... 3

I.     SERVICE ON GRUPO MÉXICO WAS PROCEDURALLY PROPER AND EFFECTIVE TO PUT IT ON
       NOTICE THAT IT WAS A DEFENDANT IN THE STATE COURT ACTION ...................................... 3

       A.  The Hague Convention Governs Service Procedures in this Case ................................. 3

       B.  The Certificate of Service Establishes Prima Facie Case for Proper Service ................. 5

       C.  The Evidence Shows Conclusively that Service Was Effective ...................................... 6

II.    REMOVAL WAS PROPER ................................................................................................. 9

III.   JURISDICTION OVER GRUPO MÉXICO IS PROPER
       IN BOTH NEW YORK AND TEXAS ...................................................................................... 12

       A.  At this Stage in the Proceeding, ASARCO and Southern Peru Holdings Need Only
           Make a Prima Facie Showing of Jurisdiction .......................................................... 12

       B.  The Relevant Inquiry is Whether Grupo México Has Established the
           Necessary Contacts with the United States as a Whole, not with
           New York or Texas Individually ............................................................................ 13

       C.  Jurisdiction Over Grupo México Is Proper Because of its Specific Activities
           in the United States Relating to the Fraudulent Transfer of SPCC .............................. 17

       D.  Jurisdiction Over Grupo México Is Proper Because of its Systematic
           and Continuous Contacts with the United States ...................................................... 21

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

### CASES

*Adelphia Communications Corp. v Am. Channel, LLC (In re Adelphia Communications Corp.)*, No. 06-01528, 2006 WL 1529357 (Bankr. S.D.N.Y. June 5, 2006)................... 15

*Anheuser-Busch, Inc. v. Paques, Inc. (In re Paques, Inc.)*,
277 B.R. 615 (Bankr. E.D. Pa. 2000)........................................................16-17

*Asahi Metal Indus. Co. v. Superior Court*,
480 U.S. 102 (1987)................................................................................. 22

*Burda Media, Inc. v. Viertel*,
417 F.3d 292 (2d Cir. 2005) ..................................................................... 4

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985) ...................................................................... 17, 21, 22

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*,
2004 WL 224505 (S.D.N.Y. 2004) ............................................................ 10

*CutCo Indus., Inc. v. Naughton*,
806 F.2d 361 (2d Cir. 1986) ..................................................................... 12

*Enron Corp. v. Arora (In re Enron Corp.)*,
316 B.R. 434 (Bankr. S.D.N.Y. 2004) ....................................................... 15

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*,
872 F. Supp. 81 (S.D.N.Y. 1995)............................................................... 17

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
980 F.2d 125 (2d Cir. 1992) ..................................................................... 9

*Franck v. Sullivan (In re Worldcom, Inc. Securities Litig.)*,
2003 WL 22383090 (S.D.N.Y. 2003) ........................................................ 11

*Frof, Inc. v. Harris*,
695 F. Supp. 827 (E.D. Pa. 1988) ............................................................. 6

*Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*,
No. 05 CV 4260, 2006 WL 2015188 (S.D.N.Y. July 13, 2006).....................4

*Gen. Am. Commc'ns Corp. v. Landsell (In re Gen. Am. Commc'ns Corp.)*,
130 B.R. 136 (S.D.N.Y. 1991)................................................................... 15

*Goodson v. Rowland (In re Pintlar Corp.),*
    133 F.3d 1141 (9th Cir. 1998) ............................................................................ 16

*Greene v. Le Dorze,*
    No. CA 3-96-CV-590-R, 1998 WL 158632 (N.D. Tex. Mar. 24, 1998) ...................... 4, 5

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.,*
    104 F. Supp. 2d 279 (S.D.N.Y. 2000) .................................................................. 15

*Heft v. AAI Corp.,*
    355 F. Supp. 2d 757 (M.D. Pa. 2005) .................................................................. 16

*Hein v. Cuprum, S.A. de C.V.,*
    136 F. Supp. 2d 63 (N.D.N.Y. 2001) ..................................................................... 4

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
    466 U.S. 408 (1984) ..................................................................................... 17, 22

*In re Cathedral of Incarnation in Diocese of Long Island,*
    90 F.3d 28 (2d Cir. 1996) ................................................................................... 9

*In re JT Moran Fin. Corp.,*
    124 B.R. 931 (S.D.N.Y. 1991) ............................................................................ 16

*In re Federalpha Steel LLC,*
    341 B.R. 872 (Bankr. N.D. Ill. 2006) ........................................................ 14, 15, 17, 21

*In re Vitamins Antitrust Litig.,*
    No. MISC 99-197 (TFH), 2001 WL 34088810 (D.D.C. Mar. 9, 2001) ............................ 5

*Landry v. Price Waterhouse Chartered Accountants,*
    715 F. Supp. 98 (S.D.N.Y. 1989) ........................................................................ 12

*Maranga v. Vira,*
    38 F. Supp. 2d 299 (S.D.N.Y. 2005) .................................................................... 12

*Marine Midland Bank, N.A. v. Miller,*
    664 F.2d 899 (2d Cir. 1981) .............................................................................. 12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996) ............................................................................... 22

*Mobern Elec. Corp. v. Walsh,*
    197 F.R.D. 196 (D.C.D.C. 2000) ....................................................................... 5-6

*North v. Winterthur Assurances (In re North),*
    279 B.R. 845 (Bankr. D. Ariz. 2002) ................................................................. 14

*Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,*
    51 F.3d 1383 (8th Cir. 1995) ...................................................................... 5, 6

*NSM Music, Inc. v. Villa Alvarez,*
    No. 02 C 6482, 2003 WL 685338 (N.D. Ill. Feb. 25, 2003) .............................. 6

*O'Brien v. R.J. O'Brien & Assocs., Inc.,*
    998 F.2d 1394 (7th Cir. 1993) .................................................................... 5, 6

*Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.),*
    124 F.3d 619 (4th Cir. 1997) ...................................................................... 16

*Pacor, Inc. v. Higgins,*
    743 F.2d 984 (3d Cir. 1984) ......................................................................... 9

*Posven v. Liberty Mut. Ins. Co.,*
    303 F.Supp. 2d 391 (S.D.N.Y. 2004) ........................................................... 25

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.,*
    338 F.3d 773 (7th Cir. 2003) ...................................................................... 22

*Rahl v. Bande,*
    316 B.R. 127 (S.D.N.Y. 2004) .................................................................. 9, 10

