068

propiedad de AMC. Después de la adquisición, ASARCO perdió su identidad distinta y se controla totalmente por GRUPO MÉXICO y/o sus afiliados.

45. GRUPO MÉXICO forzó a ASARCO vender sus activos para pagar los costos de adquisición de GRUPO MÉXICO. A la indicación de GRUPO MÉXICO, aproximadamente $17 millones del equipo comercial de ASARCO se vendió en subasta.

46. A la indicación de GRUPO MÉXICO y según el acuerdo con Chase, ASARCO vendió su lucrativa división de especialidad química (Enthone) por quinientos tres millones de dólares ($503,000,000). Ahora Enthone es parte de Cookson Electronics PWB Materials and Chemistry, una división de Cookson Group plc, una compañía británica.

47. A la indicación de GRUPO MÉXICO y según el acuerdo con Chase, ASARCO vendió su lucrativa división de conglomerados (American Limestone) a Rinker Materials Corporation antes conocido como CSR America, Inc., por doscientos once millones de dólares ($211,000,000).

48. Los beneficios de estas ventas no se acumularon al beneficio de ASARCO ni sus acreedores ya que este dinero se aplicó a la deuda de adquisición y solamente benefició a Chase, GRUPO MÉXICO y los accionistas anteriores de ASARCO haciendo caso omiso de los reclamantes ambientales y de asbesto existentes y futuros. Estas cesiones por menos de recompensa justa, se hicieron sin buena fe, crearon o aumentaron la insolvencia e insuficiencia de capital de ASARCO y fueron en derogación de los derechos de los acreedores incluyendo los derechos de los demandantes.

49. A la indicación de GRUPO MÉXICO, los activos de ASARCO fueron desviados al perjuicio de los acreedores de ASARCO. Los beneficios del acuerdo

13

069

concerniente al litigio con los aseguradores de responsabilidad en exceso de ASARCO no fueron segregados ni mantenidos para pagar los reclamos conocidos de responsabilidad relacionados con la cobertura de seguros.  Como prueba clara del plan integrado liquidar a ASARCO al perjuicio de los acreedores no garantizados, los beneficios futuros del acuerdo de seguros se vendieron a descuento grande, y el dinero en efectivo se transfirió a la cuenta operativa de ASARCO y se gastó.

50.    En 2003, a la indicación de GRUPO MÉXICO y según el acuerdo con Chase, el interés de ASARCO en SPCC se transfirió a AMC, otra sociedad subsidiaria totalmente la propiedad de GRUPO MÉXICO.  Como contraprestación de esta cesión, GRUPO MÉXICO pagó a Chase y al sindicato de bancos, de parte de ASARCO, cuatrocientos cincuenta millones de dólares ($450,000,000) en reembolso de préstamos surgiendo de la adquisición, "perdonó" cierta deuda entre compañías a AMC y/o sus sociedades subsidiarias incluyendo a Mexicana de Cobre, S.A. de C.V. y acordó pagar doscientos cuarenta y tres millones de dólares ($243,000,000) en alguna fecha futura.  Parte de este último pago pueda acumular al beneficio de los acreedores no garantizados de ASARCO (principalmente como parte de un acuerdo con los Estados Unidos sobre algunos reclamos ambientales) pero representa una cantidad mucho menos que un equivalente justo por los activos.

## E.    ASARCO ACCIONADO POR CESIÓN FRAUDULENTA POR EL GOBIERNO DE LOS ESTADOS UNIDOS

51.    Después de que la transferencia de los activos restantes más valiosos de ASARCO (las acciones de SPCC mantenidas por SPHC) fuese propuesta, los Estados Unidos (un acreedor no garantizado con reclamos ambientales) inició una acción judicial contra ASARCO por cesión fraudulenta.  *(Los Estados Unidos de América contra Asarco*

14

070

*Southern Peru Holdings Corporation, CO2-5401 FDB* (Distrito Occidental de Washington) (más tarde transferido al Tribunal de Distrito de los Estados Unidos para el Distrito de Arizona y numerado de nuevo como Caso No. CV 02-2079-PHX-RCB).

52.     Durante el curso del litigio del Gobierno, ASARCO confesaba que ya no podía pagar sus deudas al vencerse.

53.     Los Estados Unidos finalmente resolvió sus reclamos contra ASARCO y aceptó por cien millones de dólares ($100,000,000), una cantidad mucho menos de la responsabilidad debida en los reclamos ambientales recién vencidos, y retiró su objeción a la transferencia. Este acuerdo no proporcionó beneficios ni protecciones en absoluto para los otros acreedores no garantizados de ASARCO, incluyendo a los demandantes.

54.     Basado en información y entendimiento, los Estados Unidos resolvió barato su reclamo porque las acciones de SPCC ya estaban gravadas por el préstamo de adquisición del demandado Chase, los activos de ASARCO ya estaban reducidos por la venta de Enthone y American Limestone, la capitalización de ASARCO era demasiada escasa para continuar muchas de sus operaciones comerciales y por las tergiversaciones financieras de ASARCO, GRUPO MÉXICO y el demandado Ernst & Young en cuanto al valor del interés de ASARCO en SPCC.

