of SPCC as a going concern. Without taking into consideration SPCC's on-going

of its mining operations and the increasing value of its copper reserves in a rising

market, Ernst & Young's valuation negligently only reflects historic and public financial

ation.

116.    Ernst and Young breached its duty to plaintiffs by failing to exercise due care and

essional competence required of a Certified Public Accounting firm and by issuing an

which it knew or should have known grossly understated the value of the stock interest,

allowing the stock interest to be sold to Grupo for less than fair and adequate

ration, placing ASARCO's most valuable asset outside the direct reach of creditors.

119.    Plaintiffs are entitled to judgment against Ernst & Young for damages resulting

professional negligence and misrepresentation as to the value of the stock interest.

### PLAINTIFFS' NINTH CLAIM FOR RELIEF
*(Breach of Fiduciary Duty: ASARCO's Officer's & Directors)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -117 and for

Ninth Claim for Relief state as follows:

118.    Defendants GERMAN LARREA MOTA-VELASCO and OSCAR GONZALES

A, were Officers and Directors of ASARCO (collectively "Director Defendants") when

cipal assets of ASARCO were being liquidated.

119.    The sale of ASARCO's principal assets for less than fair and adequate

ration and the misappropriation of the proceeds of the sale for the benefit of Defendants

the detriment of ASARCO's unsecured creditors was undertaken at a time when

RCO was unable to pay its debts as they became due, its liabilities exceeded its assets and/or

25

was insolvent.

120. The sale of ASARCO's principal assets for less than adequate consideration, left ASARCO with unreasonably small capital to continue historic business operations and resulted in insolvency, the likelihood of insolvency and/or the unreasonable risk of insolvency.

121. The officers and directors of a corporation which is insolvent, or on the brink of insolvency, owe a fiduciary duty to the corporation, to the employees of the corporation and the corporation's unsecured creditors. By selling the principal assets of ASARCO for less than adequate consideration, these Director Defendants breached their fiduciary duties of care and loyalty to the ASARCO, ASARCO'S employees and ASARCO's unsecured creditors plaintiffs.

122. The liquidation of ASARCO's principal assets was not undertaken in good faith, was undertaken without full compliance with statutory procedures designed to protect the rights of plaintiffs, involved intentional misconduct and/or resulted in improper personal benefit.

123. The actions of these Defendant Directors were grossly negligent and/or taken with reckless disregard for the rights of plaintiffs.

124. Pursuant to N. Y. Bus. Corp. Law § 720 (McKinney 2004), Defendant Directors must account and respond in damages for the amount by which less than full value was realized by ASARCO upon the liquidation of its principal assets.

125. Plaintiffs are entitled to judgment against Defendant Directors for the losses suffered by creditors through the depletion of ASARCO's principal assets.

## PLAINTIFFS' TENTH CLAIM FOR RELIEF
*(Aiding and Abetting Breach of Fiduciary Duty: Ernst & Young and CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -125 and for

26

202

Claim for Relief state as follows:

Defendant CSFB served as financial advisor to ASARCO's Board of Directors at the LBO was endorsed by the Board. CSFB evaluated and advised ASARCO's Board of regarding the sale of the company, recommending the LBO proposed by GRUPO and rejecting the merger of equals proposed by Phelps Dodge Corporation. CSFB then benefitted from the transaction by becoming a secured creditor of ASARCO. The caused ASARCO's insolvency.

Defendant Ernst & Young served as ASARCO's financial advisor from August until March 27, 2003. As financial advisor, Ernst & Young recommended the of ASARCO's general liability insurance policies and the use of these insurance regular business expenses, to the detriment of parties this insurance was intended to Defendant Ernst & Young undervalued ASARCO's interest in SPCC and then supported and championed the sale of ASARCO's interest in SPCC for less than consideration

128.   ASARCO'S Board of Directors owed a fiduciary duty to the corporation, the employees and ASARCO's unsecured creditors including Plaintiffs.

By and through the LBO, the leveraging of ASARCO's principal assets and the ASARCO's principal assets for less than adequate consideration, ASARCO's Board of breached its fiduciary duty to these parties, including Plaintiffs.

Defendants Ernst & Young and CSFB knowingly participated, orchestrated and the breach of fiduciary duty by ASARCO's Directors.

