**EXHIBIT 3**

**EXHIBIT 3**

**DECLARATION OF RUTH GRAHAM KERN**

**FILED UNDER SEAL**

# EXHIBITS 1-10
# TO
# EXHIBIT 3

## FILED UNDER SEAL

# EXHIBIT 11
# TO
# EXHIBIT 3



1   KELLY A. JOHNSON
    Principal Deputy Assistant Attorney General
2   Environment and Natural Resources Division
    DAVID L. DAIN
3   STEVEN A. KELLER, AZ Bar No. 7426
    KIM J. SABO
4   Trial Attorneys
    Environmental Enforcement Section
5   Environment and Natural Resources Division
    United States Department of Justice
6   P.O. Box 7611
    Washington, DC 20044-7611
7   Telephone: (202) 514-5465

8   PAUL K. CHARLTON
    United States Attorney
9   SUE KLEIN, AZ Bar No. 11253
    Assistant United States Attorney
10  Two Renaissance Square
    40 N. Central Av., Suite 1200
11  Phoenix, Arizona 85004
    Telephone: (602) 514-7740

12

13  Attorneys for Plaintiff United States of America

14              IN THE UNITED STATES DISTRICT COURT
15                 FOR THE DISTRICT OF ARIZONA

16  UNITED STATES OF AMERICA,

17                  Plaintiff,

18        v.                               No. CV 02-2079-PHX-RCB

19  ASARCO, INC. and SOUTHERN PERU         CONSENT DECREE
    HOLDINGS CORPORATION,
20
21                  Defendant.

22

23                          I. BACKGROUND

24      A.   The United States filed its Complaint in this action on August 9, 2002, seeking

25  declaratory relief pursuant to 28 U.S.C. § 2201 regarding the rights and obligations of the

26  parties under Section 3304 of the Federal Debt Collection Procedures Act of 1990

27  ("FDCPA"), 28 U.S.C. § 3304, and the Federal Priorities Act ("FPA"), 31 U.S.C. § 3713, and

28  seeking appropriate injunctive relief.

ASA00005233
CONFIDENTIAL

B.      Defendant ASARCO Incorporated ("ASARCO") is incorporated in the State of New Jersey and maintains its principal place of business at 2575 E. Camelback Rd., Phoenix, Arizona. Defendant Southern Peru Holdings Corporation ("SPHC") is incorporated in the State of Delaware and maintains its principal place of business at 2575 E. Camelback Rd., Phoenix, Arizona. SPHC is a holding company and is a wholly owned subsidiary of ASARCO. ASARCO is a wholly owned subsidiary of Americas Mining Corporation ("AMC"), which is incorporated in the State of Delaware. AMC is a wholly owned subsidiary of Grupo Mexico S.A. de C.V. ("Grupo Mexico"), a Mexican corporation.

C.      ASARCO has established liabilities to the United States. These include, but are not limited to, environmental clean-up and/or payment obligations under the following civil judgments: *United States v. ASARCO* (W.D. Wash.), Civil Action No. C91-5528 B; *United States v. ASARCO* (W.D. Wash.), Civil No. C94-5714RJB; *United States and State of Idaho v. ASARCO, et al.* (D. Idaho), Civil Action No. 94-206-N-EJL; *United States and State of Texas v. Encycle/Texas and ASARCO* (S.D. Texas), Civil Action H-99-1136; *United States v. ASARCO* (D. Mont.), CV 98-3-H-CCL; *United States v. ASARCO* (D. Mont.), CV-90-46-H-CCL; *United States and State of Arizona v. ASARCO* (D. Ariz.), No. CIV 98-0137 PHX ROS; *United States v. ASARCO* (D. Colo.), Civil Action Nos. CV-83-C-2388 and 86-C-1675; *United States v. ASARCO* (D. Utah), Civil Action No. 2:98CV-0415B; *United States v ARCO, et al.* (D. Montana), Civil Action No. 02-35-Bu-RFC; and *United States v. ASARCO, et al.* (D. Kansas), Civil Action No. 99-1399.

D.      ASARCO also has environmental liabilities to the United States under administrative orders on consent issued by the United States Environmental Protection Agency ("EPA") and the United States Department of Agriculture ("USDA") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, including but not limited to the following: *In the Matter of Circle Smelting, Beckemeyer, IL*, EPA Docket No. V-W-97-C-419; *In the Matter of Removal Action - East Helena Superfund Site*, EPA Docket No. CERCLA-VIII-91-17, June 20, 1996; *In the Matter of RI/FS, Vasquez Blvd./Interstate 70 (Denver, CO)*, CERCLA-08-2001-13,

2

ASA00005234
CONFIDENTIAL

1  September 25, 2001; *In the Matter of Jasper County/Tri-State Mining Area Site*, 91-F-0020,

2  August 2, 1991; *In the Matter of Newton County Mine Tailings Site*, VII-96-F-0022, June 17,

3  1997; *In the Matter of Federal Mine Tailings Site*, VII-97-F-0009, September 30, 1997; *In*

4  *the Matter of Big River/St. Francois County Mining Area Site*, VII-97-F-0002, January 29,

5  1997; *In the Matter of Jack Waite Mine Site* (USDA), Idaho Panhandle National Forest, EPA

6  Docket No. 10-98-00-CERCLA, March 30, 2000; and *In the Matter of Upper Blackfoot*

7  *Mining Complex, Helena National Forest, Montana* (USDA, Forest Service, Northern

8  Region).

9        E.    The United States alleges that ASARCO also has environmental liabilities under

10  EPA unilateral administrative orders as follows: *In the Matter of Commencement Bay*

11  *Nearshore/Tideflats Site (Sediments/Groundwater OU)*, CERCLA 10-2002-0046; *Silver*

12  *Bow Creek/Butte Area Site (Mine Flooding OU)*, CERCLA-VIII-96-19, June 11, 1996; *In the*

13  *Matter of Newton County Mine Tailings Site*, 07-2002-0114, April 15, 2002; *In the Matter*

14  *of Omaha Lead Site*, CERCLA-7-99-F-0029, August 24, 1999.

15        F.    ASARCO is a defendant in an ongoing civil action, *United States v ASARCO, et*

16  *al* (D. Idaho), Civil Action Nos. 96-0122-N-EJL/91-0342-N-EJL (Consolidated Cases),

17  brought under Section 107(a) of CERCLA for recovery of response costs and damages for

18  injury to, destruction of, or loss of natural resources at the Coeur d'Alene River Basin in Idaho,

19  which is part of the Bunker Hill Mining and Metallurgical Complex Superfund Facility

20  Operable Unit 3.

21        G.    Although not yet subject to formal proceedings, the United States contends that

22  ASARCO is liable under Section 106 and/or 107 of CERCLA, 42 U.S.C. §§ 9606, 9607, for

23  response actions and repayment of response costs incurred or to be incurred at a number of

24  additional sites, including but not limited to the Richardson Flat Site, Park City, UT; the El

25  Paso County Metal Survey Site, El Paso, TX; the Omaha Smelter Site, Omaha, NE; and the

26  Hayden Mine and Smelter Site, Hayden, AZ. Moreover, based on ASARCO's mining and

27  operational history, ASARCO stands exposed to the potential that additional environmental

28  liabilities will arise or be discovered in the future.

3

ASA00005235
CONFIDENTIAL

H.    ASARCO has been unable to comply fully with its environmental remediation obligations over at least the last two years.

