**EXHIBIT 13**

**TO**

**EXHIBIT 2**

**TO**

**EXHIBIT 4**

Received:    7/31/98 12:46PM;    5 74 81 26 -> EXECUTIVE DEPT;  Page 2

FROM :                PHONE NO. : 5 74 81 26        Jul. 30 1998 11:46AM P2

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

### SCHEDULE 13D
Under the Securities Exchange Act of 1934
(Amendment No. 2)

ASARCO Incorporated
(Name of Issuer)

Common Stock, without par value
(Title of Class of Securities)

04341310
(CUSIP Number)

<div style="display:flex">

Daniel Tellechea Salido
Grupo Mexico, S.A. de C.V.
Baja California 200
06760 Mexico City, Mexico
(52-5) 574-8483

Nicolas Grabar
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, New York 10006
(212) 225-2000

</div>

(Name, Address and Telephone Number of Person
Authorized to Receive Notices and Communications)

July 31, 1998
(Date of Event Which Requires
Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition which is the subject of this Schedule 13D, and is filing this Schedule because of Rule 13d-1(b)(3) or (4), check the following box [ ].

Page 1 of 7

ASA01962784

Received:    7/31/98 12:45PM;

FROM :    B 74 81 26 -> EXECUTIVE DEPT; Page 3

PHONE NO. : 5 74 81 26    Jul. 30 1998 11:46AM P3

SCHEDULE 13D

CUSIP NO. 04341310

| 1 | NAME OF REPORTING PERSON S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON<br><br>Grupo Mexico, S.A. de C.V. | | |
|---|---|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP | (a) | ☐ |
| | | (b) | ☐ |
| 3 | SEC USE ONLY | | |
| 4 | SOURCE OF FUNDS<br><br>WC | | |
| 5 | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e) | | ☐ |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>Mexico | | |

| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER<br>None |
|---|---|---|
| | 8 | SHARED VOTING POWER<br>3,596,300 |
| | 9 | SOLE DISPOSITIVE POWER<br>None |
| | 10 | SHARED DISPOSITIVE POWER<br>3,596,300 |

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br>3,596,300 | |
|---|---|---|
| 12 | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES | ☐ |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br>9.07% | |
| 14 | TYPE OF REPORTING PERSON<br>CO | |

ASA01962785

SCHEDULE 13D

CUSIP NO. 04341310

| 1 | NAME OF REPORTING PERSON S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON Grupo Minero México, S.A. de C.V. | | |
|---|---|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP | (a) ☐ (b) ☐ | |
| 3 | SEC USE ONLY | | |
| 4 | SOURCE OF FUNDS WC | | |
| 5 | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) OR 2(e) | ☐ | |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION Mexico | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER None | |
| | 8 | SHARED VOTING POWER 3,596,300 | |
| | 9 | SOLE DISPOSITIVE POWER None | |
| | 10 | SHARED DISPOSITIVE POWER 3,596,300 | |
| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON 3,596,300 | | |
| 12 | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES | ☐ | |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11) 9.07% | | |
| 14 | TYPE OF REPORTING PERSON CO | | |

ASA01962786

Received:    7/31/98 12:46PM;

.. FROM :

5 74 81 26 -> EXECUTIVE DEPT; Page 5

PHONE NO. : 5 74 81 26

Jul. 30 1998 11:47AM P5

Pursuant to Rule 13d-2(a) of Regulation 13D-G of the General Rules and Regulations under the Securities Exchange Act of 1934, as amended, the undersigned hereby amend their Schedule 13D dated December 29, 1997, as amended by Amendment No. 1 to the Schedule 13D dated January 26, 1998 (the "Schedule 13D"), relating to the common stock, without par value ("Common Stock") of ASARCO Incorporated (the "Issuer"). Unless otherwise indicated, all defined terms used herein shall have the same meanings respectively ascribed to them in the Schedule 13D.

**Item 1. Security and Issuer.**

No material change.

**Item 2. Identity and Background.**

No material change.

**Item 3. Source and Amount of Funds or Other Consideration.**

No material change.

**Item 4. Purpose of Transaction.**

Item 4 is hereby amended and restated in its entirety as follows:

The shares of Common Stock held by GMEXICO were acquired for the purpose of investment in the Issuer. GMEXICO intends to file a Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act"), concerning its intention to make additional purchases of Common Stock (not to exceed the 15% ownership level under the HSR Act) that may not be exempt from notification under the HSR Act. The Reporting Persons continue to review their investment in the Issuer based on various factors that the Reporting Persons consider relevant, including without limitation, (i) the financial performance and prospects of the Issuer; (ii) the availability and market price of shares of Common Stock; (iii) other general economic, market and investment conditions; (iv) other investment opportunities available to the Reporting Persons; and (v) with respect to the possibility of acquiring additional shares of Common Stock resulting in the Reporting Persons holding more than 10% of the outstanding Common Stock, (A) the potential effect of provisions of the Issuer's Certificate of Incorporation applicable to 10% shareholders and (B) any information that may come to the Reporting Persons' attention that would cause them to change their view (based on the Issuer's public filings) that the Issuer does not have its principal executive offices or significant business operating in New Jersey and therefore is not subject to the New Jersey Shareholder Protection Act. On the basis of these and other factors, the Reporting Persons may pursue various courses of action, including (1) acquiring additional shares of Common Stock in the open market or otherwise, (2) selling some or all of the shares of Common Stock held by the Reporting Persons in the open market or otherwise, (3) engaging in one or more financing transactions consisting of borrowings secured by a pledge of shares of Common Stock or derivative transactions with similar economic effects, (4) contacting the Issuer and its representatives to discuss the possibility of exchanging some or all of the shares of the Issuer held by the Reporting Persons for some or all of the 62,104,386 shares of common stock of

Page 4 of 7

ASA01962787

Received:    7/31/98  12:47PM;          5 74 81 26 -> EXECUTIVE DEPT;   Page 6

.. FROM :                               PHONE NO. : 5 74 81 26          Jul. 30 1998 11:48AM P6

GMEXICO, representing 9.55% of the capital stock of GMEXICO, held by the Issuer and (5) contacting the Issuer, its representatives, other investors in the Issuer or other interested parties for the purpose of discussing the possibility of a business combination or joint venture between the Issuer and the Reporting Persons and other related matters.

Except as set forth above, the Reporting Persons do not have any plans or proposals of the type referred to in clauses (a) through (j) of Item 4 of Schedule 13D promulgated by the Commission.

Item 5.  Interest in Securities of the Issuer.

Paragraphs (b), (d) and (e) are unchanged.  Paragraphs (a) and (c) of Item 5 are hereby amended and restated in their entireties as follows:

(a)  To the best knowledge of the Reporting Persons, as of June 30, 1998, there were 39,654,000 shares of Common Stock outstanding (as reported in the Issuer's Quarterly Report for the quarter ended June 30, 1998 filed on Form 10-Q with the Commission on July 23, 1998).  The 3,596,300 shares of Common Stock beneficially owned by the Reporting Persons represent approximately 9.07% of the Common Stock issued and outstanding.

(c)  Annex I hereto sets forth all transactions in shares of the Common Stock effected since January 26, 1998 by the Reporting Persons.

Item 6.  Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer.

No material change.

Item 7.  Material to be Filed as Exhibits.

No material change.

ASA01962788

## SIGNATURE

After reasonable inquiry and the best of its knowledge and belief, each of the undersigned certifies that the information set forth in the statement is true, complete and correct.

Dated: July 31, 1998

Grupo Mexico, S.A. de C.V.

By: /s/
Name:   Daniel Tellechea Salido
Title:   Managing Director

Grupo Minero México, S.A. de C.V.

By: /s/
Name:   Daniel Tellechea Salido
Title:   Managing Director

ASA01962789

ANNEX I

#### Transactions in Common Stock by the
#### Reporting Persons Since January 26, 1998

| Reporting Person | Date | Number of Shares | Price Per Share | Method of Transaction |
|---|---|---|---|---|
| GMEXICO | January 27 | 33,200 | $21.75 | Open Market |
| GMEXICO | January 28 | 20,000 | $21.65 | Open Market |
| GMEXICO | January 29 | 20,000 | $22.0156 | Open Market |
| GMEXICO | March 3 | 10,000 | $22.5625 | Open Market |
| GMEXICO | June 1 | 46,300 | $22.4954 | Open Market |

ASA01962790

# EXHIBITS 14-16
# TO
# EXHIBIT 2
# TO
# EXHIBIT 4

# FILED UNDER SEAL

# EXHIBIT 17
# TO
# EXHIBIT 2
# TO
# EXHIBIT 4

Letter of Transmittal to Accompany Certificates of:

**Grupo Mexico, S.A. de C.V.**
c/o UPRR
P. O. Box 2262
New York, NY 10117

**1** By signing this form I certify under penalties of perjury that the Tax ID number listed below is accurate for IRS W-9 purposes and that I am not and have not been notified by the IRS that I am subject to backup withholding.

Tax ID # _____

---

Your check will be issued in the name shown unless otherwise instructed below.
*(Only fill in below if transferring shares or changing account registration.)*

Name: _____

Address: _____

City/State/Zip: _____

Signature: _____
Medallion Signature Guarantee Necessary.

---

Dear Shareholder,

On November 17, 1999, ASARCO merged with Grupo Mexico, S.A. de C.V.. As a result of that merger, you are entitled to receive $29.75 in cash for each share of ASARCO common stock you own. According to the shareholder records, you still hold certificates representing common shares of ASARCO, which have not been submitted for exchange. Grupo Mexico, S.A. de C.V. has retained Unclaimed Property Recovery & Reporting, Inc. ("UPRR") to locate those shareholders who have not yet exchanged their shares and to facilitate the delivery of the property due.

