# EXHIBIT 15
# TO
# EXHIBIT 4

## SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | 555 WEST FIFTH STREET | LOS ANGELES |
| BRUSSELS | LOS ANGELES, CALIFORNIA 90013 | NEW YORK |
| CHICAGO | TELEPHONE 213 896 6000 | SAN FRANCISCO |
| DALLAS | FACSIMILE 213 896 6600 | SHANGHAI |
| GENEVA | www.sidley.com | SINGAPORE |
| HONG KONG | FOUNDED 1866 | TOKYO |
| LONDON | | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(213) 896-6017

WRITER'S E-MAIL ADDRESS
rhavel@sidley.com

September 1, 2005

**BY E-MAIL AND U.S. MAIL**
Jack L. Kinzie, Esq.
Baker Botts LLP
2001 Ross Avenue
Dallas, Texas 75201-2980

BAKER BOTTS LLP

SEP - 7 2005

RECEIVED

Re:    ASARCO, LLC ("ASARCO")

Dear Jack:

This letter follows up on our conversations of August 19th and September 1st with respect to the effect of ASARCO's chapter 11 filing upon the prosecution of the action styled *Burns v. Grupo Mexico, S.A.*, No. 04114728, in the Supreme Court of the State of New York (the "State Action"). As counsel to defendants in the State Action we reiterate our position (discussed in greater detail below) that any and all claims alleged in the State Action belong to ASARCO, as debtor in possession, and that the current plaintiffs in the State Court Action are stayed from further prosecution of these claims. This letter is also to confirm that you have received an informal acknowledgment from counsel to the plaintiffs with respect to the application of the automatic stay, and that ASARCO shall promptly give written notification to the parties in the State Action that the automatic stay prevents further prosecution of claims that belong to the estate.

### BACKGROUND OF STATE ACTION

On October 15, 2004, the State Action was commenced against ASARCO's ultimate parent, Group Mexico S.A. de C.V. ("Grupo Mexico"), as well as certain individuals and other corporations. A copy of the complaint is enclosed.[1] The

---

[1] The initial complaint has been amended twice by the plaintiffs. Neither amendment changed the legal theories or facts underlying the State Action. The plaintiffs had the right to amend the complaint once without need for court permission. However, leave of the court was never obtained to file second amendment which purports to expand the case to be class action for all asbestos claimants. The Grupo Defendants have reserved the right to strike the second amended complaint because of failure to get prior leave of the court.

SIDLEY AUSTIN BROWN & WOOD LLP IS A LIMITED LIABILITY PARTNERSHIP
PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

LA1 697421v.2

SIDLEY AUSTIN BROWN & WOOD LLP                    LOS ANGELES

Jack L. Kinzie
September 1, 2005
Page 2

plaintiffs are persons asserting disputed asbestos claims against ASARCO. They assert claims based on a series of transactions involving assets of ASARCO during the time period of 1999-2003. The plaintiffs have launched a broad based attack against numerous transfers including major transactions such as comprehensive acquisition financing in November, 1999, the spin off of operating subsidiaries to third party purchasers in 2000 and 2001, and ASARCO's sale of the SPCC stock in March, 2003. The complaint also includes miscellaneous transactions involving the sale of personal property and liquidation of disputed insurance coverage. Plaintiffs' broadly allege that each transfer is a fraudulent conveyance under New York Debtor and Creditor Law (the "D.C.L."), specifically sections 273-276. Plaintiffs also assert claims against individual defendants and certain advisors of ASARCO for alleged breach of fiduciary duties under N.Y. Business Corporation Law § 270 in connection with the supposed fraudulent conveyances.    The Firm represents Grupo Mexico and the companies and individuals affiliated with it ("Grupo Defendants"). In addition to naming our clients the State Action includes J.P. Morgan and CSFB as lenders in the 1999 financing, and CSFB and Ernst & Young as advisors to ASARCO.

Currently, per stipulation with the plaintiffs filed on December 8, 2004, the State Action as to Daniel Tellechea Salido, one of the individual defendants, has been dismissed without prejudice. As for the other Grupo Defendants, presently only Americas Mining Corporation ("AMC") has filed an Answer, dated December 23, 2004 (and served interrogatories – also dated December 23, 2004). The parties entered into an agreement to postpone all other answers, motions or discovery devices until all Grupo Defendants have been served – which as of yet has not occurred. A preliminary conference before Judge Fried is currently scheduled for October 7, 2005.

For purposes of evaluating the application of the automatic stay to the State Action the claims should be considered in three categories: (1) avoidance actions sounding in intentional and constructive fraud and fraudulent conveyance, variously against certain of the Grupo Defendants, ASARCO, CSFB and J.P. Morgan; (2) breach of fiduciary duty and aiding and abetting same, against the ASARCO's officers and directors, CSFB and Ernst & Young, and (3) a professional negligence and misrepresentation claim against Ernst & Young.

1.    **Avoidance Actions**

The State Action alleges claims for (a) constructive fraudulent conveyances resulting in insolvency and in insufficiency of capital; (b) actual fraud or conspiracy on grounds of transfers with intent to frustrate creditor claims; and (c) fraudulent conveyances with respect to (i) insurance proceeds, and (ii) transfers to insiders. Such claims are precisely the kinds of avoidance actions that the Bankruptcy Code contemplates as belonging to the trustee or debtor in possession pursuant to Code sections 544, 548 and 550.

SIDLEY AUSTIN BROWN & WOOD LLP                    LOS ANGELES

Jack L. Kinzie
September 1, 2005
Page 3

It is well-established that once a bankruptcy case is commenced, all avoidance actions, including but not limited to those based on fraudulent transfers, belong exclusively to the trustee in bankruptcy (or the debtor in possession exercising the powers of the trustee). Individual creditors have no standing to assert such claims, in that they represent property of the estate. See, e.g., *Nangle v. Lauer (In re Lauer)*, 98 F.3d 378, 388 (8th Cir. 1996) ("Section 548 by its terms provides that certain transfers by the debtor prior to bankruptcy may be voided only by 'the trustee.' 11 U.S.C. § 548(a). . . . [I]ndividual creditors of the bankruptcy estate do not have standing to assert claims of voidable transfers"); *Larsen v. Munoz (In re Munoz)*, 111 B.R. 928, 930 (D. Colo. 1990) ([a]s a general rule . . . , a creditor has no right to assert such claims because the Code expressly limits the § 544 powers to the trustee, who exercises them for the benefit of the estate and all creditors of the estate"); *Hansen v. Finn (In re Curry and Sorensen, Inc.)*, 57 B.R. 824, 827 (B.A.P. 9th Cir. 1986) ("Section 548 establishes power to avoid fraudulent transfers, which usually may only be asserted by a trustee or, under Section 1107(a) of the Code, by a Chapter 11 debtor-in-possession. . . . Individual creditors generally have no remedy to institute such an action except through the trustee or debtor-in-possession"); *Klingman v. Levinson*, 158 B.R. 109, 113 (Bankr. N.D. Ill. 1993) ("the commencement of a bankruptcy gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors").

In the Fifth Circuit (as elsewhere), the automatic stay prevents a creditor of the debtor from maintaining an action to recover fraudulently conveyed property, and such right is vested only in the bankruptcy trustee. *Carlton v. BAWW, Inc.*, 751 F.2d 781, 784 (5th Cir. 1985). Also in the case of *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. 1987), the Fifth Circuit held that a creditor's state court action against nonbankrupt defendants, based on the remedy of alter ego under Texas law, belonged to the corporate debtor and was "property of the estate" within the meaning Bankruptcy Code section 541(a)(1). Accordingly, the Court of Appeals citing § 362(a)(3) held that the individual creditor's postpetition prosecution of the state court action violated the automatic stay as an attempt to exercise control over property of the debtor's estate. Id. at 1153.

In light of these authorities, any further prosecution by the plaintiffs in the State Action of the avoidance claims represents a prohibited attempt to exercise control over property of the ASARCO estate, and as such, is automatically stayed under section 362(a)(3).

## 2.     Breach of Fiduciary Duty Claims

The State Action also alleges breach of fiduciary duty claims against certain of ASARCO's officers and directors, as well as aiding and abetting such alleged breaches by CSFB and Ernst & Young. The plaintiffs have not alleged any

SIDLEY AUSTIN BROWN & WOOD LLP                    LOS ANGELES

Jack L. Kinzie
September 1, 2005
Page 4

particularized injury to themselves, but rather, have alleged an injury that is generalized to all creditors. Because such claims allege a breach of duty to the corporation, such an action is derivative, and any recovery should go to the estate for the benefit of all creditors and equity holders. Upon the filing of the chapter 11 petition, such actions constitute property of ASARCO's estate and may be brought only by the trustee or debtor-in possession. As one court explained, following its discussion of a long line of cases supporting this proposition:

> To summarize: A creditor of the debtor does not have standing to assert an action against a third party if the creditor has only suffered a general injury, common to all creditors and derivative of injury to the debtor, and if the trustee (or debtor in possession) has standing to assert the cause of action against the third party.

