# EXHIBIT 19
# TO
# EXHIBIT 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WESTDEUTSCHE LANDESBANK GIROZENTRALE,  :    Index No.

                Plaintiff,          :

                            :    IAS Part ___

        - against -           :

                            :    **ATTORNEY'S STATEMENT**
ASARCO INCORPORATED and       :    **IN SUPPORT OF SUMMARY**
GRUPO MEXICO, S.A. DE C.V.,     :    **JUDGMENT MOTION IN**
                            :    **LIEU OF COMPLAINT**

               Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL T. SULLIVAN, pursuant to CPLR § 2106, affirms:

1.      I am an attorney and a member of the law firm Sullivan & Worcester, LLP, attorneys for plaintiff Westdeutsche Landesbank Girozentrale ("WestLB"). I make this statement in support of the application of plaintiff WestLB's Summary Judgment Motion In Lieu of Complaint pursuant to CPLR § 3213.

2.      The facts and circumstances of this action are set forth in the accompanying affidavit of Donald E. Asadorian, sworn to on February 19, 2002 (the "Asadorian Affidavit"). For the court's convenience, they are summarized below.

3.      In this action WestLB seeks recovery based upon a dishonored $5,000,000.00 promissory note (the "Note") made by defendant Asarco Incorporated ("Asarco") and guaranteed "per aval" by defendant Grupo Mexico, S.A. de C.V. ("Grupo Mexico"). A copy of the Note is attached as Exhibit A. Because there are no triable issues of fact as to the defendants' indebtedness to WestLB, WestLB is entitled to summary judgment pursuant to CPLR § 3213.

4.    On or about August 7, 2001, Asarco issued, and Grupo Mexico guaranteed, the Note. See Asadorian Affidavit at ¶¶ 7-8.

5.    The Note obligated the defendants to make repayment to WestLB at Chase Manhattan Bank (now J.P.Morgan Chase), in New York City on November 1, 2001.

6.    Defendants, however, despite due demand, refused to make payment. Id. at ¶¶ 13-14. (Subsequently, on January 16, 2002, defendants made a partial payment of $1,000,000.00.)

7.    CPLR § 3213 provides in relevant part that "[w]hen an action is based upon an instrument for the payment of money only . . . the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint."

8.    It is well settled that a plaintiff establishes a prima facie case of entitlement to summary judgment in lieu of complaint by producing an executed instrument for the payment of money only and proof that the defendant has failed to make the payments called for thereunder. SCP (Bermuda) Inc. v. Bermudatel Ltd., 224 A.D.2d 214, 216, 638 N.Y.S.2d 2, 3 (1st Dep't 1996); Generale Bank, N.Y. Branch v. Nagaraj, 193 A.D.2d 376, 377, 597 N.Y.S.2d 56, 57 (1st Dep't 1993); Berlind v. Heinfling, 176 A.D.2d 452, 453, 574 N.Y.S.2d 354, 355 (1st Dep't 1991)(citing Seaman-Andwall Corp. v. Wright Mach. Corp., 31 A.D.2d 136, 137, 295 N.Y.S.2d 752, aff'd, 29 N.Y.2d 617, 324 N.Y.S.2d 410 (1971)); see also Maglich v. Saxe, Bacon & Bolan, P.C., 97 A.D.2d 19, 468 N.Y.S.2d 618 (1st Dep't 1983).

9.    An instrument for the payment of money only has been defined as an unconditional promise to pay a sum certain, due on demand or at a definite time. Machideira,

2

Inc. v. Toms, 285 A.D.2d 418, 685 N.Y.S.2d 719 (1st Dep't 1999); First Interstate Credit Alliance, Inc. v. Sokol, 179 A.D.2d 583, 579 N.Y.S.2d 653 (1st Dep't 1992); J. Weinstein, H. Korn, & A. Miller, N.Y. Civ. Prac. ¶ 3213.04, at 253).  The prototypical example of an instrument for the payment of money only is "some variety of commercial paper in which the party to be charged has formally and explicitly acknowledged an indebtedness."  Interman Indus. Prods. v. RSM Electron Power, Inc., 37 N.Y.2d 151, 154, 371 N.Y.S.2d 675, 678 (1975).

10.    Once the plaintiff has established its prima facie case, the defendant is "required to come forward with proof showing the existence of a triable issue of fact with respect to a bona fide defense."  Bank Leumi Trust Co. of New York v. Rattet & Liebman, 182 A.D.2d 541, 542, 582 N.Y.S.2d 707, 708 (1st Dep't 1992).  Such proof must, of course, be in the form of admissible evidence.  See SCP (Bermuda) Inc., 224 A.D.2d at 216, 638 N.Y.S.2d at 3 ("[o]nce plaintiff has met its burden, it is incumbent upon defendant to establish, by admissible evidence, that a triable issue of fact exists");  see also Gross v. Fruchter, 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (2d Dep't 1996)("defendant's allegation that there was an oral agreement that he would not have to repay the note is barred by the parole evidence rule").

11.    Neither defendant in this case appears able to offer a single colorable defense to its liability for payment under the Note.  Asarco as maker of the Note is, of course, liable. Further, Grupo Mexico, by reason of its aval, is also liable.  See, e.g., A.I. Trade Finance Inc. v. Petra Bank, 989 F.2d 76 (2d Cir. 1993) (an aval is an unconditional guaranty).

3

12.    WestLB has produced a Note executed by both defendants for $5,000,000. The Note is a written instrument evidencing an unconditional obligation to pay a sum certain at a fixed time. The defendants have failed to make the payment due on November 1, 2001 despite their unconditional obligation and demands for the full payment. Accordingly, the defendants have defaulted on their payment due under the Note. Therefore, WestLB has established a prima facie case for summary judgment under CPLR § 3213. Because there are no triable issues of fact as to these matters and because the defendants have no defenses with respect to the Note, summary judgment should be granted to the plaintiff.

13.    There has been no prior application by plaintiff for the relief sought herein.

Dated:  New York, New York
        February 19, 2002

_____
MICHAEL T. SULLIVAN

W:\WestLB\001 - Grupo Medico & Asarco\Pldg_MTS Atty Statement re SJ_mts_V1.doc

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------x

WESTDEUTSCHE LANDESBANK GIROZENTRALE,

Plaintiff,

- against -

ASARCO INCORPORATED and
GRUPO MEXICO, S.A. DE C.V.,

Defendants.

-------------------------------------------------x

Index No.

IAS Part ____ ..

**ATTORNEY'S STATEMENT
IN SUPPORT OF SUMMARY
JUDGMENT MOTION IN
LIEU OF COMPLAINT**

MICHAEL T. SULLIVAN, pursuant to CPLR § 2106, affirms:

1.    I am an attorney and a member of the law firm Sullivan & Worcester, LLP, attorneys for plaintiff Westdeutsche Landesbank Girozentrale ("WestLB"). I make this statement in support of the application of plaintiff WestLB's Summary Judgment Motion In Lieu of Complaint pursuant to CPLR § 3213.

2.    The facts and circumstances of this action are set forth in the accompanying affidavit of Donald E. Asadorian, sworn to on February 19, 2002 (the "Asadorian Affidavit"). For the court's convenience, they are summarized below.

3.    In this action WestLB seeks recovery based upon a dishonored $5,000,000.00 promissory note (the "Note") made by defendant Asarco Incorporated ("Asarco") and guaranteed "per aval" by defendant Grupo Mexico, S.A. de C.V. ("Grupo Mexico"). A copy of the Note is attached as Exhibit A. Because there are no triable issues of fact as to the defendants' indebtedness to WestLB, WestLB is entitled to summary judgment pursuant to CPLR § 3213.

4.    On or about August 7, 2001, Asarco issued, and Grupo Mexico guaranteed, the Note. See Asadorian Affidavit at ¶¶ 7-8.

5.    The Note obligated the defendants to make repayment to WestLB at Chase Manhattan Bank (now J.P.Morgan Chase), in New York City on November 1, 2001.

6.    Defendants, however, despite due demand, refused to make payment. Id. at ¶¶ 13-14. (Subsequently, on January 16, 2002, defendants made a partial payment of $1,000,000.00.)

7.    CPLR § 3213 provides in relevant part that "[w]hen an action is based upon an instrument for the payment of money only . . . the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint."

