**EXHIBIT 20**

**TO**

**EXHIBIT 4**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STANDARD BANK LONDON,                          :    Index No.

                Plaintiff,              :    IAS Part ___

       - against -                                :    **ATTORNEY'S STATEMENT**
                                               :    **IN SUPPORT OF SUMMARY**
ASARCO INCORPORATED and                        :    **JUDGMENT MOTION IN**
GRUPO MEXICO, S.A. DE C.V.,                     :    **LIEU OF COMPLAINT**
                                               :
             Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      MICHAEL T. SULLIVAN, pursuant to CPLR § 2106, affirms:

      1.    I am an attorney and a member of the law firm Sullivan & Worcester LLP,

attorneys for plaintiff Standard Bank London ("Standard Bank"). I make this statement in

support of the application of plaintiff Standard Bank's Summary Judgment Motion In Lieu of

Complaint pursuant to CPLR § 3213.

      2.    The facts and circumstances of this action are set forth in the accompanying

affidavit of Michael Mullen, sworn to on June 6, 2002 (the "Mullen Affidavit"). For the court's

convenience, they are summarized below.

      3.    In this action Standard Bank seeks recovery based upon a dishonored

$7,500,000.00 promissory note (the "Note") made by defendant Asarco Incorporated ("Asarco")

and guaranteed "per aval" by defendant Grupo Mexico, S.A. de C.V. ("Grupo Mexico"). A copy

of the Note is attached as Exhibit A to the Mullen Affidavit. Because there are no triable issues

of fact as to the defendants' indebtedness to Standard Bank, Standard Bank is entitled to

summary judgment pursuant to CPLR § 3213.

4.      On or about October 23, 2001, Asarco issued, and Grupo Mexico guaranteed, the Note. See Mullen Affidavit at ¶¶ 7-8.

5.      The Note obligated the defendants to make repayment to Standard Bank at Chase Manhattan Bank (now JPMorgan Chase), in New York City on February 1, 2002.

6.      Defendants, however, despite due demand, refused to make payment. Id. at ¶¶ 13-14.

7.      CPLR § 3213 provides in relevant part that "[w]hen an action is based upon an instrument for the payment of money only . . . the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint."

8.      It is well settled that a plaintiff establishes a prima facie case of entitlement to summary judgment in lieu of complaint by producing an executed instrument for the payment of money only and proof that the defendant has failed to make the payments called for thereunder. SCP (Bermuda) Inc. v. Bermudatel Ltd., 224 A.D.2d 214, 216, 638 N.Y.S.2d 2, 3 (1st Dep't 1996); Generale Bank, N.Y. Branch v. Nagaraj, 193 A.D.2d 376, 377, 597 N.Y.S.2d 56, 57 (1st Dep't 1993); Berlind v. Heinfling, 176 A.D.2d 452, 453, 574 N.Y.S.2d 354, 355 (1st Dep't 1991)(citing Seaman-Andwall Corp. v. Wright Mach. Corp., 31 A.D.2d 136, 137, 295 N.Y.S.2d 752, aff'd, 29 N.Y.2d 617, 324 N.Y.S.2d 410 (1971)); see also Maglich v. Saxe, Bacon & Bolan, P.C., 97 A.D.2d 19, 468 N.Y.S.2d 618 (1st Dep't 1983).

9.      An instrument for the payment of money only has been defined as an unconditional promise to pay a sum certain, due on demand or at a definite time. Machideira, Inc. v. Torns, 285 A.D.2d 418, 685 N.Y.S.2d 719 (1st Dep't 1999); First Interstate Credit

2

Alliance, Inc. v. Sokol, 179 A.D.2d 583, 57 [N].Y.S.2d 653 (1st Dep't 1992); J. Weinstein, H. Korn, & A. Miller, N.Y. Civ. Prac. ¶ 3213.04, at 253). The prototypical example of an instrument for the payment of money only is "some variety of commercial paper in which the party to be charged has formally and explicitly acknowledged an indebtedness." Interman Indus. Prods. v. RSM Electron Power, Inc., 37 N.Y.2d 151, 154, 371 N.Y.S.2d 675, 678 (1975).

     10.    Once the plaintiff has established its prima facie case, the defendant is "required to come forward with proof showing the existence of a triable issue of fact with respect to a bona fide defense." Bank Leumi Trust Co. of New York v. Rattet & Liebman, 182 A.D.2d 541, 542, 582 N.Y.S.2d 707, 708 (1st Dep't 1992). Such proof must, of course, be in the form of admissible evidence. See SCP (Bermuda) Inc., 224 A.D.2d at 216, 638 N.Y.S.2d at 3 ("[o]nce plaintiff has met its burden, it is incumbent upon defendant to establish, by admissible evidence, that a triable issue of fact exists"); see also Gross v. Fruchter, 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (2d Dep't 1996)("defendant's allegation that there was an oral agreement that he would not have to repay the note is barred by the parole evidence rule").

     11.    Neither defendant in this case appears able to offer a single colorable defense to its liability for payment under the Note. Asarco as maker of the Note is, of course, liable. Further, Grupo Mexico, by reason of its aval, is also liable. See, e.g., A.I. Trade Finance Inc. v. Petra Bank, 989 F.2d 76 (2d Cir. 1993) (an aval is an unconditional guaranty).

12.    Standard Bank has produced a Note executed by both defendants for $7,500,000. The Note is a written instrument evidencing an unconditional obligation to pay a sum certain at a fixed time.  The defendants have failed to make the payment due on February 1, 2002 despite their unconditional obligation and demands for the full payment.  Accordingly, the defendants have defaulted on their payment due under the Note.  Therefore, Standard Bank has established a prima facie case for summary judgment under CPLR § 3213.  Because there are no triable issues of fact as to these matters and because the defendants have no defenses with respect to the Note, summary judgment should be granted to the plaintiff.

13.    There has been no prior application by plaintiff for the relief sought herein.

Dated:  New York, New York
        June 11, 2002

MICHAEL T. SULLIVAN

4

K:\orders\doc\tx\Nd\ta\bkW005\N5002024.DOC





PUBLIC NOTARIES
TRANSLATORS OF LANGUAGES
ALBERT BUILDINGS
49 QUEEN VICTORIA STREET
LONDON    EC4N 4SA

Telephone
(020) - 7329 7329 2022
International
(+44 ) - 20 - 7329 2026/7329 2022
Facsimile
(020) - 7329 0026
International
(+44) - 20 - 7329 0026

E-Mail: bahookenotarypublic@hotmail.com
BARRINGTON W. HOOKE, LL.B
Notary Public.
Mobile
(07802) - 47 56 49

UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND    )

ss

ENGLAND                                    CITY OF LONDON )

TO ALL TO WHOM  THESE PRESENTS  SHALL COME, I,

BARRINGTON  WILLIAM  HOOKE  , NOTARY PUBLIC of the

CITY of LONDON, by Royal Authority duly admitted and sworn

practising in the said City, Do  Hereby Certify that on the day of the date

hereof  before  me  personally  came  and  appeared  MICHAEL

CHRISTOPHER MULLEN the Deponent named and described in the

Affidavit  hereunto  annexed, who by solemn  Oath  which  the  said

Deponent then made before me in due form of law, did depose testify

and declare to be true the several matters and things mentioned and

contained in the said annexed Affidavit.

IN FAITH AND TESTIMONY WHEREOF I have hereunto set my

Hand and Seal of  Office and have caused the said Affidavit to be

hereunto annexed together with exhibits "A" to "D".

