# EXHIBIT 21
# TO
# EXHIBIT 4

**RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417
Telephone: 602/258-7701
Telecopier: 602/257-9582

David W. Kash – 013571
Kara A. Ricupero – 020647

Attorneys for Plaintiff Seaboard Surety Company

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Seaboard Surety Company, a New York corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Grupo Mexico, S.A. de C.V., a Mexican corporation; and Does I-CI,<br><br>　　　　　Defendant. | No. CV06-0134 PHX-SMM<br><br>Plaintiff Seaboard Surety Company's Motion to Vacate Order and Permit Discovery Beyond the Issue of Personal Jurisdiction |

Plaintiff Seaboard Surety Company ("Seaboard Surety"), by and through counsel undersigned, hereby moves this to enter an Order vacating the portion of the Court's previous Order limiting discovery to the sole issue of personal jurisdiction and permitting discovery relating to the scope of the underlying agreement. This Motion is supported by the following Memorandum of Points and Authorities and by the full record herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

Seaboard Surety brought the present action against Defendant Grupo Mexico S.A. de C.V. ("Grupo Mexico") seeking enforcement an agreement to guarantee the indemnity obligations of ASARCO under certain reclamation bonds relating to mines within the State of Arizona. *See* Complaint. Subsequently, Grupo Mexico filed a motion seeking dismissal of the above-captioned action based on its assertion that this Court lacked personal jurisdiction over Grupo Mexico, a foreign corporation, under the laws governing both general and specific jurisdiction relating to the subject transaction.

737799.1
12/7/2006

1   *See* Dkts. 9-10.  In bringing the Motion, Grupo Mexico relied primarily on an Affidavit

2   executed by Grupo Mexico's in house legal counsel, swearing that no such jurisdiction

3   existed.  *See* Exhibit A to Dkt. 10.

4       In response, Seaboard Surety sought an order from this Court permitting

5   discovery on the issue of personal jurisdiction.  *See* Dkt. 12.  Subsequently, this Court

6   entered an Order permitting discovery "only" as to the issue of personal jurisdiction.

7   Dkt. 19. After a hearing on a discovery dispute between the parties, this Court set forth

8   a briefing schedule relating specifically to briefing of the personal jurisdiction issue.

9   Dkts. 21-27.

10      The Court's most recent Order extended the deadline for discovery on the issue

11  of personal jurisdiction to Monday November 6, 2006.  *See* Dkts. 41-42.  During the

12  discovery process, Grupo Mexico informed Seaboard Surety that, despite the fact that

13  he was no longer employed by Grupo Mexico or any of its affiliates, the deposition of

14  Daniel Tellechea – previous CFO and board member of Grupo Mexico and previous

15  president of ASARCO – should be set up through Grupo Mexico's counsel and that Mr.

16  Tellechea would be represented by Grupo Mexico's attorneys at that examination.  The

17  deposition of Daniel Tellechea took place on Friday November 3, 2006.  *See* Dkt. 45.

18      After having expended more than $100,000.00 to conduct extensive discovery on

19  the issue of personal jurisdiction over the course of the past five (5) months, which

20  included propounding and responding to numerous to written discovery requests, the

21  execution of numerous third party subpoenas, extensive review of thousands of pages of

22  documents produced pursuant to those subpoenas, and taking and defending five (5)

23  depositions,[1]  in a letter dated November 8, 2006 Grupo Mexico informed Seaboard

24  Surety that they no longer believed it would be "fruitful for [Grupo Mexico] to contest

25  that the Court has specific (or transactional) personal jurisdiction over Grupo Mexico in

26  this case."  According to the letter, Grupo Mexico's assessment was based solely on

27  _____

28  [1] While Seaboard Surety is not making a claim for attorneys' fees related to this
    discovery under the applicable rules, it reserves the right to do so in the future.
    737799.1
    12/7/2006

1  their evaluation of the deposition testimony of their own witness, Mr. Tellechea.

2  Specifically, Grupo Mexico referenced Mr. Tellechea's admission that the February 16,

3  2001 letter agreement, which provides one of the bases for Seaboard Surety's claims

4  herein was transmitted "by facsimile to Arizona."[2]  Presumably, such information could

5  have been easily obtained by Grupo Mexico *prior* to conducting five months of

6  extensive and expensive discovery, by an interview with Mr. Tellechea, the executive

7  who *executed* the subject letter agreement on behalf of Grupo Mexico.

8         However, Grupo Mexico now asserts that it would like to contest subject matter

9  jurisdiction, arguing the case is not ripe because, it claims, the agreement at issue is in

10  the form of an indemnity, that no demand for payment has been made on Seaboard

11  Surety, and that a claim for indemnity does not accrue until such a demand has been

12  made.  This interpretation of the agreement is apparently based on the use of the word

13  "indemnify" in the letter agreement.  Conversely, Seaboard Surety contends that the

14  agreement is in the nature of a guaranty, that the letter agreement was intended to cover

15  all the obligations of ASARCO under the bonds, and that Seaboard Surety has in fact

16  already received a demand and incurred losses with regard to the agreement.

17         Grupo Mexico's November 8, 2006 letter further sought an agreement by

18  Seaboard Surety to simply substitute the personal jurisdiction briefing schedule for the

19  new basis for dismissal, the issue of subject matter jurisdiction.  Despite that fact that

20  the discovery conducted between the Court's issuance of its May, 2006 Order and the

21  close of discovery November 6, 2006 was *expressly limited* to the issue of personal

22  jurisdiction, Grupo Mexico expects Seaboard Surety to forgo any further discovery

23  related to interpretation of the subject agreement and the parties' intentions and

24  understanding of that agreement.  This is the heart of the case.  Grupo Mexico has

25  _____

26  [2] Seaboard Surety's recitation of Grupo's current position is neither a concession that
    general personal jurisdiction could not be established nor that the facsimile transmission
27  to Arizona would be the sole basis for establishing specific (transactional) jurisdiction
    over Grupo with regard to this matter, in light of the documents and testimony obtained
28  over the five (5) month period during which this discovery was conducted.

737799.1
12/7/2006

1    rejected Seaboard Surety's request to take additional discovery, in light of its new

2    position.

3        Under Arizona law, it is well-established that "[t]he character of a contract is

4    determined by its provisions and *not by its label.*" *Huskie v. Ames Bros. Motor and*

5    *Supply Co., Inc.*, 139 Ariz. 396, 401, 678 P.2d 977, 982 (App. Ct. 1984) (emphasis

6    added); *see also Kintner v. Wolfe*, 102 Ariz. 164, 167, 426 P.2d 798, 801 (1967)

7    (holding "'[t]he nature of an instrument is determined by the effect the law gives to its

8    terms and not by the title by which the parties have designated the instrument.'")

9    (quoting *Woolsey v. Lassen*, 91 Ariz. 229, 238, 371 P.2d 587, 592 (1962)). Further,

10   contracts should be construed to give effect to the intention of the parties. *See, e.g.,*

11   *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152-154, 854 P.2d 1134, 1138-

12   1140 (1993); *Russell v. Golden Rule Min. Co.*, 63 Ariz. 11, 24, 159 P.2d 776, 782

13   (1945). Parole evidence offered to prove the intention of the parties can be considered

14   by the court, particularly where – as here – there is dispute as to the understanding and

15   meaning of the language used by the parties. *See, e.g. Taylor,* 175 Ariz. at 154, 854

16   P.2d at 1140.

17       The interpretation of the agreement and scope of Grupo Mexico's obligations

18   thereunder form the basis for this lawsuit. In a recent letter to Seaboard Surety

19   regarding Grupo Mexico's subject matter jurisdiction claim, Grupo Mexico itself stated

20   that the questions of whether the agreement is strictly in the form of an indemnity and

21   what losses and obligations are covered is "largely a legal issue," thereby conceding

22   that this is *not solely* an issue of law. Now that Grupo Mexico has conceded personal

23   jurisdiction, Seaboard Surety should be allowed to take discovery on the issue that is at

24   the very heart of this case.

25       In light of the foregoing, Seaboard Surety respectfully requests that this Court

26   order Grupo Mexico to file a general appearance in this case since it has abandoned

27   personal jurisdiction as a defense and vacate that part of the May 12, 2006 Order

28   limiting discovery and enter an Order expressly permitting discovery on the remainder

737799.1
12/7/2006

1  of the case, which includes the interpretation of the terms and obligations intended by

2  the parties with regard to the February 2001 letter agreement.

