06mc51
JNE/SRN

SCANNED
JUN 23 2006
U.S. DISTRICT COURT MPLS

~~EXHIBIT A~~

EXHIBIT B

Jan 14 2005 16:04 P.02

GRUPOMEXICO

February 16, 2001

Mr. Paul Salmon
Account Underwriter
St. Paul Surety
St. Paul Fire and Marine Insurance Co.
180 Water Street, 12th Floor
New York, NY 10038

Dr. Mr. Salmon:

Grupo México, S.A. de C.V. will indemnify St. Paul Surety on behalf of ASARCO Incorporated for the three Mission reclamation bonds issued to the USA, Department of the Interior, Bureau of Indian Affairs in the amounts of $7.0 million, $760,000, and $3.5 million, respectively.

Hector Garcia de Quevedo
Managing Director

Daniel Tellechea
Executive VP and CFO

# EXHIBIT B

EXHIBIT B

RECLAMATION BOND

Bond No. 420668

KNOW ALL MEN BY THESE PRESENT, That We, ASARCO, Incorporated, as Principal(s), and Seaboard Surety Company, a corporation organized under the laws of the State of New York as Surety, are held and firmly bound unto the United States of America, the Department of the Interior, Bureau of Indian Affairs ("BIA") in the sum of Seven Million and No/100 ($7,000,000.00) dollars, lawful money of the United States of America, for the payment which, well and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns, jointly and severally, firmly by the presents.

WHEREAS, ASARCO Inc., has been, or will be engaged in hardrock mining or exploration on BIA managed lands, and

WHEREAS, all parties engaging in hardrock mining or exploration on BIA managed lands must maintain bonds or financial guarantees showing that they can cover the full cost or restoring land that has been disturbed by their activities

NOW, THEREFORE, the condition of this obligation is such that, should said Principal comply with the requirements governing the restoration of land used in hardrock mining or exploration, then this obligation to be null and void, otherwise to remain in full force and effect.

PROVIDED, however that this bond is executed by the Principal and Surety and accepted by the Obligee subject to the following express conditions:

1) This obligation may be terminated by the Surety by thirty (30) days advanced written notice to the Obligee, such notice to be sent by registered mail. Such termination shall not affect liability incurred under this Obligation prior to the effective date of such termination.
2) No action, suit or proceeding shall be had or maintained against this Surety on the bond unless the same be brought or instituted within sixty (60) day after the termination or release of this bond.
3) Under no circumstances shall the aggregate liability of the Surety exceed the penal sum above stated.
4) No assignment of this bond shall be effective without the written consent of the Surety.
5) It shall be a condition precedent to any right of recovery hereunder that, in the event of any breach of the agreements on the part of the Principal a written statement of the particular facts stating the nature of such breach shall be given as soon as reasonably possible by the Obligee to the Surety and the Surety shall not be obligated to perform Principal's obligation until thirty (30) days after Surety's receipt of such statement.

Signed, sealed and dated this 16th day of February, 2001.

ASARCO, Incorporated

By: ______________________

SEABOARD SURETY COMPANY

By: [signature] EXHIBIT B

Paul Salmon Attorney-In-Fact

RECLAMATION BOND

Bond No. 420669

KNOW ALL MEN BY THESE PRESENT, That We, ASARCO Incorporated, as Principal(s), and Seaboard Surety Company, a corporation organized under the laws of the State of New York as Surety, are held and firmly bound unto the United States of America, the Department of the Interior, Bureau of Indian Affairs ("BIA") in the sum of Seven Hundred Sixty Thousand and No/100 ($760,000.00) dollars, lawful money of the United States of America, for the payment which, well and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns, jointly and severally, firmly by the presents.

WHEREAS, ASARCO Inc., has been, or will be engaged in hardrock mining or exploration on BIA managed lands, and

WHEREAS, all parties engaging in hardrock mining or exploration on BIA managed lands must maintain bonds or financial guarantees showing that they can cover the full cost or restoring land that has been disturbed by their activities

NOW, THEREFORE, the condition of this obligation is such that, should said Principal comply with the requirements governing the restoration of land used in hardrock mining or exploration, then this obligation to be null and void, otherwise to remain in full force and effect.

PROVIDED, however that this bond is executed by the Principal and Surety and accepted by the Obligee subject to the following express conditions:

1) This obligation may be terminated by the Surety by thirty (30) days advanced written notice to the Obligee, such notice to be sent by registered mail. Such termination shall not affect liability incurred under this Obligation prior to the effective date of such termination.
2) No action, suit or proceeding shall be had or maintained against this Surety on the bond unless the same be brought or instituted within sixty (60) day after the termination or release of this bond.
3) Under no circumstances shall the aggregate liability of the Surety exceed the penal sum above stated.
4) No assignment of this bond shall be effective without the written consent of the Surety.
5) It shall be a condition precedent to any right of recovery hereunder that, in the event of any breach of the agreements on the part of the Principal a written statement of the particular facts stating the nature of such breach shall be given as soon as reasonably possible by the Obligee to the Surety and the Surety shall not be obligated to perform Principal's obligation until thirty (30) days after Surety's receipt of such statement.

Signed, sealed and dated this 16th day of February, 2001.

ASARCO Incorporated

By: [signature]

SEABOARD SURETY COMPANY

By: [signature]

Paul Salmon, Attorney-In-Fact

BIA02392

EXHIBIT B

RECLAMATION BOND

Bond No. 420670

KNOW ALL MEN BY THESE PRESENT, That We, ASARCO, Incorporated, as Principal(s), and Seaboard Surety Company, a corporation organized under the laws of the State of New York as Surety, are held and firmly bound unto the United States of America, the Department of the Interior, Bureau of Indian Affairs ("BIA") in the sum of Three Million Five Hundred Thousand and No/100 ($3,500,000.00) dollars, lawful money of the United States of America, for the payment which, well and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns, jointly and severally, firmly by the presents.

WHEREAS, ASARCO Inc., has been, or will be engaged in hardrock mining or exploration on BIA managed lands, and

WHEREAS, all parties engaging in hardrock mining or exploration on BIA managed lands must maintain bonds or financial guarantees showing that they can cover the full cost or restoring land that has been disturbed by their activities

NOW, THEREFORE, the condition of this obligation is such that, should said Principal comply with the requirements governing the restoration of land used in hardrock mining or exploration, then this obligation to be null and void, otherwise to remain in full force and effect.

PROVIDED, however that this bond is executed by the Principal and Surety and accepted by the Obligee subject to the following express conditions:

1) This obligation may be terminated by the Surety by thirty (30) days advanced written notice to the Obligee, such notice to be sent by registered mail. Such termination shall not affect liability incurred under this Obligation prior to the effective date of such termination.
2) No action, suit or proceeding shall be had or maintained against this Surety on the bond unless the same be brought or instituted within sixty (60) day after the termination or release of this bond.
3) Under no circumstances shall the aggregate liability of the Surety exceed the penal sum above stated.
4) No assignment of this bond shall be effective without the written consent of the Surety.
5) It shall be a condition precedent to any right of recovery hereunder that, in the event of any breach of the agreements on the part of the Principal a written statement of the particular facts stating the nature of such breach shall be given as soon as reasonably possible by the Obligee to the Surety and the Surety shall not be obligated to perform Principal's obligation until thirty (30) days after Surety's receipt of such statement.

Signed, sealed and dated this 16th day of February, 2001.

ASARCO, Incorporated

By: ______________________

SEABOARD SURETY COMPANY

By: ______________________
Paul Salmon, Attorney-In-Fact

EXHIBIT B

# EXHIBIT C

EXHIBIT B

StPaul SEABOARD

SEABOARD SURETY COMPANY
New York, New York
ST. PAUL FIRE AND MARINE INSURANCE COMPANY
ST. PAUL GUARDIAN INSURANCE COMPANY
ST. PAUL MERCURY INSURANCE COMPANY
St. Paul, Minnesota
Capital Stock Companies

## GENERAL AGREEMENT OF INDEMNITY

KNOW ALL MEN BY THESE PRESENTS, that

WHEREAS, AGENCO, INCORPORATED, A NEW JERSEY CORPORATION, AND THOSE SUBSIDIARIES, AFFILIATES AND COMPANIES WHICH ARE NAMED IN SCHEDULE I ATTACHED HERETO AND MADE A PART HEREOF AS IF FULLY SET FORTH HEREIN

(hereinafter called Contractor) may from time to time request Seaboard Surety Company and/or St. Paul Fire and Marine Insurance Company and/or St. Paul Guardian Insurance Company and/or St. Paul Mercury Insurance Company (hereinafter called Surety) to execute as surety or guarantor for the Contractor, or procure the execution of, certain surety bonds, undertakings, guaranties, stipulations or other obligatory instruments (all such instruments being hereinafter collectively called Bonds); and

WHEREAS, the undersigned Indemnitors by executing this instrument represent that they have a material and beneficial interest in the obtaining of such Bonds by the Contractor (the Indemnitors and Contractor being hereinafter collectively called the Undersigned);

NOW, THEREFORE, in consideration of the execution of any one or more such Bonds, the Undersigned, for themselves, their respective personal representatives, successors and assigns, jointly and severally, covenant and agree, with respect to all Bonds heretofore or hereafter executed for the Contractor, that:

1. If two or more persons are named in and execute this instrument as Contractor, each shall be bound as an Indemnitor by the terms of this instrument with respect to all Bonds executed or procured for the other person or persons so named, and as the Contractor with respect to all Bonds executed or procured for him. If any Bond or Bonds shall be executed or procured for any Joint Venture to which the Contractor is or may become a party, the liability and obligation of the Undersigned to the Surety shall be the same as if such Bond or Bonds had been executed for the Contractor acting alone, any agreement between or among the Joint Venturers notwithstanding.

