ST PAUL SURETY          fax:2125040725          Jan 14  3  16:05     P.08
                                                 Aug 23 2  8.08     P.03

[APPENDIX I]

Seaboard Surety Company

SCHEDULE 1

Contractors' General Agreement of Indemnity

| Company | (State of Incorporation) | Address |
|---|---|---|
| 32 Enthone-OMI, Inc. | Delaware | " |
| 33 Enthone-OMI (Australia) Pty. Ltd. | Victoria, Australia | " |
| 34 Enthone-OMI Holding GmbH | Austria | " |
| 35 Enthone-OMI (Benelux) B.V. | The Netherlands | |
| 36 Enthone-OMI (Austria) GmbH | | " |
| 37 Enthone-OMI (France) S.A. | France | |
| 38 Enthone-OMI Holdings (Deutschland) GmbH | Germany | " |
| 39 Deutsche Oberflachentichnik GmbH | Germany | " |
| 40 DOT Rechenzentrum GmbH | Germany | " |
| 41 L.P.W. Benelux B.V. | Netherlands | " |
| 42 L.P.W. Chemi GmbH | Germany | " |
| 43 Blasberg Oberflachentechnik GmbH | Germany | " |
| 44 Blasberg GTL Service und Vertriebs GmbH | Germany | " |
| 45 Blasberg Ytteknik AB | Sweden | " |
| 46 Galvano Production Chemie GmbH | Germany | " |
| 47 L.P.W. France SARL | France | " |
| 48 Riedel Oberflachentichnik GmbH | Germany | " |
| 49 L.P.W. Oberflachentichnik Sp.z.o.o. | Poland | " |
| 50 Nihon LPW K.K. | Japan | " |
| 51 Wunsch Chemie GmbH | Germany | " |
| 52 Enthone-OMI (Italia) S.A.R.L. | Italy | " |
| 53 Enthone-OMI Holdings (Europe)S.A.S | France | " |
| 54 Enthone-OMI (Italia) S.A.R.L. | Italy | |
| 55 Internacional de Manufacturas Asociadas S.A. | Spain | " |
| 56 Imasa A.G. | Switzerland | " |
| 57 Enthone-OMI Holdings (U.K.) Ltd. | United Kingdom | " |
| 58 AMZA Ltd. | Israel | " |
| 59 Enthone-OMI (U.K.) Limited | United Kingdom | " |
| 60 Enthone-OMI (Sverige) A.B. | Sweden | " |
| 61 Enthone-OMI Finance N.V. | Netherlands Antilles | " |
| 62 Enthone-OMI (Canada) Inc. | Ontario, Canada | " |
| 63 IMASA B.V. | The Netherlands | " |
| 54 Enthone-OMI (Hong Kong) Co. Ltd. | Hong Kong | |

AUG 23 2002 09:24                                    2125342724          PAGE.03

EXHIBIT C

ST PAUL SURETY        FAX:2125040724                Jan 14    16:05        P.09

(APPENDIX I)

Seaboard Surety Company

SCHEDULE 1

Contractors' General Agreement of Indemnity

| Company | (State of Incorporation) | Address |
|---|---|---|
| 65 Enthone-OMI K.K. | Japan | " |
| 66 IMASA Kemi A.B. | Sweden | " |
| 67 Enthone-OMI Holdings (U.K.) Ltd. | United Kingdom | " |
| 68 OMI Holdings S.A. | Switzerland | " |
| 69 Electroplating Engineers of Japan Ltd. | Japan | " |
| 70 Enthone-OMI (Suisse) S.A. | Switzerland | " |
| 71 OMI International Corporation | Delaware | " |
| 72 Enthone-OMI (Espana) S.A. | Spain | " |
| 73 Enthone-OMI (Europe) Corporation | Delaware | " |
| 74 Enthone-OMI (Hong Kong) Co. Ltd. | Hong Kong | " |
| 75 Hua-Mei Electroplating Technology Company, Ltd. | China | " |
| 76 Enthone-OMI (Singapore) Pte. Ltd. | Singapore | " |
| 77 Enthone-OMI (Malaysia) Sdn. Bhd. | Malaysia | " |
| 78 Federated Metals Canada Limited | Canada | " |
| 79 Federated Metals Corporation | New York | " |
| 80 Geominerals Insurance Company, Ltd. | Bermuda | " |
| 81 Lac d'Amiante du Quebec, Liee | Delaware | " |
| 82 LAQ Canada, Ltd. | Delaware | " |
| 83 Mining Development Company | Delaware | " |
| 84 Empresa Minera Manquiri S.R.L. | Bolivia | " |
| 85 Minto Explorations Ltd. | British Columbia | " |
| 86 Mission Exploration Company | Delaware | " |
| 87 Lesarco, Inc. | Phillipines | " |
| 88 NCBR, Inc. | Delaware | " |
| 89 Northern Peru Mining Corporation | Delaware | " |
| 90 Silver Valley Resources Corporation | Delaware | " |
| 91 Southern Peru Copper Corporation | Delaware | " |
| 92 Fomento, S.A. | Peru | " |
| 93 Pegaros Travels, S.A. | Peru | " |
| 94 Logistics Services Incorporated | Delaware | " |
| 95 LSI-Peru, S.A. | Peru | " |
| 96 Multimines Corporation | Delaware | " |
| 97 Multimines Insurance Company, Ltd. | New York | " |
| 98 Recursos e Inversiones Andinas, S.A. | Peru | " |

AUG 23 2002 08:24

EXHIBIT C

ST PAUL SURETY          Fax:2125040724          Jan 14 2005   16:05     P. 10

(APPENDIX I)

Seaboard Surety Company

SCHEDULE 1

Contractors' General Agreement of Indemnity

| Company | (State of Incorporation) | Address |
|---------|--------------------------|---------|
| 99 Compania Minera Los Tolmos, S.A. | Peru | " |
| 100 The International Metal Company | New York | " |
| 101 Tulipan Company, Inc. | Delaware | " |

Date: Nov 4 1999 _____          By _____
                                        C.F. Schultz, Treasurer

AUG 23 2002 08:24

2125040724     PAGE.05     EXHIBIT C

ST PAUL SURETY          FAX:2125040724          Jan 14 2??3   16:05    P. 11
                                               Aug 23 2?     8:09      P.09

ASARCO Incorporated

New York, N.Y., October 19, 1993

I, C. D. Gonzales, an Assistant Secretary of ASARCO Incorporated, a New Jersey corporation, do hereby certify that the following is a full, true and correct copy of Article V, Section 5.01 of the By-Laws of said Company in full force and effect since June 28, 1991 and that there has been no amendment thereof since such date.

Execution of Instruments. All deeds, contracts, and other instruments requiring execution by the Company shall be signed by the Chairman of the Board, the President, the Vice Chairman, an Executive Vice President, a Senior Vice President, Vice President or the Treasurer, and attested or countersigned by the Controller, Deputy Controller, an Assistant Controller, the Secretary, an Assistant Secretary, or an Assistant Treasurer; provided, however, that authority to sign any deeds, contracts or other instruments requiring execution by the Company may be conferred by the Board upon any person or persons whether or not such person or persons be officers of the Company; and provided, further, that the Chairman of the Board, the President, the Vice Chairman and any Executive Vice President may delegate, from time to time, by instrument in writing, all or any part of such authority to any other person or persons.

I further certify that at the Annual Meeting of the Board of Directors of the Company held on April 28, 1993, Mr. R. de J. Osborne was elected Chairman and President of the Company; Messrs. G. W. Anderson and F. R. McAllister were each elected Executive Vice President; Mr. A. B. Kinsolving was elected Vice President, General Counsel and Secretary; Mr. K. R. Morano was elected Vice President - Finance and Chief Financial Officer; Messrs. R. J. Bothwell, Jr., J. J. Kerr, , R. M. Novotny, G. D. Van Voorhis, D. B. Woodbury were each elected Vice Presidents; Mr. R. J. O'Keefe was elected Controller; Messrs. G. M. Souza and C. P. Schultz were each elected Assistant Treasurer; Ms. S. D. Delanney and Ms. C. D. Gonzales were each elected Assistant Secretary; and Mr. T. J. Findley, Jr. was elected Treasurer, a position he currently holds, and the following is his true and correct signature:

_T. J. Findley_
T. J. Findley, Jr.
Treasurer

_C. D. Gonzales_
C. D. Gonzales
Assistant Secretary

[SEAL]

Jan 14 20__ 16:05     P.12

## CORPORATE ACKNOWLEDGMENT

## INDIVIDUAL ACKNOWLEDGMENT

## PARTNERSHIP ACKNOWLEDGMENT

2125248724     PAGE.89

EXHIBIT G

# SQUIRE SANDERS

LEGAL | COUNSEL | WORLDWIDE

The following item(s) have been docketed for you based upon the documentation of/for Other received by the Docket Department. Please notify Docket if you have any changes to the items below.

