UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and Warren
Elmer Halpap,

                    Plaintiffs,

              -against-

GRUPO MÉXICO, S.A. de C.V., a Mexican
Corporation,

                    Defendant.

Case No. 1:07-CV-3496(WHP)

**DEFENDANT GRUPO MÉXICO, S.A.B. DE C.V.'S OPPOSITION TO NON-PARTY ASARCO LLC AND SOUTHERN PERU HOLDINGS, LLC'S CONSOLIDATED MOTIONS TO SUBSTITUTE PLAINTIFFS AND TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 1

PROCEDURAL BACKGROUND ...................................................................................... 4

LEGAL ARGUMENT ........................................................................................................ 7

I.  ASARCO AND SP HOLDINGS SHOULD NOT BE SUBSTITUTED AS
    PLAINTIFFS ........................................................................................................... 7

    A.  ASARCO is Not a Real Party in Interest ................................................... 7

    B.  ASARCO Cannot Disregard the Independent Existence of SP Holdings
        and Pursue Claims Belonging to SP Holdings ........................................... 9

    C.  ASARCO and SP Holdings Cannot Be Treated as a Single Entity ........... 12

    D.  If ASARCO and SP Holdings are Substituted as Plaintiffs, the Federal
        Courts Lack Subject Matter Jurisdiction Over the Burns Litigation ......... 14

II. THE BURNS LITIGATION SHOULD NOT BE TRANSFERRED TO THE
    SOUTHERN DISTRICT OF TEXAS ................................................................... 15

    A.  ASARCO's Motion to Transfer Should be Denied as Grupo México is Not
        Subject to Personal Jurisdiction in Texas ................................................. 15

    B.  Transferring the Burns Litigation Would Not Further the Convenience of
        the Parties or the Interest of Justice ......................................................... 17

CONCLUSION .................................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.,*
  685 F. Supp. 346 (S.D.N.Y. 1988) ...................................................................................... 16

*Begier v. IRS,*
  496 U.S. 53 (1990)................................................................................................................ 14

*Blackwell v. Rio Mgmt., Inc. (In re Blackwell),*
  267 B.R. 732 (Bankr. W.D. Tex. 2001) ................................................................................ 8

*BRS Assocs., L.P. v. Dansker,*
  246 B.R. 755 (S.D.N.Y 2000) ................................................................................................ 8

*Burns v. Grupo México S.A. de C.V.,*
  No. 07-CV-3496 (S.D.N.Y. May 2, 2007)........................................................................... 6

*Enron Corp. v. Arora (In re Enron Corp.),*
  317 B.R. 629 (Bankr. S.D.N.Y. 2004) ............................................................................... 18

*Estel v. Bigelow Mgmt. Inc.,*
  323 B.R. 918 (E.D. Tex. 2005) ............................................................................................. 8

*Feinberg v. Katz,*
  No. 99 CIV 45(CSH), 2002 WL 1751135 (S.D.N.Y. Jul. 26, 2002) .................................... 9

*Frelin v. Oakwood Homes Corp.,*
  292 B.R. 369 (Bankr. E.D. Ark. 2003) .............................................................................. 20

*Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of N. Am.,*
  841 F.2d 1254 (5th Cir. 1988) ............................................................................................ 15

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville*
  *Forest Prods. Corp.),*
  896 F.2d 1384 (2d Cir. 1990)............................................................................................... 18

*In re Augie/Restivo Baking Co.,*
  860 F.2d 515 (2d Cir. 1988)........................................................................................... 12, 13

*In re Babcock & Wilcox Co.,*
  250 F.3d 955 (5th Cir. 2001) .............................................................................................. 12

*In re DRW Prop. Co. 82,*
  54 B.R. 489 (Bankr. N.D. Tex. 1985) ................................................................................ 14

*In re Gandy,*
  299 F.3d 489 (5th Cir. 2002) .............................................................................................. 13

*In re Mich. Gen. Corp.,*
  77 B.R. 97 (Bankr. N.D. Tex. 1987)............................................................................... 13, 14

*In re Owens Corning*,
   419 F.3d 195 (3d Cir. 2005)...................................................................................13

*In re Southern Peru Holdings, LLC*,
   No. 06-20774 (Bankr. S.D. Tex. Dec. 12, 2006) ...................................................11

*In re Southern Terrace, L.P.*,
   No. 98-00107, 1998 LEXIS 1975 (Bankr. D.D.C. Feb. 5, 1998) .........................13

*In re Thomson McKinnon Sec., Inc.*,
   149 B.R. 61 (Bankr. S.D.N.Y. 1992)....................................................................10

*In re Tito Castro Constr., Inc.*,
   14 B.R. 569 (Bankr. D.P.R. 1981) .........................................................................12

*In re Vecco Constr. Indus.*,
   4 B.R. 407 (Bankr. E.D. Va. 1980).......................................................................14

*Mitchell v. Washingtonville Cent. Sch. Dist.*,
   190 F.3d 1 (2d Cir. 1999)......................................................................................10

*Muller v. Walt Disney Prod.*,
   822 F. Supp. 1033 (S.D.N.Y. 1993)................................................................16, 17

*Nick Corp. v. JNS Aviation, Inc. (In re JNS Aviation LLC)*,
   350 B.R. 283 (Bankr. N.D. Tex. 2006)...................................................................8

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*,
   306 B.R. 746 (S.D.N.Y. 2004)..............................................................................18

*Penn. Eng'g Corp. v. Islip Res. Recovery Agency*,
   710 F. Supp. 456 (E.D.N.Y. 1989) .........................................................................9

*Regency Holdings (Cayman), Inc. v. Microcap Fund, Inc. (In re Regency*
*Holdings (Cayman), Inc.)*,
   216 B.R. 371 (Bankr. S.D.N.Y. 1998)................................................................8, 9

*Reider v. FDIC (In re Reider)*,
   31 F.3d 1102 (11th Cir. 1994) ...............................................................................13

*Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust)*,
   25 F.3d 1281 (5th Cir. 1994) ...................................................................................8

*Southmark Corp. v. Crescent Heights VI, Inc., (In re Southmark Corp.)*,
   No. 95-10849 (5th Cir. July 26, 1996)....................................................................9

