GUARANTY OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS GUARANTY AND THE GUARANTOR/BENEFICIARY RELATIONSHIP THAT IS BEING ESTABLISHED.

**IN WITNESS WHEREOF**, Guarantor has caused this Guaranty to be executed by its duly authorized officer as of the date set forth below.

**GRUPO MÉXICO, S.A. DE C.V.**

By: _____
Title:_____
Date: _____

Address:   Baja California 200
           Colonia Roma Sur
           06760 Mexico City, Mexico
           Attention:  Chief Legal Officer

5310476v10

CONFIDENTIAL                                    GM_BURNS_010205

*Exhibit A*

[Attach Note B]

5310476v10

CONFIDENTIAL

GM_BURNS_010206

Consent Decree Appendix E

## IRREVOCABLE ASSIGNMENT AND ACKNOWLEDGMENT OF ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned SOUTHERN PERU HOLDINGS CORPORATION, a Delaware corporation ("Assignor"), hereby irrevocably sells, assigns and transfers to ASARCO INCORPORATED, a New Jersey corporation ("Assignee"), all of its right, title and interest in and to (a) that certain Promissory Note due May 31, 2010, dated [January __, 2003] in the principal amount of $100,000,000.00, made by Americas Mining Corporation ("Maker") to Assignor (the "Note"), and (b) that certain Guaranty, dated [January __, 2003], made by Grupo México, S.A. de C.V. ("Guarantor") in favor of Assignor (the "Guaranty"). Copies of the Note and the Guaranty are attached hereto as Exhibits A and B, respectively.

The present sale, assignment and transfer by Assignor of the Note and the Guaranty to Assignee, and the acknowledgment thereof by Maker and Guarantor, are made and delivered pursuant to the terms of that certain Stock Purchase Agreement dated as of [January __, 2003] by and among Maker, Assignor, SPHC II Incorporated and ASARCO Incorporated.

This Irrevocable Assignment and Acknowledgment of Assignment (this "Assignment"), and the rights and obligations of Assignor, Assignee, Maker and Guarantor hereunder, shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of New York (including without limitation Section 5-1401 of the General Obligations Law of the State of New York), without regard to conflicts of laws principles.

**IN WITNESS WHEREOF**, each of Assignor and Assignee has caused this Assignment to be executed by its duly authorized officer as of [January __, 2003].

**SOUTHERN PERU HOLDINGS CORPORATION**, as Assignor

By: _____
Title:_____

**ASARCO INCORPORATED**, as Assignee

By: _____
Title:_____

5310476v10

Each of Maker and Guarantor hereby acknowledges and agrees to the terms of this Assignment

**AMERICAS MINING CORPORATION**, as Maker

By: _____
Title:_____

**GRUPO MÉXICO, S.A. DE C.V.**, as Guarantor

By: _____
Title:_____

5310476v10

CONFIDENTIAL

GM_BURNS_010208

*Exhibit A*

[Attach Note B]

5310476v10

CONFIDENTIAL

GM_BURNS_010209

*Exhibit B*

[Attach Guaranty]

5310476v10

*Consent Decree Appendix F*

## ASARCO Trust Agreement

WHEREAS, this ASARCO Trust Agreement ("Agreement") is entered into as of this _____ day of _____, 2003, between and among ASARCO Incorporated ("Grantor") and the Trustee appointed as provided herein.

WHEREAS, Grantor has various environmental liabilities or potential liabilities to the United States pursuant to certain consent decrees, administrative orders, or environmental statutes.

WHEREAS, the United States has filed a complaint against Grantor and Southern Peru Holdings Corporation pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3004, and the Federal Priorities Statute, 31 U.S.C. § 3713, in a suit denominated United States v. ASARCO, Inc. and Southern Peru Holdings Corporation, No. CIV-02-2079-PHX-RCB (D. Ariz.) ("the Action").

WHEREAS, the United States has alleged in the Action that the terms of a proposed sale of stock owned by Grantor are fraudulent or otherwise contrary to law as to the environmental liabilities for which Grantor is obligated to the United States.

WHEREAS, the United States, Grantor, and Southern Peru Holdings Company have entered into a Consent Decree that resolves the claims raised by the United States in United States v. ASARCO, Inc. and Southern Peru Holdings Corporation, No. CIV-02-2079-PHX-RCB (D. Ariz.).

WHEREAS, pursuant to that Consent Decree, Grantor is required to establish this Trust and to assign the note set forth as Appendix B to the Consent Decree and the guaranty set forth as Appendix D to the Consent Decree to the Trust as consideration in part for the releases and covenants set forth in the Consent Decree.

CONFIDENTIAL

NOW THEREFORE, in consideration of the foregoing premises and of the mutual covenants contained herein, the parties hereto agree as follows:

### Article I
### Definitions

1.    The following terms shall have the meaning set forth below:

(a)    "Agreement" means this Trust Agreement including attachments.  This term has the same meaning as "Trust Agreement" in the Consent Decree.

(b)    "Annual Budget" means any final budget or amendment thereto developed pursuant to Section VIII of the Consent Decree and delivered to the Trustee.

(c)    "Consent Decree" means the Consent Decree in United States v. ASARCO, Inc. and Southern Peru Holdings Corporation, No. CIV-02-2079-PHX-RCB (D. Ariz.), including all appendices and attachments thereto.

(d)    "Environmental Response" means (1) a response within the meaning of Section 101 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, at any Site; (2) and a corrective action or imminent hazard abatement action required or performed pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq, or a state hazardous waste program authorized pursuant to Section 3006 of RCRA, 42 U.S.C. § 6926, at any Site; and (3) the planning and implementation of measures to restore, replace or acquire the equivalent of natural resources that have been injured by releases of hazardous substances at the Bunker Hill Mining and Metallurgical Complex Superfund Facility.

(e)    "Environmental Response Cost" means all costs incurred in connection with the performance of any Environmental Response.  However, this definition does not include (1) any costs incurred prior to February 1, 2003; (2) any attorneys fees incurred

-2-

CONFIDENTIAL                                                                                        GM_BURNS_010212

by Grantor; (3) any internal costs of Grantor associated with Grantor's employees or operations, except where (i) sampling and analytical laboratory costs are incurred in lieu of retaining an outside contractor for performance of the same sampling and analytical laboratory work, (ii) such costs were the low bid out of at least three bids, and (iii) such costs are included on an Annual Budget; (4) any costs incurred by other potentially responsible parties who may have a claim for recovery of such costs against Grantor, other than costs incurred pursuant to an Annual Budget under the Consent Decree; or (5) any costs associated with compliance under environmental laws other than CERCLA or RCRA.

(f)     "Grantor" means ASARCO Incorporated and its successors and assigns.

(g)     "Grantor Representative" means the representative of Grantor designated pursuant to Paragraph 35 and successor representatives.

(h)     "Guaranty" means the guaranty attached as Appendix D to the Consent Decree.

(i)     "Note" means the note attached as Appendix B to the Consent Decree and referred to therein as "Note B."

(j)     "Paragraph" means a portion of this Agreement identified by an arabic numeral.

(k)     "Performing Entity" means any person or entity, including but not limited to the United States and ASARCO, designated in an Annual Budget as having the right to seek reimbursement for the performance of specified work projects under such Annual Budget, as provided in Paragraphs 22, 24, and 26 of the Consent Decree.

