**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **ASARCO LLC and SOUTHERN PERU HOLDINGS, LLC,** § § § | | |
| § | **Civil Action No. 1:07-cv-00018** | |
| **Plaintiffs,** § | | |
| **v.** § | **(prior Adversary No. 07-2009)** | |
| § | | |
| **AMERICAS MINING CORPORATION,** § § | | |
| **Defendant.** § § | | |

**ASARCO LLC AND SOUTHERN PERU HOLDINGS, LLC'S RESPONSE**
**TO AMERICAS MINING CORPORATION'S MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................................................. ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ..................................................... 1

STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT ................................................... 1

STANDARD OF REVIEW ............................................................................................................. 2

ARGUMENT ............................................................................................................................. 3

    I.    ASARCO Has Standing to Assert the Fraudulent Transfer Claims in the Complaint. ................................................................................................................ 3

    II.    Plaintiffs Are Not Required to Plead the Particular State Fraudulent Transfer Law Applicable to Their Fraudulent Transfer Claims. ........................... 7

    III.    Plaintiffs' Civil Conspiracy Claim is Valid Because a Parent Corporation Can Conspire With Its Wholly Owned Subsidiary and the Subsidiary's Directors. ............................................................................................................. 10

    IV.    Plaintiffs' Breach of Fiduciary Duty Claim is Valid Because AMC Owed ASARCO and Its Creditors Fiduciary Duties Based on ASARCO's Insolvency. ........................................................................................................... 14

    V.    Applicable State Law Supports Plaintiffs' Claim for Aiding and Abetting a Breach of Fiduciary Duty. ............................................................................... 16

    VI.    Applicable State Law Supports Plaintiffs' Punitive Damages Claim. ................. 19

CONCLUSION .......................................................................................................................... 20

INDEX OF AUTHORITIES

## CASES

*AT&T Corp. v. Walker,*
   No. C 04-5709 FDB, 2006 WL 2927659 (W.D. Wash. Oct. 12, 2006) ............................ 8

*Akande v. Transamerica Airlines, Inc. (In re Transamerica Airlines, Inc.),*
   No. Civ. A. 1039-N, 2006 WL 587846 (Del. Ch. Feb. 28, 2006) ............................ 10, 11

*Albert v. Carovano,*
   851 F.2d 561 (2d Cir. 1988) ............................ 8

*Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.),*
   353 B.R. 324 (Bankr. D.D.C. 2006) ............................ 17

*Albright v. Burns,*
   503 A.2d 386 (N.J. Super. Ct. App. Div. 1986) ............................ 20

*Allied Capital Corp. v. GC Sun Holdings,*
   910 A.2d 1020 (Del. Ch. 2006) ............................ 10, 11, 12

*Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.,*
   No. Civ. A. 19890-NC, 2005 WL 578972 (Del. Ch. Mar. 3, 2005) ............................ 13

*Argus Mgmt. Group v. Rider (In re CVEO Corp.),*
   No. 01-0223 (MFW), 2004 WL 2049316 (Bankr. D. Del. Sept. 13, 2004) ............................ 8

*Atl. Richfield Co. v. Long Trusts,*
   860 S.W.2d 439 (Tex. App.—Texarkana 1993, writ denied) ............................ 11

*Atlantic Richfield Co. v. Misty Products, Inc.,*
   820 S.W.2d 414 (Tex. App.—Houston [14th Dist.] 1991, writ denied) ............................ 11

*Bartholet v. Reishauer A.G.,*
   953 F.2d 1073 (7th Cir. 1992) ............................ 8

*Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
    296 F.3d 164 (3d Cir. 2002) ................................................................... 15

*Begier v. Internal Revenue Serv.*,
    496 U.S. 53 (1990) ............................................................................... 3

*Bell Atlantic Corp. v. Twombly*,
    127 S.Ct. 1955 (2007) .......................................................................... 2

*Bernstein v. Donaldson (In re Insulfoams, Inc.)*,
    184 B.R. 694 (Bankr. W.D. Pa. 1995), *aff'd*, 104 F.3d 547 (3d Cir. 1997) .................... 20

*Blackwell v. Rio Mgmt., Inc. (In re Blackwell)*,
    267 B.R. 732 (Bankr. W.D. Tex. 2001) .......................................................... 5

*Bondi v. Citigroup, Inc.*,
    No. BER-L-10902-04, 2005 WL 975856
    (N.J. Super. Ct. Law Div. Feb. 28, 2005) ................................................. 17, 19

*Brown v. Gen. Elec. Capital Corp. (In re Foxmeyer Corp.)*,
    290 B.R. 229 (Bankr. D. Del. 2003) ........................................................... 4

*Chicago Dist. Council of Carpenters Pension Fund v. Ceiling Wall Sys., Inc.*,
    915 F. Supp. 939 (N.D. Ill. 1996) ............................................................. 7

*Claybrook v. Morris (In re Scott Acquisition Corp.)*,
    344 B.R. 283 (Bankr. D. Del. 2006) ....................................................... 14, 18

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ...................................................................... 11, 12

*Danning v. Lavine*,
    572 F.2d 1386 (9th Cir. 1978) ............................................................... 18

*Elegant Custom Homes, Inc. v. Dusharm (In re Elegant Custom Homes, Inc.)*,
    No. CV 06-2574-PHX-DGC, 2007 WL 1412456 (D. Ariz. May 14, 2007) .................... 6

*Elliott v. Tilton,*
    89 F.3d 260 (5th Cir. 1996) ................................................................. 13

*Exxon Corp. v. Wagner,*
    382 A.2d 45 (N.J. Super. Ct. App. Div. 1977)................................. 12

*Fleet Credit Corp. v. TML Bus Sales, Inc.,*
    65 F.3d 119 (9th Cir. 1995) ........................................................... 3, 4

*Fletcher v. Atex, Inc.,*
    68 F.3d 1451 (2d Cir. 1995) ................................................................ 6

*Fojtik v. First Nat'l Bank of Beeville,*
    752 S.W.2d 669 (Tex. App.—Corpus Christi 1988, writ denied) .................................. 13

*Francis v. United Jersey Bank,*
    432 A.2d 814 (N.J. 1981) ................................................................. 15

*Frost v. Harper,*
    No. Civ. A. C-01-069, 2001 WL 34063533 (S.D. Tex. Mar. 23, 2001) ........................ 13

*Grizzle v. Tex. Commerce Bank, N.A.,*
    38 S.W.3d 265 (Tex. App.—Dallas 2001), *rev'd on other grounds,*
    *Tex. Commerce Bank, N.A. v. Grizzle,* 96 S.W.3d 240 (Tex. 2003) ........................ 11, 12

*High Strength Steel, Inc. v. Lozinski (In re High Strength Steel, Inc.),*
    269 B.R. 560 (Bankr. D. Del. 2001) ................................................. 14, 15

*Hirsch v. Schwartz,*
    209 A.2d 635 (N.J. Super. Ct. App. Div. 1965)................................. 17

*Holloway v. Atl. Richfield Co.,*
    970 S.W.2d 641 (Tex. App.—Tyler 1998, no pet.) ................................. 11, 12

*Holloway v. Walker,*
    765 F.2d 517 (5th Cir. 1985) ........................................................... 3

