UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP NELSON BURNS, MIRJANA
PAVKOVICH, Administrator of the Estate of
Rade Pavkovich, Deceased, and WARREN
ELMER HALPAP,

        Plaintiffs,

-against-

GRUPO MÉXICO, S.A. de C.V., a Mexican
Corporation,

        Defendant.

Case No. 1:07-CV-3496 (WHP)

**ASARCO AND SOUTHERN PERU HOLDINGS' REPLY IN SUPPORT OF THEIR
MOTIONS TO SUBSTITUTE PARTIES AND TRANSFER VENUE**

<u>SUMMARY OF ISSUES</u>

Before the Court are the following issues:

1. Was the removal of the fraudulent transfer claims asserted against Grupo México, S.A. de C.V. ("Grupo") in the State Court Action[1] proper, and is substitution of ASARCO and Southern Peru Holdings as plaintiffs with respect to the removed claims warranted?;

2. Should the removed claims, which constitute an adversary proceeding in connection with ASARCO and Southern Peru Holdings' jointly administered bankruptcy cases, be transferred to the District Court in which a related case on identical facts is pending against Grupo's wholly owned subsidiary Americas Mining Corporation ("AMC")?[2]

The answer to both questions is an unqualified "yes."

<u>ARGUMENT AND AUTHORITIES</u>

**I.   <u>Removal Was Proper and Substitution is Warranted</u>**

In their Amended Notice of Removal, ASARCO LLC ("ASARCO") and Southern Peru Holdings, LLC ("Southern Peru Holdings") properly removed under 28 U.S.C. § 1452 only the fraudulent transfer claims asserted in Plaintiffs' first, second, third, fourth, and seventh claims for relief relating to Grupo's involvement in the SPCC Transaction (the "Removed Claims").[3] (Am. Notice of Removal (Dkt. #16)).  Section 1452 permits a party (not just a defendant) to remove claims that arise under the Bankruptcy Code or relate to a bankruptcy case. 28 U.S.C. § 1452.  Removal was proper because the Removed Claims arise under title 11 and relate to ASARCO's and Southern Peru Holdings' bankruptcy cases. *See Rahl v. Bande*, 316

---

[1]   *Phillip Nelson Burns* et al. *vs. Grupo México S.A. de C.V.* et al., Index No. 0114728/2004, in the Supreme Court of the State of New York, County of New York.

[2]   The Court has also been called upon to decide whether Grupo was properly served in the State Court Action and whether Grupo is subject to personal jurisdiction in this Court.  As explained in ASARCO and Southern Peru Holdings' Response in Opposition to Grupo Mexico's Motion to Remand or Dismiss (Dkt. #33), the answers to these questions are also "yes."

[3]   Undefined capitalized terms have the meaning ascribed to them in previous filings.

B.R. 127, 131-32 (S.D.N.Y. 2004). Such fraudulent transfer claims are automatically stayed upon the filing of a bankruptcy petition, and § 544 of the Bankruptcy Code grants a trustee or debtor in possession the exclusive authority to continue to pursue those claims either in state or federal court.[4] Avoiding the SPCC Transaction and recovering the fraudulently transferred SPCC shares or their multi-billion-dollar value will dramatically affect the ASARCO bankruptcy estate.[5]

For similar reasons, substitution is appropriate. Under the Bankruptcy Rules, the Removed Claims now constitute an adversary proceeding relating to ASARCO's and Southern Peru Holdings' jointly administered bankruptcy cases. *See* Fed. R. Bankr. P. 7001(10). Substitution is warranted because ASARCO and Southern Peru Holdings, as debtors in possession, have the exclusive authority to pursue the Removed Claims. *See* 11 U.S.C. §§ 541 & 544(b). Recognizing this fact, Plaintiffs do not oppose removal or substitution.

That ASARCO was not a named party in the State Court Action, or that Southern Peru Holdings was originally a named defendant and is now in the posture of a plaintiff, does not render the removal improper or substitution inappropriate. Case law supports the removal of a state-court action by a debtor in possession that is not a named party in the action because the debtor in possession is the real party in interest.[6]

---

[4] *See* 11 U.S.C. §§ 362(a) & 544(b); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 222 (S.D.N.Y. 2002); *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 130–32 (2d Cir. 1992); *See also Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, No. 03 Civ. 7248(JGK), 2004 WL 224505, at *4 (S.D.N.Y. Feb. 5, 2004).

