UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIP NELSON BURNS, MIRJANA PAVKOVICH, Administrator of the Estate of Rade Pavkovich, Deceased, and Warren Elmer Halpap,<br><br>Plaintiffs,<br><br>-against-<br><br>GRUPO MÉXICO, S.A. de C.V., a Mexican Corporation,<br><br>Defendant. | Case No. 1:07-CV-3496(WHP)<br><br>**DEFENDANT GRUPO MÉXICO, S.A.B. DE C.V.'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO REMAND OR, IN THE ALTERNATIVE, TO DISMISS THE AMENDED COMPLAINT** |

## PRELIMINARY STATEMENT

ASARCO[1] and SP Holdings' Response in Opposition to Grupo México's Motion to Remand or Dismiss ("Opposition Memorandum" or "Opp. Mem.") does not refute the basic substantive and procedural flaws in ASARCO's and SP Holdings' Amended Notice or the grounds for dismissing the Amended Complaint raised in the Opposition Memorandum. Instead, ASARCO and SP Holdings ask this Court to allow them to bypass the requirements of service and removal and proceed on the basis of claims that someday may be asserted in the Burns Litigation should it be transferred to the Southern District of Texas, Brownsville Division. The Court at this stage can only consider the complaint in the Burns Litigation as it stands today, not as ASARCO and SP Holdings purport to amend it at some point in the future.

---

[1] Capitalized terms not otherwise defined have the meaning ascribed to them in Defendant Grupo México, S.A. de C.V.'s Memorandum of Law in Support of its Motion to Remand or, in the Alternative, to Dismiss the Amended Compliant for Improper Service and Lack of Personal Jurisdiction, dated June 26, 2007.

The Amended Complaint, the operative pleading in the Burns Litigation, includes only New York State law claims brought by the Asbestos Plaintiffs against Grupo México, among others. The Amended Complaint must be remanded or dismissed because: (1) the Asbestos Plaintiffs never properly served Grupo México; (2) ASARCO was never a party to the Burns Litigation and cannot remove the Amended Complaint; and (3) Grupo México is not subject to personal jurisdiction under either New York's long-arm statute or a broader analysis of nationwide contacts.

## I.   SERVICE ON GRUPO MÉXICO WAS NOT PROPER

Grupo México was not properly served with the Amended Complaint under either Mexican law or the Hague Convention. As a result of the Asbestos Plaintiffs' failure to properly serve Grupo México, this action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).[2] *See Mugno v. Societe Internationale de Telecommunications Aeronautiques, Ltd.*, No. 05-cv-2037 (DRH)(ARL), 2007 WL 316573 (E.D.N.Y. Jan. 30, 2007) (dismissing complaint for improper service under Fed. R. Civ. P. 12(b)(5)).

Mexico became a signatory to the Hague Convention in 1999.[3] At that time, Mexico made several specific reservations to certain terms of the treaty, including opposing certain procedures under Article 5 and Article 10 of the Convention. Under Article 10, Mexico requires that a request for service pursuant to this article be made by foreign court officers, or, if

---

[2]   ASARCO and SP Holdings made clear in a hearing before this court held on June 15, 2007, that the reason they seek to remove and transfer the claims against Grupo México to that litigation is to avoid the delay associated with exercising service under the Hague Convention. *See* June 15, 2007 Conference before Hon. William H. Pauley III, Transcript at. 6:1-9. Service was not proper in the Burns Litigation and ASARCO and SP Holdings should not be able to benefit from this defective service and circumvent the requirements of the Hague Convention.

[3]   *See* Declaration of Gerardo Manuel Ramírez Ornelas in Support of Grupo México, S.A. de C.V.'s Motion to Remand or, in the Alternative, to Dismiss the Complaint for Lack of Personal Jurisdiction ("Ornelas Decl."), ¶ 3.

a Mexican court has issued a simplification order, by an unaffiliated person.[4] Under Article 5, Mexico requires that documents served pursuant to the Convention must be translated into Spanish by a translator authorized by the Mexican federal courts.[5] Because the Asbestos Plaintiffs arranged for APS International, Ltd. ("APS"), a private company, and therefore an "unaffiliated person," to direct service on Grupo México where no simplification order had been issued by the Mexican courts, service did not comply with the requirements of Article 10 as amended by Mexico.[6] Additionally, because APS did not have the documents translated by a Mexican court approved translator, the service on Grupo México did not comply with the requirements under Article 5 as amended by Mexico. Service was thus deficient.[7]

