and laboratory work, where such costs were the low bid out of at least three bids and were included on an Annual Budget, only to the extent that ASARCO submits documentation establishing that such costs have already been incurred. The United States and ASARCO shall have thirty (30) days from the date of service of a copy of any Claim in which to serve an objection to that Claim, indicating the basis for contending the Claim is not authorized under the Annual Budget or is not properly documented or supported. Such objection shall be served on the Trustee, the Performing Entity making the Claim, and the United States or ASARCO as appropriate. If there is no objection within thirty days from the date of service of a copy of the Claim, the Trustee shall promptly pay the Claim to the Performing Entity subject to any limitation on payments provided in the Trust Agreement, unless the Trustee concludes that such payment is not authorized under the Annual Budget or that the Claim was not properly documented or supported. In the event that there is an objection or the Trustee determines that the Claim as submitted should not be paid, the Performing Entity making the Claim shall promptly submit a written presentation to the Trustee in support of payment of the Claim or shall withdraw the Claim. The Trustee shall promptly make an independent determination as to whether to allow the Claim, and shall notify the United States, ASARCO, and the Performing Entity of his or her decision. The decision of the Trustee to pay a Claim is not subject to judicial review except upon an allegation by ASARCO or the United States that the Trustee exceeded his or her legal authority in making that decision. The decision of the Trustee to deny a Claim is subject to judicial review only upon petition of the Performing Entity that submitted the Claim alleging that the Trustee was in error in concluding that payment of the Claim was not authorized under the Annual Budget or that the Claim was not properly documented or supported.

    29.    The Trustee shall be authorized to directly reimburse a contractor of a Performing Entity, except a contractor of the United States, for a Claim or a portion thereof upon submission of unpaid contractor invoices with the Claim and a statement by the Performing Party that the contractor has not yet been paid and is to be paid directly by the Trustee.

CONFIDENTIAL                                                                                           GM_BURNS_010154

30. If an Annual Budget accepted by the Trustee designates EPA as the Performing Entity for Environmental Response work at a Site, the Trustee shall transfer the amount budgeted for that work from the Environmental Trust to a special account established by EPA for that Site within the Hazardous Substances Superfund without the need for the filing of a Claim. The Trustee shall make the transfer, in accordance with instructions provided by EPA, by the later of (a) ten days after the Trustee's acceptance of the Annual Budget designating EPA as the Performing Party, or (b) ten days after receipt of the payment under Note B being allocated in that Annual Budget. EPA may utilize the transferred funds only to pay for performance or oversight of the work specified for the relevant Site in the Annual Budget. Within 60 days after completion of that work, EPA shall submit a report to the Trustee documenting the work performed and the costs incurred for the work. EPA shall provide the same degree of documentation as required in Paragraph 28, and the process of reviewing, challenging and approving such submissions shall be the same as set forth in Paragraph 28. If the United States has expended less than the full amount transferred to it under this Paragraph for performance or oversight of the Environmental Response work specified in the Annual Budget, it shall return the excess proceeds to the Trust. If the Trustee, after review of EPA's report, determines that EPA expended less than the full amount transferred on performance or oversight of the work specified in the Annual Budget and has not returned the excess proceeds to the Trust, the Trustee shall so notify EPA and shall request repayment of the amount not expended on that work. EPA shall have thirty days either to challenge the Trustee's determination by petition to this Court or to pay the amount requested to the Trustee for redeposit into the Environmental Trust Account. If the Trustee's determination is upheld in whole or in part, EPA shall, within thirty days, pay the amount determined to be payable to the Trustee for redeposit into the Environmental Trust.

31. Any Claim or portion thereof not paid solely because there was insufficient money in the Environmental Trust or because it exceeded the amount budgeted in the Annual Budget for any calendar year may be considered for inclusion in the Annual Budget for the following calendar year.

CONFIDENTIAL                                                                                          GM_BURNS_010155

32. Any portion of the Environmental Trust not expended in a given year shall be available to pay Environmental Response Costs in the following calendar year.

CONFIDENTIAL

GM_BURNS_010156

## X. COVENANTS OF THE UNITED STATES

### Temporary Deferral of Existing Environmental Obligations

33. The United States agrees that the total annual Environmental Response Costs that the United States shall require ASARCO to incur or pay during calendar years 2003 through 2005 pursuant to any consent decree or administrative order, including but not limited to those listed in Paragraphs C, D, or E, over and above the Environmental Response Costs designated for funding by the Environmental Trust during those calendar years pursuant to Section VIII of this Consent Decree, shall not exceed the following limits:

Calendar Year 2003 - $2 million;

Calendar Year 2004 - $2.5 million; and

Calendar Year 2005 - $3 million.

