FILED
MISSOULA, MT
2004 APR 22 AM 9 04
PATRICK E. DUFFY
BY _____
DEPUTY CLERK

RECEIVED
APR 23 2004
PHILLIPS & BOHYER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| THE TOWN OF SUPERIOR, MONTANA, a municipality, | ) ) ) | CV 01-147-M-DWM |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| ASARCO, INCORPORATION, a New Jersey Corporation, | ) ) ) | |
| Defendant. | ) ) | |

I. Introduction and Factual Background

Plaintiff Town of Superior ("Superior") alleges claims against Asarco, Inc. ("Asarco"), Americas Mining Corporation ("AMC") and Grupo de Mexico ("Grupo") for trespass, nuisance, negligence and Montana constitutional violations. Superior's allegations are based on the alleged effects of Asarco's past mining operations in the area. Specifically, Superior alleges that the operation of the mine contaminated the town's water

-1-

supply through the deposit of harmful chemicals into the soil and water. Superior alleges further that Asarco encouraged Superior residents to use the tailings left over from the mining operation in several public and private works, but failed to warn them of the dangers of using tailings laced with chemicals.

Superior's Second Amended Complaint names AMC, Asarco's corporate parent, and Grupo, Asarco's corporate grandparent, as additional Defendants. Grupo has appeared specially to contest personal jurisdiction pursuant to F.R.Civ.P. 12(b)(2).

Defendant Grupo is incorporated under the laws of Mexico and has its principal place of business in Mexico City. Asarco, a New Jersey Corporation, is a subsidiary of AMC, a Delaware Corporation, which in turn is a subsidiary of Grupo. Grupo acquired Asarco on October 25, 1999. In that transaction, ASMEX Corporation, a subsidiary of Grupo, was merged into Asarco, and Asarco became Grupo's subsidiary. One year later, on October 31, 2000, Grupo reorganized by incorporating AMC as a subsidiary of Grupo and making Asarco a subsidiary of AMC.

## II. Analysis

Grupo challenges this Court's jurisdiction, arguing that the requirements for the exercise of personal jurisdiction are not satisfied under Montana law or the Constitution. Grupo's challenge is based on its contention that it is a Mexican corporation that does no business in Montana and has no contacts

-2-

with the state.

Superior argues that personal jurisdiction over Grupo is proper based on several theories. First, Superior contends that the Court has, under Montana's long-arm statute, specific or general jurisdiction over Grupo directly because of Grupo's forum-related acts or omissions. In the event the Court finds that its lacks jurisdiction over Grupo directly, Superior contends that Asarco's jurisdictional ties can be imputed to Grupo under alter ego or agency theories to create jurisdiction. Grupo maintains that Superior has failed to allege facts sufficient to support either theory.

A. Montana's Long-arm Statute

In a diversity case such as this one, establishment of personal jurisdiction over a party requires first that the state statute of the forum confers personal jurisdiction over the non-resident defendant, and second, that the exercise of jurisdiction does not violate federal constitution principles of due process. Haisten v. Grass Valley Medical Reimbursement Fund, 784 F.2d 1392, 1396 (9th Cir. 1986). When a district court, in considering a jurisdictional challenge, takes evidence at a preliminary hearing as this Court has done, the plaintiff "must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial." Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987) (citation omitted).

Under Montana law, a court can exercise personal jurisdiction over a non-resident defendant only if personal jurisdiction exists pursuant to M.R.Civ.P. 4B.1 and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice embodied in the due process clause of the federal Constitution. Threlkeld v. Colorado (2000), 303 Mont. 432, 435. If a plaintiff fails to establish that personal jurisdiction exists under Rule 4B.1, the second part of the test need not be addressed. Id.

Rule 4B.1 allows for either general or specific jurisdiction. A person is subject to general jurisdiction if he is found within the state. To be found within the state a defendant must have "substantial, systematic and continuous" contacts with Montana. Rule 4B.1; Threlkeld, 303 Mont. at 435. Specific jurisdiction exists when the plaintiff's cause of action arises from any of the specific circumstances set forth in Rule 4B.1(a)-(f). Id. Those circumstances are:

> (a) the transaction of any business within this state;
> (b) the commission of any act which results in accrual within this state of a tort action;
> (c) the ownership, use or possession of any property, or of any interest therein, situated within this state;
> (d) contracting to insure any person, property or risk located within this state at the time of contracting;
> (e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or
> (f) acting as director, manager, trustee, or other

-4-

officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

M.R.Civ.P. 4B.1.

