USDC SDNY DOCUMENT ELECTRONICALLY FILED DATE FILED: 11/16/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP NELSON BURNS, et al.,

Plaintiffs,

-against-

GRUPO MEXICO S.A. DE C.V., et al.,

Defendants.

07 Civ. 3496 (WHP)

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

Non-parties Asarco LLC ("Asarco") and Southern Peru Holdings, LLC ("SPH") (collectively, the "Asarco Parties") move to substitute themselves as Plaintiffs in this action and to transfer venue to the Southern District of Texas. Defendant Grupo México, S.A. de C.V. ("Grupo Mexico") moves to remand the action to state court or, in the alternative, to dismiss the Complaint for improper service and lack of personal jurisdiction. For the following reasons, the Asarco Parties' motions are granted and Grupo Mexico's motions are denied.

## BACKGROUND

Grupo Mexico owns Americas Mining Corporation ("AMC"), formerly Asarco's immediate parent. (Affidavit of Thomas E. O'Brien, sworn on June 27, 2007 ("O'Brien Aff.") ¶ 2 & Ex. 1: First Amended Complaint dated May 4, 2007, Asarco LLC and Southern Peru Holdings, LLC v. Americas Mining Corporation, No. 07 Civ. 0018 (S.D. Tex.) (the "AMC Action Compl.") ¶¶ 2-6.) Asarco owns 100% of SPH, which until March 31, 2003 was the owner of 54.2% of Southern Peru Copper Corporation ("SPCC"). (AMC Action Compl. ¶ 7.) Asarco contends that, in early 2003, it was insolvent and subject to the "complete control" of

Grupo Mexico and AMC. (AMC Action Compl. ¶ 7.) Asarco further contends that to defraud its creditors, Grupo Mexico and AMC orchestrated a series of self-dealing transactions pursuant to which Asarco sold its indirect controlling interest in SPCC to AMC for approximately $765 million—significantly less than its actual value. (AMC Action Compl. ¶ 43.) Moreover, according to Asarco, Grupo Mexico and AMC forced it to use $450 million of the transaction proceeds to retire debt Grupo Mexico acquired when it purchased Asarco in 1999. (AMC Action Compl. ¶ 43.) Asarco also claims that it was forced to pay $100 million into an environmental trust as part of an agreement to which Grupo Mexico was a party, that it was forced to pay $123 million for a seven-year note from AMC, and that it paid $42 million in inter-company debt. None of the funds were used to pay Asarco's operational expenses. (AMC Action Compl. ¶ 43.)

On October 15, 2004, Plaintiffs Philip Nelson Burns, Mirjana Pavkovich, and Warren Elmer Halpap (collectively, the "Burns Plaintiffs") filed this action in New York State Supreme Court (the "Burns Litigation") against, inter alia, Grupo Mexico. The First Amended Verified Complaint ("Am. Compl."), filed on February 7, 2005, asserts ten state law claims, of which five are relevant to the instant motions. (O'Brien Aff. Ex. 2: Am. Compl. at 14-27.) Claim One alleges constructive fraud in connection with Grupo Mexico's leveraged buyout of Asarco in 1999. (Am. Compl. at 14.) Claim Two alleges constructive fraud in connection with the sale of Asarco's "business equipment" and its "principal assets" for the benefit of Grupo Mexico and AMC, which allegedly left Asarco unable to conduct business. (Am. Compl. at 16.) Claim Three alleges actual fraud in the conveyance of Asarco's assets for the purpose of frustrating future creditors. (Am. Compl. at 17.) Claim Four alleges actual fraud in conveyance with intent to frustrate creditor claims. (Am. Compl. at 17.) Finally, Claim Seven alleges that

the forced sale of Asarco's indirect controlling interest in SPCC was a fraudulent conveyance to insiders. (Am. Compl. at 22-23.)

On August 9, 2005, Asarco filed a voluntary petition for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). (O'Brien Aff. ¶ 6 & Ex. 4: Asarco Bankruptcy Petition dated Aug. 9, 2005.) Asarco filed a Notice of Bankruptcy on October 27, 2005, which resulted in an automatic stay of the Burns Litigation. (O'Brien Aff. ¶ 7 & Ex. 5: Notice of Bankruptcy ¶¶ 2-5.) On December 12, 2006, SPH also filed a voluntary petition in the Bankruptcy Court under chapter 11. (O'Brien Aff. ¶ 8 & Ex. 6: SPH Bankruptcy Petition dated Dec. 12, 2006.)