*RSM Prod. Corp. v. Friedman,*
    No. 06 Civ. 11512, 2007 WL 1515068 (S.D.N.Y. May 24, 2007) ..................... 4

*Slurry Sys., Inc. v. Berminghammer Found. Equip.,*
    No. 2:04-CV-456 PPS, 205 WL 2240064 (N.D. Ind. Sept. 14, 2005) ............... 22

*Tex. Int'l Magnetics, Inc. v. Auriga-Aurex, Inc. (In re Magnetic Audiotape Antitrust
    Litig.),* 334 F.3d 204 (2nd Cir. 2003) ......................................................... 16

*Things Remembered, Inc. v. Petrarca,*
    516 U.S. 124 (1995) .................................................................................. 11

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,*
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) ....................................................... 9-10

*United States v. De Ortiz,*
    910 F.2d 376 (7th Cir. 1990) ...................................................................... 15

*United States v. Int'l Bhd. of Teamsters,*
  945 F. Supp. 609 (S.D.N.Y. 1996) ............................................................ 17

*Vasquez v. Sund Emba AB*
  152 A.D. 2d 389 (N.Y.A.D. 1989) ............................................................ 4

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
  486 U.S. 694 (1998) ............................................................................... 4

*World-Wide Volkswagen v. Woodson,*
  444 U.S. 286 (1980) ............................................................................... 17

## RULES

Fed. R. Bankr. P. 7001(10) .......................................................................... 13

Fed. R. Bankr. P. 7004 ................................................................................ 14

Fed. R. Bankr. P. 7004(a)(1) ...................................................................... 14

Fed. R. Bankr. P. 7004(f) ....................................................................... 14, 15

Fed. R. Civ. P. 4(a) .................................................................................... 14

Fed. R. Civ. P. 4(b) .................................................................................... 14

Fed. R. Civ. P. 4(c)(1) ................................................................................ 14

Fed. R. Civ. P. 4(d)(1) ................................................................................ 14

Fed. R. Civ. P. 4(e) .................................................................................... 14

Fed. R. Civ. P. 4(f) .................................................................................. 4, 14

Fed. R. Civ. P. 4(f)(1) ................................................................................ 15

Fed. R. Civ. P. 4(g) .................................................................................... 14

Fed. R. Civ. P. 4(h) ................................................................................. 4, 14

Fed. R. Civ. P. 4(i) ..................................................................................... 14

Fed. R. Civ. P. 4(j) ..................................................................................... 14

Fed. R. Civ. P. 4(k) .................................................................................... 14

Fed. R. Civ. P. 4(l) ........................................................................................................ 14

Fed. R. Civ. P. 4(m) ...................................................................................................... 14

**STATUTES**

11 U.S.C. § 544 ...................................................................................................... 10, 13

11 U.S.C. § 544(b) ......................................................................................................... 10

28 U.S.C. 1334(b) .................................................................................................. 9, 10, 11

28 U.S.C. § 1441 ...................................................................................................... 11, 13

28 U.S.C. 1452 ......................................................................................................... 11, 13

28 U.S.C. § 1452(a) ....................................................................................... 9, 10, 11, 13, 15

**MISCELLANEOUS**

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in
    Civil or Commercial Matters, TIAS #10072, 21 U.S.T. 361 (Feb. 10, 1969) 28
    U.S.C.A., 1988 Sup. pamphlet at 21 .................................................... 3, 4, 5, 6, 7, 9, 15

4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1068.1 (3d
    ed.) ............................................................................................................................. 13

## INTRODUCTION

Defendant Grupo México, S.A. de C.V. ("Grupo México," "Grupo," or "New Grupo") devised and carried out a plan to take the crown jewel of ASARCO LLC's mining operations at a deficient price. At Grupo's direction, an insolvent ASARCO transferred its 54.2% ownership interest in Southern Peru Copper Corporation ("SPCC") to its parent, Americas Mining Corporation ("AMC"), the wholly owned subsidiary of Grupo, with the actual intent to defraud its creditors (the "SPCC Transaction"). ASARCO is now in chapter 11 bankruptcy. On behalf of its defrauded creditors, ASARCO seeks to hold Grupo accountable and to recover its majority ownership interest in SPCC for the benefit of its bankruptcy estate.

The Court should deny Grupo's motion to remand because removal was proper. ASARCO and its wholly owned subsidiary Southern Peru Holdings LLC ("Southern Peru Holdings"), which held ASARCO's interest in SPCC at the time of the SPCC Transaction, are each entitled to remove the fraudulent transfer claims against Grupo. ASARCO, as debtor in possession, is a real party in interest to this litigation, and Southern Peru Holdings, also a removing party, is a named party to this litigation.

The Court should also deny Grupo's motion to dismiss for improper service. Grupo offers no evidence to rebut the presumption that service was valid, admits that it received the summonses and complaints in both English and Spanish, and admits that it was aware it had been sued in this litigation. Grupo was properly served by the Mexican Central Authority, which certified the propriety of the service and lodged no objections to it.

Finally, the Court should deny Grupo's motion to dismiss for lack of personal jursidiction because the exercise of either specific or general jurisdiction is appropriate. The Court has specific jurisdiction over Grupo because of its active involvement in the United States in the fraudulent transfer.

REDACTED

REDACTED

The Court also has general jurisdiction over Grupo because it has had systematic and continuous contacts with the United States. For years, Grupo has regularly conducted business in the United States.

REDACTED

## ARGUMENT AND AUTHORITIES

**I.    SERVICE ON GRUPO MÉXICO WAS PROCEDURALLY PROPER AND EFFECTIVE TO PUT IT ON NOTICE THAT IT WAS A DEFENDANT IN THE STATE COURT ACTION.**

REDACTED

Grupo's objection to service is based on the assertion that it was served by a "third party process server in México City." (Grupo Mem. in Supp. Mot. to Remand (Dkt. #30) at 7). Grupo offers no evidence in support of this statement. (*See* Am. Decl. of Alberto de la Parra (containing no testimony on service of process)).[1]

Grupo was served in the State Court Action at its corporate offices in México City by a notifications clerk of the Mexican court selected by the Mexican Government's Secretariat of Foreign Relations. In contrast to Grupo, ASARCO offers substantial evidence proving that service on Grupo México was proper and effective to notify Grupo that it was a defendant in the State Court Action. (*See* Ex. 1, Karsten Aff., and accompanying exhibits; Ex. 2, Broaddus Aff., and accompanying exhibits). The Court should find that service was procedurally proper and effective.