55.     La transferencia del interés de ASARCO en SPCC se facilitó por el demandado Ernst & Young quien imprudentemente y a sabiendas dio una opinión subvalorando este activo. Como el resultado directo de las tergiversaciones de Ernst & Young, los derechos de los demandantes fueron minados.

## ASARCO DESPUÉS DE LA COMPRA APALANCADA Y RELACIONADAS VENTAS DE ACTIVOS

15

071

56. Después de las cesiones descritas aquí en esto, ASARCO quedó como completo insolvente. El valor vendible actual de los activos de ASARCO es menos de la cantidad necesitada pagar las responsabilidades probables de la corporación, incluyendo los reclamos de lesión personal de los demandantes. ASARCO falta recursos suficientes pagar oportunamente a sus acreedores, incluyendo a los demandantes. La capitalización de ASARCO es demasiada escasa para continuar las operaciones comerciales mantenidas antes de la venta de SPCC. Despojado de sus activos de más valor, ASARCO está al borde de presentar una solicitud para protección de insolvencia.

57. Un resultado justo para los demandantes, cuyos reclamos contra ASARCO queden insatisfechos, requiera que las transacciones precedentes sean vistas como parte de un plan integrado, completado en un plazo de menos de cinco años, resultando en cesiones que son fraudulentas a los demandantes.

## PRIMER DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Fraude Implícito – Cesión Resultando en Insolvencia)*

58. Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-57 y para su Primer Derecho de Acción declaran como sigue:

59. ASARCO debe una "deuda" a los demandantes según ese término se define bajo el Acto de Cesión Fraudulenta de Nueva York ("el Acto"). *N.Y. DEBT. & CRED. § 270.*

60. La venta de ASARCO a GRUPO MÉXICO en noviembre de 1999 por y por medio de una compra apalancada es una "cesión" según ese término se define bajo el Acto. *N.Y. DEBT. & CRED. § 270.*

61. El gravamen de los intereses de ASARCO en Enthone, American Limestone y SPCC en fomento de la compra apalancada de GRUPO MÉXICO de ASARCO, es una

16

072

ción de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

62. La venta en subasta de cierto equipo comercial de ASARCO, es una cesión de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

63. La transferencia del interés de titularidad de GRUPO MÉXICO en ASARCO (como fusionado con ASMEX) a AMC es una "cesión" de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

64. La venta de Enthone, American Limestone y el interés de titularidad de ASARCO en SPCC ("los activos principales de ASARCO") por separado y respecto a un plan integrado de liquidación es/son "cesión(es)" de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

65. La redención / recompra de las acciones de ASARCO de los Directores de ASARCO y otros accionistas es una "cesión" según ese término se define bajo el Acto. *N.Y. DEBT. & CRED. § 270.*

66. Los demandantes tienen reclamos contra ASARCO por daños y perjuicios resultando de lesiones personales causadas por exposición a asbesto. Los demandantes son "acreedores" de ASARCO bajo el Acto. *N.Y. DEBT. & CRED. § 270.*

67. ASARCO fue comprado por GRUPO MÉXICO, sus acciones redimidas, cierto equipo comercial suyo liquidado en subasta, y sus activos principales gravados y vendidos en un momento cuando ASARCO o era insolvente o se volvería insolvente como resultado de la liquidación de sus activos.

68. ASARCO recibió menos de recompensa justa por la redención / recompra de sus acciones y transferencia de interés controlador en la compañía a GRUPO MÉXICO

17

073

AMC ya que los beneficios de la cesión se acumulaban al beneficio de terceros (GRUPO MÉXICO, AMC, los accionistas anteriores de ASARCO y Chase) y no al beneficio de ASARCO o sus acreedores.

69. ASARCO recibió menos de recompensa justa por el gravamen de sus activos principales ya que los beneficios de la cesión se acumulaban al beneficio de terceros (GRUPO MÉXICO, AMC, los accionistas anteriores de ASARCO, Chase y CSFB entre otros) y no al beneficio de ASARCO o sus acreedores.

70. ASARCO recibió menos de recompensa justa por la venta en subasta de cierto equipo comercial suyo y la venta de sus activos principales ya que los beneficios de las cesiones se acumulaban al beneficio de terceros (GRUPO MÉXICO, AMC, los accionistas anteriores de ASARCO, Chase y CSFB) y no al beneficio de ASARCO o sus acreedores.

71. Los demandantes tienen derecho a una sentencia a su favor contra GRUPO MÉXICO y AMC declarando la cesión de ASARCO a GRUPO MÉXICO y AMC, el gravamen y venta del equipo comercial y activos principales de ASARCO y la redención / recompra de sus acciones ser individualmente y colectivamente fraudulentos en cuanto las deudas debidas a los demandantes conforme a *N.Y. DEBT. & CRED. § 273*. Los demandantes tienen derecho a remedios legales y equitativos apropiados en eso.