Plaintiffs are entitled to judgment against Defendants Ernst & Young and CSFB and abetting breach of fiduciary duty.

## PRAYER FOR RELIEF

203

WHEREFORE, plaintiffs respectfully request this Court:

Award actual monetary damages, attorney's fees and costs against defendants.

Award punitive damages against these defendants who have engaged in actual

fraud as to the Debts owed plaintiffs in an amount not less than three times actual

damages.

Set aside or annul the conveyances described herein as fraudulent to the extent

necessary to satisfy plaintiffs' claims, authorize attachment or levy of execution

upon the property wrongfully conveyed, place ASARCO's wrongly conveyed

assets in trust and/or appoint a receiver to hold and manage those assets of

ASARCO for payment of creditor claims.

And/or make any order which the circumstances of the case may require.

Respectfully submitted,

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
120 Wall Street-15th Floor
New York, NY 10038
(212) 558-5900
FAX (212) 363-6848

By: _____
    Gary Klein, Esq.

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

FILED
2/7/05
COUNTY CLERK
NEW YORK COUNTY

No 193112

STATE OF NEW YORK, SS:
COUNTY OF NEW YORK, SS:
I, NORMAN GOODMAN,
COUNTY CLERK AND CLERK
OF THE SUPREME COURT,
NEW YORK COUNTY,
DO HEREBY CERTIFY ON

MAR 29 2005

THAT I HAVE COMPARED THIS
COPY WITH THE ORIGINAL
FILED IN MY OFFICE ON

2/7/05

A
CORRECT TRANSCRIPT
THEREFROM AND OF THE
WHOLE OF SUCH ORIGINAL.
IN WITNESS WHEREOF,
I HAVE HEREUNTO SET MY
HAND AND AFFIXED MY
OFFICIAL SEAL.

COUNTY CLERK AND CLERK OF THE
SUPREME COURT, NEW YORK COUNTY.

FACSIMILE SIGNATURE USED
PURSUANT TO SEC. 903,
COUNTY LAW.

FEE PAID

28

204

## ATTORNEY VERIFICATION

GARY KLEIN, hereby affirms that the following is true, under penalties of perjury:

I am an associate of the firm of WEITZ & LUXENBERG, P.C., attorneys for the plaintiff(s) in the within action; I have read the foregoing Summons and Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true. The reason this verification is made by your affiant and not by the plaintiff is that the plaintiff herein resides in a County other than the one in which WEITZ & LUXENBERG, P.C. maintains its offices.

The grounds of my belief as to all matters not stated upon my own knowledge are the contents of our office file.

Dated:  New York, New York
        February 7, 2005

Gary Klein, ESQ.

Year 20

205

COURT OF THE STATE OF NEW YORK
OF NEW YORK

NELSON BURNS, MIRJANA PAVKOVICH, Adminsitrator
Estate of Rade Pavkovich, Deceased, and WARREN
KRPAP,

                    Plaintiffs,

-against-

MEXICO S.A. de C.V., a Mexican Corporation, et al.

SUPPLEMENTAL SUMMONS
FIRST AMENDED VERIFIED COMPLAINT

WEITZ & LUXENBERG, P.C.

Attorneys for  Plaintiffs

180 Maiden Lane
New York, NY 10038
(212) 558-5500

_to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York_
_ses that, upon information and belief and reasonable inquiry, the contentions contained in the_
_cument are not frivolous._

Signature _____

Print Signer's Name _____

_py of the within_

                                                        is hereby admitted.

                              Attorney(s) for

TAKE NOTICE

_hat the within is a (certified) true copy of a_
_tered in the office of the clerk of the within named Court on_
                                                                    20

_hat an Order of which the within is a true copy will be presented for settlement to the_
_tion._
_at_                                        _one of the judges of the within named Court,_
_on_
            20      , at              M.

Attorneys for                          WEITZ & LUXENBERG, P.C.

206.