I.    ASARCO is and has been, and/or the United States claims that ASARCO is and has been, in violation of a number of the various consent decrees, administrative orders on consent and unilateral administrative orders referenced in Paragraphs C, D, and E, as the result of its actual or alleged noncompliance with the requirements, terms and conditions of those consent decrees or orders, including financial assurance requirements. ASARCO stands exposed to claims for stipulated and statutory penalties in excess of $100,000,000 for such noncompliance. Because ASARCO's noncompliance with several outstanding consent decrees and orders continues, ASARCO's exposure to stipulated and statutory penalties increases significantly every day.

J.    ASARCO would have to spend in excess of $150 million in calendar years 2003 through 2005 if required to perform all Environmental Response work that it is obligated to the United States to perform by the end of that calendar year and to reimburse the United States for all of the United States' existing claims for past Environmental Response Costs.

K.    In July 2002, ASARCO informed the United States that ASARCO and SPHC intended to sell their stock holdings and majority ownership interest in the Southern Peru Copper Corp. ("SPCC") to AMC and informed the United States of the proposed terms for this transfer.

L.    The Complaint filed in this action seeks a judgment declaring that the proposed terms of the sale and transfer of ASARCO/SPHC's ownership interest in SPCC, as represented by ASARCO to the United States in July 2002, violate Sections 3304(a)(1), 3304(a)(2), and 3304(b)(1)(B)(ii) of the FDCPA, 28 U.S.C. §§ 3304(a)(1), 3304(a)(2), and 3304(b)(1)(B)(ii), as well as the FPA, 31 U.S.C. § 3713, and seeks preliminary and permanent injunctive relief enjoining this sale and transfer under such proposed terms.

M.    ASARCO represents that: (a) the sale and transfer of the ASARCO/SPHC ownership interest in SPCC is necessary for the financial viability of ASARCO and to eliminate the outstanding secured debt which had originally been due and payable on November

4

ASA00005236
CONFIDENTIAL

1    10, 2002; (b) with the approval of this settlement, ASARCO fully intends to continue its

2    operations for at least the next 12 months following approval; and (c) ASARCO fully intends

3    to fulfill all of its environmental obligations to the U.S., States, Tribes, and pursuant to private

4    party civil litigation settlements to the fullest extent of its capabilities.

5        N.    ASARCO and SPHC represent that they believe the sale and transfer of their

6    stock and ownership interest in SPCC as structured under the terms of this Consent Decree

7    provides reasonably equivalent value for their interest in SPCC. ASARCO and SPHC provide

8    support for that representation in Appendix I.

9        O.    In consideration of the covenants of the United States as set forth in Section X

10   of this Consent Decree, ASARCO agrees to the creation of an Environmental Trust under the

11   terms and conditions set forth in this Consent Decree and in the Trust Agreement.

12       P.    In creating the Environmental Trust provided for as part of this Consent Decree,

13   it is the intent of the Parties that ASARCO have no beneficial, equitable or legal interest in the

14   Environmental Trust. The beneficiary of the Environmental Trust shall be the United States in

15   its capacity as enactor and enforcer of laws protecting the environment and the health and

16   welfare of its citizens.

17       Q.    By entering into this Consent Decree the Defendants do not admit any liability

18   arising out of the transactions or occurrences alleged in the complaint, nor do they admit to

19   the truth of any of the allegations contained in the complaint. Moreover, by entering into this

20   Consent Decree, the Defendants do not admit any liability under CERCLA or any other

21   environmental statute regarding any Site.

22       R.    The Parties recognize, and the Court by entering this Consent Decree finds, that

23   this Consent Decree has been negotiated by the Parties in good faith; implementation of this

24   Consent Decree will avoid prolonged and complicated litigation between the Parties; and this

25   Consent Decree is fair, reasonable, and in the public interest.

26       NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

27

28

ASA00005237
CONFIDENTIAL

## II. JURISDICTION

1.   This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1345, 2201, 3004, and 3306.  This Court also has personal jurisdiction over the Defendants.  The Defendants waive all objections and defenses that they may have to the jurisdiction of the Court over all matters relating to or arising out of this Consent Decree or the Complaint in this action, or to the personal jurisdiction of the Court over the Defendants in all matters relating to or arising out of this Consent Decree or the Complaint in this action, or to venue in this District.  Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.   This Consent Decree applies to and is binding upon the United States and upon ASARCO and SPHC and their successors and assigns.  Any change in ownership or corporate status of ASARCO or SPHC, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter ASARCO's or SPHC's responsibilities under this Consent Decree.

3.   AMC is a signatory to this Consent Decree, and AMC and its successors and assigns are bound solely with respect to its obligations set forth in Appendix A and Appendix B; this Paragraph; and Paragraphs 6.b, 6.c, 9, 10, 39 and 40.  Grupo Mexico is a signatory to this Consent Decree, and Grupo Mexico and its successors and assigns are bound solely with respect to its obligations set forth in Appendix D; this Paragraph; and Paragraphs 6.d, 9, 10, 39, and 40.  Any change in ownership or corporate status of AMC or Grupo Mexico, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter AMC's or Grupo Mexico's obligations under this Consent Decree and the related Notes and Guaranty.  AMC and Grupo Mexico consent to the jurisdiction of this Court, and agree that they will not challenge, in any action brought by the United States to enforce the terms and conditions of this Consent Decree, the jurisdiction of this Court to enter this Consent Decree or the

6

ASA00005238
CONFIDENTIAL

1   personal jurisdiction of this Court to enforce the specific obligations, conditions, or

2   requirements to which they are subject pursuant to this Consent Decree.

3

4                     **IV. DEFINITIONS**

5       4.     Unless otherwise expressly provided herein, terms used in this Consent Decree

6   which are defined in CERCLA or in regulations promulgated under CERCLA shall have the

7   meaning assigned to them in CERCLA or in such regulations. All dollar amounts specified in

8   this Consent Decree refer to United States dollars. Whenever terms listed below are used in

9   this Consent Decree or in the appendices attached hereto and incorporated hereunder, the

10   following definitions shall apply:

11       "Annual Budget" shall have the meaning defined in Section VIII of this Consent Decree,

12   and includes any amended Annual Budget accepted by the Trustee pursuant to Paragraph 25.

13       "CERCLA" shall mean the Comprehensive Environmental Response, Compensation,

14   and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

15       "Circle Smelting Non-Time Critical Removal Site" shall mean that facility located in

16   Beckemeyer, Illinois that has been subject to a non-time critical removal action.

17       "Closing Date" shall mean the date on which the documents contained in Appendices

18   A through H are fully executed and exchanged by all necessary signatories to those documents.

19       "Commencement Bay Nearshore/Tideflats Superfund Site - Relevant Operable Units"

20   shall mean three of the seven operable units that are part of the Commencement Bay/Tideflats

21   Superfund Site in Tacoma Washington. The three relevant operable units are (a) the ASARCO

22   Tacoma Smelter and Slag Peninsula Operable Unit; (b) the ASARCO Off-Property (Ruston/

23   North Tacoma Study Area) Operable Unit; and (c) the ASARCO Sediments/Groundwater

24   Operable Unit.

25       "Consent Decree" shall mean the text of this Decree and all appendices attached hereto

26   (listed in Paragraph 50). In the event of conflict between the text of this Decree and any

27   appendix, the text of this Decree shall control.