In order to receive your property, please complete this Letter of Transmittal and return it along with your ASARCO stock certificate(s) to UPRR in the enclosed envelope.

A processing fee of 15% per share will be charged in connection with the processing of your certificate exchange in order to defray the cost of this program. This fee will be deducted from your proceeds.

If you do not respond to this mailing, the property due you will be remitted to the appropriate state as required under the applicable unclaimed property laws.

**If you have lost your certificates you may participate in the exchange by completing and returning this form. A surety bond will be purchased on your behalf at a premium of 2% of the value of the securities reported lost (subject to a $10.00 minimum premium, charged by the surety) plus an additional ½% processing fee (charged by UPRR). The surety bond premium and the additional processing fee will be deducted from your proceeds. (See reverse)**

In order to expedite your exchange, please provide your daytime and/or evening telephone number, along with an e-mail address (if available).

# You must enter your Tax ID # (1), and sign below (2).

## AUTHORIZATION

I acknowledge and represent to GRUPO MEXICO, S.A. DE C.V., Citibank, Computershare Trust Company of New York, and UPRR that I am the registered owner of the shares. I have good title to the shares and I have full power and authority to authorize this transaction. I irrevocably appoint UPRR as my agent with respect to this transaction. I acknowledge and agree that a processing fee of 15% is to be paid to UPRR to defray the cost of processing. I authorize UPRR to deduct the processing fees due and the premium for any necessary indemnity bond from the proceeds.

**2**

ASA00190639
CONFIDENTIAL

Signature of owner          Signature of Co-owner          Telephone Number          E-mail address

ASA00190640
CONFIDENTIAL

**EXHIBIT 18**

**TO**

**EXHIBIT 2**

**TO**

**EXHIBIT 4**

 **NEWS**

ASARCO Incorporated
180 Maiden Lane
New York, N.Y. 10038-4991

### FOR IMMEDIATE RELEASE

## ASARCO TO CONSOLIDATE
## CORPORATE FUNCTIONS IN ARIZONA

NEW YORK, N.Y., July 25, 2000 —ASARCO Incorporated announced today that it will consolidate all corporate functions in Arizona by the end of the year. The company has transferred many of its corporate functions from New York to Arizona in recent months, following acquisition of the company by Grupo Mexico S.A. de C.V. last November.

According to Xavier Garcia de Quevedo, president and chief operating officer of Asarco, "It has become increasingly apparent, as we have transferred functions to the West, that there are significant efficiencies and improvements in communications that can be made by a complete transfer of the Asarco corporate offices close to its major copper operations as well as close to its sister operations in Mexico."

Relocated to a new corporate headquarters in Phoenix will be the office of the president and other executive functions as well as the following departments, some of which are now located in Tucson: Treasurer, Legal, Human Resources, Government Relations, Sales, Traffic, and Auditing. Remaining in Tucson will be: Controllers, Information Systems, Purchasing, Payroll, Geology and Exploration, Mine Planning, Environmental, Projects and Accounts Payable departments.

Asarco soon will announce location of its Phoenix headquarters building.

Garcia said that many employees now in New York will be offered positions in Arizona. Those who choose not to relocate may be eligible for early retirement or other compensation when they are terminated at the time of the move.

Asarco is the wholly-owned United States mining and metals subsidiary of Grupo Mexico S.A. de C.V. Grupo Mexico is a major international natural resources and transportation company with significant mining operations, through subsidiaries, in Mexico, the United States and Peru. Grupo Mexico ranks as the world's third largest copper producer, fourth largest producer of silver and fifth largest producer of zinc. Group Mexico ranks as the world's second largest company in terms of known copper ore reserves. Its railroad subsidiary, Grupo Ferroviario, which is 74% owned and operated by Grupo Mexico (Union Pacific 26%) is the largest railway system in Mexico and services 71% of Mexico's geographical and almost 90% of Mexico's industrial and commercial area. Grupo Mexico will continue to have a presence in New York for investor relations purposes.

# # #

ASA01958380

# EXHIBITS 19-27
# TO
# EXHIBIT 2
# TO
# EXHIBIT 4

# FILED UNDER SEAL

**EXHIBIT 28**

**TO**

**EXHIBIT 2**

**TO**

**EXHIBIT 4**

# GRUPO MEXICO, S.A. DE C.V.  (GMEXICO)

GMEXICO ranks among the most important companies in Mexico, Perú and United States and it is a significant mining player in the world.  It is a holding company of mining and transportation operations whose operations are performed through two subsidiaries organized as follows: **Americas Mining Corporation (AMC)** is a sub-holding company which groups mining operations in Mexico, the United States and Peru. Additionally, GMEXICO maintains exploration activities under progress in Chile, Canada, Australia and Ireland. The second subsidiary is **Infraestructura y Transportes Mexico, S.A. de C.V. (ITM)**, which is a sub-holding company that groups our activities in freight transportation, logistics and multi-modal services, through Grupo Ferroviario Mexicano, S.A. de C.V. (GFM), which operates the largest railroad and most profitable in the Mexican territory.

## Mining Division:  Americas Mining Corporation (AMC)

GMEXICO through Americas Mining Corporation ranks as the world's third largest copper producer, second in molybdenum, fourth largest producer of silver and eight largest producer of zinc. It also ranks as the world's second largest company and first among companies publicly listed in stock markets in terms of copper ore reserves.

AMC carries its operations in Mexico through Minera Mexico (MM) subsidiary, in Peru and Chile through Southern Peru Cooper Corporation (SPCC) and in the United States of America and Canada through ASARCO, Incorporated (ASARCO).  Copper is 78% of its mineral production. It also produces Molybdenum (8%), silver (6%) and zinc (6%). Other by-products are gold, coal and sulfuric acid among others.

## Minera México, S.A. de C.V.  (MM)

Minera Mexico is the largest mining company in Mexico. MM produces copper, zinc, silver, gold and molybdenum. MM is a holding company and all of its operations are conducted through subsidiaries that are grouped into three separate units. First, the Mexicana de Cobre Unit that operates an open-pit copper mine; It also operates a 90,000 metric tons per day of copper ore Concentrator, a 22,000 metric tons. per year Solvent Extraction-Electro Winning (SX/EW) Refinery, a 300,000 metric tons per year copper smelter, a 300,000 metric tons per year Refinery, a 150,000 metric tons per year Rod Plant and a 15 million ounces per year of silver and 100,000 ounces per year of gold Precious Metals Refinery. Second, the Cananea Unit, operates an open-pit copper mine that is one of the world's largest copper ore deposits, a 80,000 metric tons per day of Copper Concentrator, and two Solvent Extraction-Electro Winning (SX/EW) Refineries with a combined capacity of 55,000 metric tons per year of electro winning copper. The Industrial Minera Mexico Unit consists of seven underground mines located in central and northern Mexico where zinc, copper, silver and gold are mined. This Unit includes an industrial processing facility for zinc and copper in San Luis Potosi and Mexico's largest underground mine, San Martin, as well as Charcas, Mexico's largest zinc producing mine. It also includes a coal facility in northeast Mexico.

## Asarco Incorporated (ASARCO)

Acquired by GMEXICO in November 1999, Asarco's operations includes the open-pit mines in Mission 32,000 metric tons per year of copper ore, a Ray 50,000 metric tons per year of copper ore and Silver Bell 22,000 metric tons per year of electrowon copper in Arizona,  a 180,000 metric tons. per year of copper smelter in Hayden, Az., a 450,000 metric tons per year of copper cathod refinery, a 30 Million ounces per year of silver and 200,000 ounces per year of gold Precious Metals Refinery, and a 50,000 metric tons per year of cake and 260,000 metric tons per year rod plant in Amarillo, Texas, as well as two SX/EW plants in Silver Bell and Ray, Arizona, with a combined capacity of 68,000 metric tons per year of electro winning cathodes. Asarco also holds three important underground zinc mines 80,000 metric tons of concentrates per year with 65% grade in the State of Tennessee.

## Southern Peru Copper (SPCC)

Is 54.2% owned by GMEXICO through its Americas Mining Corporation (AMC). It is the largest mining company in Peru and one of the 10 largest mining companies in the world.  SPCC operates the Toquepala 63,000 metric tons per day of copper ore and Cuajone 80,000 metric tons per day of ore concentrators, a Smelter of 290,000 metric tons of copper per year, a Refinery 280,000 metric tons of cathodes per year, a 55,000 metric tons per year of electro winning cathodes, and a Precious Metals Refinery, capable of producing 5 Million ounces per year of silver and 10,000 ounces of gold per year. The Industrial complex is located at the Ilo port on the Pacific Coast.

## Railroad Division:

**Infraestructura y Transportes México, S.A. de C.V.: Includes Grupo Ferroviario Mexicano, S.A. de C.V., Intermodal México, S.A. de C.V. and Texas Pacifico, Inc.**

**Grupo Ferroviario Mexicano, S.A. de C.V.**

Runs Mexico's largest and most profitable railroad with near 6,000 miles of tracks and 15,000 carloads, transporting over 40% of all the railroad cargo of the country. GMEXICO acquired the rail concession from the Mexican federal government for 100 years in 1998. GMEXICO owns 74% and Union Pacific 26% of the company. The railroad, known as FERROMEX, has the largest coverage of the nation's railway system. The railroad system connects the main cities in the country, where 70% of industrial production is created and services five land ports on the border with USA, four seaports on the Pacific Ocean and two on the Gulf of Mexico.