*Hall v. Sunshine Mining Co.* (In re Sunshine Precious Metals, Inc.), 157 B.R. 159, 163 (Bankr. D. Idaho 1993) citing, inter alia, *American Nat'l Bank of Austin v. MortgageAmerica Corp.* (In re MortgageAmerica Corp.), 714 F.2d 1266, 1275 (5th Cir. 1983); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700-02 (2d Cir. 1989); *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1348-49 (7th Cir. 1987), cert denied, 485 U.S. 906, 108 S.Ct. 1077; *Delgado Oil Col, Inc. v. Torres*, 785 F.2d 857, 861-52 (10th Cir. 1986); and *Cissell v. American Home Assurance Co.*, 521 F.2d 790, 793 (6th Cir. 1975).

3.    **Professional Negligence and Misrepresentation Claims**

The State Action asserts a claim for damages based on allegations of professional negligence and misrepresentation by Ernst & Young. The professional negligence/misrepresentation claim appears to be based upon an alleged duty owed to the plaintiffs. As a matter of substantive law this is questionable in that there was no privity between Ernst & Young and the plaintiffs. In all likelihood this claim should more properly be viewed as a derivative action based on Ernst & Young's duty to ASARCO. We note, as with the fiduciary duty claims discussed above, the plaintiffs do not allege any particularized injury to asbestos claimants, but rather can point only to an alleged general injury to all creditors. Where the injury in generalized to all creditors, the proper party to bring the claims is the debtor in possession or the unsecured creditors' committee. *Variable-Parameter Fixture Dev. Corp. v. Comerica Bank-Cal.* (In re Morpheus Lights, Inc.), 228 B.R. 449, 455 (Bankr. N.D. Cal. 1998). Accordingly, the debtor in possession is the proper party to bring the claim in the Bankruptcy Court.

In conclusion, it is imperative that ASARCO invoke the automatic stay to preserve the status quo, and afford the estate the opportunity to make a careful and thoughtful review of the issues raised in the State Action. There are serious flaws in the

SIDLEY AUSTIN BROWN & WOOD LLP                    LOS ANGELES

Jack L. Kinzie
September 1, 2005
Page 5

complaint — it is a rambling and disjointed narrative. The factual allegations are vague and the application of its legal theories is imprecise. The timing and focus of this litigation by the asbestos plaintiffs raises serious questions with respect to the purpose for its prosecution and the underlying credibility of the actions. Needless to say our clients' position is that the claims against them are wholly without merit and will be vigorously defended. We assume that ASARCO will not blindly adopt these claims, but rather will insure that they are evaluated by responsible representatives of the estate before any actions are taken. As such it is critical that ASARCO formally inform the plaintiffs in the State Action of the estate's interests in the claims and the application of the automatic stay. In light of the hearing now scheduled for early October, we ask that you immediately seek acknowledgment from the plaintiffs that the automatic stay applies to them, and confirm that they will take no further steps to prosecute the State Action.

Very truly yours,

Richard W. Havel

Enclosure

cc:    Armando Ortega
       Roger Hawke, Esq.

LA1 697421v.2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALFPAP,

                    Plaintiff(s),

                -against-                            Index No.: 04/114728

GRUPO MEXICO S. A. de C.V., a Mexican          **SUPPLEMENTAL SUMMONS**
Corporation, SOUTHERN PERU HOLDING
CORPORATION, a Delaware Corporation,
SOUTHERN PERU HOLDING CORPORATION
II, a Delaware Corporation, GRUPO MINERO
MEXICO INTERNACIONAL, S. A. DE C.V., a
Mexican Corporation, COMPANIA MEXICANA
de COBRE, a Mexican Corporation, JP
MORGAN CHASE & COMPANY f/k/a CHASE
MANHATTAN BANK & TRUST COMPANY,
a Delaware Corporation AMERICAS MINING
CORPORATION, a Delaware Corporation,
ERNST & YOUNG LLP, ERNST & YOUNG
CORPORATE FINANCE, LLC, GERMAN
LARREA MOTA-VAHLASCO, Officer and
Director of ASARCO, Inc., OSCAR GONZALES
ROCHA Officer and Director of ASARCO, Inc.,
DANIEL TELLECHEA SALIDO Officer and
Director of ASARCO, Inc., CREDIT SUISSE
FIRST BOSTON, INC., CREDIT SUISSE FIRST
BOSTON, LLC and CREDIT SUISSE FIRST
BOSTON (USA), INC.

FILED

FEB 17 2005

NEW YORK
COUNTY CLERK'S OFFICE

                    Defendant(s)

To the above named Defendants

    You are hereby summoned to answer the Complaint in this action and to serve a copy of

your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance,

on the Plaintiffs' Attorney(s) within 20 days after the service of this summons, exclusive of the day

of service (or within 30 days after the service is complete if this summons is not personally delivered

to you within the State of New York); and in case of your failure to appear or answer, judgment will

be taken against you by default for the relief demanded in the Complaint.

Dated:

 

 

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
180 Maiden Lane
New York, NY 10038
(212)558-5500
FAX (212)344-5461

By: _____
      Gary Klein, Esq.

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
Alan B. Rich, Esq.
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

Defendants' Addresses:


GRUPO MEXICO S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

SOUTHERN PERU HOLDING CORPORATION
2575 East Camelback Road
Phoenix, Arizona

SOUTHERN PERU HOLDING CORPORATION II
2575 East Camelback Road
Phoenix, Arizona

GRUPO MEXICO MINERO
MEXICO INTERNACIONAL, S.A. de C.V.
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

COMPANIA MEXICANA de COBRE
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

AMERICAS MINING CORPORATION
2575 East Camelback Road
Phoenix, Arizona

JP MORGAN CHASE f/k/a CHASE
MANHATTAN BANK
New York, New York

ERNST & YOUNG, LLP
ERNST & YOUNG CORPORATE
FINANCE, LLC
New York, New York

GERMAN LARREA MOTA-VAELASCO
Avenue Baja California 200
Colonia Roma Sur
Mexico City, Mexico 06760

OSCAR GONZALES ROCHA
2575 East Camelback Road
Phoenix, Arizona

DANIELTELLECHEA SALIDO
2575 East Camelback Road
Phoenix, Arizona

CREDIT SUISSE FIRST BOSTON, INC.
11 Madison Avenue
New York, New York 10010

CREDIT SUISSE FIRST BOSTON, LLC
11 Madison Avenue
New York, New York 10010

CREDIT SUISSE FIRST BOSTON (USA), INC.
11 Madison Avenue
New York, New York 10010

APR-11-2005  12:33     FROM-                                              T-846  P.006  F-516

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALFPAP,

                  Plaintiff(s),

     -against-

Index No.: 04114728

GRUPO MEXICO S. A. de C.V., a Mexican
Corporation, SOUTHERN PERU HOLDINGS
CORPORATION, a Delaware Corporation, SPHC
II, Incorporated, a Delaware Corporation, GRUPO
MINERO MEXICO INTERNACIONAL, S. A.
DE C.V., a Mexican Corporation, MEXICANA
de COBRE, S.A. de C.V. a Mexican Corporation,
CONTROLADORA MINERA MEXICO, S.A. de
C.V., a Mexican Corporation, JP MORGAN
CHASE & COMPANY f/k/a CHASE
MANHATTAN BANK & TRUST COMPANY,
a Delaware Corporation, AMERICAS MINING
CORPORATION, a Delaware Corporation,
ERNST & YOUNG LLP, ERNST & YOUNG
CORPORATE FINANCE, LLC, GERMAN
LARREA MOTA-VELASCO, Officer and
Director of ASARCO, Inc., OSCAR GONZALEZ
ROCHA Officer and Director of ASARCO, Inc.,
CREDIT SUISSE FIRST BOSTON, INC.,
CREDIT SUISSE FIRST BOSTON, LLC and
CREDIT SUISSE FIRST BOSTON (USA), INC.

                  Defendant(s)

**SECOND AMENDED
VERIFIED COMPLAINT**

Plaintiffs, by their attorneys, WEITZ & LUXENBERG, P.C. and BARON & BUDD, P.C. for

their suit against Defendants respectfully allege as follows:

## PRELIMINARY STATEMENT

1.     This case concerns the acquisition and systematic liquidation of a multi-billion

1

dollar, one hundred year old, U.S. Corporation for the benefit of foreign investors and to the detriment of resident creditors. The companies and assets which made up Asarco Incorporated ("ASARCO") were raided, sold for profit and transferred beyond the direct reach of individuals ASARCO injured and owes compensation.

2.     This action arises under the New York Fraudulent Conveyance Act, DEBT. & CRED. § 270 *et. seq.* and the common law of New York concerning fraud. Plaintiffs all have claims against ASARCO for personal injuries related to asbestos exposure, and are all creditors of ASARCO. Plaintiffs bring this action on behalf of themselves and as a plaintiff class, as defined below. (referred to hereinafter as the "Plaintiff Class").