8.    It is well settled that a plaintiff establishes a prima facie case of entitlement to summary judgment in lieu of complaint by producing an executed instrument for the payment of money only and proof that the defendant has failed to make the payments called for thereunder. SCP (Bermuda) Inc. v. Bermudatel Ltd., 224 A.D.2d 214, 216, 638 N.Y.S.2d 2, 3 (1st Dep't 1996); Generale Bank, N.Y. Branch v. Nagaraj, 193 A.D.2d 376, 377, 597 N.Y.S.2d 56, 57 (1st Dep't 1993); Berlind v. Heinfling, 176 A.D.2d 452, 453, 574 N.Y.S.2d 354, 355 (1st Dep't 1991)(citing Seaman-Andwall Corp. v. Wright Mach. Corp., 31 A.D.2d 136, 137, 295 N.Y.S.2d 752, aff'd, 29 N.Y.2d 617, 324 N.Y.S.2d 410 (1971)); see also Maglich v. Saxe, Bacon & Bolan, P.C., 97 A.D.2d 19, 468 N.Y.S.2d 618 (1st Dep't 1983).

9.    An instrument for the payment of money only has been defined as an unconditional promise to pay a sum certain, due on demand or at a definite time. Machideira,

Inc. v. Toms, 285 A.D.2d 418, 685 N.Y.S.2d 719 (1st Dep't 1999); First Interstate Credit Alliance, Inc. v. Sokol, 179 A.D.2d 583, 579 N.Y.S.2d 653 (1st Dep't 1992); J. Weinstein, H. Korn, & A. Miller, N.Y. Civ. Prac. ¶ 3213.04, at 253). The prototypical example of an instrument for the payment of money only is "some variety of commercial paper in which the party to be charged has formally and explicitly acknowledged an indebtedness." Interman Indus. Prods. v. RSM Electron Power, Inc., 37 N.Y.2d 151, 154, 371 N.Y.S.2d 675, 678 (1975).

10.    Once the plaintiff has established its prima facie case, the defendant is "required to come forward with proof showing the existence of a triable issue of fact with respect to a bona fide defense." Bank Leumi Trust Co. of New York v. Rattet & Liebman, 182 A.D.2d 541, 542, 582 N.Y.S.2d 707, 708 (1st Dep't 1992). Such proof must, of course, be in the form of admissible evidence. See SCP (Bermuda) Inc., 224 A.D.2d at 216, 638 N.Y.S.2d at 3 ("[o]nce plaintiff has met its burden, it is incumbent upon defendant to establish, by admissible evidence, that a triable issue of fact exists"); see also Gross v. Fruchter, 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (2d Dep't 1996)("defendant's allegation that there was an oral agreement that he would not have to repay the note is barred by the parole evidence rule").

11.    Neither defendant in this case appears able to offer a single colorable defense to its liability for payment under the Note. Asarco as maker of the Note is, of course, liable. Further, Grupo Mexico, by reason of its aval, is also liable. See, e.g., A.I. Trade Finance Inc. v. Petra Bank, 989 F.2d 76 (2d Cir. 1993) (an aval is an unconditional guaranty).

12.    WestLB has produced a Note executed by both defendants for $5,000,000. The Note is a written instrument evidencing an unconditional obligation to pay a sum certain at a fixed time. The defendants have failed to make the payment due on November 1, 2001 despite their unconditional obligation and demands for the full payment. Accordingly, the defendants have defaulted on their payment due under the Note. Therefore, WestLB has established a prima facie case for summary judgment under CPLR § 3213. Because there are no triable issues of fact as to these matters and because the defendants have no defenses with respect to the Note, summary judgment should be granted to the plaintiff.

13.    There has been no prior application by plaintiff for the relief sought herein.

Dated:  New York, New York
        February 19, 2002


                                        _____
                                        MICHAEL T. SULLIVAN

4

W:\West\...Grupo Mexico & Asarco\Pldg_MTS Affy Statement re SJ_msa_V1.doc

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------x
                                                :
WESTDEUTSCHE LANDESBANK GIROZENTRALE,           :        Index No.
                                                :
                         Plaintiff,             :        IAS Part ____
                                                :
            - against -                         :        **AFFIDAVIT OF DONALD E.**
                                                :        **ASADORIAN IN SUPPORT**
ASARCO INCORPORATED and                         :        **OF MOTION FOR A**
GRUPO MEXICO, S.A. DE C.V.,                      :        **SUMMARY JUDGMENT IN**
                                                :        **LIEU OF COMPLAINT**
                         Defendants.            :
                                                :
------------------------------------------------x

STATE OF NEW YORK    )
                     : SS.:
COUNTY OF NEW YORK   )

        DONALD E. ASADORIAN, being duly sworn, says:

        1.      I am the Director and Head of the Americas – Forfaiting of plaintiff Westdeutsche

Landesbank Girozentrale ("WestLB"). I submit this affidavit in support of WestLB's motion for

summary judgment against defendants Asarco Incorporated ("Asarco") and Grupo Mexico, S.A.

de C.V. ("Grupo Mexico"). I make this affidavit based on personal knowledge or upon a review

of books and records in my possession or subject to my control.

        2.      In this proceeding, WestLB seeks to recover $4,000,000.00 based upon a

dishonored promissory note (the "Note") made to Asarco and guaranteed by Grupo Mexico. A

copy of the Note is attached as Exhibit A.

3.      WestLB is a banking corporation organized pursuant to the laws of the Republic of Germany. In the United States, WestLB operates through a branch licensed and supervised by New York's Department of Banking.

4.      Upon information and belief, defendant Grupo Mexico is a corporation organized pursuant to the laws of the Republic of Mexico, with its principal place of business in Mexico City, Mexico. Upon information and belief, Grupo Mexico does not have an office, nor is it authorized to do business, in the State of New York.

5.      Upon information and belief, defendant Asarco is a corporation organized pursuant to the laws of the State of New Jersey, with an office located at 712 Fifth Avenue, New York, New York. Upon information and belief, Asarco is a producer of non-ferrous metals, specialty chemicals and aggregates.

6.      The Note at issue arises from a "forfaiting" transaction, a form of trade finance usually involving the cross-border sales of goods, the payment obligation for which is often reflected in a promissory note issued by the purchaser to the seller's order. In a typical forfaiting transaction, the note bears the guaranty of another, either a bank or an established corporation. Typically, the note is sold to a bank or trade finance specialist promptly after the underlying commercial transaction has been completed, i.e., after the goods have been shipped to the purchaser. The purchaser of the note then collects note's proceeds at maturity.

7.      On or about August 7, 2001 defendant Asarco executed the $5,000,000.00 Note, payable to the order of WestLB's customer, non-party Trafigura AG ("Trafigura"). By its terms, the Note matured and was payable on November 1, 2001. Upon information and belief, the Note relates to Asarco's purchase of copper from Trafigura.

8.    Contemporaneously, defendant Grupo Mexico guaranteed the payment of the Note by affixing its "aval" to the Note itself. As explained in the attorney's statement of Michael T. Sullivan, submitted in support of WestLB's application for a temporary restraining order, an aval is a form of guaranty often used in forfaiting.

9.    The Note, by its terms, was payable on November 1, 2001, at Chase Manhattan Bank (now JPMorgan Chase Bank), at 1 Chase Manhattan Plaza, 270 Park Avenue, New York, New York, 10017 ("Chase").

10.    Trafigura, for value, indorsed and transferred the Note to WestLB in August 2001. (See Exhibit B).

11.    WestLB is a holder in due course of the Note.

12.    Pursuant to the terms of the Note, WestLB demanded payment at Chase on or after November 1, 2001.

13.    The Note was dishonored (See promissory note return advice and letter of protest at Exhibit C).

14.    On or about January 16, 2002, Grupo Mexico and/or Asarco made a partial payment of $1,000,000.00 but have otherwise failed to make payment, despite demand and despite subsequent promises.

15.    As a result of the defendants' default on the Note, WestLB has suffered damages in an amount not less than $4,000,000.00 plus costs and interest.

16.     For the foregoing reasons, I respectfully request that the Court grant WestLB's application for summary judgment .