Dated in London the sixth day of June in the Year of Our Lord, two

thousand and two.

NOTARY PUBLIC, LONDON.
MY COMMISSION IS FOR LIFE



**APOSTILLE**

(Hague Convention of 5 October 1961 / Convention de La Haye du 5 octobre 1961)

1. Country: United Kingdom of Great Britain and Northern Ireland
   Pays: Royaume-Uni de Grande-Bretagne et d'Irlande du Nord

   This public document / Le présent acte public

2. Has been signed by        B W Hooke
   a été signé par

3. Acting in the capacity of   Notary Public
   agissant en qualité de

4. Bears the seal/stamp of    The Said Notary Public
   est revêtu du sceau/timbre de

                                        Certified/Attesté

5. at London/à Londres                  6. the/le   07 June 2002

7. by Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs /
   par le Secrétaire d'Etat Principal de Sa Majesté aux Affaires Etrangères et du Commonwealth.

8. Number/sous No      **H034316**

9. Stamp:                         10. Signature:   B. Amarteifio
   timbre:



*For the Secretary of State / Pour le Secrétaire d'Etat*



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STANDARD BANK LONDON,                          :     Index No.

                              Plaintiff,       :     IAS Part ___

        - against -                            :     **AFFIDAVIT OF MICHAEL**
                                               :     **MULLEN IN SUPPORT OF**
ASARCO INCORPORATED and                        :     **MOTION FOR A SUMMARY**
GRUPO MEXICO, S.A. DE C.V.,                     :     **JUDGMENT IN LIEU OF**
                                               :     **COMPLAINT**
                              Defendants.       :     _____
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CITY OF LONDON   )
                 : ss.:
UNITED KINGDOM )

        MICHAEL MULLEN, being first duly sworn, deposes and says:

        1.      I am a Manager in the Asset Recovery Unit of plaintiff Standard Bank London

Limited ("Standard Bank"). I submit this affidavit in support of Standard Bank's motion for

summary judgment against defendants Asarco Incorporated ("Asarco") and Grupo Mexico, S.A.

de C.V. ("Grupo Mexico"). I make this affidavit based on personal knowledge or upon a review

of books and records in my possession or subject to my control.

        2.      In this proceeding, Standard Bank seeks to recover $7,500,000.00 based upon a

dishonored promissory note (the "Note") made to Asarco and guaranteed by Grupo Mexico. A

copy of the Note is attached as Exhibit A.

        3.      Standard Bank is a banking corporation organized pursuant to the laws of the

United Kingdom.



4.     Upon information and belief, defendant Grupo Mexico is a corporation organized pursuant to the laws of the Republic of Mexico, with its principal place of business in Mexico City, Mexico. Upon information and belief, Grupo Mexico does not have an office, nor is it authorized to do business, in the State of New York.

5.     Upon information and belief, defendant Asarco is a corporation organized pursuant to the laws of the State of New Jersey, with an office located at 156 West 56th Street, New York, New York. Upon information and belief, Asarco is a producer of non-ferrous metals, specialty chemicals and aggregates.

6.     The Note at issue arises from a "forfaiting" transaction, a form of trade finance usually involving the cross-border sales of goods, the payment obligation for which is often reflected in a promissory note issued by the purchaser to the seller's order. In a typical forfaiting transaction, the note bears the guaranty of another, either a bank or an established corporation. Typically, the note is sold to a bank or trade finance specialist promptly after the underlying commercial transaction has been completed, i.e., after the goods have been shipped to the purchaser. The purchaser of the note then collects the note's proceeds at maturity.

7.     On or about October 23, 2001 defendant Asarco executed the $7,500,000.00 Note, payable to the order of Standard Bank's customer, non-party Trafigura AG ("Trafigura"). By its terms, the Note matured and was payable on February 1, 2002. Upon information and belief, the Note relates to Asarco's purchase of copper from Trafigura.

8.     Contemporaneously, defendant Grupo Mexico guaranteed the payment of the Note.

2



9.    The Note, by its terms, was payable on February 1, 2002, at Chase Manhattan Bank (now JPMorgan Chase Bank), at 1 Chase Manhattan Plaza, 270 Park Avenue, New York, New York, 10017 ("Chase").

10.    Trafigura, for value, indorsed and transferred the Note to Standard Bank on or about November 1st, 2001. (See Exhibit B).

11.    Standard Bank is a holder in due course of the Note.

12.    Pursuant to the terms of the Note, Standard Bank demanded payment at Chase on or after February 1, 2002. See Exhibit C.

13.    The Note was dishonored. See Exhibit D.

14.    Grupo Mexico and Asarco have failed to make payment, despite demand.

15.    As a result of the defendants' default on the Note, Standard Bank has suffered damages in an amount not less than $7,500,000.00 plus costs and interest.

16.    For the foregoing reasons, I respectfully request that the Court grant Standard Bank's application for summary judgment.

_____
MICHAEL MULLEN

Sworn to before me this
6th day of June, 2002

_____
Notary Public

3



# EXHIBIT A



**JOHN HOOKE**

PUBLIC NOTARIES
TRANSLATORS OF LANGUAGES

ALBERT BUILDINGS
49 QUEEN VICTORIA STREET
LONDON        EC4N 4SA
——————
Telephone
(020) - 7329 2000/7329 2032
International
(+44) - 20 - 7329 2000/7329 2032
Facsimile
(020) - 7329 0025
International
(+44) - 20 - 7329 0025

E-Mail: Johnnyhooke@aol@btinternet.com
BARRINGTON W. HOOKE, LL.B
Notary Public.
Mobile
(07202) - 47 56 49

UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND    )
ss

ENGLAND                                    CITY OF LONDON )

TO ALL TO WHOM  THESE PRESENTS  SHALL COME,I,..

BARRINGTON  WILLIAM  HOOKE , NOTARY PUBLIC of the

CITY of LONDON, by Royal Authority duly admitted and sworn

practising in the said City, Do  Hereby Certify that on the day of the date

hereof  before  me  personally  came  and  appeared  MICHAEL

CHRISTOPHER MULLEN the Deponent named and described in the

Affidavit  hereunto  annexed,  who  by  solemn  Oath  which  the  said

Deponent then made before me in due form of law, did depose testify

and  declare  to be true  the  several  matters  and  things  mentioned  and

contained in the said annexed Affidavit.

IN FAITH AND TESTIMONY WHEREOF I have hereunto set my

Hand and Seal of  Office and have caused the said Affidavit to be

hereunto annexed together with exhibits "A" to "D".

Dated in London the sixth day of June in the Year of Our Lord, two

thousand and two.

NOTARY PUBLIC, LONDON.
MY COMMISSION IS FOR LIFE



**APOSTILLE**

(Hague Convention of 5 October 1961 / Convention de La Haye du 5 octobre 1961)

1.   Country:  United Kingdom of Great Britain and Northern Ireland
     Pays:  Royaume-Uni de Grande-Bretagne et d'Irlande du Nord

     This public document / Le présent acte public

2.   Has been signed by          B W Hooke
     a été signé par

3.   Acting in the capacity of    Notary Public
     agissant en qualité de

4.   Bears the seal/stamp of      The Said Notary Public
     est revêtu du sceau/timbre de

                                              Certified/Attesté

5.   at London/à Londres          6. the/le   07 June 2002

7.   by Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs /
     par le Secrétaire d'Etat Principal de Sa Majesté aux Affaires Etrangères et du Commonwealth.