3        DATED this 7th day of December, 2006.

4                        RYLEY CARLOCK & APPLEWHITE

6                        By/s/ David W. Kash

7                           David W. Kash
                           Kara A. Ricupero

8                           One North Central Avenue, Suite 1200
                           Phoenix, Arizona  85004-4417

9                           Attorneys for Plaintiff Seaboard Surety
                           Company

10

11  ORIGINAL of the foregoing mailed
   this 7th day of December, 2006, to:

12  George Brandon
   Brian D. Kaiser

13  Squire, Sanders & Dempsey, LLP
   40 North Central Avenue, Suite 2700

14  Phoenix, Arizona 85004-4498
   **Attorneys for Defendant Grupo Mexico S.A. de C.V.**

15

16  By:   /s/ Dawn J. Kimmelman

17

18

19

20

21

22

23

24

25

26

27

28

737799.1
12/7/2006

*Proposed Order*

1   **RYLEY CARLOCK & APPLEWHITE**
    One North Central Avenue, Suite 1200
2   Phoenix, Arizona 85004-4417
    Telephone: 602/258-7701
3   Telecopier: 602/257-9582

4   David W. Kash – 013571
    Kara A. Ricupero – 020647
5

6   Attorneys for Plaintiff Seaboard Surety Company

            **IN THE UNITED STATES DISTRICT COURT**
7
               **FOR THE DISTRICT OF ARIZONA**
8

| | |
|---|---|
| 9   Seaboard Surety Company, a New York corporation, | No. CV06-0134 PHX-SMM |
| 10                Plaintiff, | Plaintiff Seaboard Surety Company's and Defendant Grupo Mexico S.A. de C.V.'s Stipulation to Permit Discovery Beyond the Issue of Personal Jurisdiction |
| 11     vs. | |
| 12   Grupo Mexico, S.A. de C.V., a Mexican corporation; and Does I-CI, | |
| 13                Defendant. | |
| 14 | |

15        Plaintiff Seaboard Surety Company ("Seaboard") and Defendant Grupo Mexico,

16   S.A. de C.V.'s ("Grupo Mexico"), collectively the Parties, by and through counsel

17   undersigned, hereby stipulate and agree as follows:

18        1.     That, in light of Grupo Mexico's decision to concede that this Court can

19   rightfully exercise specific personal jurisdiction over Grupo Mexico with regard to this

20   case, that the limitation on discovery pursuant to the Court's Order dated May 12, 2006,

21   should be vacated;

22        2.     That Grupo Mexico will enter a general appearance in this case within ten

23   (10) days from the filing of this Stipulation;

24        3.     That the parties may each take reasonable discovery relating to the

25   remaining issues presented in this case.

26

27

28

738028.1
12/12/2006

1    RESPECTFULLY SUBMITTED this 12th day of December, 2006.

2

3    RYLEY CARLOCK & APPLEWHITE            SQUIRE SANDERS & DEMPSEY L.L.P.

4    By                                   By
        David W. Kash                         George Brandon
5        Kara A. Ricupero                     Mitchel B. Axler
        One North Central Avenue              Brian Kaiser
6        Suite 1200                           Two Renaissance Square
        Phoenix, Arizona 85004-4417           40 North Central Avenue, Suite 2700
7        *Attorneys for Seaboard*             Phoenix, Arizona 85004-4498
8         *Surety Company*                    *Attorneys for Grupo*
                                              *México S.A. de C.V.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

2  ORIGINAL of the foregoing electronically
   delivered this /2th day of December, 2006, to:

3  George Brandon
   Brian D. Kaiser

4  Squire, Sanders & Dempsey, LLP
   40 North Central Avenue, Suite 2700

5  Phoenix, Arizona 85004-4498
   **Attorneys for Defendant Grupo Mexico S.A. de C.V.**

6

7  By: _Laura J. Grundleman_

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Seaboard Surety Company, | Misc. Case No. 0:06 ML 51 - JNE-SRN |
| Plaintiff, | (Original Case No. CV06-0134 PHX-SMM (District of Arizona)) |
| v. | **GRUPO MÉXICO S.A. de C.V.'s MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ST. PAUL FIRE & MARINE INSURANCE COMPANY'S RESPONSES TO GRUPO MÉXICO'S RULE 45 SUBPOENA DUCES TECUM** |
| Grupo México, SA de CV, and Does I-CI, | |
| Defendants. | |
| | (Oral Argument Requested) |

## Preliminary Statement

On June 5, 2006, Grupo México S.A. de C.V. ("Grupo México") served St. Paul

Fire and Marine Insurance Company ("St. Paul") with a Rule 45 Subpoena Duces Tecum

(the "Subpoena"). [See Proof of Service, Exhibit A.[1]] The Subpoena seeks five

categories of documents related to jurisdictional discovery ordered in a case styled

*Seaboard Surety Company v. Grupo Mexico, SA de CV*, Case No. CV06-0134-PHX-

SMM, filed in the Federal District Court for the District of Arizona (the "Arizona

Litigation"). [See Amended Complaint,[2] Exhibit B.] St. Paul is not a party to this action.

The Subpoena required St. Paul to produce the requested documents on June 19, 2006 at

---

[1] All Exhibits referenced in this Memorandum are attached to the Affidavit of Brian Kaiser in Support of Grupo México's Motion to Compel St. Paul Fire & Marine Insurance Company's Responses to Grupo México's Rule 45 Subpoena Duces Tecum, which is being filed concurrently herewith.

- 1 -

SCANNED
JUN 2 3 2006
U.S. DISTRICT COURT MPLS

10:00 a.m. [*See* Subpoena In A Civil Case, Exhibit C.]  St. Paul failed to timely produce

any responsive documents.  [*See* Affidavit of Brian Kaiser in Support of Grupo México's

Motion to Compel ("Kaiser Aff.") at ¶ 16, filed concurrently herewith.]

St. Paul has objected to the Subpoena on the grounds that it is overly broad, vague,

is irrelevant because it seeks documents purportedly beyond the scope of the discovery,

and is unnecessarily burdensome for failing to allow reasonable time for compliance and

because compliance with the subpoena may purportedly be costly.  [*See* E-mail string

between Kaiser and Jason Greves, Esq., June 15, 2006 to June 16, 2006, Exhibit D; Ltr.

from Greves to Kaiser, June 16, 2006, Exhibit E; Ltr. from Greves to Kaiser, June 21,

2006, Exhibit F.]  However, St. Paul has refused to articulate a basis for its contentions

and has instead proposed to provide only those documents *St. Paul* deems appropriate

and then only two weeks after the due date stated in the Subpoena.  [Ex. E at 2.]  Grupo

México has endeavored to work out a compromise with St. Paul, but due to St. Paul's

refusal to offer a specific and reasoned basis for its objections Grupo México has been

forced to apply to this Court to compel St. Paul's compliance with the Subpoena.

### Factual Background

This case involves a lawsuit filed by Seaboard Surety Company ("Seaboard") in

Arizona.  Seaboard is a subsidiary of St. Paul.  [Ex. B ¶ 1.]  The lawsuit seeks to hail

Grupo México, a Mexican corporation, into an Arizona court.  Grupo México sought

dismissal of the Complaint on the ground that the Arizona Court lacks personal

---

[2] Note that although the case was originally filed in Arizona state court, Grupo Mexico
removed the case to the United States District Court for the District of Arizona on

jurisdiction over Grupo México.  In response, Seaboard contended that Grupo México was subject to specific jurisdiction in Arizona on the basis of a one-sentence letter (the "Letter Agreement")[3] that Grupo México faxed from Mexico City to St. Paul in New York.  [*See* P. Mot. for Extension of Time to Respond to D. Mot. to Dismiss and Mot. to Permit Jurisdictional Discovery at 4-5, Exhibit G.]  Seaboard further contended that Grupo México was subject to jurisdiction in Arizona because Grupo México's purported refusal to make payments to St. Paul had caused economic effects in Arizona.  [*Id.*] Finally, Seaboard contended that Grupo México was subject to general jurisdiction on the theory that Grupo México is the alter ego of its subsidiary corporation ASARCO LLC ("ASARCO").  [*Id.* at 3-4.]  Seaboard requested jurisdictional discovery before responding to the motion to dismiss. [*Id.*]  On May 12, 2006, the Arizona District Court granted Seaboard's request and gave the parties 90 days in which to conduct jurisdictional discovery. [*See* Order, May 12, 2006, Exhibit H.]

The documents sought in Grupo México's Subpoena go to the heart of the jurisdictional discovery ordered by the Arizona District Court.  Indeed, the Subpoena requests call for documents related to: (1) the Letter Agreement upon which Seaboard's claim of specific jurisdiction relies; (2) the negotiations surrounding the execution of the Letter Agreement; (3) the Reclamation Bonds issued by St. Paul to ASARCO that were the basis for the Letter Agreement; (4) the General Agreement of Indemnity executed by ASARCO through which Grupo México purportedly caused economic consequences in

January 6, 2006.