2. If the Surety shall decline to execute, or procure execution of, any Bond for which application hereafter may be made, no claim shall be made against the Surety in consequence of such declination; nor shall any claim be made if any Bond executed be not accepted by or on behalf of the Obligee. If the Surety shall execute or procure execution of a Bid or Proposal Bond, it may decline to execute or procure execution of any Bonds required in connection with any award made under the proposal for which such Bid or Proposal Bond is given and such declination shall not diminish or alter the liability of the Undersigned with respect to such Bid or Proposal Bond.

3. This instrument is intended to apply to any and all Bonds executed, or execution of which has been procured, by the Surety for the Contractor whether or not there shall be any written application therefor executed by one or more of the Undersigned.

4. If the Surety executes or has executed any such Bonds with co-sureties, or reinsures or has reinsured any portion thereof, or procures or has procured the execution of any such Bond, the terms of this instrument shall inure to the benefit of the Surety, the co-sureties, the reinsuring companies and the procured sureties, as their interests may appear.

5. They will pay in advance the premiums for all such Bonds executed for the Contractor and any additional premiums accruing in respect thereof, in accordance with the Surety's Manual of rates applicable thereto.

6. They will indemnify the Surety and hold it harmless from and against all liability, losses, costs, damages, attorneys' fees, disbursements and expenses of every nature which the Surety may sustain or incur by reason of having executed or procured the execution of any such Bonds, and they will pay over and make good to the Surety all money which the Surety or its representatives shall pay, or cause to be paid or become liable to pay, by reason of its execution of any such Bond as soon as it shall become liable therefor, whether the Surety shall have paid out such sums or any part thereof, or not. The Surety, in its sole discretion, from time to time may advance funds to or for the account of the Contractor for or in connection with the completion of the work under any contract in connection with which it has executed or may execute a Bond or Bonds (hereinafter sometimes referred to as Bonded Contract), and for the discharge of obligations incurred in connection therewith or relating thereto, and such advances shall be deemed "losses" under the terms of this instrument whether or not such advances have been so used by the Contractor.

7. If the Surety shall set up a reserve to cover any contingent claim or claims, loss, costs, attorneys' fees and/or other expenses in connection with any such Bond the Undersigned, within ten (10) days after receipt of written demand, as evidenced by registry or certified mail return receipt, will pay to the Surety current funds in an amount equal to such reserve, and any subsequent increase thereof, such funds to be held by the Surety as collateral, in addition to the indemnity afforded by this instrument, with the right to use the same or any part thereof, at any time, in payment or compromise of any judgment, claim, liability, loss, damage, attorneys' fees and disbursements or other expenses. Demand shall be sufficient if sent by registered or certified mail to the Undersigned at the address given herein or last known to the Surety.

8. The Surety may settle or compromise any claim, demand, suit or judgment upon any Bond or Bonds executed by it, and any such settlement or compromise shall be binding upon the Undersigned. If, however, the Undersigned shall timely request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety at the time of such request cash or other collateral satisfactory to the Surety in kind and amount, to be used to pay any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety, the Surety shall so litigate, defend or appeal; but nothing herein contained shall be deemed to impose a duty upon the Surety to give notice to the Undersigned of any such claim, demand, suit or judgment.

9. The vouchers or other evidence of payments made by the Surety shall be prima facie evidence of the fact and amount of the liability of the Undersigned to the Surety.

Jan 14 2 16:04 P.04

ST PAUL SURETY [illegible]

[illegible] as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any such contract or contracts are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any such Bonds, and this agreement and declaration shall also constitute notice of such trust.

11. The Contractor will furnish to the Surety such information as it may request from time to time concerning any Bonded Contracts and those with whom such contracts are made hereby are authorized to furnish to the Surety information concerning such contracts and the work thereunder. The Surety from time to time until its liability with respect to all such contracts is terminated, and until it shall have been fully reimbursed for all loss and expense which it may have paid in connection therewith, may examine the books and records of the Contractor. All persons, including credit reporting agencies, having or obtaining information concerning the financial affairs and operations of the Undersigned hereby are authorized and directed to disclose such information to the Surety upon its request and the Surety and every such person hereby are released and discharged of any and all claims, liability and responsibility which they or any of them might otherwise incur or be subject to for or by reason of any such disclosure, or for or by reason of the disclosure by the Surety to others of any information obtained by it from any source whatsoever.

X

12. In the event the Contractor shall breach, or default in or delay the performance of, any Bonded Contract, or fail promptly to discharge all obligations which might be claimable under any Bond executed in connection therewith or which might give rise to a lien or charge upon any unpaid contract balance or the property of an Obligee named in any such Bond, or in the event of any breach of the terms of this instrument, the Undersigned, and each of them, hereby assign and set over unto the Surety, as of the date hereof, their right, title and interest in and to: (a) All of the deferred payments and retained percentages, and all moneys and properties that may be, and that thereafter may become, payable to the Contractor on account of, and all claims and actions and causes of action relating to, such contracts, or on account of or relating to extra work or materials supplied in connection therewith, as well as all other moneys or properties of the Contractor, hereby agreeing that such money and the proceeds of such payments, properties, claims, actions and causes of action shall be the sole property of the Surety to be by it credited upon any sum due or to become due it under the terms of this instrument; (b) all supplies, tools, plant, equipment and materials (whether completely manufactured or not), wherever located, which have been or hereafter may be purchased, used, or acquired for use, entirely or partly, in the performance of such contract, hereby agreeing that the Surety and its authorized representatives are authorized to take possession of said supplies, tools, plant, equipment and materials and use and enjoy the title thereto and the possession thereof; and (c) all subcontracts relating to the work under such contract which have been or hereafter may be made, together with the materials embraced therein, and all surety bonds securing the performance of, or the discharge of obligations incurred in connection with, such subcontracts, hereby agreeing that the Surety may enforce the same in the name of the Contractor or otherwise. In addition, in any such event aforesaid, the Surety, at its option and in its sole discretion, may take possession of all or any part of the work under any or all Bonded Contracts, and at the expense of the Undersigned complete, or cause the completion of, such work, or re-let, or consent to the re-letting or completion thereof and in such event, may invite the Obligees, and the Obligees are authorized, to declare the Contractor in default under such contracts, any provisions thereof to the contrary notwithstanding. Neither the Surety nor the Obligees shall incur any liability to any of the Undersigned in the exercise of the rights granted by this Section 12, except for deliberate and willful malfeasance.

13. If it becomes necessary or advisable in the judgment of the Surety to control, administer, operate or manage any or all matters connected with the performance of any Bonded Contract for the purpose of attempting to minimize any ultimate loss to the Surety, or for the purpose of discharging its obligations of suretyship, the Undersigned hereby expressly covenant and agree that such action on the part of the Surety shall be entirely within its rights and remedies under the terms of this instrument and as Surety, and do hereby fully release and discharge the Surety, in this connection, from liability for all actions taken by it or for its omissions to act, except for deliberate and willful malfeasance.

14. In any action, suit or proceeding brought by the Surety to enforce any of the covenants of this instrument, the costs and expenses, including attorneys' fees, incurred by the Surety in connection therewith may be included in any judgment or decree rendered against the Undersigned. Failure of the Surety to pursue any remedy against any one or more of the Undersigned shall not affect a release of or waiver of any right against any other of the Undersigned. Separate suits against one or more of the Undersigned may be brought hereunder as causes of action accrue, and the bringing of suit, or recovery of judgment against one or more of the Undersigned upon any cause of action shall not prejudice or bar the bringing of suit and the recovery of judgment on the same cause of action against any other of the Undersigned, or against any or all of the Undersigned upon other causes of action, whether theretofore or thereafter arising.