**All Listed Professionals**

George Brandon
Thomas Raine
Claudia L. Barajas
Brian D. Kaiser

| Case Details | Date | Narrative | Authority |
|---|---|---|---|
| 62738.00004.0002 (CV:06-0134 PHX) Seaboard Surety Company v. Grupo Mexico S.A. de C.V. | 6/19/2006 10:00 AM | Custodian of Records St. Paul Fire And Marine Insurance Company to produce documents on 06/19/06 at 10:00 a.m | |

Page: 1

EXHIBIT C

Report Prepared:6/2/2006 5:04 PM

Re: St. Paul Subpoena

Page 1 of 2

### Kaiser, Brian D.

| | |
|---|---|
| **From:** | Greves, Jason A. [JGreves@faegre.com] |
| **Sent:** | Friday, June 16, 2006 1:57 PM |
| **To:** | Kaiser, Brian D. |
| **Subject:** | RE: St. Paul Subpoena |

Brian: I will send you a Rule 45 response today regarding the subpoena. It will come to you via fax and .pdf email. We want to work with you to respond to document requests we believe are within the scope of the Court Order. The fact of the matter is that the documents cannot be produced by Monday. We will propose, in my fax, producing documents within approximately 15 days. Look for my fax and I await your response.

**From:** Kaiser, Brian D. [mailto:BKaiser@ssd.com]
**Sent:** Friday, June 16, 2006 2:58 PM
**To:** Greves, Jason A.
**Subject:** Re: St. Paul Subpoena

Jason,
Your "attempt to work this out short of Court involvement" was a demand that Grupo Mexico withdraw its subpoena entirely. That doesn't seem to leave much room to "work this out."
We certainly hope that our letter and the exhibits attached thereto leave you with no doubt that St. Paul must timely produce the requested documents. Nonetheless, we leave open the possibility of further discussion in order to answer any questions you may have and to assure you that we remain open to consider any additional facts or arguments you may wish to present to us.
Brian

Sent from my BlackBerry Wireless Handheld

-----Original Message-----
**From:** Greves, Jason A. <JGreves@faegre.com>
**To:** Kaiser, Brian D. <BKaiser@ssd.com>
**Sent:** Fri Jun 16 13:56:06 2006
**Subject:** RE: St. Paul Subpoena

Given Grupo's 22 page fax in response to my attempt to work this out short of Court involvement, can you explain why you even to offer to discuss this further?

**From:** Kaiser, Brian D. [mailto:BKaiser@ssd.com]
**Sent:** Friday, June 16, 2006 12:33 PM
**To:** Greves, Jason A.
**Subject:** Re: St. Paul Subpoena

Jason,
As I told you in my telephone message yesterday, I am attending the state bar convention today and have very limited availability. I am disappoint that you have chosen to hold the subpoena for ten days only to raise eleventh hour objections. Nonetheless, I have taken the time to provide you with a detailed response which you should be receiving shortly by facsimile. Feel free to email or call if you would like to discuss this further.
Best,
Brian Kaiser

**EXHIBIT D**

6/21/2006

Re: St. Paul Subpoena

Page 2 of 2

Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Greves, Jason A. <JGreves@faegre.com>
To: Kaiser, Brian D. <BKaiser@ssd.com>
Sent: Fri Jun 16 11:45:48 2006
Subject: RE: St. Paul Subpoena

Brian:  Does your client have a position on this?

From:   Greves, Jason A.
Sent:   Thursday, June 15, 2006 4:43 PM
To:     bkaiser@ssd.com
Subject:    St. Paul Subpoena

Brian:
Sorry I missed your call.  At your request, we are sending you this email hoping the parties can resolve this discovery dispute short of St. Paul filing a motion to quash the subpoena.

Grupo Mexico is attempting to use Rule 45 to obtain documents from St. Paul as opposed to following the proper procedure of filing a Rule 34 request for production of documents.  Pursuant to the complaint, Grupo Mexico has been made aware that Seaboard is wholly owned by St. Paul and thus, St. Paul is a party to this action.  Therefore, the conduit for obtaining documents must be Rule 34.  While this may appear to be an argument of procedure over substance, in reality, by serving a Rule 45 subpoena Grupo Mexico attempts to shorten the time to answer the discovery from 30 days (as provided by Rule 34) to the 14 days it arbitrarily sets in the subpoena.  The attempt to obtain documents through R. 45 subpoena is defective and subject to a motion to quash.

Moreover, we believe the subpoena is overly broad and not limited to the order of the Arizona Court.  Namely, while we would concede that Request Number 1 falls within the order of the Court, without more limiting language from Grupo Mexico, we believe the remaining requests are not in accordance with the Court order.  To the extent you disagree, we will likely move the Minnesota Court to stay enforcement of the Subpoena subject to a ruling by the Arizona Court on the scope of the discovery requests.

Therefore, we request the following.  Given that our motion is due to the Court on Monday, we need to hear from you by Friday morning on these conditions:

(1) Grupo Mexico must agree to withdraw its R. 45 subpoena and, instead, file upon counsel for Seaboard a R. 34 request for production of documents.

(2) To the extent that counsel for Grupo Mexico and Seaboard disagree on the scope of the requested documents, the parties must agree to raise the issue with the Arizona Court.

Jason A. Greves
Faegre & Benson
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-6876
Fax: (612) 766-1600
jgreves@faegre.com

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**EXHIBIT D**

6/21/2006

```
*********************************
*    SERIAL BROADCAST REPORT (1)    *
*********************************
```

(FRI) JUN 16 2006 19:13
FAEGRE & BENSON

| DOCUMENT # | TIME STORED | TIME SENT | DURATION | TOT. DST | PAGES |
|------------|-------------|-----------|----------|----------|-------|
| 4854296-034 | 6. 16 19:09 | 6. 16 19:10 | 2' 36" | 2 | 3 |

| FIN. | 2 |
|------|---|

| 0002#000010#16022538129# | 0002#000010#6126728397# |
|---------------------------|-------------------------|



FAEGRE
&
BENSON
LLP

UNITED STATES | ENGLAND | GERMANY | CHINA

## FACSIMILE TRANSMISSION

| | | |
|---|---|---|
| FROM: | Jason A. Greves | TELEPHONE: 612-766-6876 |
| | | EMAIL: JGreves@faegre.com |
| DATE: | June 16, 2006 | TIME: _____ .m. (Minneapolis) |
| | NUMBER OF PAGES (including this page): 3 | F&B FILE: 000190    REC: 0002 |
| TO: | Brian Kaiser Squire | TELEPHONE: |
| | | FAX: 602-253-8129 |
| | Wayne S. Moskowitz Esq. Maslon Edelman Borman & Brand LLP | TELEPHONE: (612) 672-8200 |
| | | FAX: (612) 672-8397 |

## MESSAGE

EXHIBIT E



FAEGRE
&
BENSON
LLP

UNITED STATES | ENGLAND | GERMANY | CHINA

JASON A. GREVES
JGreves@faegre.com
(612) 766-6876

June 16, 2006

Brian D. Kaiser                                    **Email and Facsimile**
Squire Sanders & Dempsey L.L.P.                         (602) 528-4090
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ  85004-4498

Wayne S. Moskowitz Esq.                                **Facsimile**
Maslon Edelman Borman & Brand LLP                     (612) 672-8397
90 S Seventh Street, Suite 3300
Minneapolis, MN  55402

Re:    Rule 45 Objection to the Subpoena Duces Tecum to St. Paul Fire & Marine
       Insurance Co.

Dear Mr. Kaiser and Mr. Moskowitz:

Please note that Faegre & Benson, LLP, is local counsel for St. Paul Fire & Marine
Insurance Co. ("St. Paul") and its subsidiary Seaboard Surety Company ("Seaboard") in
regards to the Subpoena in a Civil Case (the "Subpoena") served by Grupo Mexico, SA de
CV ("Grupo Mexico") in the lawsuit titled Seaboard Surety Company v. Grupo Mexico, SA
de CV venued in the United States District Court for the District of Arizona. The Subpoena
was served upon St. Paul on June 5, 2006, and demands production of five sets of documents
by June 19 at 10 a.m. This letter is in response to your correspondence of this date. Please
note that documents will not be produced at Maslon Edelman Borman & Brand LLP on
Monday, June 19 for reasons as follows:

1.      Lead Counsel for Seaboard advises us that the requests by Grupo Mexico are
beyond the scope of discovery authorized by the Court Order of the United States District
Court for the District of Arizona dated May 12, 2006 (the "Court Order"). It appears to St.
Paul that the Subpoena is not limited to documents regarding the jurisdictional issues
addressed in the Court Order.

2.      On information and belief, any such documents requested of St. Paul reside in
the files of Seaboard, the surety that issued the bonds in question. St. Paul understands that
Grupo Mexico has served a Rule 34 Request for Production (Directed Solely to the Issues of

June 16, 2006
Page 2

Jurisdiction) upon Seaboard for the same documents subpoenaed from St. Paul, and that Seaboard is not obligated to respond to those requests until July 3, 2006.