*Swiatkowski v. Bank of America*,
   *NT & SA*, 103 Fed. App'x 431 (2d. Cir. 2004) ....................................................15

*Volkswagen de Mexico, S.A. v. Germanischer Lloyd*,
   768 F. Supp. 1023 (S.D.N.Y. 1991)......................................................................16

*Young v. N. Miss. Health Serv. Inc.*,
   239 F.3d 366 (5th Cir. 2000) .................................................................................15

## **STATUTES**

28 U.S.C. § 1334(c)(2) ........................................................................................... 15

28 U.S.C. § 1404 ................................................................................................... 20

28 U.S.C. § 1404(a) .............................................................................................. 16

28 U.S.C. § 1412 ................................................................................................... 20

28 U.S.C. § 157(b)(2)(H) ...................................................................................... 16

N.Y.C.P.L.R. § 3025(a) (McKinney 2006) ............................................................ 4

## **RULES**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 6

Fed. R. Civ. P. 25(c) ............................................................................................. 12

Fed. R. Civ. P. 9(b) ................................................................................................ 6

## PRELIMINARY STATEMENT

Grupo México, S.A.B. de C.V. ("Grupo México"), files this opposition to non-party ASARCO LLC ("ASARCO") and Southern Peru Holdings, LLC's ("SP Holdings") Motions to Substitute Plaintiffs and to Transfer Venue ("Transfer Motion" or "Transfer Mot.") and the memorandum filed in support of their motion ("Transfer Memorandum" or "Transfer Mem.")[1] in connection with *Burns v. Grupo México, S.A. de C.V.*, Index No. 04/114728, filed in the Supreme Court of the State of New York, County of New York (the "Burns Litigation"). ASARCO was never a party to this action and SP Holdings is apparently no longer a defendant. Thus, the attempt by ASARCO and SP Holdings to remove the Burns Litigation to this Court is improper. Further, ASARCO is not a real party in interest in this matter and should not be substituted as a plaintiff. Moreover, if ASARCO or SP Holdings is added as a plaintiff, there will be no subject matter jurisdiction in this – or any other – Federal Court because the diversity of the parties will be destroyed. Finally, the Burns Litigation should not be transferred to the Southern District of Texas, because ASARCO and SP Holdings have failed to demonstrate that transfer would be in the interest of justice or would further the convenience of the parties.

## FACTUAL BACKGROUND

On or about March 31, 2003, after lengthy and protracted negotiations and after the completion of a public legal proceeding (the "DOJ Proceeding") in the United States District Court for the District of Arizona (the "Arizona District Court"), concerning one of the transactions at issue in the Burns Litigation, SP Holdings, SPHC II Incorporated, and Americas

---

[1]    By opposing the Transfer Motion, Grupo México is not conceding that Grupo México is subject to personal jurisdiction in this Court or any other court in the United States.

Mining Corporation[2] ("AMC") entered into a stock purchase agreement (the "Stock Purchase Agreement") for the transfer (the "Transfer") of a 54.2% interest in the shares (the "SCC Shares") of Southern Peru Copper Corporation ("SPCC"), now known as Southern Copper Corporation. The total consideration provided in exchange for the SCC Shares was in excess of $765 million.

The Transfer, as well as the DOJ Proceeding, was a matter of public record. Indeed, creditors or potential creditors of SP Holdings and ASARCO had full access to the pleadings and other filings. The United States Department of Justice, the Environmental Enforcement Section, Environment and Natural Resources Division (the "DOJ"), one of ASARCO's major creditors (then and now), scrutinized the transaction and consented to the Transfer in a pleading (the "Consent Decree") filed with and approved by the Arizona District Court. *See* Consent Decree, filed in *DOJ v. ASARCO Inc.*, D. Ariz. Case No. 02-2079. (Declaration of J. Ryan Miller, Esq. in Support of Defendant Grupo México, S.A.B. de C.V.'s Opposition to Non-Party ASARCO LLC and Southern Peru Holdings LLC's Consolidated Motions to Substitute Plaintiffs and Transfer Venue ("Miller Decl.") ¶ 2, Ex. A.) Attached as an exhibit to the Consent Decree is a signed opinion letter, dated January 24, 2003, from the independent firm of Ernst & Young Corporate Finance LLC ("E&Y") to the Board of Directors of ASARCO, wherein E&Y stated:

> . . . it is our opinion, as of the date of this letter that, assuming the Transaction is consummated as proposed, the value of the consideration received by the Company for the [Shares] in connection with the Transaction is greater than the fair market value of the Stock Interest as of December 31, 2002, and therefore, constitutes reasonably equivalent value and fair consideration.

---

[2]     AMC is a wholly owned subsidiary of Grupo México and the indirect parent corporation of ASARCO.

Letter Opinion of E&Y, dated Jan. 24, 2003, at 4.

ASARCO and SP Holdings represented that the Transfer, as structured under the terms of the Consent Decree, provided "reasonably equivalent value" for the SCC Shares. *See* Consent Decree ¶ N. (Miller Decl. ¶ 2, Ex. A.) The Transfer was not concealed from any creditor of ASARCO or the transferor. Rather, SP Holdings, ASARCO, and AMC negotiated the terms of the Transfer for several months within the context of the DOJ Proceeding. ASARCO's major creditors were (or should have been) aware of the proposed transaction and the ongoing DOJ Proceeding. In fact, certain individuals with claims for asbestos-related injuries, similar to plaintiffs in this case, sought unsuccessfully to intervene in the DOJ Proceeding and to prevent the Transfer. *See* Motion to Intervene, filed in *USA v. ASARCO Inc. et al.*, No. 02-2079 (D. Ariz. Nov. 14, 2002) (No. 29). Subsequently, the DOJ and the District Court sanctioned the terms of the Transfer as acceptable. SP Holdings, ASARCO, by its General Counsel Douglas McAllister, AMC, the DOJ, the Arizona District Court, and Grupo México all signed the Consent Decree. Notably, and in direct contradiction to the positions taken in their Transfer Memorandum, ASARCO and SP Holdings acted as and were separate corporate entities in answering the DOJ complaint and throughout the negotiations of the Consent Decree. *See* Answer at ¶¶ 30-36 (denying that SP Holdings was, among other things, a "mere instrumentality" and "alter ego" of ASARCO), filed in *USA v. ASARCO Inc.* et al., No. 02-2079 (D. Ariz. Sept. 24, 2002) (No. 19). (Miller Decl. ¶ 3, Ex. B.)[3]