-3-

CONFIDENTIAL

GM_BURNS_010213

(l) "Site" means (1) any facility addressed in an existing or future judicial consent decree to which the United States and Grantor are parties, or in an existing or future administrative order on consent or unilateral administrative order issued to Grantor by a federal agency or department, which requires site investigation or other response action under Sections 104(a) or 106 of CERCLA or Sections 3008(h) or 7003 of RCRA; or (2) any facility at which Grantor is identified by EPA as a potentially responsible party ("PRP") under CERCLA and which either now or in the future (a) is listed or proposed for listing on the National Priorities List pursuant to Section 105 of CERCLA or (b) is determined by EPA to have a Hazard Ranking System score of at least 28.5 and at which a CERCLA response action is being performed or overseen by EPA, the U.S. Department of the Interior ("DOI"), or the U.S. Department of Agriculture ("USDA"), or by a state agency that has been formally designated as the lead response agency by EPA pursuant to 40 C.F.R. Part 35, Subpart O; or (3) any facility that the United States and Grantor agree, in an Annual Budget prepared pursuant to the Consent Decree, should receive funding for Environmental Response work from the Trust.

(m) "Trust" means the Trust established by this Agreement. This term has the same meaning as "Environmental Trust" in the Consent Decree.

(n) "Trust Estate" has the meaning set forth in Paragraph 7.

(o) "Trust Account" means the ASARCO Account to be established pursuant to Paragraph 9.

(p) "Trustee" means the Trustee appointed pursuant to Paragraph 10 and all successor Trustees appointed pursuant to Paragraph 14(c).

-4-

(q)     "United States" means the United States of America and all of its

departments, agencies, and instrumentalities.

(r)     "United States Representative" means the representative of the United

States designated pursuant to Paragraph 35 and all successor representatives.

**Article II**
**Establishment and Acceptance of Trust**

2.      Establishment of Trust.  There hereby is established an express trust under the

laws of the State of _____.  The trust so established shall be known as the

"ASARCO Trust" and is referred to in this Agreement as the "Trust."

3.      Trust Purposes.  The primary purpose of the Trust is to collect, administer, and

disburse funds to be used for Environmental Response Costs at or in connection with any or all

of the Sites.  It is understood, however, that Grantor is not hereby admitting any liability with

regard to any of the Sites.

4.      Grantor Environmental Remediation Trust.  For federal tax purposes only, the

Trust hereby established is intended to be an environmental remediation trust as described in

U.S. Treasury Regulation § 301.7701-4(e).  The Trust shall have no purpose of generating

income or profit other than income generated by temporary investment of Trust assets, which

income shall be incorporated into the corpus of the Trust and used exclusively for Trust

purposes.  The Trust has been organized with no objective to continue or engage in the conduct

of a trade or business.  As provided in Paragraph 34, this Agreement may be amended to reflect,

for federal tax purposes only, the fact that the Trust has become a Qualified Settlement Fund

trust within the meaning of U.S. Treasury Regulations in the event the Trust acquires such status.

5.      Irrevocability of Trust.  The Trust is irrevocable.  Grantor retains no equitable,

legal, beneficial, or residual interest in the Trust or Trust Estate.

-5-

CONFIDENTIAL                                                      GM_BURNS_010215

6. <u>Beneficiary</u>. The beneficiary of the Trust shall be the United States in its capacity as enactor and enforcer of laws protecting the environment and the health and welfare of its citizens.

### Article III
### <u>Trust Estate and Account</u>

7. <u>Trust Estate</u>. The Trust Estate is comprised of all contributions acquired by the Trust under the terms of the Consent Decree and this Agreement, including proceeds and payments received under the Note and the Guaranty, and any income or other gains received by the Trustee in connection with investment of the assets held in the Trust Estate.

8. <u>Trust Funding</u>. As provided by the Consent Decree, the Trust shall be funded by Grantor's assignment of the Note to the Trust. The Note is not assignable by the Trustee. In addition to the Note, Grantor shall also assign the Guaranty to the Trust, and the assignment shall specifically state that the Trustee is subrogated to all of Grantor's rights in the Guaranty. The Trustee shall execute the Irrevocable Assignment and Acknowledgement of Assignment set forth as Appendix H to the Consent Decree. The Trust shall be considered to be fully funded once all principal and interest on the Note has been paid in full or the Note and Guaranty have been otherwise discharged

9. <u>Trust Account</u>. The Trustee shall establish an account called the "ASARCO Trust Account" to hold all monies of the Trust Estate other than the Note and the Guaranty. All payments of principal and interest on the Note or the Guaranty shall be deposited by the Trustee into the Trust Account. The Trustee may establish such sub-accounts as are necessary or useful, in his or her discretion, to the exercise of the Trustee's rights, privileges, and powers.

-6-

CONFIDENTIAL

GM_BURNS_010216

## Article IV
## Trustee

10.    <u>Appointment of Trustee</u>.  There shall be a Trustee appointed under an instrument in writing executed jointly by the Grantor Representative and the United States Representative.

11.    <u>Acceptance of Trust</u>.  The Trustee, by his or her execution of this Agreement, indicates that he or she understands and accepts the Trust established herein, accepts the rights, powers, duties and responsibilities set forth herein, and agrees to perform his or her respective duties and responsibilities in accordance with the provisions of this Agreement and the Consent Decree.

12.    <u>Powers of Trustee</u>.  To carry out the purposes of the Trust and, in addition to the rights, privileges and powers vested in the Trustee elsewhere in this Agreement and those now or hereafter conferred by law, subject to any limitations stated elsewhere herein or imposed by law, the Trustee shall have the following powers until the Trust is terminated:

(a)    To incur any and all fees, taxes, and expenses upon or connected with the Trust or the Trust Estate consistent with this Agreement;

(b)    To hold any assets belonging to the Trust at any place in the United States;

(c)    To invest and reinvest any part or all of the Trust Estate to enable the Trustee to derive a reasonable income from the assets held in Trust pending distribution of such assets, consistent with the safety and liquidity of principal required by the purposes of this Trust (including, but not limited to, the annual budgets), and not to authorize speculation or the carrying on of any business for profit or derivation of any gains therefrom.  In particular, investments are limited to the following:

(i)    Obligations issued or granted by the United States, or any money fund which invests solely in the foregoing obligations;

-7-

CONFIDENTIAL

(ii)      Any obligations issued or guaranteed by any state or municipality in the United States which is rated AAA by Standard & Poor's or Aaa by Moody's Investors Service at the time of investment;

(iii)      Any corporate bonds with an investment grade credit rating of AAA by Standard & Poor's or Aaa by Moody's Investors Service at the time of investment;

(iv)      Certificates of deposit of, accounts with repurchase obligations of, or money funds or other obligations of banks or of corporations endowed with trust powers having capital and surplus in excess of $100,000,000; and

(v)      Certificates of deposit of, accounts with, or other obligations of any bank or corporation endowed with trust powers provided that the full amount of any such certificate of deposit, account, or other obligation is insured by FDIC or FSLIC;

(d)      To hold and retain all or any part of the Trust Estate, as long as advisable;

(e)      To sell, exchange, or otherwise dispose of or liquidate all or any part of the Trust Estate without prior application to or approval by any court;

(f)      To make payments authorized by Article V;

(g)      To pursue, adjust, settle, compromise, and arbitrate claims or demands in favor of or against the Trust, including but not limited to claims for taxes and claims on the Note or the Guaranty, relating solely to Trust matters; and

(h)      To represent the Trust with regard to any matter concerning the Trust before any federal, state, or local agency or authority, including but not limited to claims on the Note or the Guaranty.

-8-

CONFIDENTIAL

GM_BURNS_010218

13.    <u>Compensation of Trustee</u>.  The Trustee shall receive compensation for his or her services hereunder according to the fee schedule set forth as Attachment 1, and Trustee shall be entitled to reimbursement from the Trust Estate for all reasonable expenses incurred by the Trustee in the administration of the Trust.

14.    <u>Resignation, Removal, and Successor Trustee</u>.