*Hurst v. Socialist People's Libyan Arab Jamahiriya*,
    474 F. Supp. 2d 19 (D.D.C. 2007) ................................................................ 8, 9

*In re Altman*,
    230 B.R. 6 (Bankr. D. Conn. 1999), *vacated in part on other grounds by*
    *Carroll v. Rafael Galleries, Inc. (In re Altman)*, 254 B.R. 509 (D. Conn. 2000) ............... 4

*In re Consolidated Capital Equities Corp.*,
    143 B.R. 80 (Bankr. N.D. Tex. 1992) ............................................................ 9

*In re Mirant Corp.*,
    326 B.R. 646 (Bankr. N.D. Tex. 2005) ........................................................ 16

*Jaclyn, Inc. v. Edison Bros. Stores, Inc.*,
    406 A.2d 474 (N.J. Super. Ct. Law Div. 1979) ............................................. 20

*Jones v. Greninger*,
    188 F.3d 322 (5th Cir. 1999) ..................................................................... 2

*Judson v. Peoples Bank & Trust Co.*,
    134 A.2d 761 (N.J. 1957) ........................................................................ 17

*Kendall v. Turner (In re Turner)*,
    335 B.R. 140 (Bankr. N.D. Cal. 2005), *modified on reconsideration on other*
    *grounds*, 345 B.R. 674 (N.D. Cal. 2006) ..................................................... 4

*Krol v. Wilcek (In re H. King & Assocs.)*,
    295 B.R. 246 (Bankr. N.D. Ill. 2003) ......................................................... 19

*Levy v. Runnells (In re Landmark Equity Corp.)*,
    83 B.R. 362 (E.D. Va. 1987) ..................................................................... 19

*Lewis v. Knutson*,
    699 F.2d 230 (5th Cir. 1983) ................................................................ 9, 20

*Lindquist v. JNG Corp. (In re Lindell)*,
　　334 B.R. 249 (Bankr. D. Minn. 2005) .............................................................. 4

*Lowrey v. Tex. A & M Univ. Sys.*,
　　117 F.3d 242 (5th Cir. 1997) ..................................................................... 2, 3

*Melder v. Morris*,
　　27 F.3d 1097 (5th Cir. 1994) ....................................................................... 3

*Metro. Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*,
　　762 S.W.2d 646 (Tex. App.—San Antonio 1988, writ dism'd) ...................... 12

*Moratzka v. Morris (In re Senior Cottages of Am., LLC)*,
　　482 F.3d 997 (8th Cir. 2007) ..................................................................... 19

*O'Connell v. Shallo (In re Die Fliedermaus LLC)*,
　　323 B.R. 101 (Bankr. S.D.N.Y. 2005) ......................................................... 18

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*,
　　340 B.R. 510 (Bankr. D. Del. 2006) ......................................................... 8, 9

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.*,
　　80 F. Supp. 2d 129 (S.D.N.Y. 1999) .................................................. 9, 16, 20

*Official Comm. of Unsecured Creditors v. Credit Suisse First Boston*
*(In re Exide Techs., Inc.)*,
　　299 B.R. 732 (Bankr. D. Del. 2003) ............................................................. 9

*Official Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*,
　　326 B.R. 301 (Bankr. D. Del. 2005) ........................................................... 18

*Pardo v. Gonzaba (In re APF Co.)*,
　　308 B.R. 183 (Bankr. D. Del. 2004) ............................................................. 9

*Pauley Petroleum Inc. v. Cont'l Oil Co.*,
　　239 A.2d 629 (Del. 1968) ........................................................................... 4

*Perlman v. Virtua Health, Inc.*,
    No. Civ. 01-0651 (RBK), 2005 WL 1528873 (D.N.J. June 29, 2005) ............................ 6

*Pogostin v. Leighton*,
    523 A.2d 1078 (N.J. Super. Ct. App. Div. 1987) ............................................ 14

*Rolls-Royce Motor Cars, Inc. v. Schudroff*,
    929 F. Supp. 117 (S.D.N.Y. 1996) ...................................................... 7

*Rowland v. Union Hills Country Club*,
    757 P.2d 105 (Ariz. Ct. App. 1988) ................................................... 12

*Rutherford v. Cypress-Fairbanks Indep. Sch. Dist.*,
    No. Civ. A. H-96-3953, 1998 WL 330527 (S.D. Tex. Feb. 25, 1998) ............................ 13

*S. Union Co. v. Sw. Gas Corp.*,
    165 F. Supp. 2d 1010 (D. Ariz. 2001) .................................................. 13

*Shah v. Inter-Continental Hotel Chicago Operating Corp.*,
    314 F.3d 278 (7th Cir. 2002) ......................................................... 8

*Shared Commc'ns Servs. of 1800-80 JFK Boulevard, Inc. v. Bell Atl. Props., Inc.*,
    692 A.2d 570 (Pa. Super. Ct. 1997) .................................................... 12

*Shushany v. Allwaste, Inc.*,
    992 F.2d 517 (5th Cir. 1993) ......................................................... 2

*Smith v. Lounsbury (In re Amberjack Interests, Inc.)*,
    326 B.R. 379 (Bankr. S.D. Tex. 2005) .................................................. 19

*St. James v. Future Fin.*,
    776 A.2d 849 (N.J. Super. Ct. App. Div. 2001) ........................................... 20

*Texas-Ohio Gas, Inc. v. Mecom*,
    28 S.W.3d 129 (Tex. App.—Texarkana 2000, no pet.) ...................................... 14

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006) ........................................................................ 16

*United States ex rel. Wilkens v. N. Am. Constr. Corp.*,
    173 F. Supp. 2d 601 (S.D. Tex. 2001) ............................................................. 6

*VFB LLC v. Campbell Soup Co.*,
    482 F.3d 624 (3d Cir. 2007) .......................................................................... 16

*Wasserman v. Halperin (In re Classica Group)*,
    No. 05-01039, 2006 WL 2818820 (Bankr. D.N.J. Sept. 29, 2006) ................. 15

## STATUTES

11 U.S.C. § 541(a) ................................................................................................. 3

11 U.S.C. § 544 ............................................................................................. 3, 5, 9

11 U.S.C. § 550 ................................................................................................ 3, 5

## MISCELLANEOUS

David B. Young, *Preferences and Fraudulent Transfers*, 895 PLI/Comm 713 (2007) ................. 5

<u>STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING</u>

The Court should deny entirely Americas Mining Corporation's Motion to Dismiss the First Amended Complaint. All of the claims asserted by Plaintiffs ASARCO LLC ("ASARCO") and Southern Peru Holdings, LLC ("Southern Peru Holdings") in the First Amended Complaint (the "Complaint") are legally cognizable and supported by ample factual allegations.