[5] Even Grupo/AMC has admitted that the shares are worth "8 billion plus" dollars (Luc Despins, counsel for AMC there and Grupo here, Ex. 1, at 38:2-8 (June 6, 2007)).

[6] *See, e.g.*, *Hughes-Bechtol, Inc. v. Air Enters., Inc. (In re Hughes-Bechtol, Inc.)*, 107 B.R. 552, 558 (Bankr. S.D. Ohio 1989); *Aetna Cas. & Surety Co. v. Dauria (Matter of Pine Assocs.)*, 40 B.R. 683, 686 (Bankr. D. Conn. 1984); *Parenteau v. Bellucci (In re Bellucci)*, 9 B.R. 887, 889 (Bankr. D. Mass. 1981); *see also Frankford Trust Co. v. Allanoff (In re Dublin Props.)*, 20 B.R.

Grupo also mistakenly argues that because ASARCO did not directly hold the SPCC shares at the time of the SPCC Transaction, it lacks standing to remove the fraudulent transfer claims. ASARCO has standing to set aside the fraudulent transfer of its interest in SPCC to AMC even though at the time of the transfer ASARCO held its shares in SPCC through its wholly owned subsidiary, Southern Peru Holdings. At a trial on the merits, the court may pierce Southern Peru Holdings' corporate veil. Thus, ASARCO has the requisite standing for the purpose of avoiding and recovering the fraudulent transfer of the SPCC stock under 11 U.S.C. §§ 544(b) and 550(a). *Smith v. Richels (In re Richels)*, 163 B.R. 760, 763 (Bankr. E.D. Va. 1994). At least 11 courts have recognized that a shareholder may reach the property of its subsidiary where recognition of the corporate form would result in substantial unfairness and injustice to the shareholder's creditors.[7]

---

616, 621 (Bankr. D. Pa. 1982), *rev'd in part on other grounds*, 29 B.R. 401 (E.D. Pa. 1983); *Cincinnati Milacron Mktng. Co. v. Ramirez (In re Wesco Prods. Co.)*, 19 B.R. 908, 910 (Bankr. N.D. Ill. 1992).

[7] *See Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 121-22 (9th Cir. 1995) (noting that for debtor's creditors to avoid transfer made by debtor's wholly owned corporation, "they had to penetrate two layers of fraud, the alter ego corporation, and the fraudulent conveyance"); *Hovis v. United Screen Printers, Inc. (In re Elkay)*, 167 B.R. 404, 410 (D.S.C. 1994) (holding that trustee or debtor in possession could assert a reverse veil piercing claim to recover a transfer made by the debtor's subsidiary); *Slone v. Brennan (In re Fisher)*, 362 B.R. 871, 882 (S.D. Ohio 2007) (affirming bankruptcy court's decision to pierce the corporate veil in an adversary proceeding seeking to avoid a transfer made by a debtor's wholly owned corporation); *Lindquist v. JNG Corp. (In re Lindell)*, 334 B.R. 249, 253 (Bankr. D. Minn. 2005) (holding that corporate veil could be pierced for purpose of avoiding sale of promissory note by debtors' wholly owned corporation); *Richels*, 163 B.R. at 763-64 (holding that estate had standing to bring reverse piercing claim to avoid transfer of stock by debtor's subsidiary); *see also Mass v. Bell Atl. Tricon Leasing Corp. (In re Mass)*, 178 B.R. 626, 630-31 (M.D. Pa. 1995); *Kendall v. Turner (In re Turner)*, 335 B.R. 140, 147 (Bankr. N.D. Cal. 2005); *In re Foxmeyer Corp.*, 290 B.R. 229, 234 (Bankr. D. Del. 2003); *In re Altman*, 230 B.R. 6, 11–16 (Bankr. D. Conn. 1999); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 319-26 (Bankr. S.D.N.Y. 1999); *Halverson v. Shuster (In re Schuster)*, 132 B.R. 604, 611-12 (Bankr. D. Minn. 1991).

This Court need not reach a decision on the merits of ASARCO's veil-piercing claim in order to find that removal and substitution are proper. The presence of a federal question on the face of the amended notice of removal and the complaint is enough to establish that removal was proper. *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 488 F.3d 112 (2d Cir. 2007) (looking to jurisdictional facts alleged in notices of removal to determine whether jurisdiction was proper under 28 U.S.C. § 1452).[8] As the removing parties, ASARCO and Southern Peru Holdings have shown that the Removed Claims relate to their bankruptcy cases and therefore present a federal question.