Although ASARCO and SP Holdings argue that these "technical" defects do not "invalidate" service, (*see* Opp. Mem. pp. 4-5), the issue, however, is whether Grupo México was properly served, not whether the Asbestos Plaintiffs' attempt at service should be "invalidated." The cases cited by ASARCO and SP Holdings do not address this fundamental point. Rather, those cases merely stand for the proposition that U.S. plaintiffs should not, under limited circumstances, be penalized when the purported "defects" were on the part of the foreign government.[8] Here, it is the Asbestos Plaintiffs, not the Mexican Government, which is at fault for attempting service without first seeking and obtaining a simplification order, and without

---

[4]     *See* Ornelas Decl. ¶ 7.

[5]     *See* Ornelas Decl. ¶ 9.

[6]     *See* Ornelas Decl. ¶ 8.

[7]     *See* Ornelas Decl. ¶ 9; *see also* Affidavit of Jeff Karsten Regarding Service of Process in Mexico in accordance with the Hague Service Convention, dated July 5, 2007, ¶ 4, attached as Ex. A to Ornelas Decl. (stating "[u]pon receipt of the foregoing documents, such documents were translated into Spanish").

[8]     *See Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005) (holding that plaintiff complied with the Hague Convention and that the failure lay with the French Ministry of Justice); *Greene v. Le Dorze*, No. CA 3-96-CV-590-R, 1998 WL 158632, at *3 (N.D. Tex Mar. 24, 1998) (stating that "the

properly translating the service documents. In fact, the very case law relied upon by ASARCO and SP Holdings belies the claim that these failures are harmless technical defects. The court in *Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*, No. 05 CV 4260 (GBD), 2006 WL 2015188, at *4-5 (S.D.N.Y. July 13, 2006), granted defendant's motion to dismiss because plaintiff's attempt to serve defendant by a private third-party process server was improper and ineffectual under the Hague Convention. (*See* Opp. Mem. p. 4.)

Virtually none of the authorities cited in the Opposition Memorandum address service in Mexico and are therefore inapplicable to the issues before this Court.[9] Rather, the Opposition Memorandum cites only one case in which a party attempted service of process in Mexico pursuant to the Hague Convention and that court unequivocally held that parties must strictly follow the requirements of the Hague Convention. *See Hein v. Cuprum, S.A. de C.V.*, 136 F. Supp. 2d 63, 71 (stating "if Plaintiff served defendant Cuprum in Mexico by ordinary mail [as opposed to the required registered mail,] service of process was not perfected"). The remainder of the cases cited by ASARCO and SP Holdings are unpersuasive, as they do not address service in Mexico or do not relate to service under the Hague Convention.[10] The attempted service on Grupo México was not done in accordance with the Convention and with

---

defect was not even [plaintiff's] fault" because it was the French authorities that failed to describe the method of service and failed to have a certificate completed by a Public Prosecutor).

[9] *See Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*, No. 05 CV 4260 (GBD), 2006 WL 2015188 (S.D.N.Y. July 133, 2006) (Pakistan); *Burda Media, Inc.*, 417 F.3d at 292 (France); *Greene*, 1998 WL 158632 (France); *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383 (8th Cir. 1995) (Spain); *In re Vitamins Antitrust Litig.*, No. MISC 99-197(TFH), 2001 WL 34088810 (D.D.C. Mar. 9, 2001) (Japan).

[10] ASARCO and SP Holdings claim that "[t]o overcome the presumption that service was proper, a defendant <u>must</u> offer convincing evidence asserting specific facts that would negate service." But none of the cases they cite for this proposition relate to service under the Hague Convention. *See generally O'Brien v. R.J. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993); *Mobern Elec. Corp. v. Walsh*, 197 F.R.D. 196 (D.D.C. 2000); *Frof, Inc. v. Harris*, 695 F. Supp. 827 (E.D. Pa. 1988).