Subject to the reservation of rights set forth in Section XII, the United States agrees

    a. not to seek judicial enforcement against ASARCO of any consent decree or administrative order, and

    b. not to seek judicial enforcement to recover costs of Environmental Response work incurred by the United States prior to February 1, 2003,

to the extent that such enforcement would require ASARCO to incur or pay Environmental Response Costs during calendar years 2003 through 2005 in excess of the limits prescribed in this Paragraph, provided that ASARCO remains in compliance with all obligations imposed under the terms and conditions of this Consent Decree and all agreements or schedules arising thereunder, and provided that the payments to be made under Note B as assured by the Guaranty are not in default. Costs incurred by ASARCO in connection with Environmental Response other than such Environmental Response as the United States directs ASARCO to perform shall not be included for purposes of calculating credit towards the annual limits prescribed in this Paragraph. In calculating Environmental Response Costs for purposes of the limits established in this Paragraph only, ASARCO may include internal costs that are incurred in lieu of costs that otherwise would have been expended for an outside contractor for performance of the same Environmental Response work. Such costs

23

CONFIDENTIAL

GM_BURNS_010157

may be included only if ASARCO and the United States agree in advance on the scope of the work by ASARCO employees to be included in such credit and the specific amount to be credited.

### Other Covenants and Agreements

34. Any payments actually made to the United States from the Environmental Trust for a particular Site shall be credited by the United States to the appropriate account for that Site. Environmental Response work performed at a Site that is funded by monies credited to the appropriate account for that Site under this Paragraph shall reduce the liability of ASARCO and any other potentially responsible parties at that Site in accordance with applicable law. The United States covenants and agrees not to seek reimbursement from ASARCO of any amounts credited to a Site account pursuant to this Paragraph.

35. The United States covenants and agrees not to seek from ASARCO stipulated or statutory penalties based on any failure of ASARCO to comply fully with any requirement to perform Environmental Response work or any requirement under an existing CERCLA or RCRA consent decree or administrative order that requires ASARCO to provide financial assurance for Environmental Response work to be performed under that decree or order, where such noncompliance has occurred between December 1997 and the date of entry of this Consent Decree.

36. The United States covenants and agrees not to seek from ASARCO stipulated or statutory penalties based on any failure of ASARCO to comply fully with any requirement under an existing CERCLA or RCRA consent decree or administrative order that requires ASARCO to provide financial assurance for Environmental Response work to be performed under that decree or order, where such noncompliance occurs during calendar years 2003, 2004 and 2005, provided that ASARCO remains in compliance with all obligations imposed under the terms and conditions of this Consent Decree and all agreements or schedules arising thereunder, and provided that the payments to be made under Note B as assured by the Guaranty are not in default. However, nothing in this Paragraph limits the rights of the United States to seek information about ASARCO's financial status.

CONFIDENTIAL                                                                                              GM_BURNS_010158

37. Effective upon the occurrence of all events required to occur on or before the Closing Date, as set forth in Paragraph 6, and not before such time, the United States covenants not to sue and agrees not to pursue all of its Environmental Response Costs incurred prior to February 1, 2003, for: (a) the Circle Smelting Non-Time Critical Removal Site; (b) the Globe Plant Site; and (c) the Murray Smelter Consent Decree - Relevant Section. In addition, the United States covenants not to sue and agrees not to pursue $2 million of its response costs incurred prior to February 1, 2003, for the Commencement Bay Nearshore/Tideflats Superfund Site - Relevant Operable Units.

38. Effective upon the occurrence of all events required to occur on or before the Closing Date, as set forth in Paragraph 6, and not before such time, the United States covenants not to sue and agrees not to pursue any legal challenge to the transfer of the Defendants' ownership interest in SPCC stock based on a claim that the transfer was not for sufficient value received or based on any other claim alleged in the Complaint. Furthermore, as provided in Paragraph 7, the Stipulation shall be deemed terminated upon the occurrence of all events required to occur on or before the Closing Date as set out in Paragraph 6, subject to the reopener provisions of Paragraph 46.