Grupo contends that neither general or specific jurisdiction exists here, and cites in support the Affidavit of Daniel Tellechea Salido, Grupo's President of finance and administration. According to Salido, Grupo is not licensed to do business in Montana; has never done business in Montana; has no offices or phone listings in Montana; owns no property in Montana; has incurred no obligation to pay taxes in Montana; has no employees or agents in Montana; does not sell or deliver goods in Montana; and has committed no torts in Montana. Salido Aff., ¶¶ 4-13. Superior has no offered no evidence to contradict Salido's statements, but argues that specific jurisdiction over Grupo lies because Grupo has committed acts which resulted in the accrual of a tort claim in Montana for failure to abate the alleged nuisance caused by Asarco's mining activities. As Grupo points out, Superior's theory attempts to circumvent the issue of corporate separateness by assigning to Grupo a duty which, if it exists in law, is rightfully assigned to Asarco, i.e., that of abating the ongoing nuisance by cleaning up the area in and around the town of Superior. This theory is not one which can support a finding of jurisdiction over Grupo directly under 4B.1. If it has merit, it is properly considered as part of Grupo's

-5-

imputed contacts argument, which is discussed below.

Superior has failed to allege or produce any proof that would support a finding of general or specific jurisdiction over Grupo under Rule 4B.1 and <u>Threlkeld</u>, leaving no basis for a finding of direct personal jurisdiction over Grupo. If the Montana Federal Court is to exercise jurisdiction, it must be based on proof of an agency or an alter ego relationship sufficient to warrant imputing Asarco's forum contacts to Grupo.

B. Imputed Contacts

Superior argues there is personal jurisdiction over Grupo because the forum-related activities of Asarco can be imputed to Grupo under either an agency or an alter ego theory. In support of its argument, Superior has made the following factual allegations, which Grupo does not dispute:

> (1) That Grupo and Asarco share a "common command team" of top level executives;
>
> (2) That as of February 4, 2003, Asarco could not fully comply with its environmental remedial obligations pursuant to consent decrees and civil judgments, and stood exposed to claims or stipulated and statutory penalties in excess of $100,000,000.00 for non-compliance;
>
> (3) That, as part of a Consent Decree resolving environmental enforcement action by the Justice Department against Asarco, Grupo voluntarily agreed to guarantee Asarco's previously established environmental liabilities for sites in eight states including an East Helena site in Montana; and
>
> (4) That, as part of the Consent Decree, Grupo consented to federal court jurisdiction in Arizona for purposes of enforcement proceedings relating to the

-6-

Consent Decree and Grupo's guarantee.

Additionally, Superior makes several conclusory accusations in support of its argument which are disputed by Grupo and are not based on any factual evidence. First, Superior alleges that the Consent Decree to which Grupo is a signatory was "prompted by the Justice Department's concern that the sale of the South Peru Copper Company ["SPCC"] by Asarco...was not an arm's length transaction." Superior does not cite to the Consent Decree itself or to any other evidence in support of its allegation. Likewise, Superior claims, without offering factual support, that Asarco's current undercapitalization is due to the fact that Grupo, "in its control and exploitation of Asarco, bled off all Asarco assets (now to include the 'jewel,' SPCC)." Superior contends that Grupo "has no 'business' of its own; it is merely a holding company, operating through subsidiaries, including Asarco." In support, Superior cites information on Grupo's website stating, "Asarco Incorporated was acquired by Grupo Mexico in November 1999 and now serves as the operating subsidiary of Grupo Mexico in the United States." Grupo correctly argues that the language on its website is not sufficient factual support for an allegation that Grupo is merely a holding company. As the Ninth Circuit held in Doe v. Unocal Corp., 248 F.3d 915, 928 (9th Cir. 2001), references in an annual report to subsidiaries of the parent are not sufficient to

-7-

establish an alter ego relationship, even in conjunction with other evidence. (Citing <u>Azkona, Inc. v. E.I. Du Pont De Nemours and Co.</u>, 607 F.Supp. 227, 238 (D.Del. 1984). Grupo's website is similar to an annual report to the extent that it is a representation to the public about the nature of Grupo's corporate organization, and the rule set forth in <u>Doe</u> applies with equal force here.