On February 2, 2007, Asarco commenced an adversary proceeding against AMC in the Bankruptcy Court seeking to recover its indirect ownership interest in SPCC (the "AMC Action"). (O'Brien Aff. ¶ 9.) Asarco subsequently filed an Amended Complaint that added SPH as a plaintiff. (AMC Action Compl.) On March 2, 2007 the Bankruptcy Court reference was withdrawn and the AMC Action was transferred to the United States District Court for the Southern District of Texas. (O'Brien Aff. ¶ 10.) That Court has denied a motion to stay proceedings and discovery is underway on an expedited schedule. (O'Brien Aff. ¶ 11.) AMC has been enjoined from transferring SPCC stock. (O'Brien Aff. 12 & Ex. 8: Order dated Mar. 15, 2007.) The AMC Action involves the same counsel as this case and related parties. (O'Brien Aff. ¶ 19.)

On June 20, 2007, Asarco and SPH filed an Amended Notice of Removal, removing Claims One, Two, Three, Four and Seven of the Burns Litigation (collectively, the "Removed Claims") to this Court. (Amended Notice of Removal, dated June 20, 2007.)

## DISCUSSION

I. Motion to Substitute Plaintiffs

Fed. R. Civ. P. 25(c) provides: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Rule 25(c) is made applicable to this proceeding by Fed. R. Bankr. P. 7025(c). Whether to grant a motion for substitution of parties is committed to the sound discretion of the district court. In re Chalasani, 92 F.3d 1300, 1302 (2d Cir. 1996). However, "such discretion may not be abused by allowing substitution in the absence of a transfer of interest." Chalasani, 92 F.3d at 1302. Accordingly, the Court considers whether a transfer of interest has occurred.

11 U.S.C. § 362(a)(1) provides for an automatic stay, effective on filing of a voluntary bankruptcy petition, of all actions "to recover a claim against the debtor that arose before the commencement of the [bankruptcy proceeding]." Regardless of whether the debtor is a defendant in the action, "a third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362(a)(1)." FDIC v. Hirsch, 980 F.2d 125, 130 (2d Cir. 1992) (quoting 11 U.S.C. § 362(a)(1)). The reasoning behind this rule is that "[w]hile a fraudulent transfer action may be an action against a third party, it is also an action to recover a claim against the debtor. Absent a claim against the debtor, there is no independent basis for the action against the transferee." FDIC, 980 F.3d at 132.

In addition, 11 U.S.C. § 544(b) provides, in relevant part: "[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable

under . . . this title." This provision "allows a bankruptcy trustee or a debtor in possession to assert for the benefit of all creditors the rights that any individual creditor has under applicable state law to avoid fraudulent transfers made prior to filing the bankruptcy petition." Rahl v. Bande, 316 B.R. 127, 131 (S.D.N.Y. 2004) (emphasis added). "[F]raudulent conveyance claims based upon pre-bankruptcy petition transfers by a debtor involve either property of the estate or claims against the debtor, and . . . in either case the trustee has exclusive authority to maintain such actions." United Features Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 222 (S.D.N.Y. 2002).

The Burns Plaintiffs are unsecured creditors seeking to recover property fraudulently transferred by the Asarco Parties. Thus, the Removed Claims are "properly regarded as undertaken 'to recover a claim against the debtor[s]'" and became subject to a stay under § 362(a)(1) immediately on Asarco's bankruptcy filing. FDIC, 980 F.3d at 130. Pursuant to § 544(b), the Asarco Parties' bankruptcy trustees have "exclusive authority" to maintain the Removed Claims. United Features Syndicate, 216 F. Supp. 2d at 222. Accordingly, this Court concludes that a "transfer of interest" has occurred for purposes of Rule 25(c), and that the Asarco Parties are the proper Plaintiffs in the Removed Claims.