### A.    The Hague Convention Governs Service Procedures in this Case.

Service on Grupo was valid because it complied with the requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, TIAS #10072, 20 U.S.T. 361 (Feb. 10, 1969) 28 U.S.C.A., 1988 Sup. pamphlet at 21 (the "Hague Convention"). Rule 4(f) of the Federal Rules of Civil Procedure (the

---

[1]    Reference is made to the Amended Declaration of Alberto de la Parra. Grupo filed a Declaration of Alberto de la Parra in support of its memorandum of law (Dkt. #31). On July 5, 2007, after Mr. de la Parra's deposition, counsel for Grupo served an amended declaration but did not file it with the Court. Neither declaration touches on the service issue.

3

"Rules"), applicable to corporations through Rule 4(h), provides that service may be effected outside the United States "by any internationally agreed means reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f). For service abroad, compliance with Hague Convention requirements is mandatory in countries that are signatories.[2] México is a signatory to the Hague Convention. *See Hein v. Cuprum, S.A. de C.V.*, 136 F. Supp. 2d 63, 70 n.4 (N.D.N.Y. 2001).

Under Article 3 of the Hague Convention, a plaintiff is required to send the summons and complaint, along with accompanying translations, "to the central authority designated by the government of the receiving country, who will then serve the document or shall arrange to have it served by the appropriate agency." *Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*, No. 05 CV 4260, 2006 WL 2015188, at *3 (S.D.N.Y. July 13, 2006). Article 4 of the Hague Convention provides: "If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request." 20 U.S.T. 361. Upon completion of service, the central authority is required under Article 6 of the Hague Convention to complete and return a certificate of service that includes details concerning service. *See Gateway Overseas*, 2006 WL 2015188, at *3.

A technical defect in following procedures mandated by the country's internal laws will not invalidate service. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301-02 (2d Cir. 2005) (holding that failure of French authorities to return the formal certificate was not fatal to service); *Greene v. Le Dorze*, No. CA 3-96-CV-590-R, 1998 WL 158632, at *2 (N.D. Tex. Mar. 24, 1998) ("As a practical matter, where a plaintiff has attempted in good faith to comply with the Hague

---

[2]    *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1998); *Vazquez v. Sund Emba AB*, 152 A.D.2d 389, 394-95 (N.Y.A.D. 1989) (citing *Volkswagenwerk*); *RSM Prod. Corp. v. Friedman*, No. 06 Civ. 11512, 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007).

Convention, and where a defendant received sufficient notice despite the technical defect, it is within the court's discretion to declare service properly perfected."). As long as a defendant actually receives service, and is not prejudiced, a minor technical defect should not invalidate service. *Greene*, 1998 WL 158632, at *3.

**B.    The Certificate of Service Establishes a Prima Facie Case for Proper Service.**

The return of a completed certificate of service by a nation's central authority constitutes *prima facie* evidence that service under the Hague Convention was proper.[3] In *Northrup King*, a Spanish company, COPSA, was sued by an American company in Minnesota. COPSA argued that the Spanish Central Authority had neglected to follow Spanish law in effecting service, and that service was therefore defective. The Eighth Circuit rejected COPSA's argument and held that service was proper:

> The Spanish Central Authority's return of a completed certificate of service is prima facie evidence that the Authority's service on COPSA was made in compliance with Spanish law. The Convention requires that the Central Authority serve the documents by a method specified by its own law or by the sender that complies with local law and reserves to the Central Authority the right to object to documents if they do not comply with the Convention. By not objecting to the documents and by certifying service the Central Authority indicated that the documents complied with the Convention and that it had served them in compliance with the Convention, i.e., that it had made service as Spanish law required. We decline to look behind the certificate of service . . . .

*Northrup King*, 51 F.3d at 1390.

To overcome the presumption that service was proper, a defendant <u>must</u> offer convincing evidence asserting specific facts that would negate service.[4]

---

[3]    *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1389 (8th Cir. 1995); *In re Vitamins Antitrust Litig.*, No. MISC 99-197(TFH), 2001 WL 34088810, at *1 (D.D.C. Mar. 9, 2001).

[4]    *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) ("A signed return of service constitutes *prima facie* evidence of valid service which can be overcome only by strong and convincing evidence."); *Mobern Elec. Corp. v. Walsh*, 197 F.R.D. 196, 198–99

Grupo offers no evidence to support its claim that service of process here "was attempted by an unauthorized third party," (Grupo Mem. in Supp. Mot. to Remand (Dkt. #30) at 7), much less "strong and convincing evidence" that service was improper. *O'Brien*, 998 F.2d at 1398. Grupo's conclusory statement is irrelevant, as is its lone authority on the issue, in which a plaintiff attempted service of process in México by hiring a private process server to personally deliver a summons and complaint to the defendant's home. *See NSM Music, Inc. v. Villa Alvarez*, No. 02 C 6482, 2003 WL 685338, at *1 (N.D. Ill. Feb. 25, 2003). The court in *NSM Music* explained that "the Hague Convention contemplates personal service via the authorities of the country of destination . . . ." *Id.* That is precisely the manner in which service of process was effected on Grupo—by a notifications clerk of a civil court in México at the direction of México's Hague Convention central authority.

### C.    The Evidence Shows Conclusively that Service Was Effective.

The plaintiffs in the State Court Action followed Hague Convention protocols in effecting service on Grupo in July 2005. Just as in *Northrup King*, the affidavit of service in this case establishes that Grupo was properly served under the Hague Convention. The evidence shows that the following events occurred in 2005:

1.    In May 2005, plaintiffs' counsel hired APS International, Ltd. to direct service of process on Grupo in México. (Ex. 1, Karsten Aff., ¶ 3; Ex. 2, Broaddus Aff., ¶ 3). Upon receiving them, APS translated the Verified Complaint, the First Amended Verified Complaint, the Second Amended Verified Complaint, the Summons, and two Supplemental Summonses (the "*Burns* Documents") into Spanish. (Ex. 1, ¶¶ 4 & 6; Ex. C to Ex. 1).

---

(D.C.D.C. 2000) (rejecting defendant's argument that service was improper where defendant failed to provide any evidence to overcome return of service); *Frof, Inc. v. Harris*, 695 F. Supp. 827, 829 (E.D. Pa. 1988) (stating that a bare allegation by a defendant in an affidavit is not enough to overcome a return of service).