### SEGUNDO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Fraude Implícito — Cesión Resultando en Insuficiencia de Capital)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-71 y para su Segundo Derecho de Acción declaran como sigue:

72. A la indicación de GRUPO MÉXICO y AMC, ASARCO redimió sus acciones y cedió cierto equipo comercial suyo y sus activos principales sin recompensa

18

074

cuando ASARCO estuvo participando o al punto de participar en un negocio o transacción por lo cual la propiedad quedando en el poder de ASARCO después de la cesión representó irrazonablemente poca capital.

73.    Los demandantes tienen derecho a una sentencia a su favor contra GRUPO MÉXICO y AMC declarando el gravamen y la cesión del equipo comercial y activos principales de ASARCO y la redención / recompra de las acciones de ASARCO, individualmente y colectivamente, fraudulentos en cuanto las Deudas debidas a los demandantes conforme a *N.Y. DEBT. & CRED. § 274.* Los demandantes tienen derecho a remedios legales y equitativos apropiados en eso.

## TERCER DERECHO DE ACCIÓN DE LOS DEMANDANTES
### *(Fraude Efectivo: Cesión en Anticipación de Deudas)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-73 y para su Tercer Derecho de Acción declaran como sigue:

74.    En una serie de transacciones tomadas a la indicación de GRUPO MÉXICO y AMC, ASARCO fue vendido a GRUPO MÉXICO y transferido a AMC, las acciones de ASARCO redimidas y el equipo comercial y activos principales de ASARCO gravados y/o vendidos por menos de recompensa justa, con la intención o creencia que ASARCO contraería deudas fuera de su capacidad pagar al vencerse.

75.    GRUPO MÉXICO y AMC estaban conscientes de los reclamos de los demandantes (y otros ambientales) contra ASARCO antes de las cesiones aquí mencionadas, y estos demandados sabían que estos reclamos quedarían insatisfechos bajo el plan integrado de liquidación.

76.    Los demandantes tienen derecho a una sentencia a su favor contra GRUPO MÉXICO y AMC declarando la venta de ASARCO a GRUPO MÉXICO, la transferencia

075

ASARCO a AMC, la redención / recompra de las acciones de ASARCO y el gravamen

de equipo comercial y/o activos principales de ASARCO ser fraudulentos a las

debidas a los demandantes conforme a *N.Y. DEBT. & CRED. § 275.* Los

demandantes tienen derecho a remedios legales y equitativos apropiados en eso.

## CUARTO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*Fraude Efectivo: Cesión con Intención de Frustrar Reclamos de Acreedores/Conspiración)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en

párrafos 1-76 y para su Cuarto Derecho de Acción declaran como sigue:

77.    La redención / recompra de las acciones de ASARCO y la venta y

liquidación de ASARCO por medio de la compra apalancada se tomaron mediante un plan

integrado y diseño orquestado por el demandado GRUPO MÉXICO y cumplido con la

complicidad de otros, incluyendo a AMC, Chase y CSFB.

78.    La redención / recompra de las acciones de ASARCO y liquidación de los

activos de ASARCO ocurrieron cuando:

a.    ASARCO era insolvente y/o con el conocimiento de que las transferencias,
      (individualmente y/o colectivamente) resultarían en la insolvencia de
      ASARCO;

b.    GRUPO MÉXICO, AMC y Chase estaban conscientes del litigio pendiente
      contra ASARCO por reclamos ambientales y reclamos de lesión personal
      relacionados con exposición a asbesto que habían hecho o harían la
      compañía insolvente;

c.    ASARCO faltaba medios financieros adecuados cumplir con sus deudas al
      vencerse;

d.    Los activos transferidos eran los activos principales de la corporación y
      constituían la mayoría de los activos de la compañía en valor;

e.    Las transferencias se hicieron por menos de recompensa justa;

f.    Las transferencia(s) beneficiaron a personas claves de la compañía con
      acceso a información que no es de conocimiento público incluyendo a los

20

076

Directores de ASARCO y otros accionistas anteriores, GRUPO MÉXICO y AMC a costa de los acreedores no garantizados incluyendo a los demandantes.

79.   La redención / recompra de las acciones y liquidación de los activos de ASARCO se diseñó despojar la compañía de activos antes de que los reclamos de acreedores no garantizados se vencieran; la redención / recompra de las acciones de ASARCO y la venta y liquidación del equipo comercial y activos principales de ASARCO tomaron con la intención de estorbar, retrasar o defraudar a los acreedores.

80.   Los demandantes tienen derecho a una sentencia a su favor contra GRUPO MÉXICO, AMC, Chase y CSFB declarando la venta de ASARCO a GRUPO MÉXICO y AMC, la redención / recompra de las acciones de ASARCO y el gravamen y cesión del equipo comercial y activos principales de ASARCO ser fraudulentos conforme a *N.Y. DEBT. & CRED. § 276.* Los demandantes tienen derecho a remedios legales y equitativos apropiados en eso.

81.   Ya que estas transferencias eran cesiones fraudulentas, cometidas con la intención real de defraudar a los acreedores, se deben recuperar daños punitivos de los demandados, solidariamente, en una cantidad no menos de tres veces los daños y perjuicios efectivos.