...REME COURT OF THE STATE OF NEW YORK .
...NTY OF NEW YORK

...LIP NELSON BURNS, MIRJANA
...KOVICH, Administrator of the Estate of
... Pavkovich, Deceased, and WARREN
...MER HALFPAP,

                    Plaintiff(s),

          -against-

...UPO MEXICO S. A. de C.V., a Mexican
...ration, SOUTHERN PERU HOLDING
...RPORATION, a Delaware Corporation,
...THERN PERU HOLDING
...RPORATION II, a Delaware Corporation,
...UPO MINERO MEXICO
...ERNACIONAL, S. A. DE C.V., a Mexican
...ration, COMPANIA MEXICANA de
...OBRE, a Mexican Corporation, JP MORGAN
...ASE & COMPANY f/k/a CHASE
...NHATTAN BANK & TRUST COMPANY,
...ware Corporation AMERICAS MINING
...RPORATION, a Delaware Corporation,
...NST & YOUNG LLP, ERNST & YOUNG
...RPORATE FINANCE, LLC, GERMAN
...RREA MOTA-VABLASCO, Officer and
...rector of ASARCO, Inc., OSCAR GONZALES
...CHA Officer and Director of ASARCO, Inc.,
...NIEL TELLECHEA SALIDO Officer and
...ector of ASARCO, Inc.

                    Defendant(s)

Index No.:

**SUMMONS**

04114728

**FILED**
OCT 15 2004.
NEW YORK
COUNTY CLERKS OFFICE

...above named Defendants

...You are hereby summoned to answer the Complaint in this action and to serve a copy of

...nswer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance,

...Plaintiffs' Attorney(s) within 20 days after the service of this summons, exclusive of the day

207

vice (or within 30 days after the service is complete if this summons is not personally delivered

within the State of New York); and in case of your failure to appear or answer, judgment will

against you by default for the relief demanded in the Complaint.

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
180 Maiden Lane
New York, NY 10038
(212)558-5500
FAX (212)344-5461

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

N° 179354

STATE OF NEW YORK,
COUNTY OF NEW YORK, SS:
I, NORMAN GOODMAN,
COUNTY CLERK AND CLERK
OF THE SUPREME COURT,
NEW YORK COUNTY,
DO HEREBY CERTIFY ON

OCT. 18 2004

THAT I HAVE COMPARED THIS
COPY WITH THE ORIGINAL
FILED IN MY OFFICE ON

10 15 04

AND THAT THE SAME IS A
CORRECT TRANSCRIPT
THEREFROM AND OF THE
WHOLE OF SUCH ORIGINAL
IN WITNESS WHEREOF,
I HAVE HEREUNTO SET MY
HAND AND AFFIXED TO MY
OFFICIAL SEAL.

COUNTY CLERK AND CLERK OF THE
SUPREME COURT, NEW YORK COUNTY.
FACSIMILE SIGNATURE USED
PURSUANT TO SEC. 903,
COUNTY LAW.

FEE PAID

FILED
10|15|04
COUNTY CLERK
NEW YORK COUNTY

208

Defendants' Addresses:

GRUPO MEXICO S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

SOUTHERN PERU HOLDING CORPORATION
575 East Camelback Road
Phoenix, Arizona

SOUTHERN PERU HOLDING CORPORATION II
575 East Camelback Road
Phoenix, Arizona

GRUPO MEXICO MINERO
MEXICO INTERNACIONAL, S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

COMPANIA MEXICANA de COBRE
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

AMERICAS MINING CORPORATION
575 East Camelback Road
Phoenix, Arizona

JP MORGAN CHASE f/k/a CHASE
MANHATTAN BANK
c/o CT Corporation System
111 Eighth Avenue
New York, New York  10011

ERNST & YOUNG, LLP
111 Seventh Avenue
New York, NY  10019

209

NST & YOUNG CORPORATE
NCB, LLC
Seventh Avenue
York, New York   10019

MAN LARREA MOTA-VAELASCO
Baja California 200
Roma Sur
City, Mexico 06760
AR GONZALES ROCHA
East Camelback Road
nix, Arizona

NIELTELLECHEA SALIDO
East Camelback Road
nix, Arizona

210

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALFPAP,

                    Plaintiff(s),

        -against-

GRUPO MEXICO S. A. de C.V., a Mexican
Corporation, SOUTHERN PERU HOLDING
CORPORATION, a Delaware Corporation,
SOUTHERN    PERU    HOLDING
CORPORATION II, a Delaware Corporation,
GRUPO    MINERO    MEXICO
INTERNACIONAL, S. A. DE C.V., a Mexican
Corporation, COMPANIA MEXICANA de
COBRE, a Mexican Corporation, JP MORGAN
CHASE & COMPANY f/k/a CHASE
MANHATTAN BANK & TRUST COMPANY,
a Delaware Corporation AMERICAS MINING
CORPORATION, a Delaware Corporation,
ERNST & YOUNG LLP, ERNST & YOUNG
CORPORATE FINANCE, LLC, GERMAN
LARREA MOTA-VAELASCO, Officer and
Director of ASARCO, Inc., OSCAR GONZALES
ROCHA Officer and Director of ASARCO, Inc.,
DANIEL TELLECHEA SALIDO Officer and
Director of ASARCO, Inc.