28

7

ASA00005239
CONFIDENTIAL

1    "Day" shall mean a calendar day unless expressly stated to be a working day. "Working
2    day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any
3    period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday,
4    or Federal holiday, the period shall run until the close of business of the next working day.
5        "Defendants" shall mean ASARCO and SPHC.
6        "Environmental Response" shall mean (1) a response within the meaning of Section 101
7    of CERCLA, 42 U.S.C. § 9601, at any Site; (2) a corrective action or imminent hazard
8    abatement action required or performed pursuant to the Resource Conservation and Recovery
9    Act ("RCRA"), 42 U.S.C. § 6901 *et seq*, or a state hazardous waste program authorized
10   pursuant to Section 3006 of RCRA, 42 U.S.C. § 6926, at any Site, and (3) the planning and
11   implementation of measures to restore, replace or acquire the equivalent of natural resources
12   that have been injured by releases of hazardous substances at the Bunker Hill Mining and
13   Metallurgical Complex Superfund Facility.
14       "Environmental Response Costs" shall mean all costs incurred in connection with the
15   performance of any Environmental Response.  However, this definition does not include (1)
16   any costs incurred prior to February 1, 2003; (2) any attorneys' fees incurred by ASARCO; (3)
17   any internal costs of ASARCO associated with ASARCO's employees or operations, except
18   where (i) sampling and analytical laboratory costs are incurred in lieu of retaining an outside
19   contractor for performance of the same sampling and analytical laboratory work, (ii) such
20   costs were the low bid out of at least three bids, and (iii) such costs are included on a Annual
21   Budget; (4) any costs incurred by other potentially responsible parties who may have a claim
22   for recovery of such costs against ASARCO, other than costs incurred pursuant to a Annual
23   Budget under this Consent Decree; or (5) any costs associated with compliance under
24   environmental laws other than CERCLA or RCRA.
25       "Environmental Trust" shall mean the trust created pursuant to Section VII below and
26   the Trust Agreement.
27       "Force majeure" shall mean any event arising from causes beyond the control of the
28   Defendants, of any entity controlled by the Defendants, or of the Defendants' contractors, that

8

ASA00005240
CONFIDENTIAL

1   delays or prevents the performance of any obligation under this Consent Decree despite the
2   Defendants' best efforts to fulfill the obligation. The requirement that the Defendants exercise
3   "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential
4   force majeure event and best efforts to address the effects of any potential force majeure event
5   (1) as it is occurring and (2) following the potential force majeure event, such that the delay
6   is minimized to the greatest extent possible. "Force Majeure" does not include financial
7   inability to complete Environmental Response work, subject to the limits prescribed in
8   Paragraph 33.

9       "Globe Plant" shall mean that 89 acre parcel of land owned by ASARCO and located in
10  Adams and Denver counties with an office address of 495 East 51st Avenue, Denver, Colorado
11  80216-2098.

12      "Guaranty" shall mean Grupo Mexico's written guaranty regarding exclusively Note B
13  that is attached as Appendix D to this Consent Decree.

14      "Murray Smelter Consent Decree - Relevant Section" shall mean the Consent Decree
15  for remedial action entered in the United States District Court for the District of Utah
16  captioned: United States v. ASARCO Inc. et al., Civil Action No. 2:98CV0451B. Specifically
17  this definition includes only those costs required to be paid pursuant to Section XVI, Paragraph
18  67a and 67b, of that consent decree.

19      "Note A" shall mean that $123.25 million promissory note issued by AMC to SPHC
20  that is attached as Appendix A to this Consent Decree.

21      "Note B" shall mean that $100 million promissory note issued by AMC to SPHC that
22  is attached as Appendix B to this Consent Decree.

23      "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral
24  or upper case letter.

25      "Parties" shall mean the United States, ASARCO and SPHC.

26      "Performing Entity" shall mean any person or entity, including but not limited to the
27  United States and ASARCO, designated in a Proposed Annual Budget or Annual Budget as
28

9

ASA00005241
CONFIDENTIAL

1  having the right to seek reimbursement for the performance of specified work projects under
2  such Annual Budget, as provided in Paragraphs 21, 23, and 25.

3      "Proposed Annual Budget" shall have the meaning given in Section VIII of this Consent
4  Decree.

5      "Revolver Notes" shall mean the $450 million indebtedness owed by ASARCO to a
6  consortium of lenders as of the date of this Consent Decree that is secured by
7  ASARCO/SPHC's stock and ownership interest in SPCC.

8      "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

9      "Site" shall mean (1) any facility addressed in an existing or future judicial consent
10  decree to which the United States and ASARCO are parties, or in an existing or future
11  administrative order on consent or unilateral administrative order issued to ASARCO by a
12  federal agency or department, which requires site investigation or other response action under
13  Sections 104(a) or 106 of CERCLA or Sections 3008(h) or 7003 of RCRA; or (2) any facility
14  at which ASARCO is identified by EPA as a potentially responsible party ("PRP") under
15  CERCLA and which either now or in the future (a) is listed or proposed for listing on the
16  National Priorities List pursuant to Section 105 of CERCLA or (b) is determined by EPA to
17  have a Hazard Ranking System score of at least 28.5 and at which a CERCLA response action
18  is being performed or overseen by EPA, the U.S. Department of the Interior ("DOI"), or the
19  U.S. Department of Agriculture ("USDA"), or by a state agency that has been formally
20  designated as the lead response agency by EPA pursuant to 40 C.F.R. Part 35, Subpart O; or (3)
21  any facility that the United States and ASARCO agree, in an Annual Budget prepared pursuant
22  to the Consent Decree, should receive funding for Environmental Response work from the
23  Environmental Trust.

24      "Stipulation" shall mean the Amended Stipulation among the Parties lodged with the
25  Court on October 11, 2002, and entered on the docket October 16, 2002, and all prior
26  stipulations among the Parties in this matter.

27      "Subparagraph" shall mean a portion of this Consent Decree identified by a lower case
28  letter.

10

ASA00005242
CONFIDENTIAL

"Trust Agreement" shall mean the agreement establishing the Environmental Trust, which is attached as Appendix F to this Consent Decree.

"Trustee" shall mean the trustee of the Environmental Trust.

"United States" shall mean the United States of America, including its departments, agencies, and instrumentalities.

## V. TERMS AND CONDITION OF SPCC STOCK TRANSFER

5.    The Parties agree that Defendants shall not assign, sell or transfer any stock or ownership interest in SPCC except under the specific terms and conditions set forth in the Agreement of Sale (attached hereto as Appendix C).

6.    The Agreement of Sale shall include the following terms and conditions:

a.    The following events shall occur on the Closing Date:

i.  SPHC shall transfer its entire ownership interest in SPCC stock to AMC;

ii.  AMC shall pay to ASARCO/SPHC the sum of $500 million, $450 million of which shall be used exclusively to satisfy in full ASARCO's indebtedness under the Revolver Notes;

iii.  ASARCO/SPHC shall satisfy in full its indebtedness under the Revolver Notes;

iv.  AMC and/or its affiliates shall cancel the $41.75 million claim of debt they have against ASARCO and/or SPHC, and, if the contingency in Paragraph 8 occurs, the $50 million debt described in Paragraph 8;

v.  AMC shall execute and deliver to SPHC a promissory note in the amount of $123.25 million, the terms of which shall provide for payments in seven equal principal installments of $17,607,143.00, each installment due and payable on October 31 of each year beginning October 31, 2003, plus accumulated interest on the principal balance at the rate of 7% per annum (Note A, attached hereto as Appendix A);