**Intermodal México, S.A. de C.V.**

Operates since November 2001. Its objective is to develop and provide multi-modal services and logistics for load transportation. For such purposes it has constructed facilities in Guadalajara and it is in the process of constructing several other facilities in the most significant cities of central and northern Mexico.

**Texas Pacifico, Inc.**

Holds and operates a railroad in USA, that interconnect the border point Ojinaga Mex./Presidio Texas with the City of Dallas Texas.

**Company History:**

**1899.-** Americas Smelting and Refining Company (Asarco) was founded in USA.

**1901.-** Asarco begins operations in Mexico.

**1965.-** Asarco is reorganized to form Asarco Mexicana with 51% Mexican Ownership.

**1974.-** Asarco Mexicana changed its name to Industrial Minera Mexico (IMMSA) and Asarco (USA) ownership change to a holding of 34% participation.

**1978.-** Grupo Industrial Minera Mexico (GIMMEX) is created by the Mexican controlling group and is listed on the Mexican Stock Exchange (GIMMEX).

**1980.-** Construction of a new Zinc Refinery of 105,000 metric tons per year, 200 MMD investment. Started operations in 1982.

**1988.-** In a public biding, 95% of Mexicana de Cobre is acquired from the Mexican government and private partners related to GIMMEX by an amount of $690 US million dollars.

**1989.-** Expansion of Mexicana de Cobre, Concentrator from 70,000 to 90,000 metric tons of ore per day.

**1990.-** In a public auction, 100% of Cananea Mine, Sonora is acquired from the Mexican government by a consortium formed by Mexicana de Cobre (76%) and Acec Union Miniere (24%) for an amount of $525 US million dollars, with the commitment to invest additional $400 million US dollars.

**1990-1994.-** 474 MM USD program dedicated to mine stripping, modernization and new equipment for the Cananea, Sonora complex.

**1994.-** GMEXICO is created and listed in the Mexican Stock Exchange replacing GIMMEX.

**1995.-** Construction of a 22,000 Tons., of cathodes per year new SX/EW plant in La Caridad, Sonora unit which represented 50 MM USD investment.

**1995.-** Expansion of the Concentrator Plant of Cananea, Sonora from 60,000 to 80,000 metric tons of ore per day.

**1996.-** Expansion of La Caridad, Sonora Smelter from 180,000 to 300,000 metric tons, of anodes per year, in compliance with international environmental regulations. With an additional Investment of 150 MM USD.

**1997.-** 100% integration of copper through the construction at La Caridad, Sonora of 300,000 metric tons per year Refinery; within an investment of 175 MM USD.

**1997.-** GMEXICO acquires the 24% of Cananea Mine, Sonora from Acec Union Miniere due to the termination of the copper commercial concentrates contact.

**1997.-** In a public auction, GMEXICO (74%) in association with Union Pacific (13%) and ICA (13%), acquires for 575 MMD the concession of the North-Pacific, Chihuahua-Pacifico and the short line Nogales-Cananea railroad lines and is created GFM with its subsidiary Ferrocarril Mexicano, S.A. de C.V. (Ferromex). Three months later, Union Pacific acquires the ICA portion of the GFM's ownership.

**1998.-** A 150,000 metric tons per year Rod Plant was built in La Caridad, Sonora Complex.

**1998.-** A new Precious Metals Refinery of 15 million of silver ounces and 100 thousand ounces of gold per year was built in Sonora, Mexico.

**1999.-** GMEXICO acquires all of the outstanding common stock of Asarco Incorporated controlling, by this 54.2% in Southern Peru Copper Corporation, a Delaware company listed in the NYSE. This 2.5 billion dollar acquisition makes GMEXICO the second largest copper company in terms of copper reserves, the third largest producer of copper and fourth largest producer of silver in the world.

**2000.-** Expansion and Modernization of Cuajone, Perú Concentrator from 60,000 to 100,000 metric tons, of ore per day within an investment more than 200 MMD.

**2001.-** Torata, Peru Project within an investment of 80 MMD. Optimization and expansion of the Cuajone, Peru mine increasing its reserves from 10 to 40 years.

**2002.-** Expansion of Cananea, Sonora SX-EW refineries from 33,000 to 87,000 metric tons, of cathodes/per year.

**2003.-** Expansion of the Toquepala, Peru concentrator from 42,000 to 60,000 metric tons of ore per day, within and investment of 60 MMD.

**2004.-** Building a new smelter in Ilo, Peru for 1.2 million of concentrates, complying with Peruvian and international environmental regulations, should be in operation by 2007.

Go to top

**EXHIBIT 29**

**TO**

**EXHIBIT 2**

**TO**

**EXHIBIT 4**

## Railroad Division:

**Infraestructura y Transportes México, S.A. de C.V.: Includes Grupo Ferroviario Mexicano, S.A. de C.V., Intermodal México, S.A. de C.V. and Texas Pacifico, Inc.**

**Grupo Ferroviario Mexicano, S.A. de C.V.**

Runs Mexico's largest and most profitable railroad with near 6,000 miles of tracks and 15,000 carloads, transporting over 40% of all the railroad cargo of the country. GMEXICO acquired the rail concession from the Mexican federal government for 100 years in 1998. GMEXICO owns 74% and Union Pacific 26% of the company. The railroad, known as FERROMEX, has the largest coverage of the nation's railway system. The railroad system connects the main cities in the country, where 70% of industrial production is created and services five land ports on the border with USA, four seaports on the Pacific Ocean and two on the Gulf of Mexico.

**Intermodal México, S.A. de C.V.**

Operates since November 2001. Its objective is to develop and provide multi-modal services and logistics for load transportation. For such purposes it has constructed facilities in Guadalajara and it is in the process of constructing several other facilities in the most significant cities of central and northern Mexico.

**Texas Pacifico, Inc.**

Holds and operates a railroad in USA, that interconnect the border point Ojinaga Mex./Presidio Texas with the City of Dallas Texas.

**EXHIBIT 30**

**TO**

**EXHIBIT 2**

**TO**

**EXHIBIT 4**



# EXHIBIT 31

## TO

# EXHIBIT 2

## TO

# EXHIBIT 4

**FILED UNDER SEAL**

# EXHIBIT 3
# TO
# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALPAP,

        Plaintiffs,                        Case No. 1:07-CV-3496 (WHP)

-against-

GRUPO MEXICO, S.A. de C.V., a Mexican
Corporation,

        Defendant.

---

**ASARCO LLC'S FIRST SET OF INTERROGATORIES TO**
**GRUPO MEXICO, S.A. DE C.V. RELATING TO**
**PERSONAL JURISDICTION AND SERVICE**

TO:    Grupo Mexico, S.A. de C.V., by and through its counsel of record, David R. Gelfand, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 and David S. Cohen, Milbank, Tweed, Hadley & McCloy LLP, 1850 K Street, NW, Suite 1100, Washington, D.C. 20006.

    Pursuant to Federal Rules of Civil Procedure 26 and 33, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026 and 7033, and consistent with the parties' representations to the Court, ASARCO LLC, by and through its attorneys, demands that Grupo Mexico, S.A. de C.V. respond in writing to these interrogatories by June 29, 2007.

**I. INSTRUCTIONS**

A.    Each interrogatory is to be read, construed, and responded to separately and independently without reference to or being limited by any other interrogatory.

B.    In the event that you file a proper and timely objection to any interrogatory, in whole or in part, including a claim of privilege, specify the exact basis for your claim with

sufficient specificity to permit the Court to determine the validity of your objection. Proceed to answer all portions of the interrogatory that do not fall within your objection.

C.  If you claim an ambiguity in interpreting an interrogatory or any term, definition, or instruction, that claim shall not be used as a basis for refusing to respond, but the language deemed to be ambiguous and the interpretation chosen or used in responding to the interrogatory shall be set forth as part of the response.

D.  All uses of the conjunctive should be interpreted as including the disjunctive and vice versa. Words in the singular should be interpreted as including the plural and vice versa. Words of one gender should be interpreted as including the other genders.

E.  Unless otherwise specified by the interrogatory, the time period applicable to each interrogatory is from October 15, 1997 to present.

## II. DEFINITIONS

As used in these interrogatories, the following terms shall have the meaning(s) set forth below, regardless of whether the defined term is capitalized:

1.  "Americas Mining Corporation" means Americas Mining Corporation and any of its predecessors, successors, agents, officers, managers, employees, subsidiaries, divisions, or affiliates.

2.  "ASARCO" means ASARCO LLC and any of its predecessors, successors, agents, officers, directors, managers, employees, subsidiaries, divisions, or affiliates, and includes its predecessor ASARCO, Inc.

3.  "Communication(s)" means any contact between two or more persons by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams,

telecopies, telexes, emails or any other document, and any oral contact, such as face-to-face meetings or telephone conversations.

4.    "Document(s)" has the broadest meaning ascribed to it under the Federal Rules of Civil Procedure and includes writings of every kind, source, and authorship, both originals and/or all non-identical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including, without limitation, any government agency, department, administrative entity, or personnel. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration, and not limitation, the term shall include: correspondence; transcripts of testimony; letters; notes; reports; papers; files; books; other communications sent or received; diaries; calendars; logs, notes, or memoranda of telephonic or face-to-face conversations; drafts; work papers; agendas; bulletins; notices; circulars; announcements; instructions; schedules; minutes, summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews, or telephone conversations; bills, statements, and other records of obligations and expenditures; canceled checks, vouchers, receipts, and other records of payments; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; analyses; statements; interviews; affidavits; printed matter (including published books, articles, speeches, and newspaper clippings); press releases; charts; drawings; specifications; manuals; brochures; parts lists;

3

memoranda of all kinds to and from any person, agency, or entity; evaluations, advice, recommendations, commentaries, conclusions, studies, tests, manuals, procedures, data, reports, and results; records of administrative, technical, and financial actions taken or recommended; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

     5.    "Each," "any," and/or "all" mean "each, any, and all."