### JURISDICTION, VENUE & CHOICE OF LAW

3.     Jurisdiction and venue are proper in the State of New York and New York County pursuant to N.Y. C.P. L. R. art. 5 § 503. New York State Law governs plaintiffs' claims for relief.

4.     The parties and the principal transfers complained of herein all have a significant connection with this jurisdiction. At the time of the Leveraged Buyout ("LBO"), ASARCO's corporate headquarters was located in New York City. The corporate headquarters of defendant JP Morgan Chase & Company f/k/a Chase Manhattan Bank & Trust Co. ("Chase") is located in New York City.

5.     All defendants are authorized to transact business in the state and/or have contracted to supply goods and services within the state. All defendant corporations and business entities have committed tortious acts within the state of New York.

6.     ASARCO, defendant Grupo Mexico S.A. de C.V. ("GRUPO MEXICO"),

2

defendant Americas Mining Corporation ("AMC") and defendant CHASE have all contractually

waived any right they might have had to contest the jurisdiction of this Court relating to the

conveyances contested herein.   Further, these defendants have designated within those same

contracts that New York State Law governs principal transactions involved in the LBO.

7.    Defendant Ernst & Young, LLP and Ernst & Young Corporate Finance LLC

regularly conduct business in this state and county.

8.    Defendants Credit Suisse First Boston, Inc., Credit Suisse First Boston, LLC and

Credit Suisse First Boston (USA) Inc.'s (collectively "CSFB") principal offices are located in

New York City, New York.

9    The State of New York has the most significant interest in the outcome of this

litigation.

### Plaintiffs

10    Plaintiffs are present unsecured creditors of ASARCO whose claims have not

been satisfied.   Plaintiffs are persons who were injured by ASARCO and whose tort claims were

both filed and unfiled against ASARCO at the time of the fraudulent conveyance(s) at issue.

Plaintiffs all have "claims" against ASARCO and are therefore "creditors" as that term is defined

under the New York Fraudulent Conveyance Act ("the Act"), N. Y. DEBT & CRED. § 270.

11.    The Plaintiffs are by name and citizenship: PHILLIP NELSON BURNS, a citizen

of the State of Arizona; MIRJANA PAVKOVICH, Administrator of the Estate of Rade

Pavkovich, Deceased, a citizen of the State of Arizona; and WARREN ELMER HALFPAP, a

citizen of the State of New York.

### Defendants

12.    Defendant GRUPO MEXICO S. A. de C.V. ("GRUPO MEXICO") is a Mexican

3

Corporation. GRUPO MEXICO may be served with process pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon GRUPO MEXICO S.A. DE C.V., at its headquarters at Avenue Baja California 200, Colonia Roma Sur, 06760, Mexico City, Mexico. References herein to "GRUPO MEXICO" include GRUPO MEXICO S.A. de C.V. and its subsidiaries and affiliates, defendants Americas Mining Corporation ("AMC"), Controladora Minera Mexico, S.A. de C.V. ("CMM"), Grupo Mexico Minera Mexico Internacional, S.A. de C.V. ("GMMI") and Mexicana de Cobre S.A. de C.V.

13.     Defendants SOUTHERN PERU HOLDINGS CORPORATION ("SPHC") and SPHC II Incorporated are incorporated in the State of Delaware and maintain their corporate headquarters at 2575 East Camelback Road, Phoenix Arizona, 85016. The registered service agent for both SPHC and SPHC II is the Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801. SPHC is a holding company and was formed as a wholly owned subsidiary of ASARCO to facilitate the transfer of ASARCO's interest in Southern Peru Copper Corporation ("SPCC") to defendant GRUPO MEXICO and/or its affiliates.

14.     Defendant GRUPO MEXICO MINERO MEXICO INTERNACIONAL, S.A. DE C.V. ("GMMI") is a Mexican corporation. GMMI may be served with process pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon GRUPO MEXICO MINERO MEXICO INTERNACIONAL, S.A. DE C.V., at its headquarters at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

4

15.    Defendant MEXICANA de COBRE S.A. de C.V. is a Mexican corporation.
MEXICANA de COBRE S.A. de C.V. may be served with process pursuant to the Convention
on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters
(the Hague Convention) by providing the Summons and Complaint in proper form to the
Mexican Central Authority, which will provide formal service upon MEXICANA de COBRE
S.A. de C.V., at Kilometro 21 Carretera Nacozari Agua Prieta, 84346, Nacozari de Garcia,
Sonora, Mexico.

16.    Defendant CONTROLADORA MINERA MEXICO, S.A. de C.V.
("CMM") a Mexican Corporation may be served with process pursuant to the Convention on
the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the
Hague Convention) by providing the Summons and Complaint in proper form to the Mexican
Central Authority, which will provide formal service upon CONTROLADORA MINERA
MEXICO, S.A. de C.V., at its headquarters at Avenue Baja California 200, Colonia Roma
Sur 06760 Mexico City, Mexico.

17.    Defendant AMERICAS MINING CORPORATION ("AMC") is incorporated in
the State of Delaware and maintains its principal place of business at 2575 East Camelback
Road, Phoenix, Arizona, 85016.  AMC is a wholly owned subsidiary of defendant GRUPO
MEXICO.

18.    Defendant JP MORGAN CHASE & COMPANY f/k/a CHASE MANHATTAN
BANK ("Chase") is a Delaware Corporations whose corporate headquarters are located in New
York City, New York.  Chase Manhattan Bank is a "legacy" company of JP Morgan Chase & Co.

19.    Defendant ERNST & YOUNG, LLP and Defendant ERNST & YOUNG

5

CORPORATE FINANCE, LLC (collectively "Ernst & Young") are limited liability companies and accounting firms with worldwide offices including offices in New York City, New York.

20.    Defendants CREDIT SUISSE FIRST BOSTON, INC., a Delaware Corporation, CREDIT SUISSE FIRST BOSTON, LLC a Delaware Limited Liability Company and CREDIT SUISSE FIRST BOSTON (USA), INC. a Delaware Corporation (collectively "CSFB") served as financial advisor to ASARCO's Board of Directors at the time of the LBO and a commercial lender who financially backed the LBO and profited from the transaction. CSFB does business worldwide but regularly conducts business in New York City and the State of New York. The principal corporate office of each CSFB entity is Eleven Madison Avenue, New York N.Y. 10010-3629.

21.    Defendant GERMAN LARREA MOTA-VELASCO was the Chairman and Chief Executive Officer of ASARCO from November 1999 and at the date of the transfer of SPCC to AMC. He was also Chairman of the Board of SPCC and Chief Executive Officer and Chairman of the Board of GRUPO MEXICO, and he owes a fiduciary duty to ASARCO's creditors, including plaintiffs. Mr. Mota-Velasco may be served with process pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention) by providing the Summons and Complaint in proper form to the Mexican Central Authority, which will provide formal service upon Mr. Mota-Velasco at his place of business at Avenue Baja California 200, Colonia Roma Sur 06760 Mexico City, Mexico.

22.    Defendant OSCAR GONZALEZ ROCHA was a Director of ASARCO at the date of the transfer of SPCC to AMC. At that time he was also President, General Director and Chief Operating Officer of SPCC, and he owes a fiduciary duty to ASARCO's creditors,

6

including plaintiffs.  Mr. Rocha may be served with process at his place of business at its

principal place of business at 2575 East Camelback Road, Phoenix, Arizona.

### PLAINTIFF CLASS

23.    The Plaintiff Class is defined as:  All persons who were exposed to, inhaled,

ingested or otherwise absorbed asbestos or asbestos containing products in the course of their

employment, during non-occupational work projects (including but not limited to, home and

automotive repairs, maintenance and remodeling) and/or in other ways, which were

manufactured, sold, distributed or installed directly or indirectly by ASARCO, Inc. and have or

will contract asbestos related diseases.  All members of the Plaintiff Class are unsecured

creditors of ASARCO, entitled to judgment against the Defendants and Defendant Class who

through negligent and intentional acts, fraudulently conveyed and/or facilitated the conveyance of

ASARCO's principal assets which should rightfully be available to compensate the Plaintiff

Class for injuries arising from ASARCO's tortious conduct.

### DEFENDANT CLASS

24.    The Defendant Class is defined as all named defendants who participated in and

benefitted from the liquidation of ASARCO's principal assets.

### BACKGROUND ALLEGATIONS

I.    **ASARCO BEFORE THE LEVERAGED BUYOUT**

25.    Prior to the leveraged buyout of ASARCO by GRUPO MEXICO, ASARCO's

publically filed financial statements portrayed ASARCO as a solvent, international, publicly

traded corporation, listed on the New York Stock Exchange with more than four billion dollars in

assets and a low debt to asset ratio.

26.    However, the Defendants, including the Officers and Directors of ASARCO, were

7

aware of multiple claims against the company for environmental cleanup relating to ASARCO's mining and smelting operations in the United States and thousands of asbestos related personal injury claims stemming from the operation of ASARCO's own facilities and those of two of ASARCO's subsidiaries Capco Pipe Company (asbestos product manufacturer and distributor) and Lac d' Amiante du Quebec (LAQ) (asbestos mining operation).