_____
DONALD E. ASADORIAN

Sworn to before me this
19th day of February, 2002

_____
Notary Public

ANNE M. HOF
Notary Public, State of New York
No. 01HO5017541
Qualified in Queens County
My Commission Expires December 14, 2002

4

08/07/01  TUE 18:05 FAX 212 510 1978        ASARCO EXPLORATION DEPT.                    ☒003

②

NEW YORK, NY                    August 7, 2001                      USD $      5,000,000.00
                                                                            (currency and amount in figures)

ATCN:                           1-Nov-01 for value received, I promise to pay against this        PROMISSORY NOTE
                                (date of maturity)

to the order of                 TRAFIGURA AG
                                (exporter)

the sum of                      Five million and zero one-hundredths
                                (currency)

effective payment to be made in  US DOLLARS
                                (currency)
                                in

without deduction for and free of any with holding taxes, impost, levies or stamp duties, collection fees or any other charges, present or future of any nature

The PROMISSORY NOTE is payable at    CHASE MANHATTAN BANK, 1 CHASE MANHATTAN PLAZA 270 PARK AVENUE NEW YORK, NY, 1041

debtors full name and address:
ASARCO INCORPORATED
712 5TH AVENUE
NEW YORK 10019

                                                    MR. DANIEL TELLECHEA
                                                    ASARCO INCORPORATED

                                            PER AVAL

                                                    MR. GERARDO LAPENIA / MR. DANIEL TELLECHEA
                                                    FOR AND ON BEHALF OF GRUPO MEXICO, SA DE CN.

to the order of
Westdeutsche Landesbank
Girozentrale
London Branch

TRAFIGURA A.G.



## Facsimile

| | |
|---|---|
| To: | Marie-Therese Meyer |
| Company: | TRAFIGURA AG |
| Fax No: | 00 41 41 419 4344 |
| Copies: | WestLB, Mexico |
| Date: | 24 August, 2001 |

This facsimile transmission is intended only for use of the addressee named above. If you are not the intended recipient please inform us by telephone or fax. We apologise for any inconvenience that may have been caused to you.

| | |
|---|---|
| From: | WestLB International Trade and Commodity Finance |
| Direct Tel: | 44 20 7220 8436 |
| Direct Fax: | 44 20 7283 2193 |
| Ref.: | L 7027(LN) |

Total No. of Pages
Inc. Cover Sheet:  2

**Re: Without Recourse Financing  - Mexico. US$ 5,000,000.00 evidenced by a Promissory Note issued by Asarco Inc. and Guaranteed per aval by Grupo Mexico S.A. de C.V. Due date 1st November, 2001.**

We acknowledge receipt of your letter dated 14th instant with which you enclosed documents in connection with our purchase of the above referenced transaction.

Accordingly, value 28th August, 2001, we shall remit the sum of US$ 4,954,843.82 to your account TRAFAGUSD (in TVS LON) with WestLB, Moorgate, London.   This amount represents proceeds at a discount to yield rate of 5.0475% p.a. being LIBOR of 3.5475% p.a. plus the agreed margin of 1.5% p.a.

We attach a copy of our calculation for your file and are pleased to have concluded this further transaction with you.

Best Regards

J.K. Gray
Director

S.A. McGoldrick
Associate Director

Westdeutsche Landesbank
Girozentrale
London Branch
Reply to:
33/36 Gracechurch Street
London EC3V 0AX

Tel:  +44 (0)20 7623 8711
Fax:  +44 (0)20 7626 1610
Telex: 884699
www.westlb.com

Branch registered in England
No. 5R001699
51 Moorgate
London EC2R 6AE

Incorporated in the
Federal Republic of Germany
Regulated by SFA for the
conduct of investment
business in the UK

WestLB
Date Printed : 24-Aug-2001 11:39

## DRAWDOWN VALUATION REPORT Ref : L070z7LN (Drawdown - 1)

| | |
|---|---|
| Guarantor | GRUPO MEXICO SA DE C.V. |
| Importer | Asarco |
| Number of Notes | 1      (1 - Remaining) |
| Currency | USD |
| Commitment Date | 22/08/2001 |
| Notes Available on | 28/08/2001 |
| Days of Grace | 0 |
| Discount Rate % p.a. | 5.047500  %p.a.   Straight Yield |
| Method of Interest Calculation | 365/360 |

### PURCHASE DETAILS

| NOTE | MATURITY -d | DAYS | FACE VALUE | DISCOUNT | NET VALUE |
|---|---|---|---|---|---|
| 1 | 01/11/2001 | 65 | 5,000,000.00 | 45,156.18 | 4,954,843.82 |
| | | | 5,000,000.00 | 45,156.18 | 4,954,843.82 |

FEB-15-2002  13:36        WLB NY FORFAITING                      212 403 3985    P.02

**◆ JPMorgan**

DRAFT NOV 16,2001 05:19 PM

**JPMORGAN CHASE BANK**
Global Trade Services
c/o JPMorgan Treasury Services
10420 Highland Manor Drive - 5th Fl
Tampa, Florida 33610
(866) 632-5101 (Option# 4)
SWIFT : CHASUS33



PROMISSORY NOTE RETURN ADVICE

Date: Nov 16, 2001

WESTDEUTSCHE LANDESBANK GIROZENTRAL
LONDON BRANCH, WOOLGATE EXCHANGE
25 BASINGHALL ST
LONDON EC2V 5HA, ENGLAND.

JPMorgan Chase Bank is returning to you the below Documentary Collection
transaction.

Our Reference Number:Z-201093-NN
Your Reference Number:L7027

Reason for return:
AS PER YOUR SWIFT MESSAGE DATED 11 09.01 TO RETURN PROTESTED   NOTE
TO YOURSELVES.

Note Number:0
Letter Date:Oct 23, 2001
Due Date:Nov 1, 2001

Face Amount:USD  5,000,000.00
Drawn on:CHASE BRANCH 217
Drawn by:ASARCO INC

Provided below are details of our debit to your account in conjuction with
the return of your Documentary Collection
Correspondent Bank Charges:
Our Charges:Domiciliation Fee                    USD  300.00
            Promissory Note Return Fee           USD   40.00

Please send all replies to JPMorgan Chase Bank at the
above address quoting our reference number: Z-201093-NN

FEB-15-2002  13:37        WLB NY CORFAITING                        202 403 3985   P.03

## LETTER OF PROTEST



United States of America)
State of New York) SS:
County of Kings)

I, Carolyn Mcleod, a Notary Public of the State of New York, duly commissioned and sworn, do hereby certify that on November 20, 2001, at the request of Chase Manhattan Bank the promissory note which is hereto annexed in the amount of $ 5,000,000.00 dated August 7, 2001 due on November 1, 2001 was duly presented to Chase Manhattan Bank at 4 Chase Metro Tech Center, 8th Floor, Brooklyn, New York, 11245 being the place where the said promissory note is payable and payment thereof was then and there demanded and was refused for reason of "No Authority to Pay".

Whereupon, I, the said notary at the request aforesaid, in the Borough of Brooklyn, City of New York, did Protest and by these presents do publicly and solemnly Protest, as well against the Maker(s) and Endorsers of said instrument, as well as all others whom it doth of may concern, for exchange, re-exchange, and all costs, damages and interest already incurred, and to be hereafter incurred for want of payment of the said INSTRUMENT.