8.   Number/sous No        H034316

9.   Stamp:                                   10. Signature:   B. Amarteifio
     timbre:



                                   For the Secretary of State / Pour le Secrétaire d'Etat



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STANDARD BANK LONDON,                      :      Index No.

                              Plaintiff,   :      IAS Part ____

        - against -                        :      **AFFIDAVIT OF MICHAEL**
                                           :      **MULLEN IN SUPPORT OF**
ASARCO INCORPORATED and                    :      **MOTION FOR A SUMMARY**
GRUPO MEXICO, S.A. DE C.V.,                :      **JUDGMENT IN LIEU OF**
                                           :      **COMPLAINT**
                              Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CITY OF LONDON   )
                 : ss.:
UNITED KINGDOM )

        MICHAEL MULLEN, being first duly sworn, deposes and says:

        1.      I am a Manager in the Asset Recovery Unit of plaintiff Standard Bank London

Limited ("Standard Bank"). I submit this affidavit in support of Standard Bank's motion for

summary judgment against defendants Asarco Incorporated ("Asarco") and Grupo Mexico, S.A.

de C.V. ("Grupo Mexico"). I make this affidavit based on personal knowledge or upon a review

of books and records in my possession or subject to my control.

        2.      In this proceeding, Standard Bank seeks to recover $7,500,000.00 based upon a

dishonored promissory note (the "Note") made to Asarco and guaranteed by Grupo Mexico. A

copy of the Note is attached as Exhibit A.

        3.      Standard Bank is a banking corporation organized pursuant to the laws of the

United Kingdom.



4.    Upon information and belief, defendant Grupo Mexico is a corporation organized pursuant to the laws of the Republic of Mexico, with its principal place of business in Mexico City, Mexico. Upon information and belief, Grupo Mexico does not have an office, nor is it authorized to do business, in the State of New York.

5.    Upon information and belief, defendant Asarco is a corporation organized pursuant to the laws of the State of New Jersey, with an office located at 156 West 56th Street, New York, New York. Upon information and belief, Asarco is a producer of non-ferrous metals, specialty chemicals and aggregates.

6.    The Note at issue arises from a "forfaiting" transaction, a form of trade finance usually involving the cross-border sales of goods, the payment obligation for which is often reflected in a promissory note issued by the purchaser to the seller's order. In a typical forfaiting transaction, the note bears the guaranty of another, either a bank or an established corporation. Typically, the note is sold to a bank or trade finance specialist promptly after the underlying commercial transaction has been completed, i.e., after the goods have been shipped to the purchaser. The purchaser of the note then collects the note's proceeds at maturity.

7.    On or about October 23, 2001 defendant Asarco executed the $7,500,000.00 Note, payable to the order of Standard Bank's customer, non-party Trafigura AG ("Trafigura"). By its terms, the Note matured and was payable on February 1, 2002. Upon information and belief, the Note relates to Asarco's purchase of copper from Trafigura.

8.    Contemporaneously, defendant Grupo Mexico guaranteed the payment of the Note.

2



9.     The Note, by its terms, was payable on February 1, 2002, at Chase Manhattan Bank (now JPMorgan Chase Bank), at 1 Chase Manhattan Plaza, 270 Park Avenue, New York, New York, 10017 ("Chase").

10.     Trafigura, for value, indorsed and transferred the Note to Standard Bank on or about November 1st, 2001. (See Exhibit B).

11.     Standard Bank is a holder in due course of the Note.

12.     Pursuant to the terms of the Note, Standard Bank demanded payment at Chase on or after February 1, 2002. See Exhibit C.

13.     The Note was dishonored. See Exhibit D.

14.     Grupo Mexico and Asarco have failed to make payment, despite demand.

15.     As a result of the defendants' default on the Note, Standard Bank has suffered damages in an amount not less than $7,500,000.00 plus costs and interest.

16.     For the foregoing reasons, I respectfully request that the Court grant Standard Bank's application for summary judgment.

_____
MICHAEL MULLEN

Sworn to before me this
6th day of June, 2002

_____
Notary Public

3

K:\radsa\docs\u\dalada\doc\2003\5\600\01920\DRT\...



# EXHIBIT A

**JOHN VENN & SONS**
PUBLIC NOTARIES
TRANSLATORS OF LANGUAGES

ALBERT BUILDINGS
49 QUEEN VICTORIA STREET
LONDON      EC4N 4SA

Telephone
(020) - 7329 2929/7329 2922

International
(+44 ) - 20 - 7329 2920/7329 2922

Facsimile
(020) - 7329 0025

International
(+44) - 20 - 7329 0025

Mail: Johnvennsons@BTinternet.com
BARRINGTON W. HOOKE LL B
Notary Public

Mobile
(07802) - 47 56 46

THIS IS THE EXHIBIT MARKED "A" MENTIONED AND REFERRED TO IN THE AFFIDAVIT OF MICHAEL CHRISTOPHER MULLEN MADE BEFORE ME THIS 6TH DAY OF JUNE 2002.

BARRINGTON WILLIAM HOOKE.
NOTARY PUBLIC, LONDON.



PHOENIX, AZ

October 23, 2001

US$   7,500,000.00
(currency and amount in figures)

PROMISSORY NOTE

AT/ON   1-Feb-02 for value received. We promise to pay against this
(date of maturity)

to the order of   TRAFIGURA AG
(Supplier)

the sum of seven million five hundred thousand and zero cents (US$...)

effective payment to be made in   US DOLLARS
(currency)

without deduction for and free of any with holding taxes, impost, levies or charge duties, collection fees or any other charges, present or future of any nature

This PROMISSORY NOTE is payable at   CHASE MANHATTAN BANK, 1 CHASE MANHATTAN PLAZA 570 PARK AVENUE NEW YORK, NY, 10017

Serial Number and address

ASARCO INCORPORATED
2575 E Camelback Rd, Ste 500
Phoenix, AZ 85016

PER AVAL

FOR AND ON BEHALF OF ASARCO INCORPORATED
MR. DANIEL TELLECHEA

PER AVAL

FOR AND ON BEHALF OF GRUPO MEXICO, S.A. DE C.V.

12:22   FROM-S. P. L.L. TRADE FINANCE    020-7615-4356    T-326   P.04/06   F-081

OCT-25-2001  15:52   FROM-

T-683   P.002/002

(WED)  6.  5' 02  13:54/ST. 13:57/NO. 4260955128 P 15

FROM SULLIVAN & WORCESTER LLP



# EXHIBIT B

PUBLIC NOTARIES
TRANSLATORS OF LANGUAGES

ALBERT BUILDINGS
9 QUEEN VICTORIA STREET
LONDON      EC4N 4SA

Telephone
(020) - 7325 2020/7329 2022

International
(+44) - 20 - 7325 2020/7329/2022

Facsimile
(020) - 7329 0025

International
(+44) - 20 - 7329 0025

Mail: johnbenwerson@BTinternet.com
BARRINGTON W. HOOKE, LL.B
Notary Public

Mobile
(07800) - 47 56 46

THIS IS THE EXHIBIT MARKED "B" MENTIONED AND
REFERRED TO IN THE AFFIDAVIT OF MICHAEL CHRISTOPHER
MULLEN MADE BEFORE ME THIS 6TH DAY OF JUNE 2002.

BARRINGTON WILLIAM HOOKE.
NOTARY PUBLIC. LONDON.