- 3 -

Arizona; and (5) documents regarding the Bureau of Land Management, the U.S. Department of the Interior, Bureau of Indian Affair, and the Xavier Allottees Association (the "Allottees") concerning Grupo México and/or ASARCO which relate to a lawsuit by the Allottees based upon the Reclamation Bonds. [*See* Ex. C at 4-5.] These documents are important to the issue of whether Grupo México is subject to specific jurisdiction, general jurisdiction, and/or alter-ego jurisdiction in the State of Arizona.

After being served with the Subpoena on June 5, 2006, St. Paul waited ten days before attempting to contact counsel for Grupo México. [Kaiser Aff. at ¶ 7.] On June 15, 2006, St. Paul sent an e-mail to Grupo México demanding that the Subpoena be withdrawn in its entirety on the ground that it was improper and that the documents requested were "not limited to the order of the Arizona Court." [Ex. D at 2.] St. Paul admitted that the documents requested in category one of the Subpoena were relevant and discoverable but nonetheless refused to timely produce such documents. [Ex. D at 2 ("[W]e would concede that Request Number 1 falls within the order of the Court . . . .").]

On June 16, 2006, in response to St. Paul's contentions, Grupo México provided St. Paul with a detailed response in which Grupo México outlined the reasons each and every category of documents in the Subpoena was directly related to the issue of jurisdiction and therefore consistent with the discovery ordered by the Arizona District Court. [Ltr. from Kaiser to Greves, June 16, 2006, Exhibit I.]

---

[3] A copy of the Letter Agreement is attached as Exhibit 1 to the Subpoena (Ex. C to Kaiser Aff.).

- 4 -

In response, St. Paul sent a letter to Grupo México at 5:00 p.m. on Friday, June 16, 2006 in which St. Paul contended that it objected to the Subpoena on the grounds that it was "over broad, vague and unnecessarily burdensome for failing to allow a reasonable time for compliance." [Ex. E at 2, ¶ 3.] As with St. Paul's earlier e-mail regarding the Subpoena, this letter also fails to articulate any basis for the objections to the Subpoena. Moreover, the letter states that while St. Paul is willing to "comply" with the Subpoena, St. Paul proposes to provide responses two weeks late and then only to provide those documents that *St. Paul* believes fall within the scope of the discovery ordered by the Arizona District Court. [*Id.* at 2 ("St. Paul's production of documents will be those documents, if any exist, in the possession of St. Paul, within the scope of the Subpoena and within the scope of the Court Order.").] Such a response offer little assurance that even with additional time St. Paul will fully comply with its obligations under the Subpoena. [Kaiser Aff. at ¶ 13.]

Nonetheless, on June 20, 2006, Grupo México responded to St. Paul's June 16th letter by offering to grant St. Paul additional time to comply with the Subpoena provided that St. Paul agreed to provide all documents responsive to the Subpoena. [Ltr. from Kaiser to Greves, Jun. 20, 2006, Exhibit J.] Instead, St. Paul chose to stand on its meritless objections and indeed to raise new and untimely objections. [Ex. F at 1.] St. Paul now contends for the first time that electronic searches for responsive documents may be expensive and time consuming. [*Id.* ("St. Paul also continues to object to any search that requires burdensome, time consuming and costly searches of electronically stored documents.").] St. Paul, a large insurance carrier, stands to benefit directly from

- 5 -

Seaboard's claim in the Complaint, which seeks $11 million in damages. "Expense" is relative and St. Paul offers no concrete basis upon which to gauge whether the "expense" it identifies constitutes an undue burden in this case. Moreover, St. Paul gives no specific explanation of what would be time consuming about electronic searches which one would expect to be less burdensome than manual searches.

Finally, St. Paul again states that Grupo México should wait two more weeks while St. Paul searches to determine if St. Paul "even possesses any documents related to the subpoena." [Id.] St. Paul further contends that it has begun searching but has yet to find any responsive documents. [Id.] St. Paul's continued assertion of baseless objections coupled with its claim that it may not possess any responsive documents causes Grupo México great concern. Two of the documents attached to Seaboard's Complaint are St. Paul documents. The Letter Agreement was sent via facsimile to St. Paul in New York. The General Agreement of Indemnity[4] is an insurance contract which names St. Paul as one of the parties. It would be quite unusual if an insurance company issuing an insurance policy did not possess documents related to that contract, let alone the insurance contract itself.

As with all of St. Paul's correspondence in this matter, its most recent letter seeks only to delay compliance with the Subpoena while at the same time refusing to offer any reasoned basis for such delay and attempting to rely on generalized and baseless objections to avoid compliance. As of this filing, St. Paul has not produced or even

---

[4] A copy of the General Agreement of Indemnity is attached as Exhibit 3 to the Subpoena (Ex. C to Kaiser Aff.).

agreed to produce a single document. [Kaiser Aff. ¶ 16.] As such, Grupo México requests that this Court compel St. Paul to immediately and fully comply with the Subpoena.

**ARGUMENT**

I.    <u>**Governing Standards for Compliance with a Subpoena**</u>

The only restriction under Rule 45(b) is that the demand of a subpoena not be "burdensome or oppressive." *EEOC v. Quick Shop Markets, Inc.*, 526 F.2d 802, 803 (8th Cir. 1975). "It is clear that . . . relevance of the subpoenaed information has an important bearing upon the determination of a claim that a subpoena duces tecum is unreasonable or oppressive . . . and that a sufficient showing of need for the information will suffice to overcome such objections. . . ." *New York State Energy Research & Dev. Auth. v. Nuclear Fuel Serv., Inc.*, 97 F.R.D. 709, 712 (W.D.N.Y. 1983) (citation omitted).

The test of relevance under Rule 26(b) of the Federal Rules of Civil Procedure applies to Rule 45. *Id.* at 712. Under Rule 26(b)(1), parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Relevant information need not be admissible "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *See In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 428 (N.D. Ill. 1977).

Requests for discovery must be complied with unless it is clear that there is no possibility that the information sought may be relevant to the subject matter of the litigation. *See Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384 (N.D. Ill. 1990). The party opposing discovery has the burden of showing that the discovery requests are

- 7 -

overly burdensome, *Trane Co. v. Klutznick*, 87 F.R.D. 473 (W.D. Wis. 1980), or that the requested discovery is not relevant. *Flora v. Hamilton*, 81 F.R.D. 576 (M.D.N.C. 1978). Importantly, "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed 'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw*, 211 F.R.D. 658, 663 (D. Kan. 2003) (Citations omitted). Given these liberal standards and the extraordinary nature of the requested relief sought in the Arizona Litigation—relief from which St. Paul itself stands to benefit—the discovery sought from St. Paul is highly relevant. Accordingly, Grupo México's Motion to Compel should be granted.

II.    **St. Paul has Failed to Provide Any Basis for its Objections and Therefore is not Entitled to Withhold Responsive Documents.**

Objections to discovery requests must be specific. *See Employers Commer. Union Ins. Co. of Am. v. Browning-Ferris Indus.*, 1993 U.S. Dist. LEXIS 21098 (D. Kan. Apr. 5, 1993). Objections that discovery requests are overly broad, burdensome, oppressive and irrelevant are too general to justify a failure to respond. "[B]roadness alone is not sufficient justification to refuse enforcement of a subpoena so long as the material sought is relevant. *Adams v. FTC*, 296 F.2d 861, 867 (8th Cir. 1961), *cert. denied*, 389 U.S. 864 (1962). Indeed, in *Browning-Ferris, supra*, the Court observed that "[t]he familiar litany [of] overly broad, burdensome, oppressive, irrelevant will not alone constitute a

successful objection [to a discovery request]." *Id.*; *see also Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 303 (D. Kan. 1996) ("objections [to discovery] must be specifically stated."). Thus, objections such as over breadth or oppression will not be sustained unless the objecting party specifically states the amount of time and resources it would require to respond to the discovery requests. *See Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987) (rejecting unsupported statements of counsel that subpoena was burdensome).

Over the course of numerous e-mail messages and letters exchanged between the parties St. Paul has offered various generalized objections to the Subpoena. At no time has St. Paul provided the kind of specific articulation of its objections that Rule 45 requires. Having failed to offer a legitimate basis for withholding responsive documents St. Paul should be ordered to immediately comply with the Subpoena.