15. The Surety may without notice to or knowledge of the Indemnitors, assent to any change in such Bonds, and/or any contracts referred to therein, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and assent to or take any assignment or assignments, execute or consent to the execution of any continuations, extensions or renewals of the Bonds and execute any substitute or substitutes therefor, with the same or different conditions, provisions and Obligees and with the same or larger or smaller penalties, and the Indemnitors shall remain bound under the terms of this agreement even though any such assent by the Surety does or might substantially increase the liability of the Surety and the Indemnitors. The Undersigned waive notice of any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting its rights or liability under any such Bond or Bonds, or the Undersigned's rights or liabilities hereunder.

16. If the execution of this instrument by any of the Undersigned shall be invalid for any reason, or if any of the Undersigned shall be released from his obligations hereunder, the terms and conditions hereof shall nevertheless be binding upon and continue in full force and effect as to the rest of the Undersigned; nor shall it be a defense to any claim by the Surety hereunder that it was to have procured additional indemnity or security, or that it has procured additional indemnity or security or that it has released other indemnity or security in respect of any such Bond or Bonds.

17. If any provision or provisions of this instrument be void or unenforceable under the laws of any place governing its construction or enforcement, this instrument shall not be void or vitiated thereby but shall be construed and enforced with the same effect as though such provision or provisions were omitted. All rights and remedies of the Surety under this instrument shall be cumulative, and the exercise of or failure to exercise any particular right or remedy at any time shall not be considered to be an election of remedy or a waiver of any other right or remedy. The rights, powers, and remedies afforded the Surety by the terms of this instrument are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor or Indemnitors or others whether by the terms of any other instrument or agreement or by operation of law.

18. The Contractor and each of the Indemnitors hereby irrevocably constitutes and appoints Surety his true and lawful attorney for and in his name, place and stead to execute any and all instruments, and to do and perform any and all other acts and things requisite or proper, to vest in the Surety absolute title to any and all funds, property and/or rights in Section 12 hereof assigned, transferred and conveyed and to secure to the Surety the full and effective use and enjoyment of the rights granted the Surety under Sections 10 and 12 hereof, hereby giving and granting to said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as the Contractor or Indemnitors might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that said attorney or its substitute shall lawfully do or cause to be done by virtue hereof.

EXHIBIT B

AUG 23 2002 09:29 2125242724 PAGE.22

19. As used in this instrument, the singular includes the plural, and the plural the singular, and the masculine pronoun shall be read as feminine or neuter, as circumstances require; and the word "person" shall mean and include individuals, partnerships, corporations and associations.

20. Except as hereinafter in this paragraph provided, any of the Undersigned may, upon written notice by registered mail to the Administrative Office of St. Paul Fire/board, at Burnt Mills Road and Route 206, Bedminster, New Jersey 07921, to be effective not less than ten (10) days after receipt, limit his obligations under this instrument to Bonds executed by the Surety for the Contractor prior to the effective date of such notice, provided, however, that such notice shall not be effective with respect to any Bond or Bonds executed after such date (a) upon the award of a contract to the Contractor on a bid or proposal in respect of which the Surety has executed and delivered a bid or proposal bond prior to such date, or (b) which the Surety has become committed to execute prior to such date, or (c) in connection with any claim, lien, litigation, or other matter involving or relating to any Bond or Bonds executed prior to such date or thereafter executed as hereinbefore in (a) or (b) provided. Such limitation of the obligations of any of the Undersigned shall not operate to limit the obligations of, or release, the rest of the Undersigned whether or not they have notice or knowledge thereof.

21. The rights and remedies afforded the Surety by the terms of this instrument may not be waived or modified orally.

22. IT IS FURTHER AGREED THAT FROM TIME TO TIME ADDITIONAL COMPANIES MAY BE ADDED TO SCHEDULE I OF THIS AGREEMENT BY THE ISSUANCE OF LETTERS OF AMENDMENT EXECUTED BY ASARCO Incorporated AND THE PERSON WHO EXECUTES SAID LETTERS OF AMENDMENT SHALL BE AUTHORIZED BY A RESOLUTION OF THE BOARD OF DIRECTORS OF ASARCO, INCORPORATED OR IN ACCORDANCE WITH ARTICLE V, SECTION 5.01 OF ASARCO INCORPORATED'S BY-LAWS TO SO AMEND SCHEDULE I."

DATED this 29 day of October 19 93

CONTRACTOR(S):

| | |
|---|---|
| ASARCO, INCORPORATED | |
| By [signature] | By |
| F. J. FINDLEY, JR. - TREASURER | |
| By | By |

INDEMNITOR(S):

| | |
|---|---|
| ASARCO, INCORPORATED | |
| By [signature] | By |
| F. J. FINDLEY, JR. - TREASURER | |
| Street 180 Maiden Lane | Street |
| City New York | City |
| State New York, 10038 | State |
| By | By |
| Street | Street |
| City | City |
| State | State |

INSTRUCTIONS

*If Contractor or any Indemnitor is a CORPORATION, corporate name should be set forth in full and corporate seal impressed. The signature and title of the officer executing for the Corporation should be set out immediately below. If a PARTNERSHIP, firm name should be set forth in full, with the signature(s) of the partner(s) executing in its behalf set out immediately below. EACH PARTNER should sign as an INDEMNITOR.*

*This instrument should be dated, and each signature thereto properly ACKNOWLEDGED in the spaces provided therefor on the reverse hereof. Attach additional acknowledgment forms if necessary.*

EXHIBIT B

(APPENDIX I)

Seaboard Surety Company

SCHEDULE 1

Contractors' General Agreement of Indemnity

| Company | (State of Incorporation) | Address |
|---|---|---|
| ASARCO Incorporated | New Jersey | 180 Maiden Lane New York, NY 10038 |

SUBSIDIARIES AND OTHER ASSOCIATED COMPANIES:

| Company | State | Address |
|---|---|---|
| 1 Air Resources Corporation | Delaware | " |
| 2 American Limestone Company, Inc. | Delaware | " |
| 3 AR Mexican Explorations Inc. | Delaware | " |
| 4 Minera San Bernardo, S.A. | Mexico | " |
| 5 AR Mexican Holdings, Inc. | Delaware | " |
| 6 AR Specialty Chemicals, S.A. de C.V. | Mexico | " |
| 7 Enthone-OMI de Mexico S.A. de C.V. | Mexico | " |
| 8 AR Silver Bell, Inc. | Delaware | " |
| 9 Silver Bell Mining, L.L.C. | Delaware | " |
| 10 AR Montana Corporation | Delaware | " |
| 11 Montana Resources | Montana Partnership | " |
| 12 Asarco Arizona, Inc. | Delaware | " |
| 13 Asarco Exploration Company, Inc. | New York | " |
| 14 ASARCO Guiane Francaise S.A.R.L. | Bolivia | " |
| 15 Empresa Minera Manquiri S.R.L. | Bolivia | " |
| 16 Asarco Exploration Co. of Canada, Ltd. | Canada | " |
| 17 Asarco International Corporation | Delaware | " |
| 18 Asarco International Corp. FSC | Virgin Islands | " |
| 19 Asarco Oil and Gas Company, Inc. | New York | " |
| 20 Asarco Peruvial Exploration Co. | Delaware | " |
| 21 ASARCO Santa Cruz, Inc. | Delaware | " |
| 22 Covington Land Company | Delaware | " |
| 23 CP Water Company | Arizona | " |
| 24 Bridgeview Management Co., Inc. | New Jersey | " |
| 25 Compania Minera Asarco, S.A. | Chile | " |
| 26 Domestic Realty Company, Inc. | Montana | " |
| 27 Encycle, Inc. | Delaware | " |
| 28 Hydrometrics, Inc. | Delaware | " |
| 29 Compania Hydrometrics de Mexico S.A. de C.V. | | " |
| 30 Encycle/Texas, Inc. | Delaware | " |
| 31 Enthone, Incorporated | New York | " |

[APPENDIX I]