3.    Pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, St. Paul hereby formally objects to the Subpoena as overly broad, vague and unnecessarily burdensome for failing to allow a reasonable time for compliance. St. Paul is unable to collect and produce requested documents, if any exist, within the fourteen day deadline created by Grupo Mexico. St. Paul is endeavoring to locate files, if any exist, of employees and former employees responsive to the Subpoena. These documents, if any exist, may be spread over several offices in several different states. The documents must then be sent to counsel for a privilege and work product review before production to Grupo Mexico. Fourteen days is an insufficient amount of time to complete this process.

St. Paul, however, is willing to produce any documents that may be responsive to the Subpoena, and within the scope of the Court Order, to Grupo Mexico at the same time that Seaboard is obligated to produce its documents pursuant to Grupo Mexico's Rule 34 Request. St. Paul's production of documents will be those documents, if any exist in the possession of St. Paul, within the scope of the Subpoena and within scope of the Court Order.

We await your response and hope you are willing to accommodate our request to produce documents on July 3.

Very truly yours,

FAEGRE & BENSON LLP

Jason A. Greves

GREJA

cc:   Philip L. Bruner
      Kara A. Ricupero
M2:20804986.01

EXHIBIT E



UNITED STATES ¦ ENGLAND ¦ GERMANY ¦ CHINA

JASON A. GREVES
JGreves@faegre.com
(612) 766-6876

June 21, 2006

Brian D. Kaiser                                         **Email and Facsimile**
Squire Sanders & Dempsey L.L.P.                        (602) 528-4090
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498

Re:    <u>Rule 45 Objection to the Subpoena Duces Tecum to St. Paul Fire & Marine
       Insurance Co.</u>

Dear Mr. Kaiser:

       We are in receipt of your fax dated June 20, 2006. St. Paul is in the process of
searching for documents in its possession responsive to the subpoena and in accordance with
St. Paul's noted objections to the subpoena. To date, no such documents have been located,
but our client is continuing its search. It may very well be that all documents responsive to
the St. Paul subpoena are possessed by Seaboard. Seaboard is the company that issued the
applicable bonds and is the company that likely possesses the documents responsive to the
subpoena. If such is the case, we will inform you that St. Paul possesses no documents
responsive to the subpoena. In the mean time, as it relates to your demand that documents be
produced to you on Friday, we currently have no such documents to produce. We will gladly
send to your attention any documents possessed by St. Paul and responsive to the subpoena,
if any, as we receive and review them at this firm. We are willing to produce documents in
this piecemeal fashion on the understanding that the St. Paul document production, if
any, would be fully completed by July 3.

       Please, note that our continuing objections to the requests are based, *inter alia*, upon
the short time allotted by Group Mexico for St. Paul to undertake its search for the
documents, and upon Grupo Mexico's overly broad and vague requests for "all" documents
"concerning" the reclamation bonds and "all" documents "concerning" the GIA. St. Paul
also continues to object to any search that requires burdensome, time consuming and costly
searches of electronically stored documents. We request that, before Grupo Mexico starts
threatening a Motion to Compel, it permit St. Paul to complete its review to determine if it
even possesses any documents related to the subpoena.

EXHIBIT F

Brian D. Kaiser
June 21, 2006
Page 2

Very truly yours,

FAEGRE & BENSON LLP



Jason A. Graves

GREJA

cc:    Philip L. Bruner
       Kara A. Ricupero

M2:20806083.01

EXHIBIT F



FAEGRE
&
BENSON
LLP

UNITED STATES | ENGLAND | GERMANY ; CHINA

## FACSIMILE TRANSMISSION

| | | |
|---|---|---|
| FROM: | Jason A. Greves | TELEPHONE: 612-766-6876 |
| | | EMAIL: JGreves@faegre.com |
| DATE: | June 21, 2006 | TIME: _____ .m. (Minneapolis) |
| | NUMBER OF PAGES (including this page): 3 | F&B FILE: 337318    REC: 0002 |
| TO: | Brian D. Kaiser | TELEPHONE: |
| | Squire Sanders & Dempsey, LLP | FAX: 602-528-4090 |

## MESSAGE

### IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL THE FAX CENTER AT 612-766-1650 OR MEGAN FROELKE AT 612-766-8948.

THIS TELECOPY IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE BELOW ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

2200 WELLS FARGO CENTER | 90 SOUTH SEVENTH STREET : MINNEAPOLIS MINNESOTA 55402-3901
TELEPHONE 612-766-7800 | FACSIMILE 612-766-1600 | WWW.FAEGRE.COM    EXHIBIT F

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

David W. Kash - 013571
dkash@jsslaw.com
Matthew L. Cates - 019700
mcates@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
The Collier Center, 11ᵗʰ Floor
201 East Washington Street
Phoenix, Arizona 85004-2385
Telephone: (602) 262-5911

Attorneys for Plaintiff



### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

SEABOARD SURETY COMPANY, a
New York corporation,

            Plaintiff

vs.

GRUPO MEXICO, S.A. de C.V., a
Mexican corporation, and DOES 1-CI,

            Defendants

No. CV06-0134 PHX-SMM

**PLAINTIFF'S MOTION FOR
EXTENSION OF TIME TO
RESPOND TO DEFENDANT'S
MOTION TO DISMISS AND
MOTION TO PERMIT
JURISDICTIONAL DISCOVERY**

(Oral Argument Requested)

   Plaintiff Seaboard Surety Company ("Seaboard Surety"), by and through

counsel undersigned, hereby moves the Court for an order granting Seaboard Surety a

minimum of ninety days to conduct discovery on the issue of personal jurisdiction and

to respond to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. This

Motion is supported by the attached Memorandum of Points and Authorities and the

entire record herein.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    FACTUAL BACKGROUND**

   This case arises out of the issuance of a guaranty by Defendant Grupo Mexico,

S.A. de C.V. ("Grupo Mexico") for the benefit of Plaintiff Seaboard Surety whereby

Grupo Mexico agreed to guarantee the indemnity obligations of its Arizona based

1252762_1.DOC(54548.11)

EXHIBIT G

1  subsidiary, ASARCO, Incorporated ("ASARCO") for three reclamation bonds.
2  Seaboard Surety issued the reclamation bonds in the amounts of $7 million, $3.5
3  million and $760,000, naming ASARCO as principal, and the U.S. Department of
4  Interior, Bureau of Indian Affairs as obligee, expressly conditioned upon ASARCO's
5  compliance with its obligations relating to the restoration of trust lands it leased on the
6  Tohono O'odham Reservation in Arizona for its mining operations. Importantly,
7  Seaboard Surety agreed to provide the reclamation bonds conditioned upon and in
8  complete reliance upon Grupo Mexico's guarantee of ASARCO's bonded obligations
9  – obligations that arise in Arizona, involve Grupo Mexico's Arizona subsidiary with
10 which Grupo Mexico has a direct financial interest, and that relate to mining
11 operations conducted upon federal trust lands in Arizona.[1] The effect of the guaranty
12 is that Grupo Mexico purposefully transacted business in and caused important
13 economic consequences to occur in Arizona.

14    ASARCO has defaulted on its bonded obligations and defaulted under its
15 agreement to indemnify Seaboard Surety. Grupo Mexico now refuses to guarantee
16 ASARCO's indemnity obligations to Seaboard Surety.

17    On October 13, 2005, Seaboard Surety filed the instant action in Maricopa
18 County Superior Court against Grupo Mexico for breach of contract and for specific
19 performance or *quia timet* for its failure to honor its obligations to Seaboard Surety
20 under the guaranty. Grupo Mexico removed this action to federal court and on
21 January 11, 2005, filed a motion to dismiss for lack of personal jurisdiction. Counsel
22 undersigned requested an extension of time to file a response so that jurisdictional
23 discovery could be conducted. Grupo Mexico refused.

24

25

26

---

[1] The necessity of the guaranty now becomes crystal clear with ASARCO's recent filing of bankruptcy.

EXHIBIT G

## II.    ARGUMENT

Courts are afforded broad discretion in deciding whether to allow parties to conduct discovery relating to jurisdictional issues while a motion to dismiss is pending. *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Courts within the Ninth Circuit have held that the plaintiff need not establish a prima facie case of personal jurisdiction prior to conducting discovery related to jurisdictional issues. *See Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 673 (S.D. Cal. 2001); *Marshall v. McCown DeLeeuw & Co.*, 391 F.Supp.2d 880, 883 (D. Idaho 2005). Discovery is unnecessary "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430, n. 24 (9th Cir. 1977). However, discovery should be allowed "where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.* This is precisely such a case.

Seaboard Surety in its Complaint alleges the existence of general personal jurisdiction on the grounds that Grupo Mexico conducts business in Arizona through its own actions and that of ASARCO. *See* Complaint, at ¶10. Seaboard Surety alleges that Grupo Mexico's officers and/or agents reside and/or conduct business on behalf of Grupo Mexico in Arizona, including its President of Finance and Administration, Daniel Tellechea Salido. *Id.* at ¶11. Seaboard Surety also alleges, based upon information and belief, that Grupo Mexico advertised and operated business out of facilities located in Arizona, including facilities owned and operated with the name ASARCO. *Id.* at ¶12. And, Seaboard Surety alleges that ASARCO's presence in and contacts with Arizona may be attributed to Grupo Mexico under a theory of alter ego. *Id.* at ¶¶16-20. Seaboard Surety alleges that Grupo Mexico exercises substantially total control over ASARCO's internal affairs, daily operations and management

1252762_1.DOC(54548.11}

3

EXHIBIT G

1  activities; the entities share corporate officers and top-level management; they share
2  similar logos and offices; and ASARCO maintains liability insurance policies three
3  which are purchased by Grupo Mexico. *Id.* Seaboard Surety should be permitted to
4  take discovery and further develop these grounds for personal jurisdiction.