---

[3]    The Complaint in the DOJ Proceeding was initially filed in the United States District Court for the Western District of Washington. *See* Complaint, *USA v. ASARCO Inc et al.*, No. 02-5401 (FDB) (W.D. Wash. Aug. 9, 2002) (No. 1). (Miller Decl. ¶ 4, Ex. C.) The DOJ Proceeding was then transferred to the United States District Court for the District of Arizona on October 21, 2002. *See* Civil Docket, *USA v. ASARCO, Inc. et al.*, No. 2:02-cv-02079-RCB. (Miller Decl. ¶ 5, Ex. D.)

## PROCEDURAL BACKGROUND

The Burns Litigation was brought by potential creditors of two of ASARCO's now bankrupt subsidiaries, Lac d'Amiante du Québec Ltée and CAPCO Pipe Company, Inc., in an improper attempt to seek recovery from Grupo México in connection with claims they purportedly hold against those subsidiaries. The Complaint alleges that plaintiffs Phillip Nelson Burns and Mirjana Pavkovich, administrator of the estate of Rade Pavkovich, are Arizona citizens, and that plaintiff Warren Elmer Halfpap is a citizen of New York (collectively the "Asbestos Plaintiffs" or "Plaintiffs"). The Plaintiffs are potential unsecured creditors of ASARCO's subsidiaries allegedly injured by those subsidiaries' torts. The Asbestos Plaintiffs commenced the Burns Litigation on October 15, 2004, nearly one and one-half years after the Transfer, by filing a complaint in the Supreme Court of the State of New York, New York County, seeking to set aside as a fraudulent conveyance, among other things, the Transfer.

On February 7, 2005, the Asbestos Plaintiffs filed their First Amended Verified Complaint,[4] see First Amended Verified Complaint, Burns, No. 0114728/04 ("Amended Complaint" or "Am. Compl."), seeking to hold Grupo México responsible for the debts of ASARCO's subsidiaries.[5] Specifically, the Amended Complaint asserts ten claims under New York State law against Grupo México and a number of other defendants. Without further elaboration, the Asbestos Plaintiffs state that at the time of the alleged fraudulent conveyances, their claims against ASARCO "were both filed and unfiled." (Amended Compl. ¶ 10.)

---

[4]    On February 17, 2005 plaintiffs improperly filed their Second Amended Verified Complaint which purported to add class-action allegations. Because plaintiffs had already amended their complaint once as of right, and failed to seek permission from the court to amend their complaint a second time, the Second Amended Verified Complaint should be disregarded. See Second Amended Verified Complaint, Burns, No. 0114728/04, see also N.Y.C.P.L.R. § 3025(a) (McKinney 2006).

[5]    The Amended Complaint is the complaint that includes the allegations ASARCO and SP Holdings purport to have removed.

Counts One, Two, Three, and Four of the Amended Complaint relate to the leveraged buyout of ASARCO (the "LBO"). Significantly, with respect to the LBO claims, the Amended Complaint fails to state a claim against Grupo México and, in fact, identifies the wrong party. The "Grupo México" that was a party to the LBO changed its name to Minera México, S.A. de C.V. in October of 2000 ("Old Grupo"). The entity now known as Grupo México S.A.B. de C.V. (and named as a defendant in the Burns Litigation) was formed in 1999 as Nueva Grupo México S.A de C.V., which changed its name in October 2000, becoming Grupo México S.A. de C.V. (referred to as "Grupo México" throughout this opposition). *See* Southern Peru Copper Corp. Schedule 13D, filed with the Securities and Exchange Commission on Oct. 12, 2000 (Miller Decl. ¶ 7, Ex. F.); *see also* Form CB Tender Offer/Rights Offering Notification Form filed by Nueva G. México, S.A. de C.V., filed with the Securities and Exchange Commission on September 29, 2000, at pp. 14-16 (Miller Decl. ¶ 18, Ex. Q). As such, the LBO claims cannot be removed against an entity that is not a party to the litigation. Further, it is uncontroverted that service of process upon Old Grupo has never been attempted, much less accomplished.

On June 26, 2007, Grupo México moved to remand these claims to State Court, or, in the alternative, to dismiss the Amended Complaint for lack of personal jurisdiction and improper service. *See* Defendant Grupo México, S.A.B. de C.V.'s Motion to Remand, or in the Alternative, to Dismiss for Improper Service and Lack of Personal Jurisdiction, filed June 26, 2007 ("Motion to Dismiss").

On August 9, 2005, ASARCO filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division. *See* Voluntary Petition of ASARCO LLC, *In re ASARCO LLC*, No. 05-21207 (Bankr. S.D. Tex. Aug.

8, 2005) (No. 1). (Miller Decl. ¶ 6, Ex. E.)  ASARCO and the Burns Plaintiffs treated the Burns Litigation as subject to the automatic stay that arose upon ASARCO's bankruptcy filing.  This stay was formalized by Justice Fried's October 7, 2005 order. *See* Order Staying Litigation, *Burns*, No. 114728/04.  SP Holdings filed its voluntary chapter 11 Petition on December 12, 2006.

On February 2, 2007, ASARCO filed a complaint against AMC seeking to avoid the Transfer in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division – the "Texas Lawsuit."  The Texas Lawsuit was transferred to the United States District Court for the Southern District of Texas, Brownsville Division, on March 2, 2007.  That complaint alleged that the sale of the SCC Shares to AMC was an actual and constructive fraudulent conveyance voidable under sections 544(b) and 550(a) of the Bankruptcy Code.  With respect to the section 544(b) claims, however, ASARCO did not attempt to identify the substantive state law that formed the basis of its claims.