(a)    <u>Resignation of Trustee</u>.  The Trustee may resign at any time, with or without cause, and without the necessity of any court proceeding, by giving not less than sixty (60) days prior written notice to Grantor and the United States.  Such resignation shall take effect on the date set forth in the resignation notice, which shall be a date not less than sixty (60) days after the date such notice has been sent to the aforesaid parties, unless a successor Trustee shall have been sooner appointed as provided in Subparagraph 14(c) herein, in which event such resignation shall take effect immediately upon the appointment and acceptance of the successor Trustee.

(b)    <u>Removal of Trustee</u>.  Notwithstanding anything contained herein to the contrary, the Trustee may be removed at any time, with or without cause, under an instrument in writing delivered to the Trustee and executed jointly by the Grantor Representative and the United States Representative.  Removal shall be effective upon delivery of such instrument to the Trustee.

(c)    <u>Successor Trustee</u>.  In the event that the Trustee hereunder shall resign, be removed, or otherwise cease to act as Trustee, a successor Trustee shall be appointed under an instrument in writing executed jointly by the Grantor Representative and the United States Representative.  The successor Trustee, by his or her execution of an addendum to this Agreement, indicates that he or she understands and accepts the Trust

-9-

CONFIDENTIAL

GM_BURNS_010219

established herein, accepts the rights, powers, duties and responsibilities set forth herein, and agrees to perform his or her respective duties and responsibilities in accordance with the provisions of this Agreement and the Consent Decree.

(d)    <u>Transfer to Successor Trustee</u>. Every successor Trustee appointed hereunder shall execute, acknowledge, and deliver to his or her predecessor, an instrument in writing accepting such appointment hereunder, and thereupon such successor Trustee, without any further act, deed, or conveyance, shall become fully vested with all the estates, rights, powers, title to Trust assets, trusts, duties, and other obligations hereunder as Trustee. However, such predecessor shall nevertheless, upon written request of the successor Trustee, execute and deliver an instrument transferring to such successor Trustee all the estates, rights, powers, title to Trust assets, trusts, duties, and other obligations of such predecessor hereunder; and every predecessor Trustee shall deliver all assets of the Trust Estate held by him or her to his or her successor; provided, however, that before any such delivery is required or made, all allowable fees and expenses of any such predecessor Trustee shall be paid in full.

## Article V
## Payments From Trust Estate

15.    <u>Qualifying Costs</u>. The Trust Estate may only pay costs described in the categories set forth below. The payment of qualifying costs within the meaning of Subparagraph (a) of this Paragraph is governed solely by the procedures set forth in Paragraph 16. Except as otherwise provided herein, nothing in this Agreement creates any rights, including the right to payment, in any party, whether or not a party to this Agreement.

(a)    <u>Environmental Response Costs</u>. This category generally includes Environmental Response Costs incurred by Performing Entities or their contractors at a

-10-

CONFIDENTIAL

GM_BURNS_010220

Site.  To qualify for payment under this Agreement, the Environmental Response work must be listed on an Annual Budget.

(b)      <u>Allowable Trust Fees, Expenses, and Taxes.</u>  All Trust administration fees, expenses, and taxes authorized pursuant to this Agreement shall be paid from the Trust Estate.  Payment of trust fees and expenses may be made from the Trust Account at the Trustee's discretion and such payments are not subject to Paragraph 16.  Payment of trust taxes shall be made from the Trust Account and such payments are not subject to Paragraph 16.

16.      <u>Annual Budgets and Procedures For Payments.</u>  This Paragraph applies to the Trustee's administration of Annual Budgets and payments of qualifying costs under Paragraph 15(a).

(a)      <u>Annual Budget.</u>  Pursuant to the Consent Decree, the United States shall submit Annual Budgets to the Trustee for the anticipated payment of qualifying costs in the following year.  Pursuant to the Consent Decree, the United States may submit amended Annual Budgets to the Trustee amending a previously submitted Annual Budget.  The Trustee is obligated to accept and administer the Annual Budgets and amended Annual Budgets unless the Trustee concludes that such budget would be inconsistent with the stated purpose of the Trust or concludes that:

(i)      the Annual Budget would require the Trust to pay monies at a facility that is not a Site;

(ii)      the Annual Budget conflicts with Grantor's existing work obligations specifically set forth in an existing consent decree or order and the conflicting provision or provisions are not expressly conditioned upon obtaining a

-11-

CONFIDENTIAL

GM_BURNS_010221

modification of the existing consent decree or order pursuant to Section XIII of the Consent Decree;

       (iii)    the Annual Budget would require the Trust to pay monies for costs that are not Environmental Response Costs;

       (iv)    the Annual Budget would require the Trust to pay more money than it is reasonably anticipated will be available from the Trust for any calendar year; or

       (v)    the Annual Budget does not adequately fund the performance of Environmental Response work for which ASARCO has been designated as responsible under such Annual Budget.

With respect to Subparagraph (a)(ii) of this Paragraph, the Trustee's obligations shall be limited to the review of information provided to him or her by the United States, Grantor, or any other Performing Entity. Within twenty (20) days of receipt of an Annual Budget or amended Annual Budget, the Trustee shall notify the United States and Grantor in writing that the Trustee either accepts or rejects such Annual Budget or amended Annual Budget. A rejection notice under this Paragraph shall contain an explanation of the Trustee's rejection of the Annual Budget or amended Annual Budget. In the event of a rejection determination by the Trustee under this Paragraph, the United States may submit a new budget and schedule in accordance with the provisions of the Consent Decree, or may seek judicial review of the Trustee's decision to reject the Annual Budget. The Trustee's decision to accept an Annual Budget is subject to judicial review only as provided under Paragraph 26 of the Consent Decree.

CONFIDENTIAL

GM_BURNS_010222

(b)    Payment of Claims.  A Performing Entity may submit reimbursement requests ("Claims") to the Trustee, with a copy to the United States and Grantor, for any Environmental Response work for which the claimant was designated as Performing Entity under any Annual Budget.  Such Claims shall be made in the form set forth in Attachment 2, and must include a full description of all work performed, itemized contractor invoices, and other supporting documentation as required by the form.  Except as provided in Subparagraphs (c) and (d) of this Paragraph, the Trustee shall be authorized to reimburse a Performing Party only to the extent a Performing Party submits receipts or other proof showing that it has already paid its contractors directly for work that was authorized under the Annual Budget, or, in the case of Grantor's internal sampling and analytical laboratory costs incurred in lieu of retaining an outside contractor for performance of the same sampling and laboratory work, where such costs were the low bid out of at least three bids and were included on an Annual Budget, only to the extent that Grantor submits documentation establishing that such costs have already been incurred.  The United States and/or Grantor shall have thirty (30) days from the date of service of a copy of any Claim in which to serve an objection to that Claim, indicating the basis for contending the Claim is not authorized under the Annual Budget or is not properly documented or supported.  Such objection shall be served on the Trustee, the Performing Entity making the Claim, and the United States or Grantor as appropriate.  If there is no objection within thirty (30) days from the date of service of a copy of the Claim, the Trustee shall promptly pay the Claim to the Performing Entity subject to Subsection (e) of this Paragraph, unless the Trustee concludes that such payment is not authorized under the Annual Budget or that the Claim was not properly documented or

-13-

supported.  In the event that there is an objection or the Trustee determines that the Claim

as submitted should not be paid, the Performing Entity making the Claim shall promptly

submit a written presentation to the Trustee in support of payment of the Claim or shall

withdraw the Claim.  The Trustee shall promptly make an independent determination as

to whether to allow the Claim, and shall notify the United States, Grantor, and the

Performing Entity of his or her decision.  The decision of the Trustee to pay a Claim is

not subject to judicial review except upon an allegation by Grantor or the United States

that the Trustee exceeded his or her legal authority in making that decision.  The decision

of the Trustee to deny a Claim is subject to judicial review only upon petition of the

Performing Entity that submitted the Claim alleging that the Trustee was in error in

concluding that payment of the Claim was not authorized under an Annual Budget or that

the Claim was not properly documented or supported.