The Complaint seeks to avoid the fraudulent transfer of ASARCO's 54.2% ownership interest in Southern Peru Copper Corporation ("SPCC") to its parent, Americas Mining Corporation ("AMC"), and to hold AMC liable for its wrongful conduct in orchestrating, directing, and effecting the fraudulent transfer. Complaint ¶ 1. The Complaint asserts six legally cognizable causes of action against AMC, which are founded on detailed factual allegations: (1) actual fraudulent transfer; (2) constructively fraudulent transfer; (3) civil conspiracy; (4) breach of fiduciary duty; (5) aiding and abetting a breach of fiduciary duty; and (6) punitive damages. *Id.* ¶¶ 77-117. The Complaint added Southern Peru Holdings as a plaintiff. *Id.* ¶ 6. As alleged in the Complaint, Southern Peru Holdings is a mere instrumentality, agent, and alter ego of ASARCO that was formed at the direction of AMC's parent, Grupo Mexico, S.A. de C.V. ("Grupo Mexico"), for the purpose of owning ASARCO's interest in SPCC and as part of Grupo Mexico and AMC's plan to perpetrate a fraud on ASARCO's creditors.

<u>STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT</u>

**I.      Does ASARCO have standing to set aside the fraudulent transfer of its interest in SPCC to AMC even though at the time of the transfer ASARCO held its shares in SPCC through Southern Peru Holdings?**

      **Yes.** The Court may (and should) pierce Southern Peru Holdings' corporate veil and regard the SPCC shares that were fraudulently transferred as ASARCO's assets.

II.     **Are Plaintiffs required to specify the state whose law applies to their fraudulent transfer claims?**

**No.**  Plaintiffs have no obligation to plead the particular state fraudulent transfer law applicable to their fraudulent transfer claims.  The legal issue of what state's law applies to those claims can be developed through and decided after the discovery process.

III.    **Have Plaintiffs stated a cognizable claim for civil conspiracy?**

**Yes.**  A parent corporation (Grupo Mexico) and its wholly owned subsidiary (AMC) are capable of conspiring for purposes of a common-law civil conspiracy claim, and a corporation (AMC) can conspire with its directors if those directors are acting in their separate capacities as directors of another corporation (ASARCO).

IV.     **Have Plaintiffs stated a cognizable claim for breach of fiduciary duty?**

**Yes.**  Once a wholly owned subsidiary (ASARCO) becomes insolvent, the parent of the subsidiary (AMC) owes fiduciary duties to the subsidiary and its creditors.

V.      **Have Plaintiffs stated a cognizable claim for aiding and abetting a breach of fiduciary duty?**

**Yes.**  Applicable state law recognizes Plaintiffs' claim for aiding and abetting a breach of fiduciary duty, and Plaintiffs' allegations supporting that claim are more than sufficient.

VI.     **Have Plaintiffs stated a cognizable claim for punitive damages?**

**Yes.**  A court may rely on state law to award punitive damages in an adversary proceeding, and applicable state law supports Plaintiffs' punitive damages claim.

<u>STANDARD OF REVIEW</u>

AMC moves to dismiss the Complaint under Rules 9(b) and 12(b)(6) for failure to state a claim.  *See Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993) (holding that a motion to dismiss under Rule 9(b) is one for failure to state a claim).  A motion to dismiss for failure to state a claim is subject to a "strict standard of review," "viewed with disfavor," and "rarely granted."  *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  The Complaint should not be dismissed unless Plaintiffs would not be entitled to relief under any "set of facts or any possible theory that [they] could prove consistent with the allegations in the [C]omplaint."  *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *see Bell Atlantic Corp. v. Twombly*,

127 S.Ct. 1955, 1969 (2007). The Complaint must be liberally construed in Plaintiffs' favor, and all well-pleaded facts must be taken as true. *Lowrey*, 117 F.3d at 247.

An order denying a motion to dismiss for failure to state a claim is not appealable. *Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985). An order granting such a motion is reviewed de novo. *Melder v. Morris*, 27 F.3d 1097, 1099 n.4 (5th Cir. 1994).

<u>**ARGUMENT**</u>

## I.    ASARCO Has Standing to Assert the Fraudulent Transfer Claims in the Complaint.

ASARCO has standing to set aside the fraudulent transfer of its interest in SPCC to AMC even though at the time of the transfer ASARCO held its shares in SPCC through Southern Peru Holdings. The Court may (and should) pierce Southern Peru Holdings' corporate veil and regard the SPCC shares that were fraudulently transferred as ASARCO's assets.

ASARCO brings its fraudulent transfer claims under 11 U.S.C. §§ 544 and 550. To succeed on those claims, ASARCO must establish that it has an interest in the SPCC shares that were fraudulently transferred. *See* 11 U.S.C. § 544(b) ("[T]he trustee may avoid any transfer of an interest of the debtor in property that is voidable under applicable law . . . ."). The phrase "an interest of the debtor in property" is akin to the broad statutory definition of "property of the estate" provided for in 11 U.S.C. § 541(a). *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58–59 (1990). Section 541(a) provides that "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a).

A parent entity such as ASARCO can establish that it has an interest in property that was fraudulently transferred by its subsidiary where, as here, there are state law grounds for disregarding the corporate form. *See, e.g., Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 120 (9th Cir. 1995) (noting that for debtor's creditors to avoid fraudulent transfer made by debtor's wholly owned corporation, "they had to penetrate two layers of fraud, the alter ego

corporation, and the fraudulent conveyance"); *Kendall v. Turner (In re Turner)*, 335 B.R. 140, 147 (Bankr. N.D. Cal. 2005) (holding that company created by debtor with no business purpose, but simply to shield assets from creditors, was debtor's alter ego, and, therefore, trustee could avoid fraudulent transfer made by company), *modified on reconsideration on other grounds*, 345 B.R. 674 (N.D. Cal. 2006); *Lindquist v. JNG Corp. (In re Lindell)*, 334 B.R. 249, 253 (Bankr. D. Minn. 2005) (holding that corporate veil could be pierced for purpose of avoiding sale of note by debtors' wholly owned corporation).[1]

Adopting a per se rule against veil piercing theories in fraudulent transfer cases such as this one would reward fraudulent conduct and lead to inequitable results. If a parent corporation or its creditors could never set aside a fraudulent transfer by a subsidiary of the parent, corporations could carry out fraudulent transfers with impunity by establishing sham corporations to hold assets of the parent and execute the transfers. *See Fleet Credit*, 65 F.3d at 120 ("[I]t is clear beyond cavil that an inequitable result would follow were the Court to permit [the debtor] to shield himself with [his alter ego's] corporate form."); *Turner*, 335 B.R. at 147 ("[A]n entity or series of entities may not be created with no business purpose and personal assets transferred to them with no relationship to any business purpose, simply as a means of shielding them from creditors. Under such circumstances, the law views the entity as the alter ego of the individual debtor and will disregard it to prevent injustice."); *Lindell*, 334 B.R. at 253 ("It would be fundamentally unfair to find that the [fraudulently transferred note] was not held

---

[1]   *See also Brown v. Gen. Elec. Capital Corp. (In re Foxmeyer Corp.)*, 290 B.R. 229, 234 (Bankr. D. Del. 2003) (stating that debtor and its subsidiary could be combined for purposes of trustee's fraudulent transfer claim through application of the doctrine of piercing the corporate veil, but concluding that trustee had failed to prove doctrine's elements); *In re Altman*, 230 B.R. 6, 11–16 (Bankr. D. Conn. 1999) (piercing corporate veil of debtor's alter egos to set aside fraudulent transfers), *vacated in part on other grounds by Carroll v. Rafael Galleries, Inc. (In re Altman)*, 254 B.R. 509 (D. Conn. 2000); *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968) ("There is, of course, no doubt that upon a proper showing corporate entities as between parent and subsidiary may be disregarded and the ultimate party in interest, the parent, be regarded in law and fact as the sole party in a particular transaction.").