Ignoring the obvious federal question, Grupo turns to the merits of ASARCO's veil-piercing claim. Grupo hopes to have two bites at the apple by using the removal proceedings to address the merits of the veil-piercing issue, after its counsel briefed and argued the same issue now under submission to Judge Hanen in Brownsville as part of AMC's motion to dismiss. By having two courts consider the issue at once, Grupo apparently hopes to increase its chances of obtaining a ruling that it could use to end all litigation concerning the fraudulent transfer of the SPCC shares. However, Grupo's arguments on the merits are premature. *See Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.* 314 F. Supp. 2d 177, 182 (S.D.N.Y. 2003). Removal proceedings are not the "occasion to adjudicate the substantive issues of a case." *See id.* The Court should find that federal question jurisdiction exists and transfer the claims against Grupo to Judge Hanen for decision on the merits. But if the Court chooses to address the substantive

---

[8]   *Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC*, 357 F. Supp. 2d 529, 535 (E.D.N.Y. 2004) (applying well-pleaded complaint rule to bankruptcy jurisdiction under 28 U.S.C. § 1334); *Foxmeyer Health Corp. v. McKesson Corp. (In re Foxmeyer Corp.)*, 230 B.R. 791, 795 (Bankr. N.D. Tex. 1998) (stating, in the context of § 1452, that "assertion of federal question removal jurisdiction will rise or fall on the allegations in the well-pleaded complaint, that is, on whether there appears on the face of the complaint some substantial, disputed question of federal law").

issues Grupo raises, it should find that ASARCO's assertions are supported both by the law and the facts.

In support of its standing argument, Grupo relies on the unpublished opinion in *In re Southmark*, No. 95-10849 (5th Cir. July 26, 1996). The Court should not follow *Southmark* for three reasons. First, the *Southmark* opinion itself states that it is not binding precedent except under limited exceptions not applicable here. *Id.* at 1 n.1.

Second, the *Southmark* decision is expressly limited to the facts of that case and has been distinguished on that basis by a published Fifth Circuit opinion. In *Schimmelpenninck v. Byrne (Matter of Schimmelpenninck)*, 183 F.3d 347 (5th Cir. 1999), the Fifth Circuit recognized that the *Southmark* panel "forbade Southmark's piercing its own corporate veil because the '*particular use of reverse piercing*' did not further any equitable concerns." *Schimmelpenninck*, 183 F.3d at 357 n.22 (quoting *Southmark*, at 15). The Fifth Circuit also acknowledged that the *Southmark* panel specifically noted: "'We do not hold that a shareholder could never use the reverse piercing doctrine under any circumstances.'" *Schimmelpenninck*, 183 F.3d at 357 n.22 (quoting *Southmark*, at 16).

Third, *Southmark* is different. In *Southmark*, the party seeking to disregard the corporate form was the very party that abused that form in the first place. In this case, Grupo and its wholly owned subsidiary, AMC, were the parties that abused the corporate form by using Southern Peru Holdings to carry out a fraudulent transfer. In *Southmark*, the fraudulent transfer was to an independent third party with no control over either the transferor or the debtor. In this case, the transfer was to one insider (AMC) for the benefit of another insider (Grupo), which controlled both the transferor (Southern Peru Holdings) and the debtor (ASARCO).

It would be inequitable to allow Grupo to use Southern Peru Holdings' corporate form to defend against fraudulent transfer claims when it created that corporate structure and used it to carry out the fraudulent transfer for its own benefit. *See Schuster*, 132 B.R. at 612. Unlike in *Southmark*, applying the equitable remedy of reverse veil piercing under these circumstances would serve, rather than disserve, its purpose, "which is to prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice." *Southmark*, at 16.