Mexican law, thus service on Grupo México was improper. The Amended Complaint must be dismissed.

## II.  ASARCO'S PURPORTED REMOVAL WAS IMPROPER

ASARCO is not a party to the Burns Litigation and cannot remove this action.[11] ASARCO attempts to evade this glaring misstep by arguing that the claims arise under and are "related to" ASARCO's bankruptcy. (*See* Opp. Mem. pp. 9-11.) The claims in the Burns Litigation arise under New York State law, and were being pursued by the Asbestos Plaintiffs prior to the date ASARCO filed for chapter 11 protection. Consequently, the claims do not "arise under" the Bankruptcy Code. ASARCO was not the transferor of the SCC Shares. SP Holdings was the transferor. Accordingly, ASARCO holds no claim for avoidance of the transfer.[12] ASARCO has essentially conceded this point. (*See* Opp. Mem. p. 1.) The claims sought to be removed have at best an indirect bearing on ASARCO's bankruptcy. Regardless of ASARCO's repeated references to "ASARCO and SP Holdings' bankruptcy estates" (as if there was one estate, and not two separate estates) – that is not the case. ASARCO created SP Holdings as a separate corporate entity in 1999; ASARCO cannot now seek to disregard the distinction between the companies or their respective estates merely because it is convenient. *See Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437 (1946) ("[o]ne who has created

---

[11]    It is unclear exactly what role SP Holdings plays in this litigation. SP Holdings is named as a defendant in the Amended Complaint. Neither the Asbestos Plaintiffs, nor ASARCO or SP Holdings have made any attempt to properly amend the parties to the Amended Complaint.

[12]    ASARCO argues throughout its papers in this litigation that SP Holdings was a "mere instrumentality," "alter ego" or "conduit" for the transfer of the SCC Shares. However, as explained in Grupo México's Opposition to Non-Party ASARCO and SP Holdings' Consolidated Motions to Substitute Plaintiffs and Transfer Venue, dated July 10, 2007 ("<u>Transfer Opposition Memorandum</u>" or "<u>Tr. Opp. Mem.</u>"), ASARCO cannot disregard its own corporate formalities and pursue claims belonging to SP Holdings. (*See* Tr. Opp. Mem. pp. 7-14.) Oral argument on ASARCO's attempt to disregard its own corporate formalities, among other issues raised in AMC's motion to dismiss in the Texas Litigation, was held on Friday, July 13, 2007. No decision has been issued at this time.

a corporate arrangement, chosen as a means of carrying out his business purposes, does not have the choice of disregarding the corporate entity ... ."); *see also* Tr. Opp. Mem. p. 9-14.[13]

Claims are not "related to" a case under the Bankruptcy Code where the debtor could not have brought an action on those claims but for the bankruptcy. *See In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) ("[the 'related to' language] is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for the bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others ..."). Here, ASARCO could never have brought the claims asserted in the Burns Litigation, as it held no interest in the SCC Shares prior to bankruptcy. Nothing about section 1334(b) suggests that ASARCO can now bring an action to avoid the transfer of SCC Shares.[14]

Finally, ASARCO and SP Holdings repeatedly refer to the powers to avoid transfers granted to a trustee under § 544(b) of the Bankruptcy Code. The Burns Litigation, however, does not purport to state a claim under § 544(b) of the Bankruptcy Code. ***The Asbestos Plaintiffs sought to avoid several transfers under New York State law only and never sought relief under the Bankruptcy Code.*** *Rahl v. Bande*, 316 B.R. 127, 132 (S.D.N.Y. 2004), cited by ASARCO and SP Holdings, is inapposite, as the removed claim at issue specifically included a §

---

[13]   ASARCO relies upon a September 2005 letter from a lawyer for AMC which states that the Burns Litigation should be stayed. (*See* Opp. Mem. p. 10.) The Burns Litigation involved allegations that numerous transfers were fraudulent – including transfers of ASARCO's property. Accordingly, while portions of the Burns Litigation arguably relate to ASARCO's bankruptcy and thus, the litigation was stayed, a claim to avoid the transfer of the SCC Shares belongs to creditors of SP Holdings, or to SP Holdings itself, and is not related to ASARCO's bankruptcy.