### XI. COVENANTS OF ASARCO, SPHC, AMC AND GRUPO MEXICO

39. ASARCO, SPHC, AMC, and Grupo Mexico agree not to assert any claims or causes of action against the United States, or its contractors or employees, in connection with the matters addressed by or work performed under this Consent Decree, including but not limited to:

   a. any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law, for Environmental Response Costs paid by the Environmental Trust or for costs subject to the United States' covenant not to sue set forth in Paragraph 37;

CONFIDENTIAL                                    GM_BURNS_010159

CONFIDENTIAL

  b. any claims arising out of the work performed under any Annual Budget for which a Claim is paid by the Environmental Trust; and

  c. any claims arising out of the United States' challenge to ASARCO/SPHC's transfer of its ownership interest in SPCC stock once such transfer is completed.

 40. ASARCO, SPHC, AMC, and Grupo Mexico agree not to assert any claim or defense against the United States in any subsequent administrative or judicial proceeding initiated by EPA, DOI or USDA, or by the United States on behalf of EPA, DOI or USDA, for injunctive relief, recovery of response costs, or other appropriate relief relating to matters within the scope of this Consent Decree, based upon the principles of waiver, <u>res judicata</u>, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised in the subsequent proceeding were or should have been brought in this proceeding.

## XII. RESERVATION OF RIGHTS

 41. The United States reserves, and this Consent Decree is without prejudice to, all rights against ASARCO/SPHC with respect to all matters not expressly included within the covenants and agreements of the United States set forth in Section X, including but not limited to the right to file and enforce liens authorized under applicable environmental statutes and the right to pursue enforcement action against ASARCO, with respect to:

  a. liability of ASARCO under CERCLA, RCRA, the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and any other environmental statute or the regulations promulgated thereunder;

  b. liability of ASARCO under any existing consent decrees or administrative orders, including but not limited to those listed in Paragraphs C, D, or E;

  c. liability for response actions and costs incurred or to be incurred by the United States;

  d. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

26

GM_BURNS_010160

e.  liability for unlawful transfers of corporate assets or other prohibited transactions regardless of whether such transactions are related to obligations within the scope of this Consent Decree, except as provided by Paragraph 38, and

f.  liability for failure of ASARCO to meet a requirement of this Consent Decree.

42.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against ASARCO with respect to criminal liability.

### XIII. RELATIONSHIP TO EXISTING CONSENT DECREES AND ORDERS

43.  Nothing in this Consent Decree shall be deemed to modify any existing consent decree or administrative order. If the Parties conclude that the schedule for work or payments set forth in an existing consent decree or administrative order should be modified because (a) the work and/or payments were due during the period covered by the United States' agreement in Paragraph 33 to forbear from enforcement of existing consent decrees and administrative orders and were covered by that agreement, and (b) the work was not required in the pertinent Annual Budget(s) under this Consent Decree, the Parties shall seek in good faith to modify the schedule set forth in the relevant consent decree or administrative order to take into account the period in which the United States agreed to forbear from enforcement. Where the consent of other parties to the consent decree or administrative order is required to accomplish a modification, the Parties shall jointly seek to obtain such consent. Nothing in this Paragraph affects any requirement for court approval or public notice and comment that may apply to a proposed modification to an existing consent decree or administrative order on consent.

### XIV. EFFECT OF NONCOMPLIANCE

44.  The transfer conditions set forth in Paragraph 6 are necessary and material components of the agreement embodied in this Consent Decree and are a condition precedent to all other covenants and agreements set forth in this Consent Decree. Should the transfer of ASARCO/SPHC's ownership interest in SPCC stock fail to occur by June 1, 2003, such failure shall constitute a material breach of this Consent Decree. In the event of such

CONFIDENTIAL                                                                                           GM_BURNS_010161

material breach, (i) this Consent Decree shall become null and void in its entirety, including all agreements and covenants set forth in this Consent Decree, (ii) the Stipulation shall remain in full effect, and (iii) the United States may seek to avail itself of any other remedies available by law or equity. The June 1, 2003 deadline may be extended by the mutual written agreement of all signatories to this Consent Decree.

45. Should ASARCO/SPHC transfer its ownership in SPCC stock in a manner that fails to conform fully and completely with all conditions identified in Paragraph 6, such failure shall constitute a material breach of this Consent Decree. In the event of such material breach, (i) the covenants of the United States as set forth in Section X of this Consent Decree shall become null and void; (ii) the United States in its discretion may declare this Consent Decree null and void in its entirety by written notice to ASARCO/SPHC; (iii) the Stipulation shall remain in full effect; and (iv) the United States may seek to avail itself of any other remedies for such breach that are available by law or equity.