In response to Superior's factual allegations, and in support of its challenge to personal jurisdiction, Grupo cites the Daniel Tellechea Salido's Affidavit, in which he states that Grupo and Asarco are and have always been separate corporations; that they conduct separate board meetings, keep separate books and records, and make their own separate management decisions; that Asarco was adequately capitalized when Grupo acquired it in 1999; and that Grupo does not regularly subsidize Asarco. Salido Aff., ¶¶ 15-22. Grupo also points to discovery responses stating that Grupo has not been named as a responsible party for any environmental liabilities in the United States and was not a party to the action which gave rise to the Consent Decree. Requests for Admission Nos. 30, 42.

Superior advances both agency and alter ego theories as bases for a finding of personal jurisdiction based on imputed contacts, both of which are recognized y the Ninth Circuit. <u>Doe</u>, 248 F.3d at 926. As the following discussion demonstrates,

-8-

Superior has failed to meet its burden by producing proof adequate to support a finding of jurisdiction on either theory.

1. Agency Theory

Superior argues that Grupo so dominates Asarco that Asarco is Grupo's agent in Montana, providing a basis for imputing Asarco's contacts to Grupo. Superior relies on SGI Air Holdings II LLC v. Novartis International AG, 239 F. Supp. 2d 1161, 1165 (D. Colo. 2003), in which the district court applied the Tenth Circuit's test for imputed contacts on an agency theory. The Ninth Circuit recently stated its test for personal jurisdiction based on the agency theory in Doe. The court held that "the agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have the representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" 248 F.3d at 928 (quoting Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1405 (9th Cir. 1994). In Doe, the court found no personal jurisdiction over a non-resident defendant corporation where there was "no evidence that in the absence of Total's California subsidiaries involved in petrochemical and chemical operations, Total would conduct and control those operations." Id. at 929.

The same is true in this case. Asarco was not created to

-9-

transact Grupo's business in Montana. Grupo had no business in Montana prior to its acquisition of Asarco, and, in Asarco's absence, would once again have no ties to the state. Asarco's operations in Montana since 1999 have been limited to the management of its environmental liabilities. It cannot then logically be said that Asarco's business would be continued by Grupo if Asarco did not exist, because the absence of Asarco would mean the absence of any environmental liability to be managed. The facts of this case do not satisfy the agency test, which requires "at an irreducible minimum" that the presence of the agent substitute for the presence of the principal. Doe, 248 F.3d at 930.

2. Alter Ego Theory

Both Ninth Circuit and Montana law recognize an alter ego doctrine under which the corporate form may be disregarded when a parent and its subsidiary have failed to properly maintain corporate separateness. Doe, 248 F.3d at 226; Hando v. PPG Industries (1989), 236 Mont. 493, 498. In Doe, the Ninth Circuit stated that to satisfy the alter ego test, a plaintiff must make a prima facie showing "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." 248 F.3d at 926 (quoting AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591

-10-

(9th Cir. 1996).

Among the factors the Ninth Circuit will consider in deciding the first prong of the test are the degree of the parent's control over the subsidiary's internal affairs or daily operations; whether the subsidiary is undercapitalized; whether the subsidiary serves as a mere marketing conduit of the parent; and whether corporate formalities have been observed in loans and other transactions between the parent and subsidiary. Doe, 248 F.3d at 926-28. In Doe, the Ninth Circuit refused to exercise personal jurisdiction on an alter ego theory where the subsidiaries needed the financing and approval of the parent corporation for new acquisitions and received loans from the parent corporation. The court noted that the loan transactions were conducted in accordance with corporate formalities and held that "a parent corporation may be directly involved in financing and macro-management of its subsidiaries" without exposing itself to alter ego liability. Id. at 927.

In AT&T, the Ninth Circuit rejected an alter ego theory where the grandparent corporation had, prior to acquisition of the subsidiary, reviewed the possible environmental issues related to the purchase; a majority of the seats on the subsidiary's board were controlled indirectly by the grandparent; a board member of the grandparent served as chairman of the subsidiary; the subsidiary's financial condition deteriorated

-11-

following the grandparent's purchase; and the subsidiary invested $1.5 million at the parent's request with the interested board members abstaining from the vote. 94 F.3d at 589, 591. The court characterized the relationship as nothing more than "a normal parent-subsidiary relationship." Id. at 591.