## II. Motion to Remand

### A. Legal Standard

28 U.S.C. § 1452(a), applicable in proceedings related to bankruptcy cases, provides in relevant part: "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has

jurisdiction of such claim or cause of action under [§] 1334 of this title."[1] Section 1452(b) provides, in relevant part: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

B. Asarco's Indirect Interest in SPCC

Grupo Mexico argues that removal is improper for Asarco because it held its controlling interest in SPCC through a wholly owned subsidiary, SPH. Grupo Mexico reasons that Asarco cannot invoke § 544(b) in an action to pierce its own corporate veil for an allegedly fraudulent conveyance. This argument is without merit. A plaintiff may recover the fraudulently transferred property of its subsidiary where there is a risk of substantial injustice or unfairness to creditors. See Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 320-21 (Bankr. S.D.N.Y. 1999) (holding that a trustee could use § 544(b) to assert avoidance claims under New York law that pierced the corporate veil of a parent entity in the context of a fraudulent transfer to insiders); In re Altman, 230 B.R. 6, 11-16 (Bankr. D. Conn. 1999) (same); see also Smith v. Richels, 163 B.R. 760, 763 (Bankr. E.D. Va. 1994) (holding that trustee could bring reverse veil-piercing claim to avoid transfer of stock by debtor's subsidiary); Slone v. Brennan, 362 B.R. 871, 882 (S.D. Ohio 2007) (affirming bankruptcy court's decision to pierce corporate veil in adversary proceeding seeking to avoid a transfer made by a debtor's wholly owned subsidiary); In re Foxmeyer Corp., 290 B.R. 229, 234 (Bankr. D. Del. 2003); Kendall v. Turner, 335 B.R. 140, 147 (Bankr. N.D. Cal. 2005). Moreover, the court in the AMC Action has concluded that Asarco may assert "a veil-piercing argument to enlarge the potential estate of the corporation whose veil is being pierced." Asarco LLC v. Americas Mining Corp., No. B-07-018, slip op. at

[1] The issue of subject matter jurisdiction under § 1334 is addressed infra.

20 (S.D. Tex. Oct. 12, 2007). In these circumstances, the indirect nature of Asarco's controlling interest in SPCC does not bar removal.

C. Non-Party Removal

Grupo Mexico argues that removal is improper because neither of the Asarco Parties was a Plaintiff when they filed their Notice of Removal. Although the Second Circuit has not addressed the issue, numerous courts have held that non-parties may remove an action in circumstances similar to those present in this case. See, e.g., Aetna Cas. & Surety Co. v. Dauria (In re Pine Assocs.), 40 B.R. 683, 686 (Bankr. D. Conn. 1984) (allowing non-party debtor to remove a state court action because it "could have intervened and been made a party in the state-court proceeding"); Cincinnati Milacron Marketing Co. v. Ramirez (In re Wesco Prods. Co.), 19 B.R. 908, 910 (Bankr. N.D. Ill. 1992) ("Though the [state court] action was originally removed by a non-party . . . that mere technical defect does not mandate remand when the removing entity, though not a party, is a real party in interest in the removed action"); Air Enters., Inc. v. Ohio Farmers Ins. Co. (In re Hughes-Bechtol, Inc.), 107 B.R. 552, 558 (Bankr. S.D. Ohio 1989) (holding debtor's status as a non-party did not prevent it from removing state court actions); Frankford Trust Co. v. Allanoff (In re Dublin Properties), 20 B.R. 616, 621 (Bankr. D. Pa. 1982) ("To hold that the debtor could not remove those proceedings to this court because it was not technically a party to those proceedings would be to exalt form over substance."); Parenteau v. Bellucci (In re Bellucci), 9 B.R. 887, 889 (Bankr. D. Mass. 1981) ("It matters not that the trustee was not a party in interest in the state court suit, since it is clear that as that suit might affect the property of the estate, he is a party in interest."). Accordingly, this Court finds that the Asarco Parties' non-party status does not bar them from removing this action.

D. Subject Matter Jurisdiction

Grupo Mexico argues that the action must be remanded because the substitution of Asarco and SPH as Plaintiffs deprives this Court of diversity jurisdiction. This argument is groundless. The statutory basis for jurisdiction over the removed action is 28 U.S.C. § 1334(b), which provides, in relevant part: "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 1334(c)(2) further provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Thus, if the case is simply "related to" a bankruptcy proceeding, remand is generally required; if it "aris[es] under" Title 11 or "aris[es] in" a Title 11 case, remand is discretionary. Norkin v. DLA Piper Rudnick Gray Cary, LLP, No. 05 Civ. 9137 (DLC), 2006 WL 839079, at *3 (S.D.N.Y. Mar. 31, 2006).