2.   On May 17, 2005, APS sent a Request for Service Abroad of Judicial or Extrajudicial Documents, with copies of the *Burns* Documents, their Spanish translations, a summary of the *Burns* Documents, and its Spanish translation, to the Ministry of Foreign Relations Office of the General Directorate of Legal Matters, the central authority designated by México when it acceded to the Hague Convention (the "Central Authority"). (*Id.* ¶ 4; Ex. C to Ex. 1).

3.   On June 14, 2005, the Central Authority forwarded the request to the Superior Courts in México City. (Ex. 2. to Ex. 2, at 002–003[5] & Ex. 1 to Ex. 5, Brown Aff., at 002-003). The Central Authority did not inform APS that the request failed to comply with the provisions of the Hague Convention, as it was required to do under Article 4 of the Hague Convention—and presumably would have done—if the request did not comply with the Hague Convention (Hague Convention art. 4; Ex. 1, ¶¶ 10-11). In fact, the Central Authority stated that the request and accompanying documents "meet[] the legal requirements established under article 1, 2, 3 and 5 of the [Hague Convention]." (Ex. 2 to Ex. 2, at 002 & Ex. 1 to Ex. 5 at 002).

4.   In a June 21, 2005 court order, Mexican Federal Civil Claims Court Thirty Five acknowledged receipt of the documents from the Ministry. (Ex. 2 to Ex. 2, at 244 & Ex. 2 to Ex. 5, at 244). The court ordered that a summons be issued to Grupo "through the offices of the Notifications Clerk attached to this Court, pursuant to the terms of part V, article 60 of the Organic Law of the Superior Court of Justice of the Federal District." (*Id.*). The court further ordered that, after service, the documents "be returned to the [Central Authority] for subsequent forwarding to the original petitioner via the due legal channels." (*Id.*).

---

[5]      Exhibit 2 to the Broaddus Affidavit is a copy of the original service documents returned by the Mexican Central Authority after Grupo México was served.  The packet does not contain consistent page numbering. For ease of reference, the three digit page number appearing on the top right corner of the majority of the documents (starting with the seventh page of the packet) will be used for pinpoint cites. This number, where existing, also appears on the certified translations accompanying the Brown Affidavit.

5.  On July 1, 2005, Neftali Segovia Zarate (the Notifications Clerk of Civil Court Thirty Five) visited Grupo México's office at Avenida Baja California 200, Colonia Roma Sur, 06760, in México City. (Ex. 2 to Ex. 2, at 247 & Ex. 2 to Ex. 5, at 247). Assistant Manager of the Legal Department Daniel E. Martens Estrada answered the door at the address, identified the office as that of Grupo México, and stated that he was an employee of the company. (*Id*.; Ex. 16 to Ex. 4; Ex. 6, Majestic Aff.). Zarate handed the *Burns* papers to Estrada. (Ex. 2 to Ex. 2, at 247 & Ex. 2 to Ex. 5 at 247).

6.  On July 5, 2005, the Thirty-Fifth Civil Court issued an order stating that "[t]he record of notification shall hereby be attached to the case file and is deemed to have been performed to all due legal effects." (Ex. 2 to Ex. 2, at 16,[6] & Ex. 2 to Ex. 5, at 16) (emphasis added).

7.  By letter dated August 19, 2005, the Central Authority returned the documents to APS and certified that service had been effected as requested. (Ex. C to Ex. 1, at 1; Ex. 1 to Ex. 5). The documents included the Certificate of Service required by Article 6 of the Hague Convention. (Ex. C. to Ex. 1, at 14). The Certificate had been completed by Zarate, confirming that Grupo was served with the *Burns* Documents on July 1, 2005, at its México City address by delivery of the documents to Daniel E. Martens Estrada. The Certificate bears the seal of the Thirty-Fifth Civil Court. (*Id*.; Ex. 2 to Ex. 2, at 246 & Ex. 2 to Ex. 5, at 246).

8.  On August 23, 2005, APS forwarded all of the service documents to plaintiffs' counsel. (Ex. 1, Supp. Karsten Aff., ¶ 2). Counsel filed them with the New York state court on September 14, 2005. (Ex. 3 to Ex. 2).

Grupo's characterization of the Notifications Clerk of Civil Court Thirty-Five, selected by the Mexican Central Authority itself, as a "third-party process server" is unsupported by fact or

---

[6]    The page cited directly follows 247 but does not have a three digit page number. Instead, the page number appears at top center.

law. Grupo has offered no evidence or legal authority to question the validity of the Central
Authority's affidavit of service, and has offered no reason for this Court to look beyond the face of
the Certificate of Service. Because service was "done in accordance with the Hague Convention,
the laws of México and the laws of the United States," (Ex. 1, ¶ 12) this Court should deny
Grupo's motion to dismiss.

## II.    REMOVAL WAS PROPER.

Removal of the fraudulent transfer claims against Grupo was proper under
28 U.S.C. §§ 1334(b) and 1452(a) because the claims arise under the Bankruptcy Code and relate
to ASARCO and Southern Peru Holdings' bankruptcy cases. Together, §§ 1334(b) and 1452(a)
grant any party to a state-court action the right to remove claims or causes of action arising under
the Bankruptcy Code or related to a pending bankruptcy case. See 28 U.S.C. §§ 1334(b) &
1452(a). The fraudulent transfer claims against Grupo "arise under" the Bankruptcy Code
because, but for § 544(b) of the Bankruptcy Code, ASARCO would lack standing to prosecute
those claims. Rahl v. Bande, 316 B.R. 127, 131 (S.D.N.Y. 2004). The valuable claims also "relate
to" ASARCO and Southern Peru Holdings' bankruptcy cases because they could alter ASARCO
and Southern Peru Holdings' rights. See Pacor, Inc. v. Higgins, 743 F.2d 984, 995 (3d Cir. 1984),
disagreed with on other grounds, In re Cathedral of Incarnation in Diocese of Long Island, 90
F.3d 28, 33 (2d Cir. 1996).

As explained in ASARCO and Southern Peru Holdings' memorandum of law in support of
their motions to substitute plaintiffs and to transfer venue, fraudulent transfer claims of the type
asserted in the State Court Action are automatically stayed when the transferor who made the
fraudulent transfer files for bankruptcy. See FDIC v. Hirsch (In re Colonial Realty Co.), 980 F.2d
125, 130-32 (2d Cir. 1992). At that time, the transferor, as debtor in possession, gains the
exclusive right to prosecute fraudulent transfer claims for the benefit of its bankruptcy estate. See

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 222 (S.D.N.Y. 2002). Section 544 of the Bankruptcy Code provides the statutory authority for a debtor in possession to pursue such claims in bankruptcy. 11 U.S.C. § 544(b). Accordingly, the fraudulent transfer claims against Grupo "arise under" the Bankruptcy Code and, as such, were properly removed under §§ 1334(b) and 1452(a). *See Rahl*, 316 B.R. at 131.