## QUINTO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Cesión Fraudulenta: Responsabilidad del Cesionario Chase y CSFB)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-81 y para su Quinto Derecho de Acción declaran como sigue:

82.   El demandado Chase es el cesionario quien proporcionó la deuda de nivel superior necesaria para llevar a cabo la compra apalancada.

21

077

83.     El demandado CSFB proporcionó consejo financiero a la Junta Directiva de ASARCO en el momento de la fusión y participó con otros bancos en financiar la compra palancada.

84.     Chase y CSFB sabían que la compra apalancada iba a ser una adquisición de ruptura con los activos de ASARCO a ser cedidos de ASARCO por menos de compensa justa ya que los beneficios de estas transferencias no beneficiarían a ASARCO o sus acreedores sino en cambio acumularían a terceros, los accionistas anteriores de ASARCO, GRUPO MÉXICO y AMC.

85.     Chase y CSFB sabían que ASARCO era insolvente un poco antes de la compra apalancada o que se volvería insolvente como el resultado de las cesiones concomitantes a la compra apalancada y/o el servicio de la deuda impuesto para la adquisición y préstamos operativos a ASARCO.

86.     Chase y CSFB sabían que ASARCO iba a ser liquidado y quedaría con razonablemente pequeños recursos de capital para continuar sus operaciones comerciales adicionales.

87.     Chase y CSFB sabían que ASARCO iba a ser liquidado en un momento cuando ASARCO, GRUPO MÉXICO y AMC pensaban que ASARCO contraería deudas fuera de su capacidad pagar al vencerse.

88.     Chase y CSFB sabían que el plan de liquidación se tomó con la intención de estorbar, retrasar y/o defraudar a los acreedores.

89.     El gravamen de los activos principales de ASARCO a favor de Chase es una cesión de la propiedad de ASARCO (el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

22

078

Pagos del préstamo relacionados con la compra apalancada recibidos por
CSFB y otros bancos participantes bajo gravámenes de prioridad, incluyendo sin
los beneficios de la venta de los activos principales de ASARCO y otros pagos
hechos por ASARCO o por GRUPO MÉXICO (o sus afiliados) de parte de
(colectivamente "pagos del préstamo") son "cesiones" de la propiedad de
(el deudor) dentro del significado del Acto. *N.Y. DEBT. & CRED. § 270.*

Los pagos del préstamo recibidos por Chase y CSFB no están protegidos de
bajo *N.Y. DEBT. & CRED. 272(b)* ya que Chase y CSFB no actuaban en buena
y/o la propiedad recibida por ASARCO de Chase y CSFB era
pequeña cuando comparada con el valor de la obligación a Chase y

En derogación de los derechos de los acreedores, incluyendo a los
Chase y CSFB faltaron llevar a cabo una investigación financiera adecuada
de ASARCO antes de prestar y/o haciendo más de mil millones de dólares
a ASARCO y aceptando hipotecas gravando los activos principales de
y/o cerraron los ojos a la insolvencia de ASARCO.

Chase y CSFB sabían o debieran haber sabido que como el resultado de la
prevista de los activos principales de ASARCO:

El valor vendible justo de los activos restantes de ASARCO sería menos de
las responsabilidades de ASARCO;

Estas transferencias dejarían a ASARCO con una cantidad irrazonablemente
pequeña de capital para el negocio al cual se dedicaba o tenía la intención de
dedicarse en el futuro;

ASARCO razonablemente no se podía esperar cumplir con sus obligaciones
al vencerse.

23

079

94.  Chase y CSFB sabían o debieran haber sabido que el deudor era insolvente o volvería insolvente por las transferencias o se volvería insolvente como el resultado del plan integrado de liquidación, que el servicio de la deuda impuesto por Chase y CSFB disminuiría más la capacidad de ASARCO pagar a los acreedores y que ASARCO no tenía perspectivas razonables de supervivencia.

95.  Chase y CSFB transfirieron fondos a ASARCO a cambio de un gravamen contra los activos principales de ASARCO y aceptaron pagos del préstamo por menos de compensa justa con conocimiento real o imputable a una persona que la transacción intentaría o resultaría en la insolvencia de ASARCO y fraude en los acreedores de ASARCO incluyendo a los demandantes.

96.  Los demandantes tienen derecho a una sentencia a su favor contra los demandados Chase y CSFB por el valor de la propiedad cedida y/o una sentencia declarando los pagos del préstamo concomitantes a la compra apalancada hechos por o de parte de ASARCO a Chase y CSFB ser fraudulentos en cuanto a las Deudas debidas a los demandantes conforme a *DEBT. & CRED. §§ 273, 274, 275 & 276.* Los demandantes tienen derecho a remedios legales y equitativos apropiados en eso.

## SEXTO DERECHO DE ACCIÓN DE LOS DEMANDANTES
### *(Cesión Fraudulenta: Beneficios de Seguros)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-96 y para su Sexto Derecho de Acción declaran como sigue:

97.  Todos los demandantes tienen "reclamos" contra ASARCO y por tanto son "acreedores" de ASARCO bajo el Acto. *N.Y. DEBT. & CRED. § 270.* ASARCO tiene responsabilidad a los demandantes y por tanto es un "deudor" conforme al Acto. *N.Y. DEBT. & CRED. § 270.*

24

080

98. El descuento grande de los beneficios futuros de los seguros y la transferencia de dichos beneficios de seguros a la indicación de GRUPO MÉXICO o sus afiliados al fondo operativo general de ASARCO y el desembolso posterior de ese dinero "concesiones" de la propiedad de ASARCO (el deudor) conforme al Acto.