                    Defendant(s)

Index No.: 114728/04

**VERIFIED COMPLAINT**

Plaintiffs, by their attorneys, WEITZ & LUXENBERG, P.C. and BARON & BUDD, P.C.

for their suit against Defendants respectfully allege as follows:

## PRELIMINARY STATEMENT

1.      This case concerns the acquisition and systematic liquidation of a multi-

1

21

billion dollar, one hundred year old, U.S. Corporation for the benefit of foreign investors and to the detriment of resident creditors. The companies and assets which made up ASARCO were raided, sold for profit and transferred beyond the direct reach of individuals ASARCO injured and owes compensation.

2.      This action arises under the New York Fraudulent Conveyance Act, DEBT. & CRED. § 270 *et. seq.* and the common law of New York concerning fraud. Plaintiffs all have claims against ASARCO for personal injuries related to asbestos exposure, and are all creditors of ASARCO.

### JURISDICTION, VENUE & CHOICE OF LAW

3.      Jurisdiction and venue are proper in the State of New York and New York County pursuant to N.Y. C.P. L. R. art. 5 § 503.   New York State Law governs the resolution of plaintiffs' claims for relief.

4.      The parties and the principal transfers complained of herein all have a significant connection with this jurisdiction. At the time of the LBO, ASARCO's corporate headquarters was located in New York City. The corporate headquarters of defendant JP Morgan Chase & Company f/k/a Chase Manhattan Bank & Trust Co. ("Chase") is located in New York City.

5.      All defendants are authorized to transact business in the state and/or have contracted to supply goods and services within the state. All defendant corporations and business entities have committed tortious acts within the state of New York.

6.      ASARCO, defendant GRUPO MEXICO, defendant Americas Mining Corporation ("AMC") and defendant CHASE have all contractually waived any right they

2

212

might have to contest the jurisdiction of this Court relating to the conveyances contested herein. Further, these defendants have designated within those same contracts that New York State Law governs principal transactions involved in the LBO.

7.    Defendant Ernst & Young, LLP and Ernst & Young Corporate Finance LLC regularly conduct business in this state and county.

8.    The State of New York has the most significant interest in the outcome of this litigation.

**Plaintiffs**

9.    Plaintiffs are present unsecured creditors of ASARCO whose claims have not been satisfied. Plaintiffs are persons who were injured by ASARCO and whose tort claims were both filed and unfiled against ASARCO at the time of the fraudulent conveyance(s) at issue. Plaintiffs all have "claims" against ASARCO and are therefore "creditors" as that term is defined under the New York Fraudulent Conveyance Act ("the Act"), DEBT & CRED. § 270.

10.    The Plaintiffs are by name and citizenship: PHILLIP NELSON BURNS, a citizen of the State of Arizona; MIRJANA PAVKOVICH, Administrator of the Estate of Rade Pavkovich, Deceased, a citizen of the State of Arizona; and WARREN ELMER HALFPAP, a citizen of the State of New York.

**Defendants**

11.    Defendant GRUPO MEXICO S. A. de C.V. ("GRUPO MEXICO") is a Mexican Corporation. GRUPO MEXICO may be served with process pursuant to the

3

213

Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon GRUPO MEXICO MEXICO, S.A. DE C.V., at its headquarters at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

12.     Defendants SOUTHERN PERU HOLDING CORPORATION (SPHC) and SOUTHERN PERU HOLDING CORPORATION II (collectively "SPHC") are incorporated in the State of Delaware and maintain their corporate headquarters at 2575 East Camelback Road, Phoenix Arizona.  SPHC is a holding company and was formed as a wholly owned subsidiary of ASARCO to facilitate the transfer of ASARCO's interest in Southern Peru Copper Corporation ("SPCC") to defendant GRUPO MEXICO S.A. de C.V. and/or its affiliates.