11

ASA00005243
CONFIDENTIAL

vi.  AMC shall execute and deliver to SPHC a promissory note in the amount of $100 million, the terms of which shall provide for payments in eight equal principal installments of $12.5 million, each installment due and payable on May 31 of each year beginning May 31, 2003, plus accumulated interest on the principal balance at the rate of 7% per annum (Note B, attached hereto as Appendix B);

vii.  Grupo Mexico shall execute a guaranty agreement guaranteeing AMC's performance under Note B (Guaranty, attached hereto as Appendix D);

viii.  SPHC shall irrevocably assign any and all interest it has in Note B and the Guaranty to ASARCO. The document creating that assignment is attached hereto as Appendix E;

ix.  ASARCO shall execute the Trust Agreement, attached hereto as Appendix F, creating the Environmental Trust prescribed pursuant to Section VII;

x.  ASARCO shall execute a Security Agreement, attached hereto as Appendix G, in favor of the United States which provides the United States a security interest in Note B and the Guaranty and any proceeds thereof to secure the performance of Environmental Response or the reimbursement of Environmental Response Costs at any or all of the Sites. The collateral for this security interest shall be Note B and the Guaranty and any proceeds thereof. The Security Agreement may be modified by agreement of the United States and ASARCO before execution, provided that the terms and conditions of the Security Agreement as modified are substantially equivalent to the original terms and conditions as set forth in Appendix G and in this Paragraph; and

12

ASA00005244
CONFIDENTIAL

xi. ASARCO shall irrevocably assign any and all interest it has in Note B and the Guaranty to the Environmental Trust. The document creating that assignment is attached hereto as Appendix H.

b.    ASARCO/SPHC and AMC agree that the dividend share based on ownership of the SPCC stock arising from SPCC operations during the Fourth Quarter of 2002 shall be paid to ASARCO regardless of which party is the actual shareholder of record on the date the right to the dividend vests.

c.    AMC shall make all payments required under the terms of Note B directly to the Trustee of the Environmental Trust.

d.    Grupo Mexico shall make all payments, if any, required under the terms of the Guaranty directly to the Trustee of the Environmental Trust.

7.    Upon the occurrence of all events required to occur as of the Closing Date in conformity with all terms and conditions specified in this Section, and not before such time, the Stipulation shall be deemed terminated.

8.    In the event that the Stipulation is not terminated on or before January 31, 2003, AMC has represented that it may choose to loan ASARCO $50 million solely for the purpose of satisfying, in part, the payment due to the holders of the "Yankee" bonds that mature on February 3, 2003. If such loan is made, AMC shall pay to ASARCO/SPHC the sum of $450 million instead of $500 million pursuant to Paragraph 6.a.ii.

## VI. ENFORCEABILITY OF NOTES AND GUARANTY

9.    The Parties, AMC, and Grupo Mexico agree that Note B and the Guaranty shall be directly enforceable by the United States under the terms of this Consent Decree, both on its own behalf and, as beneficiary, on behalf of the Environmental Trust.

10.    The Parties, AMC, and Grupo Mexico agree that this Court has full jurisdiction and legal authority to enforce Notes A and B and the Guaranty, and to enter any appropriate relief otherwise available under applicable law in the event of nonperformance or default.

13

ASA00005245
CONFIDENTIAL

1    11.   Nothing in this Consent Decree shall limit or abridge any other remedy available
2    to the United States, the Trustee, or any other person to enforce the terms of Notes A and B
3    and the Guaranty.

4

5                 **VII.  ENVIRONMENTAL TRUST**

6    12.   An Environmental Trust shall be established for the sole purpose of funding

7    Environmental Response Costs at any or all of the Sites, under the terms and conditions of the

8    Trust Agreement, attached hereto as Appendix F.  The Trust Agreement may be modified

9    according to its terms.  If the Trust Agreement is modified, it must be reexecuted and promptly

10   filed with the Court.

11      13.   The Environmental Trust shall be administered by an independent Trustee

12   appointed pursuant to the Trust Agreement.

13      14.   The Environmental Trust shall initially be funded by the assignment of Note B

14   and the Guaranty to the Trust, as prescribed under Paragraph 6.a.xi of this Consent Decree.  All

15   payments on Note B and/or the Guaranty shall be made directly to the Trustee on behalf of the

16   Trust.

17      15.   The assets of the Environmental Trust shall be used for no purpose other than

18   to pay Environmental Response Costs at any or all of the Sites, or for administration of the

19   Environmental Trust consistent with the Trust Agreement.

20      16.   In structuring and administering the Environmental Trust under this Consent

21   Decree, the Trustee may seek to minimize any tax liability to which the assets of the

22   Environmental Trust might be subject.

23

24           **VIII.  ANNUAL BUDGET AND WORK SCHEDULES**

25      17.   On an annual basis, for so long as there are funds of the Environmental Trust, a

26   budget and work schedule shall be finalized in accordance with the provisions of the Trust

27   Agreement and this Section.

28

14

ASA00005246
CONFIDENTIAL

18.   Within thirty (30) days of the date of entry of the Consent Decree, ASARCO and the United States shall meet in good faith to establish an initial annual budget and work schedule consistent with this Section for the remainder of the calendar year 2003.  If agreement is reached, and after any consultation with any State or Tribe the United States deems appropriate, this budget and schedule shall be deemed the Annual Budget for calendar year 2003.  The United States shall promptly deliver the Annual Budget to the Trustee.  If ASARCO and the United States are unable to reach agreement, the United States shall determine the Annual Budget for calendar year 2003 after any consultation with any State or Tribe the United States deems appropriate, and the United States shall promptly deliver such budget to the Trustee.  The decisions of the United States made pursuant to this Paragraph shall be in its sole and unreviewable discretion and shall not be subject to further dispute resolution or challenge, nor shall they constitute final agency action giving rise to judicial review.

19.   Thereafter, no later than the first day of November of each calendar year that the Environmental Trust is in existence, ASARCO shall submit to the United States an Environmental Response Report.  This report shall include the following:

a.   A description of all Environmental Response work performed by ASARCO at each Site during the current calendar year and the actual cost of such performance to ASARCO;

b.   A Site by Site description of all Environmental Response work which ASARCO is responsible for performing during the upcoming calendar year under existing consent decrees or administrative orders, and general cost estimates for such work.

c.   An Environmental Response work proposal for the upcoming calendar year, which shall include

i.  a description of the Environmental Response work that ASARCO proposes be funded by the Environmental Trust Fund during the upcoming calendar year (and additional years if warranted by the nature of the work);

15

ASA00005247
CONFIDENTIAL

ii. a description of the portion of the work identified in Paragraph 19.c.i that ASARCO proposes to undertake;

iii. a cost estimate for this proposed work; and

iv. a detailed justification for ASARCO's selection of proposed work as opposed to the other potential Environmental Response work for which ASARCO is responsible, or for which the United States has deemed ASARCO a Potentially Responsible Party, during the upcoming calendar year (and additional years if warranted by the nature of the work); and

v. a list of continuing multi-year allocations provided in prior Annual Budgets, if any.

20.    Should ASARCO not timely submit an Environmental Response Report, the United States shall proceed to develop a Proposed Annual Budget in accordance with the procedures set forth in Paragraph 21.

21.    After any consultation with any State or Tribe the United States deems appropriate, but no later than 45 days after the due date for submission of the Environmental Response Report as prescribed in Paragraph 19, the United States shall serve upon ASARCO a Proposed Annual Budget of Environmental Response work to be completed within the upcoming calendar year.  The Proposed Annual Budget shall include a description of the Environmental Response work to be performed, a designation of ASARCO, the United States, and/or some other Performing Entity as having the right to seek reimbursement for the performance of each specified work project under the budget and schedule, and a budget allocating Environmental Trust monies to fund performance of the response work described in the Proposed Annual Budget and to reimburse the United States and/or a State for their Environmental Response Costs.

22.    Following ASARCO's receipt of the United States' Proposed Annual Budget, ASARCO and the United States shall engage in a period of consultation not to exceed thirty (30) days to expeditiously and informally discuss the Proposed Annual Budget and to consider any suggested modifications.  Within fifteen days of the conclusion of the period of

16

ASA00005248
CONFIDENTIAL

1 consultation, the United States shall determine the Annual Budget and provide the budget to
2 ASARCO and the Trustee. The decisions of the United States made pursuant to this Paragraph
3 shall be in its sole and unreviewable discretion and shall not be subject to further dispute
4 resolution or challenge, nor shall they constitute final agency action giving rise to judicial
5 review.