     6.    "Financial institution" includes commercial banks, merchant banks, investment banks, investment or takeover advisors, savings and loans, credit unions, other types of depository institutions, brokers or dealers in securities, and any person or entity performing any of the following functions or services: loaning money, advancing credit, providing financial advice, money transmission or receipt by wire or otherwise, currency exchange, check cashing, check clearing, and issuing and selling money orders and traveler's checks.

     7.    "Grupo Mexico," "you," or "your" means Grupo Mexico, S.A. de C.V. and any of its predecessors, successors, agents, representatives (including but not limited to a law firm retained by or representing Grupo Mexico in whole or in part), officers, directors, managers, employees, or divisions.

     8.    "Relate or refer," "relating or referring," "reflect," "reflecting," "concern," "concerning," "involve," and "involving" mean in any way to comprise, constitute, describe, discuss, evidence, identify, memorialize, reflect, support, refute, make a statement about, deal with, consist of, refer to, relate to, pertain to, or being in any way logically or factually connected with, in whole or in part, the subject matter of the discovery request.

     9.    "SPCC" means Southern Peru Copper Corporation and includes any predecessors, successors, agents, officers, directors, managers, employees, subsidiaries, divisions, or affiliates.

4

10.    "SPCC Transaction" means the transfer of ASARCO's 54.2% ownership in SPCC to Americas Mining Corporation that occurred on or about March 31, 2003.

11.    "United States" refers to the United States of America, including states, territories, and other political subdivisions within the United States.

## II. INTERROGATORIES

**Interrogatory No. 1**

Was Grupo Mexico served with process in *Burns* et al. vs. *Grupo Mexico S.A. de C.V.* et al., Index No. 0114728/2004 (N.Y. Sup. Ct.) on July 1, 2005?

**Answer:**


**Interrogatory No. 2**

If you have been a party in any lawsuit in any court in the United States, for each action state the title, case number, and the name of the court in which the action was instituted; whether you were plaintiff or defendant; the date the action was instituted; the nature of the claim sued on; the place where the claim arose; whether you objected to the jurisdiction of the court and, if so, the basis for such objection; the disposition of your objection to jurisdiction, if any; and the disposition of that action.

**Answer:**


**Interrogatory No. 3**

Identify any office Grupo Mexico or any of its agents, subsidiaries, divisions, affiliates or corporate predecessors maintained in the United States and provide addresses for any such offices.

**Answer:**

**Interrogatory No. 4**

If you have conducted or solicited business in the United States yourself or through any affiliate, subsidiary, division or agent, state the name and address of the entity or agent; its registered agent for service; the state or states in which business was conducted or solicited; the type of business conducted or solicited; the inclusive dates; and the dollar volume of business during each of the years since 1997.

**Answer:**

**Interrogatory No. 5**

If you have retained any person as an employee, agent or in any other capacity in the Untied States or been aware of any persons representing themselves as employees or agents of Grupo Mexico in the United States, identify each such person; the inclusive dates retained; the purpose of each retention; and the nature of the person's duties.

**Answer:**

**Interrogatory No. 6**

If you have entered into any contract for the purchase or sale of goods or services in the United States, for each such contract, state the name, address and business of the other party (parties) to the contract; the date of the contract; a description of the merchandise or services involved; the place of execution; the place of performance; whether the contract is in writing; the name and address of each person who has either the original or a copy of such writing; the governing law of the contract; and whether you consented in the contract to jurisdiction in the United States.

6

Answer:

**Interrogatory No. 7**

If you have maintained any accounts at financial institutions in the United States, for each such account, state the name of the depository and its location; the name or title of the account; the type of account; the name of each person authorized to make deposits and withdrawals from such account and the relationship of each such person to Grupo Mexico; the inclusive dates such account was active; and the name and address of each such person who has the custody of the account statements (or other similar documents).

Answer:

**Interrogatory No. 8**

If you have owned any interest, either directly or through a subsidiary, affiliate, division, or agent, in or leased any property, real, personal or mixed, in the United States, for each piece of property state its description; the state in which it is located; the extent of your interest; the inclusive dates of ownership; and whether such property has been rented, leased or otherwise been in the possession of a third person.

Answer:

**Interrogatory No. 9**

If you have at any time placed, authorized, paid for or shared in the payment of any advertisements of goods or services in newspapers, magazines, Internet sites, or any other publication or media, whether for general circulation or limited circulation, which are sold or distributed in or accessible from the United States, identify each such advertisement by the

7

newspaper, magazine, Internet site, publication or other media in which it appeared; the goods or services advertised; the state of the United States in which such media outlet was located; and the date(s) of the advertisement.

**Answer:**

**Interrogatory No. 10**

If you have at any time paid any taxes to, or filed any tax returns or declarations of income or assets, or been assessed any taxes by, the United States or any state of the United States or any political subdivision thereof, state the type of tax involved and the amount of the tax paid or assessed; the date(s) of such returns, declarations, or assessments; and the entity by which the tax was assessed, to whom the tax was paid, or with whom the return was filed.

**Answer:**

**Interrogatory No. 11**

If you have owned any accounts receivable in the United States, for each such account state the name and address of the debtor; the date such account was acquired; the matter of acquisition; and the amount.

**Answer:**

**Interrogatory No. 12**

If any of your present or former officers, directors, employees, agents or representatives have taken any trips on business to the United States, state the identity of the person making the trip; the date and duration of such business trip; the destination of such business trip; the person or entity visited; and the purpose of the trip.

8

**Answer:**


**Interrogatory No. 13**

If you engaged the services of any law firms, accounting firms, consulting firms, or other professional firms in the United States, state the dates of such engagements; the names and addresses of any professionals so engaged; the nature of the services provided; the amounts paid to such professionals; and whether and the extent to which such services involved any matter related to ASARCO, and the identity of the matter.

**Answer:**


**Interrogatory No. 14**

If you (or any of your agents) have had any discussions with any person located in or having an office in the United States concerning the actual or possible sale of any debt or equity securities, for each discussion or series of discussions, identify each person or entity; give the date or dates of the discussions and the place where those discussions were held; in the case of equity securities, give the number of shares proposed to be sold, the number of shares actually sold and the class of security; in the case of debt securities, give the principal amount, the interest rate, the maturity date of the securities, the number of securities proposed to be sold and the number of shares actually sold; give the purchase price of the securities; identify all persons who represented you in these discussions; and give the date and place of the closing, if any.

**Answer:**

9

**Interrogatory No. 15**

If you (or any of your agents) have conducted any business negotiations in the United States or conducted negotiations with any individual or entity residing in the United States, regardless of whether those negotiations were successful or were consummated, state the individuals or entities involved in the negotiations (include their address and telephone number); the dates of the negotiations; the place where the negotiations were held; the purpose for and subject of such negotiations; and whether the negotiations resulted in a business arrangement.

**Answer:**

**Interrogatory No. 16**

Describe any investments, loans, guaranties, sureties, indemnities, or other financial support which you have discussed, contemplated, or provided to any subsidiary or affiliate of Grupo Mexico located in the United States, including the dates, amounts, and purpose.

**Answer:**

**Interrogatory No. 17**

If you held or any of your present or former officers, directors, agents or employees attended any meetings or participated in any discussions with any persons in the United States relating to (i) any shareholder or board of directors meetings of Grupo Mexico, Americas Mining Corporation, ASARCO, or any other subsidiary or affiliate of Grupo Mexico; or (ii) Grupo Mexico's acquisition of ASARCO--then state the dates of the meetings or discussions; the locations of the meetings; the names and addresses of the participants in the meetings; the purposes of the meetings; and the topics of discussion at the meetings.

**Answer:**

10

**Interrogatory No. 18**

If you held or any of your present or former officers, directors, agents or employees attended any meetings, conducted any investigations, or otherwise visited any location in the United States in connection with the SPCC Transaction or the potential for such a Transaction, state the date of such visit, meeting or investigation; the location visited; the identity of the persons present; and the purpose of the visit/meeting.

**Answer:**

**Interrogatory No. 19**

If you held or any of your present or former officers, directors, agents or employees attended any meetings or participated in any discussions in the United States with representatives of the United States Department of Justice, including but not limited to meetings or discussions relating to the SPCC Transaction (or a possible similar transaction) or the lawsuit brought by the United States Department of Justice to enjoin the SPCC Transaction, state the dates of the meetings or discussions; the locations of the meetings; the names and addresses of the participants in the meetings; the purposes of the meetings; and the topics of discussion at the meetings.

**Answer:**

**Interrogatory No. 20**

If you held or any of your present or former officers, directors, agents or employees attended any meetings or participated in any discussions in the United States concerning the renegotiation or potential renegotiation of any loans or debts owed or guaranteed to a financial

11

institution or to you in part or entirely by any of your subsidiaries or affiliates, state the dates of the meetings or discussions; the locations of the meetings; the names and addresses of the participants in the meetings; the purposes of the meetings; and the topics of discussion at the meetings.

**Answer:**

**Interrogatory No. 21**

If your response to any request for admission contained in ASARCO LLC's First Request for Admissions to Grupo Mexico, S.A. de C.V. Relating to Personal Jurisdiction and Service is anything other than an unqualified admission, please state each fact and identify each document and witness upon which you rely for each such response.