27.     Taking these present and anticipated creditor claims into account, ASARCO was insolvent or facing insolvency prior to the LBO.

28.     ASARCO's Directors decided to sell the company.  The Directors, all insiders and shareholders of ASARCO, entertained and accepted tender offers from Phelps Dodge Corporation and defendant GRUPO MEXICO.

29.     The sale of ASARCO and the liquidation of the company's principal assets prior to the settlement of its environmental claims, including asbestos claims, and its other anticipated unsecured creditor claims, unlawfully favored shareholders at the expense of creditors including Plaintiffs.

B.     OVERVIEW OF GRUPO MEXICO'S TENDER
       OFFER AND INTEGRATED PLAN OF LIQUIDATION

30.     GRUPO MEXICO offered to purchase ASARCO's stock for cash through a leveraged buyout.  GRUPO MEXICO's tender offer consisted of $29.75 per share, a guarantee of a loan from Chase and other lenders including CSFB to ASARCO to repurchase its own stock and assumption of $1.2 billion dollars in "pre-existing corporate debt."  GRUPO MEXICO's proposal did not, however, involve actually paying-off all of ASARCO's "pre-existing corporate debt."

31.     GRUPO MEXICO would then force ASARCO to become responsible for the loan

8

to Chase and the other lenders, requiring ASARCO (rather than GRUPO MEXICO) to pay for its

own buyout by GRUPO MEXICO. ASARCO was thus forced to repay the loans made to

GRUPO MEXICO by cannibalizing itself through the sale of its own assets.

32.    As for the "pre-existing corporate debt" most of the debt was not owed or

guaranteed by ASARCO. This debt was SPCC's, and it arose out of an expansion project of

SPCC's copper mining operations. Nevertheless, upon information and belief, GRUPO

MEXICO also required that assets of ASARCO be liquidated to pay down SPCC's debt.

Eventually, having used its own assets to pay down SPCC's debt, ASARCO transferred its SPCC

stock to GRUPO MEXICO for unreasonably small consideration.

C.    STEP 1: GRUPO MEXICO's PURCHASE AND PRIVATIZATION OF ASARCO

33.    In November 1999, GRUPO MEXICO purchased ASARCO in a "bust up"

acquisition wherein the non-mining assets of ASARCO were sold to finance the purchase.

34.    The acquisition of ASARCO by GRUPO MEXICO was accomplished through the

redemption/share repurchase of ASARCO's stock. Prior to its tender offer, GRUPO MEXICO,

through a subsidiary, acquired slightly more than 9% of the outstanding ASARCO common

shares and was the company's largest, single shareholder. As ASARCO repurchased its own

shares, GRUPO MEXICO's ownership interest in ASARCO increased.

35.    In connection with the acquisition, GRUPO MEXICO caused ASARCO to merge

with a GRUPO MEXICO merger subsidiary with "ASARCO" being the survivor. GRUPO

MEXICO's ASARCO stock was then transferred to another holding company, defendant

Americas Mining Corporation (AMC).

36.    After redemption/share repurchase of the other ASARCO shareholders, GRUPO

MEXICO privatized ASARCO in anticipation of liquidating its non-mining assets. ASARCO

9

was de-listed from the New York Stock Exchange, and ASARCO was no longer required to publish its financial reports.

37.    In a series of related, integrated and designed transactions, GRUPO MEXICO acquired ASARCO by means of a leveraged buyout for less than fair consideration, without good faith and in derogation of creditors' rights, including plaintiffs'.

38.    GRUPO MEXICO's acquisition costs for the purchase of ASARCO were paid with money borrowed by ASARCO.  In November 1999, GRUPO MEXICO negotiated with Chase for financing to redeem ASARCO's stock.

39.    To pay initial acquisition costs, GRUPO MEXICO caused ASARCO (through the GRUPO MEXICO merger subsidiary) to borrow eight hundred seventeen million dollars ($817,000,000) ("acquisition loan") from defendant Chase.

40.    Chase also set up and syndicated a four hundred fifty million dollar ($450,000,000) revolving line of credit for ASARCO which added to the company's debt load and debt service.

41.    As collateral, ASARCO pledged its ownership interest in SPCC, Enthone-OMI, Inc. and related companies (collectively "Enthone") and American Limestone Company and related companies (collectively "American Limestone"). (SPCC, Enthone and American Limestone are collectively referred to herein as "ASARCO's principal assets"). As a part of GRUPO MEXICO's acquisition and in anticipation of transfer to GRUPO MEXICO, ASARCO placed its SPCC stock in a wholly owned subsidiary and holding company, Southern Peru Holding Corporation ("SPHC"). At the time of acquisition, ASARCO owned approximately 54.2 % of the voting stock of SPCC.

42.    Chase and the other participating banks expected to be paid, and were paid, as

priority lenders, out of the proceeds of the sale of ASARCO's speciality chemical division
(Enthone) and ASARCO's aggregates division (American Limestone) and the proceeds of the
sale of ASARCO's SPCC stock.

43.    Defendant Chase knew it was providing the senior debt necessary to acquire and
liquidate ASARCO's principal assets, and knew or should have known that ASARCO was
already insolvent because of environmental and asbestos liabilities and/or would be rendered
insolvent or without sufficient capital to continue normal business operations as a result of these
conveyances.

44.    Chase knew that ASARCO's outstanding unsecured environmental and personal
injury creditors would not be satisfied under the planned liquidation.

45.    The recitals within the loan agreement state that the principal purpose of the
acquisition loan was to repurchase ASARCO's stock from its shareholders.  Chase knew  the
proceeds of the loan would not accrue to the benefit of ASARCO or its creditors and thus
represented unreasonably small return of capital for the encumbrance.  Chase knew that the loan
proceeds were to be used for the benefit of third parties, GRUPO MEXICO, AMC and the
former shareholders of ASARCO, who were "insiders" to the transaction.

**D.    STEP 2:  THE LIQUIDATION OF ASARCO'S PRINCIPAL ASSETS**

46.    After the acquisition, GRUPO MEXICO moved ASARCO's corporate
headquarters from New York to Phoenix, Arizona, where ASARCO shared office space with
AMC and SPHC.  GRUPO MEXICO replaced  ASARCO's Officers and Directors with
designees from its own Board.  ASARCO became a wholly owed subsidiary of AMC.  After
acquisition, ASARCO lost its separate identity and is totally controlled by GRUPO MEXICO
and/or its affiliates.

11

47.    GRUPO MEXICO forced ASARCO to sell its assets to pay GRUPO MEXICO'S acquisition costs.  At GRUPO MEXICO's direction, approximately $17 million of ASARCO's business equipment was sold at auction.

48.    At GRUPO MEXICO's direction and as had been agreed by Chase, ASARCO sold its profitable speciality chemical division (Enthone) for five hundred three million dollars ($503,000,000).  Enthone is now part of Cookson Electronics PWB Materials and Chemistry, a division of Cookson Group plc, a British company.

49.    At GRUPO MEXICO's direction and as had been agreed by Chase, ASARCO sold its profitable aggregates division (American Limestone) to Rinker Materials Corporation f/k/a CSR America, Inc. for two hundred eleven million dollars ($211,000,000).

50.    The proceeds of these sales did not accrue to the benefit of ASARCO or its creditors since these monies were applied to acquisition debt and only benefitted Chase, GRUPO MEXICO and ASARCO's former shareholders to the exclusion of existing and future environmental and asbestos claimants.  These conveyances for less than fair consideration, were made without good faith, created or added to ASARCO's insolvency and insufficiency of capital and were in derogation of creditors' rights including the rights of the plaintiffs.

51.    At GRUPO MEXICO's direction, assets of ASARCO were redirected to the detriment of ASARCO's creditors.  Settlement proceeds relating to litigation with ASARCO's excess liability insurers were not segregated and held to pay the known liability claims to which the insurance coverage related.  As clear evidence of the integrated plan to liquidate ASARCO to the detriment of unsecured creditors, the future proceeds of the insurance settlement were sold at heavy discount, and the cash was transferred to ASARCO's operating account and spent.

52.    In 2003, at GRUPO MEXICO's direction as had been agreed by Chase,

ASARCO's interest in SPCC was transferred to AMC, another wholly owned subsidiary of

GRUPO MEXICO.  In consideration for this conveyance, GRUPO MEXICO paid Chase and the

syndicate of banks, on behalf of ASARCO, four hundred fifty million dollars ($450,000,000) in

repayment of loans arising out of the acquisition, "forgave" some inter-company debt to AMC

and/or its subsidiaries including  Mexicana de Cobre, S.A. de C.V. and agreed to pay two

hundred forty three million dollars ($243,000,000)  at some future date.  Part of this last payment

may accrue to the benefit ASARCO's unsecured creditors (principally as part of a settlement

agreement with the United States on some environmental claims) but it represents an amount far

less than a fair equivalent for the asset.