And I do hereby further certify that on the 2oth. Day of November, 2001, due notice of the foregoing PROTEST was given to the Maker(s) and Endorsers thereon, in manner following wit: by depositing notices thereof, postage prepaid in the post office in the city, County and State of New York addressed to the following at the address set opposite their respective names, viz.:

ASARCO INCORPORATED        AS MAKER        712 5TH, AVENUE
                                          NEW YORK, NY  10019

GRUPO MEXICO, SA DE CV     AS ENDORSER     C/O ASARCO INC
                                          712 5th, AVE,
                                          NEW YORK, NY 10019

WESTDEUTSCHE LANDESBANK GIROZENTRALE       LONDON BRANCH
                                          WOOLGATE EXCHANGE
                                          25 BASINGHALL STREET
                                          LONDON EC2V 5HA

| | |
|---|---|
| Amount of Draft | USD5,000,000.00 |
| Amount of interest | USD-------0.00 |
| Protest Fee | USD-------50.00 |
| Collection Fee | USD-----340.00 |
| Postage | USD------- 3.00 |
| Total | USD5,000,393.00 |

Our Reference  Z-201093-NN
Their Reference  L7027

In Testimony Whereof, I have hereunto
set my hand and affixes my official seal
in the County of and State of New York
this 20th. Day of November, 2001

Notary Public  _[signature]_

CAROLYN A. McLEOD
Notary Public  State of N.Y.
No. 24-4010778
Qualified in Kings Co.
Comm. Expires Nov. 9, 2001

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WESTDEUTSCHE LANDESBANK GIROZENTRALE,     :     Index No. 600673

                              Plaintiff,     :     IAS Part 2

             - against -     :     **ATTORNEY'S STATEMENT
                              IN SUPPORT OF
ASARCO INCORPORATED and     :     APPLICATION FOR AN
GRUPO MEXICO, S.A. DE C.V.,     :     ORDER OF ATTACHMENT
                                   WITH TEMPORARY
                              Defendants.     :     RESTRAINING ORDER**
                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF NEW YORK      )

        MICHAEL T. SULLIVAN, pursuant to CPLR § 2106, affirms:

        1.      I am an attorney and a member of the law firm Sullivan & Worcester, LLP,

attorneys for plaintiff Westdeutsche Landesbank Girozentrale ("WestLB"). I make this

statement in support of the application of WestLB for a prejudgment order of attachment against

the assets of defendant Grupo Mexico, S.A. de C.V. ("Grupo Mexico") based upon CPLR

§ 6201(1). In addition, I make this statement in support of WestLB's application for an interim

temporary restraining order pending hearing and determination of the attachment application,

pursuant to CPLR § 6210.

        2.      The underlying facts are set out in the accompanying affidavit of Donald E.

Asadorian sworn to on February 19, 2002 (the "Asadorian Aff."). For the court's convenience,

they are summarized below.

3.      This action is based upon a dishonored $5,000,000.00 promissory note (the "Note"), made by defendant Asarco Incorporated ("Asarco") and guaranteed by defendant Grupo Mexico. A copy of the Note is annexed as Exhibit B. The application for an order of attachment is based upon Grupo Mexico's status as a non-domicilliary, non resident of New York. See CPLR § 6201.

4.      As demonstrated in the accompanying affidavit of Donald E. Asadorian, a WestLB officer, WestLB is a holder in due course of the relevant Note which defendants dishonored after it was presented for payment at or after maturity at the designated venue for payment, Chase Manhattan Bank (now, J.P. Morgan Chase), in New York, New York.

5.      WestLB purchased the Note from its customer. Upon information and belief, WestLB's customer, a non party, sold goods to defendant Asarco Incorporated ("Asarco"). Asarco, in turn, issued the Note to WestLB's customer. WestLB's customer thereupon indorsed and transferred the Note to WestLB for value. The transaction concerned a form of trade finance commonly referred to as forfaiting. See, e.g., M Lütschg-Emmenegger, A Guide to Forfaiting (Euromoney Books, 1998); D.I. Guild, Forfaiting: An Alternative Approach to Export Trade Finance (Woodhead-Faulkner, 1985)

6.      Mr. Asadorian's affidavit also demonstrates that WestLB satisfies the requirements for a prejudgment attachment against Grupo Mexico. As Mr. Asadorian explains, Grupo Mexico, by its aval, guaranteed the prompt payment of the Note. As observed by a sister court, "The guaranty employed in a forfaiting transaction often consists of a two-word endorsement, 'per aval,' recorded on the note itself and followed by one or more authorized

2

signatures of the guarantor.... This endorsement is known as an 'aval.' As brief and cryptic as the aval may be, the customs and practices of the forfaiting industry make it a fully articulated contractual obligation." A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 78 (2d Cir. 1993).

7.     The Petra court determined that by affixing an aval on a note payable in New York, i.e., by guarantying payment of a note payable in New York, a party has contracted to provide services in New York and, therefore, is subject to New York personal jurisdiction. Id. at 81-82. Petra Bank has been cited with approval by courts of this State. See, e.g., State Bank of India v. TAJ Lanka Hotels Ltd., 259 A.D.2d 291, 686 N.Y.S.2d 44 (1st Dep't 1999).

8.     Further, as set forth in the accompanying attorney's statement submitted in support of WestLB's motion for summary judgment in lieu of complaint, there is little doubt that WestLB will prevail on the merits: The Note at issue has matured and has been dishonored.

9.     Plaintiff will submit an undertaking to secure this Order of Attachment as required by CPLR § 6212(b), within three days of the filing of these papers.

10.     There has been no prior application by plaintiff for the relief sought herein.

11.     There has been no prior application for any provisional remedy in this action.

12.     For the foregoing reasons, I respectfully request that plaintiff's application be granted in all respects.

Dated:  New York, New York
        February 19, 2002

MICHAEL T. SULLIVAN

3

W:\West.IB001 - Grupo Mexico & Acarel\Pldg_Sullivan Atty Statement re TRO_rnsc_V1.doc

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WESTDEUTSCHE LANDESBANK GIROZENTRALE,      :      Index No. 600673

                    Plaintiff,      :      IAS Part ___

          - against -      :      **AFFIDAVIT OF DONALD E.
                                          ASADORIAN IN SUPPORT
ASARCO INCORPORATED and      :      OF MOTION FOR AN
GRUPO MEXICO, S.A. DE C.V.,      :      ORDER OF ATTACHMENT
                                          AND TEMPORARY
                    Defendants.      :      RESTRAINING ORDER**
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK      )
                              : SS.:
COUNTY OF NEW YORK   )

          DONALD E. ASADORIAN, being duly sworn, says:

          1.      I am the Director and Head of the Americas – Forfaiting of plaintiff Westdeutsche

Landesbank Girozentrale ("WestLB"). I submit this affidavit in support of WestLB's application

for an Order of Attachment against the assets of defendant Grupo Mexico, S.A. de C.V. ("Grupo

Mexico") and for a temporary restraining order pending determination of that application. I

make this affidavit based on personal knowledge or upon a review of books and records in my

possession or subject to my control.

          2.      In this proceeding, WestLB seeks to recover $4,000,000.00 based upon a

dishonored promissory note (the "Note") made to Asarco Incorporated ("Asarco") and

guaranteed by Grupo Mexico. A copy of the Summons, Summary Judgment Motion In Lieu of

Complaint and supporting papers are collectively annexed as Exhibit A. A copy of the Note is separately attached as Exhibit B.

3.    As detailed in WestLB's summary judgment motion, WestLB is a banking corporation organized pursuant to the laws of the Republic of Germany. In the United States, WestLB operates through a branch licensed and supervised by New York's Department of Banking.

4.    Upon information and belief, defendant Grupo Mexico is a corporation organized pursuant to the laws of the Republic of Mexico, with its principal place of business in Mexico City, Mexico. Upon information and belief, Grupo Mexico does not have an office, nor is it authorized to do business, in the State of New York.

5.    Upon information and belief, defendant Asarco is a corporation organized pursuant to the laws of the State of New Jersey, with an office located at 712 Fifth Avenue, New York, New York. Upon information and belief, Asarco is a producer of non-ferrous metals, specialty chemicals and aggregates.

6.    The Note at issue arises from a "forfaiting" transaction, a form of trade finance usually involving the cross-border sales of goods, the payment obligation for which is often reflected in a promissory note issued by the purchaser to the seller's order. In a typical forfaiting transaction, the note, or other evidence of payment obligation, bears the guaranty of another, either a bank or established corporation. Typically, the note is sold to a bank or trade finance specialist. The purchaser of the note then collects its proceeds at maturity.

2

7.    On or about August 7, 2001 defendant Asarco executed the $5,000,000.00 Note, payable to the order of WestLB's customer, non-party Trafigura AG ("Trafigura"). By its terms, the Note matured and was payable on November 1, 2001. Upon information and belief, the Note relates to Asarco's purchase of copper from Trafigura.

8.    Contemporaneously, defendant Grupo Mexico guaranteed the payment of the Note by affixing its "aval" to the Note itself. As explained in the accompanying attorney's statement of Michael T. Sullivan, an aval is a form of guaranty often used in forfaiting.

9.    Trafigura, for value, indorsed and transferred the Note to WestLB in August 2001. (See Exhibit C).

10.    WestLB is a holder in due course of the Note.

11.    The Note, by its terms, was payable on November 1, 2001 at Chase Manhattan Bank (now JPMorgan Chase Bank), at 1 Chase Manhattan Plaza, 270 Park Avenue, New York, New York, 10017 ("Chase").