12:23    FROM-S.B.L.L,TRADE FINANCE    020-7815-4358    1-326    P.05/06    F-081

TO THE ORDER OF STANDARD BANK LONDON LIMITED

For and on behalf of

IRAN-OHIO/HUMAS

PAY TO THE ORDER OF
The Chase Manhattan Bank
VALUE FOR COLLECTION
FOR AND ON BEHALF F OF
STANDARD BANK LONDON LIMITED



# EXHIBIT C

JOHNSONS & CO.

PUBLIC NOTARIES
TRANSLATORS OF LANGUAGES

ALBERT BUILDINGS
39 QUEEN VICTORIA STREET
LONDON      EC4N 4SA

Telephone
(020) - 7329 2909/7329 2902

International
(+44 ) - 20 - 7329 2909/7329 2902

Facsimile
(020) - 7329 6025

International
(+44) - 20 - 7329 6025

Mail: johnsonnotaries@btinternet.com

BARRINGTON W HOOKE, LLE
Notary Public

Notary
(07802) - 47 56 45

THIS IS THE EXHIBIT MARKED "C" MENTIONED AND
REFERRED TO IN THE AFFIDAVIT OF MICHAEL CHRISTOPHER
MULLEN MADE BEFORE ME THIS 6TH DAY OF JUNE 2002.

BARRINGTON WILLIAM HOOKE.
NOTARY PUBLIC, LONDON.





03. 12:22    FROM-S.BAN.L.TRADE FINANCE.    020-7815-4966    T-328  P.02/08  F-081

**Standard Bank**
**London**

Cannon Bridge House
23 Dowgate Hill
London EC4R 2SB

Telephone: +44 (0)20 7815 3000
Facsimile: +44 (0)20 7815 3099
www.standardbank.com

he Chase Manhattan Bank,
70 Park Avenue,
ew York City,
Y 10017,
.S.A.

or the attention of: The Collections Department                    Date: 8ᵗʰ January 2002

ear Sirs

Re: Promissory Note for USD7,500,000.00 dated 23ʳᵈ October 2001
Issued By: Asarco Incorporated,
2575 E. Camelback Road, Suite 500,
Phoenix, Arizona 85016-4240, U.S.A.
Guaranteed Per Aval By: Grupo Mexico SA de CV.
Date of Maturity: 1ˢᵗ February 2002
Our Reference F4930 (which please quote)

e refer to the enclosed promissory note, which is due for payment on the 1ˢᵗ February 2002
d is payable at your counters.

ccordingly, we should be obliged if you would kindly arrange to remit the sum of
SD7,500,000.00 being the total face amount, for value the 1ˢᵗ February 2002, without
ductions, as follows:

nount:          USD7,500,000.00
nk:             Barclays Bank plc, New York
count:          Standard Bank London Ltd. London
count No:       050-03587-8
ference:        F4930

der authenticated advice to this office (SWIFT code SBLLGB2L) two working days prior to
value date.

..2/



-02  12:22    FRM-S.B.L.L.TRADE FINANCE         020-7815-4356        T-328   P.08/06   F-001

- 2 -

We should be further obliged if you would kindly acknowledge receipt of the enclosed promissory note by signing and returning the attached copy of this letter.

In the event of non payment at maturity, please immediately protest at our expense and inform us accordingly.

This collection is subject to Uniform Rules for Collection, International Chamber of Commerce Publication No. 522.

for and on behalf of
Standard Bank London Limited

Authorised Signature          Authorised Signature

To:  Standard Bank London Limited

We acknowledge receipt of your letter dated 8ᵗʰ January 2002 (the above of which is a true copy) together with the promissory note as described therein. We confirm that we shall effect payment in accordance with your instructions.

For and on behalf of
The Chase Manhattan Bank, New York.

Authorised Signature          Authorised Signature



# EXHIBIT D

**JOHNSON & HOOKE.**

PUBLIC NOTARIES
TRANSLATORS OF LANGUAGES

ALBERT BUILDINGS
49 QUEEN VICTORIA STREET
LONDON        EC4N 4SA

Telephone
0044 +20 7626 7376 2007

International
+44 ( 20    7626 7376 2007

Facsimile
0370 - 7376 0025

International
+44 - 20 - 7376 0025

E-Mail  Johnsonandhooke@btinternet.com

BARRINGTON W. HOOKE LL B
Notary Public

Website
007625 - 47 58 45

THIS IS THE EXHIBIT MARKED "D" MENTIONED AND
REFERRED TO IN THE AFFIDAVIT OF MICHAEL CHRISTOPHER
MULLEN MADE BEFORE ME THIS 6TH DAY OF JUNE 2002.

BARRINGTON WILLIAM HOOKE.
NOTARY PUBLIC, LONDON.



12:23     FROM-S███L, TRADE FINANCE          020-7815-4356          T-326  P-███6  F-991
                                                                              Standa    Bank
                                                                              London

**Facsimile Transmission**                    **Trade Finance**
**Cover Sheet**                                Cannon Bridge House
                                               25 Dowgate Hill
                                               London EC4R 2SB
                                               Tel: +44 (0)207 815 3000
                                               Fax: +44 (0) 207 815-3099

Date:     4 February, 2002
Pages:    1

| | |
|---|---|
| **To:** Jim O'Neil, Chief Financial Officer | **From:** John Penn / Graham Teatherton |
| **Company:** Asarco Incorporated | **Fax:** ~ 44 (0) 207 815 4356 |
| **Fax:** 00 1 602 977 6700 | **Tel:** + 44 (0) 207 815 4128 |
| **To:** Daniel Tellechea, Chief Financial Officer | |
| **Company:** Grupo Mexico SA de CV | |
| **Fax:** 00 52 55 643714 | |
| **CC:** Eduardo Gonzales, Chief Financial Officer (Mexican Operations) | |
| **Company:** Grupo Mexico SA de CV | |
| **Fax:** 00 52 55 643714 | |

**Re: Promissory Note for $7,500,000.00 dated 23ʳᵈ October 2001**
**Issued by Asarco Incorporated**
**Guaranteed per Aval by Grupo Mexico SA de CV**
**Due Date 1ˢᵗ February 2002**

We refer to the telephone conversations last week with John Penn and Luis Saenz when you advised us that the above Promissory Note will not be paid on the due date by either Asarco Incorporated or Grupo Mexico SA de CV, pursuant to its aval.

We wish to advise you that we have now given instructions for this note to be protested against both Asarco Incorporated and Grupo Mexico SA de CV for non-payment.

We also remind you that a Promissory Note is a stand alone instrument and we ask you to honour your obligations to pay immediately.

For and on behalf of
Standard Bank London Ltd

Authorised Signatory                    Authorised Signatory

This facsimile is intended for use by the addressee only and may contain privileged and confidential information. If the transmission has been misdirected to you, please contact us immediately and ensure that its contents are not disclosed or used in any way.

A Member of The London Stock Exchange
Regulated by The Securities and Futures Authority

Standard Bank London Limited   Registered Company No 2130447
Registered Office, 25 Dowgate Hill, London EC4R 2SB



**JOHNWILKINSON**

PUBLIC NOTARIES
TRANSLATORS OF LANGUAGES
ALBERT BUILDINGS
49 QUEEN VICTORIA STREET
LONDON    EC4N 4SA

Telephone
(020) - 7329 2020/7329 2022
International
(+44 ) - 20 - 7329 2029/7329022
Facsimile
(020) - 7329 0025
International
(+44) - 20 - 7329 0025

E-Mail: Johnwwilkinson@BTinternet.com
BARRINGTON W. HOOKE, LL.B
Notary Public.