**II.    Statement of Discovery Request, Objections thereto, and the Reasons Said Objections are Baseless.**

Pursuant to Local Rule 37.2, Grupo México offers the following description of the documents requested in the Subpoena, St. Paul's objections thereto, and the reasons the objections fail.

**A.    St. Paul has admitted that documents requested in category one of the Subpoena are subject to disclosure.**

Grupo México's Subpoena request number one reads as follows:

All Documents and Correspondence concerning the attached letter agreement (the "Letter Agreement") [attached hereto as Ex. 1] executed by Grupo México on or about February, 16, 2001 addressed to St. Paul in New York via facsimile including, but not limited to, any documents referring to, discussing, or describing the Letter Agreement.

-9-

[Ex. C, at 4.]

St. Paul's initial response to this request was to concede that these documents are discoverable. [Ex. D at 2.] St. Paul later objected to this request, and apparently all of the requests in the Subpoena on the grounds that they are overboard, vague, and irrelevant. [Ex. E at 2.] St. Paul fails to offer any specific articulation of its objections regarding the documents requested in category one of the Subpoena. Having failed to specify its objections St. Paul is obliged to comply with the Subpoena.

After initially conceding that the requested documents are relevant and discoverable St. Paul should not now be permitted to interpose unsubstantiated and generalized objections. The documents requested regarding the Letter Agreement are highly relevant. It is on the basis of the Letter Agreement that Seaboard has contended that Grupo México is subject to specific jurisdiction in Arizona. [Ex. G at 4-5.] Moreover, the Letter Agreement was sent by facsimile from Grupo México to St. Paul which would indicate that other documents related to the Letter Agreement are also possessed by St. Paul. Grupo México has a right to discover any and all documents concerning the Letter Agreement in the possession of St. Paul in order to defend against Seaboard's claims.

**B.    St. Paul has failed to articulate any specific objection to the documents requested in category two of the Subpoena.**

Grupo México's Subpoena request number two reads as follows:

All Documents and Correspondence concerning any negotiations surrounding the Letter Agreement described in request number one above including, but not limited to, internal or external correspondence, date

books or calendars referring to contacts with Grupo México, and telephone logs or records referring to contacts with Grupo México.

[Ex. C. at 4.]

St. Paul has objected to request number two, as it apparently has to all the other document requests in the subpoena, on the grounds that they are overboard, vague, and irrelevant. [Ex. E at 2.] St. Paul fails to offer any specific articulation of its objections regarding the documents requested in category two of the Subpoena. Having failed to specify its objections St. Paul is obliged to comply with the Subpoena.

Indeed, as Grupo México pointed out in its June 16, 2006 letter, the Arizona District Court's Order specifically recognizes that documents related to the negotiations of the Letter Agreement are relevant and discoverable. [Ex. H at 8 ("The Court disagrees with Grupo Mexico that permitting Seaboard to engage in discovery regarding the negotiations for the Letter Agreement will not assist the Court in determining whether Arizona has specific jurisdiction over Grupo Mexico.").] The documents requested in category two of the Subpoena are relevant and discoverable and St. Paul should be compelled to produce responsive documents immediately.

**C.    St. Paul has failed to timely articulate its objections to the documents requested in category three of the Subpoena.**

Grupo México's Subpoena request number three reads as follows:

All Documents and Correspondence concerning three "Reclamation Bonds" [attached hereto as Ex. 2], issued in or about February 2001 by St. Paul Surety with ASARCO as principal and with the United States Department of Interior as obligee and described as bonds No. 420688 in the amount of $7 million, No. 420699 in the amount of $760,000, and No. 420670 in the amount of $3.5 million, including, but not limited to, correspondence with Grupo México or ASARCO, correspondence with

third parties, and memoranda or internal notes or files concerning Grupo México or ASARCO.

[Ex. C, at 4-5.]

St. Paul had previously objected to request number three on the general grounds that it was overboard, vague, and irrelevant. [Ex. E at 2.]  In its June 21, 2006 letter, St. Paul for the first time contends that this request is objectionable on the ground that it is overly broad and vague in that it requests "'all' documents 'concerning' the reclamation bonds." [Ex. F at 1.]  Pursuant to Rule 45(c)(2)(B) a party is required to serve its written objections to a subpoena before the dated specified for compliance.  "Failure to serve timely objections waives all grounds for objection, including privilege." *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002).  Rule 45(c)(2)(B) requires the recipient of a subpoena "to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'"  *Id.* (citing *In re DG Acquisition Corp.,* 151 F.3d 75, 81 (2d Cir. 1998)).

Here, St. Paul, through its June 21, 2006 letter, attempts to interpose additional objections after the date for compliance with the Subpoena has passed in direct violation of Rule 45(c)(2)(B).  As such, the objections raised in that letter, and all objections not previously raised by St. Paul, are waived.

Nonetheless, even giving this objection consideration it is apparent that it has no basis.  There is nothing vague about the term "all" and the term "concerning" is defined in the Subpoena.  St. Paul offers no explanation regarding its claim of over breadth.  The mere fact that the request seeks all documents concerning the Reclamation Bonds does

- 12 -

not on its face make the request over broad. Indeed, the Reclamation Bonds are cited in the Amended Complaint as part of the basis of Seaboard's claims. Seaboard alleges that the Reclamation Bonds were "issued at the request of ASARCO and Grupo México." [Ex. B ¶ 5.] Seaboard then goes on to contend that the issuance of the Reclamation Bonds had an impact in Arizona which Seaboard contends establishes a basis for jurisdiction. [Ex. B. ¶¶ 6-9.] Grupo México is entitled to discover documents and communications related to the Reclamation Bonds because Seaboard contends those bonds and the events surrounding their issuance offer a basis for jurisdiction in Arizona.

Moreover, as Grupo México has previously explained to St. Paul, the Reclamation Bonds are the focus of the Letter Agreement. [Ex. I at 3-4.] Pursuant to the Letter Agreement Grupo México purportedly agreed to indemnify St. Paul with respect to the Reclamation Bonds. The documents sought by this request are those related to the Reclamation Bonds that concern or discuss Grupo México or ASARCO. To the extent that Seaboard seeks to rely on the Reclamation Bonds as a jurisdictional contact with Arizona, Grupo México has a right to discover information related to the establishment of the bonds, where they were executed, by whom, and any negotiations or communications that may have surrounded the bonds.

**D.    St. Paul has failed to articulate any specific objection to the documents requested in category four of the Subpoena.**

Grupo México's Subpoena request number four reads as follows:

All Documents and Correspondence concerning a General Agreement of Indemnity [attached hereto as Ex. 3], executed by ASARCO on or about October 19, 1993 in favor of "Seaboard Surety Company and/or St. Paul Fire and Marine Insurance Company and/or St. Paul Guardian Insurance

- 13 -

Company and/or St. Paul Mercury Insurance Company," including, but not limited to, correspondence with Grupo México or ASARCO, correspondence with third parties, and memoranda or internal notes or files concerning Grupo México or ASARCO.

[Ex. C at 5.]

St. Paul had previously objected to request number four on the grounds that it was overboard, vague, and irrelevant. [Ex. E at 2.] As it has with respect to documents in category three, St. Paul for the first time on June 21, 2006 contended that this request is objectionable on the ground that it is overly broad and vague in that it requests "'all' documents 'concerning' the GIA [sic]." [Ex. F at 1.] As discuss above, this objection is untimely is therefore waived. Moreover, for the same reasons previously discussed this newly interposed objection lacks specificity and is without merit.

The documents related to the General Agreement of Indemnity ("GAI") are discoverable. The GAI is an agreement between St. Paul, among others, and ASARCO. [See Ex. C (the GAI is attached thereto as Exhibit 3).] Seaboard contends that the Grupo Mexico, through the Letter Agreement, guaranteed ASARCO's performance of its indemnity obligations under the GAI. [Ex. B ¶ 26.] It is purportedly Grupo México's failure to meet that obligation which has led to economic consequences having their effect in Arizona. [Id. ¶ 9.] As such, Seaboard contends that the GAI played in integral role in Grupo México's purported jurisdictional contacts with Arizona. Consequently, Grupo México is entitled to discover documents and correspondence concerning the GAI and related to Grupo México and ASARCO.

    **E.**    **St. Paul has failed to articulate any specific objection to the documents requested in category five of the Subpoena.**

- 14 -

Grupo México's Subpoena request number five reads as follows:

All Documents and Correspondence you have had with the Secretary of the Interior, the Bureau of Land Management, the U.S. Department of the Interior, Bureau of Indian Affairs, or the San Xavier Allottees Association concerning Grupo México or ASARCO.