Seaboard Surety Company

SCHEDULE I

Contractors' General Agreement of Indemnity

| Company | (State of Incorporation) | Address |
|---|---|---|
| 32 Enthone-OMI, Inc. | Delaware | " |
| 33 Enthone-OMI (Australia) Pty. Ltd. | Victoria, Australia | " |
| 34 Enthone-OMI Holding GmbH | Austria | " |
| 35 Enthone-OMI (Benelux) B.V. | The Netherlands | " |
| 36 Enthone-OMI (Austria) GmbH | | " |
| 37 Enthone-OMI (France) S.A. | France | " |
| 38 Enthone-OMI Holdings (Deutschland) GmbH | Germany | " |
| 39 Deutsche Oberflachentichnik GmbH | Germany | " |
| 40 DOT Rechenzentrum GmbH | Germany | " |
| 41 L.P.W. Benelux B.V. | Netherlands | " |
| 42 L.P.W. Chemi GmbH | Germany | " |
| 43 Blasberg Oberflachentechnik GmbH | Germany | " |
| 44 Blasberg GTL Service and Vertriebs GmbH | Germany | " |
| 45 Blasberg Yteknik AB | Sweden | " |
| 46 Galvano Production Chemie GmbH | Germany | " |
| 47 L.P.W. France SARL | France | " |
| 48 Riedel Oberflachentichnik GmbH | Germany | " |
| 49 L.P.W. Oberflachentichnik Sp.z.o.o. | Poland | " |
| 50 Nihon LPW K.K. | Japan | " |
| 51 Wunsch Chemie GmbH | Germany | " |
| 52 Enthone-OMI (Italia) S.A.R.L. | Italy | " |
| 53 Enthone-OMI Holdings (Europe)S.A.S | France | " |
| 54 Enthone- OMI (Italia) S.A.R.L. | Italy | " |
| 55 Internacional de Manufacturas Asociadas S.A. | Spain | " |
| 56 Imasa A.G. | Switzerland | " |
| 57 Enthone-OMI Holdings (U.K.) Ltd. | United Kingdom | " |
| 58 AMZA Ltd. | Israel | " |
| 59 Enthone-OMI (U.K.) Limited | United Kingdom | " |
| 60 Enthone-OMI (Sverige) A.B. | Sweden | " |
| 61 Enthone-OMI Finance N.V. | Netherlands Antilles | " |
| 62 Enthone-OMI (Canada) Inc. | Ontario, Canada | " |
| 63 IMASA B.V. | The Netherlands | " |
| 64 Enthone-OMI (Hong Kong) Co. Ltd. | Hong Kong | |

EXHIBIT B

(APPENDIX I)

Seaboard Surety Company

SCHEDULE 1

Contractors' General Agreement of Indemnity

| Company | (State of Incorporation) | Address |
|---|---|---|
| 65 Enthone-OMI K.K. | Japan | " |
| 66 IMASA Kemi A.B. | Sweden | " |
| 67 Enthone-OMI Holdings (U.K.) Ltd. | United Kingdom | " |
| 68 OMI Holdings S.A. | Switzerland | " |
| 69 Electroplating Engineers of Japan Ltd. | Japan | " |
| 70 Enthone-OMI (Suisse) S.A. | Switzerland | " |
| 71 OMI International Corporation | Delaware | " |
| 72 Enthone-OMI (Espana) S.A. | Spain | " |
| 73 Enthone-OMI (Europe) Corporation | Delaware | " |
| 74 Enthone-OMI (Hong Kong) Co. Ltd. | Hong Kong | " |
| 75 Hua-Mei Electroplating Technology Company, Ltd. | China | " |
| 76 Enthone-OMI (Singapore) Pte. Ltd. | Singapore | " |
| 77 Enthone-OMI (Malaysia) Sdn. Bhd. | Malaysia | " |
| 78 Federated Metals Canada Limited | Canada | " |
| 79 Federated Metals Corporation | New York | " |
| 80 Geominerals Insurance Company, Ltd. | Bermuda | " |
| 81 Lac d'Amiante du Quebec, Ltee | Delaware | " |
| 82 LAQ Canada, Ltd. | Delaware | " |
| 83 Mining Development Company | Delaware | " |
| 84 Empresa Minera Manquiri S.R.L. | Bolivia | " |
| 85 Minto Explorations Ltd. | British Columbia | " |
| 86 Mission Exploration Company | Delaware | " |
| 87 Lasarco, Inc. | Phillipines | " |
| 88 NCBR, Inc. | Delaware | " |
| 89 Northern Peru Mining Corporation | Delaware | " |
| 90 Silver Valley Resources Corporation | Delaware | " |
| 91 Southern Peru Copper Corporation | Delaware | " |
| 92 Fomenta, S.A. | Peru | " |
| 93 Pegasus Travels, S.A. | Peru | " |
| 94 Logistics Services Incorporated | Delaware | " |
| 95 LSI-Peru, S.A. | Peru | " |
| 96 Multimines Corporation | Delaware | " |
| 97 Multimines Insurance Company, Ltd. | New York | " |
| 98 Recursos e Inversiones Andinas, S.A. | Peru | |

ST PAUL SURETY Fax:2125040724 Jan 14 2 15:05 P.10

(APPENDIX I)

Seaboard Surety Company

SCHEDULE 1

Contractors' General Agreement of Indemnity

| Company | (State of Incorporation) | Address |
|---|---|---|
| 99 Compania Minera Los Tolmos, S.A. | Perú | " |
| 100 The International Metal Company | New York | " |
| 101 Tulipan Company, Inc. | Delaware | " |

Date: Nov 4 1999

By [signature]
C.F. Schultz, Treasurer

AUG 23 2002 09:24 2125040724 PAGE.08

EXHIBIT B

ASARCO Incorporated

New York, N.Y., October 19, 1993

I, C. D. Gonzales, an Assistant Secretary of ASARCO Incorporated, a New Jersey corporation, do hereby certify that the following is a full, true and correct copy of Article V, Section 5.01 of the By-Laws of said Company in full force and effect since June 26, 1991 and that there has been no amendment thereof since such date.

Execution of Instruments. All deeds, contracts, and other instruments requiring execution by the Company shall be signed by the Chairman of the Board, the President, the Vice Chairman, an Executive Vice President, a Senior Vice President, a Vice President or the Treasurer, and attested or countersigned by the Controller, Deputy Controller, an Assistant Controller, the Secretary, an Assistant Secretary, or an Assistant Treasurer; provided, however, that authority to sign any deeds, contracts or other instruments requiring execution by the Company may be conferred by the Board upon any person or persons whether or not such person or persons be officers of the Company; and provided, further, that the Chairman of the Board, the President, the Vice Chairman and any Executive Vice President may delegate, from time to time, by instrument in writing, all or any part of such authority to any other person or persons.

I further certify that at the Annual Meeting of the Board of Directors of the Company held on April 28, 1993, Mr. R. de J. Osborne was elected Chairman and President of the Company; Messrs. G. W. Anderson and F. R. McAllister were each elected Executive Vice President; Mr. A. B. Kinsolving was elected Vice President, General Counsel and Secretary; Mr. K. R. Morano was elected Vice President - Finance and Chief Financial Officer; Messrs. R. J. Bothwell, Jr., J. J. Kerr, , R. M. Novotny, G. D. Van Voorhis, D. B. Woodbury were each elected Vice President; Mr. R. J. O'Keefe was elected Controller; Messrs. S. M. Souza and C. P. Schultz were each elected Assistant Treasurer; Ms. S. D. Delaney and Ms. C. D. Gonzales were each elected Assistant Secretary; and Mr. T. J. Findley, Jr. was elected Treasurer, a position he currently holds, and the following is his true and correct signature:

T. J. Findley, Jr.
Treasurer

C. D. Gonzales
Assistant Secretary

[SEAL]

Jan 14 2005 16:05 P.12

## CORPORATE ACKNOWLEDGMENT

STATE OF New York ss:
COUNTY OF New York

On the [illegible] day of October 19 98 before me personally came T. J. Findlay, Jr. to me known who, being by me duly sworn, did depose and say, that he resides in New Jersey that he is the Treasurer of [illegible] the corporation described in, and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

[signature] Notary Public, [illegible] County
Commission Expires March 30, 19[illegible]

STATE OF ______ ss:
COUNTY OF ______

On the ____ day of ______ 19 ____ before me personally came ______ to me known who, being by me duly sworn, did depose and say, that he resides in ______ that he is the ______ of ______ the corporation described in, and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

______ Notary Public.
______ County.

STATE OF ______ ss:
COUNTY OF ______

On the ____ day of ______ 19 ____ before me personally came ______ to me known who, being by me duly sworn, did depose and say, that he resides in ______ that he is the ______ of ______ the corporation described in, and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

______ Notary Public.
______ County.

STATE OF ______ ss:
COUNTY OF ______

On the ____ day of ______ 19 ____ before me personally came ______ to me known who, being by me duly sworn, did depose and say, that he resides in ______ that he is the ______ of ______ the corporation described in, and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

______ Notary Public.
______ County.

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ______ ss:
COUNTY OF ______

On the ____ day of ______ 19 ____ before me personally came ______ to me known, and known to me to be the individual described in and who executed the foregoing instrument, and __he duly acknowledged to me that __he executed the same.

______ Notary Public.
______ County.

STATE OF ______ ss:
COUNTY OF ______

On the ____ day of ______ 19 ____ before me personally came ______ to me known, and known to me to be the individual described in and who executed the foregoing instrument, and __he duly acknowledged to me that __he executed the same.