5      In its Motion to Dismiss, Grupo Mexico attached the affidavit of its general
6  counsel, Armando Ortego.  Mr. Ortego rebuts many of Seaboard Surety's
7  jurisdictional allegations and denies the existence of any contacts between Grupo
8  Mexico and Arizona.  The analysis, however, does not end there.  Rather, courts
9  generally allow jurisdictional discovery under such circumstances where the facts
10  bearing on the question of jurisdiction are in dispute. *America West Airlines, Inc. v.*
11  *GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989).  Seaboard Surety seeks to
12  conduct discovery on issues bearing on general jurisdiction, such as whether Grupo
13  Mexico maintains offices and bank accounts in Arizona, whether it has officers and
14  employees within the state, whether it conducts meetings with corporate personnel in
15  Arizona, whether it advertises in Arizona, and whether it conducts negotiations and
16  enters into contracts in Arizona.  Seaboard Surety seeks to obtain documents relevant
17  to these issues and take the depositions of Mr. Ortego, Mr. Salido and potentially other
18  Grupo Mexico employees who may have knowledge regarding Grupo Mexico's
19  contacts with Arizona and the corporate separateness (or lack thereof) between Grupo
20  Mexico and ASARCO.

21      In addition to the assertion of general jurisdiction, Seaboard Surety alleges
22  specific jurisdiction based upon Grupo Mexico's execution of the guaranty for the
23  obligations of ASARCO.  *See* Complaint, at ¶¶5-9.  Grupo Mexico executed the
24  guaranty with a direct financial stake and economic interest in the issuance of the
25  reclamation bonds in furtherance of the mining business of its subsidiary in Arizona.
26  *Id.* As such, Grupo Mexico's guaranty played an integral part in and caused economic

1252762_1.DOC(54548.11)                                    -4

EXHIBIT G

1  consequences in Arizona. *Id.* While Plaintiff believes that the execution of the

2  guaranty, alone, is sufficient to confer personal jurisdiction over Grupo Mexico, out of

3  an abundance of caution, Plaintiff seeks leave to conduct discovery on the issues

4  surrounding the guaranty, including the location of negotiations leading up to the

5  guaranty, the persons involved, and ASARCO's involvement in its execution, if any.

6      Discovery on the issues related to personal jurisdiction is strongly favored

7  under the law, will not prejudice Grupo Mexico and will assist the Court in its

8  determination of whether it has personal jurisdiction over Grupo Mexico. For these

9  reasons, Plaintiff respectfully requests a minimum of ninety days to conduct discovery

10 on the jurisdictional issues and to respond to Grupo Mexico's Motion to Dismiss.

11     Dated this 31st day of January, 2006.

12                     JENNINGS, STROUSS & SALMON, P.L.C.

13

14     By  s/Matthew L. Cates
                David W. Kash
15              Matthew L. Cates
                201 East Washington Street, 11th Floor
16              Phoenix, Arizona 85004-2385
                Attorneys for Plaintiff
17

18 I hereby certify that on January 31, 2006, I
   electronically transmitted this Motion For
19 Extension of Time to the Clerk's Office using
   the CM/ECF System for filing and transmittal
20 of a Notice of Electronic Filing to the following
   CM/ECF registrants:
21

22 George Brandon
   Mitchel B. Axler
23 Brian D. Kaiser
   Squire, Sanders & Dempsey, LLP
24 40 North Central Avenue, Suite 2700
   Phoenix, AZ 85004-4498
25 Attorneys for Defendant Grupo Mexico S.A. de C.V.

26 By      Debra Villa

1252762_1.DOC(54548.11)                    5

EXHIBIT G

*file mc 51*

*JNE/SRN*

1   WO

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7              FOR THE DISTRICT OF ARIZONA

8
    Seaboard Surety Company, a New York        NO. CIV-06-0134-PHX-SMM
9   corporation,

10                         Plaintiff,          **ORDER**

11  v.

12  Grupo Mexico, S.A. de C.V., a Mexican
    corporation, and DOES I-CI,
13
                         Defendants.
14

15

16

17          Pending before the Court is Defendant Grupo Mexico, S.A. de C.V.'s ("Grupo

18  Mexico") Motion to Dismiss for Lack of Personal Jurisdiction (dkts. 9-10) and Seaboard

19  Surety Company's ("Seaboard") Motion for Extension of Time to Respond to Defendant

20  Grupo Mexico's Motion to Dismiss and Motion to Permit Jurisdictional Discovery. (Dkt.

21  12.) After considering the parties' briefs, the Court issues this Order.

22                         **BACKGROUND**

23          Seaboard, a wholly-owned subsidiary of The St. Paul Fire and Marine

24  Insurance Company ("St. Paul"), is a New York corporation with its principal place of

25  business in Minnesota. (Dkt. 1, Amd.Comp. ¶ 1.) Grupo Mexico, a Mexican corporation

26  and Mexico's largest mining company, has its principal place of business in Mexico City.

    (Dkts. 10 at 5, 14, Ex.C at 1.) ASARCO LLC ("ASARCO") is an indirect wholly-owned

    **S C A N N E D**

    IJUN 23 2006        EXHIBIT H—1

    U.S. DISTRICT COURT MPLS

1   subsidiary of Grupo Mexico that operates an integrated copper-mining, smelting, and

2   refining company in Tucson, Arizona. (Dkt. 14, Ex. H at 2.)

3           Seaboard filed the present case against ASARCO and Grupo Mexico in

4   Arizona state court on July 28, 2005, asserting claims for (i) Reimbursement pursuant to a

5   General Agreement of Indemnity entered into with ASARCO (the "GAI"); (ii) Indemnity

6   pursuant to the GAI; and (iii) Specific Performance of the GAI's provision requiring

7   financial statements from ASARCO. (Dkt. 1 at Initial Complaint.) Less than two weeks

8   later, ASARCO filed a Chapter 11 bankruptcy petition in the United States Bankruptcy

9   Court for the Southern District of Texas. (Dkt. 10 at 2.)

10          On October 13, 2005, Seaboard filed an amended complaint in state court,

11  eliminating ASARCO, and asserting claims for breach of contract and specific performance

12  against Grupo Mexico and "Does I-CI" based on the same factual allegations asserted in the

13  initial complaint. (Dkt. 1, Amd. Complt.) On January 6, 2006, Grupo Mexico removed this

14  action from state court to federal court. (Dkt. 1.)

15          Both Seaboard and Grupo Mexico agree that, on February 16, 2001, Grupo

16  Mexico signed a letter agreement in Mexico City, whereby it agreed to "indemnify St. Paul

17  Surety on behalf of ASARCO Incorporated for . . . three Mission reclamation bonds issued

18  to the USA, Department of the Interior, Bureau of Indian Affairs in the amounts of $7.0

19  million, $760,000, and $3.5 million, respectively" (the "Letter Agreement") (Dkts. 1, Amd.

20  Complt. ¶5; 10 at 3.) The parties also agree that, after the Letter Agreement was signed,

21  Grupo Mexico sent it via facsimile from Mexico City to St. Paul Surety in New York. (Dkt.

22  10, Ex. A at ¶19.) Seaboard alleges that, through the Letter Agreement, Grupo Mexico

23  "guaranteed ASARCO's performance of its indemnity obligations owing under" the GAI.

24  (Dkt. 1, Amd.Complt. ¶46.) Grupo Mexico contends Seaboard has not alleged any

25  judgment entered against it stemming from the Mission Reclamation Bonds or the GAI, and

26  thus Grupo Mexico's duty to "make good the loss resulting from such debt" has not yet

-2-

EXHIBIT H

1    arisen. (Dkt. 10 at 4-5.)

2              On January 11, 2006, after removing the case to this Court, Grupo Mexico

3    filed a motion to dismiss for lack of personal jurisdiction. (Dkts. 9-10.)  In support of its

4    motion, Grupo Mexico submitted the affidavit of Armando Ortega, General Counsel of

5    Grupo Mexico, which purports to identify Grupo Mexico's lack of contacts with the state

6    of Arizona.   In addition, Grupo Mexico submitted a consent decree resolving an

7    environmental enforcement action brought by the Department of Justice against ASARCO

8    in United States v. ASARCO, Inc., et al., No. CV-02-2079-PHX-RCB, filed in this Court

9    in February 2003 (the "Consent Decree"). (Dkt. 10, Ex. B.)  Although Grupo Mexico is a

10   signatory to the Consent Decree and bound to certain obligations (see id. at 6, ¶3), Grupo

11   Mexico contends the Consent Decree does not provide general jurisdiction because Grupo

12   Mexico never consented "to general jurisdiction in the State of Arizona for any and all

13   claims unrelated to" the Consent Decree. (Dkt. 10 at 8.)