On May 4, 2007, ASARCO and SP Holdings filed an amended complaint in the Texas Lawsuit against AMC adding SP Holdings as a plaintiff and alleging four new state common law claims including breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and civil conspiracy.  On May 18, 2007, AMC moved to dismiss the Texas Lawsuit pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6).[6]  AMC's motion to dismiss was premised on, among other things, the fact that ASARCO was not the "transferor" of the SCC Shares and cannot pierce its own corporate veil to pursue claims belonging to its subsidiary SP Holdings.

---

[6]     Oral argument on AMC's motion to dismiss is scheduled for Friday, July 13, 2007, in the Southern District of Texas, Brownsville Division.

On May 2, 2007, despite the fact that it is not a party to the Burns Litigation, ASARCO filed a notice of removal with this Court, purporting to remove the Seventh Claim for Relief in the Amended Complaint (alleging a fraudulent conveyance to "insiders" of the SCC Shares). *See* ASARCO LLC's Notice of Removal, *Burns v. Grupo México S.A. de C.V.*, No. 07-CV-3496 (S.D.N.Y. May 2, 2007). On June 20, 2007, ASARCO and SP Holdings filed an Amended Notice of Removal with this Court which superseded the original Notice of Removal and sought to remove the First, Second, Third, Fourth, and Seventh Claims for Relief in the Amended Complaint as they relate to the Transfer. *See* ASARCO LLC and Southern Peru Holdings, LLC's Amended Notice of Removal ("Notice of Removal"). At no time prior to filing the Notice of Removal did ASARCO seek to substitute itself as a party in the Burns Litigation. By its Notice of Removal and Transfer Motion, ASARCO attempts to assert claims against Grupo México that ASARCO itself failed to make years ago.

## LEGAL ARGUMENT

### I.    ASARCO AND SP HOLDINGS SHOULD NOT BE SUBSTITUTED AS PLAINTIFFS

#### A.    ASARCO is Not a Real Party in Interest

At the time of the Transfer, ASARCO did not own an interest in the SCC Shares. (*See* Transfer Mem. pp. 1, 8.) Because ASARCO did not have an interest at the time of transfer, ASARCO does not have standing to pursue the Burns Litigation, even though ASARCO is now in bankruptcy. Fed. R. Civ. P. 25(c) provides "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action . . . ." ASARCO argues in its Transfer Memorandum that somehow when it filed for bankruptcy "ASARCO, as debtor in possession, gained the exclusive right to pursue [these] claims." (Transfer Mem. p. 8.) Because

ASARCO did not have an interest in the SCC Shares and therefore was not the "transferor" of the SCC Shares at the time of the transfer, however, it did not gain "the exclusive right" (or any right) to pursue these claims against Grupo México upon its bankruptcy filing.

ASARCO and SP Holdings are debtors in possession in separate chapter 11 cases currently pending in the Southern District of Texas. ASARCO and SP Holdings, as debtors-in-possession, have "exclusive standing" to pursue claims to avoid transfers of property that were allegedly fraudulent on behalf of their own individual estates. *See Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994) ("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim."); *Nick Corp. v. JNS Aviation, Inc. (In re JNS Aviation, LLC)*, 350 B.R. 283, 290 (Bankr. N.D. Tex. 2006) (same); *Estel v. Bigelow Mgmt., Inc.*, 323 B.R. 918, 924 (E.D. Tex. 2005) ("As a general rule, a pre-petition cause of action is the property of the . . . bankruptcy estate, and only the trustee . . . has standing to pursue it."); *see also BRS Assocs., L.P. v. Dansker*, 246 B.R. 755, 771-72 (S.D.N.Y 2000)("i[f] the cause of action belongs to the estate, the trustee has exclusive standing to assert it").

A corollary of this rule is that a parent corporation has no standing to avoid transfers of its subsidiary's property: "a transfer of a subsidiary's assets may not be recovered for the benefit of the parent corporation . . . ." *Blackwell v. Rio Mgmt., Inc. (In re Blackwell)*, 267 B.R. 732, 741 n.12 (Bankr. W.D. Tex. 2001); *see also Regency Holdings (Cayman), Inc. v. Microcap Fund, Inc. (In re Regency Holdings (Cayman), Inc.)*, 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1998) holding that a parent corporation could not pierce the veil of its own subsidiary to recover transferred assets). Accordingly, ASARCO does not have standing to pursue claims that belong to its subsidiary, SP Holdings.

As ASARCO concedes, SP Holdings was the owner of the SCC Shares. Because ASARCO never had title – legal or equitable – to the SCC Shares, it is not the "real party in interest" and cannot be substituted for the Asbestos Plaintiffs under Fed. R. Civ. P. 25(c).

**B.    ASARCO Cannot Disregard the Independent Existence of SP Holdings and Pursue Claims Belonging to SP Holdings**

Plaintiffs do not and cannot dispute that SP Holdings owned the SCC Shares at the time of their transfer to AMC. Instead, ASARCO characterizes SP Holdings as "the conduit" for the Transfer and alleges that SP Holdings was "a mere instrumentality, agent, and alter ego of ASARCO." (Transfer Mem. pp. 4, 8.) ASARCO argues that SP Holdings "had no business other than owning the [SCC Shares] in anticipation of the transfer to AMC." (*Id.* at 8.)[7] ASARCO asks this Court to ignore ASARCO's own established corporate identity and approve a "reverse veil piercing" so ASARCO can be substituted to prosecute claims that, if valid, could otherwise only be prosecuted by SP Holdings. ASARCO, however, cannot disregard SP Holdings' corporate existence and pursue claims belonging to SP Holdings. *See Feinberg v. Katz*, No. 99 CIV 45(CSH), 2002 WL 1751135, at *5 (S.D.N.Y. Jul. 26, 2002) ("a parent corporation may not pierce the corporate veil it set up for its own benefit in order to advance the claims of its subsidiary") (internal quotes omitted) (*quoting Penn. Eng'g Corp. v. Islip Res. Recovery Agency*, 710 F. Supp. 456, 465 (E.D.N.Y. 1989)); *see also In re Regency Holdings (Cayman), Inc.*, 216 B.R. at 375-78.