     (c)    <u>Direct Payment to Contractor</u>.  The Trustee shall be authorized to directly

reimburse a contractor of a Performing Entity, except a contractor of the United States,

for a Claim or a portion thereof upon submission of unpaid contractor invoices with the

Claim and a statement by the Performing Party that the contractor has not yet been paid

and is to be paid directly by the Trustee.

     (d)    <u>Special Procedure Where EPA is the Performing Entity</u>.  If an Annual

Budget accepted by the Trustee designates EPA as the Performing Entity for

Environmental Response work at a Site, the Trustee shall transfer the amount budgeted

for that work from the Environmental Trust to a special account established by EPA for

that Site within the Hazardous Substances Superfund without the need for the filing of a

Claim.  The Trustee shall make the transfer, in accordance with instructions provided by

-14-

GM_BURNS_010224

EPA, by the later of (a) ten (10) days after the Trustee's acceptance of the Annual Budget designating EPA as the Performing Party, or (b) ten (10) days after receipt of the payment under Note B being allocated in that Final Budget and Schedule.   EPA may utilize the transferred funds only to pay for performance or oversight of the Environmental Response work specified for the relevant Site in the Annual Budget.  Within sixty (60) days after completion of that work, EPA shall submit a report to the Trustee documenting the Environmental Response work performed and the costs incurred for the work and/or costs incurred for oversight of work performed.  EPA shall provide the same degree of documentation as required in Subparagraph (b) of this Paragraph, and the process of reviewing, challenging and approving such submissions shall be the same as set forth in Subparagraph (b) of this Paragraph.  If the United States has expended less than the full amount transferred to it under this Subparagraph for performance or oversight of the Environmental Response work specified in the Annual Budget, it shall return the excess proceeds to the Trust.  If the Trustee, after review of EPA's report, determines that EPA expended less than the full amount transferred on performance or oversight of the Environmental Response work specified in the Annual Budget and has not returned the excess proceeds to the Trust, the Trustee shall so notify EPA and shall request repayment of the amount not expended on that work or oversight.  EPA shall have thirty (30) days to either challenge the Trustee's determination by petition to this Court or to pay the amount requested to the Trustee for redeposit into the Trust Account.  If the Trustee's determination is upheld in whole or in part, EPA shall, within thirty (30) days, pay the amount determined to be payable to the Trustee for redeposit into the Trust Account.

CONFIDENTIAL

GM_BURNS_010225

(e)  <u>Reserve and Limitations on Payments</u>.  Except as otherwise provided herein, approved Claims and payments required by Subparagraph 15(d) shall be paid in full unless making the payment in full would cause the value of the Trust Account to fall below a reserve of $50,000 plus the amount reasonably anticipated by the Trustee to be necessary to cover payments under Subparagraph 15(b).  Instead, a partial payment shall be made such that the value of the Trust Account will not fall below such reserve, and the remainder of the approved Claim or payments required by Subparagraph 15(d) shall be made when sufficient Trust funds become available.  However, once the Trust has been fully funded pursuant to Paragraph 8, the limitation on payments in this Subparagraph shall no longer be in effect.  At that time, the Trustee is authorized to utilize the full value of the Trust Account for the payment remaining Trust fees, expenses, and taxes and thereafter for Environmental Response Costs as provided in this Agreement.

**Article VI**
**Professional Services**

17.  <u>Accounting Services</u>.  The Trustee shall engage accountants to perform accounting services for and at the expense of the Trust.

18.  <u>Other Professional Services</u>.  The Trustee may engage such attorneys, custodians, clerks, engineers, contractors, subcontractors, investment counsel, and agents (including any firm or entity with which a Trustee is affiliated or in which the Trustee may have an interest) and make from the Trust Estate such payments therefor as he or she shall deem reasonable for the implementation of the purposes of the Trust and the Trust's administration.

-16-

CONFIDENTIAL

## Article VII
## Accounts and Records

19.    <u>Accounting Records</u>.  The Trustee shall keep or cause to be kept proper books, records, and accounts of all transactions relating to the Trust and the Trust Account in such form and manner as will enable the Trustee to produce all reports and accountings called for in this Agreement.

20.    <u>Quarterly Reports</u>.  Within thirty (30) days after the end of each calendar quarter, the Trustee shall provide Grantor and the United States with a quarterly report summarizing the status of the Trust Account, Trust investments, the receipt and payment of claims, disputes (if any), Trust fees, expenses, and taxes, and any other issues related to Trust administration that the Trustee deems appropriate.

21.    <u>Tax Reports</u>.  In accordance with U.S. Treasury Regulation § 301.7701-4(e)(2), no later than March 1 following the close of a calendar year during the Trust's term, the Trustee shall provide Grantor and the United States with the following information:

(a)    Schedule K-1 or similar schedule as attached to the Form 1041 for the Trust filed with the Internal Revenue Service for the calendar year reporting the items attributable to the Trust Account; and

(b)    A statement showing all items of income, deduction and credit of the Trust for the calendar year, including information necessary to determine which such items are deductible expenses and capital expenditures for the year.

22.    <u>Cooperation</u>.  The Trustee shall reasonably cooperate with requests for accounting and tax information from Grantor or the United States.

-17-

GM_BURNS_010227

### Article VIII
### Rights and Liabilities

23.    Extent of Liability.  The Trustee shall not be liable for his or her acts, omissions,
or defaults, regardless of whether or not occasioned by negligence of the Trustee, nor for the
acts, omissions or defaults of any agent or depository employed, appointed, or selected by the
Trustee, except for such Trustee's own acts, omissions or defaults occasioned by the gross
negligence or willful misconduct of such Trustee.  The Trustee shall not be responsible for the
acts or omissions of any predecessor Trustee nor, in particular, shall the Trustee be liable in
regard to the exercise or nonexercise of any power or discretion properly delegated pursuant to
the provisions of this Agreement.

24.    Indemnification.  Grantor agrees to indemnify, hold harmless and defend, to the
extent allowed by law, the Trustee from any and all liability arising out of this Agreement
excepting only such liability as may be imposed on the Trustee pursuant to Paragraph 23.

25.    Survivorship of Protections.  Notwithstanding any other provision of this
Agreement to the contrary, the terms and conditions of Paragraphs 23 and 24 hereof shall survive
the termination of this Agreement and may not be altered, amended or revoked without the
consent of the beneficiary thereof.

26.    No Bond or Insurance Required.  No bond or other security shall be exacted or
required of any Trustee appointed by this Agreement.

### Article IX
### Termination of Trust

27.    Termination of Trust.  The Trust shall terminate when the Trust Estate has been
fully disbursed according to the terms and conditions of this Agreement, all tax and reporting
obligations have been fulfilled, and all pending disputes, if any, have been finally resolved.

-18-

CONFIDENTIAL                    GM_BURNS_010228

**Article X**
**Miscellaneous**

28.    Headings.  The section headings set forth in this Agreement are included for the convenience of reference only and shall be disregarded in the construction and interpretation of any of the provisions of this Agreement.

29.    Particular Words.  Any word contained in the text of this Agreement shall be read as a singular or plural and a masculine, feminine, or neuter, as may be applicable or permissible in the particular context.  Unless otherwise specifically stated, the word "person" shall be taken to mean and include an individual, partnership, association, company, corporation, or municipal corporation.

30.    Severability.  If any provision of this Agreement, or its application to any person or entity or in any circumstances, shall be invalid or unenforceable, the application of such provision to other persons or entities and in circumstances other than those to which it is invalid or unenforceable, and the other provisions of this Agreement shall not be affected by such invalidity or unenforceability.