4

by [the alter ego corporation] solely for the benefit of the debtors.").

AMC cites only one secondary authority and one case to support its argument that ASARCO lacks standing to assert the fraudulent transfer claims in the Complaint.  Motion to Dismiss at 7 (citing David B. Young, *Preferences and Fraudulent Transfers*, 895 PLI/Comm 713 (2007), and *Blackwell v. Rio Mgmt., Inc. (In re Blackwell)*, 267 B.R. 732 (Bankr. W.D. Tex. 2001)).  Neither source asserts that a transfer of a subsidiary's assets may never be recovered for the benefit of the parent, as AMC contends.  Motion to Dismiss at 7.  Instead, one source explicitly states and the other implicitly recognizes that a court may pierce a subsidiary's corporate veil and regard the assets fraudulently transferred as the parent's own assets where, as here, the subsidiary was formed as a sham to perpetrate a fraud on the parent's creditors.

In support of its standing argument, AMC quotes just one sentence from the Practicing Law Institute article.  *Id.*  AMC omits other, key sentences that invalidate its standing argument. The article states:

> As a general rule, corporate forms are observed in bankruptcy unless there are clear state law grounds for piercing the corporate veil.  Consequently, courts have held that a preferential or fraudulent transfer of a corporation's assets may not be recovered for the benefit of a shareholder or the shareholder's estate. . . .

> Matters may be different when there are state law grounds for disregarding the corporate form.  A debtor may not create a business entity that is merely an extension of the debtor and that has no purpose except to shield the debtor's assets and then cause that entity to make fraudulent or preferential transfers.  In such a case, courts will pierce the veil and regard the property transferred as the debtor's own assets.  The property or its value may then be recovered for the benefit of the debtor's estate.

Young, *supra*, at 747–49 (citations omitted; emphasis added).

The lone case cited by AMC also does not support its standing argument.  In *Blackwell*, the liquidator of I.G. Services sought, under §§ 544 and 550, to set aside a transfer of stock from Rio Management to two defendants as fraudulent as to I.G. Services' creditors.  *Blackwell*, 267

B.R. at 734. In dicta and in reliance on the Practicing Law Institute article, the court questioned I.G. Services' standing to assert its fraudulent transfer claim because neither I.G. Services nor its unsecured creditors were creditors of Rio Management. *Id.* at 741 n.12. The court specifically noted, however, that I.G. Services had not asserted a veil piercing theory as between it and Rio Management. *Id.*

Unlike I.G. Services, ASARCO has alleged that the Court should disregard the corporate form between it and its wholly owned subsidiary, Southern Peru Holdings. Complaint ¶ 6. For that reason, the Court should reject AMC's standing argument.

AMC's contention that Plaintiffs' veil piercing allegations are insufficient is also without merit. Motion to Dismiss at 7. Rule 9(b) is inapplicable to those allegations for two reasons. First, Plaintiffs are not proceeding on the theory that Southern Peru Holdings, itself, committed fraud, but rather that it is the vehicle through which Grupo Mexico and AMC carried out the fraudulent transfer. *See United States ex rel. Wilkens v. N. Am. Constr. Corp.*, 173 F. Supp. 2d 601, 643 n.34 (S.D. Tex. 2001) ("Rule 9(b) is not applicable to the alter ego when fraud has properly been alleged against the principal.") (citing *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1351 n.23 (2d Cir. 1974)). Second, a veil piercing theory does not require any showing of fraud. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456–57 (2d Cir. 1995) (stating that a showing of fraud is not a requirement to prevail on an alter ego claim under Delaware law); *Elegant Custom Homes, Inc. v. Dusharm (In re Elegant Custom Homes, Inc.)*, No. CV 06-2574-PHX-DGC, 2007 WL 1412456, at *4 (D. Ariz. May 14, 2007) (slip copy) (holding that, under Arizona law, a showing of fraud is not required to pierce the corporate veil); *Perlman v. Virtua Health, Inc.*, No. Civ. 01-0651 (RBK), 2005 WL 1528873, at *1 (D.N.J. June 29, 2005) (unpublished opinion) (applying New Jersey law) ("Though it is true that [Plaintiff] does not allege fraudulent

conduct in connection with this alleged alter ego relationship, fraud is not the only basis on which to pierce the corporate veil."); *see also Chicago Dist. Council of Carpenters Pension Fund v. Ceiling Wall Sys., Inc.*, 915 F. Supp. 939, 942–43 (N.D. Ill. 1996) ("[B]ecause fraud is not a prerequisite to piercing the corporate veil, Rule 9(b) does not apply to alter ego allegations."); *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 122 (S.D.N.Y. 1996) ("[B]ecause a veil piercing claimant can prevail without proving fraud, plaintiff's alter ego allegations will not be held to the particularity requirement of [Rule 9(b)].").

Plaintiffs' veil piercing allegations are sufficient under the liberal pleading standards of Rules 8(a) and 12(b)(6).  Plaintiffs have alleged "the fact of complete domination and the use of that domination to commit a wrong against creditors."  *Rolls-Royce*, 929 F. Supp. at 122.  The Complaint alleges that "Southern Peru Holdings had no business other than owning the SPCC shares, and was, for all purposes, a mere instrumentality, agent, and alter ego of ASARCO"; that "ASARCO and Southern Peru Holdings operated as a single-business enterprise"; and that "Southern Peru Holdings was formed as a sham to perpetrate a fraud on ASARCO's creditors, namely, the transfer of ASARCO's 54.2% ownership interest in SPCC to AMC."  Complaint ¶ 6. Considering that the determination of whether to pierce the corporate veil is a fact-specific inquiry and that discovery has just begun, these allegations are sufficient to allow Plaintiffs to pursue their veil piercing theory.  *See Rolls-Royce*, 929 F. Supp. at 122 (holding that allegations that one corporation dominated, controlled, and operated another corporation as its agency, instrumentality, and alter ego, and that the second corporation was used to hide assets from creditors, were sufficient).

## II.    Plaintiffs Are Not Required to Plead the Particular State Fraudulent Transfer Law Applicable to Their Fraudulent Transfer Claims.

Plaintiffs have no obligation to plead the particular state fraudulent transfer law

applicable to their fraudulent transfer claims.  Most courts addressing the issue have held that a complaint need not identify a particular state's fraudulent transfer law to survive dismissal under Rule 9(b).  *See, e.g., AT&T Corp. v. Walker*, No. C 04-5709 FDB, 2006 WL 2927659, at *4 (W.D. Wash. Oct. 12, 2006); *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 525–26 (Bankr. D. Del. 2006); *Argus Mgmt. Group v. Rider (In re CVEO Corp.)*, No. 01-0223 (MFW), 2004 WL 2049316, at *3 (Bankr. D. Del. Sept. 13, 2004).