Grupo is wrong that ASARCO's pre-petition "unclean hands" bar it from piercing Southern Peru Holdings' corporate veil. ASARCO, as debtor in possession, does not seek to pierce Southern Peru Holdings' corporate veil for its own benefit but, rather, for the benefit of its innocent creditors. ASARCO's creditors "should not be tarred with the brush of any pre-filing corporate abuses or wrongdoings by [ASARCO], its officers, or directors." *Schimmelpenninck*, 183 F.3d at 358 n.23.[9]

Grupo would further confuse the standing issue by stating that ASARCO is seeking substantive consolidation, which occurs when a bankruptcy court consolidates the assets and liabilities of different legal entities and deals with them as if the assets were held by and the liabilities were owed by a single legal entity. Substantive consolidation is not "a concept conceptually indistinguishable from piercing the corporate veil," as Grupo contests. (*See* Grupo Opp. to ASARCO's Transf. Mot. at 12). To the contrary, courts and the leading treatise on

---

[9] *Fisher*, 362 B.R. at 882 (rejecting argument that reverse veil piercing "is to be used *against* a shareholder who uses the corporation as his or her alter ego and not *by* such an individual"); *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. at 320 (making "short shrift" of argument that debtor's unclean hands prevented trustee from asserting reverse veil piercing claim "because the Trustee [did] not seek to pierce the corporate veil . . . for the benefit of [the debtor] or its shareholders, but, rather, for the benefit of the debtor's unsecured creditors."); *Schuster*, 132 B.R. 609 n.6 (stating "the Bankruptcy Code recognizes the estate's freedom to pursue its remedies, unfettered by the knowledge and past acts of its debtor-predecessor").

6

bankruptcy law have recognized that the federal bankruptcy law concept of substantive consolidation and the state law concept of piercing the corporate veil are distinct legal concepts.[10] Because ASARCO has not sought substantive consolidation, Grupo's argument regarding substantive consolidation is irrelevant.

Likewise, Grupo's novel argument that ASARCO is judicially estopped from pursuing the removed claims is a red herring. ASARCO, as debtor in possession, has never represented to this Court that Southern Peru Holdings is not its alter ego. Judicial estoppel is simply not applicable in this case. As one court explained, "[t]he doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or earlier proceeding." *Karaha Bodas Co. v. Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 293-94 (5th Cir. 2004).

Assertions by ASARCO management in connection with the SPCC Transaction made two years before ASARCO's bankruptcy when the company was under the total control of AMC and Grupo cannot be used now to prevent a debtor in possession from pursuing the avoidance and recovery of assets on behalf of its creditors from those same controlling companies.[11] Many courts have held that this separate identity precludes a finding of res judicata or collateral estoppel, because the party sought to be precluded from litigating an issue in the second proceeding (usually the trustee or debtor in possession) was not the same party—and did not represent the same interests—as the debtor who was a party to the prior proceeding.[12]

---

[10]     *In re Bonham*, 226 B.R. 56, 76 89 (Bankr. D. Alaska. 1998); *Helena Chem. Co. v. Circle Land & Cattle Corp.* (*In re Circle Land & Cattle Corp.*), 213 B.R. 870, 876 (Bankr. D. Kan. 1997); Collier on Bankruptcy ¶ 105.09[2][c] (acknowledging that "courts have not ordered substantive consolidation in cases in which the only grounds present were those that would have supported piercing the corporate veil").

[11]     *See id.*; *In re Wiggs*, 87 B.R. 57, 58 (N.D. Ill. 1988).

[12]     *See Ingalls v. Erlewine (Matter of Erlewine)*, 349 F.3d 205, 210 (5th Cir. 2003); *Coleman*

Finally, whether removal and substitution would destroy diversity of parties is irrelevant. A party seeking removal need not show both diversity of parties and a federal question, which are independent bases for removal. *See* 28 U.S.C.§ 1441(b). The basis for the exercise of subject matter jurisdiction either by this Court or the Southern District of Texas is the presence of a federal question, not the diversity of the parties. *See Gen. Am. Commc'ns Corp. v. Landsell (In re Gen. Am. Commc'ns Corp.)*, 130 B.R. 136, 159-60 (S.D.N.Y. 1991).

In any event, Grupo is mistaken that ASARCO and Southern Peru Holdings removed claims against defendants in the State Court Action other than Grupo. The Amended Notice of Removal makes clear that ASARCO and Southern Peru Holdings removed only the fraudulent transfer claims asserted against Grupo that pertain to the SPCC Transaction. (*See* Am. Notice of Removal (Dkt. #16)). *See also Northwood Flavors Co., Inc. v. Dollar Bank (In re Northwood Flavors, Inc.)*, 202 B.R. 63, 67 (Bankr. W.D. Pa. 1996) (examining notice of removal to see which claims were removed under § 1452).