[14]   Tellingly, one of the cases relied upon by ASARCO in its Opposition specifically found that an action between a tort plaintiff and an asbestos *distributor* was not related to the asbestos *supplier*'s bankruptcy proceeding. *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *disagreed with on other grounds, Cathedral of the Incarnation in the Diocese of Long Island v. Garden City Co. (In re Cathedral of Incarnation in the Diocese of Long Island)*, 90 F.3d 28, 33 (2d Cir. 1996).

544(b) claim to recover property transferred from the debtor. As removal was not appropriate by either ASARCO or SP Holdings, the Burns Complaint should be remanded.

### III. GRUPO MÉXICO IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK OR THE UNITED STATES[15]

#### A. New York State's Long Arm Statute Applies to the Burns Litigation

The Burns Litigation currently brings only state law claims – all under the New York State law. (*See* Amended Compl. ¶¶ 58-131.) Accordingly, because of the lack of a federal question, personal jurisdiction in this Court over a non-resident defendant in a diversity matter is determined under the law of the forum state. *See Norben Imp. Corp. v. Metro. Plant & Flower Corp.*, No. 03 Civ. 8660 (WHP), 2004 WL 2378295 (S.D.N.Y. Oct. 25, 2004) (applying New York's long arm statute). As discussed in Grupo México's Transfer Opposition Memorandum, should this court substitute ASARCO or SP Holdings, both Delaware corporations, into the Burns Litigation, there will no longer be complete diversity, as several of the named defendants are Delaware corporations. (*See* Tr. Opp. Mem. pp. 14-15.)

ASARCO's and SP Holdings' suggestion that nationwide contacts is the appropriate standard is wrong, and the cases they cite have no bearing here. For example, ASARCO and SP Holdings rely on *Federalpha Steel LLC Creditors' Trust v. Federal Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872 (Bankr. N.D. Ill. 2006), for the proposition that "courts have held that determining if jurisdiction is constitutional in bankruptcy cases requires an analysis of the foreign defendant's contacts with the entire United States, rather than with the particular forum state." (Opp. Mem. p. 14.) The *Federalpha* court, although

---

[15] ASARCO and SP Holdings erroneously claim that they "need make only a prima facie showing of jurisdiction through [their] own affidavits and supporting materials." (Opp. Mem. p. 12.) This is generally true before discovery, however ASARCO and SP Holdings have been granted extensive discovery on this issue and should be held to a higher standard. *See Frontera Res. Azerbaijan v. State Oil*

analyzing nationwide contacts in the determination of whether the court had personal jurisdiction with respect to claims brought pursuant to section 547 of the Bankruptcy Code, dismissed the state law claims for fraudulent transfer because "[t]hose counts are state law claims between non-debtors and so are not 'related to' the bankruptcy case." *See In re Federalpha Steel LLC*, 341 B.R. at 879. The claims as alleged in the Amended Complaint are just that – state law claims between non-debtors (the Asbestos Plaintiffs and Grupo México), thus personal jurisdiction must be analyzed under New York's long-arm statute.[16]

### B. The Allegations in the Amended Complaint Do Not Arise Out of Grupo México's Contacts with New York or the United States

Contrary to ASARCO's and SP Holdings' assertions, Grupo México's participation in the transfer of the SCC Shares does not provide a basis for the exercise of specific jurisdiction. The Opposition Memorandum outlines a history of several transactions, including the LBO of ASARCO, and several financial restructurings involving ASARCO, SP Holdings, Old Grupo and Grupo México. (*See* Opp. Mem. pp. 18-20.) The majority of these events involve entities other than Grupo México and predate the transfer. The transfer of the SCC Shares occurred on March 31, 2003. (*See id.* p. 20.) Grupo México guaranteed a loan made by AMC in connection with the transfer of the SCC Shares.[17] The Burns Litigation does not challenge the guarantee. There is no allegation that Grupo México failed to perform its

---

*Co. of the Azerbaijan Republic*, 479 F. Supp. 2d 376, 379 (S.D.N.Y. 2007) (noting before discovery plaintiffs may defeat a motion to dismiss by pleading a prima facie showing of jurisdiction).