46. Should the transfer of ASARCO/SPHC's ownership in SPCC stock be subsequently completely unwound, invalidated, or nullified pursuant to a judgment issued by a court of competent jurisdiction, (i) this Consent Decree shall become null and void in its entirety, including all agreements and covenants set forth in this Consent Decree, except that the covenants of ASARCO, SPHC, AMC and Grupo Mexico set forth in Paragraphs 39.b, 39.c, and 40 shall remain in valid and in full effect; (ii) the Stipulation shall be reopened and shall be in full effect; and (iii) the United States may seek to avail itself of any other remedies available by law or equity.

47. Should the assignment of Note B and/or the Guaranty to the Environmental Trust be unwound, set aside or otherwise be rendered unavailable for use by the Environmental Trust in the manner set forth in Sections VII and VIII, the United States may declare any or all agreements and covenants set forth in Paragraphs 33 through 37 null and void.

48. Except as provided below, upon ASARCO's failure or inability to successfully contract for or perform the Environmental Response work at any Site for which ASARCO

CONFIDENTIAL                                                                                              GM_BURNS_010162

is designated a Performing Entity in any Annual Budget, the United States may upon written notice to ASARCO and the Trustee (i) withdraw its covenant set forth in Paragraph 33 of this Consent Decree with respect to such Site, (ii) terminate ASARCO' right to participate in the performance of Environmental Response work under the terms of Section VII at such Site, (iii) terminate ASARCO's right to seek payment of Claims under the terms of Section IX with respect to such Site, and (iv) assume the performance of any Environmental Response work assigned to ASARCO at such Site by any Annual Budget or amendment and the right to submit Claims for such work. In the event that ASARCO's failure or inability to successfully contract for or perform the Environmental Response work at any Site for which ASARCO is designated a Performing Entity in any Annual Budget is caused by a Force Majeure, this Paragraph shall not apply to such nonperformance.

49. The actions of the United States under this Section are subject to the right of ASARCO to seek review by this Court of any such action within fifteen days of service of any notification prescribed by this Section. In any such proceeding, ASARCO shall have the burden of establishing by clear and convincing evidence that such action is improper.

## XV. APPENDICES

50. The following appendices are attached and incorporated into this Consent Decree:

Appendix A is Note A ($123 million promissory note issued by AMC to SPHC).

Appendix B is Note B ($100 million promissory note issued by AMC to SPHC).

Appendix C is the Agreement of Sale.

Appendix D is the Guaranty Agreement.

Appendix E is the irrevocable assignment by SPHC of Notes A and B and the Guaranty to ASARCO.

Appendix F is the Trust Agreement.

Appendix G is the Security Agreement between ASARCO and the United States.

Appendix H is the irrevocable assignment by ASARCO of Note B and the Guaranty to the Environmental Trust.

CONFIDENTIAL                                                                                    GM_BURNS_010163

Appendix I contains the documents supporting ASARCO's assertion that the transfer of its ownership interest in SPCC as structured in Paragraph 6 provides ASARCO and SPHC with reasonably equivalent value in return for the transfer of the SPCC shares.

### XVI. ADDITIONAL PROVISIONS

51. Except as expressly stated herein, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a signatory to this Consent Decree.

52. This Consent Decree does not provide ASARCO with protection against contribution claims by third parties relating to Environmental Response at any Site.

53. Notwithstanding anything to the contrary in this Consent Decree, nothing in this Consent Decree releases or nullifies ASARCO's liability to any non-federal governmental entity under police and regulatory statutes or regulations, or alters or nullifies any non-federal governmental entity's police and regulatory authority and discretion to require ASARCO's compliance with applicable law.

54. Whenever, under the terms of this Consent Decree, written notice is required to be given, or a report or other document is required to be served or provided by one Party to another, it shall be directed to the individuals at the addresses specified below via U.S. mail or overnight mail, unless those individuals or their successors give notice of a change of address to the other parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided.