The court made a similar determination in Kramer Motors v. British Leyland, 628 F.2d 1175 (9th Cir. 1980). In that case, the plaintiff attempted to establish an alter ego relationship between a parent auto distributor and its United States importer subsidiary. The record showed that some of the parent's directors sat on the board of the subsidiary; that one of the parent's directors served as president of the subsidiary; that the parent had general executive responsibility for the subsidiary and reviewed and approved its major policy decisions; that the parent guaranteed the subsidiary's obligations to United States banks; and that executives of the two corporations worked closely on the pricing of vehicles. Id. at 1177. The court declined to exercise jurisdiction under the alter ego theory, noting that the parent's executives never controlled the subsidiary's board, that the parent never dictated daily internal affairs for the subsidiary, and that the companies dealt with each other as distinct corporate entities. Id. at 1177-78.

By contrast to the foregoing Ninth Circuit decisions rejecting the alter ego theory, in Flynt Distribution Co. v.

Harvey, 734 F.2d 1389 (9th Cir. 1984), the court found personal jurisdiction based on imputed contacts under the alter ego theory. There, the plaintiff made a prima facie showing supporting disregard for the corporate form by providing affidavits indicating the two shareholders of multiple corporations had dealt with the corporations as if they were one, co-mingled assets among the corporations, transferred corporate assets for their own use, and left certain of the corporations undercapitalized. Id. at 1393-94.

With respect to the commonly occurring situation in which a parent and subsidiary share top level executives and managers, the United States Supreme Court recently provided some guidance in United States v. Best Foods, 524 U.S. 51, 69 (1998), in which it held that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary." (Citation omitted.) The Court went on to explain that "directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." 524 U.S. at 69 (internal quotation marks, citation omitted).

Superior has failed to produce facts sufficient to meet its burden of proving personal jurisdiction over Grupo under an alter ego theory. Superior's factual allegations of corporate interrelatedness consist solely of (1) the overlap of top

-13-

management personnel and (2) Grupo's Guarantee given in relation to Asarco's environmental clean-up obligations in eight states including Montana. As the Supreme Court has indicated, the commonality of executives is meaningless absent some more specific allegation of wrongdoing. Grupo's Guarantee of Asarco's liabilities, while one factor potentially weighing in favor of an alter ego relationship, cannot alone support such a finding. That Ninth Circuit's decisions in Doe and Kramer Motors demonstrate that, even among other evidence, a parent's financial support of a subsidiary through a guarantee or an arm's length loan transaction is not evidence of an alter ego relationship.

While the Circuit has not set forth a concrete test for alter ego jurisdiction, it appears from the cases cited herein that the circumstances most likely to lead to a finding of personal jurisdiction under an alter ego theory are (1) a parent's control of the subsidiary's day-to-day internal affairs; (2) a parent's regular subsidization of the subsidiary through non-arm's length transactions; (3) the failure to observe corporate formalities through maintenance of separate books and conducting separate board meetings; and (4) the parent's deliberate undercapitalization of the subsidiary.

In this case, Superior has failed to establish the presence of any of the four circumstances listed above. Grupo's Guarantee of Asarco's environmental liabilities in a single unrelated case,

-14-

without more, is not enough.[1] Because the Court finds that Grupo and Asarco have sufficiently preserved their distinct corporate identities, it need not consider the equities embodied in the second part of the Ninth Circuit's test. Grupo's motion to dismiss for lack of personal jurisdiction is therefore granted.

### III. Order

In accordance with the foregoing, IT IS HEREBY ORDERED that Defendant Grupo Mexico's motion to dismiss for lack of personal jurisdiction (dkt #76) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Superior's motion for default judgment against Grupo Mexico (dkt #144) is DENIED as moot.

DATED this 16 day of April, 2004.

Donald W. Molloy, Chief Judge
United States District Court

---

[1] Superior argues in passing that Grupo's agreement to submit to federal court jurisdiction in Arizona for purposes of enforcement of the Consent Decree to which it is a signatory constitutes a waiver of the jurisdictional objections Grupo raises here. Superior cites no authority, other than the Full Faith and Credit Clause of the Constitution, in support of its argument. Grupo's consensual waiver of its jurisdictional challenge is expressly limited to enforcement of the Consent Decree. Because Superior makes no real effort to develop its argument, and because courts "indulge every reasonable presumption against a waiver of constitutional rights," Johnson v. Zerbst, 304 U.S. 458, 464 (1938), Superior's implied waiver argument is rejected.