The Second Circuit has held that cases "arising under" or "arising in" Title 11 proceedings are the same as those defined as "core proceedings" under 28 U.S.C. § 157(b), which include actions for fraudulent conveyance. Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 447-48 (2d Cir. 2005); 28 U.S.C. § 157(b)(2)(H) ("Core proceedings include, but are not limited to . . . proceedings to determine, avoid, or recover fraudulent conveyances."); Wedtech Corp v. London, M.D. (In re Wedtech Corp.), 81 B.R. 237, 239 (S.D.N.Y. 1987) ("[A]n action for fraudulent conveyance is a core proceeding in bankruptcy court."). This proceeding

involves causes of action for fraudulent conveyance. Accordingly, for purposes of § 1334 the Removed Claims "aris[e] under" Title 11.

Because the Removed Claims are subject to this Court's jurisdiction under § 1334, they may be removed to this Court. See 28 U.S.C. § 1452(a). Grupo Mexico's motion to remand for lack of subject matter jurisdiction is denied.

III. Motion to Transfer

28 U.S.C. § 1412 and Fed. R. Bankr. P. 7087 govern the transfer of core proceedings, such as this action. Tultex Corp. v. Freeze Kids, L.L.C., 252 B.R. 32, 35 (S.D.N.Y. 2000). Rule 7087 provides, in relevant part: "[T]he court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412." Section 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." The party seeking a change of venue bears the burden of proof, which must be established by a preponderance of the evidence. In re Manville Forest Prods. Corp., 896 F.2d 1384, 1390-91 (2d Cir. 1990). Moreover, "the district in which the underlying bankruptcy is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy," though the district court has discretion to conduct an "individualized, case-by-case consideration of convenience and fairness" in deciding a motion to transfer. Manville, 896 F.3d at 1391 (internal citations and quotation omitted).

Under Manville, the fact that the underlying bankruptcies of the Asarco Parties are pending in the Southern District of Texas creates a presumption that this case should be

transferred. Nonetheless, given the unusual procedural history of the action, the Court considers whether a transfer is also warranted by the interests of justice and the convenience of the parties.

A. Interests of Justice

In determining the "interests of justice," courts in this district have considered: (1) whether transfer would promote the economic and efficient administration of the bankruptcy estate; (2) whether the interests of judicial economy would be served by the transfer; (3) whether the parties would be able to receive a fair trial in each of the possible venues; (4) whether either forum has an interest in having the controversy decided within its borders; (5) whether the enforceability of any judgment would be affected by the transfer; and (6) whether the plaintiff's original choice of forum should be disturbed. In re Enron Corp., 317 B.R. 629, 638-39 (Bankr. S.D.N.Y. 2004).

With respect to the first Enron factor, the chapter 11 proceedings of the Asarco Parties, as well as the AMC Action (which arises from the same set of operative facts and involves the same counsel), are pending in the Southern District of Texas. Thus, transfer would place all substantially related litigations in the same court. Similarly, with respect to the second Enron factor, transfer would promote judicial economy. This case and the AMC Action are substantially similar and litigating them in different fora might result in conflicting pre-trial rulings. Indeed, the prospective transferee court has already spent significant time on issues virtually identical to those in this action. See Asarco LLC v. Americas Mining Corporation, No. B-07-018, slip op. at 20 (S.D. Tex. Oct. 12, 2007) (addressing issues similar to those presented by this case); see also Manville, 896 F.2d at 1391 (noting that transferee court's familiarity with the facts of a particular case weighs in favor of transfer); Kenwin Shops, Inc. v. Bank of La. D&A Funding Corp., No. 97 Civ. 907 (LMM), 1999 WL 294800, at *4 (S.D.N.Y. May 11,

1999) (granting motion to transfer in part because transferee judge was "more familiar with the litigation").

The remainder of the Enron factors are either neutral or weigh in favor of transfer. All parties can receive a fair trial in the Southern District of Texas and no district has a particular interest in having this dispute resolved within its borders. Similarly, the enforceability of a judgment would not be affected by transfer. Finally, though the Burns Plaintiffs chose to litigate in New York, this Court has determined that there was a transfer of interest in the Removed Claims to the Asarco Parties. The Asarco Parties prefer to litigate in the Southern District of Texas. For these reasons, the Court finds that the interests of justice favor transfer of this action to the Southern District of Texas.