The fraudulent transfer claims against Grupo were also properly removed under §§ 1334(b) and 1452(a) because they "relate to" ASARCO and Southern Peru Holdings bankruptcy cases. The Southern District of New York applies the test announced by the Third Circuit in *Pacor* for determining related-to jurisdiction: "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and the administration of the bankrupt estate." *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 224505, at *4 (S.D.N.Y. Feb. 5, 2004). The valuable fraudulent transfer claims in the State Court Action challenging the transfer of ASARCO's interest in SPCC plainly could have a "conceivable effect" on ASARCO's bankruptcy estate.

Grupo México cited no case law in saying that the removed claims do not arise under the Bankruptcy Code. (Grupo Mem. Law in Supp. Mot. to Remand (Dkt. #30) at 10). Grupo's position today is contrary to the one taken by its own counsel in September 2005, when Grupo's lawyer Richard Havel sent a letter to Jack Kinzie at Baker Botts, ASARCO's bankruptcy counsel, urging Baker Botts to file a suggestion of bankruptcy in the State Court Action on the grounds that the Bankruptcy Code's automatic stay applied. (*See* Ex. 15 to Ex. 4, at 2-4) ("As counsel to the defendants in the State Action we reiterate our position (discussed in greater detail below) that any and all claims alleged in the State Action belong to ASARCO as debtor in possession . . ."). In that

5-page letter, Grupo's counsel outlined a persuasive argument that agrees in all material respects with the one ASARCO now advances. (*Compare* ASARCO Mem. Law in Supp. of Mot. to Subst. (Dkt. #18) at 7-11 *with* Havel Letter to Kinzie, Ex. 15 to Ex. 4).

Grupo provides no support for its novel argument that the bankruptcy removal statute, which expressly provides for removal by "any party," should be construed in light of the provisions of the general removal statute, which limits removal to defendants only. (Grupo's Mem. Law in Supp. Mot. to Remand (Dkt. #30) at 8 n.12). The plain language of § 1452 and case law make clear that removal under § 1452(a) is not limited to defendants alone but applies to any party. *Franck v. Sullivan (In re Worldcom, Inc. Sec. Litig.)*, 2003 WL 22383090, at *2 (S.D.N.Y. Oct. 20, 2003) (holding that bankruptcy removal provision "does not require the consent of others"). The *Things Remembered* case cited by Grupo simply stands for the proposition that § 1452 is not necessarily the <u>exclusive</u> means by which a cause of action touching on bankruptcy can be removed, and that cases removed under § 1452 are subject to the same standard of review for remand orders as cases removed under 28 U.S.C. § 1441. The case provides no support for using § 1441 to limit the express language of § 1452. *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995).

That ASARCO was not a named party in the State Court Action does not invalidate the removal. ASARCO is a real party in interest to the State Court Action and, as such, has the right to remove the fraudulent transfer claims against Grupo under §§ 1334(b) and 1452(a). (*See* ASARCO Mem. Law in Supp. of Mot. to Subst. Parties (Dkt. #18) at 7-11). ASARCO need not undergo the formality of intervening in the stayed State Court Action to be substituted as a party before removing. *Id.* Case law provides ample support for ASARCO's position, and to hold otherwise would exalt form over substance and waste judicial resources. *Id.*

11

Moreover, Grupo ignores a salient fact: Southern Peru Holdings was a named party in the State Court Action and, along with ASARCO, filed the notice of removal. (Am. Notice of Removal (Dkt. #16)). This fact alone is sufficient to defeat Grupo's claim that removal was improper because no "party" had removed.

## III.  JURISDICTION OVER GRUPO MÉXICO IS PROPER IN BOTH NEW YORK AND TEXAS.

Both this Court and the Southern District of Texas have specific personal jurisdiction over Grupo because Grupo was a primary participant in the SPCC Transaction. Grupo's substantial involvement in orchestrating and directing the fraudulent transfer, from which it benefited handsomely, constitutes purposeful availment of the laws and protections of the United States, and Grupo could reasonably anticipate being haled into court in the United States. Both this Court and the Southern District of Texas also have general personal jurisdiction over Grupo because it has established minimum contacts with the United States as a whole.

### A.    At this Stage in the Proceeding, ASARCO and Southern Peru Holdings Need Only Make a Prima Facie Showing of Jurisdiction.

In the context of a motion to dismiss for lack of personal jurisdiction, ASARCO and Southern Peru Holdings "need make only a prima facie showing of jurisdiction through [their] own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *Landry v. Price Waterhouse Chartered Accountants*, 715 F. Supp. 98, 100–01 (S.D.N.Y. 1989) (same). Moreover, ASARCO and Southern Peru Holdings' proof is to be construed in the light most favorable to them; all doubts are to be resolved in their favor. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (stating that these materials are "construed in the light most favorable to plaintiff and all doubts are resolved in its favor."); *Maranga v. Vira*, 386 F. Supp. 2d 299, 302 (S.D.N.Y. 2005) (same).

12

**B.    The Relevant Inquiry Is Whether Grupo México Has Established the Necessary Contacts with the United States as a Whole, not with New York or Texas Individually.**

Grupo would confuse the basic nature of this proceeding and misapprehend the legal standard concerning personal jurisdiction. This is not a state-law diversity case that was removed under 28 U.S.C. § 1441. Instead, this is a federal-question case that was removed under 28 U.S.C. § 1452 and will be prosecuted by ASARCO and Southern Peru Holdings pursuant to 11 U.S.C. § 544. New York's long-arm statute, therefore, is irrelevant to the jurisdictional analysis. In federal-question cases, the jurisdictional question is answered by examining federal law. Under the federal laws and rules applicable to this case, which provide for worldwide service of process and nationwide personal jurisdiction, a foreign defendant is subject to personal jurisdiction in any judicial district in the United States, so long as the exercise of jurisdiction is consistent with constitutional due process.

The exercise of personal jurisdiction over a foreign defendant is proper if it comports with the due process clause of the Fifth Amendment to the United States Constitution. In applying a "nationwide contacts" test to determine Fifth Amendment compliance, courts consider not only the defendant's contacts with the state where the action is pending, but all of the foreign defendant's contacts with any of the states or territories of the United States. *See generally* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1068.1 (3d ed.) (discussing personal jurisdiction in federal question cases).