99. En el momento de la cesión de los beneficios de los seguros, ASARCO fue o se volvería insolvente o como el resultado de la transferencia y/o plan integrado de liquidación.

100. Como el resultado de la cesión de los beneficios de los seguros y/o el plan integrado de liquidación, ASARCO faltaba capital suficiente continuar sus operaciones comerciales tradicionales.

101. La transferencia de los beneficios de los seguros ocurrió en un momento cuando ASARCO, GRUPO MÉXICO y los afiliados de GRUPO MÉXICO supieron o creyeron que ASARCO contraería deudas que no podría pagar al vencerse.

102. La transferencia de los beneficios de los seguros se tomó con la intención de estorbar, retrasar o defraudar a los acreedores de ASARCO.

103. Los demandantes tienen derecho a una sentencia a su favor contra ASARCO, GRUPO MÉXICO y sus afiliados declarando la cesión de los beneficios de los seguros ser fraudulenta en cuanto a las Deudas debidas a los demandantes conforme a *N.Y. DEBT. & CRED. §§ 273, 274, 275 & 276.* Los demandantes tienen derecho a remedios legales y equitativos en eso.

### SÉPTIMO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Cesión Fraudulenta: Transferencia a Entidades Claves con Acceso a Información que no es de Conocimiento Público)*

081

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-103 y para su Séptimo Derecho de Acción declaran como sigue:

104.  GRUPO MÉXICO, AMC, GMMI, Mexicana de Cobre, S.A. de C.V., controladora Minera México, S.A. de C.V. y ASARCO son compañias interrelacionadas, afiliadas y "entidades claves con acceso a información que no es de conocimiento público" controladas por o propiedad de GRUPO MÉXICO.

105.  Como parte de la recompensa alegada por la transferencia del interés de ASARCO en SPCC a GRUPO MÉXICO y sus afiliados, ASARCO alegadamente recibió perdón de deuda de una deuda antecedente entre compañias de afiliados de GRUPO MÉXICO incluyendo a AMC y/o Mexicana de Cobre S.A. de C.V.

106.  El perdón de la deuda entre compañias es una "cesión" dentro del significado del Acto. *N.Y. Debt. & Cred. § 270.*

107.  En el momento del perdón de la deuda, ASARCO o fue insolvente o vuelto insolvente como el resultado de la redención / recompra de sus acciones y la cesión de sus activos principales y/o el cumplimiento del plan integrado de liquidación.

108.  La cesión por un insolvente a un afiliado o entidad clave con acceso a información que no es de conocimiento público en satisfacción de una deuda antecedente alta buena fe y es implícitamente fraudulenta.

109.  Los demandantes tienen derecho a una sentencia a su favor contra ASARCO, GRUPO MÉXICO y MÉXICO DE COBRE S.A. de C.V. declarando la cesión de las acciones de SPCC a cambio de perdón de deuda ser fraudulenta en cuanto a las deudas debidas a los demandantes conforme a *N.Y. DEBT. & CRED. § 273.* Los demandantes tienen derecho a remedios legales y equitativos en eso.

26

082

## OCTAVO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Tergiversación y Negligencia Profesional: En Cuanto al Demandado Ernst & Young)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-109 y para su Octavo Derecho de Acción declaran como sigue:

110.    Los demandados ERNST & YOUNG LLP y ERNST & YOUNG CORPORATE FINANCE LLC (colectivamente "Ernst & Young") se emplearon dar una opinión en cuanto al valor de 43,348,949 acciones de Acciones Comunes, Clase A, de Southern Peru Copper Company representando un 54.18% de las acciones con derecho de voto de esa corporación con acciones cambiadas públicamente, mantenidas por SPHC, una sociedad subsidiaria totalmente la propiedad de ASARCO ("interés de acciones").

111.    Ernst & Young expresó una valuación profesional con pleno conocimiento de que una clase limitada de terceros confiaría en su opinión y Ernst & Young debió un deber de cuidado a estos terceros, incluyendo al Departamento de Justicia de los Estados Unidos, los tribunales Federales de los Estados Unidos y los demandantes.

112.    La opinión de valuación de Ernst & Young dio la base principal al Tribunal de Distrito de los Estados Unidos para el Distrito de Arizona aprobar la venta del interés de acciones a Grupo y/o su sociedad subsidiaria que era totalmente su propiedad, AMC, al perjuicio de los demandantes.

113.    Ernst & Young imprudentemente y a sabiendas y sin la competencia profesional requerida de una empresa de Contabilidad Pública Autorizada, vendió una carta de opinión, que falsamente representó que el valor justo del interés controlador de ASARCO en SPCC valía menos del valor contable de la porción de activos fundamentales de ASARCO en la compañía.