13.     Defendant GRUPO MEXICO MINERO MEXICO INTERNACIONAL, S.A. DE C.V. ("GMMI") is a Mexican corporation.  GMMI may be served with process pursuant to the Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon GRUPO MEXICO MINERO MEXICO INTERNACIONAL, S.A. DE C.V., at its headquarters at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

14.     Defendant COMPANIA MEXICANA de COBRE is a Mexican corporation which may be served with process pursuant to the Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters

4

214

(the Hague Convention) by providing the Summons and Complaint in proper form to the

Mexican Central Authority, which will provide formal service upon CONTROLADORA

MINERA MEXICO, S.A. DE C.V., at its headquarters at Avenue Baja California 200,

Colonia Roma Sur 06760 Mexico City, Mexico.

15.    Defendant AMERICAS MINING CORPORATION ("AMC") is

incorporated in the State of Delaware and maintains its principal place of business at 2575

East Camelback Road, Phoenix, Arizona.   AMC is a wholly owned subsidiary of GRUPO

MEXICO MEXICO S.A. de C.V.

16.    Defendant JPMORGAN CHASE & COMPANY f/k/a CHASE

MANHATTAN BANK ("Chase") is a Delaware Corporations whose corporate

headquarters are located in New York City, New York.  Chase Manhattan Bank is a

legacy" company of JP Morgan Chase & Co.

17.    Defendant ERNST & YOUNG, LLP and Defendant ERNST & YOUNG

CORPORATE FINANCE, LLC (collectively "Ernst & Young") are limited liability

companies and accounting firms with worldwide offices including offices in New York

City, New York.

18.    Defendant GERMAN LARREA MOTA-VAELASCO was the Chairman

and Chief Executive Officer of ASARCO from November 1999 and at the date of the

transfer of SPCC to AMC.  He was also Chairman of the Board of SPCC and Chief

Executive Officer and Chairman of the Board of Grupo Mexico, and he owes a fiduciary

duty to ASARCO's creditors, including plaintiffs. Mr. Mota-Vaelasco may be served with

process pursuant to the Convention On The Service Abroad Of Judicial And Extrajudicial

Documents In Civil Or Commercial Matters (the Hague Convention) by providing the

5

215

summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon Mr. Mota-Vaelasco at his place of business at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

19.    Defendant OSCAR GONZALES ROCHA was a Director of ASARCO at the date of the transfer of SPCC to AMC.  At that time he was also President, General Director and Chief Operating Officer of SPCC, and he owes a fiduciary duty to ASARCO's creditors, including plaintiffs.  Mr. Rocha may be served with process at his place of business at its principal place of business at 2575 East Camelback Road, Phoenix, Arizona.

20.    Defendant DANIEL TELLECHEA SALIDO was a Director, Executive Vice President and Chief Financial Officer of ASARCO at the date of the transfer of SPCC to AMC. At that time he was also, Director and Vice President of Finance for SPCC and Managing Director for Administration and Finance of Grupo Mexico, and he owes a fiduciary duty to ASARCO's creditors, including plaintiffs.  Mr. Salido may be served with process at his place of business at its principal place of business at 2575 East Camelback Road, Phoenix, Arizona.

## BACKGROUND ALLEGATIONS

### A.    ASARCO BEFORE THE LEVERAGED BUYOUT

21.    Prior to the leveraged buyout (LBO) of ASARCO by GRUPO MEXICO, ASARCO's publically filed financial statements portrayed ASARCO as a solvent, international, publicly traded corporation, listed on the New York Stock Exchange with more than four billion dollars in assets and a low debt to asset ratio.

6

216

22.    However, the Defendants, including the Officers and Directors of ASARCO, were aware of multiple claims against the company for environmental cleanup relating to ASARCO's mining and smelting operations in the United States and thousands of asbestos related personal injury claims stemming from the operation of ASARCO's own facilities and those of two of ASARCO's subsidiaries Capco Pipe Company (asbestos product manufacturer and distributor) and LAQ (asbestos mining operation).

23.    Taking these present and anticipated creditor claims into account, ASARCO was insolvent or facing insolvency prior to the LBO.

24.    ASARCO's Directors decided to sell the company. The Directors, all insiders and shareholders of ASARCO, entertained and accepted tender offers from Phelps Dodge Corporation and defendant GRUPO MEXICO.