6      23.    Within twenty (20) days of receipt of an Annual Budget pursuant to Paragraph
7 18 or 22, the Trustee shall notify the United States and ASARCO in writing that the Trustee
8 either accepts or rejects such Annual Budget. The Trustee is obligated to accept and
9 administer any Annual Budget submitted by the United States unless the Trustee concludes that
10 such budget and schedule would be inconsistent with the stated purpose of the Environmental
11 Trust or any conditions or limitations set forth in the Environmental Trust Agreement. A
12 notice of rejection under this Paragraph shall contain an explanation of the Trustee's rejection
13 of the Annual Budget. In the event of a rejection determination by the Trustee under this
14 Paragraph, the United States may either submit a new budget and schedule in accordance with
15 the provisions of Paragraphs 21 and 22 of this Consent Decree, or may seek review by this
16 Court of the Trustee's decision to reject the Final Budget.

17      24.    All Annual Budgets must be established in light of the anticipated availability
18 of funds in the Environmental Trust and shall not require the Trust to pay more money than it
19 is reasonably anticipated will be available from the Trust Fund for any calendar year. Annual
20 Budgets shall provide only for the payment of Environmental Response Costs at Sites;
21 however, not every Site is required to be addressed in any given Annual Budget. Annual
22 Budgets shall not be in conflict with ASARCO's existing work obligations specifically set
23 forth in any consent decree or order except where a modification of such other consent decree
24 or order may be sought pursuant to Section XIII. In such cases, the requirements of any Annual
25 Budget that conflicts with ASARCO's existing work obligations under any consent decree or
26 administrative order shall be expressly conditioned upon obtaining a modification pursuant to
27 Section XIII. Where warranted by the nature of the planned Environmental Response work, an
28

17

ASA00005249
CONFIDENTIAL

1    Annual Budget may include a planned allocation of projected Environmental Trust funds over

2    a multi-year period.

3        25.    An Annual Budget accepted by the Trustee may be amended only by written

4    agreement of ASARCO and the United States, subject to review by the Trustee. Either

5    ASARCO or the United States may propose amendments to the current Annual Budget by

6    service of the proposal on the other party. If ASARCO and the United States reach agreement

7    on the amendment, the United States shall promptly provide the amended Annual Budget to the

8    Trustee. Any amended Annual Budget shall be subject to the conditions and limitations set

9    forth in Paragraph 24. The procedures prescribed in Paragraph 23 governing acceptance or

10   rejection of Annual Budgets shall apply to acceptance or rejection of amended Annual Budgets

11   submitted to the Trustee under this Paragraph.

12       26.    ASARCO shall have the right to seek review by this Court of the Trustee's

13   acceptance of an Annual Budget solely on the following limited grounds:

14           a.    the Annual Budget would require the Trust to pay monies at a facility that

15   is not a Site as that term is defined in this Decree;

16           b.    the Annual Budget conflicts with ASARCO's existing work obligations

17   specifically set forth in an existing consent decree or order and the conflicting

18   provision or provisions are not expressly conditioned upon obtaining a

19   modification of the existing consent decree or order pursuant to Section XIII;

20           c.    the Annual Budget would require the Trust to pay monies for costs that

21   are not Environmental Response Costs as that term is defined in this Decree;

22           d.    the Annual Budget would require the Trust to pay more money than it is

23   reasonably anticipated will be available from the Trust Fund for any calendar

24   year; or

25           e.    the Annual Budget does not adequately fund the performance of

26   Environmental Response work for which ASARCO has been designated as

27   responsible under such Annual Budget.

28

18

ASA00005250
CONFIDENTIAL

1  Review sought pursuant to this Paragraph shall be by petition to this Court. Such petition must

2  be filed no later than ten days after the date of receipt of a notice of the Trustee's acceptance

3  of an Annual Budget pursuant to Paragraph 23. As provided in the Trust Agreement, the Trustee

4  shall, and the United States may, file a memorandum in support of the Annual Budget being

5  challenged within 30 days of service of a petition under this Paragraph. The Court shall affirm

6  the Trustee's decision unless there is clear and convincing evidence that one of the four

7  grounds for challenge set forth in this Paragraph exists. This Paragraph constitutes the

8  exclusive mechanism by which the Defendants may challenge or dispute an Annual Budget, and

9  the Defendants agree not to invoke any other dispute resolution mechanism, including any

10 dispute resolution mechanism provided for in any existing consent decree or administrative

11 order.

12    27.    ASARCO shall perform all Environmental Response work for which it has been

13 designated as responsible under any Annual Budget during the current calendar year for such

14 Annual Budget, provided, however, that ASARCO shall not be responsible for performing or

15 completing such Environmental Response work (a) in the event of a Force Majeure, or (b) to

16 the extent, and only to the extent, that ASARCO is unable to perform or complete such

17 Environmental Response work because insufficient funds were allocated in such Annual

18 Budget for reimbursement of the cost of such Environmental Response work, and such

19 insufficiency in funding (i) could not reasonably have been anticipated as of the deadline for

20 submitting a petition for review of an Annual Budget under the terms of Paragraph 26, or (ii)

21 was anticipated by ASARCO and was communicated to the Trustee prior to the Trustee's

22 acceptance of an Annual Budget. Nothing in this Paragraph shall affect the right of the United

23 States to direct ASARCO to perform or complete Environmental Response work subject to

24 the limits specified in Paragraph 33.

25

26    IX. ENVIRONMENTAL TRUST PAYMENTS

27    28.    A Performing Entity may submit reimbursement requests ("Claims") to the

28 Trustee, with a copy to the United States and ASARCO, for any Environmental Response work

19

ASA00005251
CONFIDENTIAL

for which the claimant was designated as Performing Entity in any Annual Budget. Such Claims must include a full description of all work performed, itemized contractor invoices, and other supporting documentation required under the Trust Agreement. Except as provided in Paragraphs 29 and 30, the Trustee shall be authorized to reimburse a Performing Party only to the extent a Performing Party submits receipts or other proof showing that it has already paid its contractors directly for work that was authorized under the Annual Budget, or, in the case of ASARCO's internal sampling and analytical laboratory costs incurred in lieu of retaining an outside contractor for performance of the same sampling and laboratory work, where such costs were the low bid out of at least three bids and were included on an Annual Budget, only to the extent that ASARCO submits documentation establishing that such costs have already been incurred. The United States and ASARCO shall have thirty (30) days from the date of service of a copy of any Claim in which to serve an objection to that Claim, indicating the basis for contending the Claim is not authorized under the Annual Budget or is not properly documented or supported. Such objection shall be served on the Trustee, the Performing Entity making the Claim, and the United States or ASARCO as appropriate. If there is no objection within thirty days from the date of service of a copy of the Claim, the Trustee shall promptly pay the Claim to the Performing Entity subject to any limitation on payments provided in the Trust Agreement, unless the Trustee concludes that such payment is not authorized under the Annual Budget or that the Claim was not properly documented or supported. In the event that there is an objection or the Trustee determines that the Claim as submitted should not be paid, the Performing Entity making the Claim shall promptly submit a written presentation to the Trustee in support of payment of the Claim or shall withdraw the Claim. The Trustee shall promptly make an independent determination as to whether to allow the Claim, and shall notify the United States, ASARCO, and the Performing Entity of his or her decision. The decision of the Trustee to pay a Claim is not subject to judicial review except upon an allegation by ASARCO or the United States that the Trustee exceeded his or her legal authority in making that decision. The decision of the Trustee to deny a Claim is subject to judicial review only upon petition of the Performing Entity that submitted the Claim alleging

20

1   that the Trustee was in error in concluding that payment of the Claim was not authorized under

2   the Annual Budget or that the Claim was not properly documented or supported.