**Answer:**

**Interrogatory No. 22**

For any response to a document request in ASARCO LLC's First Request for Production of Documents to Grupo Mexico, S.A. de C.V. Relating to Personal Jurisdiction and Service indicating that a document has been destroyed or otherwise disposed of or transferred or no longer exists, identify each such document and state the date of, and the circumstances and reasons for, such destruction or disposition; identify the Persons responsible for the destruction or disposition of the document and the Persons who have knowledge of the said destruction or disposition; and provide all other information that would be of use (i) in obtaining the document, a copy thereof, or the data contained in the document, or (ii) in ascertaining the causes of, and circumstances surrounding, the document's destruction or disposition.  If the document was destroyed or disposed of by Grupo Mexico, describe Grupo Mexico's procedures and policies for

document destruction and retention in effect at the time of the document's destruction or disposition, and identify each document that constitutes, refers to, or relates to each such policy or procedure.

**Answer:**

Dated: June 21, 2007                    Respectfully submitted,

| | |
|---|---|
| **BAKER BOTTS L.L.P.**<br><br>*/s/ G. Irvin Terrell, Jr.*<br>G. Irvin Terrell, Jr. (GT-3459)<br>Attorney-in-Charge<br>Texas State Bar No. 19794500<br>Samuel Cooper<br>Texas State Bar No. 00792427<br>Michael Massengale<br>Texas State Bar No. 24003704<br>Rebeca Huddle<br>Texas State Bar No. 24012197<br>910 Louisiana Street<br>One Shell Plaza<br>Houston, Texas 77002-4995<br>Telephone:  713.229.1231<br>Facsimile:  713.229.2831<br>Email:  *irv.terrell@bakerbotts.com*<br>       *samuel.cooper@bakerbotts.com*<br>       *michael.massengale@bakerbotts.com*<br>       *rebeca.huddle@bakerbotts.com*<br><br>-and-<br><br>**BAKER BOTTS L.L.P.**<br>Jack L. Kinzie<br>Texas State Bar No. 11492130<br>Fernando Rodriguez<br>Texas State Bar No. 24005048<br>Eric A. Söderlund<br>Texas State Bar No. 24037525<br>Thomas E. O'Brien<br>Texas State Bar No. 24046543<br>2001 Ross Avenue<br>Dallas, Texas 75201-2980<br>Telephone:  214.953.6500<br>Facsimile:     214.661.6503<br>Email:  *jack.kinzie@bakerbotts.com*<br>       *fernando.rodriguez@bakerbotts.com*<br>       *eric.soderlund@bakerbotts.com*<br>       *tom.obrien@bakerbotts.com* | **JORDAN, HYDEN, WOMBLE<br>CULBRETH & HOLZER,  P.C.**<br><br>Shelby A. Jordan<br>Texas State Bar No. 11016700<br>Suite 900, Bank of America<br>500 North Shoreline<br>Corpus Christi, Texas 78471<br>Telephone:  361.884.5678<br>Facsimile:   361.888.5555<br>Email: *sjordan@jhwclaw.com*<br><br>-and-<br><br>**JORDAN, HYDEN, WOMBLE<br>CULBRETH & HOLZER,  P.C.**<br><br>Michael J. Urbis<br>Texas State Bar No. 20414130<br>1534 E. 6th Street, Suite 104<br>Brownsville, Texas 78520<br>Telephone:  956.542.1161<br>Facsimile:   956.542.0051<br>Email: *murbis@jhwclaw.com*<br><br>**COUNSEL TO ASARCO LLC** |

14

## CERTIFICATE OF SERVICE

I certify that on June 21, 2007, the foregoing document was served via overnight delivery service and email on the following counsel:

BARON & BUDD
Alan B. Rich, Esq.
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
(214) 520-1181 (facsimile)
*arich@baronbudd.com*

**ATTORNEYS FOR PLAINTIFFS
PHILLIP NELSON BURNS,
MIRJANA PAVKOVICH,
and WARREN ELMER HALPAP**

MILBANK, TWEED, HADLEY & McCLOY LLP
David R. Gelfand, Esq.
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
(212) 530-5219 (facsimile)
*dgelfand@milbank.com*

MILBANK, TWEED, HADLEY & McCLOY LLP
David S. Cohen
1850 K Street, NW
Suite 1100
Washington, D.C. 20006
(202) 835-7500
(202) 835-7586 (facsimile)
*dcohen2@milbank.com*

**ATTORNEYS FOR DEFENDANT
GRUPO MEXICO, S.A. de C.V.**

*/s/ G. Irvin Terrell, Jr.*
G. Irvin Terrell, Jr. (GT-3459)

15

# EXHIBIT 4
# TO
# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALPAP,

     Plaintiffs,

-against-

GRUPO MEXICO, S.A. de C.V., a Mexican
Corporation,

    Defendant.

Case No. 1:07-CV-3496 (WHP)

---

**ASARCO LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO**
**GRUPO MEXICO, S.A. DE C.V. RELATING TO**
**PERSONAL JURISDICTION AND SERVICE**

TO: Grupo Mexico, S.A. de C.V., by and through its counsel of record, David R. Gelfand,
Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New
York 10005, and David S. Cohen, Milbank, Tweed, Hadley & McCloy LLP, 1850 K
Street, NW, Suite 1100, Washington, D.C. 20006.

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable to this

proceeding by Federal Rules of Bankruptcy Procedure 7026 and 7034, and consistent with the

representations by the parties to the Court, ASARCO LLC ("ASARCO") demands, by and

through its attorneys, that Grupo Mexico, S.A. de C.V. ("Grupo Mexico") respond in writing to

these requests for documents by June 29, 2007. Grupo Mexico is required to produce all

documents in electronic form on June 29 and hard copies the next morning at the offices of

Baker Botts L.L.P., 2001 Ross Avenue, Dallas, Texas 75201-2980, to the full extent the

requested items are within its possession, custody or control. Grupo Mexico is also required to

supplement its responses to the document requests before July 8, 2007.

1

# I. INSTRUCTIONS

A.  The scope of these Requests for Production ("Requests") is not limited to evidence that would be admissible evidence before the Court, but includes evidence that would reasonably lead to the discovery of admissible evidence.

B.  Please produce the documents as they are kept in the ordinary course of business or organized and labeled to correspond with the categories of documents described below.

C.  Please produce documents in electronic format as follows:

   1.  Except as indicated below in Paragraph C(8), which pertains only to Excel spreadsheets, all documents should be produced in Tagged Image File Format ("TIFF") on CD/DVD or portable hard drive. All TIFF images should be single-page TIFF images with a .LFP image load file that will permit review with programs such as IPRO. TIFF image naming should be limited to alphanumeric names only, with no spaces, no hyphens, and no special characters, such as ^,;' etc., in the file name.

   2.  The .LFP image load file should designate proper attachment unitization that aligns with the database document and attachment ranges. This unitization should be accomplished by using the level "C" for attachments. An example of a line designating an attachment in the .LFP file is as follows:

       IM,GME00000001,C,0,@CDNAME;IMAGEPATH;GME00000001.TIF;2;

   3.  The unitization levels you should use are set out below:

       Source

       Box

       Folder

2

Document

Child

If you currently use unitization beyond the Parent and Attachment level, you should provide those levels in a format consistent with the document levels above.

4. All documents should have Optical Character Recognition ("OCR") provided. The OCR and database information should be combined and produced in a .DAT file format, which can be loaded directly into a Concordance database. All import delimiters for the Concordance .DAT file should be set for the Concordance automatic defaults, as found using the Concordance Import Wizard.

5. Any database fielded information should be produced in the order listed below:

```
1 BEGNUM        Paragraph 16
2 ENDNUM        Paragraph 16
3 PAGES         Numeric (integer)
4 BEGATTACH     Paragraph 16
5 ENDATTACH     Paragraph 16
6 ATTACH        Paragraph 16
7 ATTACHMENT    Paragraph 16
8 DOCTYPE       Paragraph 16
9 DOCDATE       Date    MM/DD/YYYY
10 DOCTITLE     Paragraph 16
11 AUTHOR       Paragraph 16
12 TO           Paragraph 16
13 FROM         Paragraph 16
14 CC           Paragraph 16
15 BCC          Paragraph 16
16 SUBJECT      Text    30
17 EMAILSUBJECT Text    30
18 TIMECREATED  Text    60
19 TIMELASTMOD  Text    60
20 DATECREATED  Date    MM/DD/YYYY
21 DATELASTMOD  Date    MM/DD/YYYY
22 TIMERECVD    Text    60
23 TIMESENT     Text    60
24 DATERECVD    Date    MM/DD/YYYY
```

3

```
25 DATESENT      Date      MM/DD/YYYY
26 BOXNUM        Text      25
27 BOXBEGSTART   Text      25
28 BOXBEGEND     Text      25
29 BOXSOURCE     Paragraph 16
30 PRTFOLDSTART  Text      25
31 PRTFOLDEND    Text      25
32 CHILDFLDSTRT  Text      25
33 CHILDFLDEND   Text      25
34 CDVOL         Text      25
35 CUSTODIAN     Paragraph 16
36 FILEDESCRIPT  Paragraph 16
37 FILENAME      Text      30
38 FOLDER        Paragraph 16
39 FILESIZE      Text      10
40 FILETYPE      Text      30
41 DOCEXTENSION  Text      10
42 RECORDTYPE    Text      30
43 UNREAD        Text      10
44 READRECPT     Text      10
45 DELRECIPT     Text      10
46 OCR           Paragraph 16
```

6. All document ID numbers or Bates numbers should be formatted in the following way: 3 alphabetical characters followed by 8 numeric digits (e.g., GME00000001). No spaces or hyphens should be included between the alpha prefix and the numeric suffix.