E.    **ASARCO SUED FOR FRAUDULENT CONVEYANCE**
      **BY THE UNITED STATES GOVERNMENT**

53.    After the transfer of ASARCO's most valuable remaining asset (the SPCC stock

held by SPHC) was proposed, the United States (an unsecured creditor with environmental based

claims) brought suit against ASARCO for fraudulent conveyance.  (*United States of America v.*

*Asarco Inc. and Southern Peru Holdings Corporation, CO2-5401 FDB* (W.D.Wash.) (later

transferred to the United States District Court for the District of  Arizona and renumbered as

Case No. CV 02-2079-PHX-RCB).

54.    During the course of the Government litigation, ASARCO admitted it was no

longer able to pay its debts as they matured.

55.    The United States eventually settled its claims against ASARCO and SPHC for

one hundred million dollars ($100,000,000), an amount far less than the liability owed on just

matured environmental claims, and withdrew its objection to the transfer.  This settlement

provided no benefits or protections whatsoever for ASARCO's other unsecured creditors

including plaintiffs.

56.     Upon information and belief, the United States settled its claim cheaply because the SPCC stock was already encumbered by the acquisition loan from defendant Chase, ASARCO's assets had already been depleted by the sale of Enthone and American Limestone, ASARCO was too thinly capitalized to continue many of its business operations and because of financial misrepresentations of ASARCO, GRUPO MEXICO and defendant Ernst & Young as to the value of ASARCO's interest in SPCC.

57.     The transfer of ASARCO's interest in SPCC was facilitated by defendant Ernst & Young who recklessly and knowingly provided an opinion undervaluing this asset.  As a direct result of the misrepresentations of Ernst & Young, plaintiffs' rights were undermined.

F.     **ASARCO AFTER THE LBO AND RELATED ASSET SALES**

58.     After the conveyances described herein, ASARCO was left an insolvent shell. The present salable value of ASARCO's assets is less than the amount required to pay the corporation's probable liabilities, including the personal injury claims of plaintiffs.  ASARCO lacks sufficient resources to timely pay its creditors, including plaintiffs.  ASARCO is too thinly capitalized to continue the business operations it maintained prior to the sale of SPCC.  Stripped of its most valuable assets, ASARCO is on the verge of filing for Bankruptcy protection.

59.     A just outcome for plaintiffs, whose claims against ASARCO remain unsatisfied, requires that the foregoing transactions be viewed as part of an integrated plan, executed in a period of less than five years,  resulting in conveyances which are fraudulent to plaintiffs.

**PLAINTIFFS' FIRST CLAIM FOR RELIEF**
*(Constructive Fraud-Conveyance Resulting In Insolvency)*

60.     Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-59 and

14

for their First Claim for Relief state as follows:

61.    ASARCO owes a  "debt" to plaintiffs as that term is defined under the New York
Fraudulet Conveyance Act ("the Act").  N. Y. DEBT. & CRED. § 270.

62.    The sale of ASARCO to GRUPO MEXICO in November 1999 by and through a
leveraged buyout is a "conveyance" as that term is defined under the Act.  N. Y. DEBT. & CRED.
§ 270.

63.    The encumbrance of ASARCO's interests in Enthone, American Limestone and
SPCC in furtherance of the GRUPO MEXICO LBO of ASARCO, is a "conveyance" of
ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. § 270.

64.    The sale at auction certain of ASARCO's business equipment is a "conveyance"
of ASARCO's (the debtor's) property within the meaning of the Act.  N. Y. DEBT. & CRED. §
270.

65.    The transfer of GRUPO MEXICO's ownership interest in ASARCO (as merged
with ASMEX) to AMC is a "conveyance" of ASARCO's (the debtor's) property within the
meaning of the Act.  N. Y. DEBT. & CRED. § 270.

66.    The  sale of Enthone, American Limestone and ASARCO's ownership interest in
SPCC ("ASARCO's principal assets") separately and in connection with an integrated plan of
liquidation is/are "conveyance(s)" of ASARCO's (the debtor's) property within the meaning of
the Act.  N. Y. DEBT. & CRED. § 270.

67.    The redemption/share repurchase of ASARCO's stock from ASARCO's Directors
and other shareholders is a "conveyance" as that term is defined under the Act.  N. Y. DEBT. &
CRED. § 270.

68.    Plaintiffs have claims against ASARCO for damages resulting from personal

injuries occasioned by exposure to asbestos. Plaintiffs are "creditors" of ASARCO under the

Act. N.Y. DEBT. & CRED. § 270.

69.     ASARCO was purchased by GRUPO MEXICO, its stock was redeemed, certain

of its business equipment was liquidated at auction and its principal assets encumbered and sold

at a time when ASARCO was either insolvent or would become insolvent as a result of the

liquidation of its assets.

70:     ASARCO received less than fair consideration for the redemption/share

repurchase of its stock and transfer of controlling interest in the company to GRUPO MEXICO

and AMC since the proceeds of the conveyance accrued to the benefit of third parties (GRUPO

MEXICO, AMC, the former shareholders of ASARCO and Chase) and not to the benefit of

ASARCO or its creditors.

71.     ASARCO received less than fair consideration for the encumbrance of its

principal assets since the proceeds of the conveyances accrued to the benefit of third parties

(GRUPO MEXICO, AMC, the former shareholders of ASARCO, Chase and CSFB and others)

and not to the benefit of ASARCO or its creditors.

72.     ASARCO received less than fair consideration for the sale of certain of its

business equipment at auction and the sale of its principal assets since the proceeds of these

conveyances accrued to the benefit of third parties (GRUPO MEXICO, AMC, the former

shareholders of ASARCO, Chase and CSFB) and not to the benefit of ASARCO or its creditors.

73.     Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring

the conveyance of ASARCO to GRUPO MEXICO and AMC, the encumbrance and sale of

ASARCO's business equipment and principal assets and the redemption/share repurchase of its

stock to be individually and collectively fraudulent as to the debts owed plaintiffs pursuant to N.

16

Y. DEBT. & CRED. §273. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' SECOND CLAIM FOR RELIEF
*(Constructive Fraud- Conveyance Resulting in Insufficiency of Capital)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-73 and for their Second Claim for Relief state as follows:

74.    At the direction of GRUPO MEXICO and AMC, ASARCO redeemed its stock and conveyed away certain of its business equipment and its principal assets without fair consideration, when ASARCO was engaging or about to engage in a business or transaction for which the property remaining in ASARCO's hands after the conveyance represented unreasonably small capital.

75.    Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring the encumbrance and conveyance of ASARCO's business equipment and principal assets and redemption/share repurchase of ASARCO's stock individually and collectively, fraudulent as to the Debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. § 274. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' THIRD CLAIM FOR RELIEF
*(Actual Fraud: Conveyance in Anticipation of Debts)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-75 and for their Third Claim for Relief state as follows:

76.    In a series of transactions undertaken at the direction of GRUPO MEXICO and AMC, ASARCO was sold to GRUPO MEXICO and transferred to AMC, ASARCO's stock was redeemed and ASARCO's business equipment and principal assets were encumbered and/or sold for less than fair consideration, with the intent or belief that ASARCO would incur debts beyond its ability to pay as they mature.

17.

77.    GRUPO MEXICO and AMC were aware of plaintiffs' (and other, environmental) claims against ASARCO prior to the conveyances referenced herein, and these defendants knew these claims would remain unsatisfied under the integrated plan of liquidation.

78.    Plaintiffs are entitled to judgment against GRUPO MEXICO and AMC declaring the sale of ASARCO to GRUPO MEXICO, the transfer of ASARCO to AMC, the redemption/share repurchase of ASARCO's stock and the encumbrance and conveyance of ASARCO's business equipment and/or principal assets to be fraudulent to the debts owed to plaintiffs pursuant to N.Y. DEBT. & CRED. § 275. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' FOURTH CLAIM FOR RELIEF
*(Actual Fraud: Conveyance with Intent to Frustrate Creditor Claims/Conspiracy)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1-78 and for their Fourth Claim for Relief state as follows:

79.    The redemption/share repurchase of ASARCO's stock and the sale and liquidation of ASARCO through the LBO were undertaken through an integrated plan and design orchestrated by defendant GRUPO MEXICO and executed with the complicity of others, including AMC, Chase and CSFB.

80.    The redemption/share repurchase of ASARCO' stock and liquidation of ASARCO's assets occurred when:

   a.    ASARCO was insolvent and/or with the knowledge that the transfers, (individually and/or collectively) would result in ASARCO's insolvency;

   b.    GRUPO MEXICO, AMC and Chase were aware of pending litigation against ASARCO for environmental claims and personal injury claims related to asbestos exposure which had rendered or would render the company insolvent;

   c.    ASARCO lacked adequate financial means to meet its debts as they matured;

18

d.    The assets transferred were the principal assets of the corporation and made up the majority of the company's assets in value;

e.    The transfers were made for less than fair consideration;

f.    The transfer(s) benefitted insiders including ASARCO's Directors and other former shareholders, GRUPO MEXICO and AMC at the expense of unsecured creditors including plaintiffs.