12.    Pursuant to the terms of the Note, WestLB demanded payment at Chase on or after November 1, 2001.

13.    The Note was dishonored. (See promissory note return advice and letter of protest at Exhibit D).

14.    Apart from a partial payment of $1,000,000.00 made on or about January 16, 2002, Grupo Mexico and Asarco have failed to make payment, despite demand and despite subsequent promises.

3

15.    I am unaware of any counterclaim that defendant Grupo Mexico may have against WestLB, whether in connection with the amount owed by Grupo Mexico to WestLB or otherwise.

16.    As a result of defendants' default on the Note, WestLB has suffered damages in an amount not less than $4,000,000.00 plus costs and interest.

17.    For the foregoing reasons, I respectfully request that WestLB's application for a Temporary Restraining Order and Order Of Attachment be granted in all respects.

_____
DONALD E. ASADORIAN

Sworn to before me this
19th day of February, 2002

_____
Notary Public

ANNE M. HOF
Notary Public, State of New York
No. 01HO6017541
Qualified in Queens County
My Commission Expires December 14, 2002

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

WESTDEUTSCHE LANDESBANK GIROZENTRALE,  :    Index No. -

                      Plaintiff,        :    IAS Part _*600673*

       - against -                   :

ASARCO INCORPORATED and           :    **AFFIDAVIT**
GRUPO MEXICO, S.A. DE C.V.,        :    **OF EMERGENCY**

                    Defendants.     :

                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK     )
                    ) ss.:
COUNTY OF NEW YORK  )

      MICHAEL T. SULLIVAN, pursuant to CPLR § 2106, affirms:

      1.     I am an attorney and a member of the law firm Sullivan & Worcester, LLP,

attorneys for plaintiff Westdeutsche Landesbank Girozentrale ("WestLB"). I make this

statement based upon personal knowledge, information and belief, and certify, upon knowledge,

that the following contentions are not frivolous pursuant to N.Y. Comp. Codes R. & Regs. tit. 22,

§ 130-1.1-a(a)-(b)

      2.     WestLB seeks an ex-parte temporary restraining order and expedited

consideration of this application because of a well-founded belief that defendant Grupo Mexico,

S.A. de C.V. ("Grupo Mexico") may remove from or encumber assets currently in New York:

Annexed as Exhibit E are news articles recently published describing Grupo Mexico's precarious

economic condition.

3.    Thus, with the passage of time and with advance notice to the defendants, WestLB's ability to satisfy the judgment it is likely to obtain becomes compromised.

Dated: New York, New York
       February 19, 2002

_____
MICHAEL T. SULLIVAN

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------X

WESTDEUTSCHE LANDESBANK GIROZENTRALE,    :
                                                             :
                                          Plaintiff,         : Index # 600673/02 (Gammerman)
                                                             : IAS Part 27
                                                             :
                                                             :
              against                                        : AFFIDAVIT IN
                                                             : OPPOSITION TO
ASARCO INCORPORATED and                                      : MOTION FOR AN
GRUPO MEXICO, S.A. DE C.V.,                                  : ORDER OF ATTACHMENT
                                                             :
                                          Defendants.        :
--------------------------------------------------------------X

FEDERAL DISTRICT OF MEXICO )
                                          ss.:
COUNTRY OF MEXICO          )

### AFFIDAVIT OF DANIEL TELLECHEA

DANIEL TELLECHEA being duly sworn, deposes and says:

1.  I am the Chief Financial Officer of defendant Grupo Mexico, S.A. de C.V ("Grupo Mexico") and I have held this position at Grupo Mexico and its predecessors since 1993. Although I also currently hold the titles of Executive Vice President and CFO of Grupo Mexico's wholly owned subsidiary, codefendant Asarco Incorporated ("Asarco") and I am a Director thereof, I submit this affidavit on behalf of Grupo Mexico in opposition to plaintiff's motion seeking an order of attachment against that entity.

2.  Grupo Mexico is a major international natural resources and transportation company located in Mexico at Baja California No. 200, Piso 6 Col. Roma Sur 06760 Mexico, D.F., MEXICO. Grupo Mexico ranks as the world's third largest copper producer, fourth largest producer of silver and fifth largest producer of zinc. Grupo Mexico ranks as the world's second largest company in

terms of known copper ore reserves. Grupo Mexico's assets at the end of 2001 totaled $7.0 billion and total liabilities amounted to $4.5 billion.

3. Asarco is the prime obligor on the instrument at issue in this litigation. Although Asarco has a limited presence in New York, and is authorized to, and does, conduct some business in New York, Grupo Mexico has no presence in New York and does not conduct business in New York.

4. Grupo Mexico has no offices in New York, no employees in New York and does not advertise here. The instrument at issue here was signed, per aval, on behalf of Grupo Mexico by me in Mexico, signatures pages were then sent, via private carrier, to Asarco in Arizona to be signed by Mr. Genaro Larrea, Vice President of Grupo Mexico. From Asarco in Arizona, the instrument was delivered to Trafigura AG in Connecticut.

5. Grupo Mexico has no assets in the State of New York, other than two bank accounts, one at JP Morgan Chase with a balance of $25,468.46, and the other at Banco Nacional de Mexico, S.A., with a balance of $0. These accounts have been inactive since receipt of notice of the Temporary Restraining Order ("TRO") issued against Grupo Mexico by the this Court. To explain, the Honorable Justice Herman Cahn issued a TRO enjoining Grupo Mexico from "transferring, selling, concealing, depositing or otherwise disposing of or interfering with any and all monies, property or other assets in the possession or custody of, in the name of, or belonging to Grupo Mexico up to the sum of $4,000,000.00." That TRO was faxed to Grupo Mexico's offices in Mexico after the close of business on February 20, 2002. I, as CFO, first became aware of the entry of this TRO shortly thereafter.

6. Except for occasional "channeling" transactions, Grupo Mexico's New York accounts have seen virtually no activity for several months. By "channeling" transactions, I mean that funds

2

have been wired into – and then immediately out of – these accounts. Generally, the balance remains the same, with money being transferred in and out of the account on the same day as needed. As noted, these accounts have been inactive since the close of business on February 20, 2002.

7.  Currently, Grupo Mexico is working closely with Asarco and its lenders in an effort to restructure not only its own, but also Asarco's, lines of credit and other working capital facilities.

8.  I take exception to the statement in Michael Sullivan's affidavit that Grupo Mexico "may remove from or encumber assets currently in New York." (Affidavit of Emergency of Michael T. Sullivan, Esq., dated February 19, 2002). As previously noted, Grupo Mexico has virtually no assets in New York ($25,000 represents .0004% of Grupo Mexico's assets as of the end of 2000), and will do nothing to remove or encumber these limited assets.

9.  An Order of Attachment against Grupo Mexico would complicate unnecessarily many of Grupo Mexico's obligations to lenders and financial institutions around the world. Since the requested order of attachment would pertain only to the assets of Grupo Mexico in New York, entry of such an order would not only largely be useless, but would constitute a draconian remedy with inherently unfair consequences to Grupo Mexico.

10.  To avoid this unjust and unfair result, Grupo Mexico requests that it be permitted to deposit all of its New York-based assets with the Clerk of Court.

Further affiant sayeth naught.