Mobile
(07802) - 47 56 49

UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND    )
ss

ENGLAND                                                CITY OF LONDON    )

**TO ALL TO WHOM THESE PRESENTS SHALL COME,** I,

**BARRINGTON WILLIAM HOOKE** , **NOTARY PUBLIC** of the

**CITY of LONDON**, by Royal Authority duly admitted and sworn

practising in the said City, Do Hereby Certify that on the day of the date

hereof before me personally came and appeared **MICHAEL**

**CHRISTOPHER MULLEN** the Deponent named and described in the

Affidavit hereunto annexed, who by solemn Oath which the said

Deponent then made before me in due form of law, did depose testify

and declare to be true the several matters and things mentioned and

contained in the said annexed Affidavit.

**IN FAITH AND TESTIMONY WHEREOF** I have hereunto set my

Hand and Seal of  Office and have caused the said Affidavit to be

hereunto annexed together with exhibits "B" to "E".

Dated in London the sixth day of June in the Year of Our Lord, two

thousand and two.

NOTARY PUBLIC, LONDON.
MY COMMISSION IS FOR LIFE

**APOSTILLE**

(Hague Convention of 5 October 1961 / Convention de La Haye du 5 octobre 1961)

1. Country: United Kingdom of Great Britain and Northern Ireland
   Pays: Royaume-Uni de Grande-Bretagne et d'Irlande du Nord

   This public document / Le présent acte public

2. Has been signed by       **B W Hooke**
   a été signé par

3. Acting in the capacity of   **Notary Public**
   agissant en qualité de

4. Bears the seal/stamp of    **The Said Notary Public**
   est revêtu du sceau/timbre de

                         Certified/Attesté

5. at London/à Londres          6. the/le   **07 June 2002**

7. by Her Majesty's Principal Secretary of State for Foreign and Commonwealth Affairs /
   par le Secrétaire d'Etat Principal de Sa Majesté aux Affaires Etrangères et du Commonwealth.

8. Number/sous No       **H034317**

9. Stamp:                        10. Signature:   **B. Amarteifio**
   timbre:



                         For the Secretary of State / Pour le Secrétaire d'Etat

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
STANDARD BANK LONDON,                              :

               Plaintiff,                 :

          -against-                        :    Index No. 602148/02
                            :    Ramos, J.
                            :    IAS Part 53
ASARCO INCORPORATED and                            :
GRUPO MEXICO, S.A. de C.V.                          :

              Defendants.                 :
-------------------------------------------------------------X

### MEMORANDUM OF LAW OF DEFENDANT GRUPO MEXICO IN OPPOSITION TO THE MOTION OF STANDARD BANK LONDON SEEKING AN ORDER OF ATTACHMENT

      Defendant Grupo Mexico, S.A. de C.V. ("Grupo Mexico"), by its attorneys, Kent, Beatty & Gordon, LLP, respectfully submits the instant memorandum of law in opposition to the motion of plaintiff Standard Bank London ("Standard") seeking a prejudgment attachment against Grupo Mexico's assets in New York.

### PRELIMINARY STATEMENT

      This case arises from a forfait financing agreement between defendant Asarco Incorporated ("Asarco") and non-party Trafigura A.G. ("Trafigura") in the amount of $7,500,000. Grupo Mexico, Asarco's parent, guaranteed the forfait "per aval."[1] Later, Standard purchased the forfait papers from Trafigura.

      Standard is seeking an order of attachment pursuant to CPLR § 6201(a)(1) against the New York assets of Grupo Mexico. In light of the fact that the New York courts have consistently held

---

[1]     A forfait is akin to a letter of credit or promissory note. This vehicle became popular for financing transactions in Eastern Europe after the collapse of communism. A "per aval" is a form of guaranty affixed to a note in a forfait transaction.

that attachment is a drastic and harsh remedy, this Court should exercise its discretion to deny the attachment because (i) it has no personal jurisdiction over Grupo Mexico, and/or (ii) an order of attachment would work an extraordinarily harsh result against Grupo Mexico while giving almost no benefit to Standard.

**FACTS**

According to its moving papers,[2] Standard is a banking corporation organized pursuant to the laws of the United Kingdom. (*See* Affidavit of Michael Mullen in Support of Motion for a Summary Judgment in Lieu of Complaint, dated June 6, 2002 ("Mullen Aff."), ¶3.) Standard is not authorized to do business in New York State. (*See* Affirmation of David J. Goodearl, dated June 27, 2002, ("Goodearl Aff."), ¶2.)

Grupo Mexico is a corporation organized and existing under the laws of the Republic of Mexico. Grupo Mexico is an international natural resources and transportation company with its principal place of business in Mexico City, Mexico. (*See* Affidavit of Daniel Tellechea, dated June 25, 2002 ("Tellechea Aff."), ¶2.) As of the end of 2001, Grupo Mexico had $7 billion in assets and $4.5 billion in liabilities. (*Id.*) Grupo Mexico does not maintain an office or otherwise have a presence in New York. (*Id.*, ¶3.) However, it does have two bank accounts with a total of roughly $19,000 in New York. These funds, untouched since the entry of the TRO, represent less than .0003% of Grupo Mexico's assets as of the end of 2001. (*Id.*, ¶8.)

---

[2]     On June 17, 2002, Standard commenced this action against Asarco and Grupo Mexico. As to Asarco, Standard moved for summary judgment in lieu of a complaint pursuant to CPLR § 3213. Additionally, by separate motion, Standard sought and obtained an *ex parte* temporary restraining order until it could be heard on the instant motion, brought by Order to Show Cause, for a prejudgment order of attachment against Grupo Mexico.

2

Asarco is a corporation organized under the laws of the State of New Jersey with its principal place of business in Arizona.  Asarco is a wholly owned subsidiary of Grupo Mexico. (*See* Tellechea Aff., ¶ 1.)

On or about October 23, 2001, Asarco entered into an agreement with Trafigura, a Swiss company with offices in Stamford, Connecticut, for the purchase and shipment of copper products. (Trafigura is not a party to this action.)  The financing for this transaction was accomplished through a forfait agreement.  That agreement called for defendant Grupo Mexico to sign a form of guaranty, referred to in such transactions as a "per aval." *See generally* Vincent Whittaker, *Perspective: The Quick Buck, International Financing, and Forfaiting*, 23 T. JEFFERSON L. REV. 249 (2001).  The note was signed by Grupo Mexico in Mexico and sent to Asarco in Arizona for its signature, before it was sent to Trafigura in Stamford, Connecticut.  (Tellechea Aff., ¶ 4.)

On or about November 1, 2001, plaintiff Standard purchased the forfait papers from Trafigura.  The note was payable at Chase Manhattan Bank (now JP Morgan Chase) on or after February 1, 2002. (Mullen Aff., ¶ 9.)  Apparently, the note was presented for payment by Standard, but payment on the note was declined.

## ARGUMENT

Plaintiff Standard seeks an order of attachment pursuant to CPLR § 6201(a)(1) on the grounds that defendant Grupo Mexico is a foreign corporation that is unauthorized to do business in the State of New York.