[Ex. C at 5.]

St. Paul has objected to request number five, as it apparently has to all the other document requests in the subpoena, on the grounds that they are overboard, vague, and irrelevant. [Ex. E at 2.] St. Paul's failure to offer any specific articulation of its objections regarding the documents requested in category five of the Subpoena requires St. Paul to comply with the Subpoena.

As described more fully in Grupo México's June 16, 2006 letter to St. Paul, the entities named in this request were all associated with the Reclamation Bonds and a lawsuit filed in Arizona demanding that Seaboard make payments pursuant to those bonds. In that litigation the San Xavier Allottees Association ("Allottees") claimed that the Secretary of the Interior and Seaboard had failed to live up their obligations under the Reclamation Bonds. [*See* Ex. I at 4-5.] The case was eventually dismissed by the Allottees. This request seeks those communications between St. Paul and the entities involved in that litigation because it is likely that such communications will shed light on St. Paul's understanding of that litigation and its relationship to the contracts at issue in the Arizona Litigation. Moreover, having failed to timely object to this request on the ground of privilege, even privileged documents responsive to this request should be

- 15 -

produced. *See McCoy*, 211 F.R.D. at 385 ("Failure to serve timely objections waives all grounds for objection, including privilege.").

**F.    St. Paul's Objection Regarding Undue Burden is Unsubstantiated.**

St. Paul has argued that the fourteen days provided in the Subpoena Requests is not enough time for it to comply with Grupo México's Request. [Ex. E at 2, ¶ 3.] St. Paul has offered no specific articulation regarding its purported burden to collect and assemble the requested documents. St. Paul's generalized contention that documents may be present in various offices around the country [Ex. E at 2], is by no means a specific objection. *See Plant Genetic Sys., N.V. v. Northrup King Co.*, 6 F. Supp. 2d 859, 862 (E.D. Mo. 1998) (noting that the non-party had not specified the time or resources necessary to comply with the request or how compliance would be burdensome). Indeed, St. Paul's statements tend to imply that St. Paul waited until after Grupo México's June 16, 2006 letter requesting timely compliance with the Subpoena before undertaking any effort to locate responsive documents and thereby make a reasoned determination of the burden, if any, that compliance with the Subpoena might entail.

Moreover, Grupo México has attempted to respond to St. Paul's generalized claim that it needs more time by offering to permit St. Paul an additional four days to respond to the Subpoena on the condition that St. Paul agree to produce all responsive documents. St. Paul has refused to accept that extension. [Ex. J at 2.] Under the circumstances, Grupo México is simply not in a position to entertain St. Paul's request for a lengthy delay in responding to the Subpoena, particularly in light of the fact that St. Paul has refused to commit to producing all responsive documents and instead appears intent on

withholding documents on the basis of unarticulated and unsubstantiated objections. Grupo México is bound by the Arizona District Court Order that permits the parties only 90 days to conduct jurisdictional discovery.

As of the date of this filing the parties have 49 days of discovery remaining. Waiting two additional weeks, and then likely being required to move to compel St. Paul at that time, could expend a month or more of the remaining discovery period. Grupo México must have time to review the documents and to conduct any depositions that are necessary. St. Paul's delay in this matter threatens to cripple if not extinguish Grupo Mexico's ability to conduct the discovery the Arizona District Court has ordered. [Kaiser Aff. at ¶ 13.]

Finally, St. Paul's protestations about having sufficient time to respond are in some regards a problem for which St. Paul is responsible. St. Paul appears to have delayed at least ten days in even beginning its search for responsive documents. Moreover, St. Paul's subsidiary Seaboard sought jurisdictional discovery and requested the 90 day period ordered by the Arizona District Court. Given the fact that St. Paul will likely benefit directly from any judgment that may be rendered in the Arizona Litigation it is perfectly appropriate that St. Paul be required to share the burden of the telescoped discovery that gave rise to Grupo México's Subpoena.

IV.    **Grupo México is Entitled to Recover it Costs and Attorneys' Fees incurred in Seeking St. Paul's Compliance with the Subpoena.**

Due to St. Paul's refusal to abide by its obligation to respond to the Subpoena, Grupo México has been forced to incur significant costs including substantial attorneys

- 17 -

fees incurred in corresponding with St. Paul, attorneys' fees incurred in drafting this motion, attorneys' fees incurred in hiring local counsel, as well as the costs incurred in filing this motion to compel and the anticipated cost of traveling to Minnesota for the hearing of this motion. [Kaiser Aff. ¶ 17.]  St. Paul has failed to articulate any specific basis for its objections to the Subpoena as it is required to do under the Federal Rules of Civil Procedure.  As such, Grupo México is entitled to recover the attorneys' fees and costs it has been forced to incur in seeking to compel St. Paul's compliance with the Subpoena.  *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1340 (8th Cir. 1975) (recognizing that court may award costs and attorneys' fees under Rule 45 where non-party fails to establish an "adequate excuse" for not complying with a subpoena duces tecum); *United States v. Abodeely*, 564 F. Supp. 327 (N.D. Iowa 1983) (same).  Grupo México therefore requests that the Court award Grupo Mexico its costs and attorneys' fees in this matter.

## CONCLUSION

For the foregoing reasons, the Court should compel St. Paul to produce responsive documents to Grupo México's Subpoena Requests Nos. 1 – 5 and award Grupo México its attorneys' fees and costs incurred in this matter.

- 18 -

Dated:  June 22, 2006.                     MASLON EDELMAN BORMAN & BRAND, LLP


                                           By:   s/Wayne S. Moskowitz
                                                 Wayne S. Moskowitz (#17936X)
                                           3300 Wells Fargo Center
                                           90 South Seventh Street
                                           Minneapolis, Minnesota  55402
                                           Phone: 612.672.8200
                                           Fax: 612.642.8397
                                           Attorneys for Defendant
                                           Grupo México S.A. de C.V.

Of Counsel:

George Brandon (Arizona Bar No. 017947)
gbrandon@ssd.com
Mitchel B. Axler (Arizona Bar No. 020764)
maxler@ssd.com
Brian D. Kaiser (Arizona Bar No. 021851)
bkaiser@ssd.com
SQUIRE, SANDERS & DEMPSEY L.L.P.
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004-4498
Telephone:   (602) 528-4000
Facsimile:   (602) 253-8129

Attorneys for Defendant
Grupo México S.A. de C.V.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Seaboard Surety Company,<br><br>     Plaintiff,<br><br>v.<br><br>Grupo México, SA de CV, and Does I-CI,<br><br>     Defendants. | Misc. Case No. $D:D6-mc-51-JNE-SRN$<br>(Original Case No. CV06-0134 PHX-SMM<br>(District of Arizona))<br><br>**AFFIDAVIT OF BRIAN KAISER IN SUPPORT OF GRUPO MÉXICO S.A. de C.V.'s MOTION TO COMPEL ST. PAUL FIRE & MARINE INSURANCE COMPANY'S RESPONSES TO GRUPO MÉXICO'S RULE 45 SUBPOENA DUCES TECUM** |

Brian D. Kaiser, being duly sworn, states:

    1.    I am an attorney licensed to practice law in the State of Arizona. I am over the age of 18 years and am, in all respects, competent to make this affidavit. This affidavit is based upon my personal knowledge, and if called upon to testify, I could and would competently testify to the following.

    2.    I am an associate of the firm Squire, Sanders & Dempsey, L.L.P. ("SS&D"), attorneys for defendant Grupo México S.A. de C.V. ("Grupo México"), in the captioned litigation

    3.    In my capacity as an associate, I am responsible for overseeing the day-to-day prosecution of this case and I am familiar with the nature of this litigation, the pleadings and other papers filed in this litigation.

    4.    The document attached hereto as Exhibit A is a true and correct copy of the Proof of Service of the Subpoena served upon St. Paul Fire & Marine Insurance Company ("St. Paul").

    5.    The document attached hereto as Exhibit B is a true and correct copy of the Amended Complaint in the underlying litigation.

- 1 -

SCANNED

JUN 23 2006

U.S. DISTRICT COURT MPLS

6.    The document attached hereto as Exhibit C is a true and correct copy of the Subpoena served upon St. Paul in this matter.

7.    The Subpoena in this matter was served on June 5, 2006.  Counsel for St. Paul first contacted me on June 15, 2006.

8.    The document attached hereto as Exhibit D is a true and correct copy of a series of e-mail exchanges I had with St. Paul's counsel, Jason Greves beginning on June 15, 2006 and ending on June 16, 2006.