______ Notary Public.
______ County.

STATE OF ______ ss:
COUNTY OF ______

On the ____ day of ______ 19 ____ before me personally came ______ to me known, and known to me to be the individual described in and who executed the foregoing instrument, and __he duly acknowledged to me that __he executed the same.

______ Notary Public.
______ County.

STATE OF ______ ss:
COUNTY OF ______

On the ____ day of ______ 19 ____ before me personally came ______ to me known, and known to me to be the individual described in and who executed the foregoing instrument, and __he duly acknowledged to me that __he executed the same.

______ Notary Public.
______ County.

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF ______ ss:
COUNTY OF ______

On the ____ day of ______ 19 ____ before me personally came ______ to me known and known to me to be a member of the firm of ______ described in and who executed the foregoing instrument, and he thereupon acknowledged to me that he executed the same as and for the act and deed of the said firm.

______ Notary Public.
______ County.

STATE OF ______ ss:
COUNTY OF ______

On the ____ day of ______ 19 ____ before me personally came ______ to me known and known to me to be a member of ______ in and who executed the foregoing instrument, and acknowledged to me that he executed the same as and for the act and deed of the said firm.

______ Notary Public.
______ County.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

Seaboard Surety Company, a New York Corporation,
Plaintiff,

v.

Grupo Mexico, SA de CV, a Mexican Corporation,
Defendant.

CASE NUMBER: CIV-06-0134-PHX-SMM
(District of Arizona)

**SUBPOENA IN A CIVIL CASE**

DOCKETED
JUN 2006
SQUIRE SANDERS
LITIGATION DEPARTMENT

TO: St. Paul Fire and Marine Insurance Company
Attn: Custodian of Records
385 Washington Street
St. Paul, Minnesota 55102

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Exhibit A hereto.

| PLACE | DATE AND TIME |
|---|---|
| Maslon Edelman Borman & Brand<br>c/o Wayne S. Moskowitz, Esq.<br>3300 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402-4140 | June 19, 2006, 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PLACE | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendant | June 2, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Brian D. Kaiser, Esq., Squire Sanders & Dempsey L.L.P.
Two Renaissance Square, 40 North Central Avenue, Suite 2700, Phoenix, Arizona 85004-4498, Telephone: (602) 528-4000

EXHIBIT C

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ____________________
DATE

____________________
SIGNATURE OF SERVER

____________________
ADDRESS OF SERVER

____________________

Rule 45, Federal Rules of Civil Procedure, Parts C & D:
(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

EXHIBIT C

**EXHIBIT A**

**To Subpoena Duces Tecum to St. Paul Fire & Marine Insurance Company**

**Definitions and Instructions**

A.    In producing the documents designated below, you are requested to furnish all documents known or available to you regardless of whether a document is currently in your possession, custody, or control, or that of your attorneys, employees, agents, investigators, insurance companies, or other representatives, or as otherwise available to you.

B.    If for any reasons, you are unable to produce in full any document requested:

    1.    Produce each such document to the fullest extent possible;

    2.    Specify the reasons for your inability to produce the remainder; and

    3.    State in detail whatever information, knowledge or belief you have concerning the whereabouts and substance of each document not produced in full.

C.    If any document requested was at one time in existence, but is no longer in existence, please state for each document as to which that is the case:

    1.    The type of document;

    2.    The author of the document;

    3.    The recipients of the document and any copy thereof;

    4.    A summary of information contained in the document;

    5.    The date upon which it ceased to exist;

    6.    The circumstances under which it ceased to exist;

    7.    The identity of all persons having knowledge of the circumstances under which it ceased to exist; and

    8.    The identity of all persons having knowledge or who had knowledge of the contents thereof.

EXHIBIT C

D.    For each document requested that you are unable to produce and that was at any time within your possession, custody or control, or to which you had access at any time, specify in detail:

       1.     The type of document;

       2.     The author of the document;

       3.     All recipients of the document and any copy thereof;

       4.     A summary of the information contained in the document;

       5.     The date on which you lost, relinquished or otherwise ceased to have possession, custody or control of, or access to the document;

       6.     Identify all persons having knowledge of the circumstances whereby you lost, relinquished or otherwise ceased to have possession, custody or control, or access to the document; and

       7.     Identify all persons who have or have had knowledge of the contents of the document, in full or in part.

E.    If you seek to withhold or do withhold any document, in whole or in part, on the ground that it is not subject to discovery, produce a list of all such documents and, as to each such document, state:

       1.     The name of each author, writer, sender, or initiator of each such document;

       2.     The name of each recipient, addressee, or party to whom such document was sent or intended to be sent;

       3.     The name of each and every person who received a copy of the document;

       4.     The date of the document or, if no date appears on the document, the date the document was prepared;

       5.     The title of the document or, if it has no title, such other description of the document and its subject matter as shall be sufficient to identify the document; and

EXHIBIT C

6.    The grounds claimed for withholding the document form discovery (e.g., attorney-client privilege, work product, or other grounds), and the factual basis for such a claim.

F.    The terms "you," "your," or "St. Paul" mean the St. Paul Fire and Marine Insurance Company and its parent, subsidiary, or affiliated companies and their past and present employees, representatives, agents, insurers, and attorneys.

G.    "Grupo México" means the defendant Grupo México, S.A. de C.V.

H.    "Concern," "concerning," "relate" or "relating" means referring to, alluding to, responding to, connected with, commenting on, in reference of, about, regarding, discussing, showing, reporting, describing, mentioning, reflecting, analyzing, summarizing, constituting, pertaining to, or evidencing.

I.    "Document" or "documents" means all matters, instruments or other tangible things, including any items contained on a computer or other means of electronic storage or other forms of media, within the scope of Federal Rule of Civil Procedure 26 and 34, including without limitation: any and all papers, writings, and records of every type and description, all written, recorded, and graphic matter of every type and description, including, but not limited to, contracts, receipts, purchase orders, canceled checks, drafts, invoices, statements, memoranda, e-mail, corporate minutes, bulletins, intra- and interoffice communications, statements, drafts, books of account, worksheets, desk diaries, appointment books, expense accounts, recordings, notes of conversations, notes of meetings and conferences, telegraphic communications, stock certificates, pamphlets, schedules, studies, books, computer printouts, reports, photographs, maps, charts, photographic records, tapes, transcriptions of tapes, and any other device or medium on or through which information of any type is transmitted, recorded, or preserved.  The term "document" also means every copy of a document where such copy is not an identical duplicate of the original.

J.    "Correspondence" means any contact, regardless of method, between two or more persons, organizations, companies or other business entities, regardless of form, and shall include, without limitation, telegrams, telex, facsimile, e-mail or, by any document, oral contact by such means

EXHIBIT C

as face to face meetings and/or telephone conversations, or any other transmittal of information in the form of facts, ideas, inquires or otherwise.

K. "Any," "each," and "all" shall be read to be all inclusive, and to require the production of each and every document (as defined above) responsive to the particular Request in which such word appears.

L. "And" and "or" and any other conjunctions or disjunctions used herein shall be read both conjunctively and disjunctively so as to require the production of all documents (as defined above) responsive to all or any part of each particular request for production in which any such conjunction or disjunction appears.

M. "Complaint" shall mean the Amended Complaint filed in this matter on or about October 13, 2005.

N. Unless otherwise specified herein the scope of each request for production includes information dating from **January 1, 2000** to the present.

**DOCUMENTS TO BE PRODUCED**

1. All Documents and Correspondence concerning the attached letter agreement (the "Letter Agreement") [attached hereto as Ex. 1] executed by Grupo México on or about February, 16, 2001 addressed to St. Paul in New York via facsimile including, but not limited to, any documents referring to, discussing, or describing the Letter Agreement.

2. All Documents and Correspondence concerning any negotiations surrounding the Letter Agreement described in request number one above including, but not limited to, internal or external correspondence, date books or calendars referring to contacts with Grupo México, and telephone logs or records referring to contacts with Grupo México.

3. All Documents and Correspondence concerning three "Reclamation Bonds" [attached hereto as Ex. 2], issued in or about February 2001 by St. Paul Surety with ASARCO as principal and with the United States Department of Interior as obligee and described as bonds No. 420688 in the amount of $7 million, No. 420699 in the amount of $760,000, and No. 420670 in the amount of $3.5

EXHIBIT C

million, including, but not limited to, correspondence with Grupo México or ASARCO, correspondence with third parties, and memoranda or internal notes or files concerning Grupo México or ASARCO.