14             On January 31, 2006, Seaboard filed a Motion for Extension of Time to

15   Respond to Defendant's Motion to Dismiss and a Motion to Permit Jurisdictional

16   Discovery. (Dkt. 12.)  Seaboard requests "a minimum of ninety days to conduct discovery

17   on the issue of personal jurisdiction and to respond to" Grupo Mexico's Motion to Dismiss

18   for Lack of Personal Jurisdiction. (Dkt. 12 at 1.)  Seaboard alleges specific jurisdiction

19   exists based upon Grupo Mexico's execution of the Letter Agreement, which "caused

20   important economic consequences to occur in Arizona." (Id. at 2; dkt. 1, Amd.Comp. ¶¶5-

21   9.)  Seaboard further alleges that general jurisdiction exists (i) "on the grounds that Grupo

22   Mexico conducts business in Arizona through its own actions and that of ASARCO" (dkt.

23   1, AmdComp. ¶¶10-12), and (ii) because "ASARCO's presence in and contacts with

24   Arizona may be attributed to Grupo Mexico under a theory of alter ego." (Id. ¶¶16-20; dkt.

25   12 at 3.)  Seaboard contends "it should be permitted to take discovery and further develop

26   these grounds for personal jurisdiction." (Dkt. 12 at 4.)

-3-

EXHIBIT H

<b><u>DISCUSSION</u></b>

1

2    It is well-settled that "[a] court may permit discovery to aid in determining

3    whether it has in personam jurisdiction." <u>Data Disc, Inc. v. Systems Technology Assocs.,</u>

4    <u>Inc.</u>, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). Courts are afforded a substantial amount of

5    latitude in deciding whether to allow parties to conduct jurisdictional discovery while a

6    motion to dismiss is pending. <u>Id.</u> It is also clear that, where pertinent facts bearing on the

7    question of jurisdiction are in dispute, discovery should be allowed." <u>America West</u>

8    <u>Airlines, Inc. v. GPA Group, Ltd.</u>, 877 F.2d 793, 801 (9th Cir. 1989) (citations omitted),

9    <u>overruled in part on other grounds by, Republic of Argentina v. Weltover, Inc.</u>, 504 U.S.

10   607, 617-20 (1992); <u>see also</u> Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406,

11   430 n.24 (9th Cir. 1977) (finding that "[d]iscovery . . . 'should be granted where pertinent

12   facts bearing on the question of jurisdiction are controverted . . . or where a more

13   satisfactory showing of the facts is necessary.'") (citation omitted).  The rationale for this

14   rule is that the plaintiff may be unable to ascertain the extent of the defendant's contacts

15   with the forum state, particularly when that defendant is a corporation, unless some

16   discovery is permitted.

17   Having reviewed the parties' briefs, the Amended Complaint, the evidence

18   attached to Seaboard's reply (dkt. 14), and Grupo Mexico's opposition (dkt. 13), the Court

19   concludes that it is appropriate to allow Seaboard to conduct jurisdictional discovery in this

20   matter. Seaboard has demonstrated that Grupo Mexico may have sufficient contacts with

21   the State of Arizona to establish general jurisdiction. Seaboard has also shown that the

22   relationship between ASARCO and Grupo Mexico may be closer than simply a grandparent

23   corporation's relationship to a subsidiary, but the record is not sufficiently clear as to

24   whether any such connections will demonstrate alter ego status sufficient to warrant

25   exercising personal jurisdiction.

26   ///

-4-

EXHIBIT H

1          Grupo Mexico argues that, before obtaining even limited discovery, Seaboard

2 must establish a prima facie case of personal jurisdiction, which it has failed to do. (Dkt. 13

3 at 4-5.)[1] Although some courts require that a plaintiff make a prima facie showing of

4 jurisdiction prior to a court allowing a party to conduct discovery, the Ninth Circuit does

5 not. See Orchid Biosciences, Inc. v. St. Louis University, 198 F.R.D. 670, 673 (S.D. Cal.

6 2001) (finding no authority from the Ninth Circuit to support the proposition that plaintiff

7 must establish a prima facie case of personal jurisdiction before obtaining jurisdictional

8 discovery); Marshall v. McCown Deleeuw & Co., 391 F.Supp.2d 880, 882-83 (D. Idaho

9 2005) (same); National Union Fire Insurance Co. of Pittsburgh, Pa. v. Aerohawk Aviation,

10 Inc., 259 F.Supp.2d 1096, 1106 (D.Idaho 2003) (same).

11          Moreover, in the Ninth Circuit, "[w]hen a district court acts on a defendant's

12 motion to dismiss . . . without holding an evidentiary hearing, the plaintiff need make only

13 a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Ballard

14 v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted). It would "therefore be

15 counterintuitive to require a plaintiff, *prior* to conducting discovery, to meet the same

16 burden that would be required in order to defeat a motion to dismiss." Orchid Biosciences,

17 Inc., 198 F.R.D. at 673 (emphasis in original). Thus, Seaboard is not required to establish

18 a prima facie case of personal jurisdiction before conducting jurisdictional discovery.

19          The Court also disagrees with Grupo Mexico's assertion that Mr. Ortega's

20 affidavit, which denies the existence of any contacts with the State of Arizona, proves that

21 "further discovery would not demonstrate facts sufficient to establish personal jurisdiction."

22 (Dkt. 13 at 2-4.)

23  ///

---

24      [1] The Court notes that Grupo Mexico has filed as a "specially appearing defendant. (Dkt. 13 at 1.)

25 However, the Federal Rules of Civil Procedure abolished the technical distinction between general and special appearances. See SEC v. Wencke, 783 F.2d 829, 832 n. 3 (9th Cir. 1986). Now, in all federal courts, including those exercising diversity jurisdiction, the principal method for attacking the court's jurisdiction over the person of

26 a defendant is Rule 12(b)(2).

-5-

EXHIBIT H

1          Ample evidence demonstrates that pertinent facts bearing on the question of

2    jurisdiction are controverted here and a more satisfactory showing of such facts is necessary

3    in order for the Court to rule on Grupo Mexico's Motion to Dismiss for Lack of Personal

4    Jurisdiction.  Specifically, Seaboard disputes Mr. Ortega's testimony that (i) "Grupo

5    Mexico does not maintain an office or . . . any other facilities in Arizona," (ii) "Grupo

6    Mexico has no agents, sales representatives, or any employees whatsoever in Arizona," (iii)

7    "Grupo Mexico does no direct advertising in Arizona," and (iv) "Grupo Mexico has never

8    purposefully directed any of its activities towards or consummated any transaction in

9    Arizona and has never purposefully availed itself of any of the benefits or protections of

10   Arizona laws" (Dkt. 10, Ex. A ¶¶8,10-11,13.) See Dkts. 1, AmdComp. ¶¶ 11-12; 14 at 3-4.

11   Under Ninth Circuit jurisprudence, discovery should be denied only where "it is clear that

12   further discovery would not demonstrate facts sufficient to constitute a basis for [personal]

13   jurisdiction." Wells Fargo & Co., 556 F.2d at 430 n.24.  The Court is not persuaded that

14   jurisdictional discovery would not reveal additional facts not contained in Mr. Ortega's

15   affidavit that may be sufficient to constitute a basis for personal jurisdiction.

16         Moreover, contrary to Grupo Mexico's contention, the decisions upon which

17   Seaboard relies are not distinguishable from the facts here. (Dkt. 13 at 4-6.) Mr. Ortega's

18   affidavit does not contend Grupo Mexico has no contacts with Arizona. Rather, Mr. Ortega

19   admits that Grupo Mexico is "the corporate grandparent of ASARCO," and that Grupo

20   Mexico signed a Letter Agreement on behalf of ASARCO in February 2001. (Dkt. 10, Ex.

21   A ¶¶16, 19.) As noted in Orchid Biosciences, there is a "fundamental difference between

22   a declaration or affidavit that attests to a defendant's lack of contacts with the forum state

23   and one that admits contacts but concludes they do not matter." 198 F.R.D. at 674. Based

24   on Arizona law providing that the execution of an apparent guarantee letter which defendant

25   knew was going to be used in a transaction in Arizona provided sufficient minimal contact

26   for the state to exercise in personam jurisdiction, see Hamada v. Valley National Bank, 555

-6-

1   P.2d 1121, 1124 (Ariz. App. 1976), the Court rejects Grupo Mexico's assertion that

2   "plaintiff can point to no specific contact of Grupo Mexico with the State of Arizona."

3   (Dkt. 13 at 5.) Moreover, Seaboard should not be bound solely by the contents of Mr.

4   Ortega's affidavit or by Grupo Mexico's conclusions that any contacts with Arizona are

5   insufficient to establish personal jurisdiction. Rather, because "pertinent facts bearing on

6   the question of jurisdiction are controverted" and "a more satisfactory showing of the facts

7   is necessary" for this Court to rule on Grupo Mexico's Motion to Dismiss, Seaboard should

8   be permitted to explore the nature of Grupo Mexico's contacts with the State of Arizona and

9   proffer its own arguments regarding personal jurisdiction.