In reviewing remarkably similar facts, the Fifth Circuit has held that a corporate debtor cannot pierce the veil between it and its subsidiary to pursue a fraudulent transfer action

---

[7]    As a factual matter, SP Holdings was formed in November 1999, nearly four years before the Transfer (and before the LBO of ASARCO by Grupo México was consummated) and could not have been set up solely in anticipation of the Transfer. *See* ASARCO, Inc. Schedule 13D, dated November 17, 1999, filed with the Securities Exchange Commission on November 19, 1999. (Miller Decl. ¶ 8, Ex. G.)

belonging to the subsidiary. *See Southmark Corp. v. Crescent Heights VI, Inc., (In re Southmark Corp.)*, No. 95-10849 at 13-16 (5th Cir. July 26, 1996) (Miller Decl. ¶ 15, Ex. N). Southmark, a chapter 11 debtor, attempted to stand in the shoes of its wholly owned subsidiary in order to pursue a fraudulent transfer action against the maker of a promissory note received by the subsidiary upon the sale of an apartment building. Although Southmark was not the payee on the note and was not a party to the original transaction, it asserted that it was the alter ego of its subsidiary for purposes of pursuing the fraudulent transfer. The bankruptcy court, the district court and the Fifth Circuit all disagreed. Specifically, the Fifth Circuit held that veil piercing is an equitable remedy, and that the party seeking to disregard the corporate form could not be the party that abused that form in the first instance. *See Southmark*, No. 95-10849 at *15-16.

Like the parent in *Southmark*, ASARCO repeatedly asserts that SP Holdings was "the conduit" for the Transfer and that the "validity of its separate corporate existence will be determined at a trial on the merits." (Transfer Mem. pp. 1, 8.) ASARCO therefore concedes that it has unclean hands and, as a matter of law, it cannot avail itself of the equitable remedy of veil piercing to pursue a claim belonging to SP Holdings. *See In re Thomson McKinnon Sec., Inc.*, 149 B.R. 61, 73 (Bankr. S.D.N.Y. 1992) (noting that the concept of reverse corporate veil piercing is a "rare occurrence" and refusing to disregard the debtor's corporate existence at the request of its own executives).

Further, ASARCO is judicially estopped from disregarding SP Holdings' separate corporate existence. Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position taken [by that party] in a prior legal proceeding." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) (affirming district court decision granting summary judgment for school district where employee took inconsistent

positions in prior administrative proceedings). Judicial estoppel applies when "(1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner." *Id.*

The public record makes clear that ASARCO and SP Holdings have previously represented to various courts that they are not "alter egos." For example, SP Holdings and ASARCO each filed separate chapter 11 petitions nearly 16 months apart; SP Holdings and ASARCO each filed its own set of schedules of assets and liabilities and statement of financial affairs identifying distinct assets and distinct creditors; and SP Holdings and ASARCO each conducted separate and independent meetings of creditors pursuant to section 341 of the Bankruptcy Code.[8] Further, ASARCO is opposing an effort by the asbestos claimants against its subsidiaries Lac d'Amiante du Québec Ltée and CAPCO Pipe Company, Inc. to pierce the corporate veil between ASARCO and those subsidiaries. *See generally*, ASARCO, LLC's Answer to Second Amended Complaint Seeking to Hold ASARCO, LLC Liable for the Tort Liabilities of the Subsidiary Debtors, *In re ASARCO LLC*, No. 05-21207 (S.D. Tex. May 11, 2007) (No. 4694). (Miller Decl. ¶ 14, Ex. M.)[9] Additionally, ASARCO and SP Holdings represented to the District of Arizona that they were separate corporate entities throughout the negotiations and the signing of the Consent Decree. *See* Answer at ¶¶ 30-36 (denying that SP

---

[8]     *See* Voluntary Petition of ASARCO LLC, *In re ASARCO LLC*, No. 05-21207 (Bankr. S.D. Tex. Aug. 8, 2005) (No. 1) (Miller Decl. ¶ 6, Ex. E); Voluntary Petition of Southern Peru Holdings, LLC, *In re S. Peru Holdings, LLC*, No. 06-20774 (Bankr. S.D. Tex. Dec. 12, 2006) (No. 1) (Miller Decl. ¶ 9, Ex. H); Summary of Schedules, *In re S. Peru Holdings, LLC*, No. 06-20774 (Bankr. S.D. Tex. Jan. 26, 2007) (No. 3655) (Miller Decl. ¶ 10, Ex. I); Statement of Financial Affairs, *In re S. Peru Holdings, LLC*, No. 06-20774 (Bankr. S.D. Tex. Jan. 26, 2007) (No. 3656) (Miller Decl. ¶ 11, Ex. J); Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines, *In re ASARCO LLC*, No. 05-21207 (Bankr. S.D. Tex. Aug. 24, 2005) (No. 157) (Miller Decl. ¶ 12, Ex. K); Notice of Section 341 Meeting of Creditors, *In re ASARCO LLC*, No. 05-21207 (Bankr. S.D. Tex. Feb. 1, 2007) (No. 3684) (Miller Decl. ¶ 13, Ex. L).

[9]     The bankruptcy court has scheduled a hearing to begin in September to consider whether ASARCO is liable for the asbestos-related liabilities of two of its subsidiaries.

-11-

Holdings was, among other things, a "mere instrumentality" and "alter ego" of ASARCO), filed

in *USA v. ASARCO Inc.* et al., No. 02-2079 (D. Ariz. Sept. 24, 2002) (No. 19). (Miller Decl. ¶ 3,

Ex. B.)  ASARCO is therefore judicially estopped from arguing that SP Holdings is a "mere

conduit" for purposes of the Burns Litigation.

      ASARCO and SP Holdings identified separate interests in property for purposes

of section 541(a)(1) of the Bankruptcy Code, respected corporate formalities, and opposed other

attempts to pierce the corporate veil and cannot argue otherwise for purposes of the Burns

Litigation.  ASARCO is not the "real party in interest" and cannot be substituted as a plaintiff in

the Burns Litigation under Fed. R. Civ. P. 25(c).