31.    Situs of Trust; Applicable Law.  The situs of the Trust herein established is the State of _____, and the laws of such state shall control with respect to the construction, administration, and validity of the Trust and to the construction and interpretation of this Agreement.

32.    Disputes; Jurisdiction of Court.  All disputes arising between or among the Trustee, Grantor, and/or the United States concerning this Agreement that cannot be resolved informally shall be raised with the Court in United States v. ASARCO, Inc. and Southern Peru Holdings Corporation, No. CIV-02-2079-PHX-RCB (D. Ariz.), except that disputes arising out of and relating to the provisions of Paragraph 16 that cannot be resolved informally are subject to

-19-

CONFIDENTIAL

GM_BURNS_010229

judicial review only to the extent that judicial review is specifically authorized under this Agreement. The Trustee hereby agrees to and accepts the jurisdiction of the United States District Court for the District of Arizona over both the subject matter of the dispute and the Trustee for this purpose. No service of a summons or related process shall be required beyond what is required by the Consent Decree.

33.    Non-assignment of Trust Interest. No interest in the Trust is assignable except to a successor corporation or partnership of the assignor. If any other entity ever succeeds to the business of a person with an interest by means of a merger, consolidation, change of name, or any other form of reorganization, such other entity shall thereupon without further action succeed its predecessor, as if originally named in this Agreement.

34.    Alterations and Amendments; Conversion to Qualified Settlement Fund Trust. Upon the written concurrence of the United States, the terms of this Agreement relating to administration of the Trust and Trust assets, except for the provisions of Article V, may be altered or amended to the extent necessary or desirable, but only to the extent that such alterations or amendments do not revoke the Trust and are consistent with the Consent Decree. This Agreement may be amended to reflect, for federal tax purposes only, its operation as a Qualified Settlement Fund trust within the meaning of U.S. Treasury Regulations in the event the Trust acquires such status.

35.    Representatives. The Grantor Representative and the United States Representative are as follows:

> Grantor Representative
>
> Douglas McAllister
> ASARCO Incorporated
> 2575 E. Camelback Road
> Suite 500
> Phoenix, AZ 85016-4240

-20-

CONFIDENTIAL

GM_BURNS_010230

Phone: (602) 977-6507
Fax: (602) 977-6706

<u>United States Representative</u>

Chief, Environmental Enforcement Section
Phone: 202-514-4624
Fax: 202-353-0296

For Overnight Mail:
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
1425 New York Ave. NW
Washington, DC 20005
Ref. DOJ File No. 90-11-3-128/5

For Regular Mail:
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Ref. DOJ File No. 90-11-3-128/5

Grantor and the United States may change their representative upon written notice to the

other party and the Trustee as provided in Paragraph 36.

36.    <u>Notices</u>.  Whenever this Agreement requires the sending of any notice, such

notice shall be sent as follows:

<u>For the Trustee</u>

(Designated on signature page)

<u>For Grantor</u>

Douglas McAllister
ASARCO Incorporated
2575 E. Camelback Road
Suite 500
Phoenix, AZ 85016-4240
Phone: (602) 977-6507
Fax: (602) 977-6706

-21-

CONFIDENTIAL

GM_BURNS_010231

For the United States

(a)  Department of Justice:

For Overnight Mail:
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
1425 New York Ave.  NW
Washington, DC 20005
Ref. DOJ File No. 90-11-3-128/5
Phone: 202-514-4624
Fax: 202-353-0296

For Regular Mail:
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Ref. DOJ File No. 90-11-3-128/5
Phone: 202-514-4624
Fax: 202-353-0296

(b)  Environmental Protection Agency:

Michael B. Cook
Director, Office of Emergency and Remedial Response
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Mail Code MC5201G
Washington, DC  20460
Phone: 703-603-8960
Fax: 703-603-9146

The Trustee, Grantor, and the United States may change their addresses upon written

notice as provided in Paragraph 36 to the other parties.

37.    Binding Effect.  Each of the individuals signing this Agreement on behalf of any

entity hereby certifies that he or she is the duly authorized representative of such entity with full

power and authority to bind the entity to the terms and conditions of this Agreement.

-22-

CONFIDENTIAL

GM_BURNS_010232

38.    <u>Counterparts</u>. This Agreement may be executed in two counterparts, each of which will be deemed an original agreement, but all of which will be considered one and the same instrument.

IN WITNESS WHEREOF, the following authorized individuals have executed this ASARCO Trust Agreement as of the date first described above.

ASARCO Trust Agreement

AGREED FOR GRANTOR:

_____

DOUGLAS McALLISTER
ASARCO Incorporated
2575 E. Camelback Road
Suite 500
Phoenix, AZ 85016-4240
(602) 977-6507


_____

Name:
Title:
ASARCO Incorporated

-23-

CONFIDENTIAL    GM_BURNS_010233

ASARCO Trust Agreement

AGREED FOR TRUSTEE:

_____

Name:
Contact Information:

-24-

CONFIDENTIAL

GM_BURNS_010234

**Attachment 1**

**Schedule of Trustee Fees & Expenses**

CONFIDENTIAL                                    GM_BURNS_010235

**Attachment 2**

**Claim Form**

To: Trustee, ASARCO Trust

This request for payment is made pursuant to Paragraph 16 of the ASARCO Trust Agreement ("Agreement") for costs qualifying under Paragraph 15(a). This request meets the criteria for payment set forth in the Agreement and is summarized as follows:

1. Date request submitted:

2. Citation to the Annual Budget item to which the qualifying cost relates:

3. Amount of the qualifying cost:

4. Payee for the qualifying costs:

5. Description of the qualifying cost:

6. Description of the documentation substantiating the cost [documents, such as invoices, to be attached; for allowable ASARCO sampling and analytical laboratory costs, documentation shall include, where applicable, hours worked, cost per hour, any expenses, and a general description of the work performed]:

7. Additional information [if any]:

A true and accurate copy of this request for payment and all attachments has been served upon the Grantor Representative and the United States Representative on this date by overnight express.

[Signed]

-26-

## ASARCO SECURITY AGREEMENT

**THIS SECURITY AGREEMENT** (this "**Agreement**") is made as of __, 2003 by and between ASARCO Incorporated, a New Jersey corporation with its principal office located at 2575 E. Camelback Road, Suite 500, Phoenix, Arizona 85016 ("**Grantor**"), and the U.S. Department of Justice, Environmental and Natural Resources and Environmental Enforcement Sections, on behalf of the United States of America (including all Executive Branch instrumentalities of the federal government, collectively referred to as the "**United States**" or "**Secured Party**"), located at Ben Franklin Station, P.O. Box 7611, Washington, D.C. 20044. Unless otherwise defined herein, all capitalized terms used herein shall have the meanings assigned to such terms in the Consent Decree (as hereinafter defined).

### Recitals

WHEREAS, Grantor has various environmental liabilities or potential liabilities to the United States pursuant to certain consent decrees, administrative orders, or environmental statutes;

WHEREAS, the United States has filed a complaint against Grantor and Southern Peru Holdings Corporation ("**SPHC**") pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3004, and the Federal Priorities Statute, 31 U.S.C. § 3713, in a suit denominated United States v. ASARCO Incorporated. and Southern Peru Holdings Corporation, No. CIV-02-2079-PHX-RCB (D. Ariz.) ("the **Action**");

WHEREAS, the United States, Grantor and SPHC have entered into a consent decree, including attachments and related agreements, that resolves the claims raised by the United States in the Action (the "**Consent Decree**");

WHEREAS, as part of the transactions contemplated by the Consent Decree, (i) Americas Mining Corporation ("**AMC**") has issued to SPHC that certain Promissory Note Due May 31, 2010, dated _____, 2003 in the original principal amount of $100,000,000, in the form set forth as Appendix B to the Consent Decree ("**Note B**"), and (ii) Grupo México, S.A de C.V. has agreed to guarantee the obligations of AMC under Note B pursuant to that certain Guaranty, dated as of _____, 2003, in the form set forth as Appendix C to the Consent Decree (the "**Guaranty**");

WHEREAS, pursuant to the Consent Decree, (i) SPHC is required to assign Note B and the Guaranty to Grantor; and (ii) Grantor is required to grant Secured Party a security interest in Note B and the Guaranty to secure the Secured Obligations (as hereinafter defined);

WHEREAS, pursuant to the Consent Decree and subject to such security interest in favor of Secured Party, Grantor is required to assign Note B and the Guaranty to the ASARCO Environmental Remediation Trust;

CONFIDENTIAL

GM_BURNS_010237

**NOW, THEREFORE**, in consideration of the recitals, covenants and agreements set forth herein, and as consideration in part for the releases and covenants set forth in the Consent Decree, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby agree as follows:

6.    **Definitions**.