These decisions are supported by the Federal Rules of Civil Procedure.  There is "no support in the Federal Rules for the suggestion that the pleader must cite to a particular statute to survive dismissal." *Oakwood Homes*, 340 B.R. at 526; *see Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this.  To the contrary, the rules discourage it."); *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim."); *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 27 (D.D.C. 2007) (rejecting argument that plaintiffs failed to plead claims with particularity because they failed to specify the particular state law on which they relied).

The determination of what state's law applies to Plaintiff's fraudulent transfer claims is best left to the end of discovery, when the parties and the Court have access to all the facts needed to make informed choice-of-law decisions.  *See Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) (holding that plaintiffs are not required to identify the federal or state law in a complaint, which may be exposed through discovery);

*Oakwood Homes*, 340 B.R. at 526 (stating that "the Court [was] content to allow state law particulars to be developed in the discovery process"). The decision regarding what state's law applies to Plaintiffs' fraudulent transfer claims is based on several factors that can be uncovered only through discovery. *See In re Consolidated Capital Equities Corp.*, 143 B.R. 80, 84-85 (Bankr. N.D. Tex. 1992) (applying the most significant relationship test, which is a multi-factor, contacts test, to determine which state's law applied to fraudulent transfer claim brought under 11 U.S.C. § 544).[2]

AMC cites only one case directly on point to support its argument that Plaintiffs are required to plead the particular state law under which the transfer of ASARCO's interest in SPCC to AMC was fraudulent. Motion to Dismiss at 8–9 (citing *Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.)*, 299 B.R. 732 (Bankr. D. Del. 2003)). In *Exide*, the court provided no analysis to support its holding, and it readily granted the plaintiffs leave to amend their complaint. *Exide*, 299 B.R. at 749.

In the bankruptcy context, Rule 9(b) should be "interpreted liberally." *Pardo v. Gonzaba (In re APF Co.)*, 308 B.R. 183, 188 (Bankr. D. Del. 2004). AMC does not argue that the factual allegations in the Complaint that form the basis of Counts I and II are insufficient to put it on notice of the specific misconduct alleged, and the legal issue of what state's law applies to Plaintiffs' fraudulent transfer claims can be developed through and decided after the discovery process. *See Hurst*, 474 F. Supp. 2d at 27 ("Choice of law is a legal determination that the court will make under its choice-of-law rules.").

---

[2] By contrast, the decision regarding what state's law applies to Plaintiffs' claims for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and punitive damages is readily determinable because those claims are governed by the law of the state of incorporation. *See Lewis v. Knutson*, 699 F.2d 230, 235 (5th Cir. 1983) (holding that a claim for breach of fiduciary duty is governed by the law of the state of incorporation); *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.*, 80 F. Supp. 2d 129, 135 (S.D.N.Y. 1999) (holding that claim for aiding and abetting breach of fiduciary duty is governed by law of state of incorporation).

III.    **Plaintiffs' Civil Conspiracy Claim is Valid Because a Parent Corporation Can Conspire With Its Wholly Owned Subsidiary and the Subsidiary's Directors.**

Plaintiffs' allegations that AMC conspired with Grupo Mexico and ASARCO's directors to accomplish the fraudulent transfer of the SPCC stock state a valid civil conspiracy claim. AMC's arguments that a parent corporation cannot conspire with its wholly owned subsidiary and that a corporation cannot conspire with its officers and directors who are not acting on behalf of the corporation should be rejected.

A parent corporation and a wholly owned subsidiary are capable of conspiring for purposes of a common law civil conspiracy claim. *Allied Capital Corp. v. GC Sun Holdings*, 910 A.2d 1020, 1037 (Del. Ch. 2006). *Allied Capital* rejected the argument on which AMC relies and the Delaware case which AMC cites. *Id.* at 1037 n.37 (disagreeing with *Akande v. Transamerica Airlines, Inc. (In re Transamerica Airlines, Inc.)*, No. Civ. A. 1039-N, 2006 WL 587846, at *7 (Del. Ch. Feb. 28, 2006), and noting that the *Akande* court "devoted little attention" to this issue). The *Allied Capital* court noted that Delaware's "corporate law is largely built on the idea that the separate legal existence of corporate entities should be respected—even when those separate corporate entities are under common ownership and control." *Id.* at 1038. Moreover, that Delaware law permits similar claims against parent corporations and their subsidiaries—including aiding and abetting a breach of fiduciary duty—undermines AMC's argument that a wholly owned subsidiary cannot conspire with its parent. *Id.* at 1039. "The fact that a corporation owns all of the equity of another corporation and that both corporations have the same directors and officers does not mean the separate corporations cannot collaborate on a common illegal scheme." *Id.* at 1044. The *Allied Capital* court could find no compelling reason to justify AMC's proposed per se rule that a parent corporation can never conspire with its wholly owned subsidiary, noting that society has no interest in "protecting the freedom of a

parent corporation to structure a transaction with a subsidiary that will impoverish the subsidiary at the expense of the subsidiary's other constituencies" while enriching the parent. *Id.* at 1042. Plaintiffs have alleged precisely the scenario described by *Allied Capital*: AMC and Grupo Mexico structured the SPCC transaction in a manner that impoverished ASARCO and injured its creditors.

AMC's two contrary authorities are not persuasive. Both rely, at least indirectly, on a mechanical application of *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), which announced a narrow rule intended solely for the antitrust context. *See Allied Capital*, 910 A.2d at 1041 (referring to *Copperweld*'s import in the civil conspiracy context as "insubstantial"). *Copperweld* held that a parent corporation and "its wholly owned subsidiary . . . are incapable of conspiring with each other <u>for purposes of § 1 of the Sherman Act.</u>" *Copperweld*, 467 U.S. at 777 (emphasis added). AMC's authorities wrongly extend *Copperweld*'s limited holding—without explanation—to the civil conspiracy context. *Akande* perfunctorily dismisses the antitrust distinction in a footnote without discussion. *Akande*, 2006 WL 587846, at *7 n.26. Similarly, *Atlantic Richfield Co. v. Misty Products, Inc.*, 820 S.W.2d 414, 420 (Tex. App.—Houston [14th Dist.] 1991, writ denied), contains only a conclusory statement and a citation to *Copperweld*. The *Misty Products* court appears to be the only Texas court to apply *Copperweld* to civil conspiracy claims. All of the other Texas courts that have considered the issue have recognized that a civil conspiracy claim may be brought against a parent and its wholly owned subsidiary. *See, e.g., Grizzle v. Tex. Commerce Bank, N.A.*, 38 S.W.3d 265, 284 (Tex. App.—Dallas 2001), *rev'd on other grounds, Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 243 (Tex. 2003); *Holloway v. Atl. Richfield Co.*, 970 S.W.2d 641, 644 (Tex. App.—Tyler 1998, no pet.); *Atl. Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 447 (Tex.

App.—Texarkana 1993, writ denied); *Metro. Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*, 762 S.W.2d 646, 652 (Tex. App.—San Antonio 1988, writ dism'd).