Section 1452 permits a party to remove only some of the claims or causes of action in a lawsuit and to leave the remainder for litigation in the other forum.[13] Courts have adopted "the claim preclusion definition of 'claim' to determine exactly what a party may remove under [§ 1452]." *Orion Ref. Co. v. Fluor Enter., Inc.*, 319 B.R. 480, 486 (E.D. La. 2004) (citing S. Elizabeth Gibson, *Removal of Claims Related to Bankruptcy Cases: What is a "Claim or Cause*

---

*v. Alcock*, 272 F.2d 618, 621-22 (5th Cir. 1959) (noting that while the trustee or debtor in possession is a successor to a bankrupt, he acts as a general representative of the creditors and should not be bound by prior state court proceeding); *Corzin v Fordu (In re Fordu)*, 201 F.3d 693, 705-06 (6th Cir. 1999) (preclusion principles do not bar trustee or debtor in possession's fraudulent transfer claims); *Webster v. Hope (In re Hope)*, 231 B.R. 403, 422-23 (Bankr. D. Col. 1999).

[13]  *See Id.* ("[R]emoval under [§ 1452] is not an all-or-nothing proposition. Section 1452 permits a party to remove only *some* of the claims or causes of action and to leave the remainder for litigation in the other forum." (emphasis in original)); s*ee also Princess Louise Corp. v. Pac. Lighting Leasing Co. (In re Princess Louise Corp.)*, 77 B.R. 766, 771 (Bankr. C.D. Cal. 1987).

*of Action"?*, 34 UCLA L. Rev. 1 (1986)). For claim preclusion purposes, authorities uniformly agree that in a multi-defendant lawsuit, a plaintiff has a separate claim against each potential defendant, even if the allegations against the defendants arise out of the same transaction. *Id.* Under the reasoning in *Orion Refining*, "removal under Section 1452 is claim-specific and party-specific." *Id.*; *see also Brateman v. Brateman Bros., Inc. (In re Brateman Bros., Inc.)*, 135 B.R. 853, 854-55 (Bankr. N.D. Ind. 1991). Thus, ASARCO is entitled to remove only those claims against Grupo that pertain to the SPCC Transaction. Other defendants need not be removed, nor is removal of other claims against Grupo required.

**II.     The Removed Claims Should Be Transferred to the Southern District of Texas**

The Court should transfer the Removed Claims to the Southern District of Texas pursuant to Bankruptcy Rule 7087 and 28 U.S.C. § 1412 because transfer is in the interest of justice and would further the convenience of the parties.[14]

ASARCO and Southern Peru Holdings should not be forced to try identical fraudulent transfer claims against a parent corporation and its wholly owned subsidiary twice in different districts halfway across the country from one another. Rather, ASARCO and Southern Peru Holdings should be able to try their fraudulent transfer claims against Grupo and AMC once in their chosen forum—the Southern District of Texas, where their bankruptcy cases are pending.[15]

---

[14] Bankruptcy Rule 7087 provides, in pertinent part: "[T]he court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412." Fed. R. Bankr. P. 7087. Section 1412, in turn, provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Accordingly, the Court need not consider whether the cause of action could have been brought in the transferee court. Unlike § 1404, § 1412 contains no such limiting language.

[15] *Gulf States Exploration Co. v. Manville Forest Prods. Co. (In re Manville Forest Prod. Co.)*, 896 F.2d 1384, 1391 (2d Cir. 1990); *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 750 (S.D.N.Y. 2004); *see also Enron Corp. v. Arora (In re Enron)*, 317 B.R. 629, 647 (Bankr. S.D.N.Y. 2004). One case relied upon by Grupo in its Response—*Muller v. Walt Disney Productions*, 822 F. Supp. 1033 (S.D.N.Y. 1993)—is

9

Transfer would not merely shift inconvenience from one party to another, as Grupo suggests. Instead, transfer is warranted because it would promote judicial economy and the economic and efficient administration of the debtors' bankruptcy estates. Grupo does not—and cannot—challenge the fact that transfer would prevent duplicative discovery, eliminate the possibility of conflicting pretrial rulings, and conserve the time of the parties and the judiciary. Grupo provides no reason why this Court and the Southern District of Texas should both address the same pre-trial disputes and each preside over a trial on the merits regarding a single fraudulent transfer.