[16] Plaintiffs' reliance on *North v. Winterthur Assurances (In re North)*, 279 B.R. 845 (Bankr. D. Ariz. 2002) is similarly misplaced. The *North* court dismissed the complaint because the plaintiff failed to properly serve a foreign corporation and that corporation's nationwide contacts were insufficient for a bankruptcy court to exercise personal jurisdiction. *North*, 279 B.R. at 853.

[17] *See* Consent Decree, filed in *USA v. ASARCO Inc.*, D. Ariz. Case No. 02-2079. (Declaration of J. Ryan Miller, Esq. in Support of Defendant Grupo México, S.A.B. de C.V.'s Memorandum of Law in Further Support of its Motion to Remand, or, in the Alternative, to Dismiss the Amended Complaint

obligations under the guarantee. The claims the Asbestos Plaintiffs alleged, and now sought to be pursued by ASARCO and SP Holdings, do not arise out of Grupo México's guarantee of the loan.[18] These contacts are not sufficient to confer specific jurisdiction under New York's long-arm statute or even a nationwide contacts test.[19] Further, the claims asserted by the Asbestos Plaintiffs do not arise out of the Consent Decree. Grupo México's obligations under the Consent Decree are much more limited than ASARCO's, SP Holdings', or AMC's.[20] Although the Consent Decree contains a jurisdictional waiver, that waiver is limited to claims "against guarantor arising out of or relating to [the] guarantee."[21] The Burns Litigation does not arise out of or relate to Grupo México's guarantee and accordingly there are no grounds for exercise of specific jurisdiction.

Even assuming the claims arose out of Grupo México's guarantee, the facts ASARCO and SP Holdings rely on are not sufficient to confer specific jurisdiction over Grupo México in connection with the transfer of the SCC Shares.[22] Further, a number of the factual

---

("Miller Reply Decl.") ¶ 2, Ex. A at ¶ 6(a)(vii) "Grupo Mexico shall execute a guaranty agreement guaranteeing AMC's performance...")

[18]   To the contrary, the Burns Litigation actually seeks to avoid the transaction in its entirety.

[19]   With respect to the Asbestos Plaintiffs, the current plaintiffs in the Burns Litigation, the choice of law and jurisdiction provisions of the consent decree and stock purchase agreement are irrelevant, as choice of law provisions do not apply to entities who were not parties to the contract. *See Williams v. Deutsche Bank Sec., Inc.*, No. 04 Civ. 7588 (GEL), 2005 WL 1414435, at * 5 (S.D.N.Y. June 13, 2005) (denying motion to transfer). As the Asbestos Plaintiffs are not parties to any of these agreements, they cannot rely on the clauses for the jurisdictional analysis or challenge the transactions.

[20]   *See* Consent Decree, Miller Reply Decl. ¶ 2, Ex. A at ¶ 3 (Grupo Mexico is a signatory to this Consent Decree, and Grupo Mexico...[is] solely bound with respect to its obligations set forth in Appendix D; this Paragraph; and Paragraphs 6.d, 9, 10, 39, and 40.")

[21]   *See* Guaranty of Grupo México, S.A. de C.V., Appendix D to the Consent Decree, Miller Reply Decl. ¶ 3, Ex. B at p. 3.

[22]   *See, e.g., Slapshot Beverage Co. v. S. Packaging Mach., Inc.*, 980 F. Supp. 684, 688 (E.D.N.Y. 1992) ("Courts of this Circuit have held that even the physical presence of a defendant in New York for the purpose of negotiating a settlement of a contractual dispute is insufficient to support the exercise of in personam jurisdiction."); *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975) (negotiation of a

allegations in the Opposition Memorandum relate to the activities of SP Holdings, AMC, or ASARCO – not the activities of Grupo México. (*See* Opp. Mem. p. 21. ("AMC used the $231 million..."; "Southern Peru Holdings paid as dividend to ASARCO..."; and "ASARCO used those funds...").)