As to the United States:

To the Department of Justice:

For Overnight Mail:
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
1425 New York Ave. NW
Washington, DC 20005
Ref. DOJ File No. 90-11-3-128/5

For Regular Mail:
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice

CONFIDENTIAL

GM_BURNS_010164

P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Ref. DOJ File No. 90-11-3-128/5

To the Environmental Protection Agency:

For Overnight Mail:
Office of Site Remediation Enforcement
Regional Support Division
Environmental Protection Agency
Ariel Rios Building South, Room 4202
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

For Regular Mail
Office of Site Remediation Enforcement
Regional Support Division (MC 2272A)
Environmental Protection Agency
Ariel Rios Building South,
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

To the Department of the Interior:

Regional Solicitor
U.S. Department of the Interior
500 NE Multnomah, Suite 607
Portland, Oregon 97232

To the Department of Agriculture:

USDA Office of General Counsel
740 Simms St., Room 309
Golden, CO 80401

As to ASARCO:

DOUGLAS McALLISTER
ASARCO Incorporated
2575 E. Camelback Road
Suite 500
Phoenix, AZ 85016-4240
(602) 977-6507

An address for the Trustee shall be provided upon the establishment of the Trust and the identification of the Trustee.

55.   This Consent Decree may not be modified without the prior written consent of the Parties hereto or their successors in interest and the approval of the Court, except that Appendices F and G (including attachments) may be modified according to their terms and conditions without court approval.

31

CONFIDENTIAL

GM_BURNS_010165

56. This Consent Decree may be delivered by courier, mail, or facsimile. It may be executed in counterparts, each of which shall be deemed to be an original, and all of such counterparts taken together shall be deemed to constitute one and the same agreement.

57. The undersigned representatives of a Party to this Consent Decree certify that they are fully authorized to enter into this Consent Decree and to execute and legally bind such Party to this Consent Decree.

58. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree. The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

59. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment in this action between and among the United States and the Defendants.

SO ORDERED:

FEBRUARY 2, 2003
Date

HON. ROBERT C. BROOMFIELD
Judge
United States District Court
District of Arizona

32

CONFIDENTIAL                                                        GM_BURNS_010166

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. ASARCO, et al.*

FOR THE UNITED STATES:

U.S. Department of Justice
Environment and Natural Resources
Division

*/s/ Kelly A. Johnson*
KELLY A. JOHNSON
Principal Deputy Assistant Attorney General

*/s/ John C. Cruden*
JOHN C. CRUDEN
Deputy Assistant Attorney General

*/s/ David A. Keller*
DAVID L. DAIN
STEVEN A. KELLER
KIM J. SABO
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources
    Division
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044
(202) 514-3644

SUE KLEIN
Assistant United States Attorney
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004
(602) 514-7740

CONFIDENTIAL                                                      GM_BURNS_010167

01/30/03 THU 14:04 FAX 202 514 2583   ENRD   ☒003
01/29/03 WED 17:00 FAX 202 501 0259   EPA OFF. OF ENFORCEMENT

1. THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. ASARCO, et al.*

U.S. Environmental Protection Agency

*[signature]*

JOHN PETER SUAREZ
Assistant Administrator
Office of Enforcement and Compliance Assurance

Of Counsel:

CARA STEINER-RILEY
U.S. Environmental Protection Agency

34

CONFIDENTIAL

GM_BURNS_010168

1 | THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. ASARCO, et al.*
2 |
3 | FOR ASARCO INCORPORATED:
4 |
5 |
6 |
7 |
8 |
9 | *[signature]*
10 | DOUGLAS E. McALLISTER
     Vice President, General Counsel & Secretary
11 | ASARCO Incorporated
     2575 E. Camelback Road
     Suite 500
12 | Phoenix, AZ 85016-4240
     (602) 977-6507
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

CONFIDENTIAL                                                    GM_BURNS_010169

JAN-28-2003 15:03   FROM-                                T-960  P.004/006  F-826

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v.*
2  *ASARCO, et al.*

3  FOR SOUTHERN PERU HOLDINGS CORPORATION:

*[signature]*

ERNESTO DURAN TRINIDAD
CORPORATE CONTROLLER

36

CONFIDENTIAL                                           GM_BURNS_010170

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. ASARCO, et al.*

2

3  FOR AMERICAS MINING CORPORATION:
   Solely with respect to its obligations as defined in Paragraph 3

4

5

6  _____

7  HECTOR GARCIA DE QUEVEDO

8  MANAGING DIRECTOR

9

10  _____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

37

CONFIDENTIAL                                                                        GM_BURNS_010171

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. ASARCO, et al.*

3  FOR GRUPO MEXICO S.A. de C.V.:
Solely with respect to its obligations as defined in Paragraph 3



DANIEL TELLECHEA
MANAGING DIRECTOR

38

CONFIDENTIAL                                                                GM_BURNS_010172