B. Convenience of the Parties

In assessing the convenience of the parties, courts have considered: "the location of the plaintiff and the defendant; (2) the ease of access to the necessary proof; (3) the convenience of the witnesses and parties and their relative physical and financial condition; (4) the availability of the subpoena power for unwilling witnesses; and (5) the expense of obtaining unwilling witnesses. Enron, 317 B.R. at 639. The application of these factors favors transfer of this action to the Southern District of Texas. While the first two factors are neutral, the Court finds that the presence of all litigation in one district would, in the aggregate, further the convenience of the parties by reducing administrative and incidental expenses such as court fees and local counsel, as well as travel time and costs. In addition, it seems likely that most relevant documents and witnesses are located in Arizona or Mexico—i.e., closer to the Southern District of Texas. (O'Brien Aff. ¶¶ 20-22.) Accordingly, the Court finds that the convenience of the parties weighs in favor of transfer to the Southern District of Texas.

C. Appropriateness of Transferee Venue

Grupo Mexico argues against transfer on the ground that venue is improper in the Southern District of Texas. Under § 1412, which governs the transfer of this core bankruptcy proceeding, this Court need not determine whether venue is proper in the transferee court. Compare 28 U.S.C. § 1412 ("A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.") with 28 U.S.C. § 1404 ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). The omission of the phrase "where it might have been brought" in § 1412 is "significant" and "must have been intentional." In re Emerson Radio Corp., 52 F.3d 50, 55 (3d Cir. 1995). Accordingly, this Court need not address Grupo Mexico's argument that venue is improper in the Southern District of Texas.

IV. Motion to Dismiss

Grupo Mexico moves to dismiss the Removed Claims for lack of personal jurisdiction and improper service. "A district court is authorized to rule on a motion to transfer venue 'even if [it has] no personal jurisdiction over the defendants.'" Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 400 n.3 (S.D.N.Y. 2004) (quoting Volk Corp. v. Art-Pak Clip Art Serv., 432 F. Supp. 1179, 1181 (S.D.N.Y. 1977) (Weinfeld, J.)); see also Corke v. Semeiet M.S. Song of Norway, 572 F.2d 77, 80 (2d Cir. 1978) (expressly adopting the Volk Corp. analysis). Similarly, the "pendency . . . of . . . motions to quash service of process . . . serves as no impediment to immediate transfer [of a] litigation." In re Sinking of the Motor

Vessel Ukola, 462 F. Supp. 385 (J.P.M.L. 1978) (holding that the transferee court could consider motions to dismiss for improper service and lack of personal jurisdiction after transfer).

Because the Court transfers this action to the Southern District of Texas, it need not reach the merits of Grupo Mexico's motion to dismiss. See Insight Data Corp. v. First Bank Systems, Inc., No. 97 Civ. 4896 (MBM), 1998 WL 146689, at *2 (S.D.N.Y. Mar. 25, 1998) (collecting cases) (declining to consider motion to dismiss for lack of personal jurisdiction where motion to transfer venue was granted); Torres v. Torres, 603 F. Supp. 440, 441 n.2 (declining to decide whether service was proper in view of a decision to transfer venue).

## CONCLUSION

For the foregoing reasons, the Asarco Parties' motion to substitute themselves as Plaintiffs in this action and to transfer venue to the Southern District of Texas is granted. Grupo Mexico's motion to remand the action to state court or, in the alternative, to dismiss the Complaint for improper service and lack of personal jurisdiction is denied. The Clerk of the Court is directed to transfer this action to the Southern District of Texas.

Dated: November 16, 2007
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*:

Alan B. Rich, Esq.
Baron & Budd, P.C.
The Centrum
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
*Counsel for Plaintiffs Burns and Pavkovich*

David S. Cohen, Esq.
Milbank Tweed Hadley & McCloy LLP
International Square Building
1850 K Street, NW
Washington, DC 20006

-and-

Luc A. Despins, Esq.
Milbank Tweed Hadley & McCloy
One Chase Manhattan Plaza
New York, NY 10005
*Counsel for Defendant Grupo Mexico, S.A.*

George Irvin Terrell Jr., Esq.
Baker & Botts L.L.P.
One Shell Plaza
910 Louisiana
Houston, TX 77002
*Counsel for Asarco, LLC and Southern Peru Holdings, LLC*