Under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), claims and causes of action removed under 28 U.S.C. § 1452(a) are considered "adversary proceedings," and are governed by the Bankruptcy Rules found in Part VII of the Bankruptcy Rules. Fed. R. Bankr. P. 7001(10). The claims and causes of action removed by ASARCO and Southern Peru Holdings in their Amended Notice of Removal (Dkt. #16), were removed pursuant to § 1452(a), making this

13

an adversary proceeding connected with ASARCO's bankruptcy case. Consequently, the removed claims are governed by the Bankruptcy Rules.

Service and jurisdiction in adversary proceedings are governed by Bankruptcy Rule 7004. Bankruptcy Rule 7004(a)(1) makes Rules 4(a), (b), (c)(1), (d)(1), (e)-(j), (l), and (m) of the Federal Rules of Civil Procedure applicable in adversary proceedings such as this one. Significantly, and intentionally, absent from the list is Rule 4(k), which imposes certain geographical limitations on service. Service can be effected under Rules 4(f) and (h) on corporations and individuals in foreign countries.

Bankruptcy Rule 7004(f) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jursidiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Fed. R. Bankr. P. 7004(f).

Courts have characterized Bankruptcy Rule 7004(f) as permitting "worldwide service of process, limited only by the due process clause of the Fifth Amendment."[7] Thus, under the Bankruptcy Rules applicable to this proceeding, the exercise of jurisdiction is permissible in any judicial district in the United States, so long as exercising jurisdiction is consistent with the Fifth Amendment to the United States Constitution. Courts have held that determining if jurisdiction is constitutional in bankruptcy cases requires an analysis of the foreign defendant's contacts with the entire United States, rather than with the particular forum state.[8]

---

[7]    *North v. Winterthur Assurances (In re North)*, 279 B.R. 845, 853 (Bankr. D. Ariz. 2002); *In re Federalpha Steel LLC*, 341 B.R. 872, 887 (Bankr. N.D. Ill. 2006) (quoting *In re North*).

[8]    The court in *Federalpha* explained: "When the Fifth Amendment governs personal

14

The Southern District of New York has recognized the applicability of the nationwide contacts test in adversary proceedings. *Gen. Am. Commc'ns Corp. v. Landsell (In re Gen. Am. Commc'ns Corp.)*, 130 B.R. 136, 159 (S.D.N.Y. 1991). The district court upheld the bankruptcy court's exercise of personal jurisdiction over the defendant, concluding that "[t]he presence of a Federal Question requires that we apply a Federal 'minimum contact' test rather than a State 'minimum contacts' test. Title 11 provides us with the Federal question."[9]

Similarly, the bankruptcy court in *Enron Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 444 (Bankr. S.D.N.Y. 2004), adopted a national contacts test. The court found that service under the Hague Convention was sufficient to satisfy the statute's grant of personal jurisdiction. *See id.* at 446 & n.10 (noting that Rule 7004(f) incorporates Rule 4(f)(1), which authorizes service under the Hague Convention). The court recognized that the Fifth Amendment's Due Process Clause provided the limits on the court's jurisdiction, and that clause "requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the forum state." 316 B.R. at 445 (citation, quotation marks, and alteration omitted); *see also Adelphia Communications Corp. v Am. Channel, LLC (In re Adelphia Communications Corp.)*, No. 06-01528, 2006 WL 1529357, at *8 (Bankr. S.D.N.Y. June 5, 2006) (adopting *In re Enron*'s use of a federal minimum contacts test).

The national contacts test applies to all adversary proceedings, including adversary proceedings like this one involving state-court actions removed under 28 U.S.C. § 1452(a). *See*

---

jurisdiction, . . . the relevant forum is not the state in which the court sits. Under the Fifth Amendment, 'due process requires only that each party have sufficient contacts with the United States as a whole rather than any particular state or other geographic area.'" 341 B.R. at 887 (quoting *United States v. De Ortiz*, 910 F.2d 376, 382 (7th Cir. 1990)).

[9]    *Id.* at 160; *see also Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 104 F. Supp. 2d 279, 283 (S.D.N.Y. 2000) (stating that most courts, including the Second Circuit, "have adopted the view that minimum contacts with the United States satisfy the Fifth Amendment in cases arising under federal law" and following that view).

*Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 629-30 (4th Cir. 1997) (determining that Bankruptcy Rule 7004(f) applied to removed state-court proceeding for jurisdictional purposes, and applying nationwide contacts test). The Fourth Circuit explained that a party's minimum contacts with the state from which the action was removed are irrelevant. "This is so because when an action is in federal court on 'related to' jurisdiction, the sovereign exercising authority is the United States, not the individual state where the federal court is sitting." *Id.*; *see also In re JT Moran Fin. Corp.*, 124 B.R. 931, 934 (S.D.N.Y. 1991) (holding that district court could exercise jurisdiction under Bankruptcy Rules even though it would not have had jurisdiction over case outside the bankruptcy context); *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 763 (M.D. Pa. 2005) ("Once a case is removed to a district court, state limits on the territorial effectiveness of service no longer govern.").

Courts have considered a variety of contacts when analyzing whether a defendant's contacts with the United States support the exercise of personal jurisdiction. Significantly, buying a controlling interest in a U.S. corporation, through a subsidiary, as part of a scheme to loot the corporation, has been grounds for a court's exercise of jurisdiction. *Goodson v. Rowland (In re Pintlar Corp.)*, 133 F.3d 1141, 1146–47 (9th Cir. 1998). A defendant's participation in a single overseas meeting is enough to support personal jurisdiction if the meeting will have effects in the United States. *See Tex. Int'l Magnetics, Inc. v. Auriga-Aurex, Inc. (In re Magnetic Audiotape Antitrust Litig.)*, 334 F.3d 204, 207–08 (2d Cir. 2003) (stating that allegations of price-fixing meeting in Korea were arguably sufficient to survive motion to dismiss). The exercise of jurisdiction may be based on a defendant's ownership of a U.S. subsidiary, travel to the United States by a defendant's employees, and correspondence by a defendant suggesting that it operated from an office in the United States. *Anheuser-Busch, Inc. v. Paques, Inc. (In re Paques, Inc.)*, 277

16

B.R. 615, 635–36 (Bankr. E.D. Pa. 2000). It may also be supported by a defendant's SEC filings, company officers who reside in the United States, large transactions in the United States with U.S. financial institutions, and consent to jurisdiction of U.S. courts as part of those transactions. *In re Federalpha Steel*, 341 B.R. at 888–89.