27

083

114.    Ernst & Young tenía un deber a los demandantes dar una opinión basándose en conocimiento imparcial e independiente de la industria de cobre.  A pesar de saber que el comprador del interés de acciones era una persona o entidad clave con acceso a plena información que no es de conocimiento público respecto a la compañía, las perspectivas de la compañía y el mercado de cobre, Ernst & Young incumplió su deber a los demandantes por subvalorar el interés de acciones basándose en información proporcionada por el comprador, Grupo y/o entidades controladas por Grupo.

115.    Ernst & Young tenía un deber a los demandantes ser competente y dar una opinión en cuanto al valor de SPCC como empresa en marcha.  Sin tomar en consideración la expansión en curso de las operaciones mineras de SPCC y el valor creciente de sus reservas de cobre en un mercado creciente de cobre, la valuación de Ernst & Young aparentemente refleja solamente información financiera pública e histórica.

116.    Ernst & Young incumplía su deber a los demandantes por faltar usar cuidado debido y la competencia profesional requerida de una empresa de Contabilidad Pública Autorizada y por dar una opinión que sabía, o debiera haber sabido, minimizaba gravemente el valor del interés de acciones, de ese modo permitiendo el interés de acciones venderse a Grupo por menos de recompensa justa y adecuada, poniendo el activo de más valor de ASARCO fuera del alcance directo de los acreedores.

117.    Los demandantes tienen derecho a una sentencia a su favor contra Ernst & Young por daños y perjuicios resultando de su tergiversación y negligencia profesional en cuanto al valor del interés de acciones.

## NOVENO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Incumplimiento del Deber Fiduciario: Oficiales y Directores de ASARCO)*

28

084

los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-117 y para su Noveno Derecho de Acción declaran como sigue:

118.    Los demandados GERMAN LARREA MOTA-VELASCO y OSCAR GONZÁLES ROCHA eran Oficiales y Directores de ASARCO (colectivamente "Demandados Directores") cuando se estaban liquidando los activos principales de ASARCO.

119.    La venta de los activos principales de ASARCO por menos de recompensa justa y adecuada y la apropiación indebida de los beneficios de la venta para el beneficio de los Demandados y al perjuicio de los acreedores no garantizados de ASARCO se emprendieron en un momento cuando ASARCO no pudo pagar sus deudas al vencerse, sus obligaciones o pasivos fueron superiores a sus activos y/o ASARCO fue insolvente.

120.    La venta de los activos principales de ASARCO por menos de recompensa adecuada, dejó a ASARCO con irrazonablemente poco capital para continuar sus operaciones comerciales históricos y resultó en insolvencia, la probabilidad de insolvencia y/o el riesgo irrazonable de insolvencia.

121.    Los oficiales y directores de una corporación insolventa, o a punto de insolvencia, deben un deber fiduciario a la corporación, a los empleados de la corporación y a los acreedores no garantizados de la corporación.  Al vender los activos principales de ASARCO por menos de recompensa adecuada, estos Demandados Directores incumplieron sus deberes fiduciarios de cuidado y deberes de lealtad a ASARCO, los empleados de ASARCO y los acreedores no garantizados de ASARCO, incluyendo a los Demandantes.

122.    La liquidación de los activos principales de ASARCO no se emprendió en buena fe, se emprendió sin obediencia total a los procedimientos estatutarios diseñados

29

085

los derechos de los acreedores, involucró comportamiento ilícito intencional y/o en beneficio personal impropio.

123. Las acciones de estos Demandados Directores fueron gravemente negligentes emprendidas con descuido imprudente por los derechos de los demandantes.

124. Conforme a *N.Y. Bus. Corp. Law § 720 (McKinney 2004)*, los Demandados Directores tienen que justificar y responder en daños por la cantidad por la cual menos del valor total se realizó por ASARCO al liquidar sus activos principales.

125. Los demandantes tienen derecho a una sentencia a su favor contra los Demandados Directores por las pérdidas sufridas por los acreedores mediante la desvalorización de los activos principales de ASARCO.

## DÉCIMO DERECHO DE ACCIÓN DE LOS DEMANDANTES
*(Instigando o Ayudando a Cometer Incumplimiento del Deber Fiduciario: Ernst & Young y CSFB)*

Los demandantes adoptan de nuevo y alegan de nuevo los alegatos contenidos en los párrafos 1-125 y para su Décimo Derecho de Acción declaran como sigue:

126. El demandado CSFB sirvió como el asesor financiero a la Junta Directiva de ASARCO en el momento cuando la compra apalancada fue endosada por la Junta. CSFB evaluó y aconsejó a la Junta Directiva de ASARCO en cuanto a la venta de la compañía, recomendando la compra apalancada propuesta por GRUPO MÉXICO y rechazando la fusión de iguales propuesta por Phelps Dodge Corporation. Luego CSFB benefició personalmente de la transacción por hacerse un acreedor garantizado de ASARCO. La compra apalancada directamente causó la insolvencia de ASARCO.