25.    The sale of ASARCO and the liquidation of the company's principal assets prior to the settlement of its environmental claims, including asbestos claims, and its other anticipated unsecured creditor claims, unlawfully favored shareholders at the expense of creditors including Plaintiffs.

B.    **OVERVIEW OF GRUPO MEXICO'S TENDER OFFER AND INTEGRATED PLAN OF LIQUIDATION**

26.    GRUPO MEXICO offered to purchase ASARCO's stock for cash through a leveraged buyout. GRUPO MEXICO's tender offer consisted of $29.75 per share, a guarantee of a loan from Chase to ASARCO to repurchase its own stock and assumption of $1.2 billion dollars in "pre-existing corporate debt." GRUPO MEXICO's proposal did not, however, involve actually paying-off all of ASARCO's "pre-existing corporate debt."

.217

27.    GRUPO MEXICO would then force ASARCO to become responsible for the Chase loan, requiring ASARCO (rather than GRUPO MEXICO) to pay for its own buyout by GRUPO MEXICO.  ASARCO was thus forced to repay the Chase loan made to GRUPO MEXICO by cannibalizing itself through the sale of its own assets.

28.    As for the "pre-existing corporate debt" most of the debt was not owed or guaranteed by ASARCO.  This debt was SPCC's, and it arose out of an expansion project of SPCC's copper mining operations.  Nevertheless, upon information and belief, GRUPO MEXICO also required that assets of ASARCO be liquidated to pay down SPCC's debt.  Eventually, having used its own assets to pay down SPCC's debt, ASARCO transferred its SPCC stock to GRUPO MEXICO for unreasonably small consideration.

## C.    STEP 1: GRUPO MEXICO's PURCHASE AND PRIVATIZATION OF ASARCO

29.    In November 1999, GRUPO MEXICO purchased ASARCO in a "bust up" acquisition wherein the non-mining assets of ASARCO were sold to finance the purchase.

30.    The acquisition of ASARCO by GRUPO MEXICO was accomplished through the redemption of ASARCO's stock.  Prior to its tender offer, GRUPO MEXICO acquired slightly more than 9% of the outstanding ASARCO common shares and was the company's largest single shareholder.  As ASARCO repurchased its own shares, GRUPO MEXICO's ownership interest in ASARCO increased.

31.    In connection with the acquisition, GRUPO MEXICO caused ASARCO to merge with a GRUPO MEXICO merger subsidiary with "ASARCO" being the survivor.  GRUPO MEXICO's ASARCO stock was then transferred to another holding company, defendant Americas Mining Corporation (AMC).

8

218

32.    After redemption of the other ASARCO shareholders, GRUPO MEXICO privatized ASARCO in anticipation of liquidating its non-mining assets.  ASARCO was de-listed from the New York Stock Exchange, and ASARCO was no longer required to publish its financial reports.

33.    In a series of related, integrated and designed transactions, GRUPO MEXICO acquired ASARCO by means of a leveraged buyout for less than fair consideration, without good faith and in derogation of creditors' rights, including plaintiffs'.

34.    GRUPO MEXICO's acquisition costs for the purchase of ASARCO were paid with money borrowed by ASARCO.  In November 1999, GRUPO MEXICO negotiated with Chase for financing to redeem ASARCO's stock.

35.    To pay initial acquisition costs, GRUPO MEXICO caused ASARCO (through the GRUPO MEXICO merger subsidiary) to borrow eight hundred seventeen million dollars ($817,000,000) ("acquisition loan") from defendant Chase.

36.    Chase also set up and syndicated a four hundred fifty million dollar ($450,000,000) revolving line of credit for ASARCO which added to the company's debt load and debt service.

37.    As collateral, ASARCO pledged its ownership interest in SPCC, Enthone OMI and related companies (collectively "Enthone") and American Limestone Company, Inc. and related companies (collectively "American Limestone") (collectively "ASARCO's principal assets").  As a part of GRUPO MEXICO's acquisition and in anticipation of transfer to GRUPO MEXICO, ASARCO placed its SPCC stock in a wholly owned subsidiary and holding company, Southern Peru Holding Corporation II ("SPHC").  At

9

21

the time of acquisition, ASARCO owned approximately 54% of the voting stock of SPCC.