3       29.    The Trustee shall be authorized to directly reimburse a contractor of a

4   Performing Entity, except a contractor of the United States, for a Claim or a portion thereof

5   upon submission of unpaid contractor invoices with the Claim and a statement by the

6   Performing Party that the contractor has not yet been paid and is to be paid directly by the

7   Trustee.

8       30.    If an Annual Budget accepted by the Trustee designates EPA as the Performing

9   Entity for Environmental Response work at a Site, the Trustee shall transfer the amount

10  budgeted for that work from the Environmental Trust to a special account established by EPA

11  for that Site within the Hazardous Substances Superfund without the need for the filing of a

12  Claim. The Trustee shall make the transfer, in accordance with instructions provided by EPA,

13  by the later of (a) ten days after the Trustee's acceptance of the Annual Budget designating EPA

14  as the Performing Party, or (b) ten days after receipt of the payment under Note B being

15  allocated in that Annual Budget.  EPA may utilize the transferred funds only to pay for

16  performance or oversight of the work specified for the relevant Site in the Annual Budget.

17  Within 60 days after completion of that work, EPA shall submit a report to the Trustee

18  documenting the work performed and the costs incurred for the work. EPA shall provide the

19  same degree of documentation as required in Paragraph 28, and the process of reviewing,

20  challenging and approving such submissions shall be the same as set forth in Paragraph 28.  If

21  the United States has expended less than the full amount transferred to it under this Paragraph

22  for performance or oversight of the Environmental Response work specified in the Annual

23  Budget, it shall return the excess proceeds to the Trust.  If the Trustee, after review of EPA's

24  report, determines that EPA expended less than the full amount transferred on performance

25  or oversight of the work specified in the Annual Budget and has not returned the excess

26  proceeds to the Trust, the Trustee shall so notify EPA and shall request repayment of the

27  amount not expended on that work. EPA shall have thirty days either to challenge the Trustee's

28  determination by petition to this Court or to pay the amount requested to the Trustee for

21

ASA00005253
CONFIDENTIAL

1   redeposit into the Environmental Trust Account. If the Trustee's determination is upheld in
2   whole or in part, EPA shall, within thirty days, pay the amount determined to be payable to the
3   Trustee for redeposit into the Environmental Trust.

4       31.    Any Claim or portion thereof not paid solely because there was insufficient
5   money in the Environmental Trust or because it exceeded the amount budgeted in the Annual
6   Budget for any calendar year may be considered for inclusion in the Annual Budget for the
7   following calendar year.

8       32.    Any portion of the Environmental Trust not expended in a given year shall be
9   available to pay Environmental Response Costs in the following calendar year.

10
11  ## X. COVENANTS OF THE UNITED STATES
12  ### Temporary Deferral of Existing Environmental Obligations

13      33.    The United States agrees that the total annual Environmental Response Costs that
14  the United States shall require ASARCO to incur or pay during calendar years 2003 through
15  2005 pursuant to any consent decree or administrative order, including but not limited to those
16  listed in Paragraphs C, D, or E, over and above the Environmental Response Costs designated
17  for funding by the Environmental Trust during those calendar years pursuant to Section VIII of
18  this Consent Decree, shall not exceed the following limits:

19      Calendar Year 2003 - $2 million;
20      Calendar Year 2004 - $2.5 million; and
21      Calendar Year 2005 - $3 million.

22  Subject to the reservation of rights set forth in Section XII, the United States agrees
23      a.    not to seek judicial enforcement against ASARCO of any consent decree
24  or administrative order, and
25      b.    not to seek judicial enforcement to recover costs of Environmental
26  Response work incurred by the United States prior to February 1, 2003.

27
28

22

ASA00005254
CONFIDENTIAL

1  to the extent that such enforcement would require ASARCO to incur or pay Environmental

2  Response Costs during calendar years 2003 through 2005 in excess of the limits prescribed

3  in this Paragraph, provided that ASARCO remains in compliance with all obligations imposed

4  under the terms and conditions of this Consent Decree and all agreements or schedules arising

5  thereunder, and provided that the payments to be made under Note B as assured by the Guaranty

6  are not in default. Costs incurred by ASARCO in connection with Environmental Response

7  other than such Environmental Response as the United States directs ASARCO to perform

8  shall not be included for purposes of calculating credit towards the annual limits prescribed

9  in this Paragraph. In calculating Environmental Response Costs for purposes of the limits

10 established in this Paragraph only, ASARCO may include internal costs that are incurred in lieu

11 of costs that otherwise would have been expended for an outside contractor for performance

12 of the same Environmental Response work. Such costs may be included only if ASARCO and

13 the United States agree in advance on the scope of the work by ASARCO employees to be

14 included in such credit and the specific amount to be credited.

15                          Other Covenants and Agreements

16      34.    Any payments actually made to the United States from the Environmental Trust

17 for a particular Site shall be credited by the United States to the appropriate account for that

18 Site. Environmental Response work performed at a Site that is funded by monies credited to

19 the appropriate account for that Site under this Paragraph shall reduce the liability of ASARCO

20 and any other potentially responsible parties at that Site in accordance with applicable law. The

21 United States covenants and agrees not to seek reimbursement from ASARCO of any amounts

22 credited to a Site account pursuant to this Paragraph.

23      35.    The United States covenants and agrees not to seek from ASARCO stipulated or

24 statutory penalties based on any failure of ASARCO to comply fully with any requirement to

25 perform Environmental Response work or any requirement under an existing CERCLA or

26 RCRA consent decree or administrative order that requires ASARCO to provide financial

27 assurance for Environmental Response work to be performed under that decree or order, where

28

                                          23

ASA00005255
CONFIDENTIAL

1    such noncompliance has occurred between December 1997 and the date of entry of this

2    Consent Decree.

3         36.    The United States covenants and agrees not to seek from ASARCO stipulated or

4    statutory penalties based on any failure of ASARCO to comply fully with any requirement

5    under an existing CERCLA or RCRA consent decree or administrative order that requires

6    ASARCO to provide financial assurance for Environmental Response work to be performed

7    under that decree or order, where such noncompliance occurs during calendar years 2003,

8    2004 and 2005, provided that ASARCO remains in compliance with all obligations imposed

9    under the terms and conditions of this Consent Decree and all agreements or schedules arising

10    thereunder, and provided that the payments to be made under Note B as assured by the Guaranty

11    are not in default. However, nothing in this Paragraph limits the rights of the United States to

12    seek information about ASARCO's financial status.

13         37.    Effective upon the occurrence of all events required to occur on or before the

14    Closing Date, as set forth in Paragraph 6, and not before such time, the United States covenants

15    not to sue and agrees not to pursue all of its Environmental Response Costs incurred prior to

16    February 1, 2003, for: (a) the Circle Smelting Non-Time Critical Removal Site; (b) the Globe

17    Plant Site; and (c) the Murray Smelter Consent Decree - Relevant Section.  In addition, the

18    United States covenants not to sue and agrees not to pursue $2 million of its response costs

19    incurred prior to February 1, 2003, for the Commencement Bay Nearshore/Tideflats Superfund

20    Site - Relevant Operable Units.

21         38.    Effective upon the occurrence of all events required to occur on or before the

22    Closing Date, as set forth in Paragraph 6, and not before such time, the United States covenants

23    not to sue and agrees not to pursue any legal challenge to the transfer of the Defendants'

24    ownership interest in SPCC stock based on a claim that the transfer was not for sufficient value

25    received or based on any other claim alleged in the Complaint.  Furthermore, as provided in

26    Paragraph 7, the Stipulation shall be deemed terminated upon the occurrence of all events

27

28

24

ASA00005256
CONFIDENTIAL

1  required to occur on or before the Closing Date as set out in Paragraph 6, subject to the

2  reopener provisions of Paragraph 46.