7. All parent-child relationships should be designated using the Begattach and Endattach fields within the database load file. The Begattach field should contain the parent document's beginning number. The Endattach field should contain the last number of the entire attachment range. For example, assume an email designated GME00000001-GME00000002 has a 3-page Word attachment, which is designated GME00000003-GME00000005. The Begattach number should be GME00000001 for both documents. The Endattach number should be GME00000005 for both documents.

4

8. Excel spreadsheets should be produced in native electronic format in such manner that will enable database linking to the native file. The fielded database load file should contain a field (such as DOCLINK or ATTACHMENT) that sets forth the file path link to the location of the Excel spreadsheets in any sub-folders included in the production. The Excel spreadsheets should be named with the production number as the full or first part of the file name. An example of a file name beginning with the production number is as follows: GME00000001^Excel Spreadsheet Name.xls. It is acceptable to name the Excel spreadsheet with the production number only.

D. In the event that Grupo Mexico objects to any of the following Requests, the reasons for the objection shall be stated. The objections are to be signed by the attorney making them.

E. In responding to the Requests, Grupo Mexico shall furnish all available information, to include responsive Spanish-language documents. If Grupo Mexico cannot respond to the following Requests in full after exercising reasonable diligence to secure the information to do so, Grupo Mexico shall so state and respond to the extent possible. If a refusal to produce a document is stated on the grounds that the answer or production is unduly burdensome, Grupo Mexico shall identify the number and nature of documents needed to be searched, the location of the documents, and the estimated number of work hours and costs required to conduct the search.

F. Whenever a Request calls for a document that is withheld on a claim of privilege or work product or for any other reason, Grupo Mexico shall provide a list identifying—for each document—the following: the privilege claimed; the date, subject matter, and location of

5

the document; the identities of the Persons who authored and received it; the identity of each Person to whom the contents have been communicated; and the specific part of the Request to which the document is responsive.

G.  Whenever a Request calls for a document that is not available to Grupo Mexico in the form requested but which is available in another form or can be obtained at least in part from another form, Grupo Mexico shall so state and either supply the information requested in the form in which it is available or supply the data from which the information requested can be obtained.

H.  All documents that relate or respond, in whole or in part, to any Request or the subject matter thereof shall be produced in their entirety, including all attachments and enclosures. All copies of all such documents (including drafts of such documents) that have handwritten or other notations, comments, underlining, or marks of any kind also shall be produced in their entirety, without abbreviation or reduction.

I.  Each document produced shall identify the location and identity of the particular file in which it was found and the name of the Person who is or was custodian of that file. A document that is responsive to more than one Request need be produced only once.

J.  Whenever a Request calls for a document that has been destroyed or otherwise disposed of or transferred, identify each such document and state the date of, and the circumstances and reasons for, such destruction or disposal; identify the Persons responsible for the destruction or disposal of the document and the Persons who have knowledge of the said destruction or disposal; and provide all other information that would be of use (i) in obtaining the document, a copy thereof, or the data contained in the document, or (ii) in ascertaining the causes of, and circumstances surrounding, the

6

document's destruction or disposal. If the document was destroyed or disposed of by Grupo Mexico, describe Grupo Mexico's procedures and policies for document destruction and retention in effect at the time of the document's destruction or disposal, and identify each document that constitutes, refers to, or relates to each such policy or procedure.

K.   In lieu of producing originals or copies thereof, you may, at your option, submit legible photographic or other reproductions of such documents, provided that the originals or copies from which such reproductions were made are retained by you until the disposition of this litigation.

L.   All uses of the conjunctive should be interpreted as including the disjunctive and vice versa. Words in the singular should be interpreted as including the plural and vice versa. Words of one gender should be interpreted as including the other genders.

M.   Each Request shall be considered a continuing request. If, after production, Grupo Mexico obtains or finds further responsive documents, then Grupo Mexico shall immediately produce such additional documents.

N.   In responding to each Request, Grupo Mexico shall produce all responsive documents in its possession, custody, or control, and particularly including all documents which Grupo Mexico has the legal right to obtain upon demand.

O.   Unless otherwise indicated, the time period applicable to each Request shall be Documents generated, received, or sent from January 1, 1997 to the present.

P.   Responsive electronically stored information shall be produced in its native electronic format.

## II. DEFINITIONS

As used in these Requests, the following terms shall have the meaning(s) set forth below, regardless of whether the defined term is capitalized:

1.    "Americas Mining Corporation" means Americas Mining Corporation and any of its predecessors, successors, agents, officers, managers, employees, subsidiaries, divisions, or affiliates.

2.    "ASARCO" means ASARCO LLC and any of its predecessors, successors, agents, officers, directors, managers, employees, subsidiaries, divisions, or affiliates, and includes its predecessor ASARCO, Inc.

3.    "Communication(s)" means any contact between two or more Persons by which any information or knowledge is transmitted or conveyed between two or more Persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, emails or any other document, and any oral contact, such as face-to-face meetings or telephone conversations.

4.    "Document(s)" has the broadest meaning ascribed to it under the Federal Rules of Civil Procedure and includes writings of every kind, source, and authorship, both originals and/or all non-identical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other Person or entity, including, without limitation, any government agency, department, administrative entity, or Personnel. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems,

8

together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration, and not limitation, the term shall include: correspondence; transcripts of testimony; letters; notes; reports; papers; files; books; other communications sent or received; diaries; calendars; logs, notes, or memoranda of telephonic or face-to-face conversations; drafts; work papers; agendas; bulletins; notices; circulars; announcements; instructions; schedules; minutes, summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews, or telephone conversations; bills, statements, and other records of obligations and expenditures; canceled checks, vouchers, receipts, and other records of payments; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; analyses; statements; interviews; affidavits; printed matter (including published books, articles, speeches, and newspaper clippings); press releases; charts; drawings; specifications; manuals; brochures; parts lists; memoranda of all kinds to and from any Person, agency, or entity; evaluations, advice, recommendations, commentaries, conclusions, studies, tests, manuals, procedures, data, reports, and results; records of administrative, technical, and financial actions taken or recommended; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

5.      "Each," "any," and "all" mean "each, any, and all."

6.      "Financial institution" includes commercial banks, merchant banks, investment banks, investment or takeover advisors, savings and loans, credit unions, other types of depository institutions, brokers or dealers in securities, and any person or entity performing any of the following functions or services: loaning money, advancing credit, providing financial

9

advice, money transmission or receipt by wire or otherwise, currency exchange, check cashing, check clearing, and issuing and selling money orders and traveler's checks.

7.    "Grupo Mexico," "you," or "your" means Grupo Mexico, S.A. de C.V. and any of its predecessors, successors, agents, representatives (including but not limited to a law firm retained by or representing Grupo Mexico in whole or in part), officers, directors, managers, employees, or divisions.

8.    "Relate or refer," "relating or referring," "reflect," "reflecting," "concern," "concerning," "involve," and "involving" mean in any way to comprise, constitute, describe, discuss, evidence, identify, memorialize, reflect, support, refute, make a statement about, deal with, consist of, refer to, relate to, pertain to, or being in any way logically or factually connected with, in whole or in part, the subject matter of the discovery Request.

9.    "SPCC" means Southern Peru Copper Corporation and includes any predecessors, successors, agents, officers, directors, managers, employees, subsidiaries, divisions, or affiliates.

10.    "United States" refers to the United States of America, including states, territories, and other political subdivisions within the United States.

11.    "United States Residents" means individuals or entities domiciled or residing in the United States, or otherwise present in the United States at the time of and in connection with the relevant subject matter of the Request.

12.    "Yankee Bonds" means ASARCO's $100 million $7^3/_8$% bonds due in 2003.

### III. REQUESTS FOR PRODUCTION

1.    All petitions, complaints, pleadings, or other judicial documents served on Grupo Mexico, or otherwise actually received, whether directly or indirectly, relating to *Burns* et al. *v. Grupo Mexico S.A. de C.V.* et al., Index No. 0114728/2004.

**Response:**

2.     All correspondence, memoranda, notes, email, and other documents relating to *Burns* et al. *v. Grupo Mexico S.A. de C.V.* et al., Index No. 0114728/2004.

**Response:**

3.     All summons, petitions, complaints, pleadings, or other judicial documents served on Grupo Mexico relating to *Burns* et al. *vs. Grupo Mexico S.A. de C.V.* et al., Index No. 0114728/2004 (N.Y. Sup. Ct.).

**Response:**

4.     All correspondence, memoranda, notes, email, and other documents relating to any actual or attempted service of process on Grupo Mexico in *Burns* et al. *vs. Grupo Mexico S.A. de C.V.* et al., Index No. 0114728/2004, Index No. 0114728/2004 (N.Y. Sup. Ct.).

**Response:**

5.     Documents sufficient to show that Grupo Mexico maintained an office at Avenida Baja California, Number 200, Colonia Roma Sur, 06760, Mexico City, Mexico on July 1, 2005.

**Response:**

6.     Documents relating to Grupo Mexico's employment of Daniel Estrada Martens Estrada, including but not limited to (a) documents relating to Daniel Estrada Martens Estrada's employment status and job responsibilities from 1997 to present, and particularly on July 1,

11

2005, (b) documents relating to the position(s) held by Daniel Estrada Martens Estrada with Grupo Mexico on July 1, 2005.

**Response:**

7.    Documents relating to all business, transactions, negotiations, or other activities conducted by, on behalf of, under the guidance, direction, or control of, or with the authority of Grupo Mexico in the United States, directly or indirectly, including but not limited to (a) documents sufficient to identify each instance of responsive business, transactions, negotiations, or other activities and (b) all communications related to any responsive business, transactions, negotiations, or other activities.