81.    The redemption/share repurchase of stock and liquidation of ASARCO's assets was designed to strip the company of assets before unsecured creditor claims matured; the redemption/share repurchase of ASARCO' stock and the sale and liquidation of ASARCO's business equipment and principal assets;was undertaken with the intent to hinder, delay or defraud creditors.

82.    Plaintiffs are entitled to judgment against GRUPO MEXICO, AMC, Chase and CSFB declaring the sale of ASARCO to GRUPO MEXICO and AMC, the redemption/share repurchase of ASARCO's stock and the encumbrance and conveyance of ASARCO's business equipment and principal assets to be fraudulent pursuant to N.Y. DEBT. & CRED. § 276. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

83.    Because these transfers were fraudulent conveyances, committed with the actual intent to defraud creditors, punitive damages should be recovered from the defendants, jointly and severally, in an amount not less than three-times actual damages.

### PLAINTIFFS' FIFTH CLAIM FOR RELIEF
*(Fraudulent Conveyance: Liability of Transferee Chase & CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-83 and for their Fifth Claim for Relief state as follows:

84.    Defendant Chase is the transferee who provided the senior layer of debt necessary to carry out the LBO.

19

85.    Defendant CSFB provided financial advice to ASARCO's Board of Directors at the time of the merger and participated with other banks in financing the LBO.

86.    Chase and CSFB knew the LBO was to be a "bust up" acquisition with the assets of ASARCO to be conveyed away from ASARCO for less than fair consideration since the proceeds of these transfers would not benefit ASARCO or its creditors but would instead accrue to third parties, ASARCO's former shareholders, GRUPO MEXICO and AMC.

87.    Chase and CSFB knew ASARCO was insolvent just prior to the LBO or would be rendered insolvent as a result of the conveyances attendant to the LBO and/or the debt service imposed for the acquisition and operating loans to ASARCO.

88.    Chase and CSFB knew ASARCO was to be liquidated and would be left with unreasonably small capital resources to continue its traditional business operations.

89.    Chase and CSFB knew ASARCO was to be liquidated at a time when ASARCO, GRUPO MEXICO and AMC believed ASARCO would incur debts beyond its ability to pay as they matured.

90.    Chase and CSFB knew the plan of liquidation was undertaken with the intent to hinder, delay and/or defraud creditors.

91.    The encumbrance of ASARCO's principal assets in favor of Chase is a "conveyance" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

92.    Loan payments relating to the LBO received by Chase, CSFB and other participating banks under priority liens, including but not limited to proceeds from the sale of ASARCO's principal assets and other loan payments made by ASARCO or by GRUPO MEXICO (or its affiliates) on behalf of ASARCO (collectively "loan payments")  are

20 ·

"conveyances" of ASARCO's (the debtor's) property within the meaning of the Act. N. Y. DEBT. & CRED. § 270.

93.    The loan payments received by Chase and CSFB are not protected from recapture under N. Y. DEBT & CRED. 272(b) because Chase and CSFB did not act in good faith herein and/or the property received by ASARCO from Chase and CSFB was disproportionately small as compared with the value of the obligation to Chase and CSFB.

94.    In derogation of creditor's rights, including plaintiffs, Chase and CSFB failed to conduct an adequate financial investigation of ASARCO's solvency before loaning and/or making more than one billion (1,000,000,000) dollars to ASARCO and accepting mortgages encumbering ASARCO's principal assets and/or ignored ASARCO's insolvency.

95.    Chase and CSFB knew or should have known that as a result of the planned liquidation of ASARCO's principal assets:

   a.    The fair salable value of ASARCO's remaining assets would be less than ASARCO's liabilities;

   b.    These transfers would leave ASARCO with an unreasonably small amount of capital for the business in which it was engaged or proposed to engage in the future;

   c.    ASARCO could not reasonably be expected to meet its obligations as the matured.

96.    Chase and CSFB knew or should have known that the debtor was insolvent or would be rendered insolvent by the transfers or would be rendered insolvent as a result of the integrated plan of liquidation, that the debt service imposed by Chase and CSFB would further diminish ASARCO's ability to pay creditors and ASARCO has no reasonable prospects for survival.

97.    Chase and CSFB transferred funds to ASARCO in exchange for a lien against

21

ASARCO's principal assets and accepted loan payments for less than fair consideration with actual or constructive knowledge that the transaction would increase or lead to ASARCO's insolvency and fraud on ASARCO's creditors including plaintiffs.

98.    Plaintiffs are entitled to judgment against defendant Chase and CSFB for the value of the property conveyed and/or judgment declaring the loan payments attendant to the LBO made by or on behalf of ASARCO to Chase and CSFB to be fraudulent as to the Debts owed plaintiffs pursuant to DEBT. & CRED. §§ 273, 274, 275 & 276. Plaintiffs are entitled to appropriate equitable and legal relief thereto.

### PLAINTIFFS' SIXTH CLAIM FOR RELIEF
(*Fraudulent Conveyance: Insurance Proceeds*)

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-98 and for their Sixth Claim for Relief state as follows:

99.    Plaintiffs all have "claims" against ASARCO and are therefore "creditors" of ASARCO under the Act. N. Y. DEBT. & CRED. § 270 ASARCO is liable to plaintiffs and therefore is a "debtor" pursuant to the Act. N. Y. DEBT. & CRED. § 270.

100.    The heavy discounting of future insurance proceeds and the transfer of said insurance proceeds at the direction of GRUPO MEXICO or its affiliates to ASARCO's general operating fund and the subsequent disbursement of those monies are "conveyances" of ASARCO's (the debtor's) property pursuant to the Act.

101.    At the time the insurance proceeds were conveyed, ASARCO was insolvent or would be rendered insolvent as a result of the transfer and/or the integrated plan of liquidation.

102.    As a result of the conveyance of the insurance proceeds and/or the integrated plan of liquidation, ASARCO lacked sufficient capital to continue its traditional business operations.

22

103.   The transfer of the insurance proceeds occurred at a time when ASARCO, GRUPO MEXICO and GRUPO MEXICO's affiliates knew or believed ASARCO would incur debts which it would be unable to pay as they matured.

104.   The transfer of the insurance proceeds was undertaken with the intent to hinder, delay or defraud ASARCO's creditors.

105.   Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and its affiliates declaring the conveyance of the insurance proceeds to be fraudulent as to the Debts owed plaintiffs pursuant to N. Y. DEBT. & CRED. §§ 273, 274, 275 & 276.  Plaintiffs are entitled to equitable and legal relief thereto.

### PLAINTIFFS' SEVENTH CLAIM FOR RELIEF
*(Fraudulent Conveyance: Transfer to Insiders)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-105 and for their Seventh Claim for Relief state as follows:

106.   GRUPO MEXICO, AMC, GMMI, Mexicana de Cobre, S.A. de C.V., Controladora Minera Mexico, S.A. de C.V. and ASARCO are all interrelated companies, affiliates and "insiders" owned or controlled by GRUPO MEXICO.

107.   As part of the alleged consideration for the transfer of ASARCO's interest in SPCC to GRUPO MEXICO and its affiliates, ASARCO allegedly received debt forgiveness of an antecedent inter-company debt from affiliates of GRUPO MEXICO including AMC and/or Mexicana de Cobre S.A. de C.V.

108.   The forgiveness of inter-company debt is a "conveyance" within the meaning of the Act.  N. Y. Debt. & Cred. §270.

109.   At the time of the debt forgiveness, ASARCO was either insolvent or rendered

23

insolvent as a result of redemption/share repurchase of its stock and the conveyance of its

principal assets and/or the execution of the integrated plan of liquidation.

110.    The conveyance by an insolvent to an affiliate or insider in satisfaction of an

antecedent debt lacks good faith and is constructively fraudulent.

111.    Plaintiffs are entitled to judgment against ASARCO, GRUPO MEXICO and

MEXICO de COBRE S.A. C.V. declaring the conveyance of the SPCC stock in exchange for

debt forgiveness to be fraudulent as to debts owed plaintiffs pursuant to N. Y. DEBT & CRED. §

273. Plaintiffs are entitled to legal and equitable relief thereto.

**PLAINTIFFS' EIGHTH CLAIM FOR RELIEF**
*(Professional Negligence and Misrepresentation: As to Defendant Ernst & Young)*

Plaintiffs re-adopt and re-allege the allegations contained in ¶'s 1-111 and for their Eighth

Claim for Relief state as follows:

112.    Defendants ERNST & YOUNG LLP and ERNST & YOUNG CORPORATE

FINANCE LLC (collectively "Ernst & Young") were engaged to provide an opinion as to the

value of 43,348,949 shares of Class A Common Stock of Southern Peru Copper Company

representing 54.18% of the voting shares of that publically traded corporation which were held

by SPHC, a wholly owned subsidiary of ASARCO. ("stock interest").

113.    Ernst & Young expressed a professional valuation with full knowledge that its

opinion would be relied upon by a limited class of third parties to which Ernst & Young owed a

duty of care, including the United States Justice Department, The Federal Courts of the United

States and plaintiffs.