_____
Daniel Tellechea, CFO Grupo Mexico

Dated: March 14, 2002
      Mexico City, Mexico

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------X

WESTDEUTSCHE LANDESBANK GIROZENTRALE,     :

              Plaintiff,     :

                :

          against     : Index # 600673/02
                : (Gammerman, J.)
ASARCO INCORPORATED and     : IAS Part 27
GRUPO MEXICO, S.A. DE C.V.,     :

                :

           Defendants.     :

------------------------------------------------------------X


### MEMORANDUM OF LAW OF DEFENDANT GRUPO MEXICO IN OPPOSITION TO THE MOTION OF WestLB SEEKING AN ORDER OF ATTACHMENT

KENT, BEATTY & GORDON, LLP
Jack A. Gordon, Esq.
425 Park Avenue, 31st Floor
New York, New York 10022
(212) 421-4300

*Attorneys for defendants Asarco
Incorporated and Grupo Mexico, S.A. de
C.V.*

**Table of Contents**

Preliminary Statement...................................................................................................................1

Facts..............................................................................................................................................2

Argument........................................................................................................................................4

    I.  This Court Does not Have Personal or *Quasi in Rem*
       Jurisdiction Over Grupo Mexico.......................................................................................5

        A.  There is No Basis for the Assertion of Personal Jurisdiction
           Pursuant to CPLR 302(a)(1)..................................................................................5

        B.  There is No Basis for the Assertion of *Quasi in Rem* Jurisdiction............................9

    II.  Even if this Court Finds that Grupo Mexico is Subject
        to Jurisdiction, There Should be No Attachment Because it
        Provides No *Bona Fide* Security.......................................................................................11

Conclusion....................................................................................................................................13

i

## Table of Cases

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)............................5,6,7,9

*Asahi Metal Industry Co. v. Superior Court of California, Solano County,*
    480 U.S. 102 (1987)...........................................................................................8,9

*Banco Ambrosiano, S.p.A., v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65 (1984).....................10

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999)....................6

*Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner*, 243 A.D.2d 1 (1st Dep't 1998)...........................5

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985)........................................................7,8

*Desert Palace, Inc. v. Rozenbaum*, 192 A.D.2d 340 (1st Dep't 1993)................................10

*Elliot v. Great Atlantic & Pacific Tea Co.*, 11 Misc. 2d 133, 135 (N.Y. Cty Ct. 1957)....................12

*Hale v. Kampa*, 91 Misc.2d 903 (N.Y. Sup. Ct. 1977)...................................................4

*Interpetrol Bermuda Ltd. v. Trinidad and Tobago Oil Co. Ltd.,*
    135 Misc.2d 160 (N.Y. Sup. Ct. 1987).......................................................................4
*Johnson Electric North America, Inc. v. Bank of Wales, PLC,*
    1991 U.S. Dist. LEXIS 1596 (S.D.N.Y. February 8, 1991)...............................................9

*Marketing Showcase v. Alberto-Culver Co.*, 445 F. Supp. 755 (S.D.N.Y. 1978)..............................10

*Shaffer v. Heitner*, 433 U.S. 186 (1977)..............................................................5, 10

*Tonns v. Speigel's*, 90 A.D.2d 548 (2d Dep't 1982).......................................................6

*Trigo Hnos, Inc. v. Premium Wholesale Groceries, Inc.,*
    424 F. Supp. 1125 (S.D.N.Y. 1976)........................................................................11,12

*Waldorf Associates v. Neville*, 141 Misc.2d 150 (N.Y. Sup. Ct. 1988)..................................5,6,7

*Ziberg v. Robosonics*, 43 Misc. 2d. 134 (N.Y. App. Term. 1964).........................................4

**Table of Statutes and Other Authority**

CPLR 301....................................................................................................5

CPLR 302(a)(1)...................................................................................5,6,11

CPLR 320....................................................................................................4

CPLR 3213..................................................................................................2

CPLR 6201(a)(1).......................................................................................1, 4

Vincent Whittaker, *Perspective: The Quick Buck, International Financing,
    and Forfaiting*, 23 T. Jefferson L. Rev. 249 (2001).................................3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
WESTDEUTSCHE LANDESBANK GIROZENTRALE,  :
                                       :
                    Plaintiff,         :
                                       :
                                       :
            against                    : Index # 600673/02
                                       : (Gammerman, J.)
ASARCO INCORPORATED and                : IAS Part 27
GRUPO MEXICO, S.A. DE C.V.,            :
                                       :
                    Defendants.        :
------------------------------------------------------------------X

<u>MEMORANDUM OF LAW OF DEFENDANT GRUPO
MEXICO IN OPPOSITION TO THE MOTION OF
WestLB SEEKING AN ORDER OF ATTACHMENT</u>

Defendant Grupo Mexico, S.A. de C.V. ("Grupo Mexico"), by its undersigned attorneys, respectfully submits the instant memorandum of law in opposition to the motion of plaintiff Westdeutsche Landesbank Girozentrale ("WestLB") seeking a prejudgment attachment against Grupo Mexico's assets in New York.

<u>PRELIMINARY STATEMENT</u>

This case arises from a forfait financing agreement between defendant Asarco Incorporated ("Asarco") and Trafigura A.G. ("Trafigura"). Grupo Mexico, Asarco's parent, guaranteed the forfait "per aval."[1] Later, WestLB purchased the forfait papers from Trafigura.

WestLB is seeking an order of attachment pursuant to CPLR § 6201(a)(1) against the New York assets of Grupo Mexico. In light of the fact that the New York courts have consistently held that attachment is a drastic and harsh remedy, this Court should exercise its discretion to deny the

---

[1]    A forfait is akin to a letter of credit or promissory note. This vehicle became popular for financing transactions in Eastern Europe after the collapse of communism. A "per aval" is a form of guaranty affixed to a note in a forfait transaction.

attachment because either (i) it has no personal jurisdiction over Grupo Mexico, or (ii) an order of attachment would work an extraordinarily harsh result against Grupo Mexico while giving almost no benefit to WestLB.

## FACTS

According to its moving papers,[2] WestLB is a banking corporation organized pursuant to the laws of the Republic of Germany which operates in New York through a branch that is licensed by the New York State Department of Banking. (*See* Affidavit of Donald E. Asadorian in Support of Motion for an Order of Attachment and Temporary Restraining Order, dated February 19, 2002 ("Asadorian Aff."), ¶ 3.) The German State of North Rhine-Westphalia owns roughly 43% of WestLB. (*See* WestLB homepage (March 20, 2002) http://www.westlb.com.)

Grupo Mexico is a corporation organized and existing under the laws of the Republic of Mexico. Grupo Mexico is an international natural resources and transportation company with its principal place of business in Mexico City, Mexico. (*See* Affidavit of Daniel Tellechea, dated March 14, 2002 ("Tellechea Aff."), ¶ 2.) As of the end of 2001, Grupo Mexico had $7 billion in assets and $4.5 billion in liabilities. (*Id.*) Grupo Mexico does not maintain an office or otherwise have a presence in New York. (*Id.*, ¶ 3.) However, it does have two bank accounts with a total of roughly $25,000 in New York. These funds, untouched since Justice Cahn's entry of the TRO, represent less than .0004% of Grupo Mexico's assets as of the end of 2001. (*Id.*, ¶ 8.)

---

[2]    On February 19, 2002, WestLB commenced this action against Asarco and Grupo Mexico. As to Asarco, WestLB moved for summary judgment in lieu of a complaint pursuant to CPLR 3213. Additionally, by separate motion, WestLB sought a temporary restraining order ("TRO") and a prejudgment order of attachment against Grupo Mexico. The TRO was granted by Justice Cahn, and the attachment motion is the subject of this brief.

Asarco is a corporation organized under the laws of the State of New Jersey with its principal place of business in Arizona. Asarco is a wholly owned subsidiary of Grupo Mexico. (*See* Tellechea Aff., ¶ 1.)

On August 7, 2001, Asarco entered into an agreement with Trafigura, a Swiss company with offices in Stamford, Connecticut, for the purchase and shipment of roughly 7.3 million pounds of copper products to Amarillo, Texas, for $5,000,000. (Trafigura is not a party to this action.) The financing for this transaction was accomplished through a forfait agreement. That agreement called for defendant Grupo Mexico to sign a form of guaranty, referred to in such transactions as a "per aval." *See generally* Vincent Whittaker, *Perspective: The Quick Buck, International Financing, and Forfaiting*, 23 T. Jefferson L. Rev. 249 (2001).

In August of 2001, plaintiff WestLB purchased the forfait papers from Trafigura. The note was payable at Chase Manhattan Bank (now JP Morgan Chase) on or after November 1, 2001. (Asadorian Aff., ¶ 11.) Apparently, the note was presented for payment by WestLB, but payment of the $4,000,000 remaining on the note was declined.

This action was brought by Order to Show Cause, dated February 19, 2002 ("OSC"), signed by Justice Herman Cahn. The OSC, originally returnable February 26, 2002, was adjourned to March 12, 2002, by stipulation of the parties. On March 5, 2002, the case was removed to the United States District Court for the Southern District of New York. On March 12, 2002, the case was remanded on consent of the parties, and a return date was set for April 1, 2002 to address WestLB's request for a prejudgment attachment.