A prejudgment order of attachment serves two purposes – first, to obtain jurisdiction, and second, to provide security. *See Ziberg v. Robosonics*, 43 Misc. 2d. 134 (N.Y. App. Term. 1964). As set forth more fully below, the motion should be denied because Grupo Mexico does not maintain

enough of a presence here to subject it to personal or *quasi in rem* jurisdiction.[3] (*See* Tellechea Aff., ¶3.) Alternatively, if jurisdiction over Grupo Mexico is found to exist, there is no reason for an order of attachment to issue because the limited resources that it maintains in New York would not provide security to Standard, and Grupo Mexico is prepared to surrender them in any event.

New York "courts have repeatedly emphasized that attachment is a 'harsh' and 'extraordinary' remedy which must be construed 'strictly in favor of those against whom it may be employed.'" *Interpetrol Bermuda Ltd. v. Trinidad and Tobago Oil Co. Ltd.*, 135 Misc.2d 160, 167-68 (N.Y. Sup. Ct. 1987). Furthermore, attachment is a discretionary remedy, and is not granted as of right. *See Hale v. Kampa*, 91 Misc.2d 903 (N.Y. Sup. Ct. 1977). In the instant action, as will be demonstrated herein, Standard's request for an order of attachment should be denied.

## I.
### This Court Does not Have Personal or *Quasi in Rem* Jurisdiction Over Grupo Mexico

Any assertion of personal or *quasi in rem* jurisdiction over a party must meet the minimum contacts requirements established by the United States Supreme Court. *See Shaffer v. Heitner*, 433 U.S. 186 (1977). Under either jurisdictional theory,[4] there are insufficient contacts with New York for the reasonable exercise of personal jurisdiction over Grupo Mexico.

---

[3]    Moving in opposition to an order of attachment does not subject Grupo Mexico to personal jurisdiction, *see* CPLR 320, and Grupo Mexico specifically objects to this Court's exercise of personal jurisdiction over it.

[4]    There is not even the hint of CPLR § 301 jurisdiction in this matter. Grupo Mexico is an alien corporation, unlicenced to do business in New York. Furthermore, it does not have offices or employees in New York, nor does it solicit business in here. (*See* Tellechea Aff., ¶ 4.)

4

A.    **There is No Basis for the Assertion of Personal Jurisdiction Pursuant to CPLR § 302(a)(1)**

As an alien corporation with no substantial contacts with New York, Grupo Mexico's act of guarantying the debt of a foreign corporation payable within New York cannot be deemed sufficient to confer personal jurisdiction over it. *See Waldorf Associates v. Neville*, 141 Misc.2d 150, 153 (N.Y. Sup. Ct. 1988). Standard contends that jurisdiction over Grupo Mexico is proper under the "contracts anywhere" language of CPLR § 302(a)(1). The burden of establishing personal jurisdiction is on Standard, and, it is respectfully submitted, it has not carried that burden.

Plaintiff relies on the case of *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993), for the proposition that personal jurisdiction exists over Grupo Mexico. While that case, like this one, involves a forfait transaction, it is entirely contrary to settled law in the First Department that the mere guaranty of a payment in New York alone simply does not suffice to establish personal jurisdiction pursuant to CPLR § 302(a)(1). *See, e.g., Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner*, 243 A.D.2d 1 (1st Dep't 1998)(New York may not exert long-arm jurisdiction over non-domiciliary who was never physically present in New York, and who never agreed to provide any goods or services here); *Waldorf Associates*, 141 Misc. 2d at 153 (since a guaranty represents payment, it is neither a good nor a service for purposes of CPLR § 302(a)(1)).

In *Bank of Tokyo-Mitsubishi*, the First Department stated: "[T]he rule established in this Department is that the mere furnishing of a guaranty by a nondomiciliary on behalf of a foreign corporation does not serve to confer in personam jurisdiction upon our courts." *Bank of Tokyo-Mitsubishi, Ltd.*, 243 A.D.2d at 8. Put another way, *Petra Bank* is not binding on this or any other New York State court because it is a federal court decision that "predicted" how the New York State

5

Court of Appeals would rule on the matter. *See A.I. Trade Finance,* 989 F.2d at 81 ("We predict that the New York Court of Appeals would construe a financial guaranty payable in New York as a contract to perform services within the meaning of CPLR § 302(a)(1).")[5]

Further, the *Petra Bank* case is distinguishable because the plaintiff in that action was a New York resident. *See A.I. Trade Finance,* 989 F.2d at 82 ("Since the record indicates that A.I. Trade, a New York-based firm, was involved in the transaction at an early date and may be regarded as the recipient of the guaranty, we need not consider Petra Bank's claim that 'contracts anywhere' jurisdiction is only available to New York residents.") While the *Petra Bank* case did not address the argument that the "contracts anywhere" language was intended to be exclusively for the protection of New York residents (because A.I. Trade was a New York resident, which Standard is not, *see, e.g., A.I. Trade Finance, Inc.,* 989 F.2d at 82), the courts of New York recognize that the "contracts anywhere" language in CPLR § 302(a)(1) was created "so that a convenient forum will be available for New York residents." *Tonns v. Speigel's,* 90 A.D.2d 548 (2d Dep't 1982); *Waldorf Associates,* 141 Misc.2d at 153; *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*

---

[5]      The *Petra Bank* court (as well as the plaintiff in the instant action) relied on a line of cases developed in the Third Department for the proposition that a foreign corporation's guaranty of another foreign corporation's debt is sufficient to confer jurisdiction. *See A.I. Trade Finance,* 989 F.2d at 80-81. However, those cases are unavailing because we are in the First Department. The only First Department case relied on by Standard is *State Bank of India v. Taj Lanka Hotels,* 259 A.D.2d 291 (1st Dep't 1999), which is inapposite because it involved a forum selection clause designating New York as the exclusive jurisdiction for any action on the note. The Court of Appeals has yet to resolve this split between Departments, and, until it does, this Court is bound to follow the law of the First Department.

Although in the recent unreported case of *Westdeutsche Landesbank Girozentrale v. Asarco Incorporated and Grupo Mexico, S.A. de C.V.,* N.Y. Sup. Ct. # 600673/02 (April 26, 2002)(Gammerman, J.), jurisdiction was found over Grupo Mexico, that case has no precedential value and was, we respectfully submit, wrongly decided in that it ignored settled law of the First Department.

6

171 F.3d 779, 789 (2d Cir. 1999). The forfait was originally payable to a Swiss corporation with its United States offices in Connecticut. The forfait was then purchased by a British entity – Standard. Since plaintiff here is not a New York resident, and is not even authorized to do business here, CPLR § 302(a)(1) is inapplicable.

. Even should the Court find that the guaranty is a contract to provide goods or services in New. York, and further find that Grupo Mexico had the requisite minimum contacts with this forum, Standard must demonstrate that Grupo Mexico purposely availed itself of the privilege of doing business in New York, and if there is purposeful availment, the Court must examine five factors to determine whether the exercise of jurisdiction constitutionally would be reasonable. *See Burger King v. Rudzewicz*, 471 U.S. 462 (1985).[6]

Grupo Mexico did not purposefully avail itself of the privilege of doing business in New York. Grupo Mexico's only contact with New York, in relation to the underlying transaction, was the specification of a New York bank for payment from a non-party bank to a non-party under its guaranty of payment. That guaranty was executed in Mexico and delivered to Connecticut via Arizona. (*See* Tellechea Aff., ¶ 4.) Since the First Department makes clear that a foreign corporation's guaranty of a note payable in New York does not establish that the guarantor "voluntarily elected to invoke the benefits and protections of the laws of New York," *First National*

---

[6]       Although some courts have stated that since CPLR § 302 does not extend to the limit of due process a *Burger King* analysis may be undertaken in cursory fashion, *see Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theatre Produktion GMBH & Co.*, 150 F. Supp.2d 566, 572 (S.D.N.Y. 2001), in the instant case the *Burger King* analysis should be undertaken because of the serious due process concerns related to the exercise of jurisdiction based upon such tenuous contact with the forum.