9.    The document attached hereto as Exhibit E is a true and correct copy of a letter I received via facsimile and e-mail on June 16, 2006 at approximately 5:00 p.m. local time.

10.    The document attached hereto as Exhibit F is a true and correct copy of a letter I received via e-mail on June 21, 2006 at approximately 4:19 p.m. local time.

11.    The document attached hereto as Exhibit G is a true and correct copy of Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion to Dismiss and Motion to Permit Jurisdictional Discovery filed by Seaboard Surety Company in the underlying litigation.

12.    The document attached hereto as Exhibit H is a true and correct copy of an Order of the Arizona District Court in the underlying litigation.  The Order dated May 12, 2006 directs the parties to conduct jurisdictional discovery for a period of 90 days from the date of the Order.

13.    Because the Arizona District Court permitted the parties only 90 days in which to conduct jurisdictional discovery, any delay in receiving documents responsive to Grupo México's discovery requests would seriously hinder Grupo México's ability to complete discovery within the constraints of the Arizona District Court's Order.

14.    The document attached hereto as Exhibit I is a true and correct copy of a letter, without exhibits, that I caused to be sent to Jason Greves, counsel for St.

- 2 -

Paul, on June 16, 2006. The exhibits to this letter are not included because they are also among the documents attached to the Memorandum in Support. The document that was Exhibit A to this letter is attached to the Memorandum in Support as Exhibit G. The document that was Exhibit B to this letter is attached to the Memorandum in Support as Exhibit H.

15.     The document attached hereto as Exhibit J is a true and correct copy of a letter that I caused to be sent to Jason Greves, counsel for St. Paul, on June 20, 2006.

16.     As of the date of this Affidavit, St. Paul has failed to produce a single document responsive to the Subpoena.

17.     In the course of seeking St. Paul's compliance with the Subpoena Grupo México has incurred significant costs including substantial attorneys fees incurred in corresponding with St. Paul, attorneys' fees incurred in drafting this motion, attorneys' fees incurred in hiring local counsel, as well as the costs incurred in filing a Motion to Compel and the anticipated cost of traveling to Minnesota for the hearing of this motion.

DATED this 22nd day of June, 2006.

_____
Brian D. Kaiser

SUBSCRIBED AND SWORN before me this 22nd day of June, 2006.

_____
Notary Public
My Commission Expires:

- 3 -

*06 MC 51 JNE/SRN*

## PROOF OF SERVICE

| SERVED | DATE 6/5/06 | PLACE 385 Washington St. St. Paul, Mn. |
|---|---|---|

| SERVED ON (PRINT NAME) Pam Hoff, Service of Process Agent | MANNER OF SERVICE Personal — In Hand |
|---|---|

| SERVED BY (PRINT NAME) Karl M. Neher | TITLE Process Server |
|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 6/6/06
DATE

Karl M Neher
SIGNATURE OF SERVER

330 2nd Ave. S. #150
ADDRESS OF SERVER

Mpls, Mn. 55401

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)    PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A)   A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)   Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A)   On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)     fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)   If a subpoena

(i)     requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**S C A N N E D**

JUN 23 2006

U.S. DISTRICT COURT MLS

**EXHIBIT A**

1
2
3
4
5
6
7
8
9
10
11
12
13
14

David W. Kash - 013571
Matthew L. Cates - 019700
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
The Collier Center, 11ᵗʰ Floor
201 East Washington Street
Phoenix, Arizona 85004-2385
Telephone: (602) 262-5911
MinuteEntries@jsslaw.com

Attorneys for Plaintiff Seaboard Surety Company

**COPY**

OCT 1 3 2005

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

SEABOARD SURETY COMPANY, a
New York corporation,

            Plaintiff,

vs.

GRUPO MEXICO, S.A. de C.V., a
Mexican corporation; and DOES I-CI,

            Defendants.

No. CV2005-012045

**AMENDED COMPLAINT**

**(Assigned to Hon. Barry C. Schneider)**

15      NOW COMES, Plaintiff Seaboard Surety Company, a New York corporation, by its

16 attorneys Jennings, Strouss & Salmon, P.L.C. and for its Amended Complaint against

17 Defendant Grupo Mexico, S.A. de C.V., a Mexican corporation, states as follows:

18 **I.**    **PARTIES**

19      1.    Seaboard Surety Company is a New York corporation, is a wholly-owned

20 subsidiary of The St. Paul Fire and Marine Insurance Company. (hereinafter "St. Paul

21 Surety"). St. Paul Surety is qualified as a surety in the State of New York, is authorized to

22 do business in the State of Arizona as a surety and does business in Maricopa County,

23 Arizona.

24      2.    Grupo Mexico, S.A. de C.V. ("Grupo Mexico") is a Mexican corporation

25 with its principal place of business in Mexico City.

26

1226397_1.DOC(54568.11)

EXHIBIT B

3.  Does I-CI are fictitious names used to designate one or more defendants including individuals of any gender and entities of any nature whose specific involvement are currently unknown.  Pursuant to Arizona Rules of Civil Procedure 10, Seaboard Surety will seek leave of court to substitute the names of these Defendants as details against them become known.

II.  **VENUE AND JURISDICTION**

4.  The acts, events and transactions giving rise to St. Paul Surety's claims against Grupo Mexico occurred or substantially occurred in Maricopa County, Arizona such that venue and jurisdiction are proper in Maricopa County.

5.  Grupo Mexico executed an agreement dated February 16, 2001, whereby it agreed to guarantee to St. Paul Surety the indemnity obligations of its Arizona based wholly-owned subsidiary, ASARCO, Incorporated ("ASARCO") and indemnify St. Paul Surety for reclamation bonds St. Paul Surety issued at the request of ASARCO and Grupo Mexico.  ("Exhibit A") ("the Grupo Mexico Guaranty").

6.  The reclamation bonds issued by St. Paul Surety in the name of ASARCO as principal, and the United States of America, Department of Interior, Bureau of Indian Affairs as obligee, are expressly conditioned upon ASARCO's compliance with its obligations relating to the restoration of lands it leased in Arizona.

7.  St. Paul Surety issued the reclamation bonds, as surety, in reliance upon the Grupo Mexico Guaranty.  The reclamation bonds include bonds No. 420688 in the penal sum of $7 Million Dollars; No. 420699 in the amount of $760,000; and No. 420670 in the amount of $3.5 Million Dollars.  ("The Reclamation Bonds).  True and accurate copies of the Reclamation Bonds are attached hereto as "Exhibit B."

8.  Grupo Mexico signed the Grupo Mexico Guaranty with a direct financial stake and economic interest in the issuance of the reclamation bonds to ASARCO in

EXHIBIT B

1    expectation and furtherance of ASARCO's continued and substantial business activities in
2    Arizona.
3    　　　　9.　　Grupo Mexico, through execution of the Grupo Mexico Guaranty, played an
4    integral part and/or caused substantial business activity and economic consequences in
5    Arizona and should reasonably have anticipated being haled into court there.
6    　　　　10.　　Grupo Mexico has substantial and/or continuous and systematic contacts
7    with Arizona and does business in Arizona through its own actions and that of its wholly-
8    owned subsidiary, ASARCO.
9    　　　　11.　　Grupo Mexico's officers and/or agents reside and/or conduct business on
10    behalf of Grupo Mexico in Arizona, including, but not limited to, its president of finance
11    and administration, Daniel Tellechea Salido.
12    　　　　12.　　Upon information and belief, at all relevant times, Grupo Mexico advertised
13    and operated business out of facilities located in Arizona, including facilities owned and
14    operated with the name ASARCO, in Tucson and Phoenix, Arizona.
15    　　　　13.　　Grupo Mexico entered into a financial guaranty as part of a Consent Decree
16    resolving environmental enforcement action by the Justice Department against ASARCO
17    in *U.S. v. ASARCO, Inc. et al.*, No. CV02-2079-PHX-RCB filed in the United States
18    District Court for the District of Arizona. As part of this Consent Decree, Grupo
19    voluntarily agreed to guarantee ASARCO's previously established environmental
20    liabilities for sites in eight states, including a site in Arizona. (the "Consent Decree
21    Guaranty").
22    　　　　14.　　As part of the Consent Decree Guaranty, Grupo Mexico consented to federal
23    court jurisdiction in Arizona for enforcement proceedings relating to the Consent Decree
24    Guaranty.
25
26

1226397_1.DOC/S4548.111)                    3                    EXHIBIT B

15.    Grupo Mexico, through execution of the Consent Decree Guaranty, played an integral part and/or caused substantial economic consequences in Arizona and should reasonably have anticipated being haled into court there.