4. All Documents and Correspondence concerning a General Agreement of Indemnity [attached hereto as Ex. 3], executed by ASARCO on or about October 19, 1993 in favor of "Seaboard Surety Company and/or St. Paul Fire and Marine Insurance Company and/or St. Paul Guardian Insurance Company and/or St. Paul Mercury Insurance Company," including, but not limited to, correspondence with Grupo México or ASARCO, correspondence with third parties, and memoranda or internal notes or files concerning Grupo México or ASARCO.

5. All Documents and Correspondence you have had with the Secretary of the Interior, the Bureau of Land Management, the U.S. Department of the Interior, Bureau of Indian Affairs, or the San Xavier Allottees Association concerning Grupo México or ASARCO.

EXHIBIT C

# EXHIBIT 1

EXHIBIT C

Jan 14 2005 16:04 P.02

[illegible]

GRUPO MÉXICO

February 16, 2001

Mr. Paul Salmon
Assistant Underwriter
St. Paul Surety
St. Paul Fire and Marine Insurance Co.
180 Water Street, 12th Floor
New York, NY 10038

Dear Mr. Salmon:

Grupo México, S.A. de C.V. will indemnify St. Paul Surety on behalf of ASARCO Incorporated for the three Mission reclamation bonds issued to the USA, Department of the Interior, Bureau of Indian Affairs in the amounts of $7.5 million, $760,000, and $3.5 million, respectively.

Hector Ubaldo Quintero
Managing Director

Daniel Tellechea
Executive VP and CFO

[illegible]

EXHIBIT C

# EXHIBIT 2

EXHIBIT C

**RECLAMATION BOND**

Bond No. 420668

**KNOW ALL MEN BY THESE PRESENT,** That We, **ASARCO, Incorporated**, as Principal(s), and **Seaboard Surety Company**, a corporation organized under the laws of the State of New York as Surety, are held and firmly bound unto the **United States of America, the Department of the Interior, Bureau of Indian Affairs ("BIA")** in the sum of **Seven Million and No/100 ($7,000,000.00)** dollars, lawful money of the United States of America, for the payment which, well and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns, jointly and severally, firmly by the presents.

**WHEREAS, ASARCO Inc.**, has been, or will be engaged in hardrock mining or exploration on BIA managed lands, and

**WHEREAS,** all parties engaging in hardrock mining or exploration on BIA managed lands must maintain bonds or financial guarantees showing that they can cover the full cost or restoring land that has been disturbed by their activities

**NOW, THEREFORE,** the condition of this obligation is such that, should said Principal comply with the requirements governing the restoration of land used in hardrock mining or exploration, then this obligation to be null and void, otherwise to remain in full force and effect.

**PROVIDED,** however that this bond is executed by the Principal and Surety and accepted by the Obligee subject to the following express conditions:

1) This obligation may be terminated by the Surety by thirty (30) days advanced written notice to the Obligee, such notice to be sent by registered mail. Such termination shall not affect liability incurred under this Obligation prior to the effective date of such termination.
2) No action, suit or proceeding shall be had or maintained against this Surety on the bond unless the same be brought or instituted within sixty (60) day after the termination or release of this bond.
3) Under no circumstances shall the aggregate liability of the Surety exceed the penal sum above stated.
4) No assignment of this bond shall be effective without the written consent of the Surety.
5) It shall be a condition precedent to any right of recovery hereunder that, in the event of any breach of the agreements on the part of the Principal a written statement of the particular facts stating the nature of such breach shall be given as soon as reasonably possible by the Obligee to the Surety and the Surety shall not be obligated to perform Principal's obligation until thirty (30) days after Surety's receipt of such statement.

Signed, sealed and dated this 16th day of February, 2001.

**ASARCO, Incorporated**

By: ______________________________

**SEABOARD SURETY COMPANY**

By: ______________________________

Paul Salmon, Attorney-In-Fact

EXHIBIT C

# RECLAMATION BOND

Bond No. 420669

KNOW ALL MEN BY THESE PRESENT, That We, ASARCO Incorporated, as Principal(s), and Seaboard Surety Company, a corporation organized under the laws of the State of New York as Surety, are held and firmly bound unto the United States of America, the Department of the Interior, Bureau of Indian Affairs ("BIA") in the sum of Seven Hundred Sixty Thousand and No/100 ($760,000.00) dollars, lawful money of the United States of America, for the payment which, well and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns, jointly and severally, firmly by the presents.

WHEREAS, ASARCO Inc., has been, or will be engaged in hardrock mining or exploration on BIA managed lands, and

WHEREAS, all parties engaging in hardrock mining or exploration on BIA managed lands must maintain bonds or financial guarantees showing that they can cover the full cost or restoring land that has been disturbed by their activities

NOW, THEREFORE, the condition of this obligation is such that, should said Principal comply with the requirements governing the restoration of land used in hardrock mining or exploration, then this obligation to be null and void, otherwise to remain in full force and effect.

PROVIDED, however that this bond is executed by the Principal and Surety and accepted by the Obligee subject to the following express conditions:

1) This obligation may be terminated by the Surety by thirty (30) days advanced written notice to the Obligee, such notice to be sent by registered mail. Such termination shall not affect liability incurred under this Obligation prior to the effective date of such termination.
2) No action, suit or proceeding shall be had or maintained against this Surety on the bond unless the same be brought or instituted within sixty (60) day after the termination or release of this bond.
3) Under no circumstances shall the aggregate liability of the Surety exceed the penal sum above stated.
4) No assignment of this bond shall be effective without the written consent of the Surety.
5) It shall be a condition precedent to any right of recovery hereunder that, in the event of any breach of the agreements on the part of the Principal a written statement of the particular facts stating the nature of such breach shall be given as soon as reasonably possible by the Obligee to the Surety and the Surety shall not be obligated to perform Principal's obligation until thirty (30) days after Surety's receipt of such statement.

Signed, sealed and dated this 16th day of February, 2001.

ASARCO Incorporated

By: [signature]

SEABOARD SURETY COMPANY

By: [signature]
Paul Salmon, Attorney-In-Fact

BIA02392

EXHIBIT C

# RECLAMATION BOND

Bond No. 420670

**KNOW ALL MEN BY THESE PRESENT,** That We, **ASARCO, Incorporated,** as Principal(s), and **Seaboard Surety Company,** a corporation organized under the laws of the State of New York as Surety, are held and firmly bound unto the **United States of America, the Department of the Interior, Bureau of Indian Affairs ("BIA")** in the sum of **Three Million Five Hundred Thousand and No/100 ($3,500,000.00)** dollars, lawful money of the United States of America, for the payment which, well and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns, jointly and severally, firmly by the presents.

**WHEREAS, ASARCO** Inc., has been, or will be engaged in hardrock mining or exploration on BIA managed lands, and

**WHEREAS,** all parties engaging in hardrock mining or exploration on BIA managed lands must maintain bonds or financial guarantees showing that they can cover the full cost or restoring land that has been disturbed by their activities

**NOW, THEREFORE,** the condition of this obligation is such that, should said Principal comply with the requirements governing the restoration of land used in hardrock mining or exploration, then this obligation to be null and void, otherwise to remain in full force and effect.

**PROVIDED,** however that this bond is executed by the Principal and Surety and accepted by the Obligee subject to the following express conditions:

1) This obligation may be terminated by the Surety by thirty (30) days advanced written notice to the Obligee, such notice to be sent by registered mail. Such termination shall not affect liability incurred under this Obligation prior to the effective date of such termination.
2) No action, suit or proceeding shall be had or maintained against this Surety on the bond unless the same be brought or instituted *within sixty (60) day after the termination or* release of this bond.
3) Under no circumstances shall the aggregate liability of the Surety exceed the penal sum above stated.
4) No assignment of this bond shall be effective without the written consent of the Surety.
5) It shall be a condition precedent to any right of recovery hereunder that, in the event of any breach of the agreements on the part of the Principal a written statement of the particular facts stating the nature of such breach shall be given as soon as reasonably possible by the Obligee to the Surety and the Surety shall not be obligated to perform Principal's obligation until thirty (30) days after Surety's receipt of such statement.

Signed, sealed and dated this 16th day of February, 2001.