10          Relying on a decision from the Second Circuit Court of Appeals, Jazini v.

11  Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998), Grupo Mexico argues that

12  jurisdictional discovery should be denied because Seaboard's alter ego theory is "devoid

13  of a factual basis." (Dkt. 13 at 6-7.) Once again, Grupo Mexico relies on the wrong legal

14  standard necessary to obtain jurisdictional discovery. Jazini denied jurisdictional discovery

15  to the plaintiffs because they failed to establish a prima facie case of jurisdiction. Jazini,

16  148 F.3d at 186. The Ninth Circuit's standard for permitting jurisdictional discovery, by

17  contrast, is quite liberal, and the Court finds that even though Seaboard has not made out

18  a prima facie case of jurisdiction as required by other jurisdictions, see supra at 4-5,

19  Seaboard is entitled to jurisdictional discovery.

20          Moreover, the plaintiffs in Jazini sued a Japanese automobile corporation in

21  New York alleging carelessness and negligence in the design, manufacture, and testing of

22  an automobile part, based on injuries they sustained in a car accident in Iran. 148 F.3d at

23  183. The district court in Jazini referred to the plaintiffs' allegations as "sparse," and the

24  Court of Appeals referred to plaintiffs' "conclusory non-fact-specific jurisdictional

25  allegations." Id. at 183, 185. In the instant case, by contrast, Seaboard's jurisdictional

26  allegations are neither sparse nor insufficiently specific; they are simply insufficiently

-7-

EXHIBIT H

1   developed at this point in time to permit judgment as to whether personal jurisdiction over
2   Grupo Mexico is appropriate.  See Harris Rutsky & Co. Ins. Services, Inc. v. Bell &
3   Clements Ltd., 328 F.3d 1122, 1135 (9th Cir.2003) (remanding to district court because
4   insufficient record facts to decide whether alter ego or agency tests met so as to attribute
5   subsidiary's minimum contacts to parent).

6          Although Seaboard has not proffered substantial evidence supporting the
7   conclusion that Grupo Mexico and ASARCO failed to observe corporate formalities
8   necessary to maintain corporate separateness, it asserts that discovery could yield additional
9   information further establishing the existence of an alter ego relationship between the
10  entities.  The Court finds a more satisfactory showing of the facts is necessary in order to
11  determine whether or not an alter ego relationship exists between Grupo Mexico and
12  ASARCO.  See Data Disc, Inc., 557 F.2d at 1285 n. 1 ("Discovery may appropriately
13  ordinarily be granted where pertinent facts bearing on the question of jurisdiction are
14  controverted or where a more satisfactory showing of the facts is necessary.").

15         Finally, Grupo Mexico argues that Seaboard "should not need discovery to
16  supports its claim of specific jurisdiction" because "[t]he sole basis" for that theory of
17  jurisdiction "is a one-sentence facsimile," the Letter Agreement signed by Grupo Mexico.
18  (Dkt. 13 at 7.) The Court disagrees with Grupo Mexico that permitting Seaboard to engage
19  in discovery regarding the negotiation of the Letter Agreement will not assist the Court in
20  determining whether Arizona has specific jurisdiction over Grupo Mexico. (Id. at 8.)
21  Although Seaboard itself likely knows which of its employees were involved the
22  negotiations leading up to the Letter Agreement, and the substance of those negotiations,
23  it is entitled to discovery concerning the facts involved from the perspective of Grupo
24  Mexico, including the individuals involved, where they were located during the
25  negotiations, and the purpose of the Letter Agreement. Moreover, allowing such discovery
26  will not prejudice Grupo Mexico in this matter.

-8-

EXHIBIT H

1    Because the Court concludes that additional information would be helpful in
2  resolving the issue of personal jurisdiction, it declines to rule on Grupo Mexico's Motion
3  to Dismiss for Lack of Personal Jurisdiction at this time. In addition, the Court finds that
4  it would be unfair to require Grupo Mexico to stand on the Motion to Dismiss currently
5  filed, rather than being provided the opportunity to file a new Motion to Dismiss after
6  jurisdictional discovery has concluded. Therefore, as set forth below, the Court will deny
7  Grupo Mexico's Motion to Dismiss for Lack of Personal Jurisdiction without prejudice and
8  with leave to file a revised or the same motion within 20 calendar days after the conclusion
9  of the ninety day discovery period.

10    Accordingly,

11    **IT IS HEREBY ORDERED GRANTING** Seaboard's Motion for Extension
12  of Time to Respond to Defendant's Motion to Dismiss and Motion to Permit Jurisdictional
13  Discovery (Dkt. 12).

14    **IT IS FURTHER ORDERED** that the parties shall have ninety (90) days
15  from the date of entry of this order, within which to conduct discovery on the issue of
16  personal jurisdiction. The applicable Federal Rules of Civil Procedure and the Local Rules
17  of the District of Arizona will govern the procedures for serving and responding to
18  interrogatories and requests for production, along with the noticing of any depositions. The
19  parties shall, in good faith, conduct discovery on the issue of personal jurisdiction only, in
20  accordance with the theories of jurisdiction discussed in this Order.

21    **IT IS FURTHER ORDERED** that Grupo Mexico's Motion to Dismiss for
22  Lack of Personal Jurisdiction is **DENIED WITHOUT PREJUDICE TO RE-FILING** the
23  same or a revised motion within twenty (20) court days after the conclusion of the ninety
24  (90) day jurisdictional discovery period. (Dkts. 9-10.) If Grupo Mexico elects to re-file the
25  same Motion to Dismiss, it may do so by filing a notice of re-filing with the Court within
26  the twenty day period.

-9-

EXHIBIT H

1         **IT IS FURTHER ORDERED** that, if Grupo Mexico elects to re-file a

2    Motion to Dismiss for Lack of Personal Jurisdiction, the applicable Federal Rules of Civil

3    Procedure and the Local Rules of the District of Arizona will govern the time periods for

4    filing a response and an optional reply.

5         **IT IS FURTHER ORDERED** that, <u>**in the event of a discovery dispute, the**</u>

6    <u>**parties shall contact the Court to request a telephonic conference prior to filing any**</u>

7    <u>**discovery motions.**</u> The parties shall not contact the Court regarding a discovery dispute

8    unless they have been unable to resolve the dispute themselves, despite personal

9    consultation and sincere efforts to do so. <u>**The parties shall not file any written materials**</u>

10   <u>**related to a discovery dispute or discovery motion without express leave of Court.**</u> If

11   the Court does order written submissions, the movant shall include a statement certifying

12   that counsel could not satisfactorily resolve the matter despite personal consultation and

13   sincere efforts to do so, in accordance with LRCiv 7.2(j) of the Rules of Practice of the

14   United States District Court for the District of Arizona.

15        DATED this 12th day of May, 2006.

16

17

18                          Stephen M. McNamee

19                          United States District Judge

20

21

22

23

24

25

26

-10-

EXHIBIT H

SQUIRE, SANDERS & DEMPSEY L.L.P.

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004-4498

Office: +1.602.528.4000
Fax: +1.602.253.8129

SQUIRE | LEGAL
SANDERS | COUNSEL
| WORLDWIDE

Direct: +1.602.528.4090
bkaiser@ssd.com

June 16, 2006

**VIA FACSIMILE (612) 766-1600**
**AND MAIL**

Jason A. Greves
Faegre & Benson
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

Re:    Subpoena *Duces Tecum* to St. Paul Fire & Marine Insurance Co.

Dear Jason:

We are in receipt of your email message of Thursday, June 15, 2006 regarding a subpoena issued to St. Paul Fire & Marine Insurance Company ("St. Paul"). This is the first time you have contacted us in regard to the subpoena. As you know, the subpoena stems from a case in the United States District Court for the District of Arizona styled *Seaboard Surety Co. v. Grupo México, S.A. de C.V.*, Case No. CV06-0134-PHX-SMM (the "Arizona litigation"). The subpoena was served on June 5, 2006 and your response is due on June 19, 2006 at 10:00 a.m. Now, ten days after receiving the subpoena, you demand that the subpoena be withdrawn and threaten to move to quash if we do not respond to your email in less than twenty-four hours. To add insult to injury, your objections to the subpoena are groundless and your email concedes that at least some of the discovery sought is appropriate.

You contend, without citation to any legal authority that because St. Paul is the parent corporation of Seaboard Surety Company ("Seaboard") St. Paul is also a "party" to the Arizona litigation and therefore is only subject to document discovery through Federal Rule of Civil Procedure ("FRCP") 34. This utterly amazing contention would mean that every lawsuit in which, for example, Saab Automobile AB (a wholly owned subsidiary of General Motors) was a party, General Motors would also be a party. Such an interpretation would seem to fly in the face of the black letter law that each corporation is a separate and distinct entity.

The fact is, just as Saab and GM are separate corporate entities with separate corporate existences, so too are St. Paul and Seaboard separate and distinct corporate entities. St. Paul is not a party to the Arizona litigation because it is not named in the caption – a choice that its subsidiary Seaboard made.