### C.    ASARCO and SP Holdings Cannot Be Treated as a Single Entity

      ASARCO implies in its Transfer Memorandum that it should be able to treat

ASARCO and SP Holdings as a single entity – alleging that "all actions relating to the [Transfer]

were taken by ASARCO, and the substance of the transaction was a transfer from ASARCO to

AMC."  (Transfer Mem. p. 4.)  In bankruptcy parlance, Plaintiffs apparently seek "substantive

consolidation" for purposes of the Burns Litigation.  Like veil-piercing, substantive

consolidation is an equitable remedy whereby two or more business entities are considered one

for purposes of administering claims and assets.  *See In re Augie/Restivo Baking Co.*, 860 F.2d

515, 518 (2d Cir. 1988)) (quoted by *Bergemann, Inc. v. Babcock & Wilcox Co.* (*In re Babcock &*

*Wilcox Co.)*, 250 F.3d 955, 958 n.5 (5th Cir. 2001)).  Substantive consolidation is a concept

conceptually indistinguishable from piercing the corporate veil.  *See In re Tito Castro Constr.,*

*Inc.*, 14 B.R. 569, 571 (Bankr. D.P.R. 1981) (comparing standard for substantive consolidation to

standard for piercing corporate veil).  "Substantive consolidation may have a serious impact on

creditors' recoveries 'because every entity is likely to have a different debt-to-asset ratio, [so

that] consolidation almost invariably redistributes wealth among the creditors of the various entities'" *In re S. Terrace, L.P.*, No. 98-00107, 1998 Bankr. LEXIS 1975, at 2-3 (Bankr. D.D.C. Feb. 5, 1998) (quotations omitted).

Courts repeatedly emphasize that substantive consolidation is an extraordinary remedy that should be invoked sparingly.[10] *See, e.g., Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 499 (5th Cir. 2002) (recognizing that "substantive consolidation is an extreme and unusual remedy"); *In re Owens Corning*, 419 F.3d 195, 208-09 (3d Cir. 2005), *cert. denied sub nom., McMonagle v. Credit Suisse First Boston*, and *Official Representatives of Bondholders & Trade Creditors of Debtors Owens Corning v. Credit Suisse First Boston*, 547 U.S. 1123 (2006); *In re Mich. General Corp.*, 77 B.R. 97, 103-04 (Bankr. N.D. Tex. 1987) ("[Consolidation] is not a matter to be taken lightly or decided on less than thorough consideration.").[11]  To determine whether entities should be substantively consolidated, courts consider the following factors:

1. the degree of difficulty in segregating and ascertaining individual assets and liability;
2. the presence or absence of consolidated financial statements;
3. the profitability of consolidation at a single physical location;
4. the commingling of assets and business functions;
5. the unity of interests and ownership between the various corporate entities;
6. the existence of parent and inter-corporate guarantees on loans; and
7. the transfer of assets without formal observance of corporate formalities.

---

[10]    Recognizing that it is an extraordinary remedy, many courts have denied requests for substantive consolidation. *See, e.g., Owens Corning*, 419 F.3d at 212-16 (reversing grant of substantive consolidation where debtors did not disregard corporate separateness and where no evidence of commingling of assets and liabilities existed); *Reider v. FDIC (In re Reider)*, 31 F.3d 1102, 1109-11 (11th Cir. 1994) (declining to substantively consolidate estates when, *inter alia*, (i) commingled funds were traceable and (ii) separate liabilities could be identified).

[11]    "Substantive consolidation usually results in, *inter alia*, pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." *Augie/Restivo Baking Co.*, 860 F.2d at 518.

-13-

*See In re Vecco Constr. Indus.*, 4 B.R. 407 (Bankr. E.D. Va. 1980); *see also In re DRW Prop. Co. 82*, 54 B.R. 489, 495 (Bankr. N.D. Tex. 1985) (citing *Vecco* standard approvingly and denying substantive consolidation). As discussed above, ASARCO and SP Holdings have observed corporate formalities, including submitting pleadings under oath to the bankruptcy court as to their separate estates, creditors, assets, and liabilities.

The purpose of the avoidance provisions in the Bankruptcy Code is "to preserve the property includable within the bankruptcy estate – the property available for distribution to creditors" of a particular debtor. *See Begier v. IRS*, 496 U.S. 53, 58 (1990). Here it is only the estate of SP Holdings – and not that of ASARCO – that includes any interest in property that SP Holdings is alleged to have fraudulently transferred. Because ASARCO has no direct interest in property that is part of SP Holdings' separate bankruptcy estate, ASARCO cannot substitute as "the real party in interest."[12]

### D. If ASARCO and SP Holdings are Substituted as Plaintiffs, the Federal Courts Lack Subject Matter Jurisdiction Over the Burns Litigation

Should this Court grant ASARCO's and SP Holdings' motion to substitute, the Burns Litigation must be remanded to state court, as both this Court and the Southern District of Texas lack subject matter jurisdiction over the matter because there is not complete diversity between the parties. *See Swiatkowski v. Bank of America, NT & SA*, 103 Fed. App'x 431, 432

---

[12]    ASARCO and SP Holdings are adverse parties on the issue of piercing SP Holdings' corporate veil because the effect of such piercing would deprive SP Holdings' creditors from pursuing their causes of action for such alleged fraudulent transfers. Further, they have the potential to be adverse parties in their respective bankruptcy cases as both are (a) currently in bankruptcy proceedings; (b) challenging several similar transactions; and (c) likely seeking distribution of the same or similar assets. Baker Botts L.L.P., counsel to both ASARCO and SP Holdings, should not be permitted to press the case for substantive consolidation (or piercing the corporate veil) between two of the debtors it represents, as doing so creates a potentially disqualifying conflict. *See Mich. General Corp.*, 77 B.R. at 104 (disqualifying firm that represented several debtors where, among other things, attorneys had filed motion for substantive consolidation, raising question of whether interests of one estate were "considered secondary to other, ostensibly larger, interests").