(a)    "**Collateral**" shall mean:

(i)    Note B and the Guaranty; and

(ii)    all proceeds of any or all of the foregoing Collateral.

(b)    "**proceeds**" shall have the meaning set forth in the UCC.

(c)    "**Secured Obligations**" shall mean (i) payment and performance of each and every obligation, covenant, and agreement of Grantor set forth in the civil judgments, consent decrees, and administrative orders identified in Section I (Background) Paragraphs C, D, and E of the Consent Decree, in each case as the obligations, covenants, and agreements of the Grantor under such civil judgments, consent decrees, and administrative orders are conditioned by Article X of the Consent Decree ("Covenants of the United States"), and (ii) payment of all sums advanced or expended by or on behalf of Secured Party in accordance herewith in connection with the Secured Obligations in order to protect, retake, hold, or prepare for sale or other disposition of, or realize upon, any of the Collateral.

(d)    "**UCC**" shall mean the Uniform Commercial Code of the State of New York, as amended, except to the extent that the Uniform Commercial Code as enacted in another jurisdiction applies by operation of law as to any provision contained herein, in which case such law of another jurisdiction shall govern such provision.

7.    **Pledge of Collateral and Grant of Security Interest.** Grantor does hereby unconditionally and irrevocably assign, pledge, convey, mortgage, transfer, hypothecate and grant unto the Secured Party, as security for the Grantor's full payment and performance when due of the Secured Obligations, a lien on and security interest in all of Grantor's right, title and interest in and to the Collateral, in each case whether now or hereafter existing, whether tangible or intangible, or in which Grantor now has or hereafter acquires an interest and wherever the same may be located. When properly perfected by the filing of a duly-completed UCC financing statement with the Secretary of State of the State of New Jersey, the security interest of Secured Party in the Collateral shall constitute a valid and perfected first-priority security interest. Grantor hereby irrevocably authorizes Secured Party, at any time and from time to time, to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments

5310476v:0

thereto and continuations thereof in order to perfect or continue the perfection of Secured Party's security interest in the Collateral.

8. **Provisions Relating to Collateral.** Anything contained herein to the contrary notwithstanding, Grantor shall remain liable to observe and perform all the conditions and obligations to be observed and performed by it under any agreement giving rise to any of the Collateral, all in accordance with the terms thereof. Secured Party shall not have any duty, obligation or liability under any such agreement by reason of or arising out of this Agreement or the receipt by Secured Party of any payment relating to such agreement or the Collateral pursuant hereto, nor shall Secured Party be obligated in any manner to perform any of the obligations of Grantor under or pursuant to any such agreement or to take any action to enforce performance of, or to collect the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times under or in respect of, any of the Collateral, unless the Secured Party so elects in a writing delivered to the Grantor.

9. **Remedies Upon Default.**

(a) Upon default by Grantor in the payment or performance of any of the Secured Obligations, Secured Party may exercise in respect of the Collateral, in addition to all other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral).

(b) Without limiting the foregoing, the Secured Party's rights and remedies upon such a default by the Grantor shall include, but shall not be limited to, the right to make such payments and do such acts as the Secured Party may deem necessary to protect, perfect, or continue the perfection of its security interest in the Collateral, including (i) paying, purchasing, contesting, or compromising any lien that is, or purports to be, prior to or superior to the security interest granted hereunder and (ii) commencing, appearing, or otherwise participating in or controlling any action or proceeding purporting to affect the security interest in or ownership of the Collateral;

(c) foreclose on the Collateral as herein provided or in any manner permitted by applicable law and exercise any and all of the rights and remedies conferred upon the Secured Party by the documents constituting the Collateral, either concurrently or in such order as the Secured Party may determine, without affecting the rights or remedies to which the Secured Party may be entitled under this Agreement or under the Consent Decree; the Grantor hereby waives, to the extent permitted by applicable law, notice and judicial hearing in connection with the Secured Party's taking possession or commencing any collection, recovery, receipt, appropriation, repossession, retention, set-off, sale, conveyance, assignment, transfer, or other disposition of or realization upon any or all of the Collateral, including any and all prior notice and hearing for any pre-judgement remedy or remedies and any such right that the Grantor would otherwise have under the constitution or any statute or other law of the United States of America or of any state thereof.

10. **Secured Party Appointed Attorney-in-Fact.** Grantor hereby irrevocably appoints Secured Party and any agent thereof as its true and lawful attorney-in-fact, with full

5310476v10

GM_BURNS_010239

authority in the place and stead of Grantor and in the name of Grantor or otherwise, from time to time to take any action and to execute any instrument the Secured Party may deem necessary or appropriate in order to exercise its remedies hereunder, including, without limitation:

> (a)    to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in connection with the Collateral,

> (b)    to receive, indorse and collect any drafts or other instruments, documents, security certificates and chattel paper, in connection therewith, and

> (c)    to file any claims or take any action or institute any proceedings which Secured Party may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce compliance with the terms, conditions or rights of Secured Party with respect to any of the Collateral.

11. **Perfection of Security Interest in Collateral.**  In order to ensure the attachment, perfection, and first priority of, and the ability of the Secured Party to enforce, the security interest in the Collateral created hereby, the Grantor agrees, at the Grantor's sole expense, to take the following actions with respect to the Collateral:

(a) Financing Statements. The Grantor shall execute, file, or cause to be filed, registered, and recorded all financing statements, notices, instruments, agreements, consents, and other documents as are necessary or desirable in the reasonable judgment of the Secured Party or required by applicable law to create, preserve, perfect, or validate the security interest in favor of the Secured Party, and each such document shall have been properly filed, registered, or recorded in each jurisdiction in which the filing, registration, or recordation thereof shall be necessary or required by applicable law to grant in favor of the Secured Party a perfected security interest in the Collateral, and the Secured Party shall have received an acknowledgment copy, or other evidence reasonably satisfactory to it, of each such filing, registration, and recordation;

(b) Further Assurances.  To the extent not included in the foregoing, the Grantor shall, from time to time at the Grantor's expense, promptly execute and deliver all further agreements, instruments, and documents, and take all further action, that may be necessary, or that the Secured Party reasonably determines may be necessary or advisable, in order to create, perfect, or protect the security interest granted or purported to be granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder with respect to the Collateral in accordance with the terms of this Agreement and the Consent Decree.

7.    **Representations, Warranties and Covenants of the Parties.**

(a)    In addition to the representations made by Grantor in the Consent Decree, Grantor makes the following representations and warranties, which shall be deemed to be continuing representations and warranties in favor of Secured Party, and covenants and

5310476v10

CONFIDENTIAL

GM_BURNS_010240

agrees to perform all acts necessary to maintain the truth and correctness, in all material respects, of the following:

(i)    No effective security agreement, financing statement or other document similar in effect covering all or any part of the Collateral is on file in any recording office.