These Texas decisions, like *Allied Capital*, rely on a careful analysis of the issue instead of the rote application of *Copperweld*'s antitrust rule. *Metropolitan Life* notes the distinction between the common law theories of conspiracy and alleged violations of the Sherman Act, emphasizing that "[u]nder the common law, a parent corporation and its subsidiary are separate legal entities." *Metro. Life*, 762 S.W.2d at 652; *see Holloway*, 970 S.W.2d at 644 (recognizing distinction between *Copperweld* and common law conspiracy). Because a parent and wholly owned subsidiary are each deemed to have an independent existence, the two entities are capable of conspiring. *Grizzle*, 38 S.W.3d at 284 ("Notwithstanding the fact that a parent corporation owns the entire capital stock of the subsidiary corporation, the two corporations are separate legal entities, and whatever may have been the motive leading to their separate existence, they can only be regarded as separate entities for the purpose of legal proceedings." (quotations omitted)); *see also Shared Commc'ns Servs. of 1800-80 JFK Boulevard, Inc. v. Bell Atl. Props., Inc.*, 692 A.2d 570, 573 (Pa. Super. Ct. 1997) (denying motion to dismiss conspiracy claims brought against sister and parent corporations).

Next, AMC argues that "a corporation cannot conspire with its employees for purposes of the tort of civil conspiracy." Motion to Dismiss at 10. While AMC has correctly identified half of the general rule, it has omitted the most important part: the requirement that the corporate agent be <u>acting on behalf of the corporation</u>. *Rowland v. Union Hills Country Club*, 757 P.2d 105, 110 (Ariz. Ct. App. 1988) ("A corporation cannot conspire with . . . its directors <u>if they are acting in the corporation's behalf</u>." (emphasis added)); *Exxon Corp. v. Wagner*, 382 A.2d 45, 48 (N.J. Super. Ct. App. Div. 1977) ("There can be no . . . combination or conspiracy by a

corporation . . . with its own officers, agents or employees, <u>who are performing their usual job of formulating and carrying out its managerial policy</u>." (emphasis added)); *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1016 (D. Ariz. 2001) ("[A]gents and employees of a corporation cannot conspire with their corporate principal or employer <u>where they act in their official capacities on behalf of the corporation</u> . . . ." (emphasis added; quotations omitted)).

The rationale for the rule that civil conspiracy may not be alleged against a corporate agent acting on behalf of the corporation "is that the acts of a corporation's agents are deemed to be acts of the corporation itself." *Fojtik v. First Nat'l Bank of Beeville*, 752 S.W.2d 669, 673 (Tex. App.—Corpus Christi 1988, writ denied); *see Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, No. Civ. A. 19890-NC, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005) ("[I]t is the general rule that the acts of the agent are the acts of the corporation."). That rationale does not apply where, as here, the AMC/ASARCO directors were not acting as AMC directors, but rather as ASARCO directors when they voted to approve the fraudulent transfer of ASARCO's interest in SPCC. *Fojtik* is instructive. There, the court held that an allegation of conspiracy against a bank and one of its directors was not barred. *Fojtik*, 752 S.W.2d at 673. The court stated that "it was conceivable that [the director], if he had in fact conspired with the bank, did so in his capacity not as a corporate agent but as an independent equipment dealer." *Id.* The cases cited by AMC did not involve an agent acting in a separate capacity.[3]

It is clear under *Fojtik* that Plaintiffs have alleged a valid conspiracy between AMC and ASARCO's directors. Like the director in *Fojtik*, the individuals here were agents of both AMC

---

[3]  *See Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996) (finding no evidence that individuals were acting other than for corporation); *Frost v. Harper*, No. Civ. A. C-01-069, 2001 WL 34063533, at *1 (S.D. Tex. Mar. 23, 2001) (involving management employees that were clearly acting for corporation when they fired plaintiff); *Rutherford v. Cypress-Fairbanks Indep. Sch. Dist.*, No. Civ. A. H-96-3953, 1998 WL 330527, at *1 (S.D. Tex. Feb. 25, 1998) (involving school officials who acted on behalf of school to prevent student from playing in high school baseball game).

and ASARCO. Plaintiffs have specifically alleged that these individuals were acting as directors of ASARCO when they conspired with AMC. Complaint ¶ 97. Because the directors were acting on behalf of ASARCO, they were not acting in their capacities as employees or directors of AMC. *See Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 138 n.10 (Tex. App.—Texarkana 2000, no pet.) (finding that corporate agents were capable of conspiring when not acting in corporate capacity). That ASARCO's directors were also AMC employees and directors is not the focus of the legal inquiry for the conspiracy claim, and Plaintiffs have properly alleged a claim against AMC for conspiring with ASARCO's directors to accomplish the fraudulent transfer.

## IV. Plaintiffs' Breach of Fiduciary Duty Claim is Valid Because AMC Owed ASARCO and Its Creditors Fiduciary Duties Based on ASARCO's Insolvency.

Plaintiffs have properly alleged that AMC owed a fiduciary duty to both ASARCO and its creditors and that it breached that duty by forcing ASARCO to fraudulently transfer the SPCC stock to AMC. AMC's challenge to the existence of a fiduciary duty should be rejected.

Delaware law is clear:[4] "[C]reditors of an insolvent corporation are owed fiduciary duties." *Claybrook v. Morris (In re Scott Acquisition Corp.)*, 344 B.R. 283, 288 (Bankr. D. Del. 2006). The controlling shareholder of an insolvent company owes a fiduciary duty to the company's creditors to maximize the value of the corporation's assets for payment of creditors. *High Strength Steel, Inc. v. Lozinski (In re High Strength Steel, Inc.)*, 269 B.R. 560, 569 (Bankr. D. Del. 2001). In *High Strength Steel*, the court acknowledged this duty and denied a motion to dismiss, concluding that the plaintiff had alleged actions taken by the controlling shareholder

---

[4]  Although New Jersey law applies to this claim, Plaintiffs agree that New Jersey courts have not considered the specific issues presented and that the Court may properly refer to Delaware law for guidance. When presented with a novel corporate law issue, New Jersey courts consult Delaware law. *See, e.g., Pogostin v. Leighton*, 523 A.2d 1078, 1083 (N.J. Super. Ct. App. Div. 1987) ("As the issue involved herein is one of corporate law, an appropriate source of reference is the case law of Delaware.").

that, if established, would allow the court to find that it had breached its duty to maximize the value of the corporation for the benefit of creditors. *High Strength Steel*, 269 B.R. at 569. Here, Plaintiffs have properly alleged that AMC—ASARCO's controlling shareholder—breached its fiduciary duty by causing ASARCO to fraudulently transfer its interest in SPCC to AMC. Complaint ¶ 104. That allegation is sufficient for the court to deny the motion to dismiss, as in *High Strength Steel*, because ASARCO has properly alleged that AMC failed to maximize the value of ASARCO for the benefit of ASARCO's creditors.