## CONCLUSION

ASARCO and Southern Peru Holdings respectfully request that the Court find that removal was proper and grant the motions to substitute parties and transfer venue to the United States District Court for the Southern District of Texas.

---

inapposite. *Muller* involved contract claims brought by two different parties stemming from two different contracts. *Id.* at 1038. The two cases were only "related to some degree." *Id.* at 1037. In contrast, the fraudulent transfer claims against Grupo and AMC are nearly identical.

Dated: July 16, 2007                                        Respectfully submitted,

| **BAKER BOTTS L.L.P.** | **JORDAN, HYDEN, WOMBLE CULBRETH & HOLZER, P.C.** |
|---|---|
| */s/ G. Irvin Terrell, Jr.*<br>G. Irvin Terrell, Jr. (GT-3459)<br>Attorney-in-Charge<br>Texas State Bar No. 19794500<br>Samuel Cooper<br>Texas State Bar No. 00792427<br>Michael Massengale<br>Texas State Bar No. 24003704<br>Rebeca Huddle<br>Texas State Bar No. 24012197<br>910 Louisiana Street<br>One Shell Plaza<br>Houston, Texas 77002-4995<br>Telephone: 713.229.1231<br>Facsimile: 713.229.2831<br>Email: *irv.terrell@bakerbotts.com*<br>         *samuel.cooper@bakerbotts.com*<br>         *michael.massengale@bakerbotts.com*<br>         *rebeca.huddle@bakerbotts.com*<br><br>-and-<br><br>**BAKER BOTTS L.L.P.**<br>Jack L. Kinzie<br>Texas State Bar No. 11492130<br>Fernando Rodriguez<br>Texas State Bar No. 24005048<br>Eric A. Söderlund<br>Texas State Bar No. 24037525<br>Thomas E. O'Brien<br>Texas State Bar No. 24046543<br>2001 Ross Avenue<br>Dallas, Texas 75201-2980<br>Telephone:   214.953.6500<br>Facsimile:      214.661.6503<br>Email: *jack.kinzie@bakerbotts.com*<br>         *fernando.rodriguez@bakerbotts.com*<br>         *eric.soderlund@bakerbotts.com*<br>         *tom.obrien@bakerbotts.com* | Shelby A. Jordan<br>Texas State Bar No. 11016700<br>Suite 900, Bank of America<br>500 North Shoreline<br>Corpus Christi, Texas 78471<br>Telephone:   361.884.5678<br>Facsimile:   361.888.5555<br>Email: *sjordan@jhwclaw.com*<br><br>-and-<br><br>**JORDAN, HYDEN, WOMBLE CULBRETH & HOLZER, P.C.**<br><br>Michael J. Urbis<br>Texas State Bar No. 20414130<br>1534 E. 6th Street, Suite 104<br>Brownsville, Texas 78520<br>Telephone:   956.542.1161<br>Facsimile: 956.542.0051<br>Email: *murbis@jhwclaw.com*<br><br>**COUNSEL TO ASARCO LLC AND SOUTHERN PERU HOLDINGS, LLC** |

# **CERTIFICATE OF SERVICE**

I certify that on July 16, 2007, the foregoing document was served via overnight delivery service and email on the following counsel:

BARON & BUDD
Alan B. Rich, Esq.
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, Texas 75219
(214) 521-3605
(214) 520-1181 (facsimile)
*arich@baronbudd.com*

**ATTORNEYS FOR PLAINTIFFS
PHILLIP NELSON BURNS,
MIRJANA PAVKOVICH,
and WARREN ELMER HALPAP**

MILBANK, TWEED, HADLEY & McCLOY LLP
David R. Gelfand, Esq.
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
(212) 530-5219 (facsimile)
*dgelfand@milbank.com*

MILBANK, TWEED, HADLEY & McCLOY LLP
David S. Cohen
1850 K Street, NW
Suite 1100
Washington, D.C. 20006
(202) 835-7500
(202) 835-7586 (facsimile)
*dcohen2@milbank.com*

**ATTORNEYS FOR DEFENDANT
GRUPO MÉXICO, S.A. de C.V.**

*/s/ G. Irvin Terrell, Jr.*
G. Irvin Terrell, Jr. (GT-3459)