Plaintiffs reliance on *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) is inapposite. The Supreme Court specifically held that the defendants' contacts "with the State of Texas were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment." *Helicopteros Nacionales*, 466 U.S. at 418-19. The Supreme Court premised its holding on the fact that a contract-negotiation session in Houston, accepting checks in its New York bank accounts, purchasing equipment and training services in the U.S., and sending personnel to Texas for training were insufficient to be considered "continuous and systematic general business contacts." *Id.* at 416.[23]

### C. Grupo México is Not Subject to General Jurisdiction Based on its Contacts in New York or the United States

Even assuming that this Court should apply a nationwide contacts analysis, Grupo México's nationwide contacts are insufficient to subject it to general personal jurisdiction.[24] The constitutional requirement for general jurisdiction is considerably more stringent than that required for specific jurisdiction. *See Frontera Res. Azerbaijan*, 479 F. Supp. at 379; *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003) (denying

---

settlement agreement not sufficient to confer personal jurisdiction); *Schenker v. Assicurazioni Generali S.P.A. Consol.*, No. 98 Civ. 9186 (MBM) 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 15, 2002) (maintaining bank accounts in New York not sufficient to confer general jurisdiction over a corporation).

[23]  Plaintiffs remaining case law fares no better. *See United States v. Int'l Bhd of Teamsters*, 945 F. Supp. 609 (S.D.N.Y. 1996) (finding that Canadian company's actions specifically violated an agreement and a court order in the United States).

general jurisdiction over French corporation). General jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the United States. *Purdue Research Found.*, 338 F.3d at 787 (*citing Helicopteros Nacionales*, 466 U.S. at 416). Grupo México's contacts with the United States must be so extensive to be tantamount to Grupo México being "constructively present" in the United States. *See id.* ASARCO and SP Holdings suggest no basis that would permit concluding that Grupo México is "constructively present" in the United States. *See Frontera Resources Azerbaijan*, 479 F. Supp. at 386 (holding that signing a loan agreement that included a U.S. bank and entering into contracts with U.S. oil companies "did not come close to approximating a physical presence" in the United States).

## CONCLUSION

For the foregoing reasons, Grupo México respectfully requests that the Court grant its motion to remand, or, in the alternative, dismiss the Amended Complaint.

---

[24] At least one court has previously found that Grupo México was not subject to personal jurisdiction in the United States. *See Town of Superior, Montana v. ASARCO, Inc.*, CV-01-147-M-DWM (D. Mont. April 22, 2004) (No. 157) (*See* Miller Reply Decl. ¶ 4, Ex. C.)

Dated: July 16, 2007

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _/s/ David S. Cohen /SRM/_
Luc A. Despins (LD 5143)
Stacey J. Rappaport (SR 9973)
J. Ryan Miller (JM 3370)
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000
(212) 530-5219 (facsimile)

David S. Cohen (DC 1268)
Donna F. Mulvihill (DM 6644)
International Square Building
1850 K Street, NW, Suite 1100
Washington D.C. 20006
(202) 835-7500
(202) 835-7586 (facsimile)

*Attorneys for Defendant Grupo México,
S.A.B. de C.V., a Mexican Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2007, a copy of Defendant Grupo México S.A.B. de C.V.'s Memorandum of Law in Further Support of its Motion to Remand or, in the Alternative, to Dismiss the Amended Complaint, dated July 16, 2007, was served by e-mail as follows:

G. Irvin Terrell, Jr.
Samuel W. Cooper
Michael Massengale
Rebeca Huddle
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
(713) 229-1231
(713) 229-2831 (facsimile)
irv.terrell@bakerbotts.com
samuel.cooper@bakerbotts.com
michael.massengale@bakerbotts.com
rebeca.huddle@bakerbotts.com

Jack Kinzie
Fernando Rodriguez
Eric Soderlund
Thomas E. O'Brien
Baker Botts, LLP
2001 Ross Avenue
Dallas, Texas 75201
(214) 661-6500
(214) 661-6503 (facsimile)
jack.kinzie@bakerbotts.com
fernando.rodriguez@bakerbotts.com
eric.soderlund@bakerbotts.com
tom.obrien@bakerbotts.com

*Attorneys for Non-parties
ASARCO LLC and Southern Peru Holdings,
LLC*

Alan B. Rich
Baron & Budd, P.C.
The Centrum
3102 Oak Law Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605
(214) 520-1181 (facsimile)
arich@baronbudd.com

*Attorneys for Plaintiffs Burns and Pavkovich*

J. Ryan Miller, Esq.