### C.    Jurisdiction Over Grupo México Is Proper Because of Its Specific Activities in the United States Relating to the SPCC Transaction.

Grupo's actions in the SPCC Transaction provide a conclusive basis for the exercise of specific personal jurisdiction. A court may assert specific personal jurisdiction over a foreign defendant even when the defendant's actions do not rise to a level sufficient to exercise general jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984); *In re Federalpha Steel*, 341 B.R. at 887. The national contacts test applies to the specific jurisdictional analysis. *Helicopteros*, 466 U.S. at 414. A court will exercise jurisdiction if the defendant's contacts show that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities in the forum" such that it "should reasonably anticipate being haled into court there." *Burger King v. Rudzewicz*, 471 U.S. 462, 474-75 (1985); *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 295 (1980).

Specific jurisdiction is not limited to cases in which a defendant has committed a tort in the United States. A court will exercise specific jurisdiction if it finds the defendant has engaged in any of the following three types of actions: "(1) transacting business in the United States; (2) doing an act in the United States; or (3) having an effect in the United States by an act done elsewhere." *United States v. Int'l Bhd. of Teamsters*, 945 F. Supp. 609, 620 (S.D.N.Y. 1996) (citing *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995)). Thus, a defendant need not have taken any action in the United States—if its actions outside the United States merely have an effect in the United States, such actions can provide the basis for jurisdiction. *Id.*

17

Grupo's actions in the United States related to the SPCC Transaction support exercise of specific jurisdiction.

REDACTED

Motivated by these incentives, Grupo performed several key acts in the United States that were related to—indeed, indispensable to—carrying out the fraudulent transfer of the SPCC shares.

In November 1999, Grupo México S.A. de C.V. ("Old Grupo") (through its wholly-owned subsidiary Asmex Corporation) bought ASARCO Incorporated (now the Debtor ASARCO LLC) in a leveraged buyout. (Ex. 1 to Ex. 3)

REDACTED

REDACTED

On or about October 12, 2000, Nueva G. México S.A. de C.V. obtained 98 percent of Grupo México in a share exchange. Old Grupo transferred certain of its assets (including its stock in ASARCO) to subsidiaries of "New Grupo" and took the name Minera México, S.A. de C.V., while New Grupo became Grupo México S.A. de C.V. (now known as Grupo México S.A.B. de C.V.) (Ex. 9 to Ex.3). New Grupo was sued in the State Court Action based on its conduct in connection with the fraudulent transfer of the SPCC stock and it was New Grupo that was properly served with process in the State Court Action in July 2005. It is New Grupo which asks this Court to remand or dismiss the removed claims.



REDACTED

As a result of those negotiations, Grupo entered into a Consent Decree with the United States that set forth the terms on which the SPCC transaction could occur. (Ex. 11 to Ex. 3). Grupo agreed to guarantee a $100 million note that the United States demanded be given as additional consideration for the SPCC transfer. (Ex. 11 to Ex. 3, at 12; Ex. 16 to Ex. 3). Grupo also consented to the jurisdiction of a U. S. federal district court in any action to enforce its guarantee obligations under the Consent Decree. (Ex. 11 to Ex. 3, ¶ 3).

Two months later, on March 31, 2003, Grupo carried out the SPCC transaction. The complex series of transfers by which the SPCC transaction was effected is described in a Funds Flow Memorandum signed by Grupo (the "Memorandum") (Ex. 12 to Ex. 3). The Memorandum shows "the flow of funds and certain other procedures" that were supposed to, and did in fact, occur on March 31, 2003 in connection with the SPCC transaction. (*Id.* at 1; Ex. 1 to Ex. 4, at 144-45).

The testimony of Grupo's own Rule 30(b)(6) witness, the Memorandum, and other

20

documentary evidence establish these additional specific jurisdiction factors concerning the SPCC

transaction on or around March 31, 2003:

REDACTED

**D.    Jurisdiction Over Grupo México Is Proper Because of its Systematic and Continuous Contacts with the United States.**

Grupo has had systematic and continuous contacts with the United States such that the

exercise of general personal jursidiction would not offend traditional notions of fair play and

substantial justice. Grupo purposefully availed itself of the benefits and protections of United

States laws, and could reasonably anticipate being haled into court here.

Courts applying the national contacts test will exercise general jurisdiction over a foreign

defendant whose contacts with the United States are not merely "random," "fortuitous," or

"attenuated." *In re Federalpha Steel*, 341 B.R. at 887 (quoting *Burger King*, 471 U.S. at 474).

Once the court is satisfied that the defendant has had "systematic and continuous contacts" with

21

the United States in the aggregate, the court considers whether, given the existence of such contacts, the exercise of personal jurisdiction "'would offend traditional notions of fair play and substantial justice.'" *Id.* at 888 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)). After the court has found minimum contacts with the United States as a whole, the burden is on the defendant to show that the exercise of jurisdiction would be unreasonable. *Id.* at 888. In such circumstances, courts expect that defendants will only rarely be able to make a "compelling case" against the exercise of personal jurisdiction. *Id.* (quoting *Burger King*, 471 U.S. at 476-77 and citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 n.10 (7th Cir. 2003)).

The Declaration of Alberto de la Parra Zavala, Grupo's only "evidence," does not withstand scrutiny and is neither probative nor relevant. First, to the extent the Declaration negates the existence of Grupo México's contacts with the United States, it does so only in the present tense, and, therefore, only with respect to the present time, and not the relevant years before the filing of the State Court Action. *See* Am. de la Parra Decl., ¶¶ 6, 8-11. The minimum contacts analysis is based on the contacts of the foreign defendant with the United States in the years leading up to the lawsuit in which the foreign defendant contests jurisdiction. *See Helicopteros*, 466 U.S. at 411 (analyzing defendant's contacts over seven-year period); *Slurry Sys., Inc. v. Berminghammer Found. Equip.*, No. 2:04-CV-456 PPS, 2005 WL 2240064, at *4 (N.D. Ind. Sept. 14, 2005) (same). *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (holding that "district courts should examine a defendant's contacts with the forum . . . over a period that is reasonable under the circumstances," using six-year period).