127. El demandado Ernst & Young sirvió como el asesor financiero de ASARCO desde el 15 de agosto de 2002 hasta el 27 de marzo de 2003. Como asesor financiero, Ernst

30

086

& Young recomendó la monetización de las pólizas de seguros de responsabilidad general de ASARCO y el uso de estos beneficios de los seguros para gastos comerciales normales, al perjuicio de las partes que se supone estos seguros iban a compensar.  El demandado Ernst & Young valuó por debajo del valor real el interés de ASARCO en SPCC y luego aprobó, apoyó y defendió la venta del interés de ASARCO en SPCC por menos de recompensa adecuada.

128.    La Junta Directiva de ASARCO debió un deber fiduciario a la corporación, los empleados de la corporación y los acreedores no garantizados de ASARCO incluyendo a los Demandantes.

129.    Por y mediante la compra apalancada, el uso de la influencia de los activos principales de ASARCO y la venta de los activos principales de ASARCO por menos de recompensa adecuada, la Junta Directiva de ASARCO incumplió su deber fiduciario a estas partes, incluyendo a los Demandantes.

130.    Los demandados Ernst & Young y CSFB a sabiendas participaron, orquestaron y fomentaron el incumplimiento del deber fiduciario por los Directores de ASARCO.

131.    Los demandantes tienen derecho a una sentencia a su favor contra los Demandados Ernst & Young y CSFB por instigar o ayudar a cometer incumplimiento del deber fiduciario.

## SOLICITUD PARA REMEDIO

**POR LO CUAL**, los demandantes respetuosamente solicitan que este Tribunal:

(1)    Adjudique daños y perjuicios monetarios efectivos, honorarios de abogado y costas contra los demandados.

31

087

(2) Adjudique daños punitivos contra estos demandados quienes han participado en fraude real en cuanto a las Deudas debidas a los demandantes en una cantidad no menos de tres veces los daños y perjuicios efectivos.

(3) Revoque o anule las cesiones descritas aquí en esto como fraudulentas en la medida necesaria satisfacer los reclamos de los demandantes, autorice embargo ejecutivo o gravamen de la propiedad ilegalmente cedida, coloque los activos ilegalmente cedidos de ASARCO en fideicomiso y/o designar un administrador judicial mantener y administrar esos activos de ASARCO para el pago de reclamos de acreedores.

(4) Y/o haga cualquier orden requerida por las circunstancias del caso.

Respetuosamente presentado,

**WEITZ & LUXENBERG, P.C.**
*Una Corporación Profesional de Nueva York*
120 Wall Street – Piso 15
Nueva York, NY 10038
(212) 558-5900
Telefacsímil (212) 363-6848

Por: *[Firma ilegible]*
    Gary Klein, Abogado

PRESENTADO
7 / FEB / 05
SECRETARIO DEL CONDADO
CONDADO DE NUEVA YORK

**BARON & BUDD**
**UNA CORPORACIÓN PROFESIONAL**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Tejas 75219
(214) 521-3605
Telefacsímil: (214) 520-1181

088



No. 193112
ESTADO DE NUEVA YORK,
CONDADO DE NUEVA YORK, SS:
YO, NORMAN GOODMAN,
SECRETARIO DEL CONDADO Y
SECRETARIO DEL TRIBUNAL SUPREMO,
CONDADO DE NUEVA YORK,
CON LA PRESENTE CERTIFICO EL
29 MARZO 2005
QUE HE COMPARADO ESTA
COPIA CON EL ORIGINAL
ARCHIVADO EN MI OFICINA EL
7/FEB/05
Y QUE LA MISMA ES UNA
TRANSCRIPCIÓN CORRECTA
DE ESO, Y DE LA
TOTALIDAD DE TAL ORIGINAL.
EN TESTIMONIO DE LO CUAL,
A LA PRESENTE HE PUESTO
MI FIRMA Y SELLO OFICIAL.
*Norman Goodman*
SECRETARIO DEL CONDADO Y SECRETARIO DEL
TRIBUNAL SUPREMO, CONDADO DE NUEVA YORK
FIRMA FACSIMILAR EMPLEADA
CONFORME A LA SECCIÓN 903,
LEY DEL CONDADO.
HONORARIO PAGADO

089

## VERIFICACIÓN DEL ABOGADO

GARY KLEIN, con la presente afirma que lo siguiente es la verdad, so pena de perjurio:

Soy un abogado asociado del bufete de WEITZ & LUXENBERG, P.C., abogados de los demandante(s) en la acción judicial adjunta; he leído la Citación y Demanda Verificada antecedentes y conozco el contenido de esas; lo cual es la verdad según mi propio leal saber, menos los asuntos declarados allí ser alegados basados en información y entendimiento, y que en cuanto a esos asuntos, los creo ser la verdad. La razón esta verificación se hace por su declarante y no por el demandante es porque el demandante aquí en esto vive en un condado fuera del condado donde WEITZ & LUXENBERG, P.C. mantiene sus oficinas.

Los motivos para mi entendimiento en cuanto a todos los asuntos no declarados según mi propio leal saber son los contenidos del archivo en nuestra oficina.