38.    Chase and the other participating banks expected to be paid, and were paid, as priority lenders, out of the proceeds of the sale of ASARCO's speciality chemical division (Enthone) and ASARCO's aggregates division (American Limestone) and the proceeds of the sale of ASARCO's SPCC stock.

39.    Defendant Chase knew it was providing the senior debt necessary to acquire and liquidate ASARCO's principal assets, and knew or should have known that ASARCO was already insolvent because of environmental and asbestos liabilities or would be rendered insolvent or without sufficient capital to continue normal business operations as a result of these conveyances.

40.    Chase knew that ASARCO's outstanding unsecured environmental and personal injury creditors would not be satisfied under the planned liquidation.

41.    The recitals within the loan agreement state that the principal purpose of the acquisition loan was to repurchase ASARCO's stock from its shareholders.    Chase knew the proceeds of the loan would not accrue to the benefit of ASARCO or its creditors and thus represented unreasonably small capital return for the encumbrance. Chase knew that the loan proceeds were to be used for the benefit of third parties, GRUPO MEXICO, AMC and the former shareholders of ASARCO, who were "insiders" to the transaction.

D.    **STEP 2:  THE LIQUIDATION OF ASARCO'S PRINCIPAL ASSETS**

42.    After the acquisition, GRUPO MEXICO moved ASARCO's corporate headquarters from New York to Phoenix, Arizona, where ASARCO shared office space

220

with AMC and SPHC. GRUPO MEXICO replaced ASARCO's Officers and Directors with designees from its own Board.   ASARCO became a wholly owed subsidiary of AMC.   After acquisition, ASARCO lost its separate identity and is totally controlled by GRUPO MEXICO and its affiliates.

43.    GRUPO MEXICO forced ASARCO to sell its assets to pay GRUPO MEXICO'S acquisition costs.  At GRUPO MEXICO's direction, approximately $17 million of ASARCO's business equipment was sold at auction.

44.    At GRUPO MEXICO'S direction and as had been agreed by Chase, ASARCO sold its profitable speciality chemical division (Enthone) to Cookson LLP of England for five hundred three million dollars ($503,000,000).

45.    At GRUPO MEXICO'S direction and as had been agreed by Chase, ASARCO sold its profitable aggregates division (American Limestone) to Rinker Group LLP of Australia for two hundred eleven million dollars ($211,000,000).

46.    The proceeds of these sales did not accrue to the benefit of ASARCO or its creditors since these monies were applied to acquisition debt and only benefitted Chase, GRUPO MEXICO and ASARCO's former shareholders to the exclusion of existing and future environmental and asbestos claimants.   These conveyances for less than fair consideration, were made without good faith, created or added to ASARCO's insolvency and insufficiency of capital and were in derogation of creditors' rights including the rights of the plaintiffs.

47.    At GRUPO MEXICO's direction, assets of ASARCO were redirected to the detriment of ASARCO's creditors.   Settlement proceeds relating to litigation with ASARCO's excess liability insurers were not segregated and held to pay the known

11

221

liability claims to which the insurance coverage related. As clear evidence of the integrated plan to liquidate ASARCO to the detriment of unsecured creditors, the future proceeds of the insurance settlement were sold at heavy discount, and the cash was transferred to ASARCO's operating account and spent.

48.    In 2003, at GRUPO MEXICO's direction as had been agreed by Chase, ASARCO's interest in SPCC was transferred to AMC, another wholly owned subsidiary of GRUPO MEXICO. In consideration for this conveyance, GRUPO MEXICO paid Chase and the syndicate of banks, on behalf of ASARCO, four hundred fifty million dollars ($450,000,000) in repayment of loans arising out of the acquisition, "forgave" some inter-company debt to Compania Mexicana de Cobre also related to acquisition costs and agreed to pay two hundred forty three million dollars ($243,000,000) at some future date. Part of this last payment may accrue to the benefit ASARCO's unsecured creditors (principally as part of a settlement agreement with the United States on some environmental claims) but it represents an amount far less than a fair equivalent for the asset.

**E.    ASARCO SUED FOR FRAUDULENT CONVEYANCE
BY THE UNITED STATES GOVERNMENT**

49.    After the transfer of ASARCO's most valuable remaining asset (the SPCC stock held by SPHC) was proposed, the United States (an unsecured creditor with environmental based claims) brought suit against ASARCO for fraudulent conveyance. (*United States of America v. Asarco Incorporated and Southern Peru Holding Corporation* (W. D.Wash.), (later transferred to D. Ariz.).