3

4  ## XI.  COVENANTS OF ASARCO, SPHC, AMC AND GRUPO MEXICO

5  39.    ASARCO, SPHC, AMC, and Grupo Mexico agree not to assert any claims or

6  causes of action against the United States, or its contractors or employees, in connection with

7  the matters addressed by or work performed under this Consent Decree, including but not

8  limited to:

9      a.    any direct or indirect claim for reimbursement from the EPA Hazardous

10  Substance Superfund established by 26 U.S.C. § 9507, based on Sections 106(b)(2),

11  107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or

12  9613, or any other provision of law, for Environmental Response Costs paid by the

13  Environmental Trust or for costs subject to the United States' covenant not to sue set

14  forth in Paragraph 37;

15      b.    any claims arising out of the work performed under any Annual Budget

16  for which a Claim is paid by the Environmental Trust; and

17      c.    any claims arising out of the United States' challenge to

18  ASARCO/SPHC's transfer of its ownership interest in SPCC stock once such transfer

19  is completed.

20  40.    ASARCO, SPHC, AMC, and Grupo Mexico agree not to assert any claim or

21  defense against the United States in any subsequent administrative or judicial proceeding

22  initiated by EPA, DOI or USDA, or by the United States on behalf of EPA, DOI or USDA, for

23  injunctive relief, recovery of response costs, or other appropriate relief relating to matters

24  within the scope of this Consent Decree, based upon the principles of waiver, res judicata,

25  collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any

26  contention that the claims raised in the subsequent proceeding were or should have been

27  brought in this proceeding.

28

25

ASA00005257
CONFIDENTIAL

## XII. RESERVATION OF RIGHTS

41.    The United States reserves, and this Consent Decree is without prejudice to, all rights against ASARCO/SPHC with respect to all matters not expressly included within the covenants and agreements of the United States set forth in Section X, including but not limited to the right to file and enforce liens authorized under applicable environmental statutes and the right to pursue enforcement action against ASARCO, with respect to:

a.    liability of ASARCO under CERCLA, RCRA, the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and any other environmental statute or the regulations promulgated thereunder;

b.    liability of ASARCO under any existing consent decrees or administrative orders, including but not limited to those listed in Paragraphs C, D, or E;

c.    liability for response actions and costs incurred or to be incurred by the United States;

d.    liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.    liability for unlawful transfers of corporate assets or other prohibited transactions regardless of whether such transactions are related to obligations within the scope of this Consent Decree, except as provided by Paragraph 38, and

f.    liability for failure of ASARCO to meet a requirement of this Consent Decree.

42.    Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against ASARCO with respect to criminal liability.

## XIII. RELATIONSHIP TO EXISTING CONSENT DECREES AND ORDERS

43.    Nothing in this Consent Decree shall be deemed to modify any existing consent decree or administrative order. If the Parties conclude that the schedule for work or payments set forth in an existing consent decree or administrative order should be modified because (a)

26

ASA00005258
CONFIDENTIAL

1   the work and/or payments were due during the period covered by the United States' agreement
2   in Paragraph 33 to forbear from enforcement of existing consent decrees and administrative
3   orders and were covered by that agreement, and (b) the work was not required in the pertinent
4   Annual Budget(s) under this Consent Decree, the Parties shall seek in good faith to modify the
5   schedule set forth in the relevant consent decree or administrative order to take into account
6   the period in which the United States agreed to forbear from enforcement. Where the consent
7   of other parties to the consent decree or administrative order is required to accomplish a
8   modification, the Parties shall jointly seek to obtain such consent. Nothing in this Paragraph
9   affects any requirement for court approval or public notice and comment that may apply to a
10  proposed modification to an existing consent decree or administrative order on consent.

11

12              XIV. EFFECT OF NONCOMPLIANCE

13      44.    The transfer conditions set forth in Paragraph 6 are necessary and material
14  components of the agreement embodied in this Consent Decree and are a condition precedent
15  to all other covenants and agreements set forth in this Consent Decree. Should the transfer of
16  ASARCO/SPHC's ownership interest in SPCC stock fail to occur by June 1, 2003, such failure
17  shall constitute a material breach of this Consent Decree. In the event of such material breach,
18  (i) this Consent Decree shall become null and void in its entirety, including all agreements and
19  covenants set forth in this Consent Decree, (ii) the Stipulation shall remain in full effect, and
20  (iii) the United States may seek to avail itself of any other remedies available by law or equity.
21  The June 1, 2003 deadline may be extended by the mutual written agreement of all signatories
22  to this Consent Decree.

23      45.    Should ASARCO/SPHC transfer its ownership in SPCC stock in a manner that
24  fails to conform fully and completely with all conditions identified in Paragraph 6, such failure
25  shall constitute a material breach of this Consent Decree. In the event of such material breach,
26  (i) the covenants of the United States as set forth in Section X of this Consent Decree shall
27  become null and void; (ii) the United States in its discretion may declare this Consent Decree
28

27

1  null and void in its entirety by written notice to ASARCO/SPHC; (iii) the Stipulation shall
2  remain in full effect; and (iv) the United States may seek to avail itself of any other remedies
3  for such breach that are available by law or equity.

4      46.    Should the transfer of ASARCO/SPHC's ownership in SPCC stock be
5  subsequently completely unwound, invalidated, or nullified pursuant to a judgment issued by
6  a court of competent jurisdiction, (i) this Consent Decree shall become null and void in its
7  entirety, including all agreements and covenants set forth in this Consent Decree, except that
8  the covenants of ASARCO, SPHC, AMC and Grupo Mexico set forth in Paragraphs 39.b, 39.c,
9  and 40 shall remain in valid and in full effect; (ii) the Stipulation shall be reopened and shall
10  be in full effect; and (iii) the United States may seek to avail itself of any other remedies
11  available by law or equity.

12      47.    Should the assignment of Note B and/or the Guaranty to the Environmental Trust
13  be unwound, set aside or otherwise be rendered unavailable for use by the Environmental Trust
14  in the manner set forth in Sections VII and VIII, the United States may declare any or all
15  agreements and covenants set forth in Paragraphs 33 through 37 null and void.