**Response:**

8.    Documents relating to all sales or purchases directly or indirectly made by, on behalf of, under the guidance, direction, or control of, or with the authority of Grupo Mexico in the United States or to or from United States Residents, including but not limited to (a) documents sufficient to identify each instance of responsive sales or purchases and (b) all communications related to any responsive sales or purchases.

**Response:**

9.    Documents relating to all business directly or indirectly solicited or negotiated by Grupo Mexico in the United States or from United States Residents, including but not limited to (a) documents sufficient to identify each instance of responsive solicitations or negotiations and (b) all communications related to any responsive solicitations or negotiations..

12

**Response:**

10.    All documents constituting or relating to contracts and agreements to which Grupo Mexico is a party or successor-in-interest that were executed or signed in the United States, negotiated in whole or in part in the United States, call for performance in the United States, or include a provision specifying the application of the law of the United States, choice of venue within the United States, or dispute resolution within the United States.

**Response:**

11.    All documents constituting or relating to contracts and agreements entered into on behalf of or with the authority of Grupo Mexico that were executed or signed in the United States, negotiated in whole or in part in the United States, call for performance in the United States, or include a provision specifying the application of the law of the United States, choice of venue within the United States, or dispute resolution within the United States.

**Response:**

12.    All documents constituting or relating to contracts and agreements to which Grupo Mexico is a party or successor-in-interest that involve United States Residents, directly or indirectly.

**Response:**

13

13.    All documents constituting or relating to contracts and agreements entered into on behalf of or with the authority of Grupo Mexico that involve United States Residents, directly or indirectly.

**Response:**

14.    Documents relating to all financial transactions conducted by or financial advice given to Grupo Mexico with or by United States financial institutions, directly or indirectly, including but not limited to (a) documents sufficient to identify each instance of responsive financial transactions or advice and (b) all communications related to any responsive financial transactions or advice.

**Response:**

15.    Documents relating to all meetings held by or attended by Grupo Mexico in the United States, including but not limited to (a) documents sufficient to identify each instance of responsive meetings, (b) all communications related to any responsive meetings, (c) all shareholder or board of directors meetings of Grupo Mexico or any affiliate or other entity, and (d) all meetings relating to Grupo Mexico's acquisition of ASARCO. Responsive documents include, but are not limited to, documents that show:

   a.   the dates of the meetings;

   b.   the locations of the meetings;

   c.   who attended the meetings;

   d.   the purposes of the meetings; and

   e.   topics discussed at the meetings.

14

**Response:**

16.    All communications by Grupo Mexico with any of its officers or directors while they were in the United States.

**Response:**

17.    Documents relating to all meetings held by or attended by Grupo Mexico with United States financial institutions, whether the meetings took place within or outside of the United States, including but not limited to (a) documents sufficient to identify each instance of responsive meetings and (b) all communications related to any responsive meetings. Responsive documents include, but are not limited to, documents that show:

   a.   the dates of the meetings;

   b.   the locations of the meetings;

   c.   who attended the meetings;

   d.   the purposes of the meetings; and

   e.   the topics discussed at the meetings.

**Response:**

18.    All documents constituting or relating to presentations made by or received by Grupo Mexico in the United States.

**Response:**

15

19.    All documents constituting or relating to presentations made by Grupo Mexico to United States financial institutions or United States Residents, whether the presentations were given within or outside of the United States.

**Response:**

20.    All presentations made by United States financial institutions or United States Residents to Grupo Mexico, whether the presentations were given within or outside of the United States.

**Response:**

21.    Documents relating to all trips made by Grupo Mexico's directors, officers, or employees to the United States relating in any way to Grupo Mexico business, including but not limited to (a) documents sufficient to identify each instance of responsive trips, (b) all communications related to any responsive trips, (c) documents sufficient to show all trips relating to management reviews of direct or indirect United States subsidiaries or affiliates, or meetings concerning Grupo Mexico securities, ASARCO, Americas Mining Corporation, or SPCC, (d) documents relating to trips made to the United States in connection with Grupo Mexico's acquisition of ASARCO in 1999, or (e) documents relating to trips made to the United States relating to the consideration of a possible transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation or anyone else or the actual transfer that in fact occurred to American Mining Corporation.    Responsive documents include, but are not limited to, documents that show:

    a.    the dates of the trips;

16

    b.  who took the trips;

    c.  the states, cities, and offices that the individuals visited;

    d.  the purposes of the trips; and

    e.  the business conducted on the trips.

**Response:**

22.    All documents relating to the control asserted by Grupo Mexico over its direct or indirect United States subsidiaries or affiliates, including but not limited to (a) documents showing Grupo Mexico's involvement with the appointment of directors and officers of the subsidiaries or affiliates, (b) documents showing Grupo Mexico's involvement with the approval of bonuses for the directors and officers of the subsidiaries or affiliates, (c) documents showing Grupo Mexico's involvement with management reviews of the directors and officers of the subsidiaries, and (d) documents showing Grupo Mexico's involvement with the approval of capital expenditures made by the subsidiaries or affiliates.

**Response:**

23.    Organizational charts listing Grupo Mexico's directors and officers at any time between 1997 and the present.

**Response:**

24.    Organizational charts listing the directors and officers of Grupo Mexico's direct or indirect United States subsidiaries and affiliates at any time between 1997 and the present.

17

**Response:**

25.    Documents relating to all inter-company debits and credits between Grupo Mexico and its direct or indirect United States subsidiaries or affiliates, including but not limited to Americas Mining Corporation and ASARCO. Responsive documents include but are not limited to (a) documents sufficient to identify each instance of responsive debits and credits and (b) all communications related to any responsive debits and credits.

**Response:**

26.    Documents relating to all guarantees, sureties, and indemnities made by Grupo Mexico on behalf of its direct or indirect United States subsidiaries or affiliates, including but not limited to Americas Mining Corporation and ASARCO. Responsive documents include but are not limited to (a) documents sufficient to identify each instance of responsive guarantees, sureties, and indemnities and (b) all communications related to any responsive guarantees, sureties, and indemnities.

**Response:**

27.    Documents relating to all offices, facilities, equipment, products, inventory, mailing addresses, and telephone numbers maintained, owned, leased, or used by Grupo Mexico in the United States. Responsive documents include but are not limited to (a) documents sufficient to identify all responsive offices, facilities, equipment, products, inventory, mailing addresses, and telephone numbers and (b) all communications related to any responsive offices, facilities, equipment, products, inventory, mailing addresses, and telephone numbers.

18

**Response:**

28.    Documents relating to the activities in or directed toward business in the United States of all agents, employees, and representatives of Grupo Mexico concerning matters germane to the United States.    Responsive documents include but are not limited to (a) documents sufficient to identify all responsive agents, employees, and representatives and (b) all relevant communications related to any responsive agents, employees, and representatives.

**Response:**

29.    Documents relating to all real or personal property maintained, owned, leased, or used in the United States owned or leased by Grupo Mexico (including its directors, officers, or managing agents). Responsive documents include but are not limited to (a) documents sufficient to identify all responsive real or personal property and (b) all communications related to any responsive real or personal property.

**Response:**

30.    All tax returns filed in the United States by, on behalf of, under the guidance, direction, or control of, or with the authority of Grupo Mexico.

**Response:**

31.    Documents relating to all tax assessments, regulatory assessments, judgments, fees, or penalties against Grupo Mexico by federal, state, county, municipal, or other governmental units or regulatory agencies in the United States.  Responsive documents include

but are not limited to (a) documents sufficient to identify all responsive tax assessments, regulatory assessments, judgments, fees, or penalties and (b) all communications related to any responsive tax assessments, regulatory assessments, judgments, fees, or penalties.

**Response:**

32.    All documents filed by, on behalf of, under the guidance, direction, or control of, or with the authority of Grupo Mexico, or with contributions by Grupo Mexico, with the United States Securities and Exchange Commission.

**Response:**

33.    Documents relating to all accounts held by Grupo Mexico with financial institutions in the United States, including but not limited to all bank accounts held by Grupo Mexico in the United States. Responsive documents include but are not limited to (a) documents sufficient to identify all responsive accounts and (b) all communications related to any responsive accounts.

**Response:**

34.    All documents relating to Grupo Mexico's engagements of United States law firms, accounting firms, consulting firms, or other professional firms. Responsive documents include but are not limited to (a) documents sufficient to identify all responsive engagements, (b) all communications related to any responsive engagements, and (c) any responsive engagement letters.

20

**Response:**

35.    Documents sufficient to show all agents designated by Grupo Mexico for service of process in the United States, from 1997 to present.

**Response:**

36.    All documents relating to licenses or requesting permits or clearance of any kind sought or owned by Grupo Mexico relating to the United States, including but not limited to all licenses to permit Grupo Mexico to conduct business in the United States.   Responsive documents include but are not limited to (a) documents sufficient to identify all responsive licenses or permits, (b) all communications related to any responsive licenses or permits, and (c) any responsive licenses or permits.

**Response:**

37.    All documents relating to United States patents, trademarks, and copyrights applied for or owned, in whole or in part, by Grupo Mexico.   Responsive documents include but are not limited to (a) documents sufficient to identify all responsive patents, trademarks, and copyrights, (b) all communications related to any responsive patents, trademarks, and copyrights, and (c) any responsive patents, trademarks, and copyrights.

**Response:**

38.    All documents relating to insurance policies owned by Grupo Mexico or under which Grupo Mexico is a beneficiary or has a beneficial interest issued by a United States

21

insurance company or covering property within the United States or issued by any insurance company controlled by a United States insurance company. Responsive documents include but are not limited to (a) documents sufficient to identify all responsive insurance policies and (b) all communications related to any responsive insurance policies.