114.    The valuation opinion of Ernst & Young provided the principal basis for the

United States District Court for the District of Arizona to approve the sale of the stock interest to

24

Grupo and/or its wholly owned subsidiary AMC to the detriment of plaintiffs.

115.    Ernest & Young recklessly and knowingly and without the professional competence required of a Certified Public Accounting firm sold an opinion letter, which falsely represented that the fair value of ASARCO's controlling interest in SPCC was worth less than the book value of ASARCO's share of the underlying assets of the company.

116.    Ernst & Young had a duty to plaintiffs to issue an opinion based on impartial and independent knowledge of the copper industry.  Despite knowing that the purchaser of the stock interest was an insider with full information regarding the company, the company's prospects and the copper market, Ernst & Young breached its duty to plaintiffs by undervaluing the stock interest based on information provided by the purchaser, Grupo and/or entities controlled by Grupo.

117.    Ernst & Young had a duty to plaintiffs to be competent to issue an opinion as to the value of SPCC as a going concern. Without taking into consideration SPCC's on-going expansion of its mining operations and the increasing value of its copper reserves in a rising copper market, Ernst & Young's valuation negligently only reflects historic and public financial information.

118.    Ernst and Young breached its duty to plaintiffs by failing to exercise due care and the professional competence required of a Certified Public Accounting firm and by issuing an opinion which it knew or should have known grossly understated the value of the stock interest, thereby allowing the stock interest to be sold to Grupo for less than fair and adequate consideration, placing ASARCO's most valuable asset outside the direct reach of creditors.

119.    Plaintiffs are entitled to judgment against Ernst & Young for damages resulting from its professional negligence and misrepresentation as to the value of the stock interest.

25

## PLAINTIFFS' NINTH CLAIM FOR RELIEF
*(Breach of Fiduciary Duty: ASARCO's Officer's & Directors)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -119 and for their Ninth Claim for Relief state as follows:

120.    Defendants GERMAN LARREA MOTA-VELASCO and OSCAR GONZALES ROCHA were Officers and Directors of ASARCO (collectively "Director Defendants") when the principal assets of ASARCO were being liquidated.

121.    The sale of ASARCO's principal assets for less than fair and adequate consideration and the misappropriation of the proceeds of the sale for the benefit of Defendants and to the detriment of ASARCO's unsecured creditors was undertaken at a time when ASARCO was unable to pay its debts as they became due, its liabilities exceeded its assets and/or ASARCO was insolvent.

122.    The sale of ASARCO's principal assets for less than adequate consideration, left ASARCO with unreasonably small capital to continue historic business operations and resulted in insolvency, the likelihood of insolvency and/or the unreasonable risk of insolvency.

123.    The officers and directors of a corporation which is insolvent, or on the brink of insolvency, owe a fiduciary duty to the corporation, to the employees of the corporation and the corporation's unsecured creditors. By selling the principal assets of ASARCO for less than adequate consideration, these Director Defendants breached their fiduciary duties of care and duties of loyalty to the ASARCO, ASARCO'S employees and ASARCO's unsecured creditors including Plaintiffs.

124.    The liquidation of ASARCO's principal assets was not undertaken in good faith,

26

was undertaken without full compliance with statutory procedures designed to protect the rights of creditors, involved intentional misconduct and/or resulted in improper personal benefit.

125.    The actions of these Defendant Directors were grossly negligent and/or undertaken with reckless disregard for the rights of plaintiffs.

126.    Pursuant to N. Y. Bus. Corp. Law § 720 (McKinney 2004), Defendant Directors must account and respond in damages for the amount by which less than full value was realized by ASARCO upon the liquidation of its principal assets.

127.    Plaintiffs are entitled to judgment against Defendant Directors for the losses sustained by creditors through the depletion of ASARCO's principal assets.

### PLAINTIFFS' TENTH CLAIM FOR RELIEF
*(Aiding and Abetting Breach of Fiduciary Duty: Ernst & Young and CSFB)*

Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 -127 and for their Tenth Claim for Relief state as follows:

128.    Defendant CSFB served as financial advisor to ASARCO's Board of Directors at the time the LBO was endorsed by the Board.  CSFB evaluated and advised ASARCO's Board of Directors regarding the sale of the company, recommending the LBO proposed by GRUPO MEXICO and rejecting the merger of equals proposed by Phelps Dodge Corporation.  CSFB then personally benefitted from the transaction by becoming a secured creditor of ASARCO.  The LBO directly caused ASARCO's insolvency.

129.    Defendant Ernst & Young served as ASARCO's financial advisor from August 15, 2002 until March 27, 2003.  As financial advisor, Ernst & Young recommended the monetization of ASARCO's general liability insurance policies and the use of these insurance proceeds for regular business expenses, to the detriment of parties this insurance was intended to

27

compensate. Defendant Ernst & Young undervalued ASARCO's interest in SPCC and then approved, supported and championed the sale of ASARCO's interest in SPCC for less than adequate consideration

130.    ASARCO'S Board of Directors owed a fiduciary duty to the corporation, the corporation's employees and ASARCO's unsecured creditors including Plaintiffs.

131.    By and through the LBO, the leveraging of ASARCO's principal assets and the sale of ASARCO's principal assets for less than adequate consideration, ASARCO's Board of Directors breached its fiduciary duty to these parties, including Plaintiffs.

132.    Defendants Ernst & Young and CSFB knowingly participated, orchestrated and encouraged the breach of fiduciary duty by ASARCO's Directors.

133.    Plaintiffs are entitled to judgment against Defendants Ernst & Young and CSFB for aiding and abetting breach of fiduciary duty.

## PLAINTIFF CLASS ACTIONS PREREQUISITES

134.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-133 above.

135.    Plaintiffs bring this suit on behalf of themselves and as representative of a class pursuant to New York Law. Specifically, the Court should enter an order certifying the following Plaintiff Class:

The Plaintiff Class is defined as: All persons who were exposed to, inhaled, ingested or otherwise absorbed asbestos or asbestos containing products in the course of their employment, during non-occupational work projects (including but not limited to, home and automotive repairs, maintenance and remodeling) and/or in other ways, which were manufactured, sold, distributed or installed directly or indirectly by ASARCO, Inc. and have or will contract asbestos related diseases. All members of the Plaintiff Class are unsecured creditors of ASARCO.

entitled to judgment against the Defendants and Defendant Class who through negligent and intentional acts, fraudulently conveyed and/or facilitated the conveyance of ASARCO's principal assets which should rightfully be available to compensate the Plaintiff Class for injuries arising from ASARCO's tortious conduct.

136.    The Plaintiff Class meets the following prerequisites for maintenance of a class action:

    (a)    **Numerosity.**

The members of the Plaintiff Class are so numerous that joinder of all members is impractical. While Plaintiffs are unable to state the exact number of members of the Plaintiff Class without discovery, Plaintiffs estimate the number of members in the Plaintiff Class to be in the tens of thousands.

    (b)    **Commonality**

There are questions of law and/or fact common to the Plaintiff Class:

    (1)    Whether ASARCO was insolvent or rendered insolvent as a result of the leveraged buyout of ASARCO by GRUPO MEXICO

    (2)    Whether ASARCO received less than fair and adequate consideration for the sale of its principal assets.

    (3)    Whether the transfer of ASARCO's assets at a time when ASARCO was insolvent constitutes intentional and/or constructive fraud

    (c)    **Typicality**

The claims of Plaintiffs are typical of claims Plaintiffs represent. Plaintiffs

29

all have claims have all been injured as a direct result of the intentional and negligent actions of ASARCO. As unsecured creditors of ASARCO, Plaintiffs all have claims against the Defendant and members of the Defendant Class for fraudulent conveyance and/or negligence. Plaintiffs' claims have the same essential characteristics as the claims of the Plaintiff Class as a whole, arise out of the same practices of Defendant and the Defendant Class, and are based upon identical legal theories. All members of the Plaintiff Class have suffered the same injury and possess the same interests as their Plaintiff Class Representatives.

(d)    Adequacy

Plaintiffs, as representative parties, are capable of and will fairly and adequately protect the interests of the Plaintiff Class, and they have no conflicts of interests with the members of the Plaintiff Class. The attorneys representing the Plaintiff Class Representatives are qualified, experienced and able class counsel.

137.    The proposed Plaintiff Class is maintainable for the following reasons:

(a)    Predominance and Superiority.

The Plaintiff Class is maintainable because common questions of law and/or fact predominate over any questions affecting only individual members, making a class superior to all other methods available for the fair and efficient adjudication of this controversy.

(b)    Inconsistent and Varying Adjudications

30

The Plaintiff Class is maintainable because prosecution of separate actions
by Plaintiff Class members would create a risk of inconsistent or varying
adjudications with respect to individual members of the Plaintiff Class,
and this would establish incompatible standards of conduct for the parties
opposing the Plaintiff Class.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request this Court:

(1)    Award actual monetary damages, attorney's fees and costs against defendants.

(2)    Award punitive damages against these defendants who have engaged in actual
       fraud as to the Debts owed plaintiffs in an amount not less than three times actual
       damages.