## ARGUMENT

Plaintiff WestLB seeks an order of attachment pursuant to CPLR § 6201(a)(1) on the grounds that defendant Grupo Mexico is a foreign corporation that is unauthorized to do business in the state of New York.

A prejudgment order of attachment serves two purposes – first, to obtain jurisdiction, and second, to provide security. *See Ziberg v. Robosonics*, 43 Misc. 2d. 134 (N.Y. App. Term. 1964). As set forth more fully below, the motion should be denied because Grupo Mexico does not maintain enough assets in New York to provide any real security to WestLB, nor does it maintain enough of a presence here to subject it to personal or *quasi in rem* jurisdiction.[3] (*See* Tellechea Aff., ¶ 3.) Alternatively, if jurisdiction over Grupo Mexico is found to exist, there is no reason for an order of attachment to issue because the limited resources that it maintains in New York would not provide security to WestLB, and Grupo Mexico is prepared to surrender them in any event.

New York "courts have repeatedly emphasized that attachment is a 'harsh' and 'extraordinary' remedy which must be construed 'strictly in favor of those against whom it may be employed.'" *Interpetrol Bermuda Ltd. v. Trinidad and Tobago Oil Co. Ltd.*, 135 Misc.2d 160, 167-68 (N.Y. Sup. Ct. 1987). Furthermore, attachment is a discretionary remedy, and is not granted as of right. *See Hale v. Kampa*, 91 Misc.2d 903 (N.Y. Sup. Ct. 1977). In the instant action, as will be demonstrated herein, WestLB's request for an order of attachment should be denied.

---

[3]    Moving in opposition to an order of attachment does not subject Grupo Mexico to personal jurisdiction, *see* CPLR 320, and Grupo Mexico specifically objects to this Court's exercise of personal jurisdiction over it.

4

# I.
## This Court Does not Have Personal or *Quasi in Rem* Jurisdiction Over Grupo Mexico

Any assertion of personal or *quasi in rem* jurisdiction over a party must meet the minimum contacts requirements established by the United States Supreme Court. *See Shaffer v. Heitner*, 433 U.S. 186 (1977). Under either jurisdictional theory,[4] there are insufficient contacts with New York for the reasonable exercise of personal jurisdiction over Grupo Mexico.

### A.    There is No Basis for the Assertion of Personal Jurisdiction Pursuant to CPLR 302(a)(1)

While WestLB does not cite to the CPLR for its assertion of jurisdiction, it is apparent from both the transaction and WestLB's papers that jurisdiction is asserted under the "contracts anywhere" language of CPLR 302(a)(1).

Plaintiff relies on the case of *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993), for the proposition that personal jurisdiction exists over Grupo Mexico. While that case, like this one, involves a forfait transaction, it is among divergent authority with respect to whether the guaranty of a payment in New York alone suffices for personal jurisdiction pursuant to CPLR 302(a)(1). *See Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner*, 243 A.D.2d 1 (1st Dep't 1998)(New York may not exert long-arm jurisdiction over non-domiciliary who was never physically present in New York, and who never agreed to provide any goods or services here); *Waldorf Associates v. Neville*, 141 Misc.2d 150, 153 (N.Y. Sup. Ct. 1988)(since a guaranty represents payment, it is neither a good nor a service for purposes of CPLR 302(a)(1)).

---

[4]    There is not even the hint of CPLR 301 jurisdiction in this matter. Grupo Mexico is an alien corporation, unlicenced to do business in New York. Furthermore, it does not have offices or employees in New York, nor does it solicit business in New York. (*See* Tellechea Aff., ¶ 4.)

5

The *Petra* case is distinguishable because the plaintiff in that action was a New York resident. *See A.I. Trade Finance*, 989 F.2d at 82 ("Since the record indicates that A.I. Trade, a New York-based firm, was involved in the transaction at an early date and may be regarded as the recipient of the guaranty, we need not consider Petra Bank's claim that 'contracts anywhere' jurisdiction is only available to New York residents.") Although WestLB has a branch in New York licensed by the Department of Banking, it is a German corporation with its principal worldwide place of business in Germany. (*See* Affidavit of Donald Asadorian in Support of Motion for Summary Judgment in Lieu of Complaint, dated February 19, 2002 ("Asadorian 3213 Aff."), ¶ 3.) Furthermore, the forfait was originally payable to a Swiss corporation with its United States offices in Connecticut. While the *Petra* case did not address the argument that the "contracts anywhere" language was intended to be exclusively for the protection of New York residents (because A.I. Trade was a New York resident, which WestLB is not, *see A.I. Trade Finance, Inc.*, 989 F.2d at 82), the courts of New York recognize that the "contracts anywhere" language in CPLR 302(a)(1) was created "so that a convenient forum will be available for New York residents." *Tonns v. Speigel's*, 90 A.D.2d 548 (2d Dep't 1982); *Waldorf Associates*, 141 Misc.2d at 153; *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789 (2d Cir. 1999). Since plaintiff here is not a New York resident, CPLR 302(a)(1) is inapplicable.

Tellingly, in this case, a Mexican corporation guaranteed payment on behalf of a New Jersey corporation of a debt due a Swiss corporation. The note evidencing the debt was executed in Mexico (Grupo Mexico) and Arizona (Asarco), and then sent to Connecticut to the offices of the Swiss company (Trafigura). (*See* Tellechea Aff., ¶ 4.) Eventually, a German company (WestLB) purchased the note from the Swiss company – but that transaction occurred in London, England. (*See* Asadorian 3213 Aff., Exh. B.) The only connection to New York is that the payment is

6

contemplated to be made in this jurisdiction. In light of all of these facts, the exercise of jurisdiction over Grupo Mexico would be unreasonable.

Even should the Court find that the guaranty is a contract to provide goods or services in New York, and further find that Grupo Mexico had the requisite minimum contacts with this forum, WestLB must demonstrate that Grupo Mexico purposely availed itself of the privilege of doing business in New York, and if there is purposeful availment, the Court must examine five factors to determine whether the exercise of jurisdiction constitutionally would be reasonable. *See Burger King v. Rudzewicz*, 471 U.S. 462 (1985).

Grupo Mexico did not purposefully avail itself of the privilege of doing business in New York. Its only contact with New York, in relation to the underlying transaction, was the specification of a New York bank for payment from a non-party bank to a non-party under its guaranty of payment. That guaranty was executed in Mexico. (*See* Tellechea Aff., ¶ 4.) New York has recognized that the mere guaranty by a foreign corporation of a nondomiciliary's debt does not create personal jurisdiction in New York. *Waldorf Associates*, 141 Misc.2d at 153; *but see A.I. Trade Finance*, 989 F.2d at 82. Therefore, it cannot be said that such a guaranty would be a purposeful availment.

Even if this Court finds that Grupo Mexico purposefully availed itself of this jurisdiction, it must then look to the five factor test articulated in *Burger King* to determine whether jurisdiction might reasonably be exercised. Those five factors are: 1) the burden on the defendant of litigating away from home; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interest of the interstate judicial system in efficient dispute resolution; and 5) the shared interest of the several states in furthering fundamental social policies. *See Burger King*, 471 U.S. at 476-78.

Examining these factors leads to the conclusion that it would be unconstitutional to exercise personal jurisdiction over Grupo Mexico in this case.

Before doing so, it is important to note that the Supreme Court has held that when the defendant is an alien corporation, the exercise of jurisdiction under the *Burger King* analysis is dubious. *See Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987). The mere fact that the defendant is an alien corporation militates heavily against the exercise of jurisdiction. The *Asahi* Court stated: "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders" *Id*. at 114. In the *Asahi* case, as here, the defendant was an alien corporation. Additionally, as here, that defendant was transacting business with another alien corporation. Since, in terms of the relevant issue of the citizenship of the corporations, this case bears a close resemblance to *Asahi*, a similar result should obtain.

Even applying the *Burger King* analysis, jurisdiction should not be found. New York's interest in this matter is *de minimis*. As the *Asahi* Court noted: "Because the plaintiff is not a California resident, California's legitimate interests have considerably diminished." *Id*. While it is true that New York does have a generic interest in international finance, its interest in adjudicating this particular dispute between a German bank and a Mexican natural resources company, arising from a guaranty (the per aval) executed in Mexico, delivered to Arizona, forwarded to Connecticut and then negotiated to WestLB in London is limited at best.