7

*Bank and Trust Co. v. Wilson*, 171 A.D. 616 (1st Dep't 1991), Grupo Mexico has not purposefully availed itself of the privileges and laws of the State of New York.

In *Burger King*, the Supreme Court noted that "a State generally has a 'manifest interest' in providing its residents with a convenient forum ... ." *Burger King*, 471 U.S. at 473. Additionally, "where the defendant 'deliberately' has engaged in significant activities within a State, *Keeton v. Hustler Magazine, Inc.*, supra at 781, or has created 'continuing obligations' between himself and residents of the forum ... he manifestly has availed himself of the privilege of conducting business there ... ." *Id.* at 476. As Grupo Mexico did not conduct any business with New York residents, there can be no continuing obligation to New York residents, and, no purposeful availment.

Even if this Court finds that Grupo Mexico purposefully availed itself of this jurisdiction, it must then look to the five factor test articulated in *Burger King* to determine whether jurisdiction might reasonably be exercised. Those five factors are: 1) the burden on the defendant of litigating away from home; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interest of the interstate judicial system in efficient dispute resolution; and 5) the shared interest of the several states in furthering fundamental social policies. *See Burger King*, 471 U.S. at 476-78. Examining these factors leads to the conclusion that it would be unconstitutional to exercise personal jurisdiction over Grupo Mexico in this case.

Before doing so, it is important to note that the Supreme Court has held that when the defendant is an alien corporation, the exercise of jurisdiction under the *Burger King* analysis is dubious. *See Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987). The mere fact that the defendant is an alien corporation militates heavily against the exercise of jurisdiction. The *Asahi* Court stated: "The unique burdens placed upon one who must

8

defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114. In the *Asahi* case, as here, the defendant was an alien corporation. Additionally, as here, that defendant was transacting business with another alien corporation. Since, in terms of the relevant issue of the citizenship of the corporations, this case bears a close resemblance to *Asahi*, a similar result should obtain.

Even applying the *Burger King* analysis, jurisdiction should not be found. New York's interest in this matter is *de minimis*. In the instant case, not one of the parties is a New York resident, and the note was not made in New York. While it is true that New York does have a generic interest in international finance, its interest in adjudicating this particular dispute between two alien corporations and a foreign corporation, arising from a per aval executed in Mexico, delivered to Arizona, forwarded to Connecticut and then negotiated to Standard in London is limited at best.[7]

Plaintiff's interest in obtaining relief in a New York court is also not that great. Standard is a British corporation with no authority to do business in New York. It is attempting to invoke the privileges of the State of New York without undertaking any of the obligations that go with those privileges. Standard's invocation of New York's jurisdiction is merely an effort to take advantage of CPLR § 3213 and to avoid the uncertainty regarding an aval under English law, which is well known to plaintiff's counsel. *See, e.g.*, Michael Sullivan, *It's All in the Interpretation*, 4 Trade & Forfaiting Rev. (June 2001), attached to the Goodearl Aff. as Exh. A ("It is inescapable that English law does not accept' the concept of an aval."). The plaintiff's interest boils down to no more than

---

[7]    It is worth noting that the forfait transactions are far more common in Europe than in the U.S. In fact, the only reported litigations involving such financings in the U.S. involve the notes at issue in the *Petra Bank* case.

9

forum shopping to find where it might obtain judgment in the shortest amount of time, without regard to the insurmountable jurisdictional hurdles.

The fourth and fifth factors may be conflated due to the fact that both Standard and Grupo Mexico are alien corporations. The *Asahi* Court noted:

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum state.

*Asahi*, 480 U.S. at 115. In the instant case, the heavy burden of litigating in a foreign jurisdiction is present as to Grupo Mexico, and New York's interest in adjudicating this conflict between alien corporations, neither of which is authorized to do business within the State, is minimal. Therefore, the Court should find that it would be unreasonable to exercise jurisdiction over Grupo Mexico.

**B.    There is No Basis for the Assertion of Quasi in Rem Jurisdiction**

Before any order of prejudgment attachment may be granted, the Court must establish that the property sought to be attached is related to the underlying action. *See Banco Ambrosiano, S.p.A., v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, 67 (1984). As noted by the New York Court of Appeals, "when the property serving as the jurisdictional basis has no relationship to the cause of action and there are no other ties among the defendant, the forum and the litigation, *quasi in rem* jurisdiction will be lacking." *Id.* at 67. It is respectfully submitted that as Grupo Mexico's property in New York bears no relation to the underlying cause of action, and Grupo Mexico lacks the requisite minimum contacts with the forum, *quasi in rem* jurisdiction is lacking.

10

In this regard, Standard must demonstrate that the property maintained by Grupo Mexico in New York, *i.e.*, the $19,486.99 in the JP Morgan Chase account,[8] is related to the underlying cause of action. *See Marketing Showcase v. Alberto-Culver Co.*, 445 F. Supp. 755 (S.D.N.Y. 1978). Standard has not alleged any basis for a nexus between the multimillion dollar guaranty and the $19,486.99. Without such a nexus between the transaction and the property sought to be attached, the property, by itself, does not confer jurisdiction over Grupo Mexico. *See Desert Palace, Inc. v. Rozenbaum*, 192 A.D.2d 340 (1st Dep't 1993)(attachment of bank account proper only after a showing that account was used to induce line of credit at Caesar's Palace). Thus, attachment is improper.[9]

## II.
### Even if this Court Finds that Grupo Mexico is Subject to Jurisdiction, There Should be No Attachment Because it Provides No *Bona Fide* Security

As noted above, the issuance of an order of attachment is purely within the discretion of the Court. Due to the draconian nature of the order of attachment, unless both of the requisites, *i.e.*, jurisdiction and security, are shown, an order of attachment should not issue. Thus, even if this Court determines that CPLR § 302(a)(1) confers jurisdiction over Grupo Mexico (*see supra* Point I), an order of attachment should not issue because the requisite security is absent.

An attachment in New York would not provide additional security because (i) Grupo Mexico maintains minimal assets within the jurisdiction, and (ii) there is no reason to believe that it would

---

[8]     Grupo Mexico also has a bank account with the New York branch of Banco Nacional de México, S.A., but that account has a balance of $0. (Tellechea Aff., ¶ 5.)

[9]     Additionally, the arguments made relevant to personal jurisdiction regarding minimum contacts apply with equal force to *quasi in rem* jurisdiction. *See Shaffer*, 433 U.S. at 206.

11

"conceal" or "dissipate" its assets. As previously noted, the only assets Grupo Mexico maintains in New York are two bank accounts with a combined balance of approximately $19,000. (*See* Tellechea Aff., ¶ 5.) These assets provide no security to Standard in light of the fact that its alleged damages are $7,500,000. Put another way, the funds maintained in the New York accounts represent but a fraction of one percent of the total alleged damages. Therefore any attachment would have virtually no impact on Standard's collection effort.