16.    Grupo Mexico exercises substantially total control over ASARCO's internal affairs, daily operations and/or management activities such that Grupo Mexico and ASARCO are alter egos, joint venturers and/or agents of each other.

17.    Grupo Mexico substantially controls ASARCO through the sharing of corporate officers and top-level management, by managing and guaranteeing payment of ASARCO's extensive environmental liability in numerous states, including Arizona, and by sharing similar logos and offices.

18.    ASARCO maintains liability insurance policies that cover its business operations throughout the country, including in Arizona. At least three of the insurance policies are purchased by Grupo Mexico.

19.    ASARCO is undercapitalized and in an effort to avoid legitimate claims of creditors or potential creditors, ASARCO has filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. As such, observance of the corporate form would sanction a fraud or promote an injustice.

20.    As alter egos, joint venturers and/or agents of one another, ASARCO's presence in and substantial contacts with Arizona may be attributed to Grupo Mexico.

III.    **BACKGROUND FACTS**

21.    St. Paul Surety incorporates by reference as though fully set forth herein Paragraphs 1-20 as this paragraph 21.

22.    ASARCO entered into various leases for mining activities encompassing approximately 160 acres of Tribal lands and over 2,300 acres of allotted lands on the San Xavier portion of the Tohono O'odham Reservation in Arizona. ASARCO also entered into 21 business leases with various Indian lessors on the San Xavier portion of the

EXHIBIT B

1226367_1.DOC{54548.1}                    4

Reservation encompassing 2,560 acres. The business leases authorized ASARCO to deposit wastes and tailings from its mining activities on the leased lands (the "San Xavier Mission Mine").

23. ASARCO executed and delivered to St. Paul Surety an application for surety bonds which included various financial records and financial statements. In conjunction therewith on October 19, 1993, ASARCO executed a General Agreement of Indemnity for the benefit of St. Paul Surety. A true and accurate copy of the General Agreement of Indemnity is attached hereto as "Exhibit C." St. Paul Surety issued reclamation bonds on behalf of ASARCO to the U.S. Department of Interior, Bureau of Indian Affairs.

24. In 2000, the Bureau of Land Management notified ASARCO that the bonding requirements for the mining and business leases had increased.

25. On or about February 16, 2001, Grupo Mexico executed an agreement for the benefit of St. Paul Surety whereby Grupo Mexico agreed to indemnify St. Paul Surety on behalf of ASARCO for the three Reclamation Bonds for increased amounts issued on behalf of ASARCO to the U.S. Department of Interior, Bureau of Indian Affairs, as more fully described above.

26. Under the Grupo Mexico Guaranty, Grupo Mexico guaranteed ASARCO's performance of its indemnity obligations under the General Agreement of Indemnity as they relate to the Reclamation Bonds.

27. In reliance upon the promises contained in the General Agreement of Indemnity and the Grupo Mexico Guaranty, St. Paul Surety executed as surety and issued on behalf of ASARCO the Reclamation Bonds, No. 420688 in the penal sum of $7 Million Dollars; No. 420699 in the amount of $760,000; and No. 420670 in the amount of $3.5 Million Dollars. The surety's liability as expressly set forth in the Reclamation Bonds is conditioned upon ASARCO's compliance with requirements governing the restoration of lands related to the San Xavier Mission Mine, that ASARCO had leased in order to

EXHIBIT B

1226397_1.DOC(54548.11)                    5

1    perform hard rock mining or exploration.  Only upon ASARCO's compliance with its
2    reclamation obligations would the surety's obligations under the Reclamation Bonds
3    become null and void.

4         28.    The San Xavier Allottees Association brought suit in the U.S. District Court
5    for the District of Arizona, against St. Paul Surety entitled *San Xavier Allottees*
6    *Association, Inc., et al. v. Seaboard Surety Company, et al.*, Case No. CV03-415-TUC-
7    DCB alleging that ASARCO was in breach of its reclamation obligations.  The San Xavier
8    Allottees made demand for payment of the penal sums of the Reclamation Bonds.

9         29.  ·  St. Paul Surety has incurred substantial investigation and legal fees to defend
10   the suit brought by San Xavier Allottees against the Reclamation Bonds.

11        30.    By way of letter dated January 5, 2005, the United States Department of the
12   Interior, Bureau of Indian Affairs, sent notice to ASARCO of default for non-payment
13   under certain leases at the San Xavier Mission Mine and the Secretary of the Interior
14   declared one of the leases void, cancelled the lease and ordered ASARCO to initiate the
15   reclamation process.

16        31.    Due to these events, St. Paul Surety established a reserve for anticipated
17   losses and expenses related to the Reclamation Bonds in the aggregate amount of Eleven
18   Million, Four Hundred and Sixty Thousand Dollars and no cents ($11,460,000.00).

19        32.    St. Paul Surety was required to incur attorneys' fees and engineering fees
20   relating to the Surety's bond exposure by reason of events which affected ASARCO's
21   financial ability to perform its bonded obligations.  Such events include but are not limited
22   to: ASARCO was placed in default by the Secretary of the Interior of a lease relating to the
23   San Xavier Mission Mine and the Secretary of the Interior cancelled one of the leases; St.
24   Paul Surety was sued by the San Xavier Allottees for the full penal sums of the
25   Reclamation Bonds; St. Paul Surety received information that ASARCO was in default of
26   its joint venture agreement with Montana Resources at the Butte Mine for which a

EXHIBIT B

1226392_1.DOC\54548.11)

6

1  Montana Resources Bond was issued; ASARCO'S rating by Standard & Poor's was

2  downgraded from BB- to CCC and in July, 2005, ASARCO'S labor union went on strike

3  which has negatively affected its operating costs which ASARCO has acknowledged are

4  the highest operating costs for a mining company in the United States and the world.

5      33.    Beginning in February, 2005, St. Paul Surety demanded from Grupo Mexico

6  in writing, reimbursement of its outstanding legal fees, engineering costs and investigation

7  costs incurred by reason of it having issued bonds in favor of ASARCO for the San Xavier

8  Mission Mine.  On February 3, 2005, St. Paul Surety also demanded from Grupo Mexico

9  that it post collateral security in the amount of $11,460,000.00.

10     34.    In February, 2005, ASARCO agreed to reimburse St. Paul Surety for

11 attorneys' fees and costs in its defense of the lawsuit brought by the San Xavier Allottees.

12     35.    Since February, 2005, St. Paul Surety has made several written demands

13 upon ASARCO for reimbursement of attorneys' fees and costs incurred in the defense of

14 the lawsuit brought by the San Xavier Allottees and for investigation and engineering fees

15 relating to the Surety's risk on the Reclamation Bonds.

16     36.    Pursuant to Paragraph 6 of the General Agreement of Indemnity, ASARCO

17 agreed:

18          They will indemnify the Surety and hold it harmless from and
           against all liability, losses, costs, damages, attorneys' fees,
19          disbursements and expenses of every nature which the Surety
           may sustain or incur by reason of having executed or procured
20          the execution of any such Bonds; and they will pay over and
           make good to the Surety all money which the Surety or its
21          representatives shall pay, or cause to be paid or become liable
           to pay, by reason of its execution of any such Bond as soon as
22          it shall become liable therefore, whether the Surety shall have
           paid out such sum or any part thereof, or not.  The Surety, in its
23          sole discretion, from time to time may advance funds to or for
           the account of the contractor for or in connection with the
24          completion of the work under any contract in connection with
           which it has executed or may execute a Bond or Bonds
25          (hereinafter sometimes referred to as Bonded Contract), and for
           the discharge of obligations incurred in connection therewith or
26          relating thereto, and such advances shall be deemed "losses"

1226397_1.DOC(54548.11)                        7                              EXHIBIT B

1  under the terms of this instrument whether or not such
   advances have been so used by the Contractor.

2      37.   Pursuant to Paragraph 7 of the General Agreement of Indemnity, ASARCO

3  agreed:

4      If the Surety shall set up a reserve to cover any contingent
5  claim or claims, loss, costs, attorneys' fees and/or other
   expenses in connection with any such Bond the Undersigned,
6  within Ten (10) days after receipt of written demand, as
   evidenced by registry or certified mail return receipt, will pay
7  to the Surety current funds in an amount equal to such reserves,
   and any subsequent increase thereof, such funds to be held by
8  the Surety as collateral, in addition to the indemnity afforded
   by this instrument, with the right to use the same or any part
9  thereof, at any time, in payment or compromise of any
   judgment, claim, liability, loss, damage, attorneys' fees and
10 disbursements or other expenses. Demand shall be sufficient if
   sent by registered or certified mail to the Undersigned at the
11 address given herein or last known to the Surety.