**ASARCO, Incorporated**

By: ______________________________

**SEABOARD SURETY COMPANY**

By: [signature]

Paul Salmon, Attorney-In-Fact

EXHIBIT C

06 mc 51
JNE/SRN

# EXHIBIT 3

SCANNED
JUN 23 2006
U.S. DISTRICT COURT MPLS

EXHIBIT C -6

ST. PAUL SEABOARD

SEABOARD SURETY COMPANY
New York, New York
ST. PAUL FIRE AND MARINE INSURANCE COMPANY
ST. PAUL GUARDIAN INSURANCE COMPANY
ST. PAUL MERCURY INSURANCE COMPANY
St. Paul, Minnesota
Capital Stock Companies

## GENERAL AGREEMENT OF INDEMNITY

KNOW ALL MEN BY THESE PRESENTS that

WHEREAS, ARMCO, INCORPORATED, A NEW JERSEY CORPORATION, AND THOSE SUBSIDIARIES, AFFILIATES AND COMPANIES WHICH ARE NAMED IN SCHEDULE I ATTACHED HERETO AND MADE A PART HEREOF AS IF SET FORTH HEREIN

(hereinafter called Contractor) may from time to time request Seaboard Surety Company and/or St. Paul Fire and Marine Insurance Company and/or St. Paul Guardian Insurance Company and/or St. Paul Mercury Insurance Company (hereinafter called Surety) to execute as surety or guarantor for the Contractor, or procure the execution of, certain surety bonds, undertakings, guaranties, stipulations or other obligatory instruments (all such instruments being hereinafter collectively called Bonds); and

WHEREAS, the undersigned Indemnitors by executing this Instrument represent that they have a material and beneficial interest in the obtaining of such Bonds by the Contractor (the Indemnitors and Contractor being hereinafter collectively called the Undersigned);

NOW, THEREFORE, in consideration of the execution of any one or more such Bonds, the Undersigned, for themselves, their respective personal representatives, successors and assigns, jointly and severally covenant and agree, with respect to all Bonds heretofore or hereafter executed for the Contractor, that:

1. If two or more persons are named in and execute this Instrument as Contractor, each shall be bound as an Indemnitor by the terms of this Instrument with respect to all Bonds executed or procured for the other person or persons so named, and as the Contractor with respect to all Bonds executed or procured for him. If any Bond or Bonds shall be executed or procured for any Joint Venture in which the Contractor is or may become a party, the liability and obligation of the Undersigned to the Surety shall be the same as if such Bond or Bonds had been executed for the Contractor acting alone, any agreement between or among the Joint Venturers notwithstanding.

2. If the Surety shall decline to execute, or procure execution of, any Bond for which application hereunder may be made, no claim shall be made against the Surety in consequence of such declination; nor shall any claim be made if any Bond executed be not accepted by or on behalf of the Obligee. If the Surety shall execute or procure execution of a Bid or Proposal Bond, it may decline to execute or procure execution of any Bonds required in connection with any award made under the proposal for which such Bid or Proposal Bond is given and such declination shall not diminish or alter the liability of the Undersigned with respect to such Bid or Proposal Bond.

3. This Instrument is intended to apply to any and all Bonds executed, or execution of which has been procured, by the Surety for the Contractor whether or not there shall be any written application therefor executed by one or more of the Undersigned.

4. If the Surety procures or has procured any such Bonds with co-sureties, or reinsures or has reinsured any portion thereof, or procures or has procured the execution of any such Bond, the terms of this Instrument shall inure to the benefit of the Surety, the co-sureties, the reinsuring companies and the procured sureties, as their interests may appear.

5. They will pay in advance the premiums for all such Bonds executed for the Contractor and any additional premiums accruing in respect thereof, in accordance with the Surety's Manual of rates applicable thereto.

6. They will indemnify the Surety and hold it harmless from and against all liability, losses, costs, damages, attorneys' fees, disbursements and expenses of every nature which the Surety may sustain or incur by reason of having executed or procured the execution of any such Bonds and they will pay over and make good to the Surety all money which the Surety or its representatives shall pay, or cause to be paid or become liable to pay by reason of the execution of any such Bond as soon as it shall become liable therefor whether the Surety shall have paid out such sum or any part thereof, or not. The Surety, in its sole discretion, from time to time may advance funds to or for the account of the Contractor for or in connection with the completion of the work under any contract in connection with which it has executed or may execute a Bond or Bonds (hereinafter sometimes referred to as Bonded Contract), and for the discharge of obligations incurred in connection therewith or relating thereto, and such advances shall be deemed "loans" under the terms of this Instrument whether or not such advances have been so used by the Contractor.

7. If the Surety shall set up a reserve to cover any contingent claim or claims, loss, costs, attorneys' fees and/or other expenses in connection with any such Bond the Undersigned, within ten (10) days after receipt of written demand, as evidenced by registry or certified mail return receipt, will pay to the Surety current funds in an amount equal to such reserve, and any subsequent increase thereof, such funds to be held by the Surety as collateral, in addition to the indemnity afforded by this Instrument, with the right to use the same or any part thereof, at any time, in payment or compromise of any judgment, claim, liability, loss, damage, attorneys' fees and disbursements or other expenses. Demand shall be sufficient if sent by registered or certified mail to the Undersigned at the address given herein or last known to the Surety.

8. The Surety may settle or compromise any claim, demand, suit or judgment upon any Bond or Bonds executed by it, and any such settlement or compromise shall be binding upon the Undersigned. If, however, the Undersigned shall timely request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety at the time of such request cash or other collateral satisfactory to the Surety in kind and amount, to be used to pay any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety, the Surety shall so litigate, defend or appeal; but nothing herein contained shall be deemed to impose a duty upon the Surety to give notice to the Undersigned of any such claim, demand, suit or judgment.

9. The vouchers or other evidence of payments made by the Surety shall be prima facie evidence of the fact and amount of the liability of the Undersigned to the Surety.

Form 1136 (Rev. 10-83)

EXHIBIT C

ST PAUL SURETY [illegible] Jan 14 2[illegible] 16:04 P.04

[illegible] as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any such contract or contracts are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any such Bonds, and this agreement and declaration shall also constitute notice of such trust.

11. The Contractor will furnish to the Surety such information as it may request from time to time concerning any Bonded Contracts; and those with whom such contracts are made hereby are authorized to furnish to the Surety information concerning such contracts and the work thereunder. The Surety from time to time until its liability with respect to all such contracts is terminated, and until it shall have been fully reimbursed for all loss and expense which it may have paid in connection therewith, may examine the books and records of the Contractor. All persons, including credit reporting agencies, having or obtaining information concerning the financial affairs and operations of the Undersigned hereby are authorized and directed to disclose such information to the Surety upon its request, and the Surety and every such person hereby are released and discharged of any and all claims, liability and responsibility which they or any of them might otherwise incur or be subject to for or by reason of any such disclosure, or for or by reason of the disclosure by the Surety to others of any information obtained by it from any source whatsoever.

12. In the event the Contractor shall breach, or default in or delay the performance of, any Bonded Contract, or fail promptly to discharge all obligations which might be chargeable under any Bond executed in connection therewith or which might give rise to a lien or charge upon any unpaid contract balance or the property of an Obligee named in any such Bond, or in the event of any breach of the terms of this instrument, the Undersigned, and each of them, hereby assign and set over unto the Surety as of the date hereof, their right, title and interest in and to: (a) All of the deferred payments and retained percentages, and all moneys and properties that may be, and that thereafter may become, payable to the Contractor on account of, and all claims and actions and causes of action arising in, such contract, or on account of or relating to extra work or materials supplied in connection therewith, as well as all other moneys or properties of the Contractor, hereby agreeing that such money and the proceeds of such payments, properties, claims, actions and causes of action shall be the sole property of the Surety to be by it credited upon any sum due or to become due it under the terms of this instrument; (b) all supplies, tools, plant, equipment and materials (whether completely manufactured or not), wherever located, which have been or hereafter may be purchased, used, or acquired for use, entirely or partly, in the performance of such contract, hereby agreeing that the Surety and its authorized representatives are authorized to take possession of said supplies, tools, plant, equipment and materials and use and enjoy the title thereto and the possession thereof; and (c) all subcontracts relating to the work under such contract which have been or hereafter may be made, together with the materials contained therein, and all surety bonds securing the performance of, or the discharge of obligations incurred in connection with, such subcontracts, hereby agreeing that the Surety may enforce the same in the name of the Contractor or otherwise. In addition, in any such event aforesaid, the Surety, at its option and in its sole discretion, may take possession of all or any part of the work under any or all Bonded Contracts, and at the expense of the Undersigned complete, or cause the completion of, such work, or re-let, or consent to the re-letting or completion thereof; and in such event, may invite the Obligees, and the Obligees are authorized, to declare the Contractor in default under such contracts, any provisions thereof to the contrary notwithstanding. Neither the Surety nor the Obligees shall incur any liability to any of the Undersigned in the exercise of the rights granted by this Section 12, except for deliberate and willful malfeasance.

13. If it becomes necessary or advisable in the judgment of the Surety to control, administer, operate or manage any or all matters connected with the performance of any Bonded Contract for the purpose of attempting to minimize any ultimate loss to the Surety, or for the purpose of discharging its obligations of suretyship, the Undersigned hereby expressly covenant and agree that such action on the part of the Surety shall be entirely within its rights and remedies under the terms of this instrument and as Surety, and do hereby fully release and discharge the Surety, in this connection, from liability for all actions taken by it or for its omission to act, except for deliberate and willful malfeasance.