CINCINNATI · CLEVELAND · COLUMBUS · HOUSTON · LOS ANGELES · MIAMI · NEW YORK · PALO ALTO · PHOENIX · SAN FRANCISCO · TALLAHASSEE · TAMPA · TYSONS CORNER
WASHINGTON DC · WEST PALM BEACH | CARACAS · RIO DE JANEIRO · SANTO DOMINGO | BRATISLAVA · BRUSSELS · BUDAPEST · FRANKFURT · LONDON · MOSCOW
PRAGUE · WARSAW | BEIJING · HONG KONG · SHANGHAI · TOKYO · ASSOCIATED OFFICES BUCHAREST · BUENOS AIRES · DUBLIN · KYIV · MILAN · SANTIAGO
www.ssd.com

**EXHIBIT I**

Jason A. Greves                                                    SQUIRE, SANDERS & DEMPSEY L.L.P.
June 16, 2006
Page 2

Rule 34(c), FRCP, specifically states that "A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." That is exactly what Grupo México has done here. Moreover, your understanding of FRCP 34 would expressly violate the long-held understanding that discovery under FRCP 34 is limited to parties and is not a permissible means of seeking discovery from a non-party. *See Hickman v. Taylor*, 329 U.S. 495, 504 (1947) (discovery under Rule 34 is limited to parties to the action). If you have any case law to support your contention we will certainly consider it, but our own research finds none.

Your next contention that the subpoena should be quashed because it is overbroad is equally without merit. As you are aware, the thrust of Seaboard's claim in the Arizona Litigation is that Grupo México, S.A. de C.V., a Mexican corporation, is subject to jurisdiction in Arizona on the basis of specific jurisdiction and is subject general jurisdiction on the theory that Grupo México is the alter ego of ASARCO LLC ("ASARCO"). [P. Mot. for Extension of Time to Respond to D. Mot. to Dismiss and Mot. to Permit Jurisdictional Discovery at 3-5 ("P. Mot.") (attached hereto as Ex. A).] Seaboard contends that specific jurisdiction is present based on the Letter Agreement, which relates to Grupo México's agreement to indemnify St. Paul for three reclamation bonds issued on behalf of ASARCO. [*Id.* at 4-5.] As such, Grupo México seeks to discover information related to the Letter Agreement. Moreover, because the Letter Agreement named St. Paul, it is appropriate for Grupo México to seek documents related thereto from St. Paul directly.

Seaboard contends that Grupo México is subject to general jurisdiction on the theory that Grupo México is ASARCO's alter ego. [*Id.*] Seaboard contends that it has been required to set aside funds for payment of the Reclamation Bonds due in part to an Arizona lawsuit, long ago dismissed, styled *San Xavier Allottees Assoc., et al. v. Seaboard Surety Co., et al.* [Amend. Compl. ¶¶ 28, 29.] Seaboard contends that because it had to set aside such funds and defend the suit; ASARCO is liable to pay such funds to St. Paul pursuant to a General Agreement of Indemnity (GAI) signed by ASARCO. [Amend. Compl. ¶¶ 36-41.] Seaboard contends that St. Paul has made demands on Grupo México for payment pursuant to the Reclamation Bonds and the GAI. [*Id.* ¶¶ 33, 40.] Therefore, Grupo México is entitled to discover documents and communications related to the Reclamation Bonds and the GAI based upon which Grupo México is purportedly liable to St. Paul. Such documents may shed light on how St. Paul understood the relationship between Grupo México and ASARCO including how St. Paul corresponded with Grupo México and ASARCO, to where such correspondence was directed, and to whom.

Seaboard further contends that Grupo México's failure to make payment to St. Paul pursuant to the Letter Agreement, the Reclamation Bonds, and the GAI, has "caused economic consequences in Arizona" and thereby subjects Grupo México to jurisdiction in Arizona. [P. Mot. at 4-5.] As such, the alleged breach of those agreements by Grupo México purportedly gave rise to specific jurisdiction over Grupo México in Arizona. Grupo México has a right to discover the content of the documents and communications related to the Reclamation Bonds and the GAI as they may support or negate Seaboard's claims of resultant economic consequences in Arizona caused by Grupo México. Moreover, because the purported economic consequence is Grupo México's failure to make payment to St. Paul, it is appropriate for Grupo México to seek such documents directly from St. Paul to learn how and where such purported economic consequences were actually felt by St. Paul.

EXHIBIT I

Jason A. Greves
June 16, 2006
Page 3

SQUIRE, SANDERS & DEMPSEY L.L.P.

The subpoena seeks five different categories of documents all of which relate to the jurisdictional discovery ordered in the Arizona litigation. [*See* Order dated May, 12, 2006 ("Order") (attached hereto as Ex. B).] There is no question that each relates specifically to Seaboard's allegations that Grupo México is subject to jurisdiction in Arizona. Indeed, in your email you state that "we would concede that Request Number 1 falls within the order of the Court." Request number one seeks:

> All Documents and Correspondence concerning the attached letter agreement (the "Letter Agreement") [attached hereto as Ex. 1] executed by Grupo México on or about February 16, 2001 addressed to St. Paul in New York via facsimile including, but not limited to, any document referring to, discussing, or describing the Letter Agreement.

You quite correctly understand that because the Letter Agreement is one of the bases under which Seaboard contends that Grupo México is subject to jurisdiction, the request for documents related to the Letter Agreement is proper. Thus, we understand that you have no dispute with producing documents responsive to Request Number 1.

Request Number 2 reads:

> All documents and Correspondence concerning any negotiations surrounding the Letter Agreement described in request number one above including, but not limited to, internal or external correspondence, date books or calendars referring to contacts with Grupo México, and telephone logs or records referring to contacts with Grupo México.

The requested documents relate specifically to the negotiations for the Letter Agreement. You have acknowledged that documents related to the Letter Agreement must be produced and we fail to see how documents related to the negotiations that resulted in the Letter Agreement are not equally relevant. Indeed, the Court specifically disagreed with Grupo México's contention that discovery related to the negotiation of the Letter Agreement was unnecessary. In its Order granting jurisdictional discovery the Court wrote, "The Court disagrees with Grupo México that permitting Seaboard to engage in discovery regarding the negotiations of the Letter Agreement will not assist the Court in determining whether Arizona has specific jurisdiction over Grupo México." [Order at 8.] As such, the Court has clearly expressed its understanding that discovery related to the negotiation of the Letter Agreement is relevant to the issue of jurisdiction.

Request Number 3 reads:

> All Documents and Correspondence concerning the three "Reclamation Bonds" [attached hereto as Ex. 2], issued in or about February 2001 by St. Paul Surety with ASARCO as principal and with the United States Department of Interior as obligee and described as bonds No. 420688 in the amount of $7 million, No. 420669 in the amount of $760,000, and No. 420670 in the amount of $3.5 million, including, but not limited to, correspondence with Grupo México or ASARCO, correspondence with third parties, and memoranda or internal notes or files concerning Grupo México or ASARCO.

EXHIBIT I

Jason A. Greves                                                SQUIRE, SANDERS & DEMPSEY L.L.P.
June 16, 2006
Page 4

    This request specifically seeks documents related to the Reclamation Bonds in support of which the Letter Agreement was executed. Again, if documents concerning the Letter Agreement are admittedly subject to disclosure, so too must the documents related to the very bonds that were the subject of the Letter Agreement. Moreover, Seaboard has contended that Grupo México and ASARCO are alter egos. Documents related to the Reclamation Bonds will likely shed light on St. Paul's understanding of the relationship between Grupo México and ASARCO and may indeed contain admissions that St. Paul understood the two corporations were separate and distinct. How St. Paul communicated with Grupo México and ASARCO, through whom, and to where such communications were directed may shed light on St. Paul's awareness and indeed its observance of the corporate separateness of the two entities.

    Request Number 4 reads:

    All Documents and Correspondence concerning a General Agreement of Indemnity [attached hereto as Ex. 3], executed by ASARCO on or about October 19, 1993 in favor of "Seaboard Surety Company and/or St. Paul Fire and Marine Insurance Company and/or St. Paul Guardian Insurance Company and/or St. Paul Mercury Insurance Company," including, but not limited to, correspondence with Grupo México or ASARCO, correspondence with third parties, and memoranda or internal notes or files concerning Grupo México or ASARCO.

    This request specially seeks documents related to the GAI which Seaboard contends ASARCO has breached and under which Grupo México is liable to St. Paul on an alter ego theory. Here again, documents relating to the GAI may well show that St. Paul understood that ASARCO and Grupo México were distinct corporate entities. Because St. Paul was a party to the GAI, directing this request to St. Paul is reasonable and appropriate.

    Finally, Request Number 5 reads:

    All Documents and Correspondence you have had with the Secretary of the Interior, the Bureau of Land Management, the U.S. Department of the Interior, Bureau of Indian Affairs, or the San Xavier Allottees Association concerning Grupo México or ASARCO.