(2d. Cir. 2004) (affirming dismissal where plaintiffs and defendants were both citizens of New York); *see also Young v. N. Miss. Health Serv. Inc.*, 239 F.3d 366 (5th Cir. 2000) ("For a federal court to assert diversity jurisdiction, diversity must be complete: the citizenship of all the plaintiffs must be different from the citizenship of all the defendants.") (*quoting Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258-59 (5th Cir. 1988)).  There is currently one operative complaint in the Burns Litigation – the Amended Complaint filed on February 7, 2007.  Although, ASARCO and SP Holdings purport to only remove the claims against Grupo México, they cite no authority allowing them to ignore the remaining defendants named in the Amended Complaint.  Among the named defendants in the Amended Complaint are at least four Delaware corporations, including AMC.  (*See* Amended Complaint ¶ 17.) ASARCO's substitution for the Asbestos Plaintiffs would destroy diversity jurisdiction, as ASARCO is also a Delaware corporation.  The Amended Complaint contains only state claims among non-diverse parties and pursuant to 28 U.S.C. § 1334(c)(2), this Court should abstain from hearing this proceeding.

## II.  THE BURNS LITIGATION SHOULD NOT BE TRANSFERRED TO THE SOUTHERN DISTRICT OF TEXAS

### A.  ASARCO's Motion to Transfer Should be Denied as Grupo México is Not Subject to Personal Jurisdiction in Texas

ASARCO's motion to transfer is governed by 28 U.S.C. § 1404(a), which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[13]  The requirement of "where it might have been brought" means that 28 U.S.C. §

---

[13]    Contrary to ASARCO's repeated assertions, the Burns Litigation is not a "core proceeding" in relation to ***ASARCO's*** bankruptcy.  Although, 28 U.S.C. § 157(b)(2)(H) includes "proceedings to determine, avoid, or recover fraudulent conveyances," it is implicit that those proceedings must belong to

1404(a) only permits transfer to a district where the defendant is subject to personal jurisdiction. *See Volkswagen de Mexico, S.A. v. Germanischer Lloyd*, 768 F. Supp. 1023, 1028 (S.D.N.Y. 1991) (denying motion to transfer to Texas where defendant was not subject to personal jurisdiction Texas); *see also Muller v. Walt Disney Prod.*, 822 F. Supp. 1033, 1039 (S.D.N.Y. 1993) (denying motion to transfer to the Eastern District of Pennsylvania where personal jurisdiction over one of the parties in Pennsylvania was in doubt). The party seeking transfer bears the burden of establishing personal jurisdiction over the defendants in the transferee forum sought. *See Volkswagen de Mexico, S.A.*, 768 F. Supp. at 1029 (*citing Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 350 (S.D.N.Y. 1988)). Neither the Amended Complaint nor any of ASARCO's papers identify sufficient facts that would subject Grupo México to personal jurisdiction in Texas.

As discussed in Grupo México's Motion to Dismiss, Grupo México has no more contacts with Texas than it does with New York (and perhaps even fewer). (*See* Amended Declaration of Alberto de la Parra Zavala in Support of Grupo México, S.A. de C.V.'s Motion to Remand or, in the Alternative, to Dismiss the Complaint for Improper Service and Lack of Personal Jurisdiction ("de la Parra Decl.") ¶¶ 4-11 .) Grupo México is not a resident of Texas, is not registered to conduct business in Texas, and does not conduct business in Texas. (*Id.* ¶ 6.) Grupo México does not have an office or warehouse in Texas, nor does it have a mailing address or any telephone numbers in Texas. (*Id.* ¶ 8.) Grupo México has no agents, sales representatives, or any employees in Texas. It does no advertising in Texas or with any Texas media. (*Id.* ¶ 11.) Because Grupo México would not be subject to personal jurisdiction in

---

the debtor. As discussed above, the claims ASARCO seeks to remove are not part of ASARCO's estate and accordingly not "core proceedings."

Texas, ASARCO's motion to transfer must be denied, as the Burns Litigation could not have been brought in the Southern District of Texas originally.

**B.     Transferring the Burns Litigation Would Not Further the Convenience of the Parties or the Interest of Justice**

Both 28 U.S.C. § 1404(a) and 28 U.S.C. § 1412 require the Court to consider whether transfer to another district would be in the interest of justice or for the convenience of the parties. ASARCO and SP Holdings make only conclusory statements as to how transferring this case to the Southern District of Texas, Brownsville Division would serve either of these functions. Contrary to their assertions, ASARCO and SP Holdings fail to meet the burden required by the Federal Rules and the motion to transfer should be denied. *See Muller*, 822 F. Supp. at 1040 (denying motion to transfer even where a related action was already pending in another district court).

ASARCO and SP Holdings argue that "the district court in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy," and that their "bankruptcy cases are being jointly administered in the Southern District of Texas." (Transfer Mem. p. 16.) This assertion is misleading – ASARCO's and SP Holdings' bankruptcy cases are being administered in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division – the Texas Litigation is pending, after *sua sponte* withdrawal of the reference from the Bankruptcy Court, in the United States District Court for the Southern District of Texas, Brownsville Division. ***These are two separate courts, hearing two separate cases, nearly 160 miles apart.***[14]

---

[14]     The one case that ASARCO and SP Holdings rely on to support this position is inapposite. *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990), did not involve the transfer of a fraudulent transfer action to which the debtor was not a party and it did not involve transfer to a separate division of a district court. *See* 896 F.2d at

Further, ASARCO and SP Holdings argue that "[c]ourts in the Second Circuit have recognized a 'strong presumption in favor of the plaintiff's choice of forum.'" (Transfer Mem. p. 16.)  Once again, this "presumption" does not support ASARCO's and SP Holdings' position. ***The plaintiffs in the Burns Litigation chose New York State court as their forum*** – ASARCO and SP Holdings are not the plaintiffs in the Burns Litigation and accordingly, their choice of forum should be given no consideration.  The claims brought by the Asbestos Plaintiffs are specific statutory claims brought under New York State law in New York State court against Grupo México.[15]  In the Texas Litigation, ASARCO and SP Holdings asserted that they do not know which state law applies to their claims against AMC and have refused to identify any applicable state law.  *See* ASARCO and Southern Peru Holdings LLC's Response to Americas Mining Corporation's Motion to Dismiss the First Amended Complaint, *ASARCO LLC v. Americas Mining Corp.*, Civ. A. No. 1:07-cv-00018 (S.D. Tex. June 7, 2007) at 8.  (Miller Decl. ¶ 16, Ex. O.)  For ASARCO and SP Holdings to claim now that their choice of forum – the Southern District of Texas – should govern the Asbestos Plaintiffs' claims brought under New York law in a New York state court is entirely unsupported by the facts or law.