(ii)    Grantor has the full right and title to the Collateral, free and clear of all liens and claims of others, and has the full power, legal right and authority to pledge, convey, transfer and assign such interest. None of the Collateral is subject to any existing assignment, claim, lien, pledge, transfer or other security interest of any character, or to any attachment, levy, garnishment or other judicial process or to any claim for set-off, counterclaim, deduction or discount.

(iii)    Grantor shall not, without the prior written consent of Secured Party, further convey, set over, pledge or otherwise transfer to any party any of its interests in the Collateral except as contemplated by the Consent Decree, it being agreed that (a) any such transfer contemplated by the Consent Decree shall be made expressly subject to the security interest granted to Secured Party hereunder and (b) in no event shall Secured Party's requirement that any such transfer be made be deemed to constitute a release of the security interest granted to it hereunder.

(iv)    Grantor agrees to (a) warrant and defend its title to the Collateral and the security interest created by this Agreement against all claims of all persons and (b) maintain and preserve the Collateral and such security interest.

(v)    The exact legal name of the Grantor is ASARCO Incorporated, the Grantor is a duly formed and validly existing corporation in good standing under the laws of the State of New Jersey, and the Grantor's certificate of incorporation is duly filed with the Secretary of State of the State of New Jersey. The Grantor's chief executive office is located at 2575 E. Camelback Road, Suite 500, Phoenix, Arizona 85016. Grantor has the corporate power and authority to own and operate its properties, to transact the business in which it is now engaged and to execute, deliver, and perform this Agreement.

(vi)    This Agreement constitutes the duly authorized, legally valid, and binding obligation of the Grantor, enforceable against the Grantor in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium, or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

(vii)    All consents and grants of approval required to have been granted by any person in connection with the execution, delivery, and performance of this Agreement have been granted, are in full force and effect, and are non-appealable.

(viii)    There is no pending or threatened action, suit, litigation, investigation, arbitration, or other proceeding involving or affecting Grantor or any of its properties or assets

5310476v10

CONFIDENTIAL

GM_BURNS_010241

which could reasonably be expected to materially and adversely affect Grantor's ability to execute, deliver, and perform its obligations under this Agreement.

(ix) the execution, delivery, and performance of this Agreement by Grantor do not and will not (A) violate any law, governmental rule or regulation, court order, writ, injunction, or agreement to which it is subject or by which it or its properties are bound or the charter documents or bylaws of Grantor or (B) result in the creation of any lien or other encumbrance with respect to the property of Grantor other than the security interest in favor of the Secured Party.

(x) Financing statements of other appropriate instruments have been filed pursuant to the UCC in the public offices set forth in Schedule A hereto as may be necessary to perfect the security interest granted or purported to be granted hereby. All other action necessary or requested by the Secured Party to protect and perfect the security interest in each item of the Collateral as of the date hereof has been duly taken. Subject to the requirements contained in the UCC with respect to the filing of continuation statements, this Agreement creates a valid, continuing, and perfected security interest in the Collateral in favor of the Secured Party, subject to no other liens, and is enforceable as against creditors of and purchasers from the Grantor.

12. **Covenants and Agreements of Grantor.** The Grantor hereby covenants and agrees that it shall observe and fulfill, and shall cause to be observed and fulfilled, each and all of the following covenants until all Secured Obligations have been indefeasibly paid and performed in full:

(a) Legal Status. Without giving at least thirty (30) days prior notice to the Secured Party, the Grantor shall not change its name, place of business or, if more than one, chief executive office, or its mailing address or organizational identification number if it has one, oar change its type of organization or jurisdiction of organization.

(b) Prohibition Against Transfer of Collateral. The Grantor shall not sell, assign, transfer or otherwise dispose of any part of the Collateral, whether in one or a series of transactions, or otherwise undertake the sale or disposal of any of the Collateral, except as expressly permitted pursuant to this Agreement and the Consent Decree.

(c) Limitation on Liens on the Collateral. The Grantor shall not create, assume, incur, suffer to exist, or permit to be created, assumed, incurred or suffered to exist, shall defend the Collateral against, and shall take such other action as is necessary to remove, any lien or claim on or to the Collateral, other than as expressly permitted by this Agreement and the Consent Decree, and shall defend the right, title, and interest of the Secured Party in and to any of the Collateral against the claims and demands of all persons whomsoever other than with respect to claims and demands permitted under this Agreement and the Consent Decree.

13. **Waiver and Estoppel.** No delay or failure on the part of Secured Party in the exercise of any right or remedy against Grantor or any of the Collateral shall operate as a waiver of any agreement or obligation contained herein, and no single or partial exercise by Secured Party of any rights or remedies hereunder shall preclude any other or further exercise thereof or the exercise of any other right or remedy, whether contained in this Agreement or in the Consent

5310476v10

GM_BURNS_010242

Decree or in any other agreement between Grantor and Secured Party. No waiver of the rights of Secured Party hereunder or in connection herewith and no release of Grantor shall be effective unless in writing executed by Secured Party. No actions of Secured Party permitted under this Agreement shall in any way impair or affect the enforceability of any agreement or obligation contained herein.

14. **GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW, EXCEPT TO THE EXTENT THAT THE UNIFORM COMMERCIAL CODE AS ENACTED IN ANOTHER JURISDICTION APPLIES BY OPERATION OF LAW AS TO ANY PROVISION CONTAINED HEREIN, IN WHICH CASE SUCH LAW OF ANOTHER JURISDICTION SHALL GOVERN SUCH PROVISION.**

15. **Successors and Assigns.** All agreements, covenants, conditions and provisions of this Agreement shall inure to the benefit of and be binding upon the respective successors and permitted assigns of the parties hereto.

16. **Notices.** Any notice, demand, request or other communication that any party hereto may be required or may desire to give hereunder shall be given in accordance with the terms of Paragraph 49 of the Consent Decree.

17. **Severability.** Every provision of this Agreement is intended to be severable. In the event any term or provision hereof is declared by a court of competent jurisdiction to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable.

18. **Amendment.** Except as otherwise provided herein, this Agreement may be modified or rescinded only by a writing expressly relating to this Agreement and signed by both parties.

19. **Termination.** This Agreement shall terminate and shall be of no further force or effect, upon the earlier to occur of:

    (a)    mutual consent of the Grantor and the Secured Party; and

    (b)    the indefeasible payment and performance in full of the Secured Obligations.

20. **Counterparts.** This Agreement may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement.

21. **Assignability.** Grantor may not assign any of its obligations under this Agreement, unless such assignment is by virtue of a consolidation, merger, acquisition or

5310476v10

CONFIDENTIAL

GM_BURNS_010243

disposition of all or substantially of the assets of Grantor wherein the successor entity, purchaser, transferee or assignee has the same right, title and interest as Grantor in the Collateral.

    22. **No Duty on the Secured Party's Part; Limitation on Secured Party's Obligations; Exculpatory Provisions.** The powers conferred on the Secured Party hereunder are solely to protect the Secured Party's interests in the Collateral and shall not impose any duty upon the Secured Party to exercise any such powers, including, without limitation, any collections, calls, conversions, maturities, tenders, or other matters relating to the Collateral. All of the Collateral is hereby assigned to the Secured Party solely as security, and the Secured Party shall have no duty, liability, or obligation whatsoever with respect to any of the Collateral, including, without limitation, the filing of any continuation statements, unless the Secured Party so elects in writing consistent with its rights under this Agreement. Any costs or expenses incurred by the Secured Party in connection with the validity, interpretation, or enforcement of its security interest in the Collateral, or any exercise of its rights or remedies hereunder, shall constitute a part of the Secured Obligations secured by the Collateral. The Secured Party is not a fiduciary of or shall owe or be deemed to owe any fiduciary duty to the Grantor, any affiliate of the Grantor, or any other party asserting claims or rights to the Collateral. Neither the Secured Party nor any of its employees, agents, or attorneys-in-fact shall be liable to the Grantor for any action taken or omitted to be taken by the Grantor under or in connection with this Agreement, or responsible in any manner to any person for any recitals, statements, representations, or warranties made by the Grantor or any officer thereof contained in this Agreement, or for the value, validity, effectiveness, genuineness, enforceability, or sufficiency of this Agreement or for any failure of the Grantor to perform any of the Secured Obligations. The Secured Party shall not be under any obligation to any person to ascertain or to inquire as to the observance or performance of any of the agreement contained in, or conditions of, this Agreement or to inspect the properties or records of the Grantor.