The duty imposed on a controlling shareholder of an insolvent corporation is no different than the duty imposed on an insolvent corporation's directors. Like the controlling shareholder, the corporation's directors do not owe a fiduciary duty to the corporation's creditors when the corporation is solvent. *See Francis v. United Jersey Bank*, 432 A.2d 814, 824 (N.J. 1981) ("While directors may owe a fiduciary duty to creditors also, that obligation generally has not been recognized in the absence of insolvency."). Once the corporation becomes insolvent, however, the directors assume fiduciary duties to the corporation's creditors. *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 (3d Cir. 2002) (stating that directors assume fiduciary duties to corporation's creditors when it becomes insolvent); *Wasserman v. Halperin (In re Classica Group)*, No. 05-01039, 2006 WL 2818820, at *6 (Bankr. D.N.J. Sept. 29, 2006) ("This Court is in accord with a recent trend in the law, which expands the fiduciary duties of a corporate director or officer to include not only equity holders, but creditors as well, when a corporation is in the 'zone of insolvency.'"). The court in *Scott Acquisition* recognized that "upon insolvency directors of a wholly-owned subsidiary owe fiduciary duties to the subsidiary <u>and its creditors</u>." 334 B.R. at 290 (emphasis added). Indeed,

> It would be absurd to hold that the doctrine that directors owe special duties after insolvency is inapplicable when the insolvent

> corporation is a subsidiary of another corporation. That is
> precisely when a director must be most acutely sensitive to the
> needs of a corporation's separate community of interests, including
> both the parent shareholder and the corporation's creditors.

*Id.* at 287 (quotation and citation omitted). For the same reason, it would be absurd to hold that a controlling shareholder does not owe a fiduciary duty to creditors of an insolvent, wholly owned subsidiary. Although the controlling shareholder may not owe a fiduciary duty to creditors of a solvent corporation, that duty arises when the corporation is insolvent. Because the duties owed to creditors are derivative of the duties owed to the corporation, the controlling shareholder also owes a fiduciary duty to the corporation. *See id.* at 289.

The primary authority on which AMC relies itself recognizes that a parent owes a subsidiary a fiduciary duty when the subsidiary has minority shareholders. *See Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 192 n.66 (Del. Ch. 2006). Upon insolvency, the law recognizes the interests of creditors in place of minority shareholders. *See In re Mirant Corp.*, 326 B.R. 646, 651 (Bankr. N.D. Tex. 2005). The interests of creditors do not cease to exist simply because an insolvent corporation is a wholly owned subsidiary. Because ASARCO was insolvent, AMC owed ASARCO and its creditors a fiduciary duty to maximize the value of the corporation, and Plaintiffs' claims should not be dismissed.

## V.     Applicable State Law Supports Plaintiffs' Claim for Aiding and Abetting a Breach of Fiduciary Duty.

Applicable state law recognizes Plaintiffs' claim against AMC for aiding and abetting a breach of fiduciary duty, and Plaintiffs' allegations supporting that claim are more than sufficient to survive AMC's motion to dismiss.

Plaintiffs' claim for aiding and abetting a breach of fiduciary duty is governed by New Jersey law because ASARCO was a New Jersey corporation at the time relevant to Plaintiffs' claim. *See Investcorp*, 80 F. Supp. 2d at 135. New Jersey law recognizes such a claim. *VFB*

*LLC v. Campbell Soup Co.*, 482 F.3d 624, 634 (3d Cir. 2007); *Judson v. Peoples Bank & Trust Co.*, 134 A.2d 761, 767 (N.J. 1957); *Hirsch v. Schwartz*, 209 A.2d 635, 640 (N.J. Super. Ct. App. Div. 1965).

To state a claim for aiding and abetting a breach of fiduciary duty, Plaintiffs must plead four elements: (1) the existence of a fiduciary relationship; (2) a breach of the fiduciary's duty; (3) knowing participation in that breach by AMC; and (4) damages proximately caused by the breach. *See Bondi v. Citigroup, Inc.*, No. BER-L-10902-04, 2005 WL 975856, at *18 (N.J. Super. Ct. Law Div. Feb. 28, 2005). AMC does not challenge Plaintiffs' allegations regarding the third and fourth elements, and its contention that Plaintiffs have failed to sufficiently plead the first and second elements is unfounded.

Plaintiffs have sufficiently pleaded the existence of a fiduciary relationship. If, as alleged in the Complaint, ASARCO was insolvent at the time of the fraudulent transfer of its interest in SPCC to AMC, Grupo Mexico and ASARCO's directors owed fiduciary duties to ASARCO and its creditors. *See supra* Part IV (demonstrating that a parent corporation owes fiduciary duties to an insolvent wholly owned subsidiary and its creditors); *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.)*, 353 B.R. 324, 342 n.24 (Bankr. D.D.C. 2006) (stating that once a subsidiary corporation is insolvent, directors of the subsidiary owe fiduciary duties to the subsidiary and its creditors); *Scott Acquisition*, 344 B.R. at 290 ("[U]pon insolvency directors of a wholly-owned subsidiary owe fiduciary duties to the subsidiary and its creditors.").

AMC argues, without citation or further explanation, that Plaintiffs' aiding and abetting claim should be dismissed because the Complaint pleads insolvency in a "conclusory fashion." Motion to Dismiss at 17. Not so. The general allegations in the Complaint regarding ASARCO's insolvency at the time of the fraudulent transfer are sufficient to show that Grupo

Mexico and ASARCO's directors owed fiduciary duties to ASARCO and its creditors. Complaint ¶¶ 7, 69, 88, 102, 107; *see Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978) ("[A] general allegation of insolvency in a complaint constitutes an allegation of an ultimate fact and is therefore a sufficient pleading."); *Official Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*, 326 B.R. 301, 307 (Bankr. D. Del. 2005) ("[A]llegations of insolvency in general terms comply with Rule 8 and there is no need to allege the particulars."); *O'Connell v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101, 106 (Bankr. S.D.N.Y. 2005) (holding that trustee's allegation "that the Debtor was insolvent" was "adequate pleading").

Even if more specific allegations of insolvency were needed, the Complaint is replete with specific facts showing that ASARCO was insolvent at the time of the fraudulent transfer. For example, the Complaint alleges the following:

- ASARCO's Vice President of Finance and Administration testified in March 2002 that ASARCO's financial condition was "distressed," that it was "in default on most of [its] major loans," that it was "over-leveraged and [had] a liquidity problem," and that it was in arrears $138 million.  Complaint ¶ 33.

- ASARCO's financial advisors, Houlihan Lokey Howard & Zukin, refused to provide a solvency opinion to ASARCO in 2002. *Id.* ¶ 35.

- Less than two months before the fraudulent transfer, ASARCO's restructuring counsel, Squire Sanders & Dempsey L.L.P., advised ASARCO that ASARCO was within the zone of insolvency, if not actually insolvent. *Id.* ¶ 53.

- In a letter written just over a month before the fraudulent transfer, one of ASARCO's independent directors noted evidence of ASARCO's financial distress. *Id.* ¶ 57.

Plaintiffs have also adequately pleaded a breach of fiduciary duty. The Complaint alleges that Grupo Mexico and ASARCO's directors breached their fiduciary duties of good faith and loyalty by allowing AMC to loot ASARCO's most valuable asset for its own benefit and to the detriment of ASARCO and its creditors. Complaint ¶¶ 64, 109; *see In re Scott Acquisition*, 344 B.R. at 288 ("[T]he directors of an insolvent subsidiary [cannot], with impunity, permit it to be plundered for the benefit of its parent corporation." (quotations omitted)); *see also Moratzka v. Morris (In re Senior Cottages of Am., LLC)*, 482 F.3d 997, 1007 (8th Cir. 2007) (holding that allegations that manager stripped debtor of its assets by causing debtor to transfer substantially all of its assets to related party for less than reasonably equivalent value, and that defendants assisted manager by advising debtor to transfer assets, were sufficient to state claim for aiding and abetting breach of fiduciary duty); *Bondi*, 2005 WL 975856, at *18 (denying motion to dismiss claim for aiding and abetting a breach of fiduciary duty where plaintiff "asserted unambiguous claims of breach of fiduciary duties" and "articulated defendants' participation").