The State Court Action was filed on October 15, 2004, making Grupo's period of relevant contacts with the United States October 15, 1997 through October 15, 2004. During that period,

Grupo's predecessor purchased ASARCO and Grupo guaranteed the debt ASARCO incurred in the purchase—a debt that played a critical role in the later fraudulent transfer of the SPCC shares to AMC at the behest of New Grupo. The de la Parra Declaration does not even purport to negate Grupo's contacts with the United States during that time period. The de la Parra Declaration also is deficient because it limits itself to negating contacts of Grupo with Texas and New York, ignoring the fact that the relevant inquiry is Grupo's <u>nationwide</u> contacts. *See* Am. de la Parra Decl.

By contrast, there is extensive evidence of Grupo's numerous and systematic contacts with the United States. Grupo's amended responses to ASARCO's requests for admission reveal that during the relevant time period Grupo (or its officers, directors, or employees):



icts

REDACTED

---

[10]     Even if the nationwide contacts test did not apply, the record contains substantial evidence of Grupo contacts with New York.

REDACTED

ASARCO and Southern Peru Holdings' own investigation of Grupo's contacts revealed that Grupo's responses to discovery requests are incomplete. For example, in response to an interrogatory calling for Grupo to identify its bank accounts in the United States during the relevant time period, Grupo identified one account. (Ex. 7 to Ex. 4, No. 7). But ASARCO discovered on its own that in two separate lawsuits in New York state court, Grupo proffered affidavits of Daniel Tellechea, its Chief Financial Officer, proving that Grupo held accounts at JP Morgan Chase and Banco Nacional de México, S.A. (Exs. 19-20 to Ex. 4). Late in the afternoon of July 9, 2007, Grupo finally produced information relating to its U.S. bank accounts. (Ex. 22 to Ex. 4). But Grupo only provided information concerning present accounts, and no information about its U.S. accounts in the years leading up to the SPCC Transaction. *Id.*

Likewise, information sufficient to identify the lawsuits in which this proof was offered, though called for by ASARCO's Interrogatory No. 2, was not identified in Grupo's discovery responses. Grupo objected to personal jurisdiction in each of these two New York lawsuits. In both cases, the New York courts exercised jurisdiction over, and entered judgment against, Grupo. (Exs. 19-20 to Ex. 4).[11]

## CONCLUSION

For these reasons, ASARCO and Southern Peru Holdings respectfully request that the Court deny Grupo's motion to remand or dismiss.

---

[11]    The evidence shows that jurisdiction over Grupo is proper. However, if the Court is not fully convinced, ASARCO and Southern Peru Holdings respectfully request that the Court transfer this case to the Southern District of Texas without ruling on the question of jurisdiction so that ASARCO and Southern Peru Holdings may have additional time to obtain complete discovery and further establish that Grupo is subject to jurisdiction in the United States. The Court may order such a transfer under these circumstances. *See, e.g., Posven v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 400 n.3 (S.D.N.Y. 2004).

Dated: July 10, 2007                    Respectfully submitted,

| | |
|---|---|
| **BAKER BOTTS L.L.P.** | **JORDAN, HYDEN, WOMBLE CULBRETH & HOLZER, P.C.** |
| */s/ G. Irvin Terrell, Jr.* | |
| G. Irvin Terrell, Jr. (GT-3459) | Shelby A. Jordan |
| Attorney-in-Charge | Texas State Bar No. 11016700 |
| Texas State Bar No. 19794500 | Suite 900, Bank of America |
| Samuel Cooper | 500 North Shoreline |
| Texas State Bar No. 00792427 | Corpus Christi, Texas 78471 |
| Michael Massengale | Telephone: 361.884.5678 |
| Texas State Bar No. 24003704 | Facsimile: 361.888.5555 |
| Rebeca Huddle | Email: *sjordan@jhwclaw.com* |
| Texas State Bar No. 24012197 | |
| 910 Louisiana Street | -and- |
| One Shell Plaza | |
| Houston, Texas 77002-4995 | **JORDAN, HYDEN, WOMBLE** |
| Telephone: 713.229.1231 | **CULBRETH & HOLZER, P.C.** |
| Facsimile: 713.229.2831 | |
| Email: *irv.terrell@bakerbotts.com* | Michael J. Urbis |
|     *samuel.cooper@bakerbotts.com* | Texas State Bar No. 20414130 |
|     *michael.massengale@bakerbotts.com* | 1534 E. 6th Street, Suite 104 |
|     *rebeca.huddle@bakerbotts.com* | Brownsville, Texas 78520 |
| | Telephone: 956.542.1161 |
| | Facsimile: 956.542.0051 |
| -and- | Email: *murbis@jhwclaw.com* |
| | |
| **BAKER BOTTS L.L.P.** | **COUNSEL TO ASARCO LLC AND SOUTHERN** |
| Jack L. Kinzie | **PERU HOLDINGS, LLC** |
| Texas State Bar No. 11492130 | |
| Fernando Rodriguez | |
| Texas State Bar No. 24005048 | |
| Eric A. Söderlund | |
| Texas State Bar No. 24037525 | |
| Thomas E. O'Brien | |
| Texas State Bar No. 24046543 | |
| 2001 Ross Avenue | |
| Dallas, Texas 75201-2980 | |
| Telephone: 214.953.6500 | |
| Facsimile: 214.661.6503 | |
| Email: *jack.kinzie@bakerbotts.com* | |
|     *fernando.rodriguez@bakerbotts.com* | |
|     *eric.soderlund@bakerbotts.com* | |
|     *tom.obrien@bakerbotts.com* | |

## CERTIFICATE OF SERVICE

I certify that on July 10, 2007, the foregoing document was served via overnight delivery service and email on the following counsel:

BARON & BUDD
Alan B. Rich, Esq.
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
(214) 520-1181 (facsimile)
*arich@baronbudd.com*

**ATTORNEYS FOR PLAINTIFFS**
**PHILLIP NELSON BURNS,**
**MIRJANA PAVKOVICH,**
**and WARREN ELMER HALPAP**

MILBANK, TWEED, HADLEY & McCLOY LLP
David R. Gelfand, Esq.
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
(212) 530-5219 (facsimile)
*dgelfand@milbank.com*

MILBANK, TWEED, HADLEY & McCLOY LLP
David S. Cohen
1850 K Street, NW
Suite 1100
Washington, D.C. 20006
(202) 835-7500
(202) 835-7586 (facsimile)
*dcohen2@milbank.com*

**ATTORNEYS FOR DEFENDANT**
**GRUPO MÉXICO, S.A. de C.V.**

*/s/ G. Irvin Terrell, Jr.*
G. Irvin Terrell, Jr. (GT-3459)

27