Con fecha: Nueva York, Nueva York
7 de febrero de 2005

_[Firma ilegible]_
Gary Klein, Abogado

34

090

Año 20

INAL SUPREMO DEL ESTADO DE NUEVA YORK
ADO DE NUEVA YORK

NELSON BURNS, MIRJANA PAVKOVICH, Administradora
Hereditario de Rade Pavkovich, Difunto, y WARREN
HALFPAP,

          Demandantes,

MÉXICO S.A. de C.V., una corporación mexicana, y otros

CITACIÓN SUPLEMENTARIA
PRIMERA DEMANDA MODIFICADA VERIFICADA

WEITZ & LUXENBERG, P.C.

*bogados para* Demandantes

180 Maiden Lane
Nueva York, NY 10038
(212) 558-5500

*22 NYCRR 130-1.1, el infrascrito, un abogado autorizado a ejercer en los tribunales*
*Nueva York, certifica que, basado en información y entendimiento e investigación*
*las contenciones contenidas en los documentos adjuntos no son sin fundamento.*

          Firma _____

*Escriba en letra de molde el nombre del firmante* _____

*ación de una copia de*          *se admite con la presente.*

*Abogado(s) de*

*RDE NOTAR (Marque la casilla aplicable)*

     *que lo adjunto es una copia fiel (certificada) de un*
     *registrado en la oficina del secretario del mencionado Tribunal el*      20

     *que una Orden, copia fiel de la cual se adjunta, se presentará para transacción al*
     *Honorable*         *uno de los jueces del mencionado Tribunal,*
*en*
*el*         *de 20 , a las*      *M.*

                            WEITZ & LUXENBERG, P.C.
*echa*            *Abogados para*                180 Maiden Lane
                                        Nueva York, NY 10038

091

...NAL SUPREMO DEL ESTADO DE NUEVA YORK
...DADO DE NUEVA YORK

...LIP NELSON BURNS, MIRJANA
...KOVICH, Administradora del Caudal
...tario de Rade Pavkovich, Difunto, y
...REN ELMER HALFPAP,

Demandante(s),

-contra-

...O MÉXICO S. A. de C.V., una
...ración mexicana, SOUTHERN PERU
...ING CORPORATION, una corporación
...laware, SOUTHERN PERU HOLDING
...PORATION II, una corporación de
...are, GRUPO MINERO MÉXICO
...RNACIONAL, S. A. DE C.V., una
...ración mexicana, COMPAÑIA
...ICANA de COBRE, una corporación
...ana, JP MORGAN CHASE &
...PANY, antes conocido como CHASE
...HATTAN BANK & TRUST COMPANY,
...corporación de Delaware, AMERICAS
...NG CORPORATION, una corporación de
...are, ERNST & YOUNG LLP, ERNST &
...NG CORPORATE FINANCE, LLC,
...MAN LARREA MOTA-VAELASCO,
...l y Director de ASARCO, Inc., OSCAR
...ZALES ROCHA Oficial y Director de
...RCO, Inc., DANIEL TELLECHEA
...DO Oficial y Director de ASARCO, Inc.

Demandado(s)

No. de Índice:   04114728

CITACIÓN

PRESENTADO
15 OCT 2004
NUEVA YORK
OFICINA DEL SECRETARIO
DE CONDADO

...antedichos Demandados

...Con la presente está citado contestar la Demanda en esta acción judicial y entregar una

...de su Respuesta, o, si la Demanda no se entrega con esta Citación, entregar un Aviso de

...arecencia, al Abogado(s) de los Demandantes, dentro de 20 días a partir de la fecha de la

092

de su citación, sin contar el día de la notificación (o dentro de 30 días después de

la notificación si esta citación no se entrega personalmente a usted dentro del Estado

de York), y en el caso de su falta de comparecer o contestar, se rendirá una sentencia en

contra usted para el desagravio exigido en la Demanda.

**WEITZ & LUXENBERG, P.C.**
*Una Corporación Profesional de Nueva York*
180 Maiden Lane
Nueva York, NY 10038
(212)558-5500
Telefacsímil (212)344-5461

**BARON & BUDD**
**UNA CORPORACIÓN PROFESIONAL**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Tejas 75219
(214) 521-3605
Telefacsímil: (214) 520-1181

```
(7153)
ADO DE NUEVA YORK,
ADO DE NUEVA YORK, SS:
ORMAN GOODMAN,
ETARIO DEL CONDADO Y
ETARIO DEL TRIBUNAL SUPREMO,
ADO DE NUEVA YORK
A PRESENTE CERTIFICO EL
TUBRE 2004
E COMPARADO ESTA
X CON EL ORIGINAL
IVADO EN MI OFICINA EL
7/04
E LA MISMA ES UNA
SCRIPCION CORRECTA
SO Y DE LA
LIDAD DE TAL ORIGINAL.
STIMONIO DE LO CUAL,
PRESENTE HE PUESTO
RMA Y SELLO OFICIAL.
n Goodman
TARIO DEL CONDADO Y SECRETARIO DEL
NAL SUPREMO, CONDADO DE NUEVA YORK
A FACSIMILAR EMPLEADA
ORME A LA SECCION 903, LEY DEL CONDADO
ORARIO PAGADO
```

**PRESENTADO**
*15 / OCT / 04*
SECRETARIO DEL CONDADO
CONDADO DE NUEVA YORK