50.    During the course of the Government litigation, ASARCO admitted it was

12

222

no longer able to pay its debts as they matured.

51.    The United States eventually settled its claims against ASARCO and SPHC for one hundred million dollars ($100,000,000), an amount far less than the liability owed on just matured environmental claims, and withdrew its objection to the transfer. This settlement provided no benefits or protections whatsoever for ASARCO's other unsecured creditors including plaintiffs.

52.    Upon information and belief, the United States settled its claim cheaply because the SPCC stock was already encumbered by the acquisition loan from defendant Chase, ASARCO's assets had already been depleted by the sale of Enthone and American Limestone, ASARCO was too thinly capitalized to continue many of its business operations and because of financial misrepresentations of ASARCO, GRUPO MEXICO and defendant Ernst & Young as to the value of ASARCO's interest in SPCC.

53.    The transfer of ASARCO's interest in SPCC was facilitated by defendant Ernst & Young who recklessly and knowingly provided an opinion undervaluing this asset. As a direct result of the misrepresentations of Ernst & Young, plaintiffs' rights were undermined.

**F.    ASARCO AFTER THE LBO AND RELATED ASSET SALES**

54.    After the conveyances described herein, ASARCO was left an insolvent shell. The present salable value of ASARCO's assets is less than the amount required to pay the corporation's probable liabilities, including the personal injury claims of plaintiffs. ASARCO lacks sufficient resources to timely pay its creditors, including plaintiffs. ASARCO is too thinly capitalized to continue the business operations it maintained prior to the sale of SPCC. Stripped of its most valuable assets, ASARCO is on the verge of

13

223

filing for Bankruptcy protection.

55.    A just outcome for plaintiffs, whose claims against ASARCO remain unsatisfied, requires that the foregoing transactions be viewed as part of an integrated plan, executed in a period of less than five years,  resulting in conveyances which are fraudulent to plaintiffs.

### PLAINTIFFS' FIRST CLAIM FOR RELIEF
*(Constructive Fraud -Conveyance Resulting in Insolvency)*

56.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-55 and for their First Claim for Relief state as follows:

57.    ASARCO owes a  "debt" to plaintiffs as that term is defined under the New York Fraudulent Conveyance Act ("the Act").   N. Y. DEBT. & CRED. § 270.

58.    The sale of ASARCO to GRUPO MEXICO in November 1999 by and through a leveraged buyout is a "conveyance" as that term is defined under the Act. N. Y. DEBT. & CRED. § 270.

59.    The encumbrance of ASARCO's interests in Enthone, American Limestone and SPCC in furtherance of the GRUPO MEXICO LBO of ASARCO, is a "conveyance" of ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. § 270.

60.    The sale at auction certain of ASARCO's business equipment is a "conveyance" of ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. § 270.

61.    The transfer of GRUPO MEXICO's ownership interest in ASARCO (as merged with ASMEX) to AMC is a "conveyance" of  ASARCO's (the debtor's) property

14

within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

62.    The sale of Enthone, American Limestone and ASARCO's ownership interest in SPCC ("ASARCO's principal assets") separately and in connection with an integrated plan of liquidation is/are "conveyance(s)" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

63.    The redemption of ASARCO's stock from ASARCO's Directors and other shareholders is a "conveyance" as that term is defined under the Act. N. Y. DEBT. & CRED. § 270.

64.    Plaintiffs have claims against ASARCO for damages resulting from personal injuries occasioned by exposure to asbestos. Plaintiffs are "creditors" of ASARCO under the Act. N. Y. DEBT. & CRED. § 270.

65.    ASARCO was purchased by GRUPO MEXICO, its stock was redeemed, certain of its business equipment was liquidated at auction and its principal assets encumbered and sold at a time when ASARCO was either insolvent or would become insolvent as a result of the liquidation of its assets.

66.    ASARCO received less than fair consideration for the redemption of its stock and transfer of controlling interest in the company to GRUPO MEXICO and AMC since the proceeds of the conveyance accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO and Chase) and not to the benefit of ASARCO or its creditors.

67.    ASARCO received less than fair consideration for the encumbrance of its principal assets since the proceeds of the conveyances accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former shareholders of ASARCO and Chase) and

15