16      48.    Except as provided below, upon ASARCO's failure or inability to successfully
17  contract for or perform the Environmental Response work at any Site for which ASARCO is
18  designated a Performing Entity in any Annual Budget, the United States may upon written
19  notice to ASARCO and the Trustee (i) withdraw its covenant set forth in Paragraph 33 of this
20  Consent Decree with respect to such Site, (ii) terminate ASARCO' right to participate in the
21  performance of Environmental Response work under the terms of Section VII at such Site, (iii)
22  terminate ASARCO's right to seek payment of Claims under the terms of Section IX with
23  respect to such Site, and (iv) assume the performance of any Environmental Response work
24  assigned to ASARCO at such Site by any Annual Budget or amendment and the right to submit
25  Claims for such work. In the event that ASARCO's failure or inability to successfully contract
26  for or perform the Environmental Response work at any Site for which ASARCO is designated
27
28

ASA00005260
CONFIDENTIAL

1   a Performing Entity in any Annual Budget is caused by a Force Majeure, this Paragraph shall
2   not apply to such nonperformance.
3        49.   The actions of the United States under this Section are subject to the right of
4   ASARCO to seek review by this Court of any such action within fifteen days of service of any
5   notification prescribed by this Section. In any such proceeding, ASARCO shall have the burden
6   of establishing by clear and convincing evidence that such action is improper.
7
8                              XV. APPENDICES
9        50.   The following appendices are attached and incorporated into this Consent
10  Decree:
11       Appendix A is Note A ($123 million promissory note issued by AMC to SPHC).
12       Appendix B is Note B ($100 million promissory note issued by AMC to SPHC).
13       Appendix C is the Agreement of Sale.
14       Appendix D is the Guaranty Agreement.
15       Appendix E is the irrevocable assignment by SPHC of Notes A and B and the Guaranty
16  to ASARCO.
17       Appendix F is the Trust Agreement.
18       Appendix G is the Security Agreement between ASARCO and the United States.
19       Appendix H is the irrevocable assignment by ASARCO of Note B and the Guaranty to
20  the Environmental Trust.
21       Appendix I contains the documents supporting ASARCO's assertion that the transfer
22  of its ownership interest in SPCC as structured in Paragraph 6 provides ASARCO and SPHC
23  with reasonably equivalent value in return for the transfer of the SPCC shares.
24
25
26
27
28

                              29

ASA00005261
CONFIDENTIAL

## XVI. ADDITIONAL PROVISIONS

51.    Except as expressly stated herein, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a signatory to this Consent Decree.

52.    This Consent Decree does not provide ASARCO with protection against contribution claims by third parties relating to Environmental Response at any Site.

53.    Notwithstanding anything to the contrary in this Consent Decree, nothing in this Consent Decree releases or nullifies ASARCO's liability to any non-federal governmental entity under police and regulatory statutes or regulations, or alters or nullifies any non-federal governmental entity's police and regulatory authority and discretion to require ASARCO's compliance with applicable law.

54.    Whenever, under the terms of this Consent Decree, written notice is required to be given, or a report or other document is required to be served or provided by one Party to another, it shall be directed to the individuals at the addresses specified below via U.S. mail or overnight mail, unless those individuals or their successors give notice of a change of address to the other parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided.

As to the United States:

To the Department of Justice:

    For Overnight Mail:
    Environmental Enforcement Section
    Environment & Natural Resources Division
    U.S. Department of Justice
    1425 New York Ave. NW
    Washington, DC 20005
    Ref. DOJ File No. 90-11-3-128/5

    For Regular Mail:
    Environmental Enforcement Section
    Environment & Natural Resources Division
    U.S. Department of Justice
    P.O. Box 7611, Ben Franklin Station
    Washington, DC 20044
    Ref. DOJ File No. 90-11-3-128/5

30

ASA00005262
CONFIDENTIAL

To the Environmental Protection Agency:

    For Overnight Mail:
    Office of Site Remediation Enforcement
    Regional Support Division
    Environmental Protection Agency
    Ariel Rios Building South, Room 4202
    1200 Pennsylvania Avenue, N.W.
    Washington , D.C. 20460

    For Regular Mail
    Office of Site Remediation Enforcement
    Regional Support Division (MC 2272A)
    Environmental Protection Agency
    Ariel Rios Building South,
    1200 Pennsylvania Avenue, N.W.
    Washington , D.C. 20460

To the Department of the Interior:

    Regional Solicitor
    U.S. Department of the Interior
    500 NE Multnomah, Suite 607
    Portland, Oregon 97232

To the Department of Agriculture:

    USDA Office of General Counsel
    740 Simms St., Room 309
    Golden, CO 80401

As to ASARCO:

    DOUGLAS McALLISTER
    ASARCO Incorporated
    2575 E. Camelback Road
    Suite 500
    Phoenix, AZ 85016-4240
    (602) 977-6507

An address for the Trustee shall be provided upon the establishment of the Trust and the identification of the Trustee.

    55.    This Consent Decree may not be modified without the prior written consent of the Parties hereto or their successors in interest and the approval of the Court, except that Appendices F and G (including attachments) may be modified according to their terms and conditions without court approval.

31

ASA00005263
CONFIDENTIAL

56.    This Consent Decree may be delivered by courier, mail, or facsimile.  It may be executed in counterparts, each of which shall be deemed to be an original, and all of such counterparts taken together shall be deemed to constitute one and the same agreement.

57.    The undersigned representatives of a Party to this Consent Decree certify that they are fully authorized to enter into this Consent Decree and to execute and legally bind such Party to this Consent Decree.

58.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree.    The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

59.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment in this action between and among the United States and the Defendants.


SO ORDERED:


_FEBRUARY 2, 2003_
Date

HON. ROBERT C. BROOMFIELD
Judge
United States District Court
District of Arizona

32

ASA00005264
CONFIDENTIAL

1    THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v.*
2    *ASARCO, et al.*

3    FOR THE UNITED STATES:            U.S. Department of Justice
4                                      Environment and Natural Resources
5                                                Division

6

7

8    KELLY A. JOHNSON
     Principal Deputy Assistant Attorney General
9

10

11   JOHN C. CRUDEN
12   Deputy Assistant Attorney General

13

14
15   DAVID L. DAIN
     STEVEN A. KELLER
16   KIM J. SABO
     Trial Attorneys
17   Environmental Enforcement Section
     Environment and Natural Resources
18              Division
     Ben Franklin Station
19   P.O. Box 7611
     Washington, D.C. 20044
20   (202) 514-3644

21   SUE KLEIN
     Assistant United States Attorney
22   40 N. Central Avenue, Suite 1200
     Phoenix, Arizona 85004
23   (602) 514-7740

24

25

26

27

28

                          33

ASA00005265
CONFIDENTIAL

1   THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v.*
2   *ASARCO, et al.*

3                                    U.S. Environmental Protection Agency

4

5                                    JOHN PETER SUAREZ
6                                    Assistant Administrator
                                     Office of Enforcement and Compliance Assurance
7

8   Of Counsel:

9   CARA STEINER-RILEY
    U.S. Environmental Protection Agency
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    34

ASA00005266
CONFIDENTIAL

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v.*
   *ASARCO, et al.*
2
3  FOR ASARCO INCORPORATED:
4
5
6  _____
7
8
9  *Douglas E. McAllister*
   DOUGLAS E. McALLISTER
10  Vice President, General Counsel & Secretary
    ASARCO Incorporated
11  2575 E. Camelback Road
    Suite 500
12  Phoenix, AZ 85016-4240
    (602) 977-6507
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

35

ASA00005267
CONFIDENTIAL

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v.*
2  *ASARCO, et al.*

3  FOR SOUTHERN PERU HOLDINGS CORPORATION:

4

5

6      ERNESTO DURAN TRINIDAD
7      CORPORATE CONTROLLER
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36

ASA00005268
CONFIDENTIAL

1    THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v.*
2    *ASARCO, et al.*

3    FOR AMERICAS MINING CORPORATION:
     Solely with respect to its obligations as defined in Paragraph 3
4

5

6

7           HECTOR GARCIA DE QUEVEDO
8           MANAGING DIRECTOR
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    37

ASA0000S269
CONFIDENTIAL

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. ASARCO, et al.*

FOR GRUPO MEXICO S.A. de C.V.:
Solely with respect to its obligations as defined in Paragraph 3

DANIEL TELLACHEA
MANAGING DIRECTOR

38

ASA00005270
CONFIDENTIAL

# EXHIBITS 12-24

# TO

# EXHIBIT 3

# FILED UNDER SEAL