**Response:**

39.    All documents relating to press releases provided by, on behalf of, under the guidance, direction, or control of, or with the authority or including the participation of Grupo Mexico to United States media outlets. Responsive documents include but are not limited to (a) documents constituting or otherwise sufficient to identify all responsive press releases and (b) all communications related to any responsive press releases.

**Response:**

40.    All documents relating to Grupo Mexico's efforts or efforts on its behalf to market its own debt, equity or other securities in the United States.

**Response:**

41.    All documents relating to Grupo Mexico's efforts or efforts on its behalf to market SPCC's debt, equity, or other securities in the United States.

**Response:**

42.    All documents relating to Grupo Mexico's efforts or efforts on its behalf to market the debt, equity, or other securities of any of its direct or indirect United States subsidiaries or affiliates in the United States.

**Response:**

43.    Documents sufficient to show all direct or indirect sales by Grupo Mexico of its own securities in the United States.

**Response:**

44.    All documents reflecting Grupo Mexico representing itself as a United States or North American company.

**Response:**

45.    All documents in which Grupo Mexico or someone on its behalf advertised or marketed its products or services in the United States.

**Response:**

46.    Documents sufficient to show all lawsuits filed in the United States in which Grupo Mexico is or has been a defendant or a plaintiff.

**Response:**

47.    Documents sufficient to show all lawsuits in which a United States court has, at any time, found Grupo Mexico subject to personal jurisdiction in the United States.

**Response:**

48.    Documents sufficient to show all lawsuits in which a United States court has, at any time, exercised jurisdiction over Grupo Mexico.

**Response:**

49.    All documents reflecting or identifying consent by Grupo Mexico to the jurisdiction of a court or other tribunal in the United States.

**Response:**

50.    All documents produced by Grupo Mexico at any time in response to jurisdictional discovery requests made in suits in courts located in the United States, including but not limited to documents produced in *Seaboard Surety Company v. Grupo Mexico, S.A. de C.V.*, 2:06-cv-00134-SMM (D. Ariz).

**Response:**

51.    All transcripts of depositions at any time relating to whether Grupo Mexico is subject to personal jurisdiction in the United States, including but not limited to depositions taken in *Seaboard Surety Company v. Grupo Mexico, S.A. de C.V.*, 2:06-cv-00134-SMM (D. Ariz).

**Response:**

24

52. All documents relating to any activity by or on behalf of Grupo Mexico concerning Grupo Mexico's acquisition of ASARCO in 1999.

**Response:**


53. All documents relating to any due diligence conducted by Grupo Mexico concerning Grupo Mexico's acquisition of ASARCO in 1999.

**Response:**


54. All internal correspondence, memoranda, notes, email, and other documents relating to Grupo Mexico's acquisition of ASARCO in 1999.

**Response:**


55. All documents relating to any activity by or on behalf of Grupo Mexico concerning the transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation.

**Response:**


56. All documents relating to any due diligence or other actions conducted or taken by Grupo Mexico concerning the transfer or consideration of a possible transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation.

**Response:**


25

57.    All internal correspondence, memoranda, notes, email, and other documents relating to the transfer or consideration of a possible transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation.

**Response:**

58.    Documents relating to all meetings held by or attended by Grupo Mexico relating to the transfer or consideration of a possible transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation.    Responsive documents include but are not limited to (a) documents sufficient to identify all responsive meetings and (b) all communications related to any responsive meetings.  Responsive documents include, but are not limited to, documents that show:

    a.   the dates of the meetings;

    b.   the locations of the meetings;

    c.   who attended the meetings;

    d.   the purposes of the meetings; and

    e.   the topics discussed at the meetings.

**Response:**

59.    All documents and communications involving Grupo Mexico relating to:

    a.   Any formal or informal valuation or consideration of value of ASARCO's stock interest in SPCC or SPCC.

    b.   Acquisition or transfer of, other plans for, or disposition of ASARCO's stock interest in SPCC;

26

    c.   Any formal or informal consideration of ASARCO's ability to continue as a going

         concern; and

    d.   Any formal or informal consideration of the solvency of ASARCO.

**Response:**

60.    All documents and communications created by or provided to Grupo Mexico relating to the projected financial impact on ASARCO of a sale or transfer of its stock interest in SPCC to Americas Mining Corporation.

**Response:**

61.    All documents and communications created by or provided to Grupo Mexico relating to the financial structure of a sale or transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation.

**Response:**

62.    All documents constituting or relating to communications between Grupo Mexico and Inbursa relating to a sale or transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation.

**Response:**

63.    All documents constituting or relating to communications with the United States Department of Justice created by or provided to Grupo Mexico and relating to the sale or transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation.

27

**Response:**

64.    All documents constituting or relating to communications created by or provided to Grupo Mexico and relating to a settlement of the lawsuit brought by the United States Department of Justice to enjoin the sale or transfer of ASARCO's stock interest in SPCC.

**Response:**

65.    All documents and communications created by or provided to Grupo Mexico relating to the possible or actual payment of the Yankee Bonds.

**Response:**

66.    All documents and communications created by or provided to Grupo Mexico relating to the ASARCO restructuring committee, Jock Patton, or Al Frei.

**Response:**

67.    All documents and communications created by or provided to Grupo Mexico relating to any statute of limitations for a fraudulent transfer claim that might be brought in connection with the transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation.

**Response:**

68.    All documents and communications created by or provided to Grupo Mexico relating to any attempts or actions to prevent the avoidance by fraudulent transfer claimants of the transfer of ASARCO's stock interest in SPCC to Americas Mining Corporation.

**Response:**

69.    All documents and communications created by or provided to Grupo Mexico relating to Grupo Mexico's involvement with the decision for ASARCO to file for bankruptcy.

**Response:**

70.    All documents relating to efforts by Grupo Mexico, directly or indirectly through American Mining Corporation or any other entity, to acquire shares in SPCC.

**Response:**

71.    All electronically stored information, as that term is defined in the Federal Rules of Civil Procedure, relating to the documents requested in Requests 1-70.

29

Dated:  June 21, 2007                        Respectfully submitted,

| | |
|---|---|
| **BAKER BOTTS L.L.P.** | **JORDAN, HYDEN, WOMBLE CULBRETH & HOLZER, P.C.** |
| /s/ G. Irvin Terrell, Jr. | |
| G. Irvin Terrell, Jr. (GT-3459) | Shelby A. Jordan |
| Attorney-in-Charge | Texas State Bar No. 11016700 |
| Texas State Bar No. 19794500 | Suite 900, Bank of America |
| Samuel Cooper | 500 North Shoreline |
| Texas State Bar No. 00792427 | Corpus Christi, Texas 78471 |
| Michael Massengale | Telephone:  361.884.5678 |
| Texas State Bar No. 24003704 | Facsimile:   361.888.5555 |
| Rebeca Huddle | Email: sjordan@jhwclaw.com |
| Texas State Bar No. 24012197 | |
| 910 Louisiana Street | -and- |
| One Shell Plaza | |
| Houston, Texas  77002-4995 | **JORDAN, HYDEN, WOMBLE CULBRETH & HOLZER, P.C.** |
| Telephone:  713.229.1231 | |
| Facsimile:   713.229.2831 | Michael J. Urbis |
| Email: irv.terrell@bakerbotts.com | Texas State Bar No. 20414130 |
|         samuel.cooper@bakerbotts.com | 1534 E. 6th Street, Suite 104 |
|         michael.massengale@bakerbotts.com | Brownsville, Texas 78520 |
|         rebeca.huddle@bakerbotts.com | Telephone:  956.542.1161 |
| | Facsimile:   956.542.0051 |
| -and- | Email: murbis@jhwclaw.com |
| | |
| **BAKER BOTTS L.L.P.** | **COUNSEL TO ASARCO LLC** |
| Jack L. Kinzie | |
| Texas State Bar No. 11492130 | |
| Fernando Rodriguez | |
| Texas State Bar No. 24005048 | |
| Eric A. Söderlund | |
| Texas State Bar No. 24037525 | |
| Thomas E. O'Brien | |
| Texas State Bar No. 24046543 | |
| 2001 Ross Avenue | |
| Dallas, Texas 75201-2980 | |
| Telephone:  214.953.6500 | |
| Facsimile:    214.661.6503 | |
| Email: jack.kinzie@bakerbotts.com | |
|         fernando.rodriguez@bakerbotts.com | |
|         eric.soderlund@bakerbotts.com | |
|         tom.obrien@bakerbotts.com | |

30

## CERTIFICATE OF SERVICE

I certify that on June 21, 2007, the foregoing document was served via overnight delivery service and email on the following counsel:

BARON & BUDD
Alan B. Rich, Esq.
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
(214) 520-1181 (facsimile)
*arich@baronbudd.com*

**ATTORNEYS FOR PLAINTIFFS
PHILLIP NELSON BURNS,
MIRJANA PAVKOVICH,
and WARREN ELMER HALPAP**

MILBANK, TWEED, HADLEY & McCLOY LLP
David R. Gelfand, Esq.
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
(212) 530-5219 (facsimile)
*dgelfand@milbank.com*

MILBANK, TWEED, HADLEY & McCLOY LLP
David S. Cohen
1850 K Street, NW
Suite 1100
Washington, D.C. 20006
(202) 835-7500
(202) 835-7586 (facsimile)
*dcohen2@milbank.com*

**ATTORNEYS FOR DEFENDANT
GRUPO MEXICO, S.A. de C.V.**

*/s/ G. Irvin Terrell, Jr.*
G. Irvin Terrell, Jr. (GT-3459)

31

# EXHIBITS 5-7
# TO
# EXHIBIT 4

# FILED UNDER SEAL