(3)    Set aside or annul the conveyances described herein as fraudulent to the extent
       necessary to satisfy plaintiffs' claims, authorize attachment or levy of execution
       upon the property wrongfully conveyed,  place ASARCO's wrongly conveyed
       assets in trust and/or appoint a receiver to hold and manage those assets of
       ASARCO for payment of creditor claims.

(4)    And/or make any order which the circumstances of the case may require.

31

Respectfully submitted,

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
120 Wall Street-15th Floor
New York, NY 10038
(212) 558-5900
FAX (212) 363-6838

By: _____
Gary Klein

**BARON & BUDD**
**A PROFESSIONAL CORPORATION**
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
FAX: (214) 520-1181

32

## ATTORNEY VERIFICATION

GARY KLEIN, hereby affirms that the following is true, under penalties of perjury:

I am an associate of the firm of WEITZ & LUXENBERG, P.C., attorneys for the plaintiff(s) in the within action; I have read the foregoing Summons and Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.  The reason this verification is made by your affiant and not by the plaintiff is that the plaintiff herein resides in a County other than the one in which WEITZ & LUXENBERG, P.C. maintains its offices.

The grounds of my belief as to all matters not stated upon my own knowledge are the contents of our office file.

Dated:    New York, New York
          February 17, 2005

                                   Gary Klein, ESQ.

# EXHIBIT 16

# TO

# EXHIBIT 4

## FILED UNDER SEAL

# EXHIBIT 17
# TO
# EXHIBIT 4



Home | EDGAR Search Home | Latest Filings | Previous.Page

## U.S. Securities and Exchange Commission

### GRUPO MEXICO SA DE CV /FI (0001042701)

State location: O5

**Business Address**
BAJA CALIFORNIA NO 200
ROMA SUR
MEXICO CITY MEXICO O5 06760 DF

011525652640036

**Mailing Address**
BAJA CALIFORNIA 200
MEXICO CITY MEXICO O5 06760

To limit filing results, enter
form type or date (as 2002/05/23).

Form Type [        ]

Prior to [        ]

Ownership? ⊙ Include ○ Exclude ○ Only

[40 Entries ▾]   [ Retrieve Selected Filings ]

#### Key to Descriptions

**[Paper]** Paper filings are available by film number from the SEC Public Reference Room.

**[Cover]** Filing contains an SEC-released cover letter or correspondence.

[ Retrieve All Filings ]

Items 1 - 33

| Form | Formats | Description | Filing Date | File/Film·No |
|---|---|---|---|---|
| SC 13D/A | [html][text] 112 KB | [Amend]General statement of acquisition of beneficial ownership<br>Acc-no: 0001104659-05-024943 | 2005-05-23 | |
| 4 | [html][text] 14 KB | Statement of changes in beneficial ownership of securities<br>Acc-no: 0001104659-05-024940 (34 Act) | 2005-05-23 | 001-14066<br>05850396 |
| 4 | [html][text] 9 KB | Statement of changes in beneficial ownership of securities<br>Acc-no: 0001104659-05-015239 (34 Act) | 2005-04-05 | 001-14066<br>05735577 |
| SC 13D | [html][text] 173 KB | General statement of acquisition of beneficial ownership<br>Acc-no: 0001104659-04-040989 | 2004-12-23 | |
| SC 13D/A | [html][text] 165 KB | [Amend]General statement of acquisition of beneficial ownership<br>Acc-no: 0001104659-04-033499 | 2004-11-04 | |
| SC 13D/A | [html][text] 198 KB | [Amend]General statement of acquisition of beneficial ownership<br>Acc-no: 0001104659-04-031679 | 2004-10-25 | |
| SC 13D | [html][text] 51 KB | General statement of acquisition of beneficial ownership<br>Acc-no: 0000905148-04-000626 | 2004-02-04 | |
| 4 | [html][text] 13 KB | Statement of changes in beneficial ownership of securities<br>Acc-no: 0000905148-03-004252 | 2003-12-10 | 001-14066<br>031047743 |
| 4 | [html][text] 15 KB | Statement of changes in beneficial ownership of securities<br>Acc-no: 0000905148-03-004230 | 2003-12-09 | 001-14066<br>031044593 |
| SUPPL | [html][text] 1 KB | [Paper]Voluntary Supplemental Material by Foreign Issuers [Section 11(a)]<br>Acc-no: 9999999997-03-043852 | 2003-12-01 | 082-04582<br>03037816 |
| SUPPL | [html][text] 1 KB | [Paper]Voluntary Supplemental Material by Foreign Issuers [Section 11(a)]<br>Acc-no: 9999999997-03-034169 | 2003-08-29 | 082-04582<br>03029685 |
| ARS | [html][text] 1 KB | [Paper]Annual Report to Security Holders<br>Acc-no: 9999999997-03-032238 | 2003-08-12 | 082-04582<br>03029210 |
| 4 | [html][text] 18 KB | Statement of changes in beneficial ownership of securities<br>Acc-no: 0000905148-03-002550 | 2003-07-11 | 001-14066<br>03783337 |
| 4 | [html][text] 23 KB | Statement of changes in beneficial ownership of securities<br>Acc-no: 0000905148-03-002533 | 2003-07-10 | 001-14066<br>03781961 |
| 4 | [html][text] 20 KB | Statement of changes in beneficial ownership of securities<br>Acc-no: 0000905148-03-002511 | 2003-07-09 | 001-14066<br>03779698 |
| 4 | [html][text] 14 KB | Statement of changes in beneficial ownership of securities<br>Acc-no: 0000905148-03-002490 | 2003-07-07 | 001-14066<br>03777419 |
| SUPPL | [html][text] 1 KB | [Paper]Voluntary Supplemental Material by Foreign Issuers [Section 11(a)]<br>Acc-no: 9999999997-03-024720 | 2003-06-03 | 082-04582<br>03022469 |
| SUPPL | [html][text] 1 KB | [Paper]Voluntary Supplemental Material by Foreign Issuers [Section 11(a)]<br>Acc-no: 9999999997-03-027553 | 2003-05-27 | 082-04582<br>03024165 |
| SUPPL | [html][text] 1 KB | [Paper]Voluntary Supplemental Material by Foreign Issuers [Section 11(a)] | 2002-11-29 | 082-04582 |

| | | | | | |
|---|---|---|---|---|---|
| | | | Acc-no: 9999999997-02-059750 | | 02060176 |
| SUPPL | [html][text] | 1 KB | **[Paper]**Voluntary Supplemental Material by Foreign Issuers [Section 11(a)]<br>Acc-no: 9999999997-02-051023 | 2002-09-03 | 082-04582<br>02049877 |
| SUPPL | [html][text] | 1 KB | **[Paper]**Voluntary Supplemental Material by Foreign Issuers [Section 11(a)]<br>Acc-no: 9999999997-02-031664 | 2002-05-23 | 082-04582<br>02034407 |
| SC 14D1/A | [html][text] | 26 KB | **[Amend]**Tender offer statement.<br>Acc-no: 0000912057-99-006140 | 1999-11-15 | |
| SC 14D1/A | [html][text] | 22 KB | **[Amend]**Tender offer statement.<br>Acc-no: 0000912057-99-005415 | 1999-11-12 | |
| SC 14D1/A | [html][text] | 19 KB | **[Amend]**Tender offer statement.<br>Acc-no: 0000912057-99-004460 | 1999-11-10 | |
| SC 14D1/A | [html][text] | 306 KB | **[Amend]**Tender offer statement.<br>Acc-no: 0000912057-99-002275 | 1999-10-27 | |
| SC 14D1/A | [html][text] | 193 KB | **[Amend]**Tender offer statement.<br>Acc-no: 0000912057-99-002088 | 1999-10-25 | |
| SC 14D1/A | [html][text] | 137 KB | **[Amend]**Tender offer statement.<br>Acc-no: 0000912057-99-001472 | 1999-10-18 | |
| SC 14D1/A | [html][text] | 292 KB | **[Amend]**Tender offer statement.<br>Acc-no: 0001047469-99-038151 | 1999-10-08 | |
| SC 13D/A | [html][text] | 19 KB | **[Amend]**General statement of acquisition of beneficial ownership<br>Acc-no: 0001047469-99-036905 | 1999-09-27 | |
| SC 14D1 | [html][text] | 952 KB | Tender offer statement.<br>Acc-no: 0001047469-99-036906 | 1999-09-27 | |
| SC 13D/A | [html][text] | 14 KB | **[Amend]**General statement of acquisition of beneficial ownership<br>Acc-no: 0000903423-98-000272 | 1998-07-31 | |
| SC 13D/A | [html][text] | 12 KB | **[Amend]**General statement of acquisition of beneficial ownership<br>Acc-no: 0000903423-98-000020 | 1998-01-26 | |
| SC 13D | [html][text] | 27 KB | General statement of acquisition of beneficial ownership<br>Acc-no: 0000903423-97-000241 | 1997-12-29 | |

*http://www.sec.gov/cgi-bin/browse-edgar*

# EXHIBIT 18

# TO

# EXHIBIT 4

## FILED UNDER SEAL