Plaintiff's interest in obtaining relief in a New York court is also not that great. WestLB is a German corporation with offices throughout the world. In fact, WestLB has a branch operating in Mexico City (*see* WestLB homepage (March 20, 2002) http://www.westlb.com.), which also

8

happens to be the principal place of business of Grupo Mexico. (*See* Tellechea Aff., ¶ 2.) Thus, WestLB can bring its claim against Grupo Mexico in a jurisdiction where both WestLB and Grupo Mexico reside (Mexico City), which makes more sense since a New York court can provide virtually no relief as to Grupo Mexico in any event, since Grupo Mexico maintains hardly any assets here.

The fourth and fifth factors may be conflated due to the fact that both WestLB and Grupo Mexico are alien corporations. The *Asahi* Court noted:

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum state.

*Asahi*, 480 U.S. at 115. In the instant case, the heavy burden of litigating in a foreign jurisdiction is present, and New York's interest in adjudicating this conflict between alien corporations is minimal. Therefore, the Court should find that it would be unreasonable to exercise jurisdiction over Grupo Mexico.

**B.     There is No Basis for the Assertion of *Quasi in Rem* Jurisdiction[5]**

Before any order of a prejudgment attachment may be granted, the Court must establish that the property sought to be attached is related to the underlying action. *Id.* As noted by the New York

---

[5]     It is unclear whether WestLB has even asserted *quasi in rem* jurisdiction due to its rather cryptic jurisdictional statement, to wit: "The *Petra* Court [*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)] determined that by affixing an aval on a note payable in New York ... a party has contracted to provide services in New York and, therefore, is subject to New York personal jurisdiction." (Attorney's Statement in Support of Application for an Order of Attachment with Temporary Restraining Order, dated February 19, 2002, ¶ 7.) Furthermore, it is questionable whether such jurisdiction may be asserted at this stage of the litigation. *See Johnson Electric North America, Inc. v. Bank of Wales, PLC*, 1991 U.S. Dist. LEXIS 1596 at *7 (S.D.N.Y. February 8, 1991) (*quasi in rem* jurisdiction may only be obtained if attachment of foreign defendant's property precedes service of process).

9

Court of Appeals, "when the property serving as the jurisdictional basis has no relationship to the cause of action and there are no other ties among the defendant, the forum and the litigation, *quasi in rem* jurisdiction will be lacking." *See Banco Ambrosiano, S.p.A., v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, 67 (1984). It is respectfully submitted that as Grupo Mexico's property in New York bears no relation to the underlying cause of action, and Grupo Mexico lacks the requisite minimum contacts with the forum, *quasi in rem* jurisdiction is lacking.

In this regard, WestLB must demonstrate that the property maintained by Grupo Mexico in New York, *i.e.*, the $25,000 in the JP Morgan Chase account,[6] is related to the underlying cause of action. *See Marketing Showcase v. Alberto-Culver Co.*, 445 F. Supp. 755 (S.D.N.Y. 1978). It has not.

WestLB has not alleged any basis for a nexus between the multimillion dollar guaranty and the $25,000. Without such a nexus between the transaction and the property sought to be attached, the property, by itself, does not confer jurisdiction over Grupo Mexico. *See Desert Palace, Inc. v. Rozenbaum*, 192 A.D.2d 340 (1st Dep't 1993)(attachment of bank account proper only after a showing that account was used to induce line of credit at Caesar's Palace). Thus far, as stated in Note 5 *supra*, WestLB has proffered no rationale for attachment that relates to jurisdiction. Until it does, attachment is improper.[7]

---

[6]     Grupo Mexico also has a bank account with the New York branch of Banco Nacional de México, S.A., but that account has a balance of $0. (Tellechea Aff., ¶ 5.)

[7]     Additionally, the arguments made relevant to personal jurisdiction regarding minimum contacts apply with equal force to *quasi in rem* jurisdiction. *See Shaffer*, 433 U.S. at 206.

10

**II.**

**Even if this Court Finds that Grupo Mexico is Subject to Jurisdiction,**
**There Should be No Attachment Because it Provides No *Bona Fide* Security**

As noted above, the issuance of an order of attachment is purely within the discretion of the Court. Due to the draconian nature of the order of attachment, unless both of the requisites, *i.e.*, jurisdiction and security, are shown, an order of attachment should not issue. Thus, even if this Court determines that CPLR 302(a)(1) confers jurisdiction over Grupo Mexico (*see supra* Point I), an order of attachment should not issue because the requisite security is absent.

An attachment in New York would not provide additional security because (i) Grupo Mexico maintains minimal assets within the jurisdiction, and (ii) there is no reason to believe that it would "conceal" or "dissipate" its assets. As previously noted, the only assets Grupo Mexico maintains in New York are two bank accounts with a combined balance of approximately $25,000. (*See* Tellechea Aff., ¶ 5.) These assets provide no security to WestLB in light of the fact that its alleged damages are $4,000,000. Put another way, the funds maintained in the New York accounts represent but a fraction of one percent of the total alleged damages. Therefore any attachment would have virtually no impact on WestLB's collection effort.

In addition, there is no basis for a determination that Grupo Mexico will conceal or dissipate its assets. WestLB submitted four articles to "establish" that Grupo Mexico is likely to remove, conceal or dissipate its New York assets. (*See* Michael T. Sullivan's Affidavit of Emergency, dated February 19, 2002, Exh. E.) These articles merely reflect that a global downturn in copper prices has had a negative impact on Grupo Mexico. These articles hardly demonstrate that Grupo Mexico will take any affirmative act to remove, conceal or dissipate its assets. *See, e.g., Trigo Hnos, Inc. v. Premium Wholesale Groceries, Inc.*, 424 F. Supp. 1125 (S.D.N.Y. 1976)(where defendant is continuing in business and attempting to prosper, there is no inference that it is attempting or will

11

attempt to dissipate, conceal or remove assets). As the affiant for Grupo Mexico makes clear: "I take exception to the statement in Michael Sullivan's affidavit that Grupo Mexico 'may remove or encumber assets currently in New York.' As previously noted, Grupo Mexico has virtually no assets in New York ... and will do nothing to remove or encumber these limited assets." (Tellechea Aff., ¶ 8 (citation omitted).) Since there is no proof of attempt to dissipate or to conceal assets, an attachment order would be inappropriate. *See, e.g., Elliot v. Great Atlantic & Pacific Tea Co.*, 11 Misc. 2d 133, 135 (N.Y. Cty Ct. 1957); *Trigo Hnos, Inc.*, 424 F. Supp. at 1133.

Most significantly, Grupo Mexico has offered to deposit its New York assets with the Court (Tellechea Aff., ¶ 9), or will consent to the continuation of Justice Cahn's TRO. Such an offer of alternative security emasculates any argument that an order against Grupo Mexico should issue.

In this regard, when, as here, an attachment is likely to be oppressive and may work an irremediable hardship, the discretion of the court is called in the name of the oppressed. *See Trigo Hnos, Inc.*, 424 F. Supp. at 1133. Grupo Mexico is currently renegotiating its main international credit facilities, and an order of attachment – however minimal in a relative sense – issued in New York not only would be unnecessary, but might well interfere with its relations with those creditors. (*Id.*) Where the attachment would be of virtually no value to WestLB, and would afford no more benefit than that offered through surrender of Grupo Mexico's New York assets or continuation of the TRO, the Court should decline to issue the order of attachment, particularly where such an order would be draconian for Grupo Mexico.

## CONCLUSION

In conclusion, the requisites for the grant of an order of attachment are not present in this

case. First, the Court does not have personal or *quasi in rem* jurisdiction over Grupo Mexico.

Second, even assuming, *arguendo*, that there is jurisdiction, an order of attachment would not

provide any real or additional security to WestLB. Finally, since such an order would be oppressive

and viable alternatives are available, the Court should use its discretion and decline to issue the

attachment.

Dated: New York, New York
       March 20, 2002

KENT, BEATTY & GORDON, LLP

By: *Jack A. Gordon*

Jack A. Gordon, Esq.
425 Park Avenue, 31st Floor
New York, New York 10022
(212) 421-4300

*Attorneys for defendants Asarco Incorporated
and Grupo Mexico, S.A. de C.V.*

13