In addition, there is no basis for a determination that Grupo Mexico will conceal or dissipate its assets. Standard submitted six news articles to "establish" that Grupo Mexico is likely to remove, conceal or dissipate its New York assets. (*See* Michael T. Sullivan's Affidavit of Emergency, dated June 11, 2002, Exh. F.) These articles, most of which are over six months old, reflect that a global downturn in copper prices has had a negative impact on Grupo Mexico, not that Grupo Mexico will take any affirmative act to remove, conceal or dissipate its assets.[10] *See, e.g., Trigo Hnos, Inc. v. Premium Wholesale Groceries, Inc.*, 424 F. Supp. 1125 (S.D.N.Y. 1976)(where defendant is continuing in business and attempting to prosper, there is no inference that it is attempting or will attempt to dissipate, conceal or remove assets). As the affiant for Grupo Mexico makes clear: "I take exception to the statement in Michael Sullivan's affidavit that Grupo Mexico 'may remove or encumber assets currently in New York.' As previously noted, Grupo Mexico has virtually no assets in New York ... and will do nothing to remove or encumber these limited assets." (Tellechea Aff., ¶ 8 (citation omitted).) Since there is no proof of any attempt to dissipate or to conceal assets, an

---

[10]     In fact, one of the articles deals only with Asarco, against whom no attachment is sought. In any event, none of the articles reveal an effort or intent to remove, conceal or dissipate Grupo Mexico's assets in New York (or anywhere else), but rather show a company attempting to work through a difficult period in the market for precious and nonprecious metals.

12

attachment order would be inappropriate. *See, e.g., Elliot v. Great Atlantic & Pacific Tea Co.*, 11 Misc. 2d 133, 135 (N.Y. Cty Ct. 1957); *Trigo Hnos, Inc.*, 424 F. Supp. at 1133.

Most significantly, Grupo Mexico has offered to deposit its New York assets with the Court (Tellechea Aff., ¶ 10). Such an offer of alternative security emasculates any argument that an order against Grupo Mexico should issue.

In this regard, when, as here, an attachment is likely to be oppressive and may work an irremediable hardship, the discretion of the court is called in the name of the oppressed. *See Trigo Hnos, Inc.*, 424 F. Supp. at 1133. Grupo Mexico is currently renegotiating its main international credit facilities, and an order of attachment – however minimal in a relative sense – issued in New York not only would be unnecessary, but might well interfere with its relations with those creditors. (*Id.*) Where the attachment would be of virtually no value to Standard, and would afford no more benefit than that offered through surrender of Grupo Mexico's New York assets, the Court should decline to issue the order of attachment, particularly where such an order would be draconian for Grupo Mexico.

## CONCLUSION

The requisites for the grant of an order of attachment are not present in this case. First, the Court does not have personal or *quasi in rem* jurisdiction over Grupo Mexico. Second, even assuming, *arguendo*, that there is jurisdiction, an order of attachment would not provide any real or

13

additional security to Standard. Finally, since such an order would be oppressive and viable alternatives are available, the Court should use its discretion and decline to issue the attachment.

Dated: New York, New York
        June 27, 2002

KENT, BEATTY & GORDON, LLP

By: _Jack A. Gordon_

Jack A. Gordon, Esq.
425 Park Avenue
New York, New York 10022
(212) 421-4300

*Attorneys for defendants Asarco Incorporated and Grupo Mexico, S.A. de C.V.*

14

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law of Defendant

Grupo Mexico in Opposition to the Motion of Standard Bank London Seeking an Order of

Attachment, dated June 27, 2002, and Affidavit of Daniel Tellechea, dated June 25, 2002, and

Affirmation of David J. Goodearl, Esq. in Opposition to Plaintiff's Motion for Prejudgment

Attachment, were served by hand delivery, on June 27, 2002, on Sullivan & Worcester, LLP, 565

Fifth Avenue, New York, NY 10017.

Dated: June 27, 2002
       New York, New York

David J. Goodearl

Sworn to me this 27th
day of June, 2002

Notary Public
CHRISTINE CHIFFRILLER
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01CH6033498
QUALIFIED IN BRONX COUNTY
COMMISSION EXPIRES NOVEMBER 22, 2005



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------X

STANDARD BANK LONDON,

                        Plaintiff,

      -against-

ASARCO INCORPORATED and
GRUPO MEXICO, S.A. de C.V.

                        Defendants.

--------------------------------------------------------------X

Index No. 602148/02
Ramos, J.
IAS Part 53

**FILED**

JUL 1 1 2002

NEW YORK
COUNTY CLERK'S OFFICE

NOTARIA 151
COTEJADA

FEDERAL DISTRICT OF MEXICO  )
                            ss.:
COUNTRY OF MEXICO        )

### AFFIDAVIT OF DANIEL TELLECHEA

DANIEL TELLECHEA being duly sworn, deposes and says:

    1.  I am the Chief Financial Officer of defendant Grupo Mexico, S.A. de C.V ("Grupo

Mexico") and I have held this position at Grupo Mexico and its predecessors since 1993. Although I

also currently hold the titles of Executive Vice President and CFO of Grupo Mexico's wholly owned

subsidiary, codefendant Asarco Incorporated ("Asarco") and I am a Director thereof, I submit this

affidavit on behalf of Grupo Mexico in opposition to plaintiff's motion seeking an order of

attachment against that entity.

    2.  Grupo Mexico is a major international natural resources and transportation company

located in Mexico at Baja California No. 200, Piso 6 Col. Roma Sur 06760 Mexico, D.F., MEXICO.

Grupo Mexico ranks as the world's third largest copper producer, fourth largest producer of silver

and fifth largest producer of zinc. Grupo Mexico ranks as the world's second largest company in

terms of known operating reserves. Grupo Mexico's assets at the end of 2001 totaled $7.0 billion and total liabilities amounted to $4.5 billion.

3. Asarco is the prime obligor on the instrument at issue in this litigation. Although Asarco has a limited presence in New York, and is authorized to, and does, conduct some business in New York, Grupo Mexico has no presence in New York and does not conduct business in New York.

4. Grupo Mexico has no offices in New York, no employees in New York and does not advertise here. The instrument at issue here was signed, per aval, on behalf of Grupo Mexico by me in Mexico, signatures pages were then sent, via private carrier, to Asarco in Arizona to be signed by Mr. Genaro Larrea, Vice President of Grupo Mexico. From Asarco in Arizona, the instrument was delivered to Trafigura AG in Connecticut.

5. Grupo Mexico has no assets in the State of New York, other than two bank accounts, one at JP Morgan Chase with a balance of $19,486.99 and the other at Banco Nacional de Mexico, S.A., with a balance of $0. These accounts have been inactive since receipt of notice of the Temporary Restraining Order ("TRO") issued against Grupo Mexico by this Court. To explain, the Honorable Justice Charles Ramos issued a TRO enjoining Grupo Mexico from "transferring, selling, concealing, depositing or otherwise disposing of or interfering with any and all monies, property or other assets of Grupo Mexico in the possession or custody of, in the name of, or belonging to Grupo Mexico up to the sum of $7,500,000.00." That TRO was faxed to Grupo Mexico's offices in Mexico after the close of business on June 19, 2002. I, as CFO, first became aware of the entry of this TRO shortly thereafter.

6. Except for occasional "channeling" transactions, Grupo Mexico's New York accounts have seen virtually no activity for several months. By "channeling" transactions, I mean that funds

2