12     38.   Pursuant to Paragraph 9 of the General Agreement of Indemnity, ASARCO

13 agreed, as follows:

14     The vouchers or other evidence of payments made by the
   Surety shall be *prima facie* evidence of the facts and amounts
15 of the liability of the Undersigned to the Surety.

16     39.   Pursuant to Paragraph 11 of the General Agreement of Indemnity, ASARCO

17 agreed as follows:

18     The Contractor will furnish to the Surety such information as it
   may request from time to time concerning any Bonded
19 Contracts; and those with whom such contracts are made
   hereby are authorized to furnish to the Surety information
20 concerning such contracts and the work thereunder.    The
   Surety from time to time until its liability with respect to all
21 such contracts is terminated, and until it shall have been fully
   reimbursed for all loss and expense which it may have paid in
22 connection therewith may examine the books and records of
   the Contractor.    All persons, including credit reporting
23 agencies, having or obtaining information concerning the
   financial affairs and operations of the Undersigned hereby are
24 authorized and directed to disclosure such information to the
   Surety upon its request; and the Surety and every such person
25 hereby are released and discharged of any and all claims,
   liability and responsibility which they or any of them might
26 otherwise incur or be subject to for or by reason of any such
   disclosure for or by reason of the disclosure by the Surety to

EXHIBIT B

others of any information obtained by it from any source whatsoever.

40.    On or about March 16, 2005, St. Paul Surety made demand upon ASARCO and Grupo Mexico to submit to St. Paul Surety financial statements covering ASARCO'S performance during 2004 and 2005.

41.    Pursuant to Paragraph 14 of the General Agreement of Indemnity, ASARCO agreed as follows:

> In any action, suit or proceeding brought by the Surety to enforce any of the covenants of this instrument, the costs and expenses, including attorneys' fees, incurred by the Surety in connection therewith may be included in any judgment or decree rendered against the Undersigned. Failure of the Surety to pursue any remedy against any one or more of the Undersigned shall not effect a release of or waiver of any right against any other of the Undersigned. Separate suits against one or more of the Undersigned may be brought hereunder as causes of action accrue, and the bringing of suit, or recovery of judgment against one or more of the Undersigned upon any cause of action shall not prejudice or bar the bringing of suit and the recovery of judgment on the same cause of action against any other of the Undersigned, or against any or all of the Undersigned upon other causes of action whether therefore or thereafter arising.

42.    To date, Grupo Mexico has neither honored nor denied its obligations to reimburse St. Paul Surety for its payment of professional and investigative fees, including engineering fees, attorneys' fees and costs associated with having issued the Reclamation Bonds; nor has ASARCO submitted financial statements pursuant to Paragraph 11 of the General Agreement of Indemnity. In August, 2005, ASARCO filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. Therefore, ASARCO has defaulted and is in material breach of its obligations under the General Agreement of Indemnity.

43.    Under the Grupo Mexico Guaranty, Grupo Mexico guaranteed ASARCO's performance of its indemnity obligations owing under the General Agreement of Indemnity and acted as a guarantor to satisfy the full amount of the Reclamation Bonds in the event of ASARCO's default. Therefore, Grupo Mexico stands in the shoes of

EXHIBIT B

1226397_1.DOC(54548.11)                        9

ASARCO and is in material breach of its obligations under the General Agreement of
Indemnity and February 16, 2001 Agreement.

## COUNT I

### (Contract)

44.    St Paul Surety incorporates by reference as though fully set forth herein
Paragraphs 1 through 43 as this Paragraph 44.

45.    By reason of the General Agreement of Indemnity and based upon the
principal/surety relationship existing between ASARCO and St. Paul Surety, ASARCO is
obligated as a matter of law to indemnify St. Paul Surety from and against any and all
liability for losses, costs, expenses and attorneys' fees which St. Paul Surety has incurred
and paid for and to be incurred, by reason of having executed bonds as surety for
ASARCO.

46.    To date, ASARCO has not honored its obligations and refuses to comply
with St. Paul Surety's demands to reimburse St. Paul Surety for its payment of professional
and investigative fees, including engineering fees, attorneys' fees and costs associated with
having issued the Reclamation Bonds.

47.    ASARCO is in default of its express obligations to indemnify St. Paul Surety
for any and all losses, attorneys' fees, costs, expenses and engineering fees by reason of St.
Paul Surety having issued bonds on behalf of ASARCO.  ASARCO has filed for
bankruptcy protection and, therefore, does not have the financial ability to satisfy its
obligations owing to St. Paul Surety.

48.    Under the Grupo Mexico Guaranty dated February 16, 2001, Grupo Mexico
agreed to indemnify St. Paul Surety and guaranteed ASARCO's performance of its
indemnity obligations owing under the General Agreement of Indemnity.

49.    Grupo Mexico is in material breach and in default of the Grupo Mexico
Guaranty and its obligations to indemnify and guarantee St. Paul Surety for any and all

EXHIBIT B

1226397 1.DOC/54348.11)                        10

1  losses, attorneys' fees, costs, expenses and engineering fees by reason of Seaboard Surety

2  having issued bonds on behalf of ASARCO.

3        WHEREFORE, Plaintiff Seaboard Surety Company prays that a judgment be

4  entered against Defendant Grupo Mexico, S.A. de C.V. for indemnification and/or breach

5  of the guaranty in an amount to be proven at trial for all losses and expenses incurred by

6  Seaboard Surety Company related to the Reclamation Bonds, together with costs and

7  attorneys' fees incurred in this lawsuit and for all further relief that this Court deems just

8  and proper.

9  **COUNT II**

10  **(Specific Performance or Quia Timet)**

11      50.   St. Paul Surety incorporates by reference as though fully set forth herein

12  Paragraphs 1 through 49 as this Paragraph 50.

13      51.   ASARCO expressly agreed pursuant to Paragraph 7 of the General

14  Agreement of Indemnity that if the surety establishes a reserve to cover any claims, losses,

15  attorneys' fees or other expenses related to the Reclamation Bonds, ASARCO is obligated

16  to pay the surety an amount equal to such reserve and such funds would be held as

17  collateral.

18      52.   Due to the events negatively effecting ASARCO's financial responsibility,

19  St. Paul Surety became reasonably justified in being insecure that ASARCO could fulfill

20  its indemnity obligations set forth herein. Pursuant to paragraph 7 of the General

21  Agreement of Indemnity, St. Paul Surety established a reserve for its anticipated losses and

22  exposures related to the Reclamation Bonds in the aggregate amount of $11,460,000.

23      53.   St. Paul Surety has demanded payment of the collateral in the full amount of

24  its reserves from ASARCO and Grupo Mexico.

25

26

1726397_1.DOC(54548.11)

11

EXHIBIT B

54.    To date, Grupo Mexico has not honored its obligations under the Grupo Mexico Guaranty and refuses to comply with St. Paul Surety's demand to post collateral security required under the General Agreement of Indemnity and by law.

55.    By reason of the Grupo Mexico Guaranty and by reason of the equitable doctrine of *quia timet*, Grupo Mexico is immediately and primarily liable upon default of ASARCO to deliver payment of the collateral in the full amount of St. Paul Surety's reserves sufficient to cover its losses and expenses on or under the Reclamation Bonds furnished to ASARCO.

56.    Grupo Mexico is in breach of its agreement with St. Paul Surety to guarantee the full penal sums of the Reclamation Bonds and St. Paul Surety is, therefore, entitled to specific performance of the collateral security provision of the General Agreement of Indemnity requiring Grupo Mexico to deposit with St. Paul Surety the full amount of its reserve in the amount of $11,460,000.

WHEREFORE, Plaintiff Seaboard Surety Company prays for a judgment against Defendant Grupo Mexico, S.A. de C.V. as follows:

A. .    For an order requiring Defendant to place Seaboard Surety Company in funds by money in the amount of $11,460,000 as security for its Reclamation Bond obligations;

B.    For Seaboard Surety Company's costs, including reasonable attorneys' fees incurred herein; and

1226397_1.DOC(54548.1H)          12          EXHIBIT B

C.    For such other and further relief as this Court deems equitable.

RESPECTFULLY SUBMITTED this _13th_ day of October, 2005.

JENNINGS, STROUSS & SALMON, P.L.C.

By _____
    David W. Kash
    Matthew L. Cates
    The Collier Center, 11th Floor
    201 East Washington Street
    Phoenix, Arizona 85004-2385
    Attorneys for Plaintiff Seaboard Surety
    Company

1226397_3.DOC(54545.11)

13

EXHIBIT B