14. In any action, suit or proceeding brought by the Surety to enforce any of the covenants of this instrument, the costs and expenses, including attorneys' fees, incurred by the Surety in connection therewith may be included in any judgment or decree rendered against the Undersigned. Failure of the Surety to pursue any remedy against any one or more of the Undersigned shall not effect a release of or waiver of any right against any other of the Undersigned. Separate suits against one or more of the Undersigned may be brought hereunder as causes of action accrue, and the bringing of suit, or recovery of judgment against one or more of the Undersigned upon any cause of action shall not prejudice or bar the bringing of suits and the recovery of judgments on the same cause of action against any other of the Undersigned, or against any or all of the Undersigned upon other causes of action, whether theretofore or thereafter arising.

15. The Surety may, without notice to or knowledge of the Indemnitors, assent to any change in such Bonds, and/or any contracts referred to therein, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and assent to or take any assignment or assignments, execute or consent to the execution of any continuations, extensions or renewals of the Bonds and execute any substitute or substitutes therefor, with the same or different conditions, provisions and Obligees and with the same or larger or smaller penalties, and the Indemnitors shall remain bound under the terms of this agreement even though any such assent by the Surety does or might substantially increase the liability of the Surety and the Indemnitors. The Undersigned waive notice of any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting its rights or liability under any such Bond or Bonds, or the Undersigned's rights or liabilities hereunder.

16. If the execution of this instrument by any of the Undersigned shall be invalid for any reason, or if any of the Undersigned shall be released from his obligations hereunder, the terms and conditions hereof shall nevertheless be binding upon and continue in full force and effect as to the rest of the Undersigned; nor shall it be a defense to any claim by the Surety hereunder that it was to have procured additional indemnity or security, or that it has procured additional indemnity or security, or that it has released other indemnity or security in respect of any such Bond or Bonds.

17. If any provision or provisions of this instrument be void or unenforceable under the laws of any place governing its construction or enforcement, this instrument shall not be void or vitiated thereby but shall be construed and enforced with the same effect as though such provision or provisions were omitted. All rights and remedies of the Surety under this instrument shall be cumulative, and the exercise of or failure to exercise any particular right or remedy at any time shall not be considered to be an election of remedy or a waiver of any other right or remedy. The rights, powers, and remedies afforded the Surety by the terms of this instrument are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor or Indemnitors or others whether by the terms of any other instrument or agreement or by operation of law.

18. The Contractor and each of the Indemnitors hereby irrevocably constitutes and appoints Surety his true and lawful attorney for and in his stead, place and stead to execute any and all instruments, and to do and perform any and all other acts and things requisite or proper, to vest in the Surety absolute title to any and all funds, property and/or rights in Section 12 hereof assigned, transferred and conveyed, and to secure to the Surety the full and effective use and enjoyment of the rights granted the Surety under Sections 10 and 12 hereof; hereby giving and granting to said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as the Contractor or Indemnitors might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that said attorney or its substitute shall lawfully do or cause to be done by virtue hereof.

AUG 23 2002 09:29 2125240724 PAGE.03

EXHIBIT C

19. As used in this instrument, the singular includes the plural, and the plural the singular, and the masculine pronoun shall be read as feminine or neuter, as circumstances require; and the word "person" shall mean and include individuals, partnerships, corporations and associations.

20. Except as hereinafter in this paragraph provided, any of the Undersigned may, upon written notice by registered mail to the Administrative Offices of St. Paul/Seaboard, at Burnt Mills Road and Route 206, Bedminster, New Jersey 07921, to be effective not less than ten (10) days after receipt, limit his obligations under this instrument to Bonds executed by the Surety for the Contractor prior to the effective date of such notice, provided, however that such notice shall not be effective with respect to any Bond or Bonds executed after such date (a) upon the award of a contract to the Contractor on a bid or proposal in respect of which the Surety has executed and delivered a bid or proposal bond prior to such date, or (b) which the Surety has become committed to execute prior to such date, or (c) in connection with any claim, loss, litigation, or other matter involving or relating to any Bond or Bonds executed prior to such date or thereafter executed as hereinbefore in (a) or (b) provided. Such limitation of the obligations of any of the Undersigned shall not operate to limit the obligations of, or release, the rest of the Undersigned whether or not they have notice or knowledge thereof.

21. The rights and remedies afforded the Surety by the terms of this instrument may not be waived or modified orally.

22. IT IS FURTHER AGREED THAT FROM TIME TO TIME ADDITIONAL COMPANIES MAY BE ADDED TO SCHEDULE I OF THIS AGREEMENT BY THE ISSUANCE OF LETTERS OF AMENDMENT EXECUTED BY AMAKO, Incorporated ________ AND THE PERSON WHO EXECUTES SAID LETTERS OF AMENDMENT SHALL BE AUTHORIZED BY A RESOLUTION OF THE BOARD OF DIRECTORS OF AMAKO, INCORPORATED OR IN ACCORDANCE WITH ARTICLE V, SECTION 5.01 OF AMAKO INCORPORATED'S BY-LAWS TO SO AMEND SCHEDULE I.

DATED this 19 day of October 19 93

CONTRACTOR(S)

AMAKO, INCORPORATED

By [signature]
T. J. FINDLEY, JR. - TREASURER

By ____________________ By ____________________

By ____________________

INDEMNITOR(S)

AMAKO, INCORPORATED

By [signature]
T. J. FINDLEY, JR. - TREASURER

Street 180 Maiden Lane
City New York
State New York, 10038

By ____________________ By ____________________

Street ____________________ Street ____________________
City ____________________ City ____________________
State ____________________ State ____________________

Street ____________________
City ____________________
State ____________________

INSTRUCTIONS

*If Contractor or any Indemnitor be a CORPORATION, corporate name should be set forth in full and corporate seal impressed. The signature and title of the officer executing for the Corporation should be set out immediately below. If a PARTNERSHIP, firm name should be set forth in full, with the signature(s) of the partner(s) executing in its behalf set out immediately below. EACH PARTNER should sign as an INDEMNITOR.*

*This instrument should be dated, and each signature thereon properly ACKNOWLEDGED in the spaces provided therefor on the reverse hereof. Attach additional acknowledgment forms if necessary.*

EXHIBIT C

(APPENDIX I)

Seaboard Surety Company

SCHEDULE 1

Contractors' General Agreement of Indemnity

| Company | (State of Incorporation) | Address |
|---|---|---|
| ASARCO Incorporated | New Jersey | 180 Maiden Lane New York, NY 10038 |

SUBSIDIARIES AND OTHER ASSOCIATED COMPANIES:

| | | |
|---|---|---|
| 1 Air Resources Corporation | Delaware | " |
| 2 American Limestone Company, Inc. | Delaware | " |
| 3 AR Mexican Explorations Inc. | Delaware | " |
| 4 Minera San Bernardo, S.A. | Mexico | " |
| 5 AR Mexican Holdings, Inc. | Delaware | " |
| 6 AR Specialty Chemicals, S.A. de C.V. | Mexico | " |
| 7 Enthone-OMI de Mexico S.A. de C.V. | Mexico | " |
| 8 AR Silver Bell, Inc. | Delaware | " |
| 9 Silver Bell Mining, L.L.C. | Delaware | " |
| 10 AR Montana Corporation | Delaware | " |
| 11 Montana Resources | Montana Partnership | " |
| 12 Asarco Arizona, Inc. | Delaware | " |
| 13 Asarco Exploration Company, Inc. | New York | " |
| 14 ASARCO Guiane Francaise S.A.R.L. | Bolivia | " |
| 15 Empresa Minera Manquiri S.R.L. | Bolivia | " |
| 16 Asarco Exploration Co. of Canada, Ltd. | Canada | " |
| 17 Asarco International Corporation | Delaware | " |
| 18 Asarco International Corp. FSC | Virgin Islands | " |
| 19 Asarco Oil and Gas Company, Inc. | New York | " |
| 20 Asarco Peruvial Exploration Co. | Delaware | " |
| 21 ASARCO Santa Cruz, Inc. | Delaware | " |
| 22 Covington Land Company | Delaware | " |
| 23 CP Water Company | Arizona | " |
| 24 Bridgeview Management Co., Inc. | New Jersey | " |
| 25 Compania Minera Asarco, S.A. | Chile | " |
| 26 Domestic Realty Company, Inc. | Montana | " |
| 27 Encycle, Inc. | Delaware | " |
| 28 Hydrometrics, Inc. | Delaware | |
| 29 Compania Hydrometrics de Mexico S.A. de C.V. | | " |
| 30 Encycle/Texas, Inc. | Delaware | " |
| 31 Enthone, Incorporated | New York | " |

EXHIBIT C