    This request, like all the others, is limited to documents dating from January 1, 2000 to the present. Moreover, the request is limited to documents and correspondence related to Grupo México and ASRACO. Seaboard's contention in this litigation that ASARCO and Grupo México are alter egos may in fact prove to be inconsistent with St. Paul's communications to other parties directly related to Seaboard's claims. For example, the San Xavier Allottees Association (the "Allottees") brought the lawsuit against Seaboard and the Secretary of the Interior (the "Secretary") which Seaboard contends forced it to set aside funds pursuant to the Reclamation Bonds. Any communications St. Paul may have had with the Allottees or the Secretary, particularly the discussions that lead to the dismissal of the case, may contain admissions regarding St. Paul's understanding of the relationship between Grupo México and ASARCO. The Bureau of Indian Affairs (the "Bureau") is the obligee for the Reclamation Bonds so, any communications between St. Paul and the Bureau may show St. Paul's understanding of the relationship between Grupo México and ASARCO, for example, whether St. Paul or the Bureau ever

EXHIBIT I

Jason A. Greves                                                    SQUIRE, SANDERS & DEMPSEY L.L.P.
June 16, 2006
Page 5

discussed who was liable for payment of the bonds.  In sum, any correspondence St. Paul may have had with these entities related to Grupo México or ASARCO is likely to contain admissions of St. Paul regarding its understanding of the relationship between Grupo México and ASARCO.

Grupo México's subpoena to St. Paul is proper and valid and is one with which St. Paul must timely comply.  Grupo México has permitted St. Paul fourteen days to comply with the subpoena and your email expresses no contention that the time frame is unreasonable.  The Arizona Court has given the parties only 90 days in which to conduct jurisdictional discovery and nearly 30 days of that time period have already passed.  There is simply no time for delay.  Grupo México is entitled to the requested documents and indeed such documents are vital to Grupo México's ability to defend against Seaboard's contention that Grupo México is subject to jurisdiction in Arizona.  As such, we expect St. Paul to comply with its obligations and timely produce documents on Monday, June 19, 2006.

Very truly yours,

Brian D. Kaiser

Attachments:
Ex. A – Plaintiff's Motion for Extension of Time to
        Respond to Defendant's Motion to Dismiss
        and Motion to Permit Jurisdictional Discovery
Ex. B – Order dated May 12, 2006

EXHIBIT I

SQUIRE
SANDERS | LEGAL
COUNSEL
WORLDWIDE

SQUIRE, SANDERS & DEMPSEY L.L.P.

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004-4498

Office: +1.602.528.4000
Fax: +1.602.253.8129

Direct: +1.602.528.4090
bkaiser@ssd.com

June 20, 2006

**VIA FACSIMILE (612) 766-1600**
**AND MAIL**

Jason Greves, Esq.
Faegre & Benson
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901

    Re:    <u>Seaboard Surety Co. v. Grupo México, S.A. de C.V.</u>
           Arizona District Court Case No. CIV-06-0134-PHX-SMM
           Subpoena *Duces Tecum* to St. Paul Fire & Marine Insurance Co.

Dear Jason:

      We are in receipt of your Friday night facsimile regarding the above referenced Subpoena served upon your client on June 5, 2006. Your objection to the Subpoena as "overly broad, vague and unnecessarily burdensome for failing to allow a reasonable time for compliance" is unavailing. Your letter offers absolutely no explanation of what you believe to be overly broad or vague about the subpoena. Moreover, our letter to you of June 16, 2006 offered a detailed explanation of exactly why each of the five categories of documents requested is relevant and within the permissible scope of discovery. Your letter fails to respond in any fashion to our explanations or to detail an objection of any specificity toward any particular category of documents. Indeed you offer only that counsel for Seaboard Surety Co. ("Seaboard") "advises use that the requests . . . are beyond the scope of discovery." This gives us absolutely no means of resolving any disagreement that may exist between us as to the breadth of the requests or as to your purported concerns about the vagueness of the requests.

      The fourteen day deadline in the subpoena is necessitated by the limited 90-day discovery ordered by the Arizona Court. As of today we are 39 days into that discovery period. We simply do not have the luxury of time for lengthy extensions in this matter. As your letter points out, we expect discovery responses from Seaboard on July 3, 2006. As such, it is imperative that we get discovery responses from St. Paul in advance of that date in order to permit us to efficiently review St. Paul's documents before turning to those produced by Seaboard, all while still leaving time to conduct depositions before the 90-day time limit on discovery expires.

CINCINNATI • CLEVELAND • COLUMBUS • HOUSTON • LOS ANGELES • MIAMI • NEW YORK • PALO ALTO • PHOENIX • SAN FRANCISCO • TALLAHASSEE • TAMPA • TYSONS CORNER
WASHINGTON DC • WEST PALM BEACH | CARACAS • RIO DE JANEIRO • SANTO DOMINGO | BRATISLAVA • BRUSSELS • BUDAPEST • FRANKFURT • LONDON • MOSCOW
PRAGUE • WARSAW | BEIJING • HONG KONG • SHANGHAI • TOKYO | ASSOCIATED OFFICES: BUCHAREST • BUENOS AIRES • DUBLIN • KYIV • MILAN • SANTIAGO
www.ssd.com

Jason Greeves, Esq.                                    SQUIRE, SANDERS & DEMPSEY L.L.P.
June 20, 2006
Page 2

    Your proposal to produce documents on July 3, 2006 "within the scope of the Subpoena and within the scope of the Court Order" is unacceptable because you seek both a two week extension and the right to later object to producing documents that in your estimation are not within the scope of the Court Order. To the extent that you have concerns about the scope of the documents requested in the Subpoena, concerns that you have yet to articulate to us, we think it best that we involve the Court. We have corresponded back and forth for four days now and you have yet to offer any substantive explanation for your claims regarding over breadth and we see no alternative but to seek the assistance of the Court.

    With regard to your request for more time, we are willing to meet you half way. We will agree to grant St. Paul a four-day extension to respond to the Subpoena from June 19, 2006 at 10 a.m. to June 23, 2006 at 10 a.m., provided that St. Paul agrees that it will produce all documents in its possession, custody or control that are responsive to each of the five categories of documents requested in the Subpoena and that St. Paul will not attempt to interpose objections to the document requests with the exception of documents legitimately subject to attorney/client or work-product privileges. This offer will remain open until noon on June 21, 2006. If you choose not to accept this extension we will have no choice but to move to compel.

Very truly yours,

Brian D. Kaiser

BDK/mcr
cc:    Wayne S. Moskowitz, Esq.
       Kara A. Ricupero, Esq.

EXHIBIT J

# SQUIRE SANDERS

LEGAL
COUNSEL
WORLDWIDE

SQUIRE, SANDERS & DEMPSEY L.L.P.

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498
Office:    +1.602.528.4000
Fax:       +1.602.253.8129

Preferred Fax:      ____
If Problems:        ____

**June 20, 2006**

## PLEASE DELIVER THESE PAGES IMMEDIATELY

### Number of Pages (including cover):    3

| | | | |
|---|---|---|---|
| To: | Jason A. Greves | Fax No.: | 612.766.1600 |
| Company: | Faegre & Benson | Phone No.: | 612.766.7000 |

| | | | |
|---|---|---|---|
| From: | Brian D. Kaiser | Direct Dial No.: | +1.602.528.4090 |
| E-mail: | bkaiser@ssd.com | | |
| Re: | Subpoena *Duces Tecum* to St. Paul Fire & Marine Insurance Co. | | |

**Message:**

**CONFIDENTIALITY NOTICE:**

The attached information is LEGALLY PRIVILEGED AND CONFIDENTIAL and is intended only for the use of the addressee named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, please be aware that any dissemination, distribution or duplication of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the address above via the postal service. Thank you.

| Sender No.: | 08590 | 62738.00004 | Maria C. Rivera |
|---|---|---|---|
| Job No: | | Account No. | Return to Office |

**EXHIBIT J**

www.ssd.com

06/20/2006 18:29 FAX 602 253 8129          Squire Sanders 02767                    ☒001

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              0526
CONNECTION TEL        #105916127661800
SUBADDRESS
CONNECTION ID
ST. TIME             06/20 18:28
USAGE T              01'31
PGS. SENT            3
RESULT               OK
```

# SQUIRE SANDERS

LEGAL
COUNSEL
WORLDWIDE

SQUIRE, SANDERS & DEMPSEY L.L.P.

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498
Office:     +1.602.528.4000
Fax:        +1.602.253.8129

Preferred Fax:      _____
If Problems:        _____

June 20, 2006

## PLEASE DELIVER THESE PAGES IMMEDIATELY

Number of Pages (including cover):     3

| | | |
|---|---|---|
| TO:  Jason A. Greves | FAX NO.: | 612.766.1600 |
| COMPANY:  Faegre & Benson | PHONE NO.: | 612.766.7000 |

FROM:   Brian D. Kaiser              DIRECT DIAL NO.:  +1.602.528.4090

E-MAIL:   bkaiser@ssd.com

RE:   Subpoena *Duces Tecum*  to St. Paul Fire & Marine Insurance Co.

Message:

EXHIBIT J