Although ASARCO and SP Holdings' Transfer Memorandum does not address the convenience of the parties, the Affidavit in Support of ASARCO LLC and Southern Peru Holdings, LLC's Motion to Transfer Venue (the "O'Brien Affidavit" or "O'Brien Aff.") makes a

---

1391 (affirming court's denial of a motion to transfer out of the bankruptcy court where bankruptcy court "had developed a substantial 'learning curve' and that transferring venue would have delayed the final resolution of the bankruptcy case").

[15]    Neither of the cases cited by ASARCO and SP Holdings involved a non-party seeking substitution and transfer of an action and both cases deny motions to transfer by deferring to plaintiffs' choice of forum. *See Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 750 (S.D.N.Y. 2004) (denying motion to transfer to district where a related proceeding was pending); *Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 638 (Bankr. S.D.N.Y. 2004) (denying motion to transfer and deferring to plaintiffs' choice of forum where they filed the complaint).

number of unsupported statements concluding that litigating the Burns Litigation in Texas would

be more convenient and "expedite their bankruptcy proceedings for all the parties in interest."

(O'Brien Aff. ¶ 17.)[16]  The O'Brien Affidavit opines that "Texas is closer than New York to both

Arizona, where ASARCO and [SP Holdings'] principal place of business is located, and Mexico,

where Grupo México's principal place of business is purportedly located." (*Id.* ¶ 20.)

Regardless of the geographic or physical proximity of the allegedly relevant states and countries,

a simple review of available flights indicates that Brownsville, Texas, where the Texas Litigation

is pending, is not nearly as convenient as New York City for parties traveling from Mexico City

or Arizona.  For example, a search of an online database reveals that there is not a single direct

flight from Mexico City, Mexico or Phoenix, Arizona to Brownsville, Texas, where the Texas

Litigation is pending.  Reaching Brownsville requires at least one layover and takes at least five

hours of total travel time. (*See* Miller Decl. ¶ 17, Ex. P.)  On the other hand, every day there are

multiple direct flights from Mexico City or Phoenix to New York City – each just under five

hours. (*See id.*)  The geographic proximity of Mexico City and Phoenix to Brownsville, Texas

does not support transferring the Burns Litigation to the Southern District of Texas, Brownsville

Division.

       ASARCO and SP Holdings conclude that "[t]here is no justification for causing

ASARCO and [SP Holdings] to prove their case twice to two different judges in two different

districts halfway across the country from one another." (Transfer Mem. p. 19.)  That assertion,

however is premised upon a fatal flaw – the Burns Litigation was not brought by ASARCO or

SP Holdings, and currently belongs to neither – their improper attempt to substitute into the

---

[16]      Although the Transfer Memorandum does not rely on the O'Brien Affidavit, this Court should disregard or strike the portions of the O'Brien Affidavit that purport to give Mr. O'Brien's "professional

Burns Litigation is justification to deny the motion to transfer alone. They simply claim that it would be inconvenient for them to participate in two separate litigations. However, where the movant only "shows that inconvenience will merely be shifted from one party to another, the court should deny the change of venue motion." *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 390 (Bankr. E.D. Ark. 2003) (denying motion to transfer).

Finally, although 28 U.S.C. § 1412 does not include a limitation that a transfer may only be made to a court "where it might have been brought," as does 28 U.S.C. § 1404, the fact that Grupo México is not subject to personal jurisdiction in Texas should be considered by this Court. Transferring the Burns Litigation to the Southern District of Texas will only delay the inevitable decision that Grupo México is not subject to personal jurisdiction in Texas. Moreover, transferring the Burns Litigation to the Southern District of Texas would needlessly complicate issues in a matter that is well into discovery. As transfer would not further the convenience of the parties or the interests of justice, the motion to transfer must be denied.

## CONCLUSION

For the foregoing reasons, Grupo México respectfully requests that the Court deny ASARCO and SP Holdings' Motions to Substitute Plaintiffs and Transfer Venue.

---

opinion." Should ASARCO's and SP Holdings' reply papers rely on these opinions, Grupo México reserves the right to depose Mr. O'Brien on these opinions.

Dated:  July 10, 2007

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _David S. Cohen / JnS_____

Luc A. Despins (LD 5143)
Stacey J. Rappaport (SR 9973)
J. Ryan Miller (JM 3370)
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000
(212) 530-5219 (facsimile)

David S. Cohen (DC 1268)
Donna F. Mulvihill (DM 6644)
International Square Building
1850 K Street, NW, Suite 1100
Washington D.C. 20006
(202) 835-7500
(202) 835-7586 (facsimile)

*Attorneys for Defendant Grupo México,
S.A.B. de C.V., a Mexican Corporation*

-21-

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2007, a copy of Defendant Grupo México S.A.B. de C.V.'s Memorandum of law in Opposition to Non-Party ASARCO LLC and Southern Peru Holdings, LLC'S Consolidated Motions to Substitute Plaintiffs and to Transfer Venue, dated July 10, 2007 was served by e-mail as follows:

G. Irvin Terrell, Jr.
Samuel W. Cooper
Michael Massengale
Rebeca Huddle
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
(713) 229-1231
(713) 229-2831 (facsimile)
irv.terrell@bakerbotts.com
samuel.cooper@bakerbotts.com
michael.massengale@bakerbotts.com
rebeca.huddle@bakerbotts.com

Jack Kinzie
Fernando Rodriguez
Eric Soderlund
Thomas E. O'Brien
Baker Botts, LLP
2001 Ross Avenue
Dallas, Texas 75201
(214) 661- 6500
(214) 661-6503 (facsimile)
jack.kinzie@bakerbotts.com
fernando.rodriguez@bakerbotts.com
eric.soderlund@bakerbotts.com
tom.obrien@bakerbotts.com

Attorneys for Non-parties
ASARCO LLC and Southern Peru Holdings,
LLC

Alan B. Rich
Baron & Budd, P.C.
The Centrum
3102 Oak Law Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605
(214) 520-1181 (facsimile)
arich@baronbudd.com

Attorneys for Plaintiffs Burns and Pavkovich

J. Ryan Miller, Esq.

-22-