THE NEXT PAGE IS THE SIGNATURE PAGE

5310476v10

CONFIDENTIAL

GM_BURNS_010244

IN WITNESS WHEREOF, the parties hereto have executed this Security Agreement as of the date first above written.

ASARCO INCORPORATED


By: _____
        Douglas McAllister, General Counsel


U.S. DEPARTMENT OF JUSTICE


By: _____
        Kelly A. Johnson, Principal Deputy Assistant
        Attorney General

5310476v10

CONFIDENTIAL                                    GM_BURNS_010245

STATE OF ARIZONA      )
                             ) ss.
COUNTY OF _____  )

        The foregoing instrument was acknowledged before me this ____ day of _____, 2003 by Douglas McAllister, General Counsel of ASARCO Incorporated.

        WITNESS my hand and official seal.

        My commission expires: _____

_____

(SEAL)        Notary Public

5310476v10

CONFIDENTIAL

GM_BURNS_010246

DISTRICT OF COLUMBIA          )
                             ) ss.
WASHINGTON                    )


    The foregoing instrument was acknowledged before me this ____ day of _____, 2003 by Kelly A Johnson, Principal Deputy Assistant Attorney General, U.S. Department of Justice.

    WITNESS my hand and official seal.

    My commission expires: _____


_____
(SEAL)        Notary Public

5110476v10

CONFIDENTIAL

GM_BURNS_010247

*Appendix J*

OPINION OF ERNST & YOUNG

[To be provided by E&Y.]

5310476v10

CONFIDENTIAL

GM_BURNS_010248

## IRREVOCABLE ASSIGNMENT AND ACKNOWLEDGMENT OF ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned ASARCO INCORPORATED, a New Jersey corporation ("Assignor"), hereby irrevocably sells, assigns and transfers to _____, as trustee of the ASARCO Trust ("Assignee"), all of its right, title and interest in and to (a) that certain Promissory Note due May 31, 2010, dated [January __, 2003] in the principal amount of $100,000,000.00 (the "Note"), made by Americas Mining Corporation ("Maker") to Southern Peru Holdings Corporation ("SPHC"), which Note was absolutely and irrevocably assigned to Assignor by SPHC by and through that certain Irrevocable Assignment and Acknowledgement of Assignment executed by Assignor, Maker, Guarantor and SPHC, dated [January ___, 2003] (the "Parent Assignment"), and (b) that certain Guaranty, dated [January __, 2003], made by Grupo México, S.A. de C.V. ("Guarantor") in favor of Southern Peru Holdings Corporation (the "Guaranty"), which Guaranty was absolutely and irrevocably assigned to Assignor by SPHC by and through the Parent Assignment. Copies of the Note and the Guaranty are attached hereto as Exhibits A and B, respectively.

The present sale, assignment and transfer by Assignor of the Note and the Guaranty to Assignee, and the acknowledgment thereof by Maker and Guarantor, are made and delivered pursuant to the terms of that certain Stock Purchase Agreement dated as of [January __, 2003] by and among Maker, Southern Peru Holdings Corporation, SPHC II Incorporated and Assignor.

Assignor, Assignee, Maker and Guarantor hereby acknowledge that Assignor has granted a security interest in all of its right, title and interest in and to the Note and the Guaranty to the United States pursuant to that certain Security Agreement dated as of [January __, 2003] by and between Assignor and the United States (the "Security Agreement"), and Assignee hereby agrees that the present sale, assignment and transfer by Assignor of the Note and the Guaranty to Assignee are subject to the security interest created pursuant to the Security Agreement.

This Irrevocable Assignment and Acknowledgment of Assignment (this "Assignment"), and the rights and obligations of Assignor, Assignee, Maker and Guarantor hereunder, shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of New York (including without limitation Section 5-1401 of the General Obligations Law of the State of New York), without regard to conflicts of laws principles.

5310476v10

CONFIDENTIAL

**IN WITNESS WHEREOF**, each of Assignor and Assignee has caused this Assignment to be executed by its duly authorized officer as of [January __, 2003].

**ASARCO INCORPORATED**, as Assignor

By: _____

Title:_____

_____, **AS TRUSTEE OF THE ASARCO TRUST**, as Assignee

By: _____

Title:_____

5310476v10

CONFIDENTIAL

GM_BURNS_010250

Each of Maker and Guarantor hereby acknowledges and agrees to the terms of this Assignment

**AMERICAS MINING CORPORATION**, as Maker

By: _____
Title:_____

**GRUPO MÉXICO, S.A. DE C.V.**, as Guarantor

By: _____
Title:_____

5310476v10

CONFIDENTIAL

GM_BURNS_010251

*Exhibit A*

[Attach Note B]

5310476v10

CONFIDENTIAL

*Exhibit B*

[Attach Guaranty]

5310476v10

CONFIDENTIAL                                    GM_BURNS_010253

Consent Decree Appendix I

 **ERNST & YOUNG**
CORPORATE FINANCE LLC

■ 725 South Figueroa Street    ■ Phone:  (213) 977-3800
Los Angeles, California 90017    Fax:    (213) 977-3079
www.eycf.com

January 24, 2003

The Board of Directors
ASARCO Incorporated
2575 East Camelback Road
Phoenix, Arizona 85016

Dear Directors:

We understand that ASARCO Incorporated (the "Company") and its wholly-owned subsidiary, Southern Peru Holdings Corporation ("SPHC"), are considering entering into a transaction (the "Transaction") whereby SPHC will sell 43,348,949 shares of Class A Common Stock, par value $.01 per share, of Southern Peru Copper Corporation ("SPCC") (the "Stock Interest") to the Company's parent company, Americas Mining Corporation ("AMC"), for a total consideration of $765.0 million (the "Consideration"). The Stock Interest represents an approximately 54.18% ownership interest in SPCC. We further understand that payment of the Consideration will consist of:

(i)     a cash payment of $500.0 million to be made upon closing the Transaction on January 31, 2003 (the "Closing Date"), which amount will be dividended by SPHC to the Company following consummation of the Transaction;

(ii)    a promissory note to be made by AMC to SPHC providing for payment of $123.25 million in seven equal annual principal installments of $17,607,143 payable on each October 31 beginning October 31, 2003, plus accumulated interest accrued at a rate of 7% per annum (the "7 Year Note");

(iii)   a promissory note to be made by AMC to SPHC providing for payment of $100.0 million in eight equal annual principal installments of $12,500,000 payable on each May 31 beginning May 31, 2003, plus accumulated interest accrued at a rate of 7% per annum (the "8 Year Note"), and further supported by an unconditional continuing guaranty (the "Guaranty") from Grupo Mexico S.A. de C.V. ("Grupo Mexico"), which 8 Year Note and Guaranty will be first irrevocably assigned by SPHC to the Company upon consummation of the Transaction and immediately thereafter will be irrevocably assigned by the Company to the ASARCO Environmental Remediation Trust to be created pursuant to a consent decree to be filed with the United States District Court for the District of Arizona and

(iv)    the cancellation of indebtedness in the principal amount of $41.75 million currently owed by the Company to AMC (the "Debt Cancellation").

CONFIDENTIAL                                    GM_BURNS_010254