## VI.    Applicable State Law Supports Plaintiffs' Punitive Damages Claim.

Plaintiffs have stated a cognizable claim for punitive damages. The Court may (and should) award Plaintiffs punitive damages under applicable state law.

Imposition of punitive damages lies within the Court's discretion. *Levy v. Runnells (In re Landmark Equity Corp.)*, 83 B.R. 362, 382 (E.D. Va. 1987). Where, as here, the Bankruptcy Code "does not specifically provide for an award of punitive damages, the Court may award such by application of state law." *Id.* at 382; *see Smith v. Lounsbury (In re Amberjack Interests, Inc.)*, 326 B.R. 379, 391 (Bankr. S.D. Tex. 2005) ("A bankruptcy court may rely on state law to award exemplary damages where the Code does not specifically allow such measures."). Relying on state law, courts have awarded punitive damages in adversary proceedings involving egregious behavior such as AMC's malicious conduct toward ASARCO's creditors. *See, e.g., Landmark*,

83 B.R. at 375–77 (affirming award of punitive damages under state law where "defendants took, moved property around, favored themselves, and bled the company to death for their own selves' sake"); *Amberjack*, 326 B.R. at 391–95 (awarding punitive damages under state law against fiduciaries of debtor); *Krol v. Wilcek (In re H. King & Assocs.)*, 295 B.R. 246, 276–77 (Bankr. N.D. Ill. 2003) (same); *Bernstein v. Donaldson (In re Insulfoams, Inc.)*, 184 B.R. 694, 708-09 (Bankr. W.D. Pa. 1995) (same), *aff'd*, 104 F.3d 547, 556–57 (3d Cir. 1997).

Plaintiffs' punitive damages claim is based, in part, upon their state law claims for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty, which are governed by New Jersey law because ASARCO was a New Jersey corporation at the time of the fraudulent transfer.  *See Lewis*, 699 F.2d at 235; *Investcorp*, 80 F. Supp. 2d at 135.  Punitive damages are available under New Jersey law for the breach of a fiduciary duty or aiding and abetting such a breach.  *St. James v. Future Fin.*, 776 A.2d 849, 867 (N.J. Super. Ct. App. Div. 2001) (approving punitive damages award for breach of fiduciary duty claim); *Albright v. Burns*, 503 A.2d 386, 391 (N.J. Super. Ct. App. Div. 1986) (stating that "punitive damages may be awarded for the violation of a fiduciary duty"); *Jaclyn, Inc. v. Edison Bros. Stores, Inc.*, 406 A.2d 474, 491–93 (N.J. Super. Ct. Law Div. 1979) (finding that counter-defendant knowingly aided and abetted a breach of fiduciary duty, and that punitive damages were warranted because its conduct "amounted to an intentional and deliberate invasion of the fiduciary relationship").

## CONCLUSION

Plaintiffs respectfully request that the Court deny entirely the motion to dismiss.

Dated: June 7, 2007                                    Respectfully submitted,

| | |
|---|---|
| **BAKER BOTTS L.L.P.** | Facsimile:      214.661.6503 |
| | Email: *jack.kinzie@bakerbotts.com* |
| */s/ G. Irvin Terrell* | *fernando.rodriguez@bakerbotts.com* |
| G. Irvin Terrell | *eric.soderlund@bakerbotts.com* |
| Attorney-in-Charge | *tom.obrien@bakerbotts.com* |
| State Bar No. 19794500 | |
| Southern District of Texas Bar No. 10004 | **JORDAN,      HYDEN,      WOMBLE** |
| Samuel Cooper | **CULBRETH & HOLZER,  P.C.** |
| State Bar No. 00792427 | |
| Southern District of Texas Bar No. 19954 | Shelby A. Jordan |
| Michael Massengale | State Bar No. 11016700 |
| State Bar No. 24003704 | Suite 900, Bank of America |
| Southern District of Texas Bar No. 23746 | 500 North Shoreline |
| Rebeca Huddle | Corpus Christi, Texas 78471 |
| State Bar No. 24012197 | Telephone:   361.884.5678 |
| Southern District of Texas Bar No. 25827 | Facsimile:    361.888.5555 |
| 910 Louisiana Street | Email: *sjordan@jhwclaw.com* |
| One Shell Plaza | |
| Houston, Texas  77002-4995 | and |
| Telephone:   713.229.1231 | |
| Facsimile:    713.229.2831 | **JORDAN,      HYDEN,      WOMBLE** |
| Email: *irv.terrell@bakerbotts.com* | **CULBRETH & HOLZER,  P.C.** |
| *samuel.cooper@bakerbotts.com* | |
| *michael.massengale@bakerbotts.com* | Michael J. Urbis |
| *rebeca.huddle@bakerbotts.com* | State Bar No. 20414130 |
| | 1534 E. 6th Street, Suite 104 |
| and | Brownsville, Texas 78520 |
| | Telephone:   956.542.1161 |
| **BAKER BOTTS L.L.P.** | Facsimile:    956.542.0051 |
| Jack L. Kinzie | Email: *murbis@jhwclaw.com* |
| State Bar No. 11492130 | |
| Southern District of Texas Bar No. 14771 | |
| Fernando Rodriguez | **COUNSEL TO ASARCO LLC AND SOUTHERN** |
| State Bar No. 24005048 | **PERU HOLDINGS, LLC** |
| Southern District of Texas Bar No. 725760 | |
| Eric A. Söderlund | |
| State Bar No. 24037525 | |
| Southern District of Texas Bar No. 577300 | |
| Thomas E. O'Brien | |
| State Bar No. 24046543 | |
| Southern District of Texas Bar No. 725795 | |
| 2001 Ross Avenue | |
| Dallas, Texas 75201-2980 | |
| Telephone:   214.953.6500 | |

## CERTIFICATE OF SERVICE

I certify that on June 7, 2007, the foregoing document was served electronically by email and via overnight Federal Express on the counsel listed below:

Charles A. Beckham, Jr.
Trey A. Monsour
Elizabeth Brooks Hamilton
HAYNES AND BOONE, LLP
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas  77010
*charles.beckham@haynesboone.com*
*trey.monsour@haynesboone.com*
*brooks.hamilton@haynesboone.com*

**-and-**

Luc A. Despins
Robert Winter
David R. Gelfand
Stacey J. Rappaport
Melanie Westover
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York  10005
*ldespins@milbank.com*
*rwinter@milbank.com*
*dgelfand@milbank.com*
*srappaport@milbank.com*
*mwestove@milbank.com*

**COUNSEL FOR DEFENDANT
AMERICAS MINING CORPORATION**

*/s/ Thomas E. O'Brien*